## Exhibit  A

**ODB Plan and Certified Translation**

**PLANO DE RECUPERAÇÃO JUDICIAL**

31 de março de 2020

# PLANO DE RECUPERAÇÃO JUDICIAL

**(1) KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL**, sociedade de responsabilidade limitada, com sede no município de Salvador, estado da Bahia, na Avenida Tancredo Neves, nº 1672, Edifício Catabas Empresarial, 5º andar, sala 501, Caminho das Árvores, CEP 41.820-020, inscrita no CNPJ/ME sob o nº 04.215.837/0001-09 ("KIEPPE"); **(2) ODBINV S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luís Viana, nº 2841, Ed. Odebrecht, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 15.105.588/0001-15 ("ODBINV"); **(3) ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luis Viana, nº 2841, Ed. Odebrecht, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 05.144.757/0001-72 ("ODB"); **(4) OSP INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 9º andar, parte I, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 22.606.673/0001-22 ("OSP INV"); **(5) ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 9º andar, parte E, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 10.904.193/0001-69 ("OSP"); **(6) OPI S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte A, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 17.337.615/0001-00 ("OPISA"); **(7) ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 12º andar, parte C, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 07.668.258/0001-00 ("OPI"); **(8) ODB INTERNATIONAL CORPORATION**, sociedade existente e constituída de acordo com as leis de Bahamas, com sede em Nassau, na MB&H Corporate Services Ltd., Mareva House, 4 George Street, registrada sob o nº 138020 B ("ODBIC"); **(9) ODEBRECHT FINANCE LIMITED**, sociedade existente e constituída de acordo com as leis das Ilhas Cayman, com sede em George Town, Grand Cayman, Ilhas Cayman na South Church Street, PO Box 309GT, Ugland House, registrada sob o nº 181323 ("OFL"); **(10) ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte L, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 20.541.146/0001-51 ("OEI"); **(11) ODEBRECHT ENERGIA S.A. – EM RECUPERAÇÃO JUDICIAL,**

2

sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 7º andar, parte B, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 13.079.757/0001-64 ("OE"); **(12) ODEBRECHT ENERGIA PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 7º andar, parte D, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 19.790.376/0001-75 ("OEP"); **(13) ODEBRECHT ENERGIA DO BRASIL S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 11º andar, parte D, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 13.439.547/0001-30 ("OEB"); **(14) ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luis Viana, nº 2841, Ed. Odebrecht, Sala Enseada, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 17.851.495/0001-65 ("OPE"); **(15) EDIFÍCIO ODEBRECHT RJ S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município do Rio de Janeiro, estado do Rio de Janeiro, na Avenida Cidade de Lima, nº 86, Santo Cristo, CEP 20.220-710, inscrita no CNPJ/ME sob o nº 19.432.176/0001-40 ("EORJ"); **(16) ODEBRECHT PROPERTIES INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, 120, 14º andar, parte H, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 21.264.618/0001-39 ("OPINV"); **(17) ODEBRECHT PROPERTIES PARCERIAS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte B, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 16.584.908/0001-20 ("OPP"); **(18) OP CENTRO ADMINISTRATIVO S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede em Brasília, no Distrito Federal, na Rua 210, Quadra 01, Lote 34 TR 3, sala 1010 C, Areal (Águas Claras), CEP 71950-770, inscrita no CNPJ/ME sob o nº 19.128.923/0001-51 ("OP Centro Administrativo"); **(19) OP GESTÃO DE PROPRIEDADES S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte E, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 20.620.396/0001-87 ("OP Gestão"); e **(20) MECTRON – ENGENHARIA, INDÚSTRIA E COMÉRCIO S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede município de São José dos Campos, estado de São Paulo, na Avenida Brigadeiro Faria Lima, nº 1389, Parque Martim Cererê, E 1399, CEP 12227-000, inscrita no CNPJ/ME sob o nº 65.481.012/0001-20 ("MECTRON" e, em conjunto com as

3

empresas listadas entre os itens **(1)** e **(20)**, "Recuperandas"[1]), apresentam, nos autos do seu processo de recuperação judicial, autuado sob nº 1057756-77.2019.8.26.0100, em curso perante o D. Juízo da 1ª Vara de Falências e Recuperações Judiciais do Foro Central Cível da Comarca da Capital de São Paulo ("Recuperação Judicial"), o seguinte Plano de Recuperação Judicial ("Plano"), em cumprimento ao disposto no artigo 53 da Lei nº 11.101/2005 ("LFR").

## CONSIDERANDO QUE:

**(i)** as Recuperandas são parte do grupo Odebrecht, um dos maiores conglomerados empresariais do País, com atuação nos setores de infraestrutura, óleo e gás, sucroalcooleiro, incorporação imobiliária, mobilidade e transporte, energia, defesa e serviços navais, reunindo diversas sociedades sob controle comum (direto ou indireto) da KIEPPE, com atividades desenvolvidas em inúmeras localidades do território nacional e em 27 países correspondendo a uma das maiores empresas brasileiras, nos seus segmentos de atuação ("Grupo Odebrecht");

**(ii)** apesar de possuírem patrimônio e personalidade jurídica próprios, as Recuperandas atuam sob controle societário, operacional, financeiro e gerencial único, por meio de uma estrutura plurissocietária típica destinada a otimizar as sinergias financeiras, administrativas e operacionais, com vistas a aumentar a eficiência e maximizar os resultados, estando sob o mesmo comando e planejamento estratégico, com administração centralizada, e, em sua maioria, identidade de sócios e de administradores;

**(iii)** o Grupo Odebrecht nasceu com a exploração da atividade de construção civil, desenvolvida pela Construtora Norberto Odebrecht S.A., a qual se volta a atividades de engenharia e construção de grande porte, em que acumulou larga experiência e desenvolveu sofisticada tecnologia, a ponto de tornar-se a maior construtora da América Latina e uma das 30 maiores exportadoras de serviços no mundo;

**(iv)** a expansão do Grupo Odebrecht foi marcada por investimentos em outros segmentos, além do setor de engenharia e construção, a saber: (a) no setor petroquímico; (b) no setor de serviços de produção, importação, exportação e comercialização de produtos de agricultura em geral, especialmente a cultura, industrialização e comercialização da cana-de-açúcar para produção de açúcar, etanol e derivados; (c) no setor de construção naval offshore; (d) no

---

[1] **Nota**: definição de "Recuperandas" será ajustada a depender das Recuperandas que venham a aprovar a consolidação substancial.

4

desenvolvimento de empreendimentos imobiliários; (e) no setor energético; (f) no setor estratégico de defesa militar; e (g) em negócios de infraestrutura, incluindo participações em concessões de rodovias e hidroelétricas;

**(v)**    para o exercício de suas atividades e para proporcionar o crescimento do Grupo Odebrecht, as Recuperandas estruturaram-se para viabilizar a captação de recursos junto ao mercado financeiro e de capitais brasileiro e internacional, por meio da contratação de financiamentos bancários, garantias bancárias, seguros-garantia e emissão de títulos de dívida no mercado local (debêntures) e no mercado internacional (*bonds*); para tanto, as Recuperandas atuaram de forma eficiente e coordenada, como financiadoras, garantidoras e contra-garantidoras das referidas operações financeiras;

**(vi)**    diante das dificuldades financeiras enfrentadas, as quais foram agravadas por ataques de determinados credores, e com o intuito de assegurar a função social das Recuperandas, bem como preservar os postos de trabalho e sua capacidade produtiva e de estímulo à economia, em 17.06.2019, foi apresentado pedido de Recuperação Judicial pelas Recuperandas em conjunto com [@], [@] ("Requerentes") [2];

**(vii)**    em atenção aos despachos de fls. 278/285 e 355/363, proferidos respectivamente no âmbito dos Agravos de Instrumento nº 2262371-21.2019.8.26.0000 e 226277-73.2019.8.26.000, os Credores Concursais das Recuperandas deliberaram, em sede de assembleia geral de credores, pela consolidação substancial da ODB com as demais Recuperandas, de modo que o presente Plano é composto pelos ativos e passivos de titularidade de todas as Recuperandas ("Consolidação Substancial das Recuperandas"); e, por fim

**(viii)**    em cumprimento à decisão de deferimento do processamento da Recuperação Judicial e aos requisitos do art. 53 da LFR, este Plano apresenta os meios de recuperação almejados pelas Recuperandas, bem como demonstra a sua viabilidade econômica, por meio dos Laudos, conforme abaixo definido, sendo certo que este Plano reflete as negociações mantidas com a coletividade de credores das Recuperandas;

As Recuperandas apresentam este Plano ao Juízo da Recuperação, nos termos e condições a seguir.

---

[2] **Nota**: definição de "Requerentes" será ajustada a depender das Recuperandas que não venham a deliberar sobre a consolidação substancial na AGC de aprovação deste Plano.

1.    **DEFINIÇÕES E REGRAS DE INTERPRETAÇÃO**

**1.1.    Definições:** Os termos utilizados neste Plano têm os significados definidos abaixo. Tais termos definidos serão utilizados, conforme apropriado e aplicável, na sua forma singular ou plural, no gênero masculino ou feminino, sem que, com isso, percam o significado que lhes é atribuído.

1.1.1. "Ações Judiciais ou Procedimentos Arbitrais": são os processos judiciais de natureza trabalhista ou cível, ajuizados contra as Recuperandas, ou os procedimentos arbitrais que envolvem as Recuperandas, e que versam sobre relações jurídicas que, em razão da sua causa de pedir, irão originar Créditos Concursais que constarão da Lista de Credores.

1.1.2. "Adesão à Consolidação Substancial": tem o significado atribuído na Cláusula 2.5.

1.1.3. "Administrador Judicial": é a Alvarez & Marsal Administração Judicial Ltda., inscrita no CNPJ/ME sob nº 07.016.138/0001-28, com endereço na Rua Surubim, 577, 9º andar, Brooklin Novo, CEP 04571-050, na Cidade e Estado de São Paulo, ou quem a substituir.

1.1.4. "Afiliadas": significa, com relação a qualquer pessoa, qualquer pessoa direta ou indiretamente mantida, Controladora, Controlada ou sob Controle comum.

1.1.5. "Agente de Monitoramento": significa qualquer uma das empresas especializadas na prestação de serviços de consultoria e perícia listadas no Apêndice I do **Anexo 1.1.73**, bem como as sucessoras, a qualquer título, de tais empresas, que tenham como principal atividade a prestação de serviços de consultoria e perícia, cujas atribuições estão descritas no item 6 no **Anexo 1.1.73**.

1.1.6. "Aniversário": é a data que corresponde ao 365º (trecentésimo sexagésimo quinto) dia após a Data de Homologação Judicial do Plano.

1.1.7. "Aprovação do Plano": é a aprovação deste Plano pelos Credores Concursais das Recuperandas reunidos na Assembleia de Credores designada para deliberar sobre ele. Para os efeitos deste Plano, considera-se que a Aprovação do Plano ocorre na data da Assembleia

6

de Credores em que ocorrer a votação do Plano, desde que seja posteriormente homologado judicialmente nos termos do artigo 58, § 1º, da LFR.

1.1.8. "Assembleia de Credores": é qualquer assembleia geral de credores das Recuperandas, realizada no âmbito desta Recuperação Judicial, nos termos do Capítulo II, Seção IV, da LFR.

1.1.9. "Bônus de Adimplência": é a revisão da taxa de juros e correção monetária aplicável aos Instrumentos de Pagamento nos termos do item 3 do **Anexo 1.1.73** do Plano, que passará a ser correspondente à TR a partir do 15º (décimo quinto) ano desde que tenham sido realizadas amortizações, no total agregado, iguais ou superiores a R$ 500.000,00 (quinhentos mil reais) desde a Data de Homologação Judicial do Plano.

1.1.10.    "Caixa Disponível": significa a soma de todos os montantes, recursos financeiros de liquidez imediata e aplicações financeiras desoneradas detidos em caixa por cada uma das Recuperandas, incluindo por força de alienação de ativos, recebimento de Dividendos Controladas (observado o rateio da Cláusula 1.1.13), ou por quaisquer outras fontes de recursos, conforme apuração a ser realizada nas datas-bases estabelecidas no Anexo 1.1.73, e que poderão ser utilizados pelas Recuperandas para os fins descritos no Anexo 1.1.10.

1.1.11.    "Caixa para Distribuição": significa, em uma determinada data-base após o decurso do Prazo de Carência previsto no item 5 do **Anexo 1.1.73**, todo valor de Caixa Disponível que exceder montante correspondente à soma de R$ 300.000.000,00 (trezentos milhões de reais), conforme corrigido a IPCA em cada ano fiscal. Na apuração do Caixa para Distribuição no último bimestre de cada ano, do valor de R$ 300.000.000,00 (trezentos milhões de reais) deverão ser descontados os valores eventualmente remetidos a Requerentes no mesmo ano fiscal, nos termos da Cláusula 7.4.1.

Não estão incluídos no conceito de Caixa para Distribuição:

> i. os Recursos para Pagamento de Despesas Ordinárias recebidos até 31 de dezembro de 2022, que não tenham sido utilizados e estejam disponíveis na referida data-base e/ou Recursos para Pagamento de Despesas Ordinárias cuja liberação esteja contratada, porém ainda não tenham sido disponibilizados às Recuperandas até a referida data-base; e

7

ii.    se aplicável, até o término do Período de Carência, podendo tal prazo ser estendido caso autorizado pelos titulares dos Instrumentos de Pagamento em deliberação realizada nos termos da item 8.3 do Anexo 1.1.73, os montantes necessários para pagamento das despesas de venda, fiscais e tributárias decorrentes de alienações de ativos das Recuperandas e/ou Requerentes materializadas até a data de apuração, bem como as não materializadas que possam ser estimadas em razão das obrigações contratadas até a data de apuração, subtraídos dos recursos líquidos recebidos ou a serem recebidos pelas Recuperandas e/ou Requerentes provenientes da referida alienação de ativos.

Para que não restem dúvidas, todos recursos referentes aos eventos descritos no item ii, incluindo os recursos líquidos provenientes da referida alienação de ativos a serem recebidos pelas Recuperandas e/ou Requerentes, no limite das despesas mencionadas no item ii, ficarão reservados até a materialização das obrigações ali descritas ou até o encerramento do prazo de 18 (dezoito) meses contados do término do Período de Carência, o que ocorrer primeiro, não integrando o Caixa para Distribuição para fins da Cláusula 1.1.11. Caso tais obrigações não se materializem, a integralidade dos montantes retidos pelas Recuperandas deverá ser utilizada para pagamento dos Instrumentos de Pagamento.

O Caixa para Distribuição será apurado, a partir do término do Prazo de Carência, com base no relatório gerencial de fechamento contábil, entregue pelas Recuperandas ao Agente de Monitoramento, referente aos meses de Fevereiro, Abril, Junho, Agosto, Outubro e Dezembro.

1.1.12.    "*Chapter 15*": significa o procedimento de insolvência auxiliar previsto no capítulo 15 do *U.S. Bankruptcy Code* dos Estados Unidos da América.

1.1.13.    "Cascata de Dividendos Controladas": significa parte dos valores recebidos pelas Recuperandas a título de Dividendos Controladas, que serão aplicados ao pagamento por Dividendos Controladas até 31 de Dezembro de 2025 segundo a seguinte proporção:

| Dividendos Controladas (R$ milhões) | Utilização Dividendos Controladas |
|---|---|

8

| | |
|---|---|
| Até 100 em um determinado ano fiscal | integralmente utilizado para composição do Caixa Disponível e Caixa para Distribuição, conforme aplicável |
| Acima de 100 e até 200 em um determinado ano fiscal | 10% dos Dividendos Controladas recebidos no ano fiscal serão destinados para pagamento por Dividendos Controladas e 90% para composição do Caixa Disponível e Caixa para Distribuição, conforme aplicável |
| Acima de 200 em um determinado ano fiscal | 20% dos Dividendos Controladas recebidos no ano fiscal serão destinados para pagamento por Dividendos Controladas e 80% para composição do Caixa Disponível e Caixa para Distribuição, conforme aplicável |

Após 31 de Dezembro de 2025, os Dividendos Controladas serão integralmente destinados à composição do Caixa Disponível e do Caixa para Distribuição, conforme aplicável.

1.1.14.  "Código Civil": é a Lei Federal n.º 10.406, de 10 de janeiro de 2002.

1.1.15.  "Código de Processo Civil": é a Lei Federal n.º 13.105, de 16 de março de 2015.

1.1.16.  "Consolidação Substancial das Recuperandas": tem o significado atribuído no considerando (vii).

1.1.17.  "Controle": significa, nos termos do art. 116 da Lei das SA, (i) a titularidade de direitos de sócios que assegurem ao seu titular, de modo permanente, a maioria dos votos nas deliberações sociais e o poder de eleger a maioria dos administradores da sociedade; e (ii) o uso efetivo de tal poder para dirigir as atividades sociais e orientar o funcionamento dos órgãos da sociedade. As expressões e termos "Controlador", "Controlado por", "sob Controle comum" e "Controlada" têm os significados logicamente decorrentes desta definição de "Controle".

1.1.18.  "Coobrigação": é a obrigação assumida em decorrência da outorga de quaisquer garantias fidejussórias, tais como obrigações solidárias, avais e fianças, por: (i) uma Recuperanda em favor de uma Recuperanda em relação a um Crédito; (ii) uma Recuperanda

9

em favor de um Terceiro em relação a qualquer Crédito, ou (iii) um Terceiro em favor de uma Recuperanda em relação a um Crédito.

1.1.19.   "Créditos": são os créditos e obrigações, materializados ou contingentes, líquidos ou ilíquidos, objeto de ação judicial/administrativa/arbitragem iniciada ou não, que estejam ou não relacionados na Lista de Credores das Recuperandas, sejam ou não sujeitos à Recuperação Judicial.

1.1.20.   "Créditos com Garantia Real": são os Créditos Concursais existentes em face das Recuperandas garantidos por direitos reais de garantia (v.g., penhor e hipoteca), nos termos do artigo 41, inciso II, da LFR, até o limite do valor do bem gravado, existentes na Data do Pedido, conforme valores atribuídos na Lista de Credores.

1.1.21.   "Créditos com Garantia Real Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.2.1.

1.1.22.   "Créditos Concursais": são os Créditos Trabalhistas, Créditos com Garantia Real, Créditos Quirografários e Créditos ME/EPP e demais Créditos sujeitos à Recuperação Judicial e que, em razão disso, podem ser reestruturados por este Plano, nos termos da LFR, incluindo eventuais Créditos que sejam reconhecidos como sujeitos à Recuperação Judicial no âmbito de habilitações ou impugnações de crédito.

1.1.23.   "Créditos Concursais Garantidos por Terceiro": tem o significado atribuído na Cláusula 3.7.9.2.

1.1.24.   "Créditos Concursais por Garantia Outorgada por Recuperanda": tem o significado atribuído na Cláusula 3.7.9.1.

1.1.25.   "Créditos Elegíveis para Subscrição de Instrumentos de Pagamento": significa, conjuntamente, (i) os Créditos com Garantia Real Elegíveis para Subscrição de Instrumentos de Pagamento; (ii) os Créditos Quirografários Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento; (iii) os Créditos Quirografários Não Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento; e (iv) os Créditos ME/EPP Elegíveis para Subscrição de Instrumentos de Pagamento.

1.1.26.   "Créditos Extraconcursais": são os Créditos detidos contra as Recuperandas: (i) cujo fato gerador seja posterior à Data do Pedido; (ii) derivados de contratos celebrados até a Data

10

do Pedido que não se submetem aos efeitos deste Plano de acordo com o artigo 49, §§ 3º e 4º, da LFR, tais como, alienações fiduciárias em garantia, cessões fiduciárias em garantia ou contratos de arrendamento mercantil; (iii) outros Créditos não sujeitos à Recuperação Judicial, nos termos da LFR; ou (iv) Créditos reconhecidos como extraconcursais no âmbito de impugnações de crédito. No que diz respeito a Créditos garantidos por alienação fiduciária ou cessão fiduciária nos termos deste item (ii), o saldo remanescente do Crédito após eventual excussão ou integral monetização da respectiva garantia, não está incluído, para todos os fins, na definição de Créditos Extraconcursais, e receberá o tratamento conferido aos Créditos Quirografários.

1.1.27.    "Créditos Ilíquidos": são os Créditos Concursais contingentes ou ilíquidos, objeto de Ações Judiciais ou Procedimentos Arbitrais, iniciados ou não, derivados de quaisquer fatos geradores até a Data do Pedido, que podem ser considerados Créditos Concursais e que, em razão disso, podem ser reestruturados por este Plano, nos termos da LFR, como Créditos com Garantia Real, Créditos *Intercompany*, Créditos ME/EPP, Créditos Quirografários ou Créditos Trabalhistas, conforme aplicável.

1.1.28.    "Créditos *Intercompany*": são os Créditos Concursais cujo credor seja sociedade integrante do Grupo Odebrecht e/ou suas Controladoras, diretas ou indiretas, Controladas ou sociedades sob Controle comum.

1.1.29.    "Créditos ME/EPP": são os Créditos Concursais detidos por empresário individual, EIRELI, sociedade empresária e/ou sociedade simples, desde que classificados como microempresas e empresas de pequeno porte, conforme definidas pela Lei Complementar nº 123, de 14 de dezembro de 2006 e conforme previstos nos artigos 41, inciso IV e 83, inciso IV, alínea d, da LFR.

1.1.30.    "Créditos ME/EPP Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.4.2.1.

1.1.31.    "Créditos Quirografários": são os Créditos Concursais quirografários, com privilégio especial, com privilégio geral ou subordinado, conforme previsto nos artigos 41, inciso III e 83, inciso VI da LFR, além do saldo residual oriundo da excussão de qualquer garantia real ou fiduciária. Para fins deste Plano, Créditos Quirografários incluem os Créditos Quirografários Financeiros e os Créditos Quirografários Não Financeiros, conforme significados respectivamente atribuídos nas Cláusulas 1.1.32 e 1.1.36.

11

1.1.32. "Créditos Quirografários Financeiros": são os Créditos Quirografários decorrentes de operações realizadas no âmbito do Sistema Financeiro Nacional, com seguradoras, instituições financeiras estrangeiras, fundos de investimento ou participação, ou envolvendo estruturas estrangeiras semelhantes a fundos de investimento ou participação, *private equity*, e/ou emissões de títulos de dívida nos mercados nacionais e estrangeiros, incluindo mas não limitado às emissões de *notes* ou *bonds*, os quais serão reestruturados nos termos da Cláusula 3.3.1. Para fins deste Plano, Créditos Quirografários Financeiros incluem todo e qualquer Crédito Quirografário detido por uma instituição financeira ou qualquer empresa do seu grupo econômico, nacional ou estrangeira, independentemente da sua origem.

1.1.33. "Créditos Quirografários Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.3.1.2.1.

1.1.34. "Créditos Quirografários Financeiros Opção A": tem o significado atribuído na Cláusula 3.3.1.1.

1.1.35. "Créditos Quirografários Financeiros Opção B": tem o significado atribuído na Cláusula 3.3.1.2.

1.1.36. "Créditos Quirografários Não Financeiros": são todos os Créditos Quirografários, que não são Créditos Quirografários Financeiros, os quais serão reestruturados nos termos da Cláusula 3.3.2.

1.1.37. "Créditos Quirografários Não Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.3.2.2.2.1.

1.1.38. "Créditos Quirografários Não Financeiros Opção A": tem o significado atribuído na Cláusula 3.3.2.1.

1.1.39. "Créditos Quirografários Não Financeiros Opção B": tem o significado atribuído na Cláusula 3.3.2.2.

1.1.40. "Créditos Quirografários Partes Relacionadas": significa os Créditos Quirografários detidos por Partes Relacionadas, os quais serão reestruturados nos termos da Cláusula 3.3.4.

1.1.41.    "Créditos Retardatários": são os Créditos Concursais que forem reconhecidos por decisão judicial ou administrativa superveniente, ou que forem incluídos na Lista de Credores em decorrência de quaisquer habilitações de crédito, impugnações de crédito ou qualquer outro incidente ou requerimento de qualquer natureza formulado com a mesma finalidade, desde que apresentados após o decurso dos prazos legais a que se referem os artigos 7º, §§1º e 2º, e 8º, da LFR, na forma do disposto no artigo 10 da LFR, que podem ser restruturados por este Plano, nos termos da LFR, como Créditos com Garantia Real, Créditos *Intercompany*, Créditos ME/EPP, Créditos Quirografários ou Créditos Trabalhistas, conforme aplicável.

1.1.42.    "Créditos Trabalhistas": são os Créditos Concursais e direitos derivados da legislação do trabalho ou decorrentes de acidente de trabalho, nos termos dos artigos 41, inciso I, e 83, inciso I, da LFR, que mantenham o seu caráter alimentar na Data de Homologação Judicial do Plano.

1.1.43.    "Créditos Trabalhistas Partes Relacionadas": são os Créditos Trabalhistas detidos por Partes Relacionadas, os quais serão reestruturados nos termos da Cláusula 3.1.2.

1.1.44.    "Credores": são as pessoas físicas ou jurídicas detentoras de Créditos, estejam ou não sujeitos aos efeitos do Plano, estejam ou não relacionadas na Lista de Credores.

1.1.45.    "Credores com Garantia Real": são os titulares de Créditos com Garantia Real.

1.1.46.    "Credores Concursais": são os titulares de Créditos Concursais.

1.1.47.    "Credores Extraconcursais": são os titulares de Créditos Extraconcursais.

1.1.48.    "Credores ME/EPP": são os titulares de Créditos ME/EPP.

1.1.49.    "Credores Quirografários": são os titulares de Créditos Quirografários Financeiros e os titulares de Créditos Quirografários Não Financeiros.

1.1.50.    "Credores Quirografários Financeiros": são os titulares de Créditos Quirografários Financeiros.

1.1.51.    "Credores Quirografários Financeiros Opção B": são os titulares de Créditos Quirografários Financeiros Opção B.

13

1.1.52. "Credores Quirografários Não Financeiros": são os titulares de Créditos Quirografários Não Financeiros.

1.1.53. "Credores Quirografários Não Financeiros Opção A": são os titulares de Créditos Quirografários Não Financeiros Opção A.

1.1.54. "Credores Quirografários Não Financeiros Opção B": são os titulares de Créditos Quirografários Não Financeiros Opção B.

1.1.55. "Credores Retardatários": são os titulares de Créditos Retardatários.

1.1.56. "Credores Trabalhistas": são os titulares de Créditos Trabalhistas.

1.1.57. "Credores Trabalhistas Partes Relacionadas": são os titulares de Créditos Trabalhistas Partes Relacionadas.

1.1.58. "Data de Amortização": é a data em que o Caixa para Distribuição será destinado à amortização dos Instrumentos de Pagamento, conforme Regra de Utilização do Caixa para Distribuição. Para fins deste Plano, a Data de Amortização sempre ocorrerá até o último Dia Útil dos meses de Janeiro, Março, Maio, Julho, Setembro e Novembro.

1.1.59. "Data de Homologação Judicial do Plano": é a data em que ocorrer a publicação, no Diário Oficial da Justiça, da decisão de Homologação Judicial do Plano proferida pelo Juízo da Recuperação.

1.1.60. "Data do Pedido": é o dia 17 de junho de 2019, data em que o pedido de recuperação judicial das Recuperandas foi ajuizado.

1.1.61. "Data Final de Pagamento dos Créditos Trabalhistas": tem o significado atribuído na Cláusula 3.1.1, item (iv).

1.1.62. "Dia Corrido": é qualquer dia do mês, de modo que os prazos contados em Dias Corridos não são suspensos ou interrompidos.

1.1.63. "Dia Útil": qualquer dia que não seja sábado, domingo ou feriado na Cidade de São Paulo, Estado de São Paulo; além disso, não será Dia Útil qualquer dia em que, por qualquer motivo, não haja expediente bancário na Cidade de São Paulo, Estado de São Paulo. Exclusivamente para atos que devam ser praticados em outras comarcas, "Dia Útil" também

14

significa qualquer dia que, cumulativamente, não seja sábado, domingo ou feriado na respectiva localidade, na Cidade de São Paulo, Estado de São Paulo, ou qualquer dia em que, por qualquer motivo, não haja expediente bancário na Cidade de São Paulo, Estado de São Paulo.

1.1.64.    "Dividendos Controladas": significa os recursos recebidos, em caixa e disponíveis para uso pelas Recuperandas, a título de dividendos, juros sobre capital próprio, redução de capital ou qualquer outra forma de remuneração de acionistas, em razão de participações societárias detidas pelas Recuperandas.

1.1.65.    "DTC": é o *The Depository Trust Company*, sociedade devidamente estabelecida sob as Leis do Estado de Nova Iorque, Estados Unidos da América, que provê plataforma para registro e negociação de títulos de dívida emitidos e negociáveis (*Bonds*) em dólares norte-americanos.

1.1.66.    "Emissora/Devedora Principal": tem o significado atribuído no item 1 do **Anexo 1.1.73**.

1.1.67.    "EORJ": tem o significado atribuído no preâmbulo.

1.1.68.    "Garantias Reais": são os direitos de garantia (v.g., penhor e hipoteca, conforme Título X do Código Civil), nos termos deste Plano e/ou do artigo 41, II da LFR, que garantem os Créditos com Garantia Real.

1.1.69.    "Garantidores": tem o significado atribuído no item 2 do **Anexo 1.1.73**.

1.1.70.    "Grupo Odebrecht": tem o significado atribuído no Considerando (i).

1.1.71.    "Homologação *Chapter 15*": tem o significado atribuído na Cláusula 4.7.

1.1.72.    "Homologação Judicial do Plano": é a decisão judicial proferida pelo Juízo da Recuperação Judicial que homologa o Plano e, consequentemente, concede a Recuperação Judicial, nos termos do artigo 58, *caput* e/ou §1º da LFR.

1.1.73.    "Instrumentos de Pagamento": são os (i) Instrumentos de Pagamento – *Bonds*; (ii) Instrumentos de Pagamento – Debêntures Privadas; (iii) Instrumentos de Pagamento – Debêntures Públicas; e (iv) Instrumentos de Pagamento – Plano, os quais serão entregues aos Credores Concursais, conforme aplicável, e que conferirão aos seus respectivos titulares o

15

direito de recebimento do Caixa para Distribuição observada a Regra de Utilização do Caixa para Distribuição, de forma *pro rata*, cujos termos e condições são detalhados no **Anexo 1.1.73**.

1.1.74.    "Instrumentos de Pagamento – *Bonds*": tem o significado atribuído na Cláusula 4.1.4 abaixo.

1.1.75.    "Instrumentos de Pagamento – Debêntures Privadas": tem o significado atribuído na Cláusula 4.1.2 abaixo.

1.1.76.    "Instrumentos de Pagamento – Debêntures Públicas": tem o significado atribuído na Cláusula 4.1.3 abaixo.

1.1.77.    "Instrumentos de Pagamento – Plano": tem o significado atribuído na Cláusula 4.1.1 abaixo.

1.1.78.    "IPCA": é o Índice Nacional de Preços ao Consumidor Amplo calculado mensalmente pelo Instituto Brasileiro de Geografia e Estatística (IBGE). Na ausência de apuração e/ou divulgação do número-índice por prazo superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, o IPCA deverá ser substituído pelo índice que reflita economicamente sua qualidade ou, na sua ausência, o último índice divulgado.

1.1.79.    "Juízo da Recuperação Judicial": é o Juízo da 1ª Vara de Falências e Recuperações Judiciais da Comarca de São Paulo, Estado de São Paulo.

1.1.80.    "KIEPPE": tem o significado atribuído no preâmbulo.

1.1.81.    "Laudos": são, conjuntamente, o laudo de viabilidade econômica e o laudo econômico-financeiro, elaborados nos termos do artigo 53, incisos II e III, respectivamente, da LFR, constantes do **Anexo 1.1.81 (a)** e **(b)** deste Plano.

1.1.82.    "Lei das SA": é a Lei Federal nº 6.404, de 15 de dezembro de 1976.

1.1.83.    "LFR": tem o significado atribuído no preâmbulo.

1.1.84.    "Lista de Credores": é a relação de Credores da Recuperanda elaborada pelo Administrador Judicial, conforme alterada por decisões judiciais transitadas em julgado que

16

reconhecerem novos Créditos Concursais ou alterarem a legitimidade, classificação ou o valor de Créditos Concursais já reconhecidos.

1.1.85.    MECTRON": tem o significado atribuído no preâmbulo.

1.1.86.    "ODB": tem o significado atribuído no preâmbulo.

1.1.87.    "ODBIC": tem o significado atribuído no preâmbulo.

1.1.88.    "ODBINV": tem o significado atribuído no preâmbulo.

1.1.89.    "OE": tem o significado atribuído no preâmbulo.

1.1.90.    "OEB": tem o significado atribuído no preâmbulo.

1.1.91.    "OEI": tem o significado atribuído no preâmbulo.

1.1.92.    "OEP": tem o significado atribuído no preâmbulo.

1.1.93.    "OFL": tem o significado atribuído no preâmbulo.

1.1.94.    "OP Centro Administrativo": tem o significado atribuído no preâmbulo.

1.1.95.    "OP Gestão": tem o significado atribuído no preâmbulo.

1.1.96.    "Opção A – Créditos Quirografários Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Financeiros, nos termos da Cláusula 3.3.1.1.

1.1.97.    "Opção A – Créditos Quirografários Não Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Não Financeiros, nos termos da Cláusula 3.3.2.1.

1.1.98.    "Opção B – Créditos Quirografários Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Financeiros, nos termos da Cláusula 3.3.1.2.

1.1.99.    "Opção B – Créditos Quirografários Não Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Não Financeiros, nos termos da Cláusula 3.3.2.2.

1.1.100.    "Opções de Pagamento": tem o significado atribuído na Cláusula 2.2.2.

1.1.101.    "OPE": tem o significado atribuído no preâmbulo.

1.1.102. "OPI": tem o significado atribuído no preâmbulo.

1.1.103. "OPINV": tem o significado atribuído no preâmbulo.

1.1.104. "OPISA": tem o significado atribuído no preâmbulo.

1.1.105. "OPP": tem o significado atribuído no preâmbulo

1.1.106. "OSP": tem o significado atribuído no preâmbulo.

1.1.107. "OSP INV": tem o significado atribuído no preâmbulo.

1.1.108. "Pagamentos em Dinheiro": tem o significado atribuído na Cláusula 3.3.2.2.

1.1.109. "Partes Relacionadas": são as pessoas físicas ou jurídicas que sejam, na Data do Pedido, direta ou indiretamente, individual ou em conjunto, acionistas Controladoras de quaisquer empresas do Grupo Odebrecht, incluindo as Recuperandas e Requerentes, bem como os seus cônjuges ou parentes, consanguíneos ou afins, colaterais até o 3º (terceiro) grau, ascendente ou descendente.

1.1.110. "Percentual de Pagamentos": significa percentual referente às amortizações ou pagamentos, a qualquer título, de Créditos tomados ou garantidos pelas Recuperandas, a ser apurado pelo Agente de Monitoramento conforme método de cálculo detalhado no Anexo 1.1.110.

1.1.111. "Plano": tem o significado atribuído no preâmbulo.

1.1.112. "Prazo de Adesão à Consolidação Substancial": tem o significado atribuído na Cláusula 2.5.

1.1.113. "Prazo de Carência": tem o significado atribuído no item 5 do **Anexo 1.1.73**.

1.1.114. "Prazo para Eleição" tem o significado atribuído na Cláusula 4.2.

1.1.115. "Publicação do Quadro de Eleição": tem o significado atribuído na Cláusula 4.3.2.

1.1.116. "Recuperação Judicial": tem o significado atribuído no preâmbulo.

18

1.1.117. "Recuperandas": tem o significado atribuído no preâmbulo, observado o quanto disposto na Cláusula 1.7.

1.1.118. "Recursos para Pagamento de Despesas Ordinárias": significa todo e qualquer valor recebido nos termos da Cláusula 7.2, limitado ao montante global de R$ 1.000.000.000,00 (um bilhão de reais), que deverá ser aplicado prioritariamente na manutenção ordinária das atividades das Recuperandas, no pagamento de despesas gerais e administrativas e no cumprimento das obrigações de pagamento dos Créditos Trabalhistas, Créditos Quirografários Não Financeiros e Créditos ME/EPP previstas neste Plano.

1.1.119. "Regra de Utilização do Caixa para Distribuição": significa a seguinte regra de alocação do Caixa para Distribuição:

(i)     até 31 de Dezembro de 2025 ou até o pagamento integral do montante de R$ 150.000.000,00 (cento e cinquenta milhões de reais) previsto na Cláusula 3.3.2.2.1.2, o que ocorrer primeiro, o Caixa para Distribuição será alocado da seguinte forma:

(a)   10% do Caixa para Distribuição será destinado ao pagamento de Créditos Quirografários Não Financeiros Opção B na forma da Cláusula 3.3.2.2.1.2;

(b)   90% do Caixa para Distribuição será destinado à amortização dos Instrumentos de Pagamento e ao uso pelas Recuperandas conforme descrito no item (iii) abaixo, respeitadas as seguintes proporções e condições:

| % do Caixa para Distribuição alocado para | | Condição |
|---|---|---|
| Amortização Instrumentos de Pagamento | Uso das Recuperandas | |
| 72% | 18% | Até que o Percentual de Pagamentos atinja 35% |
| 67,5% | 22,5% | Caso o Percentual de Pagamentos seja superior a 35% ou igual a 45% |
| 63% | 27% | Caso o Percentual de Pagamentos seja superior a 45% ou igual a 50% |

19

| | | |
|---|---|---|
| 58,5% | 31,5% | Caso o Percentual de Pagamentos seja superior a 50% ou igual a 55% |
| 54% | 36% | Caso o Percentual de Pagamentos seja superior a 55% ou igual a 60% |
| 49,5% | 40,5% | Caso o Percentual de Pagamentos seja superior a 60% ou igual a 65% |
| 45% | 45% | Caso o Percentual de Pagamentos seja superior a 65% |

(ii)    e, após a ocorrência dos eventos descritos no item (i) acima, o Caixa para Distribuição será alocado da seguinte forma:

| % do Caixa para Distribuição alocado para | | Condição |
|---|---|---|
| Amortização Instrumentos de Pagamento | Uso das Recuperandas | |
| 80% | 20% | Até que o Percentual de Pagamentos atinja 35% |
| 75% | 25% | Caso o Percentual de Pagamentos seja superior a 35% ou igual a 45% |
| 70% | 30% | Caso o Percentual de Pagamentos seja superior a 45% ou igual a 50% |
| 65% | 35% | Caso o Percentual de Pagamentos seja superior a 50% ou igual a 55% |
| 60% | 40% | Caso o Percentual de Pagamentos seja superior a 55% ou igual a 60% |
| 55% | 45% | Caso o Percentual de Pagamentos seja superior a 60% ou igual a 65% |
| 50% | 50% | Caso o Percentual de Pagamentos seja superior a 65% |

(iii)    Uso das Recuperandas. Desde que realizadas as amortizações dos Instrumentos de Pagamento, na forma prevista nos itens (i) e (ii) acima, as distribuições destinadas ao Uso das Recuperandas nos termos das tabelas acima serão reservadas para utilização pelas Recuperandas, a seu exclusivo critério, e não integrarão o montante de Caixa Disponível nas próximas apurações de Caixa para Distribuição, podendo ser alocadas para distribuições de lucro, realização de investimentos,

20

mútuos, aportes ou quaisquer outras movimentações de recursos entre Recuperandas, suas Afiliadas, Coligadas ou Controladas, da forma permitida pela lei, **desde que, cumulativamente** (a) o saldo devedor original de Instrumentos de Pagamento tenha sido reduzido em ao menos R$ 10.000.000.000,00 (dez bilhões de reais), não incluindo em tal valor a quantia excepcionada na parte final do item 1(i)(a) do **Anexo 1.1.110**; e (b) tenham (b.1) ocorrido quaisquer alienações, excussões ou dações em pagamento de ativos de titularidade da ODB e outorgados em garantia fiduciária em benefício de Credores no valor de, pelo menos, R$ 1.000.000.000,00 (um bilhão de reais) ou (b.2) transcorrido 4 (quatro) anos contados da Data de Homologação Judicial do Plano, o que ocorrer primeiro. Tais recursos não poderão ser reservados e, caso já tenham sido reservados, deverão ser integralmente utilizados para amortização dos Instrumentos de Pagamento caso ocorra qualquer discussão ou questionamento judicial por parte das Requerentes na hipótese (b.1), a qual também é aplicável para fins desta vedação aos ativos das demais Requerentes.

1.1.120. "Requerentes" tem o significado atribuído no preâmbulo.

1.1.121. "Saldo de Créditos ME/EPP": tem o significado atribuído na Cláusula 3.4.2.

1.1.122. "Salário Mínimo": significa o salário mínimo, fixado em lei e anualmente ajustado, em conformidade com o artigo 7º, inciso IV, da Constituição Federal da República Federativa do Brasil de 1988, com o capítulo III do Decreto-Lei nº 5.452, de 1º de maio de 1943, e com a Medida Provisória nº 919 de 30 de janeiro de 2020.

1.1.123. "Securities Act": significa o *U.S. Securities Act* de 1933, conforme emendado de tempos em tempos.

1.1.124. "Sociedades Atvos": são, em conjunto, as sociedades (1) Atvos Agroindustrial S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 13º andar, Butantã, inscrita no CNPJ/MF sob o nº 08.636.745/0001-53; (2) Atvos Agroindustrial Participações S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 13º andar, Butantã, inscrita no CNPJ/MF sob o nº 08.842.690/0001-38; (3) Pontal Agropecuária S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Teodoro Sampaio, estado de São

21

Paulo, na Fazenda Alcídia, s/n, Zona Rural, inscrita no inscrita no CNPJ/MF sob o
nº 46.453.403/0001-97; (4) Rio Claro Agroindustrial S.A. – Em Recuperação
Judicial, sociedade por ações, com sede no município de Caçu, estado de Goiás, na Fazenda
Santo Antônio, s/n, Zona Rural, inscrita no CNPJ/MF sob o nº 08.598.391/0001-08; (5) Usina
Conquista Do Pontal S.A. – Em Recuperação Judicial, sociedade por ações, com sede no
município de Mirante do Paranapanema, estado de São Paulo, na Fazenda Conquista do
Pontal, Rodovia SP 563, km 13, s/n, Zona Rural, inscrita no CNPJ/MF sob o nº
07.298.800/0001-80; (6) Agro Energia Santa Luzia S.A. – Em Recuperação
Judicial, sociedade por ações, com sede no município de Nova Alvorada do Sul, estado do
Mato Grosso do Sul, na Fazenda São Sebastião, Rodovia BR 267, km 231, s/n, inscrita no
CNPJ/MF sob o nº 08.906.558/0001-42; (7) BRENCO – Companhia Brasileira De Energia
Renovável – Em Recuperação Judicial, sociedade por ações, com sede no município de São
Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 13º andar, Butantã, inscrita no
CNPJ/MF sob o nº 08.070.566/0001-00; (8) Destilaria Alcídia S.A. – Em Recuperação
Judicial, sociedade por ações, com sede no município de Teodoro Sampaio, estado de São
Paulo, na Fazenda Alcídia, s/n, Zona Rural, inscrita no CNPJ/MF sob o nº 46.448.270/0001-
60; e (9) Usina Eldorado S.A. – Em Recuperação Judicial, sociedade por ações, com sede no
município de Rio Brilhante, estado do Mato Grosso do Sul, na Fazenda São Pedro, s/n,
Rodovia MS 145, km 49, ao lado direto no sentido Ipezal/Deodapolis, inscrita no CNPJ/MF
sob o nº 05.620.523/0001-54 , as quais ajuizaram o processo de recuperação judicial autuado
sob nº 1050977-09.2019.8.29.0000, em curso perante o D. Juízo da 1ª Vara de Falências e
Recuperações Judiciais do Foro Central Cível da Comarca da Capital de São Paulo.

1.1.125. "Terceiro": é a pessoa jurídica diversa da Recuperanda contra a qual os Credores
Concursais detêm créditos e direitos, seja por (a) obrigação principal com Coobrigação ou
garantia real e/ou fiduciária assumida ou prestada por uma Recuperanda; e/ou (b)
Coobrigação ou garantia real e/ou fiduciária assumida ou prestada pelo Terceiro.

1.1.126. "Termo de adesão à Consolidação Substancial": tem o significado atribuído na
Cláusula 2.5.

1.1.127. "Termo Original do Stay Period": é o dia 16 de dezembro de 2019, data em que se
findou o prazo previsto no art. 6º, §4º, da LFR.

1.1.128. "TR": é a taxa de referência instituída pela Lei nº 8.177/1991, conforme apurada e
divulgada pelo Banco Central do Brasil, cujo produto, quando expressamente previsto neste

Plano, agregar-se-á ao saldo do valor nominal do Crédito para fins de cálculo do valor pecuniário das obrigações dispostas neste Plano, e que será devido nas datas de pagamento da parcela de amortização das referidas obrigações. No caso de indisponibilidade temporária da TR, será utilizado, em sua substituição, o último número-índice divulgado, calculado *pro rata temporis* por Dias Úteis, porém, não cabendo, quando da divulgação do número-índice devido, quaisquer compensações financeiras. Na ausência de apuração e/ou divulgação do número-índice por prazo superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, a TR deverá ser substituída pela média simples da taxa TR verificada nos 12 (doze) meses anteriores à Data de Homologação do Plano, calculado *pro rata temporis* por Dias Úteis.

1.1.129. "UPI": é a Unidade Produtiva Isolada, na forma do artigo 60 da LFR, que poderá ser composta por bens e/ou direitos.

1.1.130. "*U.S. Bankrupcy Code*": significa o Título 11 do *United States Code* 11 U.S.C. §§ 11 *et seq*.

**1.2.    Cláusulas e Anexos.** Exceto se especificado de forma diversa, todas as Cláusulas e Anexos mencionados neste Plano referem-se a Cláusulas e Anexos deste Plano. Referências a Cláusulas, subcláusulas ou a itens deste Plano referem-se também às suas respectivas subcláusulas ou itens. Os Anexos incluem-se e são parte integrante do Plano para todos os fins de direito.

**1.3.    Títulos.** Os títulos dos Capítulos, das Cláusulas, subcláusulas e itens deste Plano foram incluídos exclusivamente para referência e não devem afetar sua interpretação ou o conteúdo de suas previsões.

**1.4.    Referências.** As referências a quaisquer documentos ou instrumentos incluem todos os respectivos aditivos, consolidações e complementações, exceto se de outra forma expressamente previsto. Sempre que aplicável, as referências às Recuperandas deverão ser interpretadas como sendo as pessoas jurídicas que as sucederem em suas obrigações em razão de operações societárias previstas ou permitidas no âmbito deste Plano, e quaisquer outras que sejam necessárias ao redimensionamento e incremento da eficiência organizacional e redução de custos do Grupo Odebrecht.

23

**1.5.    Disposições Legais.** As referências a disposições legais e a leis devem ser interpretadas como referências a essas disposições tais como vigentes nesta data ou em data que seja especificamente determinada pelo contexto.

**1.6.    Prazos.** Todos os prazos previstos neste Plano serão contados na forma prevista no artigo 132 do Código Civil, desprezando-se o dia do começo e incluindo-se o dia do vencimento. Quaisquer prazos deste Plano (sejam contados em Dias Úteis ou não) cujo termo inicial ou final caia em um dia que não seja Dia Útil, serão automaticamente prorrogados para o Dia Útil imediatamente posterior.

**1.7.    Adesão aos termos e condições deste Plano**. Caso venha a ser aprovada a Adesão à Consolidação Substancial pelos credores de uma ou mais Requerentes, todas as definições contendo referências à "Recuperanda", seus ativos, passivos, direitos e obrigações deverão ser interpretadas como incluindo os ativos, passivos, direitos e obrigações das Requerentes em questão.

**1.8.    Créditos Extraconcursais**. Nada neste Plano deverá ser interpretado ou considerado como causa para a (i) novação de Créditos Extraconcursais ou (ii) alteração, modificação ou renúncia de quaisquer obrigações de quaisquer Recuperandas ou dos direitos de quaisquer Credores Extraconcursais frente aos Créditos Extraconcursais, incluindo, sem limitar, sobre quaisquer garantias prestadas no âmbito de tais Créditos Extraconcursais ou reconhecimentos prestados pelas Recuperandas,

**1.9.    Conflito**. Em caso de conflito entre as disposições (i) deste Plano e seus Anexos, os termos e condições previstos no Plano deverão prevalecer; e (ii) entre o **Anexo 1.1.73** e os **Anexos 4.1.2**,e **4.1.3,** os termos e condições previstos no **Anexo 1.1.73** deverão prevalecer.

## 2.    PRINCIPAIS MEIOS DE RECUPERAÇÃO

**2.1.    Visão Geral**. As Recuperandas propõem a adoção das medidas indicadas nas Cláusulas 2.2, 2.3 e 2.4 abaixo, como forma de superar a sua atual e momentânea crise econômico-financeira e dar continuidade a suas atividades.

**2.2.    Reestruturação da Dívida**. As Recuperandas irão reestruturar as dívidas contraídas perante os Credores Concursais, conforme detalhado na Cláusula 3 abaixo.

24

2.2.1.        Pagamentos pelas Recuperandas. Considerando (i) a possibilidade de Adesão à Consolidação Substancial; (ii) que o Caixa Disponível e o Caixa para Distribuição serão auferidos em Recuperandas distintas; (iii) a administração dos recursos das Recuperandas é concentrada na ODB, sociedade consolidadora e gestora de participações societárias; (iv) há muitas garantias cruzadas entre as Recuperandas, bem como diversos Créditos *Intercompany*; e, ainda (v) o objetivo de garantir a implementação do presente Plano e viabilizar uma solução global para a reorganização operacional e financeira de todas as Recuperandas, os Créditos e as obrigações de pagamento neste Plano serão, na data da Homologação Judicial do Plano, centralizados na ODB, qualquer sociedade que venha a suceder a ODB, qualquer Recuperanda, observado o quanto disposto nos termos previstos na Cláusula 3 abaixo e no Anexo 1.1.73.

2.2.2.        Opções de Pagamento à escolha do Credor. O Plano confere a determinados Credores Concursais o direito de escolher, dentre um número de opções oferecidas, a alternativa de recebimento de seus Créditos Concursais (indistintamente, "Opções de Pagamento"), nos termos da Cláusula 4.1abaixo. A atribuição da possibilidade de escolher entre as Opções de Pagamento é uma medida que promove o tratamento isonômico entre os Credores Concursais, pois permite a cada Credor Concursal eleger a opção que melhor atenda a seus interesses.

2.2.3.        Antecipação de Pagamentos. As Recuperandas poderão, a qualquer tempo, antecipar quaisquer pagamentos de forma *pro rata* entre os Credores Trabalhistas nos limites previstos na Cláusula 3 abaixo.

**2.3.    Alienação de Bens e Constituição de UPIs.** As Recuperandas estão autorizadas desde já a alienar, vender, locar, arrendar, dar em pagamento, remover, onerar ou oferecer em garantia, inclusive garantia judicial, bens, ativos e/ou direitos que sejam parte de seu ativo circulante, assim como bens, ativos e/ou direitos que sejam parte do seu ativo não-circulante, observados para todos os casos os termos, condições e restrições descritos na Cláusula 5, devendo ainda os recursos líquidos obtidos com eventual alienação, inclusive de ativos litigiosos, presentes ou futuros, nacionais ou estrangeiros, ser utilizados conforme estabelecido neste Plano sempre se observando a Cláusula 1.1.11.

**2.4.    Reorganização Societária.** As Recuperandas ficam autorizadas a realizar operações de reorganização societária, incluindo aquelas necessárias para implementação deste Plano, inclusive fusões, incorporações, incorporações de ações, cisões e transformações, ou promover

25

transferências patrimoniais dentro do Grupo Odebrecht, observados os termos e condições da Cláusula 6.1.

**2.5.      Adesão à Consolidação Substancial**: quaisquer das Requerentes poderão, de maneira irrevogável e irretratável, aderir ao presente Plano, por meio do envio da declaração constante do **Anexo 2.5,** acompanhada de cópia da ata da assembleia geral de credores que deliberar pela adesão ao presente Plano ("Termo de Adesão à Consolidação Substancial"), desde que tais atos sejam realizados em até 90 (noventa) Dias Corridos contados da Data de Homologação Judicial do Plano ("Prazo de Adesão à Consolidação Substancial"). Por meio do Termo de Adesão à Consolidação Substancial, a respectiva Requerente, seus credores, assim como as Recuperandas e os seus Credores Concursais, reconhecem e concordam que, por força da adesão, todos os Créditos Concursais, ativos e passivos da referida Requerente passarão, para todos os fins, a integrar o presente Plano.

## 3.      PAGAMENTO DOS CREDORES

### 3.1.      Créditos Trabalhistas.

3.1.1.      Regra Geral. Os Credores Trabalhistas, exceptuados os Credores Trabalhistas Partes Relacionadas, terão seus Créditos Trabalhistas reestruturados e pagos em recursos monetários nacionais, até o limite de R$ 3.000.000,00 (três milhões de reais), sempre observado o limite do valor do respectivo Crédito Trabalhista, em até 4 (quatro) parcelas, observadas as seguintes regras:

(i)      *1ª Parcela*. Pagamento de até R$ 650.000,00 (seiscentos e cinquenta mil reais), a serem pagos a cada um dos Credores Trabalhistas, em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do Termo Original do Stay Period;

(ii)      *2ª Parcela*. Eventual saldo remanescente de Créditos Trabalhistas existente após o pagamento previsto no item (i) acima receberá pagamento de até R$ 650.000,00 (seiscentos e cinquenta mil reais), em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do pagamento previsto no item (i) acima;

(iii)      *3ª Parcela*. Eventual saldo remanescente de Créditos Trabalhistas existente após o pagamento previsto nos itens (i) e (ii) acima, receberá pagamento de até R$ 850.000,00

26

(oitocentos e cinquenta mil reais), em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do pagamento previsto no item (ii) acima; e

(iv) *4ª Parcela*. Eventual saldo remanescente de Créditos Trabalhistas existente após o pagamento previsto nos itens (i), (ii) e (iii) acima receberá pagamento de até R$ 850.000,00 (oitocentos e cinquenta mil reais), em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do pagamento previsto no item (iii) acima ("Data Final de Pagamento dos Créditos Trabalhistas").

3.1.1.1. Pagamento Diferido. Os pagamentos previstos nos itens (ii) e (iii) acima poderão ser postergados para as datas de pagamento previstas para o ano subsequente e até a Data Final de Pagamento dos Créditos Trabalhistas caso as Recuperandas recebam Dividendos Controladas em montante inferior a R$ 100.000.000,00 (cem milhões de reais) no respectivo ano fiscal de pagamento.

3.1.1.2. Juros e Correção. Juros e correção monetária incidindo sobre respectivo Crédito Trabalhista, correspondentes ao IPCA desde a Data do Pedido até a implementação dos pagamentos previstos na Cláusula 3.1.1 acima.

3.1.1.3. Novação. Os Créditos Trabalhistas serão novados, passando a corresponder a R$ 3.000.000,00 (três milhões de reais), com juros e correção previstos na Cláusula 3.1.1.2 acima, caso o montante do Crédito Trabalhista do respectivo Credor Concursal seja superior a R$ 3.000.000,00 (três milhões de reais).

3.1.2.     Créditos Trabalhistas Partes Relacionadas. Os Credores Trabalhistas que sejam Partes Relacionadas terão seus Créditos Trabalhistas Partes Relacionadas reestruturados e pagos em recursos monetários nacionais, até o limite de 150 (cento e cinquenta) Salários Mínimos, em dinheiro, em parcela única, devida no último Dia Útil do 12º (décimo segundo) mês contado do Termo Original do Stay Period.

3.1.2.1. Juros e Correção. Juros e correção monetária incidindo sobre respectivo Crédito Trabalhista Parte Relacionada, correspondentes ao IPCA desde a Data do Pedido até a implementação do pagamento previsto na Cláusula 3.1.2 acima.

27

3.1.2.2.    Novação. Os Créditos Trabalhistas Partes Relacionadas serão novados, passando a corresponder ao equivalente a 150 (cento e cinquenta) Salários Mínimos, com juros e correção previstos na Cláusula 3.1.2 acima, caso o montante do Crédito Trabalhistas Parte Relacionadas do respectivo Credor Concursal seja superior a 150 (cento e cinquenta) Salários Mínimos.

3.1.3.    Créditos Trabalhistas Retardatários. Os Créditos Trabalhistas Retardatários serão pagos na forma descrita nas Cláusulas 3.1.1 e 3.1.2, conforme aplicável, sendo o primeiro pagamento devido no último Dia Útil do 12º (décimo segundo) mês contado da data da certidão de trânsito em julgado da decisão que determinar a inclusão do referido Crédito Trabalhista na Lista de Credores.

3.1.4.    Quitação. A implementação dos pagamentos previstos nestas Cláusulas 3.1.1 e 3.1.2 implica, necessariamente, na mais ampla, geral e irrestrita quitação do Crédito Trabalhista em questão.

**3.2.    Créditos com Garantia Real.** Os Credores com Garantia Real terão seus Créditos com Garantia Real reestruturados e integralmente pagos por meio de Instrumentos de Pagamento, conforme oportunamente eleitos, cujos termos e condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73**.

3.2.1.    Critério de Subscrição. Cada Credor com Garantia Real terá o direito de receber ou subscrever R$ 1,00 (um real), conforme aplicável, de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real), conforme aplicável, em Créditos com Garantia Real ("Créditos com Garantia Real Elegíveis para Subscrição de Instrumentos de Pagamento"). Caso necessário, os Créditos Concursais denominados em moeda estrangeira serão convertidos para real ou dólar norte-americano de acordo com as taxas de câmbio de venda disponíveis no Sistema de Informações do Banco Central do Brasil (SISBACEN), no Dia Útil imediatamente anterior à data do ato a ser praticado nos termos deste Plano.

3.2.2.    Garantia Reais. Os Créditos com Garantia Real serão garantidos pelos seus respectivos direitos reais em garantia atualmente constituídos. Para que não restem dúvidas, as Garantias Reais atualmente constituídas para cada um dos Credores com Garantia Real não serão compartilhadas com os demais Credores Concursais.

3.2.3.    Dação em Pagamento. Os Credores com Garantia Real que desejarem receber o bem gravado com garantia real em pagamento dos respectivos Créditos com Garantia Real deverão enviar notificação para as Recuperandas, no prazo de 30 (trinta) Dias Corridos contados do término do Prazo de Adesão à Consolidação Substancial e na forma da Cláusula 8.3, comunicando sua opção, a qual será considerada final, definitiva, vinculante, irrevogável e irretratável. As Recuperadas deverão praticar todos os atos necessários para implementar a dação em pagamento nos termos convencionados com o respectivo Credor com Garantia Real.

3.2.3.1.    Transcorrido o prazo indicado na Cláusula 3.2.3 acima, a dação dos bens gravados com garantia real em pagamento dos respectivos Créditos com Garantia Real somente será implementada caso convencionada de comum acordo entre a(s) Recuperanda(s) e o respectivo Credor com Garantia Real.

3.2.3.2. Eventual saldo remanescente de Créditos com Garantia Real, após a implementação da dação em pagamento dos bens gravados com garantia real previstas nas Cláusulas 3.2.3 e 3.2.3.1 acima, será considerado um Crédito Quirografário Financeiro Elegível para Subscrição de Instrumentos de Pagamento.

3.2.4.    Créditos Com Garantia Real Retardatários. Os Créditos com Garantia Real que sejam Créditos Retardatários serão reestruturados e pagos na forma descrita na Cláusula 3.2 acima, sendo certo que (i) o prazo indicado na Cláusula 3.2.3 somente terá início após a efetiva inclusão do referido Crédito Retardatário na Lista de Credores; e (ii) os respectivos Credores com Garantia Real terão direito a receber todos os pagamentos realizados em data-base posterior ao trânsito em julgado da decisão que determinar a inclusão do referido Crédito Retardatário na Lista de Credores.

**3.3.    Créditos Quirografários.**

3.3.1.    Créditos Quirografários Financeiros. Os Credores Quirografários Financeiros poderão eleger a forma de pagamento de seus Créditos Quirografários Financeiros, de acordo com uma das seguintes Opções de Pagamento, e desde que observado o procedimento para eleição de Opção de Pagamento descrito na Cláusula 4.2 abaixo:

3.3.1.1.    Opção A – Créditos Quirografários Financeiros. Credores Quirografários Financeiros que validamente elegerem a presente Opção A ("Opção A – Créditos

29

Quirografários Financeiros") terão seus Créditos Quirografários Financeiros reestruturados e pagos em recursos monetários nacionais, até o limite de R$ 150.000,00 (cento e cinquenta mil reais), em dinheiro, em parcela única, no último Dia Útil do 12º (décimo segundo) mês contado da Data de Homologação Judicial do Plano ("Créditos Quirografários Financeiros – Opção A").

3.3.1.1.1.    Juros e Correção. Juros e correção monetária incidindo sobre o respectivo montante de Créditos Quirografários Financeiros e sobre o limite de R$ 150.000,00 (cento e cinquenta mil reais), previsto na Cláusula 3.3.1.1 acima, correspondentes à TR desde a Data do Pedido até a data do efetivo pagamento.

3.3.1.1.2.    Novação. Os Créditos Quirografários Financeiros – Opção A serão novados, passando a corresponder a R$ 150.000,00 (cento e cinquenta mil reais), com juros e correção previstos na Cláusula 3.3.1.1.1 acima, caso o montante do Crédito Quirografário Financeiro – Opção A do respectivo Credor Concursal seja superior a R$ 150.000,00 (cento e cinquenta mil reais).

3.3.1.1.3.    Quitação. A escolha dessa opção e o respectivo pagamento ora previsto implica, necessariamente, ampla, geral e irrestrita quitação do Crédito Quirografário Financeiro em questão.

3.3.1.2.    Opção B – Créditos Quirografários Financeiros. Os Credores Quirografários Financeiros que validamente elegerem a presente Opção B ("Opção B – Créditos Quirografários Financeiros") terão seus Créditos Quirografários Financeiros reestruturados e integralmente pagos por meio de Instrumentos de Pagamento, conforme oportunamente eleito, cujos termos e condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73** ("Créditos Quirografários Financeiros – Opção B").

3.3.1.2.1.    Critério de Subscrição. Cada Credor Quirografário Financeiro que eleger a Opção B – Créditos Quirografários Financeiros terá o direito de receber ou subscrever R$ 1,00 (um real), conforme aplicável, de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real), conforme aplicável, em Créditos Quirografários Financeiros ("Créditos Quirografários Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento"). Caso necessário, os Créditos Concursais denominados

em moeda estrangeira serão convertidos para real ou dólar norte-americano de acordo com as taxas de câmbio de venda disponíveis no Sistema de Informações do Banco Central do Brasil (SISBACEN), no Dia Útil imediatamente anterior à data do ato a ser praticado nos termos deste Plano.

3.3.2.     Créditos Quirografários Não Financeiros. Os Credores Quirografários Não Financeiros poderão eleger a forma de pagamento de seus Créditos Quirografários Não Financeiros, de acordo com uma das Opções de Pagamento abaixo descritas, e desde que observado o procedimento para eleição de Opção de Pagamento descrito na Cláusula 4.2 abaixo:

3.3.2.1.     Opção A – Créditos Quirografários Não Financeiros. Credores Quirografários Não Financeiros que validamente elegerem a presente Opção A ("Opção A – Créditos Quirografários Não Financeiros") terão seus Créditos Quirografários Não Financeiros reestruturados e pagos em recursos monetários nacionais, até o limite de R$ 150.000,00 (cento e cinquenta mil reais), em dinheiro, em parcela única, no último Dia Útil do 12º (décimo segundo) mês contado da Data de Homologação Judicial do Plano ("Créditos Quirografários Não Financeiros Opção A").

3.3.2.1.1.     Juros e Correção. Juros e correção monetária incidindo sobre o respectivo montante de Créditos Quirografários Não Financeiros Opção A e sobre o limite de R$ 150.000,00 (cento e cinquenta mil reais), previsto na Cláusula 3.3.2.1 acima, correspondentes à TR desde a Data do Pedido até a data do efetivo pagamento.

3.3.2.1.2.     Novação. Os Créditos Quirografários Não Financeiros Opção A serão novados, passando a corresponder a R$ 150.000,00 (cento e cinquenta mil reais), com juros e correção previstos na Cláusula 3.3.2.1.1 acima, caso o montante do Crédito Quirografário Não Financeiro Opção A do respectivo Credor Concursal seja superior a R$ 150.000,00 (cento e cinquenta mil reais).

3.3.2.1.3.     Quitação. A escolha dessa opção e o respectivo pagamento ora previsto implica, necessariamente, ampla, geral e irrestrita quitação do Crédito Quirografário Não Financeiro em questão.

3.3.2.2.     Opção B – Créditos Quirografários Não Financeiros. Credores Quirografários Não Financeiros que validamente elegerem a presente Opção B ("Opção B – Créditos

31

Quirografários Não Financeiros") terão seus Créditos Quirografários Não Financeiros
("Créditos Quirografários Não Financeiros Opção B") reestruturados e pagos por meio da
combinação de (i) pagamento em dinheiro, com recursos monetários nacionais sujeito aos
e decorrentes dos eventos detalhados nas Cláusulas 3.3.2.2.1 e 3.3.2.2.1.2 ("Pagamentos
em Dinheiro"); e (ii) e Instrumentos de Pagamento, sujeitos aos termos, condições e
limites detalhados na Cláusula 3.3.2.2.2, conforme aplicável e da seguinte forma:

(i)        *para Créditos Quirografários Não Financeiros Opção B até R$ 750.000,00
(setecentos e cinquenta mil reais)*, o Credor receberá o montante integral de seu Crédito
por meio de Pagamento em Dinheiro;

(ii)       *para Créditos Quirografários Não Financeiros Opção B superiores a R$
750.000,00 (setecentos e cinquenta mil reais) e inferiores ou iguais a R$ 1.071.429,00
(um milhão, setenta e um mil, quatrocentos e vinte nove reais)*, o Credor receberá seu
Crédito por meio da combinação entre ((ii).1 Pagamento em Dinheiro, até o limite de R$
750.000,00 (setecentos e cinquenta mil reais) e ((ii).2) para o saldo de Crédito
Quirografários Não Financeiros Opção B remanescente, Instrumentos de Pagamento;

(iii)      *para Créditos Quirografários Não Financeiros Opção B superiores a R$
1.071.429,00 (um milhão, setenta e um mil, quatrocentos e vinte nove reais) e inferiores
ou iguais a R$ 4.285.714,00 (quatro milhões, duzentos e oitenta e cinco mil, setecentos e
catorze reais)*, o Credor receberá seu Crédito por meio da combinação entre ((iii).1)
Pagamento em Dinheiro, em montante correspondente a 70% (setenta por cento) de seu
Crédito Quirografário Não Financeiro Opção B; e ((iii).2) para o saldo de Crédito
Quirografários Não Financeiros Opção B remanescente, Instrumentos de Pagamento,
sujeitos aos termos, condições e limites detalhados na Cláusula 3.3.2.2.2; e

(iv)       *para Créditos Quirografários Não Financeiros Opção B superiores a R$
4.285.714,00 (quatro milhões, duzentos e oitenta e cinco mil, setecentos e catorze reais)*,
o Credor receberá seu Crédito por meio da combinação entre ((iv).1 Pagamento em
Dinheiro, correspondente a R$ 3.000.000,00 (três milhões de reais); e ((iv).2) para o saldo
de Crédito Quirografários Não Financeiros Opção B remanescente, Instrumentos de
Pagamento, sujeitos aos termos, condições e limites detalhados na Cláusula 3.3.2.2.2.

3.3.2.2.1.    <u>Fontes do Pagamento em Dinheiro</u>. Os Pagamentos em Dinheiro descritos na Cláusula 3.3.2.2 terão origem nas seguintes fontes:

3.3.2.2.1.1.    <u>Primeiro Componente – Dividendos Controladas</u>. Pagamento em recursos monetários nacionais, mediante recebimento, pelas Recuperandas, de recursos a título de Dividendos Controladas referentes aos anos fiscais de 2019, 2020 e 2021, de acordo com a Cascata de Dividendos Controladas, até o limite de R$ 39.000.000,00 (trinta e nove milhões de reais) por ano, a serem distribuídos igualmente entre os Credores Quirografários Não Financeiros Opção B, e pagos em até 60 (sessenta) Dias Corridos contados da data em que quaisquer Recuperandas efetivamente recebam Dividendos Controladas.

3.3.2.2.1.1.1.    Para fins da Cláusula 3.3.2.2.1.1 acima, caso em um dos anos de distribuição de Dividendos Controladas o montante de Pagamento em Dinheiro - Dividendos Controladas seja inferior a R$ 39.000.000,00 (trinta e nove milhões de reais), o referido saldo remanescente deverá ser acrescido ao limite anual do(s) ano(s) subsequente(s), conforme aplicável.

3.3.2.2.1.2.    <u>Segundo Componente – Caixa para Distribuição</u>. Eventual saldo remanescente de Créditos Quirografários Não Financeiros Opção B após pagamentos previstos na Cláusula 3.3.2.2.1.1, será pago com recursos monetários nacionais, até o limite agregado de R$ 150.000.000,00 (cento e cinquenta milhões de reais), por meio da alocação do Caixa para Distribuição, observada a Regra de Utilização do Caixa para Distribuição, a serem distribuídos *pro rata* entre os referidos saldos de Créditos Quirografários Não Financeiros Opção B, e pagos nas Datas de Amortização.

3.3.2.2.1.3.    <u>Pagamentos e Limites</u>. Para que não restem dúvidas, o montante efetivamente recebido por cada Credor Quirografário Não Financeiro Opção B como resultado da soma dos Pagamentos em Dinheiro jamais poderá ser superior aos montantes de Pagamento em Dinheiro indicados nos itens (i) a (iv) da Cláusula 3.3.2.2, conforme aplicável.

3.3.2.2.2.    <u>Pagamento em Instrumentos de Pagamento</u>. Eventual saldo de Créditos Quirografários Não Financeiros Opção B após os pagamentos previstos na Cláusula 3.3.2.2 acima fará jus ao recebimento de Instrumentos de Pagamento, cujos termos e

33

condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73**, que é parte integrante deste Plano para todos os fins e efeitos.

3.3.2.2.2.1.        Critério de Subscrição. Cada Credor Quirografário Não Financeiro Opção B terá o direito de receber ou subscrever R$ 1,00 (um real) de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real) em saldo de Créditos Quirografários Não Financeiros Opção B calculado conforme a Cláusula 3.3.2.2.2 acima. Caso necessário, os Créditos Concursais denominados em moeda estrangeira serão convertidos para real ou dólar norte-americano de acordo com as taxas de câmbio de venda disponíveis no Sistema de Informações do Banco Central do Brasil (SISBACEN), no Dia Útil imediatamente anterior à data do ato a ser praticado nos termos deste Plano. ("Créditos Quirografários Não Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento").

3.3.2.2.2.2.        Instrumentos de Pagamento Adicionais. Caso os Pagamentos em Dinheiro efetuados na forma descrita acima, até 31 de dezembro de 2025, sejam inferiores aos montantes indicados nos itens (i) a (iv) da Cláusula 3.3.2.2 para Pagamentos em Dinheiro, tal diferença será considerada um Crédito Quirografário Não Financeiro Elegível para Subscrição de Instrumentos de Pagamento, e passará a ser reestruturada e paga por meios dos Instrumentos de Pagamento. Para que não restem dúvidas, os Credores Quirografários Não Financeiros Opção B não farão jus ao recebimento de qualquer quantia paga no âmbito dos Instrumentos de Pagamento anteriormente à emissão dos Instrumentos de Pagamento adicionais por força desta Cláusula 3.3.2.2.2.2.

3.3.2.2.3.    Juros e Correção. Juros e correção monetária (i) sobre Créditos Quirografários Não Financeiros Opção B que fizerem jus a Pagamentos em Dinheiro, a serem incorporados no valor de principal devido, correspondente ao IPCA, desde a Data do Pedido até a implementação de todos os pagamentos previstos na Cláusula 3.3.2.2.1; (ii) sobre os limites de Dividendos Controladas e Caixa para Distribuição descritos nas Cláusulas 3.3.2.2.1.1 e 3.3.2.2.1.2, correspondente à TR, desde a Data da Homologação Judicial do Plano; e (iii) nas hipóteses constantes da Cláusula 3.3.2.2.2, correspondentes à taxa prevista no item 3 do **Anexo 1.1.73**.

3.3.3.    Credores Quirografários Retardatários e Opção Padrão de Pagamento. Os Credores Quirografários que não validamente realizarem a Eleição de Opção de Pagamento, assim como os Credores Quirografários que sejam Credores Retardatários, serão reestruturados e pagos necessariamente nos termos da Opção B – Créditos Quirografários Financeiros ou da Opção B – Créditos Quirografários Não Financeiros, conforme aplicável, sendo que (i) para os pagamentos a título de Pagamento em Dinheiro, se aplicável, o primeiro pagamento será devido apenas no último Dia Útil do 12º (décimo segundo) mês contado da data da certidão de trânsito em julgado da decisão que determinar a inclusão do referido Crédito Quirografário na Lista de Credores; e (ii) para os pagamentos a título de Instrumentos de Pagamento, os respectivos Credores Concursais terão direito a receber todos os pagamentos realizados em data-base posterior ao trânsito em julgado da decisão que determinar a inclusão do referido Crédito Retardatário na Lista de Credores.

3.3.4.    Pagamento dos Credores Quirografários Partes Relacionadas. O pagamento dos Créditos Quirografários detidos por Credores Quirografários Partes Relacionadas estará subordinado à quitação integral dos Créditos Quirografários dos demais Credores Quirografários, sendo certo que, após a integral quitação destes, os Credores Quirografários Partes Relacionadas terão seus Créditos Quirografários pagos nos termos das Cláusulas 3.3.1, 3.3.2 ou 3.3.3 acima, conforme aplicável.

**3.4.    Créditos ME/EPP.** Os Credores ME/EPP terão seus Créditos ME/EPP reestruturados e integralmente pagos da seguinte forma:

3.4.1.    Pagamento Inicial. Pagamento em recursos monetários nacionais, até o limite de R$ 150.000,00 (cento e cinquenta mil reais) por Credor ME/EPP, em dinheiro, em parcela única, no último Dia Útil do 12º (décimo segundo) mês contado da Data de Homologação Judicial do Plano.

3.4.2.    Pagamento em Instrumentos de Pagamento. Eventual saldo remanescente existente após o pagamento previsto na Cláusula 3.4.1 acima (sendo tal saldo de Créditos ME/EPP doravante referido como "Saldo de Créditos ME/EPP"), será pago em Instrumentos de Pagamento, cujos termos e condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73**, e segundo os termos e condições de eleição de modalidade de Instrumentos de Pagamento descritos na Cláusula 4.1 abaixo.

35

3.4.2.1.  Critério de Subscrição. Cada Credor ME/EPP terá o direito de receber ou subscrever R$ 1,00 (um real) de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real) em Saldo de Créditos ME/EPP ("Créditos ME/EPP Elegíveis para Subscrição de Instrumentos de Pagamento").

3.4.3.    Juros e Correção. Juros e correção monetária (i) sobre o saldo de Créditos ME/EPP devidos nos termos da Cláusula 3.4.1, a serem incorporados no valor de principal devido, bem como sobre os valores indicados na Cláusula 3.4.1, correspondentes ao IPCA; e (ii) nas hipóteses constantes da Cláusula 3.4.2, correspondentes à taxa prevista na Cláusula 3 do **Anexo 1.1.73.**

3.4.4.    Crédito ME/EPP Retardatário. Os Créditos ME/EPP Retardatários serão pagos na forma descrita na Cláusula 3.4.1 acima, contando-se o termo inicial para pagamento a partir do trânsito em julgado da decisão que determinar a inclusão do referido Crédito ME/EPP Retardatário na Lista de Credores. Os Créditos ME/EPP Retardatários que tenham valor superior ao limite estabelecido na Cláusula 3.4.1 acima, serão pagos por meio de Instrumentos de Pagamento – Debêntures Privadas, sendo certo que os Credores ME/EPP Retardatários titulares de tais Créditos somente farão jus ao recebimento dos Recursos de Distribuição aos Instrumentos de Pagamento e recursos decorrentes de Eventos de Amortização Extraordinários destinados aos titulares de Instrumentos de Pagamento, após o trânsito em julgado da decisão que determinar a inclusão do referido Crédito Retardatário na Lista de Credores.

**3.5.**    **Créditos Ilíquidos.** Todos os Créditos Ilíquidos, incluindo os Créditos ainda sujeitos a Ações Judiciais e/ou Procedimentos Arbitrais, que são tratados neste Plano como Créditos Ilíquidos, estão integralmente sujeitos aos termos e condições deste Plano e aos efeitos da Recuperação Judicial, nos termos do artigo 49 da LFR. Os Créditos Ilíquidos, uma vez materializados e reconhecidos por decisão judicial transitada em julgado e/ou arbitral final e irrecorrível, serão pagos conforme tratamento atribuídos aos Créditos Retardatários nos termos deste Plano e na classe correspondente ao Crédito Ilíquido em questão.

**3.6.**    **Créditos *Intercompany*.** O pagamento dos Créditos *Intercompany* será, em quaisquer hipóteses, subordinado a todos os Créditos Concursais em termos de estrutura, garantias e tempo de pagamento. Os Créditos *Intercompany* poderão ser convertidos em capital social ou poderão ser objeto de compensação, nos termos dos artigos 368 e seguintes do Código Civil (inclusive o

artigo 380), desde que, em qualquer das hipóteses, a conversão em capital, subordinação ou compensação (cumulativamente): (i) não gere transferência ou impacto de caixa; (ii) não implique qualquer tipo de desembolso pelas Recuperandas ou Requerentes; (iii) não resulte na ampliação do valor da exposição de crédito ou de débito de qualquer Recuperanda ou Requerente, como credora ou devedora de qualquer uma delas, entre si; (iv) não reduza ou afete negativamente as obrigações de pagamento das Recuperandas e Requerentes neste Plano; e (v) não reduza, coloque em risco ou afete negativamente, os direitos, créditos e prerrogativas, incluindo garantias, dos Credores Concursais e dos Credores Extraconcursais não envolvidos na operação, e segundo a legislação aplicável, observado o quanto previsto nas Cláusulas 6.1 e 7.4. As Recuperandas e as Requerentes poderão oportunamente convencionar formas alternativas de extinção desses Créditos *Intercompany* observadas as hipóteses, cumulativamente, dos itens (i) a (v) desta Cláusula, os procedimentos e legislação aplicáveis e o disposto neste Plano.

**3.7.   Disposições Gerais de Pagamento dos Créditos Concursais**

3.7.1.    Reclassificação de Créditos. Na hipótese de Créditos Concursais indicados na Lista de Credores sobre os quais, na Homologação Judicial do Plano, haja impugnação de crédito que verse sobre a sua reclassificação ainda pendente de decisão judicial transitada em julgado, o respectivo Credor Concursal está sujeito aos termos e condições de pagamento aplicáveis à classe na qual seu Crédito encontra-se alocado na Homologação Judicial do Plano até a data da certidão de trânsito em julgado da decisão judicial que determinar sua reclassificação, sendo certo que o Credor deverá adotar todas as medidas perante as Recuperandas para que seja promovida a alteração dos termos e condições de pagamento de seus Créditos em conformidade com a sua nova classe. Caso seja posteriormente reconhecida a reclassificação do Crédito que implique modificação dos termos e condições de pagamento já aplicados: (i) na hipótese de tal modificação representar majoração dos valores a serem pagos, o saldo majorado do respectivo Crédito será considerado Crédito Retardatário para fins de pagamento, sendo certo os Créditos reclassificados não farão jus a pagamentos que já tenham sido realizados às classes para as quais tenham sido realocados em decorrência da reclassificação, ou (ii) na hipótese de tal modificação representar diminuição dos valores a serem pagos ou a entrega de outro meio de recuperação, o Credor Concursal deverá restituir à Recuperanda os valores que já tenham sido pagos e que superem o valor de seu Crédito, tal como retificado, ou os títulos mobiliários que tenham sido a ele entregues, indevidamente, em correspondência ao montante reduzido.

3.7.2.    Majoração dos Créditos. Na hipótese de se verificar eventual majoração no valor de qualquer Crédito decorrente de decisão judicial transitada em julgado ou acordo entre as partes, o montante correspondente à diferença entre o Crédito decorrente de decisão judicial transitada em julgado ou acordo entre as partes e o montante reconhecido na Lista de Credores será pago na forma prevista neste Plano para os Créditos Retardatários de cada classe. Neste caso, as regras de pagamento do valor majorado de tais Créditos, notadamente quanto à incidência de juros, passarão a ser aplicáveis apenas a partir do referido trânsito em julgado da decisão judicial ou da data de celebração do acordo entre as partes.

3.7.3.    Redução dos Créditos. Na hipótese de se verificar eventual redução no valor de Créditos decorrentes de decisão judicial transitada em julgado ou acordo entre as partes, e a consequente retificação da Lista de Credores, o Credor Concursal titular do respectivo Crédito Concursal deverá restituir às Recuperandas, no prazo de 10 (dez) Dias Úteis a contar do referido trânsito em julgado ou acordo entre as partes, conforme o caso, os valores que já tenham sido pagos e que superem o valor de seu Crédito Concursal, tal como retificado, ou os títulos mobiliários que tenham sido a ele entregues, indevidamente, em correspondência ao montante reduzido.

3.7.4.    Notificação. Para fins desta Cláusula, o Credor Concursal deverá notificar a Recuperandas, na forma da Cláusula 8.3, para comunicar o trânsito em julgado da decisão judicial que houver reconhecido a alteração do Crédito Concursal já reconhecido na Lista de Credores do Administrador Judicial.

3.7.5.    Data do Pagamento. Na hipótese de qualquer pagamento ou obrigação desde Plano estar previsto para ser realizado ou satisfeita em um dia que não seja considerado um Dia Útil, o referido pagamento ou obrigação deverá ser realizado ou satisfeita, conforme o caso, no Dia Útil seguinte.

3.7.6.    Forma de Pagamento. Conforme aplicável, os valores devidos nos termos deste Plano serão pagos por meio da transferência direta de recursos à conta bancária do respectivo credor, incluindo envio de ordens de pagamento ou remessa para o exterior, por meio de documento de ordem de crédito (DOC), ou de transferência eletrônica disponível (TED), ou qualquer outro documento que comprove a transação, sendo que as Recuperandas poderão contratar um agente de pagamento para tanto. O comprovante de depósito do valor creditado servirá de prova de quitação do respectivo pagamento.

38

3.7.7.    Contas Bancárias dos Credores. Conforme aplicável, os Credores Concursais devem informar às Recuperandas, nos contatos indicados e na forma da Cláusula 8.3, suas respectivas contas bancárias para esse fim.

3.7.7.1.    Ausência de indicação de Contas Bancárias. Os pagamentos que não forem realizados em razão de os Credores Concursais não terem informado suas contas bancárias ou terem prestado essa informação de maneira equivocada ou incompleta não serão considerados como descumprimento do Plano. Não haverá a incidência de juros ou encargos moratórios se os pagamentos não tiverem sido realizados em razão de os Credores Concursais não terem informado tempestivamente e corretamente seus dados bancários para depósito.

3.7.8.    Alteração da Titularidade de Crédito Concursal. Na hipótese de se verificar a eventual alteração da titularidade de determinado Crédito Concursal, seja por cessão, sucessão, sub-rogação ou qualquer outra forma admitida, durante a vigência e o cumprimento deste Plano, caberá ao respectivo cessionário, sucessor ou credor por sub-rogação adotar as medidas necessárias para reconhecimento de sua titularidade sobre o Crédito Concursal em questão e para retificação da Lista de Credores, devendo notificar as Recuperandas e, até que a Recuperação Judicial seja encerrada, notificar também o Juízo da Recuperação Judicial e o Administrador Judicial, na forma da Cláusula 8.3. Em qualquer caso, a alteração na titularidade do Crédito Concursal não afetará os pagamentos que tenham sido eventualmente realizados ao Credor Concursal original, ou a modalidade de Instrumento de Pagamento eleita por ele na forma deste Plano.

3.7.8.1.    Partes Relacionadas. Caso o cessionário ou o cedente do Crédito Concursal seja um Credor Quirografário Parte Relacionada ou integrante do Grupo Odebrecht, o respectivo Crédito Concursal será pago nos termos das Cláusulas 3.3.4 e 3.6, respectivamente.

3.7.9.    Pagamentos por Terceiros. Os Credores Concursais que sejam titulares de Créditos Concursais nos quais um Terceiro figure como devedor principal ou garantidor, deverão observar os seguintes termos:

3.7.9.1. Créditos Concursais por Força de Garantias Outorgadas por Recuperandas. Os Créditos Concursais que correspondam a obrigações de pagamento nas quais uma ou mais

39

Recuperandas figurem como prestadoras de garantias que não sejam fiduciárias ("Créditos Concursais por Garantia Outorgada por Recuperandas"), terão, exclusivamente no que se refere a tais garantias, seus Créditos Concursais por Garantia Outorgada por Recuperandas reestruturados nos termos da Cláusula 3 deste Plano e tais Credores Concursais receberão, por parte das Recuperandas, seus Créditos Concursais na mesma forma que os demais Credores Concursais da sua classe, independentemente da exigibilidade da dívida contra o devedor principal. As obrigações de Terceiros garantidas por Recuperandas se manterão válidas, vigentes, exigíveis e eficazes de acordo com os seus respectivos termos e condições. Nada neste Plano significará ou deverá ser interpretado ou usado para alterar ou modificar tais obrigações de Terceiros, independentemente da novação dos termos do pagamento da respectiva Coobrigação prestada por qualquer Recuperanda, podendo tais Credores exigir ou cobrar a dívida de tal Terceiro de acordo com os termos dos respectivos instrumentos, sem prejuízo, caso qualquer Credor opte, a seu exclusivo critério, por exercer uma das Opções de Pagamento constantes das Cláusulas 4.1.2.1 e 4.1.3.1.

3.7.9.1.1.    Créditos Concursais por Garantias Outorgadas por Recuperandas que Sejam Efetivamente Pagos por Terceiro. Sem prejuízo do quanto disposto na Cláusula 7.7, caso os Créditos Concursais por Garantia Outorgada por Recuperandas sejam, a qualquer tempo, no todo ou em parte, pagos pelo respectivo Terceiro (na qualidade de devedor principal) ou em benefício deste Terceiro, os referidos Créditos Concursais serão considerados amortizados, no que se refere às obrigações das Recuperandas previstas neste Plano, sob pena de enriquecimento sem causa do Credor. O saldo de Créditos existente segundo as condições originalmente contratadas que não tenha sido amortizado por meio do pagamento referido nesta Cláusula, também não será considerado quitado em relação ao Crédito Concursal por Garantia Outorgada por Recuperanda em questão, sendo certo que as Recuperandas jamais serão obrigadas a realizar qualquer pagamento que supere o valor do Crédito Concursal corrigido e remunerado nos termos deste Plano. Caso as Recuperandas tenham efetuado qualquer pagamento ou celebrado a dação em pagamento prevista na Cláusula 3.2.3.1 que, somados a eventuais valores pagos pelo Terceiro, supere o valor do Crédito nas condições originalmente contratadas, incluindo principal, juros e demais encargos incidentes até o respectivo pagamento, e/ou entregue Instrumentos de Pagamento – Bonds, Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas em benefício de tal Credor Concursal, o referido Credor Concursal deverá devolver às Recuperandas, imediatamente, os montantes

40

pagos e/ou os referidos títulos recebidos a maior (ou seja, incluindo principal, juros e demais encargos incidentes até o respectivo pagamento). Caso as Recuperandas ainda não tenham efetuado qualquer pagamento, e/ou entregue Instrumentos de Pagamento – *Bonds*, Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas ao referido Credor Concursal e o Credor Concursal tenha recebido a totalidade dos valores devidos nos termos originais dessa dívida de Terceiro, as Recuperandas ficarão desobrigadas de efetuar os respectivos pagamentos ou de entregar os respectivos Instrumentos de Pagamento – *Bonds*, Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas em sua totalidade ou na proporção dos Créditos Concursais pagos pelo Terceiro.

3.7.9.1.2.    <u>Reestruturação do Crédito celebrada com Terceiro</u>. Eventual reestruturação de Créditos Concursais por Garantias Outorgadas por Recuperandas celebrada com Terceiros após a Data do Pedido não altera as condições, valores e garantias originais desses Créditos Concursais contra as Recuperandas, que realizarão o pagamento de acordo com os termos e condições estabelecidas neste Plano.

3.7.9.2. <u>Créditos Concursais Garantidos por Terceiro</u>. Os Credores Concursais cujos Créditos Concursais correspondam a obrigações de pagamento nas quais uma Recuperanda figure como devedora principal e um ou mais Terceiros figurem como garantidores ("<u>Créditos Concursais Garantidos por Terceiro</u>"), terão seus Créditos Concursais Garantidos por Terceiro pagos nos termos da Cláusula 3 deste Plano, e poderão eleger quaisquer das modalidades de Instrumentos de Pagamento nos termos da Cláusula 4.1 fazendo jus a quaisquer pagamentos feitos nos termos deste Plano, sem prejuízo do direito dos Credores Concursais de perseguirem o recebimento dos Créditos, nas condições originalmente contratadas, contra o Terceiro. As garantias de Terceiros se manterão válidas, vigentes, exigíveis e eficazes de acordo com os seus respectivos termos e condições originalmente contratados. Nada neste Plano significará ou deverá ser interpretado ou usado para alterar ou modificar tais obrigações de Terceiros, independentemente da novação dos termos do pagamento do Crédito Concursal por qualquer Recuperanda, podendo os Credores exigir ou cobrar a dívida, nas condições originalmente contratadas, de tal Terceiro de acordo com os termos dos respectivos instrumentos.

41

3.7.9.2.1.    Créditos Concursais Garantidos por Terceiro que Sejam Efetivamente Pagos por Terceiro. Caso os Créditos Concursais Garantidos por Terceiros sejam, a qualquer tempo, no todo ou em parte, pagos pelo respectivo Terceiro ou em benefício deste Terceiro, o Terceiro se sub-rogará nos direitos do respectivo Credor Concursal, observado, em caso de sub-rogação parcial do Terceiro nos direitos do Credor Concursal, o previsto no art. 351 do Código Civil, aplicando-se o quanto disposto na Cláusula 3.7.8 e 3.7.8.1.

3.7.9.2.2.    Reestruturação do Crédito Garantidos por Terceiro celebrada com Terceiro. Eventual reestruturação de Créditos Concursais Garantidos por Terceiros celebrada com Terceiro após da Data do Pedido não altera as condições, valores e garantias originais desses Créditos Concursais contra as Recuperandas, que realizarão o pagamento de acordo com os termos e condições estabelecidas neste Plano independentemente das condições reestruturadas com o Terceiro.

3.7.10.    Compensação. As Recuperandas estão autorizadas a efetuar compensações de crédito, nos termos do artigo 368 e seguintes do Código Civil, nos casos em que as Recuperandas e seus Credores Concursais possuírem obrigações recíprocas de créditos e débitos, desde que prévia e expressamente autorizadas pelos respectivos Credores Concursais. Para que não restem dúvidas, eventual saldo remanescente após efetuada a compensação prevista nesta Cláusula receberá o tratamento conferido à natureza do respectivo Crédito, nos termos deste Plano. Esta Cláusula não se aplica à compensação dos Créditos *Intercompany,* os quais devem observar as disposições da Cláusula 3.6.

3.7.11.    Custos e Tributos. As obrigações financeiras decorrentes do presente Plano e todos os pagamentos a serem realizados pelas Recuperandas, nos termos deste Plano, serão cumpridos e pagos, líquidos de quaisquer tributos presentes e futuros, impostos, encargos, taxas ou outras cobranças de qualquer natureza.

**3.8.    Créditos Extraconcursais**. Fica ressaltado que os Créditos Extraconcursais não estão sujeitos e não serão novados por força da aprovação do presente Plano, sendo certo que a sua reestruturação dependerá de negociações bilaterais com os Credores Extraconcursais, bem como que nada neste Plano poderá desconstituir ou de qualquer forma modificar garantias fiduciárias outorgadas em favor de Credores Extraconcursais.

42

3.8.1.    <u>Garantias Fiduciárias Outorgadas por Recuperandas</u>. As garantias fiduciárias outorgadas por Recuperandas, inclusive no âmbito da Consolidação Substancial das Recuperandas, se manterão válidas, vigentes, exigíveis e eficazes de acordo com os seus respectivos termos e condições originalmente contratados. Nada neste Plano significará ou deverá ser interpretado ou usado para alterar ou modificar tais obrigações e prerrogativas decorrentes de tais garantias fiduciárias, podendo os Credores exigir a garantia fiduciária, nas condições originalmente contratadas.

## 4.    ATOS DE IMPLEMENTAÇÃO DA REESTRUTURAÇÃO DOS CRÉDITOS

**4.1.    Eleição do Instrumento de Pagamento**. Os Credores com Garantia Real, Credores Quirografários Financeiros Opção B, os Credores Quirografários Não Financeiros Opção B e os Credores ME/EPP que tiverem seus Créditos Concursais reestruturados por meio de Instrumentos de Pagamento poderão escolher dentre os seguintes títulos de dívida, observados os requisitos a seguir descritos, sendo certo que tais Credores poderão escolher mais de um título de dívida para receber seus Créditos Concursais:

4.1.1.    <u>Plano</u>. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento poderão optar por ter os termos e condições da reestruturação de seus Créditos Elegíveis para Subscrição de Instrumentos de Pagamento instrumentalizados pelo Plano na forma do **Anexo 1.1.73**, sem a emissão de quaisquer valores mobiliários, que, por força da Homologação Judicial, passarão a reger os termos de pagamento dos respectivos Créditos Concursais ("<u>Instrumentos de Pagamento – Plano</u>").

4.1.1.1.    <u>Efeitos da Opção</u>. A opção pelo recebimento do Crédito Concursal por meio do Instrumento de Pagamento – Plano não implica na quitação de obrigação de Terceiro perante o respectivo Credor Concursal, observadas as Cláusulas 3.7.9 e seguintes.

4.1.2.    <u>Debêntures Privadas</u>. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento poderão optar por subscrever, com seus Créditos Concursais, debêntures colocadas privadamente, a serem emitidas por meio de escritura de emissão em forma substancialmente igual à minuta presente no **Anexo 4.1.2** deste Plano ("<u>Instrumentos de Pagamento – Debêntures Privadas</u>").

43

4.1.2.1.  Implementação da Opção. Todo e qualquer Credor que optar pelo recebimento de Instrumentos de Pagamento – Debêntures Privadas deverá subscrever e integralizar as debêntures com seus respectivos Créditos, sem prejuízo da manutenção das garantias prestadas por Terceiros.

4.1.3.        Debêntures Públicas. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento que, cumulativamente, (i) por razões regulatórias ou regulamentares, não podem ser titulares de Instrumentos de Pagamento – Debêntures Privadas, e (ii) sejam investidores profissionais nos termos da Instrução CVM nº 554, de 17 de dezembro de 2014, conforme alterada, poderão optar por subscrever debêntures a serem distribuídas publicamente, com esforços restritos de captação nos termos da Instrução CVM nº 476, de 16 de janeiro de 2009, conforme alterada, cuja escritura de emissão será firmada substancialmente igual à minuta presente no **Anexo 4.1.3** deste Plano, observadas as disposições regulatórias aplicáveis ("Instrumento de Pagamento – Debêntures Públicas").

4.1.3.1.  Implementação da Opção. Todo e qualquer Credor que optar pelo recebimento de Instrumentos de Pagamento – Debêntures Públicas deverá subscrever e integralizar as debêntures com seus respectivos Créditos, sem prejuízo da manutenção das garantias prestadas por Terceiro.

4.1.4.        _Bonds_. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento que são atualmente titulares de títulos, bônus ou notas de pagamento, na qualidade de (i) investidor institucional qualificado (_qualified institutional buyers_), conforme definidos na regra 144 A do _Securities Act_; (ii) pessoas não americanas (_non – US persons_), conforme definido no Regulamento S (_Regulation S_), de acordo com o _Securities Act_, localizadas fora dos Estados Unidos da América; ou (iii) investidores credenciados institucionais (_institutional accredited investors_), conforme definido na Regra 501, de acordo com o _Securities Act_, poderão optar por receber títulos de dívida custodiados e registrados no sistema DTC, a serem emitidos em dólares norte-americanos e regidos sob as leis do Estado de Nova Iorque, Estados Unidos da América, cujo conteúdo compreenda os termos e condições descritos no **Anexo 1.1.73** deste Plano ("Instrumentos de Pagamento - _Bonds_").

**4.2.        Procedimento de escolha da Opção Pagamento e do Instrumento de Pagamento.**
Para formalizar a escolha da Opção de Pagamento e dos Instrumentos de Pagamento que deseja receber, se aplicável, os Credores com Garantia Real, os Credores Quirografários e os Credores

ME/EPP deverão manifestar, em até 15 (quinze) Dias Corridos contados do término do Prazo de Adesão à Consolidação Substancial ("Prazo para Eleição"), a sua escolha por um dos Instrumentos de Pagamento previstos nas Cláusulas 4.1.1 a 4.1.4. Caso não haja escolha da Opção de Pagamento no Prazo para Eleição, será aplicável o previsto na Cláusula 4.3.1.

**4.3.     Envio de Documentos.** O Credor Concursal deverá enviar e-mail para os endereços eletrônicos aj_odb@alvarezandmarsal.com e rjodb@odebrecht.com, encaminhando (i) o formulário constante do **Anexo 4.3** devidamente preenchido e assinado; e (iii) os seguintes documentos:

> (i) documentos básicos. Todos os Credores com Garantia Real, Credores Quirografários e Credores ME/EPP deverão anexar (a) documentos comprobatórios dos poderes do remetente e do subscritor para efetuar tal escolha em benefício do respectivo Credor Concursal, incluindo (a.1.) no caso de pessoa física, cópia de documento de identificação oficial válido em território nacional, e (a.2.) no caso de pessoa jurídica, cópia dos atos societários e da procuração que lhe outorga poderes de representação do respectivo Credor; e (b) indicar a conta bancária que deverá ser utilizada para o recebimento de quaisquer valores a que faz jus; e

> (ii) documentos específicos. Os Credores Concursais que optarem por eleger receber Instrumentos de Pagamento – Debêntures Públicas deverão anexar também a declaração constante do **Anexo 4.3(ii)** devidamente assinada pelo respectivo Credor.

4.3.1. Opção Diferida. Aqueles Credores que não optarem por um Instrumento de Pagamento no Prazo para Eleição terão sua escolha por um dos Instrumentos de Pagamento de Pagamento previstos nas Cláusulas 4.1.1 a 4.1.4 diferida pelo prazo de 5 (cinco) anos contados da Data de Homologação Judicial do Plano.

4.3.2. Relatório do procedimento de escolha da Opção Pagamento e do Instrumento de Pagamento. Em até 30 (trinta) Dias Corridos contados do término do Prazo para Eleição, o Administrador Judicial deverá apresentar relatório, nos autos da Recuperação Judicial e no seu sítio eletrônico (https://www.alvarezandmarsal.com/content/grupo-odebrecht), informando o resultado do procedimento de escolha da Opção de Pagamento e do Instrumento de Pagamento, com a indicação da alocação dos Créditos Concursais entre as Opções de

Pagamento e os Instrumentos de Pagamento disponíveis, incluindo os Credores Concursais que optaram por diferir a escolha pela Opção de Pagamento por não terem feito validamente a eleição durante o Prazo para Eleição ("Publicação do Quadro de Eleição").

4.3.3. Vinculação e Efeitos. A eleição da Opção de Pagamento e do Instrumento de Pagamento feita pelos Credores Concursais realizada na forma prescrita neste Plano, é final, definitiva, vinculante e irrevogável e irretratável, sendo que os efeitos da eleição da Opção de Pagamento e do Instrumento de Pagamento retroagirão à Data de Homologação Judicial do Plano.

4.3.4. Créditos Objeto de Impugnações. Poderão exercer o direito de eleger a Opção de Pagamento e o Instrumento de Pagamento de sua preferência, nos termos e prazos deste Plano, os Credores com Garantia Real, os Credores Quirografários Financeiros Opção B, os Credores Quirografários Não Financeiros Opção B e os Credores ME/EPP, incluindo aqueles cujos Créditos tenham sido objeto de impugnações à Lista de Credores, nos termos do art. 8º da LFR, as quais não tenham sido objeto de decisão transitada em julgado à época do término do Prazo para Eleição. Nesses casos, o Crédito será utilizado para cálculo da alocação dos Instrumentos de Pagamento, devendo as Recuperandas, (i) em relação à parcela incontroversa do Crédito, se houver, instrumentalizar a reestruturação do respectivo Crédito eleita nos termos deste Plano; e (ii) em relação à parcela controversa, instrumentalizar a reestruturação do respectivo Crédito nos mesmos termos da parcela incontroversa caso já tenha sido eleito o Instrumento de Pagamento e não tenha transcorrido o prazo previsto na Cláusula 4.3.1. Caso já tenha transcorrido o prazo previsto na Cláusula 4.3.1, as Recuperandas deverão instrumentalizar a reestruturação do respectivo Crédito controverso na forma de Instrumentos de Pagamento – Plano, quando, em decorrência de decisão transitada em julgado, tais montantes se tornarem incontroversos (na exata medida em que forem devidos ao Credor Concursal pelas Recuperandas).

4.3.5. Instrumento de Pagamento Padrão – Créditos com Garantia Real. Os Credores com Garantia Real que não validamente elegerem o Instrumento de Pagamento e os Credores com Garantia Real Retardatários terão seus Créditos Elegíveis para Subscrição dos Instrumentos de Pagamento necessariamente reestruturados na forma de Instrumentos de Pagamento – Plano.

4.3.6. Instrumento de Pagamento Padrão – Créditos Quirografários. Os Credores Quirografários que não validamente elegerem o Instrumento de Pagamento e os Credores

Quirografários Retardatários terão seus Créditos Elegíveis para Subscrição dos Instrumentos de Pagamento necessariamente reestruturados na forma de Instrumentos de Pagamento – Plano.

4.3.7. Instrumento de Pagamento Padrão – Créditos ME/EPP. Os Credores ME/EPP que não validamente elegerem o Instrumento de Pagamento, terão seus Créditos Elegíveis para Subscrição dos Instrumentos de Pagamento necessariamente reestruturados na forma de Instrumentos de Pagamento – Plano.

**4.4.    Emissão dos Instrumentos de Pagamento – Debêntures Privadas, Debêntures Públicas e *Bonds*.** A Recuperanda, que for a Emissora/Devedora Principal, na forma prevista no Item 1 do **Anexo 1.1.73,** deverá formalizar todos os atos necessários e providenciar a emissão, colocação e distribuição, conforme o caso, dos Instrumentos de Pagamento – Debêntures Privadas, Instrumentos de Pagamento – Debêntures Públicas e Instrumentos de Pagamento – *Bonds* nos prazos de até (i) 300 (trezentos) Dias Corridos contados da Publicação do Quadro de Eleição, desde que titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento correspondentes a, no mínimo, R$ 10.000.000.000,00 (dez bilhões de reais) tenham optado por receber Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas, considerados de forma agregada, até o término do Prazo de Eleição; ou (ii) 100 (cem) Dias Corridos contados do encerramento do prazo indicado no item (ii) da Cláusula 4.2 acima, independentemente do valor de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento que optarem por receber Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas; e (iii) 480 (quatrocentos e oitenta) Dias Corridos contados da Publicação do Quadro de Eleição, para os Instrumentos de Pagamento – *Bonds* ou 590 (quinhentos e noventa) Dias Corridos contados do trânsito em julgado da decisão de Homologação *Chapter 15*, o que ocorrer por último.

**4.5.    Emissões Adicionais.** Caso a Recuperanda, que seja a Emissora/Devedora Principal, na forma prevista no Item 1 **Anexo 1.1.73**, por força dos termos deste Plano, deva realizar mais de uma emissão, colocação e distribuição, conforme o caso, dos Instrumentos de Pagamento – Debêntures Privadas, Debêntures Públicas ou *Bonds* (cada uma, uma "Emissão Adicional"), a ODB deverá fazer com que sejam formalizados todos os atos necessários e providenciadas a emissão, colocação e distribuição dos referidos Instrumentos de Pagamento em até 360 (trezentos e sessenta) Dias Corridos contados da verificação da obrigação de implementar as Emissões Adicionais, respeitados os prazos regulatórios vigentes e aplicáveis.

47

**4.6.    Disposições Transitórias**. Uma vez verificado saldo de Caixa para Distribuição a ser destinado aos titulares de Instrumentos de Pagamento em uma Data de Amortização sem que o respectivo Instrumento de Pagamento tenha sido emitido e subscrito pelos, ou entregue aos Credores Concursais, as Recuperandas efetuarão os pagamentos eventualmente devidos como se tivessem aderido à opção de pagamento previsto na Cláusula 4.1.1.

4.6.1.    Efeitos do Diferimento da Opção de Pagamento. Os Créditos Elegíveis para Subscrição de Instrumentos de Pagamento detido por Credores que optarem por diferir o exercício do direito de escolher uma das Opções de Pagamento nos termos da Cláusula 4.2(ii) serão exigíveis nos termos das Cláusulas 4.1.1 e 7.3.

**4.7.    Implementação no Exterior**. As Recuperandas ficam autorizadas a adotar todas as medidas necessárias para (i) submeter a Aprovação do Plano ao processo de homologação de efeitos em curso perante a *United States Bankruptcy Court of the Southern District of New York* (*Chapter 15 – Case No. 19-12731 (SMB)*), com o objetivo de conferir efeitos ao Plano em território norte-americano, nos termos da legislação aplicável ("Homologação *Chapter 15*"), bem como (ii) iniciar e/ou dar andamento a outros procedimentos judiciais, extrajudiciais ou administrativos, sejam de insolvência ou de outra natureza, em outras jurisdições além da República Federativa do Brasil, conforme necessário, para a implementação desta Recuperação Judicial, incluindo, mas não se limitando, aos processos de insolvência ou procedimentos necessários à implementação das disposições deste Plano. Os processos auxiliares no exterior não poderão alterar os termos e as condições deste Plano.

## 5.    ALIENAÇÃO E/OU ONERAÇÃO DE ATIVOS

**5.1.    Alienação de bens do ativo circulante.** As Recuperandas poderão alienar, vender, locar, arrendar, dar em pagamento, remover, onerar ou oferecer em garantia, inclusive garantia judicial, observados parâmetros de mercado, quaisquer bens, ativos e/ou direitos que sejam parte de seu ativo circulante sem necessidade de autorização ou cientificação adicional do Juízo da Recuperação e/ou dos Credores Concursais, sempre observados direitos e prerrogativas assegurados contratualmente a terceiros, Credores com Garantia Real, Credores Extraconcursais, ou perante autoridades públicas sobre o bem ou ativo, bem como os limites estabelecidos na lei aplicável e neste Plano, (i) desde que o bem ou ativo esteja desonerado; ou

48

(ii) se onerado, desde que a transação seja autorizada pelo respectivo Credor Extraconcursal ou Credor com Garantia Real, conforme aplicável.

**5.2.    Alienação de bens do ativo não circulante**. As Recuperandas estarão autorizadas a alienar, vender, locar, arrendar, dar em pagamento, remover, onerar ou oferecer em garantia, inclusive garantia judicial, observados parâmetros de mercado, em benefício de qualquer parte, sempre observados direitos e prerrogativas assegurados contratualmente a terceiros, Credores com Garantia Real, Credores Extraconcursais, ou perante autoridades públicas sobre o bem ou ativo, bem como os limites estabelecidos na lei aplicável e neste Plano:

> (i)    quaisquer dos bens ou ativos que sejam parte do seu ativo não-circulante e que estejam indicados no **Anexo 5.2**, sob qualquer modalidade, inclusive por meio de alienação de UPI's, nos termos da Cláusula 5.3 abaixo, (i.a.) desde que o bem ou ativo esteja desonerado; ou (i.b.) se onerado, desde que a transação seja autorizada pelo respectivo Credor Extraconcursal ou Credor com Garantia Real, conforme aplicável; e

> (ii)    quaisquer dos bens ou ativos que sejam parte do seu ativo não-circulante e não estejam indicados no **Anexo 5.2** deste Plano, desde que o valor contábil líquido de depreciação de tal (tais) bens ou ativos, considerados individualmente e de forma  agregada dentro do mesmo ano fiscal, seja menor ou igual a R$ 50.000.000,00 (cinquenta milhões de reais) em cada ano fiscal, e, ainda, (ii.a.) desde que  o bem ou ativo esteja desonerado; ou (ii.b.) se onerado, desde que a transação seja autorizada pelo respectivo Credor Extraconcursal ou Credor com Garantia Real, conforme aplicável.

5.2.1. Alienação de bens de Requerentes que venham a aderir à Consolidação Substancial. Para que não restem dúvidas, todos os bens e ativos parte do ativo não-circulante de Requerentes que venham a aderir à Consolidação Substancial das Recuperandas estarão sujeitos às regras de alienação de ativos prevista neste Capítulo 5, sendo certo que o **Anexo 5.2** passará a contemplar, para todos os fins e efeitos, o **Anexo 1.1.2** do Termo de Adesão à Consolidação Substancial.

**5.3.     Alienação de UPIs.** A alienação de UPIs, salvo regras previstas neste Plano, será realizada observando-se os arts. 60 e 142 da LFR, ou mediante venda direta, nos termos e condições gerais definidos pelas Recuperandas.

5.3.1. <u>Ausência de Sucessão.</u> Tendo em vista que a alienação das UPIs observará o quanto disposto nos artigos 60 e 142 da LFR, em nenhuma hipótese, haverá sucessão do adquirente por quaisquer dívidas e obrigações das Recuperandas, inclusive as de natureza tributária, trabalhista, as relacionadas ao Grupo Odebrecht e às Partes Relacionadas e as derivadas de obrigações assumidas no âmbito da Lei nº 12.846, de 1º de agosto de 2013. A ausência de sucessão deverá ser reconhecida pelo Juízo da Recuperação Judicial.

**6.     ESTRUTURA SOCIETÁRIA E REORGANIZAÇÃO**

**6.1.     Reorganização.** As Recuperandas ficam autorizadas a realizar operações de reorganização societária listadas no **Anexo 6.1** ou, caso não listadas, aquelas necessárias para implementação deste Plano, bem como fusões, incorporações, incorporações de ações, cisões, reduções de capital e transformações, ou promover transferências patrimoniais dentro do Grupo Odebrecht, desde que, cumulativamente, (i) não implique em transferência de recursos (caixa) e/ou ativos para entidades do Grupo Odebrecht que não as Recuperandas, exceto se permitida por este Plano na Cláusula 7.4, incluindo, mas não se limitando, participações societárias diretas ou indiretas detidas pelas Recuperandas, (ii) não implique ou prejudique eventuais direitos e obrigações contraídas pelas Recuperandas e/ou por outras entidades do Grupo Odebrecht em instrumentos celebrados com Credores com garantia fiduciária prestada por Recuperandas ou terceiros, (iii) não implique em efeitos de consolidação com as Recuperandas de Requerentes que não tiveram a Adesão à Consolidação Substancial aprovada, (iv) seja implementada com o objetivo de otimizar estrutura ou reduzir custos e (v) não resulte em participação recíproca ou cruzamento de participações societárias entre empresas do Grupo Odebrecht, sendo desde logo permitidos aumentos de capital mediante emissão de novas ações ou quotas para serem integralizadas com participações em sociedades do Grupo Odebrecht, Créditos *Intercompany* e a capitalização de Créditos *Intercompany*. As Recuperandas. ainda, poderão realizar quaisquer operações de reorganização societária que não atendam aos requisitos cumulativos estabelecidos acima, desde que sejam expressamente autorizadas em deliberação realizada nos termos da Cláusula 8.3 do **Anexo 1.1.73**.

**7.        EFEITOS DO PLANO**

**7.1.        Vinculação do Plano.** As disposições do Plano vinculam as Recuperandas e os Credores Concursais, e os seus respectivos cessionários e sucessores, a qualquer título, assim como credores que venham a se tornar Credores Concursais das Recuperandas por força de atribuição de responsabilidade incidental, subsidiária ou solidária por força de lei ou decisão judicial, administrativa, arbitral, desde que o fato gerador de tal Crédito Concursal seja anterior ao ajuizamento da presente Recuperação Judicial a partir da Data de Homologação Judicial do Plano.

**7.2.        Liberação de Recursos.** Tendo em vista que este Plano não afeta, desconstitui ou de qualquer forma modifica garantias fiduciárias outorgadas em favor de Credores Extraconcursais, os recursos financeiros, que forem objeto de garantia fiduciária e disponibilizados às Recuperandas e às Requerentes, serão considerados, para todos os fins de direitos, Créditos Extraconcursais, nos termos do art. 67 da LFR. Em caso de superveniência de falência das Recuperandas, tais recursos serão pagos com precedência sobre todos os Créditos Concursais e Créditos Extraconcursais, observado o disposto nos arts. 84, 85, 149 e demais disposições aplicáveis da LFR.

**7.3.        Novação.** A Homologação Judicial do Plano implicará a novação dos Créditos Concursais, nos termos do art. 59 da LFR, os quais serão pagos segundo os termos e condições estabelecidos neste Plano. Salvo disposição em sentido contrário neste Plano, ficam mantidas as garantias reais e fidejussórias dos Créditos Concursais. Para que não restem dúvidas, nada neste Plano afeta as obrigações extraconcursais de responsabilidade das Recuperandas e tampouco obrigações de Terceiros, incluindo, sem limitar, avais, fianças, garantias fiduciárias, reais, fidejussórias, que serão mantidas em suas condições originais, inclusive de exigibilidade, contra os Terceiros, independentemente da novação deste Plano, conforme as Cláusulas 3.7.9 e seguintes do Plano.

**7.4.        Remessa de Recursos.** Observada a necessidade de caixa e as regras societárias aplicáveis, as Recuperandas estão autorizadas a realizar qualquer tipo de movimentação financeira dentre as Recuperandas.

7.4.1.        <u>Remessas para o Grupo</u>. Observada a necessidade de caixa e as regras societárias

51

aplicáveis, as Recuperandas estão autorizadas a realizar qualquer tipo de movimentação financeira, incluindo, mas não se limitando ao aporte de recursos e celebração de mútuos, em benefício de quaisquer das Requerentes, nos termos da Lei das S.A., (i) relacionadas ao cumprimento das obrigações contratadas nos respectivos planos de recuperação judicial das Requerentes e ao pagamento de despesas gerais e administrativas, tais como obrigações e despesas de manutenção das atividades, despesas com fornecedores e assessores e despesas fiscais, desde que tais transações não excedam o montante global de R$ 80.000.000,00 (oitenta milhões de reais) e respeitem a alocação descrita no **Anexo 7.4.1**; (ii) relacionadas aos pagamentos previstos no item ii da Cláusula 1.1.11 e no item (iii) da Cláusula 1.1.119 apenas nos seus respectivos prazos.

**7.5.**     **Cessão de Créditos**. Após a Aprovação do Plano, os Credores Concursais poderão ceder seus Créditos a outros Credores Concursais ou a Terceiros, e a cessão deverá ser notificada às Recuperandas e ao Administrador Judicial nos termos da Cláusula 8.3. A notificação ao Administrador Judicial e ao Juízo da Recuperação Judicial só será necessária enquanto a Recuperação Judicial não tiver sido encerrada. Os Créditos Concursais cedidos serão pagos conforme as condições previstas no Plano, observado o quanto disposto nas Cláusulas 3.7.8.1 e 7.3.

**7.6.**     **Reconstituição de Direitos.** Caso a Recuperação Judicial seja convolada em falência no prazo de supervisão no art. 61 da LFR, os Credores Concursais terão reconstituídos seus direitos e garantias nas condições originalmente contratadas, deduzidos os valores eventualmente pagos e ressalvados os atos validamente praticados no âmbito da Recuperação Judicial, observados o disposto nos arts. 61, §2º, e 74 da LFR.

**7.7.**     **Quitação.** O cumprimento das obrigações de pagamentos de acordo com os termos e condições estabelecidos neste Plano acarretará, de forma automática e independentemente de qualquer formalidade adicional, ampla, geral e irrestrita quitação de todos os Créditos Concursais contra as Recuperandas e seus diretores, conselheiros, agentes, funcionários e representantes, observado o disposto na Cláusula 3.7.9.

**7.8.**     **Extinção das Ações**. Em virtude da novação dos Créditos Concursais decorrente da Homologação Judicial do Plano, e enquanto este Plano estiver sendo cumprido pelas Recuperandas, os Credores Concursais não poderão, a partir da Homologação do Plano, (i) ajuizar ou prosseguir toda e qualquer ação e/ou execução judicial ou processo de qualquer

natureza relacionado a qualquer Crédito Concursal contra as Recuperandas; (ii) executar qualquer sentença, decisão judicial ou sentença arbitral relacionada a qualquer Crédito Concursal contra as Recuperandas; (iii) penhorar ou onerar quaisquer bens das Recuperandas para satisfazer seus Créditos Concursais ou praticar contra elas qualquer outro ato constritivo para satisfação de Créditos Concursais; (iv) criar, aperfeiçoar ou executar qualquer garantia real sobre bens e direitos das Recuperandas para assegurar o pagamento de seus Créditos Concursais; e (v) buscar a satisfação de seus Créditos Concursais por quaisquer outros meios contra as Recuperandas. A partir da Data de Homologação Judicial do Plano, todo e qualquer processo de execução, de qualquer natureza, relacionado a qualquer Crédito Concursal contra as Recuperandas, deverão ser extintos completamente ou, caso mais de uma pessoa figure no polo passivo da referida ação, exclusivamente em relação à(s) Recuperanda(s) em questão, sendo certo que as penhoras e constrições existentes sobre bens e direitos das Recuperandas serão liberadas, bem como o saldo de bloqueios judiciais eventualmente efetivados nas referidas ações judiciais. Para que não restem dúvidas, nada nesta Cláusula impede o trâmite de impugnações de crédito relacionadas à presente Recuperação Judicial.

**7.9.    Formalização de Documentos e Outras Providências.** As Recuperandas obrigam-se, em caráter irrevogável e irretratável, por força deste Plano, a realizar todos os atos e firmar todos os contratos e outros documentos que, na forma e na substância, sejam necessários ou adequados ao cumprimento e implementação deste Plano e obrigações correlatas.

**7.10.    Aditamentos, Alterações ou Modificações do Plano**. Aditamentos, alterações ou modificações ao Plano podem ser propostas a qualquer tempo após a Homologação Judicial do Plano, desde que tais aditamentos, alterações ou modificações sejam aceitas pelas Recuperandas e aprovadas em Assembleia de Credores, nos termos da LFR. Aditamentos ao Plano, desde que aprovados nos termos da LFR, obrigam todos os Credores Concursais, independentemente da expressa concordância destes com aditamentos posteriores. Para fins de cômputo, os Créditos Concursais deverão ser atualizados na forma deste Plano e descontados dos valores já pagos a qualquer título em favor dos Credores Concursais, conforme o caso.

**8.    DISPOSIÇÕES GERAIS**

**8.1.    Anexos.** Todos os anexos a este Plano são a ele incorporados e constituem parte integrante deste Plano. Na hipótese de haver qualquer inconsistência entre este Plano e qualquer

53

anexo, o Plano prevalecerá.

**8.2.    Contratos Existentes e Conflitos.** Na hipótese de conflito entre as disposições deste Plano e as obrigações das Recuperandas sujeitas à Recuperação Judicial previstas nos contratos celebrados com qualquer Credor Concursal anteriormente à Data do Pedido, este Plano prevalecerá, sem prejuízo da manutenção das condições originalmente contratadas com Terceiros, conforme previsto nas Cláusulas 3.7.9.1 e seguintes.

**8.3.    Comunicações.** Todas as notificações, requerimentos, pedidos e outras comunicações às Recuperandas, requeridas ou permitidas por este Plano, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando enviadas (i) por correspondência registrada, com aviso de recebimento, ou courier; ou (ii) por e-mail quando efetivamente entregues, valendo o aviso de leitura como prova de entrega e recebimento da mensagem, obrigando-se as Recuperandas a verificar suas mensagens periodicamente. Todas as comunicações devem ser enviadas aos seguintes endereços, salvo se houver alteração devidamente comunicada aos Credores Concursais:

**Às Recuperandas:**
   Rua Lemos Monteiro, nº 120, 16º andar
   Butantã, São Paulo/SP, CEP 05501-050
   A/C: Departamento Jurídico
   E-mail: rjodb@odebrecht.com

**Ao Administrador Judicial**
   Rua Surubim, nº 577, 9º andar
   Brooklyn Novo, São Paulo/SP, CEP 04571-050
   A/C: Eduardo Seixas e Luciana Gasques
   E-mail: aj_odb@alvarezandmarsal.com

**8.4.    Divisibilidade das Previsões do Plano.** Na hipótese de qualquer termo ou disposição deste Plano ser considerada inválida, nula ou ineficaz, o restante dos termos e disposições do Plano devem permanecer válidos e eficazes.

**8.5.    Créditos em moeda estrangeira.** Os Créditos denominados em moeda estrangeira serão mantidos na moeda original para todos os fins de direito, em conformidade com o disposto no artigo 50, § 2º, da LFR, e serão liquidados em conformidade com as disposições deste Plano.

**8.6.** **Encerramento da Recuperação Judicial.** A Recuperação Judicial será encerrada nos termos dos arts. 61 e 63 da LFR.

**8.7.** **Lei Aplicável.** Os direitos, deveres e obrigações decorrentes deste Plano deverão ser regidos, interpretados e executados de acordo com as leis vigentes na República Federativa do Brasil, ainda que haja Créditos originados sob a regência de leis de outra jurisdição e sem que quaisquer regras ou princípios de direito internacional privado sejam aplicadas.

**8.8.** **Foro.** Todas as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Plano serão resolvidas pelo Juízo da Recuperação. Após o encerramento da Recuperação Judicial as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Plano serão resolvidas pelo foro da Comarca de São Paulo.

São Paulo, 31 de março de 2020
(*Seguem páginas de assinaturas do Plano*)

*(páginas de assinaturas do Plano de Recuperação Judicial apresentado por Odebrecht S.A. – Em Recuperação Judicial e outras sociedades integrantes de seu grupo econômico)*

| | |
|---|---|
| **Nome:** | **Nome:** |
| **Cargo:** | **Cargo:** |

Por: **KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA – EM RECUPERAÇÃO JUDICIAL; ODBINV S.A – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL; OSP INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL; OPI S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL; ODB INTERNATIONAL CORPORATION; ODEBRECHT FINANCE LIMITED; ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT ENERGIA S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT ENERGIA PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT ENERGIA DO BRASIL S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. – EM RECUPERAÇÃO JUDICIAL; EDIFÍCIO ODEBRECHT RJ S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT PROPERTIES INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT PROPERTIES PARCERIAS S.A. – EM RECUPERAÇÃO JUDICIAL; OP CENTRO ADMINISTRATIVO S.A. – EM RECUPERAÇÃO JUDICIAL; OP GESTÃO DE PROPRIEDADES S.A. – EM RECUPERAÇÃO JUDICIAL** e **MECTRON – ENGENHARIA, INDÚSTRIA E COMÉRCIO S.A. – EM RECUPERAÇÃO JUDICIAL.**

## ANEXOS AO PLANO

| | |
|---|---|
| **Anexo 1.1.10** | Uso do Caixa Disponível |
| **Anexo 1.1.73** | Instrumentos de Pagamento |
| **Anexo 1.1.81 (a)** | Laudo de Viabilidade Econômica |
| **Anexo 1.1.81 (b)** | Laudo Econômico-Financeiro |
| **Anexo 1.1.110** | Método de Cálculo do Percentual de Pagamento |
| **Anexo 2.5** | Termo de Adesão à Consolidação Substancial |
| **Anexo 4.1.2** | Escritura de Emissão: Instrumentos de Pagamento – Debêntures Privadas |
| **Anexo 4.1.3** | Escritura de Emissão: Instrumentos de Pagamento – Debêntures Públicas |
| **Anexo 4.3** | Formulário de Opção de Pagamento |
| **Anexo 4.3(ii)** | Declaração de Investidor Qualificado – Debêntures Públicas |
| **Anexo 5.2** | Lista de Ativos |
| **Anexo 6.1** | Lista de Operações de Reorganização Societárias |
| **Anexo 7.4.1** | Alocação de Remessas para Requerentes |

57

### Anexo 1.1.10
### Uso do Caixa Disponível

1.     O Caixa Disponível poderá ser utilizado na manutenção ordinária das atividades do Grupo Odebrecht, (i) para despesas gerais e administrativas das Recuperandas, tais como (a) obrigações e despesas relacionadas a contingências diretas e indiretas, cuja origem tenha natureza administrativa, civil, comercial, financeira, fiscal, tributária, ambiental, penal ou trabalhista; (b) despesas gerais de manutenção das atividades, tais como, despesas de manutenção predial, condomínio, *facilities*, comunicação, TI, serviços de pagamento, reembolso de despesas, assessores jurídicos e financeiros, despesas de auditoria e despesas com fornecedores e prestadores de serviço, incluindo aquelas relacionadas à Recuperação Judicial e ao cumprimento deste Plano; (c) pagamento de obrigações não sujeitas à Recuperação Judicial; (d) custo de manutenção da estrutura de governança e *compliance*; e (ii) transações permitidas no âmbito da Cláusula 7.4 ou de qualquer outra forma por este Plano.

2.     Para que não restem dúvidas, a lista de eventos acima é exemplificativa e não exaustiva, sendo certo que as Recuperandas jamais poderão utilizar o Caixa Disponível (i) para prática dos atos vedados pelo inciso IV do art. 64 da LFR, e (ii) para pagamento de dividendos de Recuperandas para sociedades que não são Recuperandas, sendo certo que esta disposição não afeta, impede ou limita o uso ou a distribuição dos recursos nos termos do item (iii) da Cláusula 1.1.119 do Plano.

58

**Anexo 1.1.73**

**Instrumentos de Pagamento**

*(termos e condições aplicáveis aos Créditos Concursais que forem reestruturados por meio de qualquer modalidade de Instrumentos de Pagamento)*

1.      **Emissora / Devedor Principal**. ODB, qualquer sociedade que venha a suceder a ODB, ou, caso autorizado pelo respectivo Credor, qualquer Recuperanda, sendo certo que, na hipótese de reestruturação de Créditos por meio de Instrumentos de Pagamento – Plano, será mantido (i) o devedor principal original ou (ii) caso as Recuperandas não sejam as devedoras principais originais, o coobrigado/garantidor ("Emissora/Devedora Principal").

2.      **Garantidor(es)**. Todas as Recuperandas figurarão como garantidoras solidárias do Instrumento de Pagamento ("Garantidores").

2.1.    **Garantia Real**: Os Créditos com Garantia Real manterão as respectivas Garantias Reais, conforme originalmente pactuado, sendo certo que as Garantias Reais não serão compartilhadas entre os demais Créditos Elegíveis para Subscrição de Instrumentos de Pagamento.

3.      **Juros e Correção**. Os Instrumentos de Pagamento contarão com juros e correção monetária, a serem incorporados ao valor de face dos Instrumentos de Pagamento, correspondentes à variação positiva do IPCA desde a Data do Pedido até a implementação de todos os pagamentos previstos nos Instrumentos de Pagamento, observado o Bônus de Adimplência.

4.      **Vencimento**. Vencimento no 40º (quadragésimo) Aniversário, sendo que a Devedora Principal deverá amortizar antecipadamente a integralidade dos Instrumentos de Pagamento:

(i)      no 25º (vigésimo quinto) Aniversário, caso não tenha apresentado, em até 6 (seis) meses contados do 24º (vigésimo quarto) Aniversário, laudo preparado por empresa de auditoria, especializada e de renome, integrante de uma das quatro maiores empresas de auditoria do mundo (*big four*) ou categoria semelhante à época, demonstrando que as Recuperandas possuem

59

capacidade de geração de caixa e/ou ativos passíveis de monetização de ao menos R$ 50.000.000,00 (cinquenta milhões de reais) até o 40º (quadragésimo) Aniversário; ou

(ii)        a partir do 3º (terceiro) Aniversário, caso se verifique que o Caixa para Distribuição em uma determinada Data de Amortização é suficiente para amortizar e/ou resgatar 100% (cem por cento) do saldo devedor de Instrumentos de Pagamento.

**5.**        **Amortizações e Carência**. Os Instrumentos de Pagamento serão amortizados a cada Data de Amortização com recursos provenientes do Caixa para Distribuição, conforme apurado nos termos da Cláusula 1.1.11, observada a Regra de Utilização do Caixa para Distribuição, de forma *pro rata* entre os Créditos Elegíveis para Subscrição de Instrumentos de Pagamento. O primeiro pagamento será devido na primeira Data de Amortização que ocorrer após 3 (três) anos contados da Data de Homologação Judicial do Plano ("Prazo de Carência"), sendo que para cada R$ 1,00 (um real) de Caixa para Distribuição destinado à amortização dos Instrumentos de Pagamento, R$ 1,00 (um real) será deduzido do valor de face e/ou do valor de principal dos respectivos Instrumentos de Pagamento, podendo as Recuperandas, a qualquer tempo, realizar amortizações antecipadas.

**5.1.** Nas hipóteses em que os Credores Concursais possuam Créditos Concursais formalizados originalmente por mais de 1 (um) instrumento, as amortizações previstas no item 55 acima deverão ocorrer de forma proporcional entre tais instrumentos originais.

**6.**        **Agente de Monitoramento**. Os Instrumentos de Pagamento contarão com um Agente de Monitoramento que acompanhará as movimentações financeiras das Recuperandas e que deverá ser contratado pela Emissora/Devedora Principal em até 60 (sessenta) Dias Corridos contados da Data de Homologação Judicial do Plano, sendo responsável por:

(i)        divulgar o montante de Caixa para Distribuição que será destinado à amortização dos Instrumentos de Pagamento, observada a Regra de Utilização do Caixa para Distribuição;

(ii)        verificar e ratificar o Caixa Disponível, o Caixa para Distribuição e a Regra de Utilização do Caixa para Distribuição, com base em relatório gerencial contemplando o saldo do caixa consolidado das Recuperandas e demais documentos que sejam considerados necessários pelo Agente de

Monitoramento que deverão ser fornecidos pelas Recuperandas como, por exemplo, extratos bancários;

(iii)    monitorar os pagamentos previstos nos Instrumentos de Pagamento, bem como o cumprimento das demais obrigações previstas;

(iv)    monitorar a materialização de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento posteriores a data de emissão dos Instrumentos de Pagamentos; e

(v)    divulgar relatórios mensais consolidando as informações referentes às atribuições previstas nos itens anteriores.

**6.1.    Acesso a Informações**. As Recuperandas deverão facultar ao Agente de Monitoramento acesso a todas as informações e documentos considerados necessários pelo Agente de Monitoramento para o bom desempenho de suas funções.

**6.2.    Procedimento de Escolha**. A Recuperanda deverá contratar uma das empresas listadas no Apêndice I para ocupar a posição de Agente de Monitoramento em até 60 (sessenta) dias contados da Data de Homologação Judicial do Plano, devendo optar por aquela que oferecer a melhor proposta considerando as condições de preço e escopo de trabalho, observadas as condições de substituição descritas no Apêndice I.

**7.    Hipóteses de Vencimento Antecipado**. As obrigações previstas no Instrumento de Pagamento serão consideradas antecipadas vencidas, independentemente de aviso, interpelação ou notificação, na ocorrência dos seguintes eventos:

(i)    inadimplemento pela Devedora Principal de qualquer obrigação pecuniária que não seja sanado no prazo de 3 (três) Dias Úteis da sua ocorrência;

(ii)    inadimplemento pela Devedora Principal de qualquer obrigação não pecuniária prevista no Instrumento de Pagamento que não seja sanado no prazo de 30 (trinta) Dias Úteis contados da sua ocorrência, caso não seja prazo específico;

(iii)    decisão judicial colegiada ou decisão judicial sem efeito suspensivo, que declare o Instrumento de Pagamento ilegal, observado que todos eventuais recursos que

61

deveriam ter sido destinados aos Credores Elegíveis para Subscrição de Instrumentos de Pagamento, mas que não tenham sido em virtude de tal decisão, deverão permanecer retidos para posterior distribuição aos Credores Elegíveis para Subscrição de Instrumentos de Pagamento;

(iv)    liquidação, dissolução, decretação da falência ou pedido de autofalência da Devedora Principal;

(v)    cessão, promessa de cessão ou qualquer outro tipo de transferência das obrigações da Devedora Principal a Terceiro, sem anuência dos Créditos Quirografários Elegíveis para Subscrição de Instrumentos de Pagamento;

(vi)    transformação da Devedora Principal em sociedade limitada;

(vii)    alteração do objeto social da Devedora Principal, ressalvada a hipótese em que há autorização dos Créditos Elegíveis a Subscrição de Instrumentos de Pagamento *ou* em que não resulte em alteração substancial das atividades da Devedora Principal;

(viii)    comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer declaração feita pela Devedora Principal no Instrumento de Pagamento é falsa, desde que tal falsidade acarrete qualquer evento ou situação que possa causar qualquer efeito adverso relevante na: (a) situação financeira, nos negócios, nos bens, nos resultados operacionais e/ou nas perspectivas da Devedora Principal; e/ou (b) na capacidade da Devedora Principal de cumprir qualquer de suas obrigações nos termos do Instrumento de Pagamento;

(ix)    comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer declaração feita pela Devedora Principal no Instrumento de Pagamento relativas a questões de prática de corrupção é falsa;

(x)    incorporação, fusão ou cisão da Devedora Principal, sem a prévia anuência dos Créditos Quirografários Elegíveis para Subscrição de Instrumentos de Pagamento, salvo se a reorganização societária estiver autorizada no Plano ou neste Anexo; e

(xi)     prolação de sentença condenatória, sem efeito suspensivo, que ateste que a Devedora Principal praticou atos que importem trabalho infantil, análogo ao escravo e/ou provimento criminoso de prostituição

(xii)    inadimplemento de qualquer obrigação pecuniária constante de quaisquer Instrumentos de Pagamento, desde que não sanado prazo de cura aplicável; ou

(xiii)   decretação de vencimento antecipado no âmbito de quaisquer Instrumentos de Pagamento.

## 8.    Disposições Gerais.

**8.1.  Divulgação de Informações**. As Recuperandas deverão fornecer mensalmente ao Agente de Monitoramento as informações financeiras e contábeis a respeito da composição do Caixa Disponível e do Caixa para Distribuição ou em prazo inferior sempre que solicitadas, mediante envio de comunicação enviada nos termos da Cláusula 8.3, que deverá ser respondida pelas Recuperandas com as informações solicitadas no prazo de 10 (dez) Dias Úteis contados do recebimento da comunicação.

**8.2.  Comunicação**. A Devedora/Emissora Principal, os Garantidores e os titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento deverão enviar ao Agente de Monitoramento e manter atualizados, a todo tempo, (i) sua qualificação completa; (ii) telefone; (iii) endereço eletrônico (e-mail); e (iv) o endereço para envio de correspondência física. Todas as notificações, requerimentos, pedidos e outras comunicações relacionadas aos Instrumentos de Pagamento, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando enviadas (i) por correspondência registrada, com aviso de recebimento, ou courier; ou (ii) por e-mail quando efetivamente entregues, valendo o aviso de leitura como prova de entrega e recebimento da mensagem.

**8.3.  Deliberações**. A Devedora Principal poderá, a qualquer momento, convocar reunião com os Credores Concursais titulares de Créditos Elegíveis a Subscrição de Instrumentos de Pagamento para que estes possam deliberar:

(i)     sobre a renúncia prévia (*waiver*) ao direito de exigir o cumprimento das obrigações previstas no Instrumento de Pagamento;

63

(ii)    a renúncia (*waiver*) ao direito de declarar o vencimento antecipado das obrigações previstas neste Instrumento de Pagamento;

(iii)    a extensão do prazo descrito no item ii da Cláusula 1.1.11;

(iv)    a realização de operações de reorganização societária nos termos da Cláusula 6.1 do Plano;

(v)    a substituição do Agente de Monitoramento nos termos do item 4 do Apêndice I deste Anexo; e

(vi)    outras matérias que sejam relevantes.

**8.3.1.** Convocação. A reunião será convocada por meio de envio de notificação aos Credores Concursais titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento com no mínimo 8 (oito) Dias Úteis de antecedência da primeira convocação e 5 (cinco) Dias Úteis de antecedência da segunda convocação, devendo a convocação conter, data, hora, local e ordem do dia.

**8.3.2.** Instalação e Realização. A reunião se instalará, em primeira convocação, com a presença de 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento e, em segunda convocação, com qualquer quórum de presentes. A reunião será presidida pela Emissora/Devedora Principal e será acompanhada pelo Agente de Monitoramento.

8.3.2.1.    Instalação para Deliberação Sobre Matérias Qualificadas. A reunião para deliberação das matérias indicadas nos itens (iii), (iv) e (v) no item 8.3 acima somente será instalada com a presença titulares de Instrumentos de Pagamento representando, ao menos, 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento em aberto na data da convocação, seja em primeira ou em segunda convocação.

8.3.2.2.    Os Credores de Crédito *Intercompany* e as Partes Relacionadas não serão considerados para fins de quórum.

**8.3.3.** Quórum de Deliberação. As matérias colocadas em votação serão aprovadas pela maioria absoluta de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento presentes na reunião, conforme saldos em aberto considerados na data de convocação da reunião. As atas de reunião serão enviadas ao Agente de Monitoramento e, enquanto perdurar a Recuperação Judicial, ao Administrador Judicial.

8.3.3.1.   Quórum de Deliberação Sobre Matérias Qualificadas. As matérias indicadas nos itens, (iii), (iv) e (v) do item 8.3 acima colocadas em votação somente serão aprovadas pelo voto afirmativo de ao menos 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento presentes.

8.3.3.2.   Os Credores de Crédito *Intercompany* e as Partes Relacionadas não terão direito de voto.

*APENDICE I*
*AGENTE DE MONITORAMENTO*

**3.**     As Recuperandas poderão contratar, para o cargo de Agente de Monitoramento, uma das seguintes empresas especializadas (seu sucessor ou quaisquer empresas integrantes do grupo econômico das sociedades listadas abaixo):

**(i)**     CCC Consultoria Financeira e Empresarial Ltda., inscrita no CNPJ sob o nº 07.458.740/0001-15, com sede na Rua Japão, nº 484, unidade 31 E, Jardim São Luís, na Cidade de Santana de Parnaíba, Estado de São Paulo, CEP 06502-345;

**(ii)**    FTI Consultoria Ltda., inscrita no CNPJ sob nº 07.174.869/0001-00, com sede na Rua Tabapuã, nº 474, 8º andar, Itaim Bibi, CEP 04533-001, na Cidade e Estado de São Paulo; ou

**(iii)**   Empresa de auditoria, especializada e de renome, integrante de uma das quatro maiores empresas de auditoria do mundo (*big four*) ou categoria semelhante à época.

**4.**     Caso, a qualquer tempo, seja necessário substituir o Agente de Monitoramento, as Recuperandas deverão contratar, preferencialmente, uma das empresas descritas no item 1 acima. Não sendo possível ou viável, as Recuperandas estão desde já autorizadas a contratar outra empresa com capacidade técnica, reputação e experiência semelhante às das empresas listadas no item 1 acima, desde que aprovada pelos titulares de Instrumentos de Pagamento nos termos da Cláusula 8.3 deste Anexo.

66

**Anexo 1.1.81 (a)**

**Laudo de Viabilidade Econômica**

**Anexo 1.1.81 (b)**

**Laudo Econômico-Financeiro**

## Anexo 1.1.110

### Método de Cálculo do Percentual de Pagamentos

1.      O Percentual de Pagamentos será apurado, a partir do término do Prazo de Carência, com base no relatório gerencial de fechamento contábil, entregue pelas Recuperandas ao Agente de Monitoramento, referente aos meses de Fevereiro, Abril, Junho, Agosto, Outubro e Dezembro, segundo a seguinte fórmula:

$$Percentual\ de\ Pagamentos\ = \frac{'pagamentos'}{'base\ de\ créditos'}$$

sendo:

**(i)**    *pagamentos*: a soma de todas as amortizações de

    **(a)** Créditos Elegíveis à Subscrição de Instrumento de Pagamento feitas por Recuperandas, excetuadas aquelas decorrentes de Coobrigações prestadas por dívidas das Sociedades Atvos;

    **(b)** Créditos Extraconcursais por garantia fiduciária outorgada pela ODB; e

    **(c)** Créditos Concursais por Garantia Outorgada por Recuperanda que sejam feitas por Terceiros, inclusive a parcela que não gerar amortizações de Instrumentos de Pagamento conforme previsto na Cláusula 3.7.9.1.1, exceptuadas aquelas decorrentes de Coobrigações prestadas por dívidas das Sociedades Atvos.

**(ii)**    *base de Créditos*: a soma de todos os (ii.a.) Créditos Elegíveis à Subscrição de Instrumento de Pagamento, exceptuadas aquelas decorrentes de Coobrigações prestadas por dívidas das Sociedades Atvos; e (ii.b) Créditos Extraconcursais por garantia fiduciária outorgada pela ODB.

2.      Em cada apuração, os valores descritos acima serão atualizados / trazidos a valor presente segundo as seguintes regras:

69

- *base de Créditos*: a base de créditos se refere aos valores destas obrigações na Data do Pedido, sem incorrer correção monetária / juros;

- *Créditos listados nas alíneas (a), (b) e (c) do item 1(i) acima*: os valores serão trazidos a valor presente até a Data do Pedido pelo fator de correção incidente dos respectivos instrumentos vigentes até a data de apuração.

**Anexo 2.5**

**Termo de Adesão à Consolidação Substancial**

Pelo presente instrumento particular,

[Denominação Legal da Requerente], sociedade anônima de capital fechado, com sede na [Sede], inscrita no CNPJ/ME sob o nº [*], neste ato devidamente representada na forma de seu Estatuto Social ("Requerente")

**CONSIDERANDO QUE:**

(i)      a **ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luis Viana, nº 2841, Ed. Odebrecht, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 05.144.757/0001-72, [Denominação Legal das demais Recuperandas] (em conjunto "Recuperandas") e a Requerente apresentaram, em 17.06.2019, pedido de recuperação judicial, autuado sob o nº 1057756-77.2019.8.26.0100, em curso perante a 1ª Vara de Falências e Recuperação Judiciais do Foro Central Cível da Comarca da Capital de São Paulo ("Recuperação Judicial");

(ii)     em [*], os Credores Concursais das Recuperandas deliberaram, em sede de assembleia geral de credores, pela consolidação substancial e aprovaram plano de recuperação judicial unitário, composto pelos ativos e passivos de titularidade de todas as Recuperandas ("Plano");

(iii)    em [*], o Plano foi homologado pelo Juízo da Recuperação Judicial na decisão de fls. [*], publicada no Diário de Justiça Eletrônico no dia [*];

(iv)    nos termos da Cláusula 2.5 do Plano, a Requerente poderá aderir ao Plano, por meio do envio do Termo de Adesão à Consolidação Substancial, acompanhado da cópia da ata de assembleia geral de credores que deliberar a sua adesão, sendo certo que o efeito de tal adesão será a consolidação de todos os ativos e da passivos da Requerente com os ativos e passivos das Recuperandas; e

(v)     em [*], em sede de assembleia geral de credores, os credores da Requerente ("Credores Concursais da Requerente") deliberaram pela adesão da Requerente ao Plano, de modo a formalizar seu ingresso na Consolidação Substancial das Recuperandas, reconhecendo e

71

concordando que todos os ativos e passivos da Requerente passarão, para todos os fins, a integrar o Plano ("AGC Consolidação Substancial").

**RESOLVE** a Requerente, conforme deliberado por seus credores na AGC Consolidação Substancial, firmar este Termo de Adesão à Consolidação Substancial ("Termo"), que será regido pelas cláusulas e condições abaixo.

1.      **OBJETO**

**1.1.    Adesão:** Pelo presente Termo, a Requerente adere, de maneira irrevogável e irretratável, ao Plano, consolidando todos os seus ativos e passivos com os ativos e passivos das Recuperandas, na forma da Cláusula 2.5 do Plano ("Adesão").

1.1.1.    Reestruturação dos Créditos. Por força de Adesão descrita na Cláusula 1.1 deste Termo, os Credores Concursais da Requerente terão seus créditos concursais reestruturados e pagos, nos termos das cláusulas 3.1, 3.2, 3.3, 3.4 e 3.6 do Plano, conforme aplicável considerando a natureza de cada Crédito Concursal.

1.1.2.    Alienação e/ou Oneração de Ativos. Por força de Adesão descrita na Cláusula 1.1 deste Termo, todos os bens e ativos parte do ativo circulante e não-circulante da Requerente estarão sujeitos às regras de alienação de ativos previstas nas Cláusulas 5.1 e 5.2 do Plano, sendo certo que o Anexo 1.1.2 deste Termo passará a compor, para todos os fins e efeitos, o Anexo 5.2 do Plano.

1.1.3.    Disposições Aplicáveis. Por força de Adesão descrita na Cláusula 1.1 deste Termo, todas as disposições, condições e definições descritas no Plano aplicar-se-ão à Requerente e aos seus Credores Concursais.

2.      **DECLARAÇÕES**

**2.1.    Declarações da Requerente:** A Requerente declara e garante que:

(i)      possui plena capacidade e legitimidade para celebrar o Termo, tendo tomado todas as medidas de natureza societária e outras eventualmente necessárias para autorizar a sua celebração, incluindo ter submetido a Adesão à deliberação dos Credores Concursais da

72

Requerente em sede da AGC Consolidação Substancial, para implementar todas as previsões contidas no Plano e cumprir todas as obrigações ali assumidas;

(ii) esta Adesão é validamente celebrada e constitui obrigação legal, válida, vinculante e exequível, de acordo com os seus termos;

(iii) a celebração desta Adesão e o cumprimento de suas obrigações: (a) não violam qualquer disposição contida em seus documentos societários; (b) não violam qualquer lei, regulamento, decisão judicial, administrativa ou arbitral, aos quais esteja vinculada, incluindo as decisões proferidas pelo Juízo da Recuperação Judicial; e (c) não viola qualquer deliberação tomada pelos Credores Concursais da Requerente em sede de assembleia geral de credores; e

(iv) as discussões sobre o objeto contratual desta Adesão foram feitas, conduzidas e implementadas por sua livre iniciativa, tendo a Requerente e os Credores Concursais da Requerente discutido amplamente todas as condições do presente negócio, sendo assessoradas por seus respectivos advogados que as informaram e alertaram de todas as condições e circunstâncias envolvidas na negociação desta Adesão, dos termos deste Termo e do Plano.

## 3.    DISPOSIÇÕES GERAIS

**3.1.    Irrevogabilidade e Irretratabilidade:** Este Termo, os compromissos e as responsabilidades nele assumida pela Requerente são irrevogáveis e irretratáveis. Este Termo é vinculante e é celebrado em benefício da Requerente e de seus respectivos sucessores e cessionários autorizados.

**3.2.    Vinculação do Plano:** As disposições do Plano vinculam a Requerente, os Credores Concursais da Requerente, e os seus respectivos cessionários e sucessores, a qualquer título (i) a partir da data de Homologação Judicial do Plano e (ii) do envio deste Termo, acompanhado de copiada ata da AGC Consolidação Substancial às Recuperandas, nos termos da cláusula 8.3 do Plano, o que ocorrer por último.

**3.3.    Definições:** Os termos grafados ou iniciados em letras maiúsculas usados neste Termo, mas não definidos neste instrumento terão os significados atribuídos no Plano.

**3.4.    Lei Aplicável:** Os direitos, deveres e obrigações decorrentes deste Termo deverão ser

73

regidos, interpretados e executados de acordo com as leis vigentes na República Federativa do Brasil, ainda que haja Créditos originados sob a regência de leis de outra jurisdição e sem que quaisquer regras ou princípios de direito internacional privado sejam aplicadas.

**3.5.** **Foro**: Todas as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Termo serão resolvidas pelo Juízo da Recuperação. Após o encerramento da Recuperação Judicial as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Termo serão resolvidas pelo foro da Comarca de São Paulo.

São Paulo, [dia] de [mês] de 2020

---

**[DENOMINAÇÃO LEGAL COMPLETA DA REQUERENTE]**

**Anexo 4.1.2**

**Escritura de Emissão: Instrumentos de Pagamento – Debêntures Privadas**

**Anexo 4.1.3**

**Escritura de Emissão: Instrumentos de Pagamento – Debêntures Públicas**

## Anexo 4.3

### Formulário de Opção de Pagamento

[Local, data]

À
Odebrecht S.A. – Em Recuperação Judicial e
Outras
Rua Lemos Monteiro, nº 120, 16º Andar
Butantã, São Paulo/SP, CEP 05501-050
A/C: Departamento Jurídico e Departamento
Financeiro
E-mail:rjodb@odebrecht.com

C/C
Administrador Judicial
Rua Surubim, nº 577, 9º andar
Brooklyn Novo, São Paulo/SP, CEP
04571-050
A/C: Eduardo Seixas e Luciana Gasques
E-mail:aj_odb@alvarezandmarsal.com

Ref.: **Exercício da Opção e Escolha do Instrumento de Pagamento.**

Prezados Senhores,

Nos termos da **Cláusula 4.1** do Plano de Recuperação Judicial da Odebrecht S.A. – Em Recuperação Judicial e Outras, conforme aprovado pelos credores na assembleia geral de credores realizado no dia [*], elegemos:

| | |
|---|---|
| *Créditos Quirografários Financeiros:* | ( ) Opção A – Créditos Quirografários Financeiros<br>( ) Opção B – Créditos Quirografários Financeiros<br>**( ) Não Aplicável** |
| *Créditos Quirografários Não Financeiros:* | ( ) Opção A – Créditos Quirografários Não Financeiros<br>( ) Opção B – Créditos Quirografários Não Financeiros<br><br>**( ) Não Aplicável** |
| Instrumento de Pagamento Disponíveis<br><br>(*Créditos com Garantia Real, Créditos Quirografários e Créditos ME/EPP)*: | ( ) Instrumento de Pagamento – Plano<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Instrumento de Pagamento – Debêntures Privadas<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Instrumento de Pagamento – Debêntures Públicas<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Instrumento de Pagamento – *Bonds*<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Diferimento da escolha da Opção de Pagamento |

| | Montante de Créditos Concursais Alocados na opção de diferimento: [INSERIR VALOR DO CRÉDITO]<br><br>**(    ) Não Aplicável** | |
|---|---|---|
| Denominação Legal Completa: | | |
| Banco: | | CNPJ/CPF: |
| Agência: | | Conta-Corrente: |

Atenciosamente,

**[DENOMINAÇÃO LEGAL COMPLETA]**

_____

**Nome:**

**CPF:**

**Anexo 5.2[3,4]**

**Lista de Ativos**

---

[3] O Anexo 5.2 e a Cláusula 5.2 do Plano respeitam gravames, direitos e prioridades assegurados aos detentores de créditos garantidos por garantias reais e/ou fiduciárias.

[4] O Anexo 5.2 será ajustado a depender das Requerentes que venham a aderir à consolidação substancial.

<u>ANEXO 6.1[5]</u>

<u>Lista de Operações de Reorganização Societária</u>

1.      Nos termos da legislação aplicável, as Recuperandas ficam autorizadas a realizar as seguintes operações de reorganização societárias:

(i)      **OEI:** A OEP promoverá cessão de ativos e passivos para a OEI (especificamente credito de debentures com a ATVOS S.A. – EM RECUPERAÇÃO JUDICIAL e passivos junto ao BNDESPAR e OSPINV).

(ii)     **OEP:** A OE poderá incorporar a OEP após a implementação da reestruturação prevista no item (ii).

(iii)    **Incorporação OEI**: A ODB poderá incorporar a OEI de tal forma que os créditos das debentures com a ATVOS S.A. – EM RECUPERAÇÃO JUDICIAL. e os passivos junto ao BNDESPAR e OSPINV figurem no balanço da ODB.

---

[5] O Anexo 6.1 será ajustado a depender das Requerentes que venham a aderir à consolidação substancial.

## ANEXO 7.4.1[6]

## Regras de Alocação de Remessas de Recursos para Requerentes

| Requerentes | Valor Máximo de Remessas (em R$ Milhões) |
|---|---|
| OPISA e OPI | 38,0 |
| OE e OEB | 13,0 |
| OPP e OP Centro Administrativo | 16,9 |
| MECTRON, OSP e OFL | 5,6 |
| **Total** | **73,4** |

O valor residual de R$ 6.600.000,00 (seis milhões e seiscentos mil reais) poderá ser livremente alocado dentre as Requerentes para cumprimento das obrigações constantes em seus respectivos planos de recuperação judicial.

---

[6] O Anexo 7.4.1 será ajustado a depender das Requerentes que venham a aderir à consolidação substancial.

81



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese



p. 1

200.133(003) Livro 753 Fl. 001-166

**I, SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER SIGNED BELOW, APPOINTED BY THE PRESIDENT OF THE TRADE BOARD OF THE STATE OF RIO DE JANEIRO (JUCERJA), LICENSED IN THE FOLLOWING LANGUAGES: ENGLISH, FRENCH, AND SPANISH UNDER PERMIT 243--------------------------------------------------------------------- HEREBY CERTIFY IN GOOD FAITH----------------------------------------------------- THAT ON THIS DATE A DOCUMENT WAS PRESENTED TO ME WRITTEN IN PORTUGUESE, WHICH I NOW TRANSLATE INTO THE ENGLISH IDIOM WITH THE BEST OF MY KNOWLEDGE AND IN GOOD FAITH, AS COMMANDED BY MY OFFICIAL DUTY, AS FOLLOWS: ----------------------------**

------------------------------------------------------------

**COURT-SUPERVISED REORGANIZATION PLAN** ----------------------

March 31, 2020 -----------------------------------------------

------------------------------------------------------------

**COURT-SUPERVISED REORGANIZATION PLAN** ----------------------

------------------------------------------------------------

**(1) KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL,** limited liability company, with registered office in the city of Salvador, state of Bahia, at Avenida Tancredo Neves, n° 1672, Edifício Catabas Empresarial, 5th floor, room 501, Caminho das Árvores, Postal Code [CEP] 41.820-020, taxpayer identification number CNPJ/ME 04.215.837/0001-09 ("KIEPPE"); **(2) ODBINV S.A. - EM RECUPERAÇÃO JUDICIAL,** joint stock company, with registered office in the city of Salvador, state of Bahia, at Avenida Luís Viana, n° 2841, Ed. Odebrecht, Paralela, Postal Code [CEP] 41.730-900, taxpayer identification number CNPJ/ME 15.105.588/0001-15 ("ODBINV"); **(3) ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL,** joint stock company, with registered office in the municipality of Salvador, State of Bahia, at Avenida Luis Viana, 2841, Ed.





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 2

Odebrecht, Paralela, Postal Code [CEP] 41.730-900, **taxpayer identification number CNPJ/ME** 05.144.757/0001-72 ("ODB"); **(4) OSP INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, n° 120, 9° floor, parte I, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 22.606.673/0001-22 ("OSP_INV"); **(5) ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 9th floor, parte E, Postal Code [CEP]05.501-050, taxpayer identification number CNPJ/ME 10.904.193/0001-69 ("OSP"); **(6) OPI S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 14th floor, parte A, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 17.337.615/0001-00 ("OPISA"); **(7) ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL**, a joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 12th floor, parte C, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 07.668.258/0001-00 ("OPI"); **(8) ODB INTERNATIONAL CORPORATION**, a company existing and organized under the laws of the Bahamas, with registered office in Nassau, at MB&H Corporate Services Ltd., Mareva House, 4 George Street, registered under No. 138020 B





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 3

("<u>ODBIC</u>"); **(9) ODEBRECHT FINANCE LIMITED**, a company organized and existing under the laws of the Cayman Islands, with principal place of business at George Town, Grand Cayman, Cayman Island at South Church Street, PO Box 309GT, Ugland House, registered under No. 181323 ("<u>OFL</u>"); **(10) ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL**, a joint stock company, with principal place of business at Rua Lemos Monteiro, nº 120, 14th floor, parte L, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 20.541.146/0001-51 ("<u>OEI</u>"); **(11) ODEBRECHT ENERGIA S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, nº 120, 7th floor, parte B, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 13.079.757/0001-64 ("<u>OE</u>"); **(12) ODEBRECHT ENERGIA PARTICIPAÇÕES S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, nº 120, 7th floor, parte D, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 19.790.376/0001-75 ("<u>OEP</u>"); **(13) ODEBRECHT ENERGIA DO BRASIL S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the city and state of São Paulo, at Rua Lemos Monteiro, nº 120, 11th floor, parte D, Postal Code [CEP]  05.501-050, taxpayer identification number CNPJ/ME 13.439.547/0001-30 ("<u>OEB</u>"); **(14) ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 4

office in the municipality of Salvador, State of Bahia, at
Avenida Luis Viana, 2841, Ed. Odebrecht, Sala Enseada,
Paralela, Postal Code [CEP] 41.730-900, taxpayer
identification number CNPJ/ME 17.851.495/0001-65 ("OPE");
**(15) EDIFÍCIO ODEBRECHT RJ S.A. - EM RECUPERAÇÃO JUDICIAL**,
joint stock company, with registered office in the City of
Rio de Janeiro, State of Rio de Janeiro, at Avenida Cidade
de Lima, 86, Santo Cristo, Postal Code [CEP] 20.220-710,
taxpayer identification number CNPJ/ME 19.432.176/0001-40
("EORJ"); **(16) ODEBRECHT PROPERTIES INVESTIMENTOS S.A. -
EM RECUPERAÇÃO JUDICIAL**, joint stock company, with
registered office in the City of São Paulo, State of São
Paulo, at Rua Lemos Monteiro, 120, 14th floor, parte H,
Postal Code [CEP] 05.501-050, <u>taxpayer identification
number CNPJ/ME</u> 21.264.618/0001-39 ("OPINV"); **(17)
ODEBRECHT PROPERTIES PARCERIAS S.A. - EM RECUPERAÇÃO
JUDICIAL**, joint stock company, with registered office in
the City of São Paulo, State of São Paulo, at Rua Lemos
Monteiro, 120, 14th floor, parte B, Postal Code [CEP]
05.501-050, taxpayer identification number CNPJ/ME
16.584.908/0001-20 ("OPP"); **(18) OP CENTRO ADMINISTRATIVO
S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with
registered office in Brasília, Federal District, at Rua
210, Quadra 01, Lote 34 TR 3, room 1010 C, Areal (Águas
Claras), Postal Code [CEP] 71950-770, taxpayer
identification number CNPJ/ME 19.128.923/0001-51 ("OP
Centro Administrativo"); **(19) OP GESTÃO DE PROPRIEDADES
S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 5

registered office in the City of São Paulo, State of São
Paulo, at Rua Lemos Monteiro, No. 120, 14th floor, parte
E, Postal Code [CEP] 05.501-050, taxpayer identification
number CNPJ/ME 20.620.396/0001-87 ("OP Gestão"); and **(20)**
**MECTRON - ENGENHARIA, INDÚSTRIA E COMÉRCIO S.A. - EM**
**RECUPERAÇÃO JUDICIAL,** joint stock company, with registered
office in the city of São José dos Campos, state of São
Paulo, at Avenida Brigadeiro Faria Lima, 1389, Parque
Martim Cererê, E 1399, Postal Code [CEP] 12227-000,
taxpayer identification number CNPJ/ME 65.481.012/0001-20
("MECTRON" and, together with the companies listed between
items **(1)** and **(20)**, "Companies under Reorganization"1),
submit, in the records of their court-supervised
reorganization proceedings, filed under No. 1057756-
77.2019.8.26.0100, in progress at the 1st Court of
Bankruptcy and Court-Supervised Reorganization of the
Central Civil Jurisdiction of the Capital of São Paulo
("Court-supervised Reorganization"), the following Court-
supervised Reorganization Plan ("Plan"), in compliance
with article 53 of Law No. 11.101/2005 ("LFR"). -----------
-----------------------------------------------------------
1 **Note:** the definition of "Companies under Reorganization"
shall be adjusted depending on the Companies under
Reorganization which approve substantial consolidation. ---
-----------------------------------------------------------
**WHEREAS:** ------------------------------------------------
**(i)** the Companies under Reorganization are part of the
Odebrecht Group, one of the largest business conglomerates





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 6

in Brazil, operating in the sectors of infrastructure, oil and gas, sugar and ethanol, real estate development, mobility and transportation, energy, defense and naval services, bringing together several companies under common control (direct or indirect) of KIEPPE, with activities developed in innumerable locations in the Brazilian national territory and in 27 countries corresponding to one of the largest Brazilian companies in its segments of operation ("Odebrecht Group"); ----------------------------
------------------------------------------------------------
**(ii)** despite having their own assets and legal personality, the Companies under Reorganization act under corporate, operational, financial and single management control, by means of a typical multidisciplinary structure aimed at optimizing financial, administrative and operational synergies, with view to increasing efficiency and maximizing income, and are under the same command and strategic planning, with centralized administration, and, for the most part, the identity of shareholders and management; -----------------------------------------------
------------------------------------------------------------
**(iii)** The Odebrecht Group was created with the exploration of the civil construction activity, developed by Construtora Norberto Odebrecht S.A., which is geared to large engineering and construction activities, in which it accumulated extensive experience and developed sophisticated technology, to the point of becoming the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 7

largest construction company in Latin America and one of the 30 largest service exporters in the world; ------------ ----------------------------------------------------------

**(iv)** the expansion of the Odebrecht Group was marked by investments in other segments besides the engineering and construction sector, namely: (a) in the petrochemical sector; (b) in the services sector of production, import, export and marketing of agricultural products in general, especially the cultivation, industrialization and marketing of sugarcane for the production of sugar, ethanol and derivatives; (c) in the offshore shipbuilding sector; (d) in the development of real estate undertakings; (e) in the energy sector; (f) in the strategic sector of military defense; and (g) in infrastructure businesses, including participation in highway and hydroelectric concessions; -------------------- ----------------------------------------------------------

**(v)** in order to conduct their activities and provide for the growth of the Odebrecht Group, the Companies under Reorganization structured themselves in order to enable them to raise funds in the Brazilian and international financial and capital markets through the contracting of bank financing, bank guarantees, insurance-guarantees and the issue of debt instruments in the local market (debentures) and in the international market *(bonds)*; to this end, the Companies under Reorganization have acted efficiently and in coordination as lenders, guarantors and





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 8

counter-guarantors of the aforementioned financial transactions; ---------------------------------------------- ----------------------------------------------------------

**(vi)** given the financial difficulties they faced, which were aggravated by attacks from certain creditors, and in order to ensure the social function of the Companies under Reorganization, as well as to preserve jobs and their productive capacity and stimulus to the economy, on ------- 06.17.2019, a request for Court-supervised Reorganization was filed by the Companies under Reorganization together with [@], [@] ("<u>Petitioners</u>")2; -------------------------- ----------------------------------------------------------

2 **Note**: the definition of "Petitioners" shall be adjusted depending on those Companies under Reorganization that do not resolve on the substantial consolidation in the AGC [General Creditors' Meeting] approving this Plan. --------- ----------------------------------------------------------

**(vii)** in attention to the orders of pages 278/285 and 355/363, issued respectively under Interlocutory Appeals No.s 2262371-21.2019.8.26.0000 and 226277- 73.2019.8.26.000, the Bankruptcy Creditors of the Companies under Reorganization resolved, at the general meeting of creditors, to substantially consolidate ODB with the other Companies under Reorganization; therefore, this Plan is comprised of the assets and liabilities held by all the Companies under Reorganization ("<u>Substantial Consolidation of the Companies under Reorganization</u>"); and finally ----------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

--------------------------------------------------------------

**(viii)** in compliance with the decision to grant processing of the Court-supervised Reorganization and the requirements of article 53 of the LFR, this Plan presents the means of reorganization sought by the Companies under Reorganization, and demonstrates its economic feasibility, through the Reports, as defined below, it being established that this Plan reflects the negotiations held with the collectivity of Creditors of the Companies under Reorganization; ---------------------------------------------
The Companies under Reorganization present this Plan to the Judge of the Reorganization, pursuant to the following terms and conditions. ------------------------------------

--------------------------------------------------------------

**1. DEFINITIONS AND RULES OF INTERPRETATION** ----------------

--------------------------------------------------------------

**1.1. Definitions:** The terms used in this Plan have the meanings defined below. Such defined terms shall be used, as appropriate and applicable, in their singular or plural form, in the male or female gender, without losing the meaning attributed to them. -------------------------------

--------------------------------------------------------------

1.1.1 "Judicial Claims or Arbitration Proceedings": are the judicial claims of labor or civil nature, filed against the Companies under Reorganization, or the arbitration proceedings involving the Companies under Reorganization, which involve legal relationships that, due to their cause of filing, originate the Bankruptcy





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

Credits in Bankruptcy that shall be included in the List of Creditors. ----------------------------------------------

1.1.2 "Adherence to Substantial Consolidation" has the meaning ascribed to it in Clause 2.5. ---------------------

1.1.3 "Judicial Administrator": is Alvarez & Marsal Administração Judicial Ltda., CNPJ/ME No. 07.016.138/0001-28, with its address at Rua Surubim, 577, 9° andar, Brooklin Novo, Postal Code [CEP] 04571-050, in the City and State of São Paulo, or whoever replaces it. -----------

1.1.4 "Affiliates": means, in relation to any person, any person directly or indirectly held, Controlling, Controlled or under common Control. -----------------------

1.1.5 "Monitoring Agent" means any of the firms specializing in the provision of consultancy and expert examination services listed in Appendix I to **Annex 1.1.73,** as well as the successors on any account of such firms whose principal activity is the provision of consultancy and expert services, whose attributions are described in section 6 of **Annex 1.1.73.** --------------------------------

1.1.6 "Anniversary": is the date that corresponds to the 365th (three-hundred sixty-fifth) day after the Date of Judicial Confirmation of the Plan. -----------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 11

1.1.7 "Approval of the Plan": is the approval of this Plan by the Bankruptcy Creditors of the Companies under Reorganization gathered at the Creditors' Meeting appointed to resolve thereon. For purposes of this Plan, Approval of the Plan is deemed to occur on the date of the Creditors' Meeting at which the vote on the Plan takes place, provided that it is subsequently confirmed in court pursuant to the terms of article 58, paragraph 1 of LFR. -- ----------------------------------------------------------

1.1.8 "Creditors' Meeting": is any general meeting of creditors of the Companies under Reorganization, held within the scope of this Court-supervised Reorganization, pursuant to the terms of Chapter II, Section IV, of LFR. -- ----------------------------------------------------------

1.1.9 "Compliance Bonus": is the revision of the interest rate and inflation adjustment applicable to the Payment Instruments pursuant to item 3 of **Annex 1.1.73** of the Plan, shall become correspondent to the TR on 15th (fifteenth) year provided that the amortizations, in the aggregate total, equal to or greater than BRL 500,000.00 (five hundred thousand reais) have been made since the Date of Judicial Confirmation of the Plan. ---------------- ----------------------------------------------------------

1.1.10. "Available Cash": means the sum of all amounts, immediately liquid funds and unencumbered financial investments held in cash by each of the Companies under Reorganization, including by virtue of the sale of assets, receipt of Dividends from the Subsidiaries (with due





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 12

regard for the apportionment of Clause 1.1.13), or by any other source of funds, according to the calculation to be made on the base dates established in Annex 1.1.73, and which may be used by the Companies under Reorganization for the purposes described in Annex 1.1.10. ---------------

-------------------------------------------------------------

1.1.11. "Cash for Distribution": means, on a given base date after the Grace Period provided in item 5 of **Appendix 1.1.73** has elapsed, every amount of Available Cash that exceeds the sum of BRL 300,000,000.00 (three hundred million reais), as adjusted by the IPCA in each fiscal year. When calculating the Cash for Distribution in the last two months of each year, there shall be a deduction from the amount of BRL 300,000,000.00 (three hundred million reais) the amounts eventually remitted to the Petitioners in the same fiscal year, pursuant to Clause 7.4.1. --------------------------------------------------

-------------------------------------------------------------

The following are not included in the Cash for Distribution concept: ------------------------------------

-------------------------------------------------------------

i. Funds for Payment of Ordinary Expenses received until December 31, 2022 that have not been used and are available on the referred base date and/or Funds for Payment of Ordinary Expenses whose release is contracted but which have not yet been made available to the Companies under Reorganization until the referred base date; and --------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 13

------------------------------------------------------------
ii. if applicable, until the end of the Grace Period,
considering such period may be extended in case it is
authorized by the holders of the Payment Instruments in a
resolution taken pursuant to item 8.3 of Annex 1.1.73, the
amounts necessary for payment of sales, tax and fiscal
expenses arising from the sale of assets of the Companies
under Reorganization and/or the Petitioners materialized
by the date of their calculation, as well as those not
materialized that may be estimated due to the obligations
contracted up to the ascertainment date, subtracted from
the net funds received or to be received by the Companies
under Reorganization and/or Petitioners arising from the
aforementioned sale of assets. ----------------------------

------------------------------------------------------------
For the avoidance of doubt, all funds related to the
events described in item ii, including net funds from the
disposal of assets to be received by the Companies under
Reorganization and/or Petitioners, within the limit of the
expenses mentioned in item ii, shall be reserved until the
materialization of the obligations described therein or
until the end of the period of 18 (eighteen) months as of
the end of the Grace Period, whichever occurs first, not
including the Cash for Distribution for the purposes of
Clause 1.1.11. If such obligations do not materialize, the
full amounts retained by the Companies under
Reorganization shall be used for the payment of the
Payment Instruments. --------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 14

------------------------------------------------------------

The Cash for Distribution shall be calculated, from the end of the Grace Period, based on the accounts closing management report, delivered by the Companies under Reorganization to the Monitoring Agent, for the months of February, April, June, August, October and December. ------

------------------------------------------------------------

1.1.12. "<u>Chapter 15</u>": means the auxiliary insolvency procedure provided in Chapter 15 of the U.S. Bankruptcy Code of the United States of America. --------------------

------------------------------------------------------------

1.1.13. "<u>Cascade of Dividends from Subsidiaries</u>": means part of the amounts received by the Companies under Reorganization as Dividends from Subsidiaries, which shall be used to pay Dividends from Subsidiaries until December 31, 2025 in the following proportion: --------------------

------------------------------------------------------------

| Dividends from Subsidiaries (BRL million) | Use of Dividends from Subsidiaries |
|---|---|
| Up to 100 in a given fiscal year | fully used for composition of Available Cash and Cash for Distribution, as applicable |
| Over 100 and up to 200 in a given fiscal year | 10% of the Dividends from Subsidiaries received in the fiscal year shall be allocated to payment by Dividends from Subsidiaries and 90% to composition of the Available Cash and Cash for Distribution, as applicable |
| Above 200 in a given fiscal year | 20% of the Dividends from Subsidiaries received in the fiscal year shall be allocated to the payment for Dividends from Subsidiaries and 80% to composition of Available Cash and Cash for Distribution, as applicable |

------------------------------------------------------------

After December 31st, 2025, the Dividends from Subsidiaries shall be entirely allocated to the composition of the Available Cash and Cash for Distribution, as applicable. --





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 15

----------------------------------------------------------

1.1.14. "Civil Code": is the Federal Law No. 10,406 of January 10, 2002. -----------------------------------------

----------------------------------------------------------

1.1.15. "Code of Civil Procedure": is the Federal Law No. 13,105 of March 16, 2015. --------------------------------

----------------------------------------------------------

1.1.16. "Substantial Consolidation of the Companies under Reorganization" has the meaning ascribed to it in recital (vii). ---------------------------------------------------

----------------------------------------------------------

1.1.17. "Control": means, according to article 116 of the Corporation Law, (i) the ownership of rights of shareholders which ensure to each holder, on a permanent basis, the majority of votes in company resolutions and the power to elect the majority of the company's management; and (ii) the effective use of such power to direct the company's activities and guide the operation of the company's bodies. The expressions and terms "Controller", "Controlled by", "under Common Control" and "Controlled" have the meanings logically derived from this definition of "Control". ----------------------------------

----------------------------------------------------------

1.1.18. "Co-obligation" means the obligation arising out of granting any personal guarantees, such as joint and several obligations, endorsements ("aval") and sureties, by: (i) a Company under Reorganization in favor of a Company under Reorganization in relation to a Credit; (ii)





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 16

a Company under Reorganization in favor of a Third Party in relation to any Credit, or (iii) a Third Party in favor of a Company under Reorganization in relation to a Credit. ------------------------------------------------------------

1.1.19. "Credits": are the credits and obligations, materialized or contingent, net or gross, subject of judicial/administrative/arbitration claims initiated or not, whether or not related to the List of Creditors of the Companies under Reorganization , whether or not subject to Court-supervised Reorganization. ---------------

------------------------------------------------------------

1.1.20. "Secured Credits": are credits existing in relation to the Companies under Reorganization secured by in rem Guarantees(e.g. pledge and mortgage), in accordance with article 41(II) of the LFR, up to the value of the encumbered asset, existing on the Date of Filing, in accordance with the values attributed in the List of Creditors. -------------------------------------------------

------------------------------------------------------------

1.1.21. "Secured Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.2.1. ---------------------------------------------

------------------------------------------------------------

1.1.22. "Bankruptcy Credits" are Labor Credits, Secured Credits, Unsecured Credits and ME/EPP Credits as well as other Credits subject to Court-Supervised Reorganization and which, as a result, may be restructured by this Plan pursuant to the terms of the LFR, including any Credits





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 17

that are recognized as being subject to Court-Supervised Reorganization within the context of qualification or challenges to Credits. ------------------------------------

1.1.23. "<u>Bankruptcy Credits Guaranteed by Third Party</u>" has the meaning ascribed to it in Clause 3.7.9.2. -------------

1.1.24. "<u>Bankruptcy Credits by Guarantee Granted by Companies under Reorganization</u>" has the meaning ascribed to it in Clause 3.7.9.1. ---------------------------------

1.1.25. "<u>Credits Eligible for Subscription of Payment Instruments</u>" means, collectively, (i) Secured Credits Eligible for Subscription of Payment Instruments; (ii) Unsecured Financial Credits Eligible for Subscription of Payment Instruments; (iii) Unsecured Non-Financial Credits Eligible for Subscription of Payment Instruments; and (iv) ME/EPP Credits Eligible for Subscription of Payment Instruments. ------------------------------------------------

1.1.26. "<u>Non-bankruptcy Credits</u>" means credits held against Companies under Reorganization: (i) whose triggering event is subsequent to the Date of Filing; (ii) derived from contracts entered into by the Date of Filing which are not subject to the effects of this Plan in accordance with article 49,§§ 3 and 4 of the LFR, such as statutory liens in guarantee, fiduciary guarantee or commercial lease agreements; (iii) other Credits not





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

subject to Court-supervised Reorganization under the LFR; or (iv) Credits recognized as non-bankruptcy credits in the scope of credit challenges. With respect to Credits secured by statutory lien or fiduciary guarantee pursuant to the terms of this item (ii), the remaining balance of the Credits after eventual foreclosure or full monetization of the relevant, is not included, for all purposes, in the definition of Non-Bankruptcy Credits, and shall receive the treatment granted to the Unsecured Credits. -------------------------------------------------- ------------------------------------------------------------

1.1.27. "Illiquid Credits": are contingent or illiquid Bankruptcy Credits, the subject of Lawsuits or Arbitration Proceedings, whether initiated or not, derived from any triggering events by the Date of Filing, which may be considered as Bankruptcy Credits and, as a result, may be restructured by this Plan, pursuant to the terms of the LFR, as Secured Credits, *Intercompany* Credits, ME/EPP Credits, Unsecured Credits or Labor Credits, as applicable. ----------------------------------------------- ------------------------------------------------------------

1.1.28. "*Intercompany* Credits": are the Bankruptcy Credits whose creditor is a company that is part of the Odebrecht Group and/or its direct or indirect Controlling companies, Subsidiaries or companies under common Control. ----------- ------------------------------------------------------------

1.1.29. "ME/EPP Credits": are Bankruptcy Credits held by an individual entrepreneur, EIRELI, a business company





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 19

and/or a limited partnership, provided that classified as small businesses and small companies, as defined in Complementary Law No. 123, dated of December 14, 2006, and as provided in articles 41, Clause IV and 83, Clause IV, d, of the LFR. --------------------------------------------

1.1.30. "ME/EPP Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.4.2.1. --------------------------------------------

1.1.31. "Unsecured Credits": are Unsecured Bankruptcy Credits, with special privilege, with general privilege or subordinated, as provided in articles 41, III and 83, VI of the LFR, in addition to the residual balance arising from the foreclosure of any in rem or fiduciary guarantee. For the purposes of this Plan, Unsecured Credits include Unsecured Financial Credits and Unsecured Non-Financial Credits, according to the meanings attributed in Clauses 1.1.32 and 1.1.36 respectively. --------------------------

1.1.32. "Unsecured Financial Credits" are those Unsecured Financial Credits arising from operations within the National Financial System, with insurance companies, foreign financial institutions, investment or equity funds, or involving foreign structures similar to investment or equity funds, *private equity*, and/or issues of debt instruments in domestic and foreign markets, including but not limited to issues of *notes* or *bonds*,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 20

which shall be restructured in accordance with Clause 3.3.1. For purposes of this Plan, Unsecured Financial Credits include any and all Unsecured Credits held by a financial institution or any company of its economic group, domestic or foreign, regardless of its origin. -----

-----------------------------------------------------------

1.1.33. "Unsecured Financial Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.3.1.2.1. -----------------------

-----------------------------------------------------------

1.1.34. "Unsecured Financial Credits Option A": has the meaning ascribed to it in Clause 3.3.1.1. -----------------

-----------------------------------------------------------

1.1.35. "Unsecured Financial Credits Option B": has the meaning ascribed to it in Clause 3.3.1.2. -----------------

-----------------------------------------------------------

1.1.36. "Unsecured Non-Financial Credits" are all Unsecured Credits, which are not Unsecured Financial Credits, and shall be restructured in accordance with Clause 3.3.2. ----------------------------------------------

-----------------------------------------------------------

1.1.37. "Unsecured Non-Financial Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.3.2.2.1. -----------------------

-----------------------------------------------------------

1.1.38. "Unsecured Non-Financial Credits Option A": has the meaning ascribed to it in Clause 3.3.2.1. -------------

-----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 21

1.1.39. "<u>Unsecured Non-Financial Credits Option B</u>": has
the meaning ascribed to it in Clause 3.3.2.2. -------------
------------------------------------------------------------
1.1.40. "<u>Unsecured Related Party Credits</u>" means Unsecured
Credits held by Related Parties, which shall be
restructured in accordance with Clause 3.3.4. -------------
------------------------------------------------------------
1.1.41. "<u>Late Credits</u>" are Bankruptcy Credits that are
recognized by supervening judicial or administrative
decision, or that are included in the List of Creditors as
a result of any credit entitlement, credit challenges or
any other incident or request of any nature formulated for
the same purpose, provided that submitted after the legal
deadlines mentioned in articles 7, paragraphs 1 and 2, and
8 of the LFR, pursuant to the provisions of article 10 of
the LFR, which may be restructured by this Plan, pursuant
to the terms of the LFR, as Secured Credits, *Intercompany*
Credits, ME/EPP Credits, Unsecured Credits or Labor
Credits, as applicable. ----------------------------------
------------------------------------------------------------
1.1.42. "<u>Labor Credits</u>": are Bankruptcy Credits and rights
derived from the labor legislation or arising from an
occupational accident at work, pursuant to the terms of
articles 41, Clause I, and 83, Clause I, of the LFR, which
maintain the nature of alimony on the Date of Judicial
Confirmation of the Plan. --------------------------------
------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 22

1.1.43. "<u>Related Party Labor Credits</u>" are those Labor Credits held by Related Parties, which shall be restructured in accordance with Clause 3.1.2. -------------
-----------------------------------------------------------

1.1.44. "<u>Creditors</u>" are the natural persons or legal entities holding Credits, whether or not subject to the effects of the Plan, whether or not listed on the List of Creditors. -------------------------------------------------
-----------------------------------------------------------

1.1.45. "<u>Secured Creditors</u>": are holders of Secured Credits. -----------------------------------------------
-----------------------------------------------------------

1.1.46. "<u>Bankruptcy Creditors</u>" are holders of Bankruptcy Credits. -----------------------------------------------
-----------------------------------------------------------

1.1.47. "<u>Non-bankruptcy Creditors</u>" are holders of Non-Bankruptcy Credits. --------------------------------------
-----------------------------------------------------------

1.1.48. "<u>ME/EPP Creditors</u>" are holders of ME/EPP Credits. -
-----------------------------------------------------------

1.1.49. "<u>Unsecured Creditors</u>" are holders of Unsecured Financial Credits and the holders of Unsecured Non-Financial Credits. --------------------------------------
-----------------------------------------------------------

1.1.50. "<u>Unsecured Financial Creditors</u>" are the holders of Unsecured Financial Credits. ------------------------------
-----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 23

1.1.51. "<u>Unsecured Financial Creditors Option B</u>": are the holders of Unsecured Financial Credits Option B. ----------

1.1.52. "<u>Unsecured Non-financial Creditors</u>" are holders of Unsecured Non-Financial Credits. --------------------------

1.1.53. "<u>Unsecured Non-Financial  Creditors Option A</u>": are the holders of Non-Financial Unsecured Credits Option A. --

1.1.54. "<u>Unsecured Non-Financial Creditors Option B</u>": are the holders of Unsecured Non-Financial Credits Option B. --

1.1.55. "<u>Late Creditors</u>" are holders of credits paid late.

1.1.56. "<u>Labor Creditors</u>" are holders of Labor Credits. ---

1.1.57. "<u>Related Party Labor Creditors</u>" are holders of Related Party Labor Credits. ------------------------------

1.1.58. "<u>Amortization Date</u>" is the date on which Cash for Distribution shall be used to amortize the Payment Instruments, in accordance with the Rule of Use of Cash for Distribution. For purposes of this Plan, the Amortization Date shall always occur by the last Business Day of January, March, May, July, September and November. -

1.1.59. "<u>Date of Judicial Confirmation of the Plan</u>": is the date on which the decision of Judicial Confirmation of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 24

the Plan issued by the Reorganization Court is published in the Diário de Justiça Eletrônio do Estado de São Paulo. ----------------------------------------------------------

1.1.60. "Date of Filing": is June 17, 2019, the date on which the request for court-supervised reorganization of the Companies under Reorganization was filed. -------------

----------------------------------------------------------

1.1.61. "Final Date for Payment of Labor Credits": has the meaning ascribed to it in Clause 3.1.1, item (iv). --------

----------------------------------------------------------

1.1.62. "Consecutive Day" is any day of the month, so that periods counted in Consecutive Days are not suspended or interrupted. ----------------------------------------------

----------------------------------------------------------

1.1.63. "Business Day": any day other than Saturday, Sunday or holiday in the City of São Paulo, State of São Paulo; furthermore, it shall not be a Business Day any day on which, for any reason, there is no banking business in the City of São Paulo, State of São Paulo. Exclusively for acts that must be performed in other districts, "Business Day" also means any day that, cumulatively, is not a Saturday, Sunday or holiday in the respective location, in the City of São Paulo, State of São Paulo, or any day on which, for any reason, there is no banking in the City of São Paulo, State of São Paulo. ----------------------------

----------------------------------------------------------

1.1.64. "Dividends from Subsidiaries": means the funds received, in cash and available for use by the Companies





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 25

under Reorganization, as dividends, interest on equity, capital reduction or any other form of shareholder remuneration, due to corporate interest held by the Companies under Reorganization. --------------------------

1.1.65. "<u>DTC</u>": is The Depository Trust Company, duly incorporated under the laws of the State of New York, United States of America, which provides a platform for registration and trading of debt instruments issued and negotiable (Bonds) in U.S. dollars. -----------------------

1.1.66. "<u>Issuer/ Principal Debtor</u>" has the meaning ascribed to it in **Annex 1.1.73,** item 1. -------------------

1.1.67. "<u>EORJ</u>" has the meaning ascribed to it in the preamble. -------------------------------------------------

1.1.68. "<u>In Rem Guarantees</u>": are in rem guarantee rights (e.g. pledge and mortgage, in accordance with Title X of the Civil Code) under this Plan and/or article 41, II of the LFR, which guarantee the Secured Credits. -------------

1.1.69. "<u>Guarantors</u>": has the meaning ascribed to it in **Annex 1.1.73,** item 2. -------------------------------------

1.1.70. "<u>Odebrecht Group</u>" has the meaning ascribed to it in recital (i). ------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 26

1.1.71. "*Chapter 15* Confirmation" has the meaning ascribed to it in Clause 4.7. -------------------------------------- ----------------------------------------------------------

1.1.72. "Judicial Confirmation of the Plan": is the judicial decision rendered by the Court-supervised Reorganization Court that confirms the Plan and, consequently, grants the Court-supervised Reorganization, pursuant to article 58, *caput* and/or §1 of the LFR. ------- ----------------------------------------------------------

1.1.73. "Payment Instruments" are (i) Payment Instruments - Bonds; (ii) Payment Instruments - Private Debentures; (iii) Payment Instruments - Public Debentures; and (iv) Payment Instruments - Plan, which shall be delivered to the Bankruptcy Creditors, as applicable, and which shall grant their respective holders the right to receive Cash for Distribution, in compliance with the Rule of Use of the Cash for Distribution, on a *pro rata* basis, whose terms and conditions are detailed in **Appendix 1.1.73.** ----- ----------------------------------------------------------

1.1.74. "Payment Instruments - *Bonds*" has the meaning ascribed to it in Clause 4.1.4 below. --------------------- ----------------------------------------------------------

1.1.75. "Payment Instruments - Private Debentures": has the meaning ascribed to it in Clause 4.1.2 below. --------- ----------------------------------------------------------

1.1.76. "Payment Instruments - Public Debentures": has the meaning ascribed to it in Clause 4.1.3 below. ------------- ----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.77. "<u>Payment Instruments - Plan</u>" has the meaning ascribed to it in Clause 4.1.1 below. --------------------- ----------------------------------------------------------

1.1.78. "<u>IPCA</u>": is the National Extended Consumer Price Index calculated monthly by the Brazilian Institute of Geography and Statistics (IBGE). In the absence of verification and/or disclosure of the index number for a period longer than five (5) Business Days after the expected date of its disclosure, or in the event of its extinction or by legal imposition or judicial determination, the IPCA shall be replaced by the index that economically reflects its quality or, in its absence, the last index disclosed. -------------------------------- ----------------------------------------------------------

1.1.79. "<u>Court-Supervised Reorganization Court</u>": is the 1st Circuit Court of Bankruptcy and Court-Supervised Reorganization of the Central Civil Jurisdiction District of São Paulo, State of São Paulo. ------------------------- ----------------------------------------------------------

1.1.80. "<u>KIEPPE</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------

1.1.81. "<u>Reports</u>" are, collectively, the economic feasibility report and the economic-financial report, prepared pursuant to article 53, clauses II and III, respectively, of the LFR, included in **Annex 1.1.81 (a)** and **(b)** of this Plan. ----------------------------------------- ----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 28

1.1.82. "<u>Corporation Law</u>": is the Federal Law No. 6404 dated of December 15, 1976. ------------------------------ ----------------------------------------------------------

1.1.83. "<u>LFR</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------

1.1.84. "<u>List of Creditors</u>" is the list of Creditors of the Companies under Reorganization prepared by the Judicial Administrator, as amended by final unappealable judicial decisions recognizing new Bankruptcy Credits or changing the legitimacy, classification or value of already recognized Bankruptcy Credits. -------------------- ----------------------------------------------------------

1.1.85. "<u>MECTRON</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------

1.1.86. "<u>ODB</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------

1.1.87. "<u>ODBIC</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------

1.1.88. "<u>ODBINV</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------

1.1.89. "<u>OE</u>" has the meaning ascribed to it in the preamble. ------------------------------------------------- ----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 29

1.1.90. "OEB" has the meaning ascribed to it in the preamble. ----------------------------------------------- ------------------------------------------------------------

1.1.91. "OEI" has the meaning ascribed to it in the preamble. ----------------------------------------------- ------------------------------------------------------------

1.1.92. "OEP" has the meaning ascribed to it in the preamble. ----------------------------------------------- ------------------------------------------------------------

1.1.93. "OFL" has the meaning ascribed to it in the preamble. ----------------------------------------------- ------------------------------------------------------------

1.1.94. "OP Centro Administrativo" has the meaning ascribed to it in the preamble. -------------------------- ------------------------------------------------------------

1.1.95. "OP Gestão" has the meaning ascribed to it in the preamble. ----------------------------------------------- ------------------------------------------------------------

1.1.96. "Option A - Unsecured Financial Credits": is the Payment Option offered to Unsecured Financial Creditors pursuant to Clause 3.3.1.1. ------------------------------ ------------------------------------------------------------

1.1.97. "Option A - Unsecured Non-Financial Credits": is the Payment Option offered to Unsecured Non-Financial Creditors under Clause 3.3.2.1. -------------------------- ------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.98. "Option B - Unsecured Financial Credits": is the Payment Option offered to Unsecured Financial Creditors under Clause 3.3.1.2. -------------------------------------

1.1.99. "Option B - Unsecured Non-Financial Credits": is the Payment Option offered to Unsecured Non-Financial Creditors under Clause 3.3.2.2. --------------------------

1.1.100. "Payment Options" has the meaning ascribed to it in Clause 2.2.2. -------------------------------------------

1.1.101. "OPE" has the meaning ascribed to it in the preamble. -------------------------------------------------

1.1.102. "OPI" has the meaning ascribed to it in the preamble. -------------------------------------------------

1.1.103. "OPINV" has the meaning ascribed to it in the preamble. -------------------------------------------------

1.1.104. "OPISA" has the meaning ascribed to it in the preamble. -------------------------------------------------

1.1.105. "OPP" has the meaning ascribed to it in the preamble -------------------------------------------------

1.1.106. "OSP" has the meaning ascribed to it in the preamble. -------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 31

------------------------------------------------------------

1.1.107. "OSP INV" has the meaning ascribed to it in the preamble. -------------------------------------------------

------------------------------------------------------------

1.1.108. "Payments in Cash" has the meaning ascribed to it in Clause 3.3.2.2. ----------------------------------------

------------------------------------------------------------

1.1.109. "Related Parties": are the individuals or legal entities that are, on the Date of the Request, directly or indirectly, individually or collectively, controlling shareholders of any companies of the Odebrecht Group, including the Companies under Reorganization and Petitioners, as well as their spouses or relatives, by blood or similar, collateral up to the 3rd (third) degree, ascendant or descendant. ----------------------------------

------------------------------------------------------------

1.1.110. "Percentage of Payments": means a percentage related to the amortizations or payments, on any account, of Credits taken or guaranteed by the Companies under Reorganization, to be calculated by the Monitoring Agent according to the calculation method detailed in Annex 1.1.110. --------------------------------------------------

------------------------------------------------------------

1.1.111. "Plan" has the has the meaning ascribed to it in the preamble. --------------------------------------------

------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 32

1.1.112. "<u>Period of Adherence to Substantial Consolidation</u>" has the meaning ascribed to it in Clause 2.5. ------------------------------------------------------ ------------------------------------------------------

1.1.113. "<u>Grace Period</u>" has the meaning ascribed to it in item 5 of **Annex 1.1.73**. ----------------------------------- ------------------------------------------------------

1.1.114. "<u>Election Term</u>" has the meaning ascribed to it in Clause 4.2. ------------------------------------------------- ------------------------------------------------------

1.1.115. "<u>Publication of the Election Board</u>" has the meaning ascribed to it in Clause 4.3.2. -------------------- ------------------------------------------------------

1.1.116. "<u>Court-Supervised Reorganization</u>" has the meaning ascribed to it in the preamble. --------------------------- ------------------------------------------------------

1.1.117. "<u>Companies under Reorganization</u>" has the meaning ascribed to it in the preamble, subject to the provisions of Clause 1.7. ---------------------------------------------- ------------------------------------------------------

1.1.118. "<u>Funds for Payment of Ordinary Expenses</u>": means any and all amounts received pursuant to the terms of Clause 7.2, limited to the overall amount of BRL 1,000,000.000.00 (one billion reais), which shall be invested primarily in the ordinary maintenance of the Companies under Reorganization's activities, in the payment of general and administrative expenses and in the compliance with the payment obligations of Labor Credits,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

Unsecured   Non-Financial   Credits   and   ME/EPP   Credits provided in this Plan. -----------------------------------
----------------------------------------------------------
1.1.119. "Rule of Use of Cash for Distribution": means the following rule of allocation of cash for distribution: ----
(i) until December 31, 2025 or until full payment of the amount  of  BRL  150,000,000.00  (one  hundred  and  fifty million reais) provided for in Clause 3.3.2.1.2, whichever occurs first, the Cash for Distribution shall be allocated as follows: -----------------------------------------------
----------------------------------------------------------
(a) 10% of the Cash for Distribution shall be allocated for payment of Unsecured Non-Financial Credits Option B pursuant to Clause 3.3.2.1.2; ----------------------------
----------------------------------------------------------
(b) 90% of the Cash for Distribution shall be allocated for amortization of the Payment Instruments and to the use by the Companies under Reorganization as described in item (iii)  below,  observing  the  following  proportions  and conditions: -----------------------------------------------
----------------------------------------------------------

| % of Cash for Distribution allocated to | | The Condition |
|---|---|---|
| Amortization Payment Instruments | Use of the Companies under Reorganization | |
| 72% | 18% | Until the Percentage of Payments reaches 35% |
| 67,5% | 22,5% | If the Percentage of Payments is higher than 35% or equal to 45% |
| 63% | 27% | If the Percentage of Payments is greater than 45% or equal to 50% |
| 58,5% | 31,5% | If the Percentage of Payments is greater than 50% or equal to 55% |
| 54% | 36% | If the Percentage of Payments is higher than 55% or equal to |





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 34

| | | 60% |
|---|---|---|
| 49,5% | 40,5% | If the Percentage of Payments is greater than 60% or equal to 65% |
| 45% | 45% | If the Percentage of Payments is higher than 65% |

----------------------------------------------------------

(ii) and, after the occurrence of the events described in item (i) above, the Cash for Distribution shall be allocated as follows: ------------------------------------

----------------------------------------------------------

| % of Cash for Distribution allocated to | | |
|---|---|---|
| Amortization Payment Instruments | Use of the Companies under Reorganization | Condition |
| 80% | 20% | Until the Percentage of Payments reaches 35% |
| 75% | 25% | If the Percentage of Payments is higher than 35% or equal to 45% |
| 70% | 30% | If the Percentage of Payments is greater than 45% or equal to 50% |
| 65% | 35% | If the Percentage of Payments is greater than 50% or equal to 55% |
| 60% | 40% | If the Percentage of Payments is higher than 55% or equal to 60% |
| 55% | 45% | If the Percentage of Payments is greater than 60% or equal to 65% |
| 50% | 50% | If the Percentage of Payments is higher than 65% |

----------------------------------------------------------

(iii) <u>Use of the Companies under Reorganization</u>. Provided that the amortizations of the Payment Instruments are made, as provided in items (i) and (ii) above, the distributions intended for Use by the Companies under Reorganization pursuant to the terms of tables above shall be reserved for use by the Companies under Reorganization, at their sole discretion, and shall not integrate the amount of Available Cash in the next calculations of Cash for Distribution, and may be allocated to profit





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 35

distributions, investments, loans, contributions or any other movement of funds between the Companies under Reorganization, their Affiliates, associated companies or Controlled companies, as permitted by law, **provided that, cumulatively** (a) the original outstanding balance of Payment Instruments has been reduced by at least BRL 10,000,000,000.00 (ten billion Reais), this amount not including the amount excepted in the final part of item 1(i)(a) of **Attachment 1.1.110**; and (b) any disposals, foreclosures or payment in kind of assets owned by ODB and granted as a fiduciary guarantee for the benefit of Creditors in the amount of at least BRL 1,000,000,000.00 (one billion Reais) or (b.2) four (4) years have elapsed from the Date of Judicial Confirmation of the Plan, whichever occurs first. Such funds may not be reserved and, if already reserved, they shall be fully used for amortization of the Payment Instruments in the event of any discussion or judicial questioning by Petitioners in the event (b.1), which is also applicable for purposes of this prohibition to the assets of other Petitioners. ------
-----------------------------------------------------------
1.1.120. "Petitioners" has the meaning ascribed to it in the preamble. ---------------------------------------------
-----------------------------------------------------------
1.1.121. "ME/EPP Credits Balance" has the meaning ascribed to it in Clause 3.4.2. -----------------------------------
-----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 36

1.1,122. "<u>Minimum wage</u>": means the minimum wage, fixed by law and adjusted annually, pursuant to article 7, Clause IV of the Federal Constitution of the Federative Republic of Brazil of 1988, chapter III of Decree-Law No. 5,452 of May 1st, 1943, and Provisional Measure No. 919 of January 30, 2020. --------------------------------------------------- -----------------------------------------------------------

1.1.123. "<u>Securities Act</u>" means the U.S. Securities Act of 1933, as amended from time to time. ----------------------- -----------------------------------------------------------

1.1.124. "<u>Atvos Companies</u>": are, collectively, the (1) Atvos Agroindustrial companies S.A. - Em Recuperação Judicial, joint stock company, with registered office in the city of São Paulo, state of São Paulo, at Rua Lemos Monteiro, n° 120, 13th floor, Butantã, CNPJ/MF under n° 08.636.745/0001-53; (2) Atvos Agroindustrial Participações S.A. - Em Recuperação Judicial, a joint-stock company, with registered office in the city of São Paulo, state of São Paulo, at Rua Lemos Monteiro, n° 120, 13° andar, Butantã, enrolled with CNPJ/MF n° 08.842.690/0001-38; (3) Pontal Agropecuária S.A. - Em Recuperação Judicial, a company, with its headquarters in the city of Teodoro Sampaio, state of São Paulo, at Fazenda Alcídia, Zona Rural, enrolled with CNPJ/MF under No. 46.453.403/0001-97(4) Rio Claro Agroindustrial S.A. – Em Recuperação Judicial, joint-stock company, with registered office in the municipality of Teodoro Sampaio, state of São Paulo, at Fazenda Alcídia, s/n, Zona Rural, CNPJ/MF No.





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 37

46.453.403/0001-97;(5) Usina Conquista Do Pontal S.A. - Em Recuperação Judicial, joint-stock company, with registered office in the municipality of Mirante do Paranapanema, state of São Paulo, at Fazenda Conquista do Pontal, Rodovia SP 563, km 13, s/n, Rural Area, CNPJ/MF No. 07.298.800/0001-80; (6) Agro Energia Santa Luzia S.A. - Em Recuperação Judicial, joint-stock company, with registered office in the municipality of Nova Alvorada do Sul, State of Mato Grosso do Sul, at Fazenda São Sebastião, Highway BR 267, km 231, s/n, CNPJ/MF No. 08.906.558/0001-42; (7) BRENCO - Companhia Brasileira De Energia Renovável - Em Recuperação Judicial, joint-stock company, with registered office in the municipality of São Paulo, State of São Paulo, (8) Destilaria Alcídia S.A. - Em Recuperação Judicial, joint stock company, with registered office in the city of Teodoro Sampaio, state of São Paulo, at Fazenda Alcídia, s/n, Zona Rural, CNPJ/MF no. 46,448,270/0001-60; and (9) Usina Eldorado S.A. - Em Recuperação Judicial, a joint stock company, with registered office in the municipality of Rio Brilhante, State of Mato Grosso do Sul, at Fazenda São Pedro, s/n, Highway MS 145, km 49, directly adjacent to Ipezal/Deodapolis, CNPJ/MF under No. 05.620.523/0001-54, which filed the court-supervised reorganization proceeding under No. 1050977-09.2019.8.29.0000, in progress before the 1st Court of Bankruptcy and Court-Supervised Reorganization of the Central Civil Jurisdiction of the Capital of São Paulo. ------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 38

----------------------------------------------------------

1.1.125. "Third Party" means a legal entity other than the Company under Reorganization of which the Bankruptcy Creditors hold credits and rights against, whether for (a) a principal obligation with Co-obligation or in rem and/or fiduciary guarantee assumed or provided by a Company under Reorganization; and/or (b) Co-obligation or in rem and/or fiduciary guarantee assumed or provided by the Third Party. -------------------------------------------------

----------------------------------------------------------

1.1.126. "Substantial Consolidation Joinder Agreement" has the meaning ascribed to it in Clause 2.5. -----------------

----------------------------------------------------------

1.1.127. "Original Term of the Stay Period": means December 16, 2019, the date on which the period provided for in article 6, §4 of LFR expired. ----------------------

----------------------------------------------------------

1.1.128. "TR" is the reference rate established by Act 8,177/1991, as ascertained and disclosed by the Central Bank of Brazil, whose proceeds, when expressly provided in this Plan, shall be added to the balance of the par value of the Credit for purposes of calculation of the monetary value of the obligations set forth in this Plan, which shall be due on the dates of payment of the amortization tranche of the referred obligations. In case of temporary unavailability of the TR, the last index number disclosed, calculated *pro rata temporis* by Business Days, shall be used instead, however, no financial compensation shall





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 39

apply upon disclosure of the proper index number. In the absence of ascertainment and/or disclosure of the index number for a period longer than five (5) Business Days after the expected date of its disclosure, or even in the event of its extinction or by legal imposition or judicial determination, the TR shall be replaced by the simple average of the TR rate verified in the 12 (twelve) months prior to the Date of Confirmation of the Plan, calculated *pro rata temporis* per Business Days. ----------------------
----------------------------------------------------------
1.1.129. "<u>UPI</u>" is the Isolated Production Unit pursuant to article 60 of LFR, which may be comprised of goods and/or rights. -------------------------------------------------
----------------------------------------------------------
1.1.130. "<u>*U.S. Bankruptcy Code*</u>": means Title 11 of the United States Code 11 U.S.C. §§ 11 *et seq*. ----------------
----------------------------------------------------------
**1.2. Clauses and Annexes**. Unless otherwise specified, all Clauses and Annexes mentioned in this Plan refer to Clauses and Annexes to this Plan. References to Clauses, sub-clauses or items in this Plan also refer to their respective sub-clauses or items. The Annexes are included and are an integral part of the Plan for all legal purposes. -------------------------------------------------
----------------------------------------------------------
**1.3. Titles**. The titles of the Chapters, Clauses, sub-clauses and items in this Plan have been included solely





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 40

for reference and should not affect their interpretation or the content of their provisions. ----------------------- ------------------------------------------------------------

**1.4. References.** References to any documents or instruments include all respective amendments, consolidations and complementation, unless expressly provided otherwise. Whenever applicable, references to the Companies under Reorganization should be interpreted as being the legal entities that succeed them in their obligations due to corporate operations contemplated or permitted under this Plan, and any others that are necessary for the resizing and increase of the organizational efficiency and cost reduction of the Odebrecht Group. ------------------------------------------ ------------------------------------------------------------

**1.5. Legal provisions.** References to legal provisions and laws shall be construed as references to such provisions as are in force on or as of a date specifically determined by the context. -------------------------------------------- ------------------------------------------------------------

**1.6. Deadlines.** All periods provided in this Plan shall be counted as provided in article 132 of the Civil Code, ignoring the day of commencement and including the day of expiration. Any terms of this Plan (whether counted in Business Days or not) whose initial or final term falls on a day that is not a Business Day, shall automatically be extended to the immediately following Business Day. ------- ------------------------------------------------------------



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 41

**1.7. Adherence to the terms and conditions of this Plan.**
In the event the Adherence to Substantial Consolidation is approved by the creditors of one or more Petitioners, all definitions containing references to a "Company under Reorganization", its assets, liabilities, rights and obligations shall be construed to include the assets, liabilities, rights and obligations of the Petitioners in question. ------------------------------------------------
------------------------------------------------------------

**1.8. Non-Bankruptcy Credits.** Nothing in this Plan shall be construed or considered to cause (i) novation of Non-Bankruptcy Credits or (ii) alteration, modification or waiver of any obligations of any Companies under Reorganization or of the rights of any Non-Bankruptcy Creditors in respect of Non-Bankruptcy Credits, including, without limitation, any guarantees provided under such Non-Bankruptcy Credits or acknowledgments provided by the Companies under Reorganization. ---------------------------
------------------------------------------------------------

**1.9. Conflict.** In the event of conflict between the provisions of (i) this Plan and its Annexes, the terms and conditions of the Plan shall prevail; and (ii) between **Annex 1.1.73** and **Annexes 4.1.2,** and **4.1.3,** the terms and conditions of **Annex 1.1.73** shall prevail. -----------------
------------------------------------------------------------

**2. PRIMARY MEANS OF REORGANIZATION** ------------------------
------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 42

**2.1. Overview.** The Companies under Reorganization propose the adoption of the measures indicated in Clauses 2.2, 2.3 and 2.4 below, as a way to overcome its current and momentary economic and financial crisis and to continue its activities. ------------------------------------------

**2.2. Debt restructuring.** The Companies under Reorganization shall restructure the debts contracted with the Bankruptcy Creditors, as detailed in Clause 3 below. --

2.2.1. <u>Payments by the Companies under Reorganization</u>. Considering (i) the possibility of Adherence to the Substantial Consolidation; (ii) that the Available Cash and the Cash for Distribution shall be obtained by distinct Companies under Reorganization; (iii) the administration of the Companies under Reorganization' funds is concentrated in ODB, the consolidating and managing company of equity holdings; (iv) there are many cross guarantees amongst the Companies under Reorganization , as well as several *Intercompany* Credits; and, also (v) the objective of guaranteeing the implementation of this Plan and enabling a global solution for the operational and financial reorganization of all Companies under Reorganization, the Credits and payment obligations in this Plan shall be, on the date of the Judicial Confirmation of the Plan, centralized in ODB, any company that succeeds ODB, any Company under





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 43

Reorganization, observing the provisions set forth in Clause 3 below and in Annex 1.1.73. ----------------------- ------------------------------------------------------------

2.2.2. <u>Payment options at the Creditor's choice</u>. The Plan provides certain Bankruptcy Creditors the right to choose from a number of options offered, the alternative of receiving their Bankruptcy Credits (indistinctly, "<u>Payment Options</u>"), pursuant to Clause 4.1 below. The granting of the possibility to choose between the Payment Options is a measure that promotes isonomic treatment among the Bankruptcy Creditors as it allows each Bankruptcy Creditor to choose the option that best suits its interests. ------- ------------------------------------------------------------

2.2.3. <u>Advance of Payments</u>. Companies under Reorganization may, at any time, accelerate any payments on a *pro rata* basis among the Labor Creditors within the limits provided in Clause 3 below. ----------------------------------------- ------------------------------------------------------------

**2.3. Disposal of Property and Constitution of UPIs.** The Companies under Reorganization are herein authorized to sell, rent, lease, give in payment, remove, encumber or offer in guarantee, including judicial guarantee, property, assets and/or rights that are part of its current assets, as well as property, assets and/or rights that are part of its non-current assets, observing in all cases the terms, conditions and restrictions described in Clause 5, and also the net funds obtained with eventual disposal, including litigious assets, present or future,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 44

national or foreign, shall be used as established in this Plan always observing Clause 1.1.11. ----------------------

----------------------------------------------------------

**2.4. Corporate Reorganization.** The Companies under Reorganization are authorized to carry out corporate reorganization operations, including those necessary to implement this Plan, including mergers, acquisitions, acquisition of shares, spin-offs and transformations, or promote asset transfers within the Odebrecht Group, subject to the terms and conditions of Clause 6.1. --------

----------------------------------------------------------

**2.5. Adherence to Substantial Consolidation**: any of the Petitioners may, irrevocably and irreversibly, join this Plan, by sending the declaration in **Annex 2.5,** accompanied by a copy of the minutes of the general meeting of creditors that resolve to adhere this Plan ("Instrument of Adherence to the Substantial Consolidation"), provided that such acts are performed within ninety (90) Consecutive Days as of the Date of Judicial Confirmation of the Plan ("Period of Adherence to the Substantial Consolidation"). By means of the Instrument of Adherence to the Substantial Consolidation, the relevant Petitioner, its creditors, as well as the Companies under Reorganization and its Bankruptcy Creditors, acknowledge and agree that, by virtue of the adherence, all the Bankruptcy Credits, assets and liabilities of said Petitioner shall become, for all purposes, part of this Plan. ----------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 45

--------------------------------------------------------

**3. PAYMENT OF CREDITORS** ------------------------------

--------------------------------------------------------

**3.1. Labor Credits.** -----------------------------------

3.1.1. <u>General rule</u>. The Labor Creditors, except the Labor Creditors Related Parties, shall have their Labor Credits restructured and paid in national funds, up to the limit of BRL 3,000,000.00 (three million reais), always observing the limit of the value of the respective Labor Credit, in up to 4 (four) installments, observing the following rules: ------------------------------------------

--------------------------------------------------------

(i) *1st Installment*. Payment of up to BRL 650,000.00 (six hundred and fifty thousand reais), to be paid to each of the Labor Creditors, in installment due on the last Business Day of the 12th (twelfth) month counted from the Original Term of the Stay Period; -------------------------

--------------------------------------------------------

(ii) *2nd Installment*. Eventual remaining balance of Labor Credits existing after the payment provided for in item (i) above shall receive payment of up to BRL 650,000.00 (six hundred and fifty thousand reais), in installments due on the last Business Day of the 12th (twelfth) month from the payment contemplated in item (i) above; ----------

(iii) *3rd Installment*. Eventual remaining balance of Labor Credits existing after the payment contemplated in items (i) and (ii) above, shall receive payment of up to BRL 850,000.00 (eight hundred and fifty thousand reais), in





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

installments due on the last Business Day of the 12th (twelfth) month from the payment contemplated in item (ii) above; and ------------------------------------------------

------------------------------------------------------------

(iv) *4th Installment*. Eventual remaining balance of Labor Credits existing after the payment contemplated in items (i), (ii) and (iii) above shall receive payment of up to BRL 850,000.00 (eight hundred and fifty thousand reais), in installments due on the last Business Day of the 12th (twelfth) month as of the payment contemplated in item (iii) above ("<u>Final Date for Payment of Labor Credits</u>"). --

------------------------------------------------------------

3.1.1.1. <u>Deferred payment</u>. The payments contemplated in items (ii) and (iii) above may be postponed to the payment dates contemplated for the following year and until the Final Payment Date of Labor Credits provided that the Companies under Reorganization receive Dividends from Subsidiaries in an amount below RL 100,000,000.00 (one hundred million reais) in the respective fiscal year of payment. ------------------------------------------------

------------------------------------------------------------

3.1.1.2. <u>Interest and Inflation adjustment</u>. Interest and inflation adjustment on the respective Labor Credit, corresponding to the IPCA from the Date of Filing until the implementation of the payments contemplated in Clause 3.1.1 above. ------------------------------------------------

------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 47

3.1.1.3. <u>Novation</u>. The Labor Credits shall be novated, and will corresponding to BRL 3,000,000.00 (three million reais), with the interest and inflation adjustment contemplated in Clause 3.1.1.2 above, if the amount of the Labor Credit of the respective Bankruptcy Creditor is higher than BRL 3,000,000.00 (three million reais). -------
-----------------------------------------------------------

3.1.2. <u>Related Parties Labor Credits.</u> Labor Creditors that are Related Parties shall have their Related Party Labor Credits restructured and paid in domestic currency, up to a limit of 150 (one hundred and fifty) Minimum Wages, in cash, in a single installment, due on the last Business Day of the 12th (twelfth) month counted from the Original Term of the Stay Period. ----------------------------------
-----------------------------------------------------------

3.1.2.1. <u>Interest and Inflation adjustment</u>. Interest and inflation adjustment on the respective Related Party Labor Credit, corresponding to the IPCA from the Date of Filing until the implementation of the payment contemplated in Clause 3.1.2 above. ---------------------------------------
-----------------------------------------------------------

3.1.2.2. <u>Novation</u>. The Related Party Labor Credits shall be novated, corresponding to the equivalent of 150 (one hundred and fifty) Minimum Wages, with interest and adjustment contemplated in Clause 3.1.2 above, in case the amount of the Related Party Labor Credits of the respective Bankruptcy Creditor is higher than 150 (one hundred and fifty) Minimum Wages. -------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 48

--------------------------------------------------------------

3.1.3. <u>Late Labor Credits</u>. Late Labor Credits shall be paid as described in Clauses 3.1.1 and 3.1.2, as applicable, with the first payment due on the last Business Day of the 12th (twelfth) month from the date of the certificate of final unappealable decision determining the inclusion of the said Labor Credit in the List of Creditors. --------------------------------------------------

--------------------------------------------------------------

3.1.4. <u>Release</u>. The implementation of the payments provided in Clauses 3.1.1 and 3.1.2 necessarily entails the most general and unrestricted release of the Labor Credit in question. ---------------------------------------

--------------------------------------------------------------

**3.2. Secured Credits.** The Secured Creditors with in rem Guarantee shall have their Secured Credits restructured and fully paid by means of Payment Instruments, as timely elected, whose terms and conditions of issue, effectiveness, maturity and remuneration are detailed in **Annex 1.1.73.** ---------------------------------------------

--------------------------------------------------------------

3.2.1. <u>Subscription Criteria</u>. Each Secured Creditor shall be entitled to receive or subscribe to BRL 1.00 (one Real), as applicable, of face value of Payment Instruments for each BRL 1.00 (one Real), as applicable, in Secured Credits ("<u>Secured Credits Eligible for Subscription of Payment Instruments</u>"). If necessary, the Bankruptcy Credits denominated in foreign currency shall be converted





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 49

into Brazilian reais or U.S. dollars in accordance with the exchange rates for sale available in the Information System of the Central Bank of Brazil (SISBACEN), on the Business Day immediately prior to the date of the act to be performed under this Plan. ----------------------------
----------------------------------------------------------

3.2.2. <u>In Rem Guarantees</u>. Secured Credits shall be guaranteed by their respective In Rem Guarantee currently constituted. For the avoidance of doubt, the In Rem Guarantees currently constituted for each of the Secured Creditors shall not be shared with the other Bankruptcy Creditors. -------------------------------------------------
----------------------------------------------------------

3.2.3. <u>Payment in kind</u>. Secured Creditors who wish to receive the property encumbered with In Rem Guarantee in payment of the respective Secured Credits shall send a notification to the Companies under Reorganization, within 30 (thirty) Consecutive Days counted from the expiry of the Period of Adherence to the Substantial Consolidation and pursuant to Clause 8.3, informing their option, which shall be considered final, definitive, binding, irrevocable and irreversible. The Companies under Reorganization shall perform all acts necessary to implement the payment in kind under the terms agreed with the respective Secured Creditor. --------------------------
----------------------------------------------------------

3.2.3.1. After the period indicated in Clause 3.2.3 above has elapsed, the payment in kind with assets encumbered





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 50

with In Rem Guarantee as a form of payment of the respective Secured Credits shall only be implemented if agreed between the Companies under Reorganization and the respective Secured Creditor. ------------------------------ ------------------------------------------------------------ 3.2.3.2. Any remaining balance of Secured Credits, after the implementation of the payment in instalments of the assets encumbered with In Rem guarantee provided in Clauses 3.2.3 and 3.2.3.1 above, shall be considered an Unsecured Financial Credit Eligible for Subscription of Payment Instruments. --------------------------------------- ------------------------------------------------------------ 3.2.4. <u>Late Secured Credits</u>. Late Secured Credits shall be restructured and paid as described in Clause 3.2 above, and it is certain that (i) the period indicated in Clause 3.2.3 shall only commence after the effective inclusion of said Late Credits in the List of Creditors; and (ii) the respective Secured Creditors shall be entitled to receive all payments made on a date subsequent to the final unappealable decision determining the inclusion of said Late Credits in the List of Creditors. -------------------- ------------------------------------------------------------ **3.3. Unsecured Credits.** ------------------------------------ ------------------------------------------------------------ 3.3.1. <u>Unsecured Financial Credits</u>. The Unsecured Financial Creditors may elect the form of payment of their Unsecured Financial Credits in accordance with one of the following Payment Options, and provided that the Payment





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 51

Option election procedure described in Clause 4.2 below is followed: ------------------------------------------------- ----------------------------------------------------------

3.3.1.1. <u>Option A - Unsecured Financial Credits</u>. Unsecured Financial Creditors who validly elect this Option A ("<u>Option A - Unsecured Financial Credits</u>") shall have their Unsecured Financial Credits restructured and paid in domestic currency, up to the limit of BRL 150,000.00 (one hundred and fifty thousand reais), in cash, in a single installment, on the last Business Day of the 12th (twelfth) month as of the Plan's Judicial Confirmation Date ("<u>Unsecured Financial Credits - Option A</u>"). ---------- ----------------------------------------------------------

3.3.1.1.1. <u>Interest and Inflation adjustment</u>. Interest and inflation adjustment on the respective amount of Unsecured Financial Credits and on the limit of BRL 150,000.00 (one hundred and fifty thousand Reais), contemplated in Clause 3.3.1.1 above, corresponding to the TR since the Date of Filing until the date of effective payment. --------------- ----------------------------------------------------------

3.3.1.1.2. <u>Novation</u>. The Unsecured Financial Credits - Option A shall be novated to correspond to BRL 150,000.00 (one hundred and fifty thousand Reais), with interest and inflation adjustment contemplated in Clause 3.3.1.1 above, in case the amount of the Unsecured Financial Credits - Option A of the respective Bankruptcy Creditor is greater than BRL 150,000.00 (one hundred and fifty thousand Reais). ----------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 52

----------------------------------------------------------

3.3.1.1.3. <u>Release</u>. The choice of this option and the respective payment envisaged herein necessarily implies in a broad, general and unrestricted release of the Unsecured Financial Credit in question. ----------------------------

----------------------------------------------------------

3.3.1.2. <u>Option B - Unsecured Financial Credits</u>. The Unsecured Financial Creditors that validly elect this Option B ("<u>Option B - Unsecured Financial Credits</u>") shall have their Unsecured Financial Credits restructured and paid in full by means of Payment Instruments, as appropriately elected, the terms and conditions of issue, term, maturity and remuneration detailed in **Annex 1.1.73** ("<u>Unsecured Financial Credits - Option B</u>"). --------------

----------------------------------------------------------

3.3.1.2.1. <u>Subscription Criteria</u>. Each Unsecured Financial Creditor who elects Option B - Unsecured Financial Credits shall be entitled to receive or subscribe to BRL 1.00 (one Real), as applicable, of face value of Payment Instruments for each BRL 1.00 (one Real), as applicable, in Unsecured Financial Credits ("<u>Unsecured Financial Credits Eligible for Subscription of Payment Instruments</u>"). If necessary, the Bankruptcy Credits denominated in foreign currency shall be converted into Brazilian reais or US dollars according to the exchange rates for sale available in the Information System of the Central Bank of Brazil (SISBACEN), on the Business Day immediately prior to the date of the act to be performed under this Plan. ----------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 53

------------------------------------------------------------

3.3.2. <u>Unsecured Non-Financial Credits</u>. The Unsecured Non-Financial Creditors may elect the form of payment of their Unsecured Non-Financial Credits in accordance with one of the Payment Options described below, and provided that the Payment Option election procedure described in Clause 4.2 below is followed: ----------------------------------------

------------------------------------------------------------

3.3.2.1. <u>Option A - Unsecured Non-Financial Credits</u>. Unsecured Non-Financial Creditors who validly elect this Option A ("<u>Option A - Unsecured Non-Financial Credits</u>") shall have their Unsecured Non-Financial Credits restructured and paid in domestic currency, up to the limit of BRL 150,000.00 (one hundred and fifty thousand reais), in cash, in a single installment, on the last Business Day of the 12th (twelfth) month as of the Plan's Judicial Confirmation Date ("<u>Unsecured Non-Financial Credits Option A</u>"). ----------------------------------------

------------------------------------------------------------

3.3.2.1.1. <u>Interest and Inflation adjustment</u>. Interest and inflation adjustment on the respective amount of Unsecured Non-Financial Credits Option A and on the limit of BRL 150,000.00 (one hundred and fifty thousand reais), contemplated in Clause 3.3.2.1 above, corresponding to the TR from the Date of Filing until the date of effective payment. --------------------------------------------------

------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 54

3.3.2.1.2. <u>Novation</u>. The Unsecured Non-Financial Credits Option A shall be novated to correspond to BRL 150,000.00 (one hundred and fifty thousand reais), with interest and inflation adjustment adjustment comtemplated in Clause 3.3.2.1.1 above, in case the amount of the Unsecured Non-Financial Credits Option A of the respective Bankruptcy Creditor is greater than BRL 150,000.00 (one hundred and fifty thousand reais). -----------------------------------

3.3.2.1.3. <u>Release</u>. The choice of this option and the respective payment envisaged herein necessarily implies in a broad, general and unrestricted release of the Unsecured Non-Financial Credit in question. -------------------------

-----------------------------------------------------------

3.3.2.2. <u>Option B – Unsecured Non-Financial Credits</u>. Unsecured Non-Financial Creditors who validly elect this Option B ("<u>Option B - Unsecured Non-Financial Credits</u>") shall have their Unsecured Non-Financial Credits ("Unsecured <u>Non-Financial Credits Option B</u>") restructured and paid through the combination of (i) cash payment, with domestic currency subject to and arising from the events detailed in Clauses 3.3.2.2.1 and 3.3.2.2.1.2 ("<u>Payments in Cash</u>"); and (ii) and Payment Instruments, subject to the terms, conditions and limits detailed in Clause 3.3.2.2, as applicable and as follows: --------------------

-----------------------------------------------------------

(i) *for Unsecured Non-Financial Credits Option B up to BRL 750,000.00* (seven hundred and fifty thousand reais), the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 55

Creditor shall receive the full amount of his Credit by means of Payment in Cash; --------------------------------
------------------------------------------------------------

(ii) *for Unsecured Non-Financial Credits Option B over BRL 750.000.00 (seven hundred and fifty thousand reais) and less than or equal to BRL 1,071,429.00 (one million, seventy one thousand, four hundred and twenty nine reais).* the Creditor shall receive his Credit through the combination of ((ii).1) Payment in Cash, up to the limit of BRL 750,000.00 (seven hundred and fifty thousand reais) and ((ii).2) for the balance of Unsecured Non-Financial Credit Option B, Payment Instruments; --------------------
------------------------------------------------------------

(iii) *for Unsecured Non-Financial Credits Option B over R$ 1.071,429.00 (one million, seventy one thousand, four hundred and twenty nine reais) and below or equal to BRL 4,285,714.00 (four million, two hundred and eighty-five thousand, seven hundred and fourteen reais).* The Creditor shall receive his Credit by a combination of ((iii).1) Payment in Cash, in an amount corresponding to seventy percent (70%) of its Unsecured Non-Financial Credit Option B; and ((iii).2) for the balance of the remaining Unsecured Non-Financial Credit Option B, Payment Instruments, subject to the terms, conditions and limits detailed in Clause 3.3.2.2; and --------------------------
------------------------------------------------------------

(iv) *for Unsecured Non-Financial Credits Option B over BRL 4.285,714.00 (four million, two hundred and eighty-five*





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

*thousand, seven hundred and fourteen reais).* The Creditor shall receive his Credit by means of a combination of ((iv).1) Payment in Cash, corresponding to BRL 3,000,000.00 (three million reais); and ((iv).2) for the balance of the remaining Unsecured Non-Financial Credit Option, Payment Instruments, subject to the terms, conditions and limits detailed in Clause 3.3.2.2. ---------

3.3.2.2.1. <u>Sources of Payment in Cash</u>. Payments in Cash described in Clause 3.3.2.2 shall be made from the following sources: -------------------------------------

3.3.2.2.1. <u>First Component - Dividends from Subsidiaries</u>. Payment in domestic currency, upon obtainment by the Companies under Reorganization, of funds as Dividends from Subsidiaries related to fiscal years 2019, 2020 and 2021, according to the Cascade of Dividends from Subsidiaries, up to the limit of BRL 39,000,000.00 (thirty nine million reais) per year, to be distributed equally amongst the Unsecured Non-Financial Creditors Option B, and paid in up to 60 (sixty) Days from the date on which any Companies under Reorganization effectively receive  Dividends from Subsidiaries. ---------------------------------------------

3.3.2.2.1. For the purposes of Clause 3.3.2.1.1 above, if in one of the years of distribution of Dividends from Subsidiaries the amount of Payment in Cash - Dividends from Subsidiaries is less than BRL 39,000,000.00 (thirty-





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 57

nine million reais), the remaining balance shall be added to the annual limit of the following year(s), as applicable. ------------------------------------------------
-----------------------------------------------------------
3.3.2.2.1.2. <u>Second Component – Cash for Distribution</u>. Any remaining balance of Unsecured Non-Financial Credits Option B after payments under Clause 3.3.2.1.1, shall be paid with domestic currency, up to the aggregate limit of BRL 150,000,000.00 (one hundred and fifty million reais), through the allocation of Cash for Distribution, observing the Rule of Use of Cash for Distribution, to be distributed on *a pro r*ata basis among said balances of Unsecured Non-Financial Credits Option B, and paid on the Amortization Dates. -------------------------------------
-----------------------------------------------------------
3.3.2.2.1.3. <u>Payments and Limits</u>. For the avoidance of doubt, the amount effectively received by each Unsecured Non-Financial Creditor Option B as a result of the sum of the Payments in Cash shall never be greater than the Payment in Cash amounts indicated in items (i) to (iv) of Clause 3.3.2.2, as applicable. --------------------------
-----------------------------------------------------------
3.3.2.2.2. <u>Payment in Payment Instruments</u>. Possible Balance of Unsecured Non-Financial Credits Option B after Payments under Clause 3.3.2.2 above shall be entitled to receive Payment Instruments, the terms and conditions of issue, which are detailed in **Annex 1.1.73**, which is an integral part of this Plan for all purposes and effects. --





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 58

```
-----------------------------------------------------------
3.3.2.2.2.1.  Subscription Criteria. Each Unsecured Non-
Financial Creditor Option B shall be entitled to receive
or  subscribe  to  BRL  1.00  (one  Real)  of  face  value  of
Payment  Instruments  for  each  BRL  1.00  (one  Real)  in
balance  of  Unsecured  Non-Financial  Credits  Option  B
calculated  in  accordance  with  Clause  3.3.2.2  above.  If
necessary,  Bankruptcy  Credits  denominated  in  foreign
currency  shall  be  converted  into  Brazilian  reais  or  U.S.
dollars  in  accordance  with  the  exchange  rates  for  sale
available  in  the  Information  System  of  the  Central  Bank  of
Brazil  (SISBACEN)  on  the  Business  Day  immediately  prior  to
the  date  of  the  act  to  be  performed  under  this  Plan.
("Unsecured     Non-Financial     Credits     Eligible     for
Subscription of Payment Instruments"). --------------------
-----------------------------------------------------------
3.3.2.2.2.2.  Additional  Payment  Instruments.  If  the
Payments  in  Cash  made  as  described  above,  up  to  December
31,  2025,  are  less  than  the  amounts  indicated  in  items  (i)
to  (iv)  of  Clause  3.3.2.2  for  Payments  in  Cash,  such
difference  shall  be  considered  a  Unsecured  Non-Financial
Credit  Eligible  for  Subscription  of  Payment  Instruments,
and  shall  be  restructured  and  paid  by  means  of  the  Payment
Instruments.  For  the  avoidance  of  doubt,  the  Unsecured
Non-Financial  Creditors  Option  B  shall  not  be  entitled  to
receive  any  amount  paid  in  under  the  Payment  Instruments
prior  to  the  issue  of  the  additional  Payment  Instruments
under this Clause 3.3.2.2.2. -----------------------------
```





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

--------------------------------------------------------

3.3.2.2.3. <u>Interest and Inflation adjustment</u>. Interest and inflation adjustment (i) on Unsecured Non-Financial Credits Option B that are entitled to Payments in Cash, to be incorporated into the principal amount due, corresponding to the IPCA, from the Date of Filing until the implementation of all payments provided in Clause 3.3.2.2.1; (ii) on the limits of Dividends from Subsidiaries and Cash for Distribution described in Clauses 3.3.2.2.1.1 and 3.3.2.2.1.2, corresponding to the TR, from the Date of Judicial Confirmation of the Plan; and (iii) in the events contained in Clause 3.3.2.2.2, corresponding to the rate provided for in item 3 of **Annex 1.1.73.** --------------------------------------------------

--------------------------------------------------------

3.3.3. <u>Late Unsecured Creditors and Standard Payment Option</u>. Unsecured Creditors that do not validly perform the Payment Option election, as well as Unsecured Creditors that are Late Creditors, shall be restructured and necessarily paid pursuant to the terms of Option B - Unsecured Financial Credits or Option B - Unsecured Non-Financial Credits, as applicable, and (i) for the payments as Payments in Cash , if applicable, the first payment shall be only due on the last Business Day of the 12th (twelfth) month from the date of the certificate of final unappealable decision determining the inclusion of said Unsecured Credit in the List of Creditors; and (ii) for the payments under the Payment Instruments, the respective





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

Bankruptcy Creditors shall be entitled to receive all payments made at a later date after the final unappealable decision determining the inclusion of said Late Credit in the List of Creditors. ------------------------------------

--------------------------------------------------------------

3.3.4. <u>Payment of Unsecured Related Parties Creditors</u>. The payment of Unsecured Credits held by Unsecured Related Party Creditors shall be subject to the full discharge of the Unsecured Credits of the other Unsecured Creditors, and it is certain that, after their full release, the Unsecured Related Party Creditors shall have their Unsecured Credits paid pursuant to Clauses 3.3.1, 3.3.2 or 3.3.3 above, as applicable. -------------------------------

--------------------------------------------------------------

**3.4. ME/EPP credits.** The ME/EPP Creditors shall have their ME/EPP Credits restructured and fully paid as follows: ----

--------------------------------------------------------------

3.4.1. <u>Initial Payment</u>. Payment in domestic currency, up to the limit of BRL 150,000.00 (one hundred and fifty thousand reais) per ME/EPP Creditor, in cash, in a single installment, on the last Business Day of the 12th (twelfth month following the Plan's Judicial Confirmation Date. ----

--------------------------------------------------------------

3.4.2. <u>Payment in Payment Instruments</u>. Any balance remaining after the payment provided in Clause 3.4.1 above (such balance of ME/EPP Credits being hereinafter referred to as "<u>ME/EPP Credits Balance</u>"), shall be paid on Payment Instruments, the terms and conditions of which are





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 61

detailed in Schedule **1.1.73,** and in accordance with the terms and conditions of election of mode of payment instrument described in Clause 4.1 below. -----------------

3.4.2.1. <u>Subscription Criteria</u>.    Each ME/EPP Creditor shall be entitled to receive or subscribe to BRL 1.00 (one Real) of face value of Payment Instruments for each BRL 1.00 (one Real) in ME/EPP Credits Balance ("<u>ME/EPP Credits Eligible for Subscription of Payment Instruments</u>"). -------

3.4.3. <u>Interest and Inflation adjustment</u>. Interest and inflation adjustment (i) on the ME/EPP Credits Balance due under Clause 3.4.1, to be incorporated into the principal amount due, as well as on the amounts indicated in Clause 3.4.1, corresponding to the IPCA; and (ii) in the cases contained in Clause 3.4.2, corresponding to the rate contemplated in Clause 3 of **Annex 1.1.73.** -----------------

3.4.4. <u>Late ME/EPP</u>. The Late ME/EPP Credits shall be paid as described in Clause 3.4.1 above, with the initial term for payment counted from the final unappealable decision determining the inclusion of the said Late ME/EPP Credit in the List of Creditors. The Late ME/EPP Credits with value above the limit established in Clause 3.4.1 above shall be paid by means of Payment Instruments - Private Debentures, it being certain that the Late ME/EPP Creditors holders of such Credits shall only be entitled to receive the Funds of Distribution to the Payment





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 62

Instruments and the funds arising from Extraordinary Amortization Events intended for the holders of Payment Instruments, after the decision determining the inclusion of the said Late Credit in the List of Creditors has become final. --------------------------------------------- -------------------------------------------------------------

**3.5. Illiquid Credits.** All Illiquid Credits, including those still subject to Judicial Claims and/or Arbitration Proceedings, which are treated in this Plan as Illiquid Credits, are fully subject to the terms and conditions of this Plan and to the effects of Court-Supervised Reorganization, pursuant to article 49 of the LFR. Once the Illiquid Credits have been materialized and recognized by final and unappealable judicial decision, they shall be paid according to the treatment attributed to the Late Credits pursuant to the terms of this Plan and in the class corresponding to the Illiquid Credit in question. --- -------------------------------------------------------------

**3.6. Intercompany Credits.** Payment of Intercompany Credits shall, in any event, be subordinated to all Bankruptcy Credits in terms of structure, guarantees and term of payment. Intercompany Credits may be converted into capital stock or may be subject to compensation, pursuant to articles 368 *et seq.* of the Civil Code (including article 380), provided that, in any event, the conversion into capital, subordination or compensation (cumulatively): (i) does not generate any cash transfer or impact; (ii) does not entail any disbursement by the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 63

Companies under Reorganization or Petitioners; (iii) does not result in any increase in the credit or debt exposure value of Company under Reorganization or Petitioner, as a creditor or debtor of any of them, among themselves; (iv) does not reduce or adversely affect the payment obligations of the Companies under Reorganization and Petitioners under this Plan; and (v) does not reduce, jeopardize or adversely affect the rights, credits and prerogatives, including guarantees, of the Bankruptcy Creditors and Non-Bankruptcy Creditors that are not involved in the transaction, and in accordance with the applicable legislation, with due regard to the provisions of Clauses 6.1 and 7.4. The Companies under Reorganization and the Petitioners may timely agree on alternative forms of extinction of these *Intercompany* Credits, observing the assumptions, cumulatively, of items (i) to (v) of this Clause, the applicable procedures and legislation and the provisions of this Plan. ---------------------------------

**3.7. General Provisions for the Payment of Bankruptcy Credits** ----------------------------------------------------
 ----------------------------------------------------------

3.7.1. <u>Credit Reclassification</u>. In the event that Bankruptcy Credits indicated in the List of Creditors, in the Judicial Confirmation of the Plan, there is an objection to a credit involving its rerating pending a final unappealable judicial decision, the respective Bankruptcy Creditor is subject to the terms and conditions of payment applicable to the class in which its Credit is





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 64

allocated in the Judicial Confirmation of the Plan until the date of the certificate of final unappealable judicial decision that determines its rerating, it being understood that the Creditor shall take all measures before the Companies under Reorganization to promote a change of the terms and conditions of payment of its Credits in accordance with its new class. If it is subsequently recognized that the rerating of the Credit that entails modification of the terms and conditions of payment already applied: (i) in the event that such modification represents an increase in the amounts to be paid, the balance increased by the respective Credit shall be considered as Late Credit for payment purposes, it being certain that the rerated Credits shall not be entitled to payments that have already been made to the classes to which they have been reallocated as a result of the rerating, or (ii) in the event that such modification represents a decrease in the amounts to be paid or the delivery of another means of recovery, the Bankruptcy Creditor shall reimburse the Company under Reorganization for the amounts that have already been paid and that exceed the value of its Credit, as rectified, or the securities that have been unduly delivered to it, corresponding to the reduced amount. ----------------------
3.7.2. <u>Increase in Credits</u>. In the event of any increase in the amount of any Credit resulting from a final unappealable judicial decision or agreement between the parties, the amount corresponding to the difference





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 65

between the Creditor resulting from a final unappealable judicial decision or agreement between the parties and the amount recognized in the List of Creditors shall be paid as provided in this Plan for the Late Credits of each class. In this case, the rules for payment of the increased amount of such claims, particularly regarding the incidence of interest, shall apply only from said final unappealable judicial decision or the date of execution of the agreement between the parties. -----------
-------------------------------------------------------------

3.7.3. <u>Reduction of Credits</u>. In the event of any reduction in the value of the Credits arising from a final unappealable judicial decision or agreement between the parties, and the consequent rectification of the List of Creditors, the Bankruptcy Creditor holding the respective Bankruptcy Credit shall, within ten (10) Business Days of said final unappealable judicial decision or agreement between the parties, as the case may be, return to the Companies under Reorganization the amounts that have already been paid and that exceed the value of its Bankruptcy Credit, as rectified, or the securities that have been unduly delivered to it, corresponding to the reduced amount. -------------------------------------------
-------------------------------------------------------------

3.7.4. <u>Notification</u>. For purposes of this Clause, the Bankruptcy Creditor shall notify the Companies under Reorganization, pursuant to Clause 8.3, to communicate the final unappealable judicial decision that has recognized





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the change in the Bankruptcy Credit already recognized in the Judicial Administrator's List of Creditors. -----------

------------------------------------------------------------

3.7.5. <u>Date of Payment</u>. In the event that any payment or obligation from the Plan is expected to be made or satisfied on a day that is not considered a Business Day, said payment or obligation must be made or satisfied, as the case may be, on the following Business Day. -----------

------------------------------------------------------------

3.7.6. <u>Form of Payment</u>. As applicable, the amounts due pursuant to this Plan shall be paid by direct transfer of funds to the bank account of the respective creditor, including sending money orders or making remittances abroad, by means of a credit order document (DOC), or available electronic transfer (TED), or any other document that proves the transaction, and the Companies under Reorganization may hire a payment agent for this purpose. The deposit slip showing the amount credited shall serve as proof of discharge of the respective payment. ----------

------------------------------------------------------------

3.7.7. <u>Creditors' Bank Accounts</u>. As applicable, the Bankruptcy Creditors shall inform the Companies under Reorganization, in the indicated contacts and pursuant to Clause 8.3, their respective bank accounts for this purpose. -------------------------------------------------

------------------------------------------------------------

3.7.7.1. <u>No indication of Bank Accounts</u>. Payments that are not made because the Bankruptcy Creditors did not inform





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 67

their bank accounts or provided such information mistakenly or incompletely shall not be considered a breach of the Plan. There shall not be interest or late payment charges if the payments have not been made due to failure by the Bankruptcy Creditors to timely and correctly inform their bank details for deposit. ----------
-----------------------------------------------------------

3.7.8. <u>Alteration of the Bankruptcy Credit Holder</u>. In the event of any change in ownership of a certain Bankruptcy Credit, whether by assignment, succession, subrogation or any other form admitted, during the term and compliance with this Plan, the relevant assignee, successor or creditor by subrogation shall adopt the necessary measures for recognition of their ownership to the Bankruptcy Credit in question and for rectification of the List of Creditors, and shall notify the Companies under Reorganization for rectification and, until the Court-supervised Reorganization is terminated, also notify the Court-supervised Reorganization Court and the Judicial Administrator, pursuant to Clause 8.3. In any event, the change of owenrship to the Bankruptcy Credit shall not affect payments that may have been made to the original Bankruptcy Creditor, or the mode of Payment Instrument elected by it under this Plan. ----------------------------
-----------------------------------------------------------

3.7.8.1. <u>Related Parties</u>. If the assignee or assignor of the Bankruptcy Credit is an Unsecured Related Party Creditor or member of the Odebrecht Group, the respective





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese



p. 68

Bankruptcy Credit shall be paid pursuant to the terms of Clauses 3.3.4 and 3.6, respectively. ----------------------

------------------------------------------------------------

3.7.9. <u>Payments by Third Parties</u>. Bankruptcy Creditors who hold Bankruptcy Credits in which a Third Party appears as principal debtor or guarantor shall observe the following terms: ------------------------------------------------------

------------------------------------------------------------

3.7.9.1. <u>Bankruptcy Credit as a result of Guarantees Granted by Companies under Reorganization</u>. Bankruptcy Credits corresponding to payment obligations in which one or more Companies under Reorganization figure as guarantors other than trustees ("<u>Bankruptcy Credits by Guarantee Granted by a Companies under Reorganization</u>"), shall, exclusively in respect of such guarantees, have their Bankruptcy Credits by Guarantee Granted by Companies under Reorganization restructured pursuant to the terms of Clause 3 of this Plan and such Bankruptcy Creditors shall receive, from the Companies under Reorganization, their Bankruptcy Credits in the same way as the other Bankruptcy Creditors of their class, irrespective of the enforceability of the debt against the principal debtor. The obligations of Third Parties guaranteed by the Companies under Reorganization shall remain valid, in force, enforceable and effective according to their respective terms and conditions. Nothing in this Plan shall mean or be construed or used to alter or modify such Third Party obligations, irrespective of the novation of



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 69

the terms of payment of the respective Co-obligation provided by any Company under Reorganization. Such Creditors are entitled to demand or collect the debt from such Third Party according to the terms of the respective instruments, without prejudice, should any Creditor choose, at its sole discretion, to exercise one of the Payment Options set forth in Clauses 4.1.2.1 and 4.1.3.1. - --------------------------------------------------------

3.7.9.1.1. <u>Bankruptcy Credits for Guarantees Granted by Companies under Reorganization Effectively Paid by Third Parties</u>. Without prejudice to the provisions of Clause 7.7, in the event that the Bankruptcy Credits for Guarantee Granted by the Companies under Reorganization are, at any time, paid in whole or in part by the respective Third Party (as principal debtor) or for the benefit of this Third Party, said Bankruptcy Credits shall be considered amortized, with regard to the obligations of the Companies under Reorganization provided in this Plan, under penalty of unjust enrichment of the Creditor. The balance of Credits existing according to the originally contracted conditions that has not been amortized by the payment mentioned in this Clause shall also not be considered as settled in relation to the Bankruptcy Credit by Guarantee Granted by Companies under Reorganization, it being established that the Companies under Reorganization shall never be obliged to make any payment that exceeds the amount of the Bankruptcy Credit adjusted and remunerated pursuant to the terms of this Plan. If the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 70

Companies under Reorganization have made any payment or entered into a payment transaction as payment in kind provided in Clause 3.2.3.1 which, added to any amounts paid by the Third Party, exceeds the amount of the Credit under the conditions originally contracted, including principal, interest and other charges incurred until the respective payment, and/or delivered Payment Instruments - *Bonds*, Payment Instruments - Public Debentures or Payment Instruments - Private Debentures for the benefit of such Bankruptcy Creditor, said Bankruptcy Creditor shall immediately return to the Companies under Reorganization the amounts paid and/or said financial instruments received in excess (i.e., including principal, interest and other charges levied until the respective payment). If the Companies under Reorganization have not yet made any payment and/or delivered Payment Instruments - *Bonds*, Payment Instruments - Public Debentures or Payment Instruments - Private Debentures to the aforementioned Bankruptcy Creditor and the Bankruptcy Creditor has received all amounts due under the original terms of such Third Party debt, the Companies under Reorganization shall be released from making the respective payments or delivering the respective Payment Instruments - *Bonds*, Payment Instruments - Public Debentures or Payment Instruments - Private Debentures in their entirety or in proportion to the Bankruptcy Credits paid by the Third Party. -----------------------------------------------------
-----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

3.7.9.1.2. <u>Credit restructuring executed with Third Party</u>. Eventual restructuring of Bankruptcy Credits by Guarantees Granted by the Companies under Reorganization entered into with Third Parties after the Date of Filing does not alter the original conditions, amounts and guarantees of these Bankruptcy Credits against the Companies under Reorganization, which shall make the payment in accordance with the terms and conditions established in this Plan. ---
----------------------------------------------------------

3.7.9.2. <u>Bankruptcy Credits Guaranteed by Third Party</u>. Bankruptcy Creditors whose Bankruptcy Credits correspond to payment obligations in which a Company under Reorganization is the principal debtor and one or more Third Party is the guarantor ("<u>Bankruptcy Credits Secured by a Third Party</u>"), shall have their Bankruptcy Credits Guaranteed by Third Party paid pursuant to the terms of Clause 3 of this Plan, and may elect any of the types of Payment Instruments pursuant to the terms of Clause 4.1 being entitled to any payments made pursuant to this Plan, without prejudice to the Bankruptcy Creditors' right to pursue receipt of the Credits, on the terms originally agreed, against the Third Party. Third Party guarantees shall remain valid, effective, enforceable and effective in accordance with their respective original terms and conditions. Nothing in this Plan shall mean or be construed or used to alter or modify such Third Party obligations, irrespective of the novation of the terms of payment of the Bankruptcy Credit by any Company under





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 72

Reorganization, and the Creditors may demand or collect the debt, under the conditions originally contracted, from such Third Party in accordance with the terms of the respective instruments. ------------------------------------

--------------------------------------------------------------

3.7.9.2.1. <u>Bankruptcy Credits Guaranteed by Third Party which are Effectively Paid by the Third Party</u>. If the Bankruptcy Credits Guaranteed by Third Parties are, at any time, paid in whole or in part by the respective Third Party or for the benefit of such Third Party, the Third Party shall subrogate itself to the rights of the respective Bankruptcy Creditor, with due regard, in the event of partial subrogation of the Third Party to the rights of the Bankruptcy Creditor, to the provisions of article 351 of the Civil Code, applying the provisions of Clauses 3.7.8 and 3.7.8.1. ---------------------------------

--------------------------------------------------------------

3.7.9.2.2. <u>Restructuring of Credit Guaranteed by Third Parties entered with Third Parties</u>. Any restructuring of Bankruptcy Credits Guaranteed by Third Parties entered into with a Third Party after the Date of Filing does not alter the original conditions, amounts and guarantees of these Bankruptcy Credits against the Companies under Reorganization, which shall make the payment in accordance with the terms and conditions of this Plan regardless of the conditions restructured with the Third Party. ---------

3.7.10. <u>Compensation</u>. The Companies under Reorganization are authorized to make credit compensations, pursuant to





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 73

the terms of article 368 *et seq*. of the Civil Code, in the cases in which the Companies under Reorganization and their Bankruptcy Creditors have reciprocal obligations of credits and debits, provided that these are previously and expressly authorized by the respective Bankruptcy Creditors. For the avoidance of doubt, any balance remaining after the compensation provided in this Clause shall receive the treatment granted to the nature of the respective Credit, in accordance with this Plan. This Clause does not apply to the compensation of *Intercompany* Credits*,* which must comply with the provisions of Clause 3.6. ------------------------------------------------------

------------------------------------------------------------

3.7.11. <u>Costs and Taxes</u>. The financial obligations arising from this Plan and all payments to be made by the Companies under Reorganization, pursuant to the terms of this Plan, shall be met and paid, net of any present and future taxes, charges, fees or any other levies. ----------

------------------------------------------------------------

**3.8. Non-Bankruptcy Credits.** It should be noted that Non-Bankruptcy Credits are not subject to and shall not be novated by virtue of the Approval of the Plan, and it is certain that their restructuring shall depend on bilateral negotiations with Non-Bankruptcy Creditors, and that nothing in this Plan may disregard or modify in any way the fiduciary guarantees granted in favor of Non-Bankruptcy Creditors. ------------------------------------

------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

3.8.1. <u>Fiduciary Guarantees Granted by the Companies under Reorganization</u>. The fiduciary guarantees granted by the Companies under Reorganization, including within the scope of the Substantial Consolidation of the Companies under Reorganization, shall remain valid, in force, enforceable and effective according to their respective terms and conditions originally contracted. Nothing in this Plan shall mean or be construed or used to alter or modify such obligations and prerogatives arising from such fiduciary guarantees, and the Creditors may require the fiduciary guarantee under the conditions originally contracted. -----
-----------------------------------------------------------
**4. ACTS OF IMPLEMENTATION OF CREDIT RESTRUCTURING** ---------
-----------------------------------------------------------
**4.1. Election of Payment Instrument.** Secured Creditors, Unsecured Financial Creditors Option B, Unsecured Non-Financial Unsecured Creditors Option B and ME/EPP Creditors that have their Bankruptcy Credits restructured through Payment Instruments may choose from the following debt instruments, subject to the requirements described below, it being established that such Creditors may choose more than one debt instrument to receive their Bankruptcy Credits: --------------------------------------------------
-----------------------------------------------------------
4.1.1. <u>Plan</u>. All holders of Credits Eligible for Subscription of Payment Instruments may elect to have the terms and conditions of the restructuring of their Credits Eligible for Subscription of Payment Instruments





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

instrumentalized by the Plan pursuant to **Annex 1.1.73**, without the issue of any securities, which, by virtue of the Judicial Confirmation, shall govern the terms of payment of the respective Bankruptcy Credits ("Payment Instruments - Plan"). -------------------------------------
-------------------------------------------------------------
4.1.1.1. Effects of the Option. The option to receive the Bankruptcy Credit by means of the Payment Instrument - Plan does not entail release from the Third Party's obligation to the respective Bankruptcy Creditor, with due regard for Clauses 3.7.9 et seq. --------------------------
-------------------------------------------------------------
4.1.2. Private Debentures. All holders of Credits Eligible for Subscription of Payment Instruments may elect to subscribe, with their Bankruptcy Credits, privately placed debentures, to be issued by way of indenture in substantially the same form as the draft present in **Annex 4.1.2** to this Plan ("Payment Instruments - Private Debentures"). ---------------------------------------------
-------------------------------------------------------------
4.1.2.1. Implementation of the Option. Any and all Creditors that choose to receive Payment Instruments - Private Debentures shall subscribe and pay up the debentures with their respective Credits, without prejudice to the maintenance of guarantees provided by Third Parties. ---------------------------------------------
-------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

4.1.3. <u>Public Debentures</u>. All holders of Credits Eligible for Subscription of Payment Instruments who, cumulatively, (i) due to regulatory reasons, cannot hold Payment Instruments - Private Debentures, and (ii) are professional investors under CVM Instruction No. 554, dated of December 17, 2014, as amended, may elect to subscribe to debentures to be publicly distributed, with restricted funding efforts under CVM Instruction No. 476, of January 16, 2009, as amended, to be issued by way of indenture in substantially the same form as the draft present in **Annex 4.1.3** to this Plan, subject to the applicable regulatory provisions ("<u>Payment Instrument - Public Debentures</u>"). --------------------------------------

4.1.3.1. <u>Implementation of the Option</u>. Each and every Creditor that choose to receive Payment Instruments – Public Debentures shall subscribe and pay up the debentures with their respective Credits, without prejudice to the maintenance of the guarantees provided by Third Parties. ---------------------------------------------

4.1.4. <u>*Bonds*</u>. All the holders of Credits Eligible for Subscription of Payment Instruments who are currently holders of securities, bonds or payment notes as (i) *qualified institutional buyers* as defined in Rule 144 A of the Securities *Act*; (ii) *non-US* persons as defined in *Regulation* S under the Securities Act located outside the United States; or (iii) *institutional accredited* investors





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

as defined in Rule 501 under the *Securities* Act may elect to receive debt instruments under custody and registered in the DTC system to be issued in U.S. dollars and governed under the laws of the State of New York, United States of America, whose contents include the terms and conditions described in **Annex 1.1.73** of this Plan ("Payment Instruments - *Bonds*"). -------------------------- -----------------------------------------------------------

**4.2. Procedure for choosing the Payment Option and Payment Instrument.** To formalize the choice of the Payment Option and the Payment Instruments they wish to receive, if applicable, the Secured creditors, the Unsecured Creditors and the ME/EPP Creditors shall express, within fifteen (15) Consecutive Days from the end of the Period of Adherence to Substantial Consolidation ("Election Term"), their choice for one of the Payment Instruments set forth in Clauses 4.1.1 to 4.1.4. If there is no choice of Payment Option in the Election Term, the provisions of Clause 4.3.1 shall apply. --------------------------------- -----------------------------------------------------------

**4.3. Sending Documents.** The Bankruptcy Creditor shall send an email to aj_odb@alvarezandmarsal.com and rjodb@odebrecht.com, forwarding (i) the form in **Annex 4.3** duly filled and signed; and (iii) the following documents: (i) Basic documents. All Secured Creditors, Unsecured Creditors and ME/EPP Creditors shall attach (a) documents demonstrating the powers of the sender and subscriber to make such choice for the benefit of the respective





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 78

Bankruptcy Creditor, including (a.1.) in the case of an individual, a copy of the official identification document valid in the national territory, and (a.2.) in the case of a legal entity, a copy of the corporate acts and of the power of attorney granting its powers of representation of the respective Creditor; and (b) indicate the bank account that shall be used to receive any sort of amount to which they may be entitled; and --------------------------------

-----------------------------------------------------------

(ii) <u>specific documents</u>. The Bankruptcy Creditors that choose to receive Payment Instruments - Public Debentures shall also attach the declaration in **Annex 4.3(ii)** duly signed by the respective Creditor. ------------------------

-----------------------------------------------------------

4.3.1. <u>Deferred Option</u>. Those Creditors who do not opt for a Payment Instrument in the Election Term shall have their choice of one of the Payment Instruments provided for in Clauses 4.1.1 to 4.1.4 deferred for a period of five (5) years from the Date of Judicial Confirmation of the Plan. -

-----------------------------------------------------------

4.3.2. <u>Report on the procedure for choosing the Payment Option and Payment Instrument</u>. Within thirty (30) Consecutive Days from the end of the Election Term, the Judicial Administrator shall submit a report, in the records of the Court-supervised Reorganization and on its website (https://www.alvarezandmarsal.com/content/grupo-odebrecht), stating the result of the procedure of election of the Payment Option and the Payment Instrument,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 79

with the indication of the allocation of the Bankruptcy Credits between the Payment Options and the available Payment Instruments, including the Bankruptcy Creditors that have chosen to defer the choice of the Payment Option because they have not validly made the election during the Election Period ("Publication of the Election Board"). ----

---

4.3.3. Restriction and Effects. The election of the Payment Option and the Payment Instrument made by the Bankruptcy Creditors as prescribed in this Plan is final, definitive, binding, irrevocable and irreversible, and the effects of the election of the Payment Option and the Payment Instrument shall be retroactive to the Date of Judicial Confirmation of the Plan. ------------------------

---

4.3.4. Credits Subject to Opposition. The right to elect the Payment Option and the Payment Instrument of their choice may be exercised, under the terms and periods of this Plan, by the Secured Creditors, the Unsecured Financial Creditors Option B, the Unsecured Non-Financial Creditors Option B and the ME/EPP Creditors, including those whose Credits have been the subject of challenges to the List of Creditors, pursuant to the terms of article 8 of the LFR, which have not been the subject of a final unappealable decision at the time of the Election Term. In such cases, the Credit shall be used to calculate the allocation of the Payment Instruments, and the Companies under Reorganization    shall, (i) in relation to the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 80

uncontroversial portion of the Credit, if any, instrumentalize the restructuring of the respective Credit elected pursuant to the terms of this Plan; and (ii) in relation to the disputed portion, instrumentalize the restructuring of the respective Credit under the same terms as the uncontroversial portion if the Payment Instrument has already been elected and the term provided in Clause 4.3.1 has not elapsed. If the period provided in Clause 4.3.1 has already elapsed, the Companies under Reorganization shall instrumentalize the restructuring of the respective controversial Credit as Payment Instruments - Plan, when, as a result of a final unappealable decision, such amounts become uncontroversial (to the exact extent to which they are owed to the Bankruptcy Creditor by the Companies under Reorganization). ----------
-----------------------------------------------------------
4.3.5. <u>Standard Payment Instrument – Secured Credits</u>. The Secured Creditors that do not validly elect the Payment Instrument and the Late Secured Creditors shall have their Credits Eligible to Subscription of Payment Instruments necessarily restructured pursuant to the Payment Instruments - Plan. --------------------------------------
-----------------------------------------------------------
4.3.6. <u>Standard Payment Instrument - Unsecured Credits</u>. The Unsecured Creditors who do not validly elect the Payment Instrument and the Late Unsecured Creditors shall have their Credits Eligible for Subscription of the



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 81

Payment Instruments necessarily restructured pursuant to the Payment Instruments - Plan. --------------------------

------------------------------------------------------------

4.3.7. <u>Standard Payment Instrument - ME/EPP credits</u>. The ME/EPP Creditors that do not validly elect the Payment Instrument shall have their Credits Eligible for Subscription of the Payment Instruments necessarily restructured pursuant to the Payment Instruments - Plan. --

**4.4. Issuance of Payment Instruments - Private Debentures, Public Debentures and *Bonds*.** The Company under Reorganization, which is the Issuer/Principal Debtor, as provided in Item 1 of **Annex 1.1.73**, shall formalize all necessary acts and provide the issuance, placement and distribution, as the case may be, of Payment Instruments - Private Debentures, Payment Instruments - Public Debentures and Payment Instruments - *Bonds* within the period of up to (i) 300 (three hundred) Consecutive Days from the Publication of the Election Board, provided that the holders of Credits Eligible for the Subscription of Payment Instruments corresponding to at least BRL 10,000,000.00 (ten billion reais) have opted to receive Payment Instruments - Public Debentures or Payment Instruments - Private Debentures, considered in aggregate, until the end of the Election Period; or (ii) 100 (One hundred) Consecutive Days from the end of the term indicated in item (ii) of Clause 4.2 above, regardless of the amount of Credits Eligible for Subscription of Payment Instruments that choose to receive Payment Instruments -





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 82

Public Debentures or Payment Instruments - Private Debentures; and (iii) 480 (Four hundred and eighty) Consecutive Days from the Publication of the Election Board, for Payment Instruments - *Bonds* or five hundred and ninety (590) Consecutive Days from the final unappealable decision of *Chapter 15*, whichever occurs last. ------------
------------------------------------------------------------

**4.5. Additional Issuances.** If the Company under Reorganization, which is the Issuer/Principal Debtor, as provided in Item 1 **Annex 1.1.73**, pursuant to the terms of this Plan, shall carry out more than one issuance, placement and distribution, as the case may be, of the Payment Instruments - Private Debentures, Public Debentures or *Bonds* (each one, an "<u>Additional Issue</u>"), ODB shall cause all necessary acts to be formalized and provided for the issue, placement and distribution of said Payment Instruments within three hundred and sixty (360) Consecutive Days counted from the verification of the obligation to implement the Additional Issuances, in compliance with the current and applicable regulatory deadlines. ------------------------------------------------
------------------------------------------------------------

**4.6. Transitional Provisions.** Once the balance of Cash for Distribution has been verified to be allocated to the holders of Payment Instruments on an Amortization Date and taking into account that the respective Payment Instrument had not been issued and subscribed by, or delivered to, the Bankruptcy Creditors, the Companies under





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Reorganization shall make any payments due as if they had adhered to the payment option provided in Clause 4.1.1. --- ---------------------------------------------------------

4.6.1. <u>Effects of Deferral of Payment Option</u>. The Credits Eligible for Payment Instruments held by Creditors who elect to defer the exercise of the right to choose one of the Payment Options under Clause 4.2(ii) shall be enforceable under Clauses 4.1.1 and 7.3. ------------------ ---------------------------------------------------------

**4.7. Implementation Abroad.** The Companies under Reorganization are authorized to take all necessary steps to (i) submit the Plan's Approval to the process of Confirmation of effects in force with the *United States Bankruptcy Court of the Southern District of New York (Chapter 15 - Case No. 19-12731 (SMB))*, for purposes of giving effect to the Plan in U.S. territory, pursuant to terms of the applicable law ("*Chapter 15* Confirmation"), as well as (ii) to initiate and/or proceed with other judicial, extrajudicial or administrative proceedings, whether insolvency or of other nature, in jurisdictions other than the Federative Republic of Brazil, as necessary, for the implementation of this Court-supervised Reorganization, including, but not limited to, insolvency proceedings or proceedings necessary to implement the provisions of this Plan. Auxiliary processes abroad may not alter the terms and conditions of this Plan. ---------- ---------------------------------------------------------

5. DISPOSAL AND/OR ENCUMBRANCE OF ASSETS ------------------



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 84

------------------------------------------------------------

**5.1. Disposal of current assets.** The Companies under Reorganization may dispose of, sell, rent, lease, give in payment, remove, encumber or offer in guarantee, including judicial guarantee, observing market parameters, any property, assets and/or rights that are part of their current assets without the need of authorization or additional awareness of the Judge of the Reorganization and/or of the Bankruptcy Creditors, always observing the rights and prerogatives contractually assured to third parties, Secured Creditors, Non-Bankruptcy Creditors, or before public authorities over the property or assets, as well as the limits established in the applicable law and in this Plan, (i) provided that the property or asset is unencumbered; or ------------------------------------------

------------------------------------------------------------

(ii) if encumbered, provided that the transaction is authorized by the respective Non-Bankruptcy Creditor or Secured Creditor, as applicable. --------------------------

------------------------------------------------------------

**5.2. Disposal of non-current assets.** The Companies under Reorganization shall be authorized to dispose of, sell, rent, lease, give in payment, remove, encumber or offer in guarantee, including judicial guarantee, observing the market parameters, for the benefit of any party, always observing the rights and prerogatives contractually assured to third parties, Secured Creditors, Bankruptcy Creditors, or to public authorities over the property or





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 85

assets, as well as the limits established in the applicable law and this Plan: ----------------------------
------------------------------------------------------------
(i) any of the property or assets which are part of their non-current assets and that are indicated in **Annex 5.2**, in any mode, including through the disposal of UPIs, pursuant to Clause 5.3 below, (i.a.) provided that the property or asset is unencumbered; or (i.b.) if encumbered, provided that the transaction is authorized by the respective Non-Bankruptcy Creditor or Secured Creditor, as applicable; and -------------------------------------------------------
------------------------------------------------------------
(ii) any of the property or assets that are part of its non-current assets and are not listed in **Annex 5.2** to this Plan, provided that the book value net of depreciation of such property or assets, considered individually and in aggregate within the same fiscal year, is less than or equal to BRL 50,000,000.00 (fifty million reais) in each fiscal year, and, further, (ii.a.) provided that the property or asset is unencumbered; or (ii.b.) if encumbered, provided that the transaction is authorized by the respective Non-Bankruptcy Creditor or Secured Creditor, as applicable. ----------------------------------
------------------------------------------------------------
5.2.1. <u>Disposal of assets of the Petitioners who join the Substantial Consolidation</u>. For the avoidance of doubt, all the property and assets and part of the non-current assets of the Petitioners that adhere to the Substantial





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

Consolidation of the Companies under Reorganization shall be subject to the rules of disposal of assets set forth in this Chapter 5, it being certain that **Annex 5.2** shall, for all purposes and effects, include **Annex 1.1.2** of the Term of Adherence to Substantial Consolidation. ----------------

**5.3. Disposal O UPIs.** The disposal of UPIs, except for the rules provided in this Plan, shall be carried out observing the arts. 60 and 142 of LFR, or by direct sale, under the general terms and conditions defined by the Companies under Reorganization. --------------------------

5.3.1. <u>No Succession</u>. In view of the fact that the disposal of UPIs shall comply with the provisions of articles 60 and 142 of the LFR, under no circumstances shall there be any succession of the acquirer for any debts and obligations of the Companies under Reorganization, including those of a tax and labor nature, those related to the Odebrecht Group and Related Parties and those arising from obligations assumed under Law No. 12,846, of August 1, 2013. The absence of succession shall be recognized by the Court-Supervised Reorganization Court. ----------------------------------------------------

**6. CORPORATE STRUCTURE AND REORGANIZATION** ------------------

**6.1. Reorganization.** The Companies under Reorganization are authorized to carry out the corporate reorganization





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 87

transactions listed in **Annex 6.1** or, if not listed, those
necessary to implement this Plan, as well as mergers,
acquisitions, acquisition of shares, spin-offs, capital
reductions and transformations, or promote transfers of
assets within the Odebrecht Group, provided that,
cumulatively, (i) it does not entail the transfer of funds
(cash) and/or assets to Odebrecht Group entities other
than the Companies under Reorganization, except when
permitted by this Plan in Clause 7.4, including, but not
limited to, direct or indirect interests held by the
Companies under Reorganization, (ii) it does not entail or
impair any rights and obligations contracted by the
Companies under Reorganization and/or other Odebrecht
Group entities in instruments entered into with Creditors
with fiduciary guarantee provided by the Companies under
Reorganization or third parties, (iii) it does not entail
effects of consolidation with the Companies under
Reorganization of Petitioners whose Adherence to
Substantial Consolidation has not been approved, (iv) it
is implemented with the objective of optimizing structure
or reducing costs and (v) it does not result in reciprocal
participation or cross corporate interests between
companies of the Odebrecht Group, with capital increases
being herein permitted through the issuance of new shares
or units to be paid in with interests in companies of the
Odebrecht Group, *Intercompany* Credits and the
capitalization of *Intercompany* Credits. The Companies
under Reorganization may also carry out any corporate





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 88

reorganization transactions that do not meet the cumulative requirements established above, provided that they are expressly authorized in a resolution pursuant to Clause 8.3 of **Annex 1.1.73.** ------------------------------- ------------------------------------------------------------

**7. EFFECTS OF THE PLAN** ------------------------------------- ------------------------------------------------------------

**7.1. Binding Effects of the Plan.** The provisions of the Plan bind the Companies under Reorganization and the Bankruptcy Creditors, and their respective assignees and successors on any account, as well as creditors that may become Bankruptcy Creditors of the Companies under Reorganization by virtue of incidental, subsidiary or joint and several liability pursuant to the law or judicial, administrative or arbitration decision, provided that the triggering event of such Bankruptcy Credit is prior to the filing of this Court-supervised Reorganization as of the Date of Judicial Confirmation of the Plan. -------------------------------------------------- ------------------------------------------------------------

**7.2. Release of Funds.** Bearing in mind that this Plan does not affect, disestablish or in any way modifies fiduciary guarantees granted in favor of Non-Bankruptcy Creditors, the funds, which are the subject of the fiduciary guarantee and made available to the Companies under Reorganization and the Petitioners, shall be considered, for all purposes of rights, Non-Bankruptcy Credits, pursuant to the terms of article 67 of the LFR. In case of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 89

bankruptcy of the Companies under Reorganization, such funds shall be paid with precedence on all the Bankruptcy Credits and Non-Bankruptcy Credits, observing the provisions of articles 84, 85, 149 and other applicable provisions of LFR. ----------------------------------------
------------------------------------------------------------

**7.3. Novation.** Judicial Confirmation of the Plan shall entail novation of the Bankruptcy Credits, pursuant to the terms of article 59 of the LFR, which shall be paid according to the terms and conditions established in this Plan. Unless provided otherwise in this Plan, the in rem and personal guarantees of the Bankruptcy Credits are maintained. For the avoidance of doubt, nothing in this Plan affects the non-bankruptcy obligations of the Companies under Reorganization or the obligations of Third Parties, including, without limitation, guarantees, surety, fiduciary guarantee, in rem or personal guarantees, which shall be maintained in their original conditions, including of enforceability, against Third Parties, regardless of novation of this Plan, pursuant to Clauses 3.7.9 et seq. of the Plan. ------------------------
------------------------------------------------------------

**7.4. Remittance of Funds** Observing the need for cash and the applicable corporate rules, the Companies under Reorganization are authorized to carry out any type of financial movement among the Companies under Reorganization. ---------------------------------------------
------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 90

7.4.1. <u>Remittances to the Group</u>. In compliance with the cash requirements and applicable corporate rules, the Companies under Reorganization are authorized to carry out any type of financial transaction, including, but not limited to, the contribution of funds and making of loans, for the benefit of any of Petitioners, pursuant to the terms of the Corporations Law, (i) related to compliance with the obligations contracted in the respective court-supervised reorganization plans of Petitioners and the payment of general and administrative expenses, such as obligations and expenses for maintenance of activities, expenses with suppliers and advisors and tax expenses, provided that such transactions do not exceed the overall amount of BRL 80,000,000.00 (eighty million reais) and observe the allocation described in **Annex 7.4.1;** (ii) related to the payments contemplated in item ii of Clause 1.1.11 and in item (iii) of Clause 1.1.119 only in their respective deadlines. -------------------------------------
------------------------------------------------------------

**7.5. Assignment of Credits.** After Approval of the Plan, the Bankruptcy Creditors may assign their Claims to other Bankruptcy Creditors or to Third Parties, and the assignment shall be notified to the Companies under Reorganization and to the Judicial Administrator pursuant to the terms of Clause 8.3. The Notification to the Judicial Administrator and the Court-supervised Reorganization Court shall only be required while the Court-supervised Reorganization has not been completed.





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 91

The Bankruptcy Credits assigned shall be paid in accordance with the conditions set forth in the Plan, observing the provisions of Clauses 3.7.8.1 and 7.3. ------
--------------------------------------------------------

**7.6. Reconstitution of Rights.** If the Court-supervised Reorganization is changed into bankruptcy within the term of supervision in article 61 of the LFR, the Bankruptcy Creditors shall have their rights and guarantees reestablished under the conditions originally contracted, deducting any amounts paid and subject to the acts validly performed within the scope of the Court-supervised Reorganization, in compliance with the provisions of articles. 61, §2, and 74 of LFR. --------------------------
--------------------------------------------------------

**7.7. Discharge.** Compliance with payment obligations in accordance with the terms and conditions established in this Plan shall automatically entail, regardless of any additional, extensive, full, general and unrestricted formality discharge of all Bankruptcy Credits against the Companies under Reorganization and their officers, directors, agents, employees and representatives, subject to the provisions of Clause 3.7.9. ------------------------
--------------------------------------------------------

**7.8. Winding Up of Claims.** By virtue of the novation of the Bankruptcy Credits arising from the Plan's Judicial Confirmation, and while this Plan is being complied with by the Companies under Reorganization, the Bankruptcy Creditors may not, as of the Plan's Confirmation, (i) file





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 92

or pursue any and all actions and/or judicial execution or proceedings of any nature related to any Bankruptcy Credit against the Companies under Reorganization; (ii) enforce any judgment, court order or arbitration award related to any Bankruptcy Credit against the Companies under Reorganization; (iii) pledge or encumber any assets of the Companies under Reorganization to satisfy their Bankruptcy Credits or perform against them any other constructive act for the satisfaction of Bankruptcy Credits; (iv) create, perfect or enforce any in rem guarantee over assets and rights of the Companies under Reorganization to ensure the payment of their Bankruptcy Credits; and (v) seek the satisfaction of their Bankruptcy Credits by any other means against the Companies under Reorganization. As of the Date of Judicial Confirmation of the Plan, any and all execution proceedings, related to any Bankruptcy Credit against the Companies under Reorganization, shall be completely extinguished or, if more than one person appears as defendant in said action, exclusively in relation to the Company(ies) under Reorganization in question, it being established that the existing pledges and constrictions on the assets and rights of the Companies under Reorganization shall be released, as well as the balance of judicial blocking that may be made in the said judicial actions. For the avoidance of doubt, nothing in this Clause prevents the processing of credit challenges related to this Court-Supervised Reorganization. --------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 93

------------------------------------------------------------

**7.9. Formalization of Documents and Other Provisions.** The Companies under Reorganization undertake, irrevocably and irreversibly, by virtue of this Plan, to carry out all acts and sign all contracts and other documents that, in form and substance, are necessary or appropriate for the fulfilment and implementation of this Plan and related obligations. -----------------------------------------------

------------------------------------------------------------

**7.10. Amendments, changes or modifications to the Plan.** Amendments, changes or modifications to the Plan may be proposed at any time after the Judicial Confirmation of the Plan, provided that such amendments, alterations or modifications are accepted by the Companies under Reorganization and approved by the Creditors' Meeting, under the LFR. Amendments to the Plan, provided they are approved pursuant to the terms of the LFR, shall bind all the Bankruptcy Creditors, regardless of their express agreement to subsequent amendments. For calculation purposes, the Bankruptcy Credits shall be adjusted pursuant to this Plan and deducted from the amounts already paid on any account in favor of the Bankruptcy Creditors, as the case may be. ----------------------------

------------------------------------------------------------

**8. GENERAL PROVISIONS** -------------------------------------

------------------------------------------------------------

**8.1. Annexes.** All the annexes to this Plan are incorporated into it and form an integral part thereof. If





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

there is any inconsistency between this Plan and any annex, the Plan shall prevail. ----------------------------
-----------------------------------------------------------

**8.2. Existing Contracts and Conflicts.** In the event of conflict between the provisions of this Plan and the obligations of the Companies under Reorganization subject to Court-supervised Reorganization provided in the contracts entered into with any Bankruptcy Creditor prior to the Date of Filing, this Plan shall prevail, without prejudice to the maintenance of the conditions originally contracted with Third Parties, as provided in Clauses 3.7.9.1 *et seq*.. -------------------------------------------
-----------------------------------------------------------

**8.3. Communications.** All notices, applications, requests and other communications to the Companies under Reorganization, required or permitted by this Plan, in order to be effective, shall be made in writing and shall be deemed to have been made when sent (i) by registered mail, with acknowledgment of receipt, or by courier; or (ii) by email when effectively delivered, the notice of reading serving as valid proof of delivery and receipt of the message, and the Companies under Reorganization undertake to check their messages periodically. All the communications shall be sent to the following addresses, unless there is a change duly communicated to the Bankruptcy Creditors: ------------------------------------
-----------------------------------------------------------

**To the Companies under Reorganization:** --------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 95

Rua Lemos Monteiro, n° 120, 16° andar ---------------------

Butantã, São Paulo/SP, Postal Code [CEP] 05501-050 --------

C/o: Legal Department ------------------------------------

Email: rjodb@odebrecht.com ---------------------------------

 -----------------------------------------------------------

**To** the Judicial Administrator ----------------------------

Rua Surubim, n° 577, 9° andar ------------------------------

Brooklyn Novo, São Paulo/SP, Postal Code [CEP] 04571-050 --

C/o: Eduardo Seixas and Luciana Gasques -------------------

Email: aj_odb@alvarezandmarsal.com ------------------------

 -----------------------------------------------------------

**8.4. Severability.** In the event that any term or provision of this Plan is held to be invalid, void or unenforceable, the remainder of the terms and provisions of the Plan shall remain valid and effective. -------------------------

 -----------------------------------------------------------

**8.5. Credits in foreign currency.** Credits denominated in foreign currency shall be kept in the original currency for all legal purposes, in accordance with the provisions of Article 50, Paragraph 2 of LFR, and shall be settled in accordance with the provisions of this Plan. --------------

 -----------------------------------------------------------

**8.6. Termination of the Court-Supervised Reorganization.** The Court-supervised Reorganization shall be terminated pursuant to the terms of articles 61 and 63 of the LFR. ---

 -----------------------------------------------------------

**8.7. Applicable Law.** The rights, duties and obligations arising from this Plan shall be governed, interpreted and





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

executed in accordance with the laws in force in the Federative Republic of Brazil, even if there are Credits originated under the laws of another jurisdiction and without the application of any rules or principles of private international law. -------------------------------
-----------------------------------------------------------
**8.8. Jurisdiction.** All the disputes or controversies that arise or are related to this Plan shall be resolved by the Reorganization Court. After the conclusion of the Court-supervised Reorganization, the controversies or disputes that arise or are related to this Plan shall be resolved by the forum of the Judicial District of São Paulo. -------
São Paulo, March 31, 2020 *(The signature of the Plan follow)* -----------------------------------------------------
-----------------------------------------------------------
*(pages of signatures of the Court-supervised Reorganization Plan filed by Odebrecht S.A. – EM RECUPERAÇÃO JUDICIAL and other companies belonging to its economic group)* --------------------------------------------
**Name:** *(Blank)* ----------------------------------------------
**Title:** *(Blank)* -----------------------------------------------
**Name:** *(Blank)* ----------------------------------------------
**Title:** *(Blank)* -----------------------------------------------
By: **KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA –** EM RECUPERAÇÃO JUDICIAL; **ODBINV S.A. -** EM RECUPERAÇÃO JUDICIAL; **ODEBRECHT S.A. -** EM RECUPERAÇÃO JUDICIAL; **OSP INVESTIMENTOS S.A. -** EM RECUPERAÇÃO JUDICIAL; **ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. -** EM RECUPERAÇÃO JUDICIAL;





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 97

OPI  S.A.  -  EM  RECUPERAÇÃO  JUDICIAL;  **ODEBRECHT PARTICIPAÇÕES  E  INVESTIMENTOS  S.A.  -**  EM  RECUPERAÇÃO JUDICIAL; **ODB INTERNATIONAL CORPORATION; ODEBRECHT FINANCE LIMITED; ODEBRECHT  ENERGIA  INVESTIMENTOS  S.A.  -  EM RECUPERAÇÃO JUDICIAL; ODEBRECHT ENERGIA PARTICIPAÇÕES S.A.** - EM RECUPERAÇÃO JUDICIAL; **ODEBRECHT ENERGIA PARTICIPAÇÕES S.A.  -**  EM  RECUPERAÇÃO  JUDICIAL;  **ODEBRECHT  ENERGIA  DO BRASIL  S.A.  -**  EM  RECUPERAÇÃO  JUDICIAL;  **ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. -** EM RECUPERAÇÃO JUDICIAL; **ODEBRECHT  RJ  S.A.  -**  EM  RECUPERAÇÃO  JUDICIAL;  **ODEBRECHT PROPERTIES  INVESTIMENTOS  S.A.  -**  EM  RECUPERAÇÃO  JUDICIAL; **ODEBRECHT  PROPERTIES  PARCERIAS  S.A.  -**  EM  RECUPERAÇÃO JUDICIAL;  **OP  CENTRO  ADMINISTRATIVO  S.  OP  GESTÃO  DE PROPRIEDADES S.A. –** EM RECUPERAÇÃO JUDICIAL **and MECTRON – ENGENHARIA,  INDÚSTRIA  E  COMÉRCIO  S.A.  -**  EM  RECUPERAÇÃO JUDICIAL. ------------------------------------------------
-----------------------------------------------------------

**ANNEXES TO THE PLAN** ---------------------------------------
-----------------------------------------------------------

| Annex 1.1.10 | Use of Available Cash |
|---|---|
| Annex 1.1.73 | Payment Instruments |
| Annex 1.1.81 (a) | Economic Feasibility Report |
| Annex 1.1.81 (b) | Economic and Financial Report |
| Annex 1.1.110 | Method of Calculating the Percentage of Payment |
| Annex 2.5 | Substantial Consolidation Adherence Instrument |
| Annex 4.1.2 | Indenture: Payment Instruments - Private Debentures |
| Annex 4.1.3 | Indenture: Payment Instruments - Public Debentures |
| Annex 4.3 | Payment Option Form |
| Annex 4.3(ii) | Declaration of Qualified Investor - Public Debentures |
| Annex 5.2 | List of Assets |
| Annex 6.1 | List of Corporate Reorganization Transactions |





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 98

| Annex 7.4.1 | Allocation of Remittances to Petitioners |
|---|---|

------------------------------------------------------------

**Annex 1.1.10** -------------------------------------------

**Use of Available Cash** ----------------------------------

------------------------------------------------------------

**1.** The Available Cash may be used for the ordinary maintenance of the Odebrecht Group's activities, (i) for general and administrative expenses of the Companies under Reorganization, such as (a) obligations and expenses related to direct and indirect contingencies, whose origin is of an administrative, civil, commercial, financial, fiscal, tax, environmental, criminal or labor nature; (b) general expenses with the maintenance of activities, such as building maintenance expenses, condominium, *facilities*, communication, IT, payment services, reimbursement of expenses, legal and financial advisors, auditing expenses and expenses with suppliers and service providers, including those related to Court-supervised Reorganization and to the fulfillment of this Plan; (c) payment of obligations that are not subject to Court-supervised Reorganization; (d) cost of maintenance of the governance and *compliance* structure; and (ii) transactions permitted under Clause 7.4 or in any other form by this Plan. -------

------------------------------------------------------------

**2.** For the avoidance of doubt, the list of events above is exemplary and is not exhaustive, and it is certain that the Companies under Reorganization shall never be able to use the Available Cash (i) to perform acts forbidden under





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Clause IV of article 64 of the LFR, and (ii) for payment of Companies under Reorganization dividends to companies that are not Companies under Reorganization, and it shall be clear that this provision does not affect, prevent or limit the use or distribution of the funds pursuant the terms of item (iii) of Clause 1.1.119 of the Plan. -------- ---------------------------------------------------------

**Annex 1.1.73** -----------------------------------------------

**Payment Instruments** ----------------------------------------

*(terms and conditions applicable to Bankruptcy Credits that are restructured using any mode of Payment Instrument)* ----------------------------------------------- ---------------------------------------------------------

**1. <u>Issuer / Principal Debtor</u>**. ODB, any company that may succeed ODB, or, if authorized by the respective Creditor, any Company under Reorganization, and it shall be certain that, in the event of restructuring of Credits by means of Payment Instruments - Plan, the original principal debtor or (ii) if the Companies under Reorganization are not the original principal debtor, the co-obligor/guarantor ("<u>Issuer/Principal Debtor</u>") shall be maintained. ---------- ---------------------------------------------------------

**2. <u>Guarantor(s)</u>**. All the Companies under Reorganization shall figure as joint guarantors of the Payment Instrument ("<u>Guarantors</u>"). ------------------------------------------- ---------------------------------------------------------

**2.1. <u>In Rem Guarantee</u>**: The Secured Credits shall maintain the respective In Rem Guarantees, as originally





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 100

covenanted, it being certain that the In Rem Guarantees shall not be shared among the other Credits Eligible for the Subscription of Payment Instruments. ------------------

------------------------------------------------------------

3. **Interest and Inflation adjustment**. The Payment Instruments shall bear interest and inflation adjustment, to be incorporated into the face value of the Payment Instruments, corresponding to the positive variation of the IPCA from the Date of Filing until the implementation of all payments provided in the Payment Instruments, observing the Compliance Bonus. ---------------------------

4. **Maturity**. Maturity on the 40th (fortieth) Anniversary, with the Principal Debtor having to amortize in advance the totality of the Payment Instruments: ------------------

------------------------------------------------------------

(i) on the 25th (twenty-fifth) Anniversary, if it has not presented, within 6 (six) months from the 24th (twenty-fourth) Anniversary, a report prepared by a specialized and renowned auditing firm, member of one of the big four auditing firms in the world *(big four)* or a similar category at the time, demonstrating that the Companies under Reorganization are able to generate cash and/or assets that can be monetized of at least BRL 50,000,000.00 (fifty million reais) until the 40th (fortieth) Anniversary; or ------------------------------------------

------------------------------------------------------------

(ii) from the 3rd (third) Anniversary, if it is verified that the Cash for Distribution on a given Amortization





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 101

Date is sufficient to amortize and/or redeem 100% (one hundred percent) of the balance due of Payment Instruments. ----------------------------------------------

-----------------------------------------------------------

**5.** **Amortizations and Grace Period**. Payment Instruments shall be amortized on each Amortization Date with funds from the Cash for Distribution, as calculated in accordance with Clause 1.1.11, observing the Rule of Use of the Cash for Distribution, on a *pro rata* basis among the Credits Eligible for Subscription of Payment Instruments. The first payment shall be due on the first Amortization Date that occurs after 3 (three) years from the Date of Judicial Confirmation of the Plan ("Grace Period"), and for each BRL 1.00 (one Real) of Cash for Distribution intended for amortization of the Payment Instruments, BRL 1.00 (one Real) shall be deducted from the face value and/or the principal value of the respective Payment Instruments, and the Companies under Reorganization may, at any time, make early amortizations.

-----------------------------------------------------------

**5.1.** In the event the Bankruptcy Creditors have Bankruptcy Credits originally formalized for more than one (1) instrument, the amortizations contemplated in item 55 above shall occur proportionally among such original instruments. ----------------------------------------------

-----------------------------------------------------------

**6.** **Monitoring Agent**. The Payment Instruments shall have a Monitoring Agent that shall follow the financial movements





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

of the Companies under Reorganization and who must be hired by the Issuer/Principal Debtor within 60 (sixty) Consecutive Days from the Date of Judicial Confirmation of the Plan, who shall: --------------------------------------

----------------------------------------------------------

(i) disclose the amount of Cash for Distribution that shall be used to amortize the Payment Instruments, observing the Rule of Use of the Cash for Distribution; ---

----------------------------------------------------------

(ii) verify and ratify the Available Cash, the Cash for Distribution and the Rule of Use of Cash for Distribution, based on a management report including the consolidated cash balance of the Companies under Reorganization  and other documents deemed necessary by the Monitoring Agent to be provided by the Companies under Reorganization, such as, for example, bank statements; -------------------------

----------------------------------------------------------

(iii) monitor the payments provided in the Payment Instruments, as well as the fulfilment of other obligations provided; -------------------------------------

(iv) monitor the materialization of Credits Eligible for Subscription of Payment Instruments after the date of issue of the Payment Instruments; and ---------------------

----------------------------------------------------------

(v) disclose monthly reports consolidating the information regarding the attributions contemplated in the previous items. ---------------------------------------------------

----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 103

**6.1. Access to Information.** The Companies under Reorganization shall provide the Monitoring Agent with access to all information and documents deemed necessary by the Monitoring Agent for the proper performance of its duties. ----------------------------------------------------- -----------------------------------------------------------

**6.2. Choice Procedure.** The Company under Reorganization shall hire one of the companies listed in Appendix I to hold the position of Monitoring Agent within 60 (sixty) days counted from the Date of Judicial Confirmation of the Plan, and shall choose the company that offers the best proposal considering the price conditions and scope of work, observing the substitution conditions described in Appendix I. ------------------------------------------------ -----------------------------------------------------------

**7. <u>Early Maturity Assumptions</u>.** The obligations provided in the Payment Instrument shall be deemed to be overdue, irrespective of notice, interpellation or notification, upon the occurrence of the following events: -------------- -----------------------------------------------------------

(i) default by the Principal Debtor of any monetary obligation that is not remedied within three (3) Business Days of its occurrence; ---------------------------------- (ii) default by the Principal Debtor of any non-monetary obligation under the Payment Instrument that is not remedied within thirty (30) Business Days of its occurrence, if not within a specified period; ------------- -----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 104

(iii) a collegiate court decision or court order without suspensive effect declaring the Payment Instrument illegal, noting that any appeals that should have been addressed to the Creditors Eligible for the Subscription of Payment Instruments, but which have not been made by virtue of such decision, shall remain withheld for further distribution to the Creditors Eligible for the Subscription of Payment Instruments; ---------------------
-----------------------------------------------------------
(iv) liquidation, dissolution, decree of bankruptcy or petition for self-bankruptcy of the Principal Debtor; -----
-----------------------------------------------------------
(v) assignment, promise of assignment or any other type of transfer of the obligations of the Principal Debtor to a Third Party, without the consent of the Credits Eligible for the Subscription of Payment Instruments; --------------
-----------------------------------------------------------
(vi) transformation of the Principal Debtor into a limited company; --------------------------------------------------
-----------------------------------------------------------
(vii) alteration of the corporate purpose of the Principal Debtor, except in the event of authorization of Credits Eligible for the Subscription of Payment Instruments **or** that does not result in a substantial change in the activities of the Principal Debtor; -----------------------
-----------------------------------------------------------
(viii) evidence, certified in a court order without suspensive effect, that any declaration made by the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 105

Principal Debtor in the Payment Instrument is untrue, provided that such untrue event or situation causes any material adverse effect on: (a) the Principal Debtor's financial condition, business, assets, results of operations and/or prospects; and/or (b) the ability of the Principal Debtor to perform any of its obligations under the Payment Instrument; ------------------------------------

(ix) evidence, attested by a court decision without suspensive effect, that any representation made by the Principal Debtor in the Payment Instrument relating to matters of corrupt practice is false; ---------------------

(x) acquisition, merger or spin-off of the Principal Debtor, without the prior consent of the Credits Eligible for the Subscription of Payment Instruments, unless the corporate reorganization is authorized in the Plan or in this Annex; and -------------------------------------------

(xi) issuance of a sentence, without suspensive effect, certifying that the Principal Debtor has committed acts involving the use of child labor, labor analogous to slave labor and/or criminal provision of prostitution -----------

(xii) default on any monetary obligation in any Payment Instruments, provided that not remedied within the applicable remediation term; or --------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 106

(xiii) decree of early maturity under any Payment Instruments. ----------------------------------------------
------------------------------------------------------------

**8. General Provisions.** ------------------------------------
------------------------------------------------------------

**8.1. Disclosure of Information.** The Companies under Reorganization shall provide in a monthly basis to the Monitoring Agent the financial and accounting information regarding the composition of the Available Cash and the Cash for Distribution or in a shorter period whenever requested, by means of a communication sent pursuant to Clause 8.3, which shall be answered by the Companies under Reorganization with the information requested within 10 (ten) Business Days from receipt of the communication. ----
------------------------------------------------------------

**8.2. Communication.** The Debtor/Main Issuer, the Guarantors and the holders of Credits Eligible for the Subscription of Payment Instruments shall send to the Monitoring Agent and keep up-to-date at all times (i) their complete identification; (ii) telephone; (iii) email address; and (iv) the address for sending physical correspondence. All notices, applications, requests and other communications relating to the Payment Instruments shall be in writing in order to be effective and shall be deemed to have been given when sent (i) by registered mail with acknowledgement of receipt or by courier; or (ii) by email when effectively delivered, the notice of reading being taken as proof of delivery and receipt of the message. ----





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

---------------------------------------------------------

**8.3. Resolutions.** The Principal Debtor may, at any time, call a meeting with the Bankruptcy Creditors holding Credits Eligible for the Subscription of Payment Instruments so that they may resolve: ---------------------

---------------------------------------------------------

(i) on the *waiver* of the right to demand compliance with the obligations set forth in the Payment Instrument; ------

---------------------------------------------------------

(ii) on the *waiver* of the right to declare the early maturity of the obligations set forth in this Payment Instrument; -----------------------------------------------

---------------------------------------------------------

(iii) on the extension of the term described in item ii of Clause 1.1.11; -----------------------------------------

---------------------------------------------------------

(iv) on the carrying out of corporate reorganization operations pursuant to the terms of Clause 6.1 of the Plan; ---------------------------------------------------

---------------------------------------------------------

(v) on the substitution of the Monitoring Agent pursuant to item 4 of Appendix I to this Annex; and ----------------

---------------------------------------------------------

(vi) on other matters that are relevant. ------------------

---------------------------------------------------------

**8.3.1.** <u>Call Notice.</u> The meeting shall be convened by means of a notice sent to the Bankruptcy Creditors holding Credits Eligible for Subscription of Payment Instruments





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

at least eight (8) Business Days in advance to the first call and five (5) Business Days in advance to the second call, and the call shall contain the date, time, place and agenda. -------------------------------------------------- -------------------------------------------------------------

**8.3.2.** <u>Convening</u>. The meeting shall be convened, on first call, with the presence of two-thirds (2/3) of the Credits Eligible for Subscription of Payment Instruments and, on second call, with any quorum of those present. The meeting shall be chaired by the Issuer/Principal Debtor and shall be monitored by the Monitoring Agent. --------------------- -------------------------------------------------------------

8.3.2.1. <u>Convening for Resolution on Qualified Matters</u>. The meeting to resolve on the matters indicated in items (iii), (iv) and (v) in item 8.3 above shall only be convened with the presence of Payment Instruments representing at least two-thirds (2/3) of the Credits Eligible for the Subscription of Payment Instruments outstanding on the date of the call, either on first or second call. ---------------------------------------------- -------------------------------------------------------------

8.3.2.2. *Intercompany* Credit Creditors and Related Parties shall not be considered for quorum purposes. -------------- -------------------------------------------------------------

**8.3.3.** <u>Quorum of Resolution</u>. The matters put to a vote shall be approved by an absolute majority of Credits Eligible for Subscription of Payment Instruments present at the meeting, according to outstanding balances





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

considered on the date the meeting is called. The meeting minutes shall be sent to the Monitoring Agent and, while Court-Supervised Reorganization lasts, to the Judicial Administrator. -------------------------------------------
 -----------------------------------------------------------
8.3.3.1. <u>Quorum of Resolution on Qualified Matters</u>. The matters indicated in items (iii), (iv) and (v) of item 8.3 above put to vote shall only be approved by the affirmative vote of at least two-thirds (2/3) of the Credits Eligible for Subscription of Payment Instruments present. ---------------------------------------------------
 -----------------------------------------------------------
8.3.3.2. *Intercompany* Credit Creditors and Related Parties shall not have voting rights. ----------------------------
 -----------------------------------------------------------
*APPENDIX I* -----------------------------------------------
*MONITORING AGENT* ------------------------------------------
**3.** The Companies under Reorganization may hire, for the position of Monitoring Agent, one of the following specialized companies (their successor or any companies belonging to the economic group of the companies listed below): --------------------------------------------------
 -----------------------------------------------------------
**(i)** CCC Consultoria Financeira e Empresarial Ltda., CNPJ No. 07.458.740/0001-15, with registered office at Rua Japão, nº 484, unidade 31 E, Jardim São Luís, in the City of Santana de Parnaíba, State of São Paulo, CEP 06502-345; -----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 110

**(ii)** FTI Consultoria Ltda., CNPJ No .07.174.869/0001-00, with registered office at Rua Tabapuã, n° 474, 8° floor, Itaim Bibi, CEP 04533-001, in the City and State of São Paulo; or ------------------------------------------------

**(iii)** A specialized and renowned audit firm, among the big four audit firms in the world *(big four)* or a similar category at the time. ------------------------------------

**4.** If, at any time, it is necessary to replace the Monitoring Agent, the Companies under Reorganization shall preferably hire one of the companies described in item 1 above. If it is not possible or feasible, the Companies under Reorganization are herein authorized to hire another company with technical capacity, reputation and experience similar to those of the companies listed in item 1 above, provided that it is approved by the holders of Payment Instruments pursuant to the terms of Clause 8.3 of this Annex. --------------------------------------------------
--------------------------------------------------------

**Annex 1.1.81 (a)** -------------------------------------
**Economic Feasibility Report** ------------------------------
--------------------------------------------------------

**Annex 1.1.81 (b)** -------------------------------------
**Economic-Financial Report** --------------------------------
--------------------------------------------------------

**Annex 1.1.110** -------------------------------------------
**Method for Calculating the Percentage of Payments** ---------
**1.** The Percentage of Payments shall be calculated, from the end of the Grace Period, based on the management





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

report of accounting closing, delivered by the Companies under Reorganization to the Monitoring Agent, for the months of February, April, June, August, October and December, according to the following formula: -------------

$$\text{Percentage of Payments} = \frac{\text{'payments'}}{\text{'credits base'}}$$

where: ------------------------------------------------------
 ------------------------------------------------------

**(i)** *payments*: the sum of all amortizations of -------------

**(a)** Credits Eligible for Subscription of Payment Instruments made by Companies under Reorganization, except for those arising from Co-obligations for debts of the Atvos Companies; ------------------------------------------

**(b)** Non-bankruptcy Credits for fiduciary guarantees granted by ODB; and ---------------------------------------

**(c)** Bankruptcy Credits for Guarantees Granted by Companies under Reorganization issued by Third Parties, including the portion that does not generate amortizations of Payment Instruments as provided in Clause 3.7.9.1.1, except for those arising from Co-obligations provided for debts of the Atvos Companies. ----------------------------

**(ii)** *credits base*: the sum of all (ii.a.) Credits Eligible for the Subscription of Payment Instrument, except for those arising from Co-obligations for debts of the Atvos Companies; and (ii.b) Non-Bankruptcy Credits for fiduciary guarantee granted by ODB. --------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

**2.** In each calculation, the values described above shall be monetarily adjusted / brought to present value according to the following rules: ------------------------

● *credits base* The credit base refers to the values of these obligations the Order Date without incurring inflation adjustment / interest; ------------------------

● *Credits listed in (a), (b) and (c) of item 1(i) above* The values shall be brought to present value until the Order Date by the accruing inflation adjustment factor of the respective instruments in force until the calculation date. ------------------------------------------------------

------------------------------------------------------

**Annex 2.5** ------------------------------------------------

**Substantial Consolidation Adherence Instrument** ------------

By this private instrument, ------------------------------

[Legal Name of Petitioner], a private limited liability company, with registered office at [Registered Office], taxpayer identification number CNPJ/ME [*], herein duly represented pursuant to its articles ("Petitioner") -------

**WHEREAS:** ----------------------------------------------

(i) ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL, a joint stock company, with registered office in the municipality of Salvador, State of Bahia, at Avenida Luis Viana, 2841, Ed. Odebrecht, Paralela, CEP 41,730-900, taxpayer identification number CNPJ/ME 05,144,757/0001-72, [Legal Name of the other Companies under Reorganization] (together "Companies under Reorganization") and Petitioner filed, on June 17, 2019, a petition for court-supervised





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 113

reorganization, filed under No. 1057756-
77,2019.8.26.0100, in progress at the 1st Court of
Bankruptcy and Court-Supervised Reorganization of the
Central Civil Jurisdiction of the Capital of São Paulo
("Court-supervised Reorganization"); ----------------------
(ii) in [*], the Bankruptcy Creditors of the Companies
under Reorganization decided, at the Creditor's Meeting,
to consolidate substantially and approved a unit court-
supervised reorganization plan, comprised of the assets
and liabilities owned by all the Companies under
Reorganization ("Plan"); ----------------------------------
(iii) on [*], the Plan was confirmed by the Court-
supervised Reorganization Court in the decision of page
[*], published in the Electronic Gazette on [*]; ----------
(iv) pursuant to Clause 2.5 of the Plan, Petitioner may
join the Plan, by sending the Instrument of Adherence to
the Substantial Consolidation, accompanied by a copy of
the minutes of the Creditors' Meeting deciding on its
adherence, it being certain that the effect of such
adherence shall be the consolidation of all assets and
liabilities of Petitioner with the assets and liabilities
of the Companies under Reorganization ; and ---------------
(v) on [*], at a general meeting of creditors, the
Petitioner's creditors ("Petitioner's Bankruptcy
Creditors") resolved to join the Plan to formalize their
entry into the Substantial Consolidation of the Companies
under Reorganization, recognizing and agreeing that all of
Petitioner's assets and liabilities shall become, for all





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

purposes, part of the Plan (the "<u>AGC Substantial Consolidation</u>"). ------------------------------------------

**PETITIONER RESOLVES,** as resolved by its creditors in the AGC Substantial Consolidation, to enter into this Substantial Consolidation Adherence Agreement ("<u>Agreement</u>"), which shall be governed by the clauses and conditions below. -----------------------------------------

**1. PURPOSE** -------------------------------------------------
------------------------------------------------------------

**1.1. Adherence:** Petitioner hereby irrevocably and irreversibly joins the Plan, consolidating all of its assets and liabilities with the assets and liabilities of the Companies Under Reorganization, pursuant to Clause 2.5 of the Plan ("<u>Adherence</u>"). -------------------------------

1.1.1. <u>Restructuring of Credits</u>. By virtue of the Adherence described in Clause 1.1 of this Instrument, Petitioner's Bankruptcy Creditors shall have their bankruptcy credits restructured and paid, pursuant to clauses 3.1, 3.2, 3.3, 3.4 and 3.6 of the Plan, as applicable considering the nature of each Bankruptcy Credit. --------------------------------------------------

1.1.2. <u>Disposal and/or Encumbrance of Assets</u>. By virtue of the Adherence described in Clause 1.1 of this Instrument, all the property and assets of Petitioner's current and non-current assets shall be subject to the rules of disposal of assets set forth in Clauses 5.1 and 5.2 of the Plan, it being certain that Annex 1.1.2 of this Instrument





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 115

shall become, for all effects and purposes, Annex 5.2 of the Plan. --------------------------------------------------
1.1.3. <u>Applicable Provisions</u>. By virtue of the Adherence described in Clause 1.1 hereof, all provisions, conditions and definitions described in the Plan shall apply to Petitioner and its Bankruptcy Creditors. ------------------

**2. REPRESENTATIONS** ------------------------------------------

**2.1. Representations of Petitioner:** Petitioner represents and warrants that: -----------------------------------------
(i) it has full capacity and legitimacy to enter into this Instrument, having taken all corporate and other measures that may be necessary to authorize its execution, including having submitted the Adherence to resolution by Petitioner's Bankruptcy Creditors at the AGC Substantial Consolidation, to implement all forecasts contained in the Plan and comply with all the obligations assumed therein; -
(ii) this Adherence is validly executed and constitutes a legal, valid, binding and enforceable obligation according to its terms; ----------------------------------------------
(iii) the execution of this Adherence and compliance with its obligations: (a) do not violate any provision contained in its corporate documents; (b) do not violate any law, regulation, judicial, administrative or arbitration decision or award to which it is bound, including the decisions rendered by the Court-supervised Reorganization Court; and (c) do not violate any resolution taken by Petitioner's Bankruptcy Creditors at the General Creditors' Meeting; and -----------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 116

(iv) discussions on the contractual purpose of this Adherence were held, conducted and implemented at Petitioner's own initiative, Petitioner and Petitioner's Bankruptcy Creditors having extensively discussed all the conditions of this business, advised by their respective attorneys who informed and alerted them of and to all the conditions and circumstances involved in the negotiation of this Adherence, the terms of this Instrument and the Plan. ------------------------------------------------------

3. **GENERAL PROVISIONS** ---------------------------------------

3.1. **Irrevocability and Irreversibility:** This Instrument, the undertakings and responsibilities assumed therein by Petitioner are irrevocable and irreversible. This Instrument is binding and is entered into for the benefit of Petitioner and its respective successors and permitted assigns. -------------------------------------------------

3.2. **Binding Nature of the Plan:** The provisions of the Plan bind Petitioner, Petitioner's Bankruptcy Creditors, and their respective assigns and successors, on any account (i) as of the date of the Plan's Judicial Confirmation and of (ii) remittance of this Instrument, accompanied by a copy of the minutes of the AGC Substantial Consolidation to the Companies under Reorganization, pursuant to clause 8.3 of the Plan, whichever occurs later. ----------------------------------

3.3. **Definitions:** Terms spelled or initiated in capital letters used but not defined herein shall have the meanings assigned in the Plan. ----------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

**3.4. Applicable Law:** The rights, duties and obligations arising from this Instrument shall be governed, interpreted and performed in accordance with the laws in force in the Federative Republic of Brazil, even if there are Credits originated under the laws of another jurisdiction and without the application of any rules or principles of private international law. ------------------

**3.5. Venue:** All controversies or disputes that arise or are related hereto shall be resolved by the Reorganization Court. After termination of the Court-supervised Reorganization the disputes or controversies arising or which are related hereto shall be resolved by the venue of the judicial district of São Paulo. -----------------------

São Paulo, [month] [day], 2020 ----------------------------

**[FULL LEGAL NAME OF PETITIONER]** ---------------------------

 -----------------------------------------------------------

**Annex 4.1.2** -----------------------------------------------

**Indenture: Payment Instruments - Private Debentures** -------

 -----------------------------------------------------------

**Annex 4.1.3** -----------------------------------------------

**Indenture: Payment Instruments - Public Debentures** --------

 -----------------------------------------------------------

**Annex 4.3** -------------------------------------------------

**Payment Option Form** ----------------------------------------

**[Place, date]** ----------------------------------------------

 -----------------------------------------------------------



| To | C/o |
|---|---|
| Odebrecht S.A. – EM RECUPERAÇÃO JUDICIAL and Others | Judicial Administrator |
| Rua Lemos Monteiro, nº 120, 16º Floor | 577 Rua Surubim, 9o andar |



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 118

| Butantã, São Paulo/SP, CEP 05501-050<br>C/o: Legal Department and Finance Department<br>Email:rjodb@odebrecht.com | Brooklyn Novo, São Paulo/SP, CEP 04571-050<br>C/o: Eduardo Seixas and Luciana Gasques<br>Email:aj_odb@alvarezandmarsal.com |
|---|---|

--------------------------------------------------------

Re: **Exercise of Option and Choice of Payment Instrument.** --

Dear Sirs, ----------------------------------------------

Pursuant to the terms of **Clause 4.1** of the Plan of

Odebrecht S.A.'s - EM RECUPERAÇÃO JUDICIAL and Others, as

approved by creditors at the Creditors' Meeting held on

[*], we elected: ---------------------------------------

--------------------------------------------------------

| | |
|---|---|
| *Unsecured Financial Credits:* | ( ) Option A – Unsecured Financial Credits<br>( ) Option B - Unsecured Financial Credits<br>**( ) Not Applicable** |
| *Unsecured Non-Financial Credits:* | ( ) Option A - Unsecured Non-Financial Credits<br>( ) Option B - Unsecured Non-Financial Credits<br>**( ) Not Applicable** |
| Available Payment Instrument *(Secured Credits, Unsecured Credits and ME/EPP Credits):* | ( ) Payment Instrument – Plan<br>Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Payment Instrument - Private Debentures Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Payment Instrument - Public Debentures Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Payment Instrument - Bonds<br>Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Deferral of the Choice of Payment Option Amount of Allocated Bankruptcy Credits under the deferment option: [<br>INSERT CREDIT VALUE]<br>**( ) Not Applicable** |
| Legal Name Complete: | --- |

| Bank: | --- | CNPJ/CPF: | --- |
|---|---|---|---|
| Branch: | --- | Checking Account: | --- |

--------------------------------------------------------

Sincerely, ----------------------------------------------

**[FULL LEGAL NAME]** ------------------------------------

**Name:** *(Blank)* -------------------------------------

**CPF:** *(Blank)* --------------------------------------

--------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 119

**ANNEX 4.3 (ii)** ---------------------------------------------

**Declaration of Qualified Investor - Public Debentures** -----

**DECLARATION** -------------------------------------------------

**São Paulo, [●] [●], 20[●].** --------------------------------

**To[s]** -------------------------------------------------------

**[COORDINATORS]** ---------------------------------------------

*[Full Address]* ----------------------------------------------

CEP [●] - *[City/State]* --------------------------------------

Attn.: Mr. [●] ------------------------------------------------

 -------------------------------------------------------------

**Re: Public Distribution, with Restricted Placement Efforts, of [●] ([●]) Issue of Simple Unsecured Debentures, Non-Convertible into Shares, in Single Series, by [Issuer].** --------------------------------------------

**Dear Sirs,** -------------------------------------------------

 -------------------------------------------------------------

[INVESTOR], [nationality, marital status, occupation, holder of identity card RG no. [●] / [joint stock company / limited liability company / financial institution / investment fund], registered, /taxpayer identification number CNPJ/MF [●], [residing and domiciled / registered office] in the city of [●], [State], at [●] Street, no. [●], [herein represented pursuant to its [bylaws / articles of organization/ regulation]], as a professional investor subscriber and acquirer of [quantity] ([quantity in writing]) Debentures of the [●]([●]) issue of unsecured simple debentures, not convertible into shares, in a single series, for public distribution, with restricted





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 120

placement efforts, of [ISSUER], joint-stock company [with/without] registration as a publicly-held company with the Brazilian Securities and Exchange Commission ("CVM"), with registered office in the city of [●], State of [●], at [full address], CNPJ/ME No. [●] ("Debentures", "Restricted Offering" and "Issuer", respectively), which were subject to public distribution, with restricted placement efforts, pursuant to CVM Instruction No. 476, of January 16, 2009, as amended ("CVM Instruction 476"), with the intermediation of [●] ("Lead Coordinator"), [●] ("Coordinator 1" and, jointly with the Lead Coordinator, "Coordinators"), all financial institutions integrating the Brazilian securities distribution system, pursuant to Article 7 of CVM Instruction 476, herein represent that --- i) it is aware of the legislation applicable to the Restricted Offering, in particular CVM Instruction 476 and CVM Instruction 539, of November 13, 2013 ("CVM Instruction 539"), and is aware that the Restricted Offering was carried out in accordance with the procedure described in CVM Instruction 476, and that, therefore, (i) it was automatically waived registration with CVM and the Debentures are subject to the trading restrictions set forth in said Instruction; (ii) the Offering, the Issuer and the Lead Coordinator are not subject to the provisions of CVM Instruction 400, of December 29, 2003, as amended, except with respect to article 48 of said Instruction, with the exception of its item III, as set forth in CVM Instruction 476; and (iii) the Offering was not preceded





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 121

by any authorization from any regulatory or self-regulatory entity; ----------------------------------------
(ii) is a professional investor pursuant to the terms of article 9-A of CVM Instruction 539, and has sufficient knowledge of the financial and capital markets to not be subject to a set of legal and regulatory protections granted to other investors investing in public offerings of securities registered with CVM; -----------------------
iii) has sufficient knowledge and experience in finance and business to assess the quality, risks and appropriateness of investing in the Debentures and, therefore, relied exclusively on its own sources of information and credit analysis to invest in the Debentures; -----------------------------------------------
iv) considers that the investment in the Debentures is appropriate to its level of sophistication and risk profile; ---------------------------------------------
(v) is able to understand and weigh the financial risks related to the investment of its funds in securities that can only be acquired by professional investors; -----------
vi) is able to bear the economic risks of eventual loss of all or part of its investment in the Debentures; ----------
vii) [that, under the penalties of the law, it has financial investments in excess of BRL 10,000,000.00 (ten million reais)]; ------------------------------------------
viii) made its own independent research, evaluation and investigation about Issuer, its relevant subsidiaries and controlled companies, its activities, financial condition





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 122

and, considering its financial condition and investment objectives, took the decision to proceed with the subscription and payment of the Debentures. To this end, it had access to all the information it deemed necessary to make the decision to invest in the Debentures; ---------
ix) independently evaluated the legal aspects of the Debentures with internal funds or hiring of a specialized law firm, and had no reservations about them; -------------
x) agrees with all the terms and conditions of the Debentures described in the Restricted Offering documents;
xi) is aware and agrees that the Debentures shall be registered for distribution in the primary market and for trading in the secondary market through the MDA - Asset Distribution Module (MDA) and CETIP 21 - Securities (CETIP 21) module, respectively, both managed and operated by CETIP S.A. - Organized Markets ("CETIP"), the distribution and trading being settled and the Debentures held in custody electronically at CETIP, noting that, pursuant to CVM Instruction 476, the Debentures: (a) may only be traded in the secondary market after ninety (90) days have elapsed from their subscription or acquisition, (b) may only be traded in the secondary market if Issuer complies with the obligations described in article 17 of CVM Instruction 476, and (c) may only be traded in the secondary market among qualified investors, pursuant to article 9-B of CVM Instruction 539; ----------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 123

xii) is aware of the legal requirements for trading the Debentures on the secondary market among qualified investors; -------------------------------------------------

(xiii) [in the case of investment funds or managed securities portfolios: the Debentures subscribed and acquired herein shall only be allocated to [funds or managed portfolio] under their exclusive [management/administration], and may not be reallocated, in whole or in part, to [funds/administered portfolios] [managed/administered] by the same or other [managers/administrators], even from the same economic group;] -------------------------------------------------

xiv) that, in accordance with its corporate acts and the regulations applicable to it, the acquisition of the Debentures is valid and legal and does not infringe any law, regulation or policy applicable to it; ---------------

xv) that Issuer and the Coordinators have not acted as financial, legal advisors or agent, including trustees, in relation to the Restricted Offering and the acquisition of the Debentures; -------------------------------------------

xvi) is fully aware that the participation of the Managers, as intermediary institutions of the Restricted Offering, does not entail (i) recommendation of investment in the Debentures; (ii) judgment on the quality of Issuer, its subsidiaries, controlled and affiliated companies; and (iii) any guarantee with respect to the expectations of return on the investment in the Debentures and/or the principal amount invested in the Debentures; --------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 124

xvii) that the Coordinators have not provided and shall not at any time provide any kind of advice regarding the Debentures and/or Issuer and, any information which may provided by the Coordinators in this respect within the scope of the Debentures, has been produced by and is the exclusive responsibility of Issuer; therefore, the Coordinators do not assume any responsibility regarding such information; ----------------------------------------

xviii) that the Coordinators have not made and shall not make, at any time, any representation or warranty, explicit or implied, regarding the quality of the credit of the Debentures or of Issuer; --------------------------

xix) that the Coordinators may have acquired, or may acquire, non-public information regarding Issuer and, therefore, I hereby agree that I have not received and shall not receive such information; ----------------------

xx) that the Coordinators may have commercial relations with Issuer and shall take actions and adopt measures that they deem necessary or appropriate for the protection of their interests, without taking into account the eventual consequences that may result to me as holder of the Debentures; ------------------------------------------

(xxi) [the Investor] undertakes irrevocably and irreversibly to execute and send to [Coordinator], within five (5) business days from the date of receipt of such document, a copy of the subscription bulletin or receipt relating to the securities that may be acquired. Without prejudice to such obligation, [the Investor] herein grants





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 125

to the [Coordinator], irrevocably and irreversibly, pursuant to Article 653 and following of the Civil Code, powers so that the [Coordinator] may sign on behalf of [the Investor] the subscription form or receipt relating to the securities that may be acquired in the event that [the Investor] does not comply with the obligation to send the subscription bulletin or receipt signed by him/her to the [Coordinator] within the period set forth in this paragraph. The powers granted herein are valid for a period of five (5) years from the date of closing of the Offer. [The Investor] represents under the penalties of the law that it has the powers necessary to grant the powers described in this paragraph to the [Coordinator]. -- xxii) broadly, irrevocably and irreversibly releases the Coordinators from any liability for any loss, damage and/or expense that they may suffer as a direct or indirect result of the Restricted Offering, recognizing that they have no right of redress against the Coordinators as a result of it, except if such loss, damage and/or expense is proven and directly, as determined by a final judicial unappealable decision to result from the Coordinators' willful misconduct or gross negligence, such indemnity being restricted to the proven direct damages caused by the Coordinators; and ------------ xxiii) has not been sought by the Coordinators through stores, offices or establishments open to the public, or with the use of public communication services such as the press, radio, television and pages open to the public on





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 126

the World Wide Web, having been informed by the Coordinators of the reserved nature of the information made available. ------------------------------------------

Finally, it recognizes that Issuer and the Coordinators shall rely on the truthfulness and accuracy of previous commitments, statements and agreements. And, if at any time, before the subscription and payment of the Debentures, any event occurs that makes any statement herein incorrect or omitted, the latter in any material respect necessary for the purposes set forth herein, I undertake to notify Issuer, the Coordinators and whoever else is interested, and to correct such statement. --------

Sincerely, ------------------------------------------------

São Paulo, [month] [day], [year]. ------------------------

**[INVESTOR]** ------------------------------------------------

Name: *(Blank)* ----------------------------------------------

Title: *(Blank)* ---------------------------------------------

Name: *(Blank)* ----------------------------------------------

Title: *(Blank)* ---------------------------------------------

 -----------------------------------------------------------

**ANNEX 5.23-4** -----------------------------------------------

**List of Assets** --------------------------------------------

**OPI S.A. -** EM RECUPERAÇÃO JUDICIAL -----------------------

Shares issued by ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 12th floor, Part C, Butantã, City and State of São Paulo, CNPJ No. 07.668.258/ 0001-00. ----------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 127

---------------------------------------------------------

3 Annex 5.2 and Clause 5.2 of the Plan comply with the
encumbrances, rights and priorities assured to the holders
of Secured Credits and/or personal guarantees. ------------
4 Annex 5.2 shall be adjusted depending on the Petitioners
who join the substantial consolidation. -------------------

---------------------------------------------------------

**EDIFÍCIO ODEBRECHT RJ S.A -** EM RECUPERAÇÃO JUDICIAL -------
EDÍFCO CORPORATIVO PORTO MARAVILHA: commercial building
with 14,357.52 m² of total private area, considering
offices and shops, over a plot of 3,450.00 m². located at
Avenida Cidade de Lima 86, Rio de Janeiro - RJ, CEP:
20220-710 Registration - registered in the 2nd Office of
the Real Estate Register under numbers: 103.970//103.971
//103.972 //103.973 //103.974 //103.975 //103.976 //
103.977 // 103.978 // 109.979 // 103.980 // 103.981 //
103.982 //103.983 // 103.984 // 103985 // 103.986 //
103.987 // 103.988 // 103.989 // 103.990 // 103.991 //
103.992 // 103.993 // 103.994 // 103.995 // 103.9965. -----

---------------------------------------------------------

5 Statutory lien *of* real estate pursuant to the terms of
the *Private Instrument of the Statutory Lien Contract and
Other Covenants*, entered into by Edíficio Odebrecht RJ
S.A. - EM RECUPERAÇÃO JUDICIAL and Simplific Pavarini
Distribuidora de Títulos e Valores Mobiliários Ltda. ------

---------------------------------------------------------

**ODEBRECHT ENERGIA S.A. –** EM RECUPERAÇÃO JUDICIAL ----------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 128

Units of the Capital Stock of ARACATI ENERGIA RENOVÁVEL
LTDA, a limited liability company, taxpayer identification
number CNPJ/MF 10.690.234/0001-61, with registered office
at Praia de Botafogo, no. 300, sala 801, city of Rio de
Janeiro, state of Rio de Janeiro6. ------------------------

 ----------------------------------------------------------

6 Statutory lien *of* the units, pursuant to the terms of
the *Private Instrument of Constitution of Guarantee –
Statutory Lien of Aracati and Other Covenants*, entered
into on December 20, 2017, between Odebrecht Energia S.A.
– EM RECUPERAÇÃO JUDICIAL, DMC Energy Intermediações de
Negócios S.A., Maturati Participações S.A., RTA
Participações Ltda e. as consenting party, Aracati Energia
Renovável Ltda. -------------------------------------------

 ----------------------------------------------------------

Units of the Capital Stock of CENTRAL GERADORA EÓLICA
CORREDORA DE SENANDES I, LTDA. CNPJ/MF No.
11.638.736/0001-06 with registered office at Praia De
Botafogo, No. 300, Room 801, city of Rio de Janeiro, state
of Rio de Janeiro. ----------------------------------------

Units of the Capital Stock of CENTRAL GERADORA EÓLICA
VENTO ARAGANO III, LTDA., CNPJ/MF no. 11.638.787/0001-38,
with registered office at Av, Presidente Wilson, 165, city
of Rio de Janeiro, state of Rio de Janeiro. ---------------

Units of the Capital Stock of CENTRAL GERADORA EÓLICA
CAPÃO GRANDE LTDA., CNPJ/MF  No. 11.608.948/0001-40, with
registered office at Av, Presidente Wilson, 165, city of
Rio de Janeiro, state of Rio de Janeiro. ------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 129

Unitsof the Capital Stock of ODEBRECHT ENERGIA E PARTICIPAÇÕES S.A - EM RECUPERAÇÃO JUDICIAL, with registered office at Rua Lemos Monteiro, n° 120, 7° andar, Parte D, Butantã, City and State of São Paulo, CNPJ n° 19.790.376/ 0001-75. -------------------------------------- ------------------------------------------------------------

**ODEBRECHT ENERGIA INVESTIMENTOS S.A. –** EM RECUPERAÇÃO JUDICIAL -------------------------------------------------- Shares issued by ODEBRECHT ENERGIA S.A. - In Reorganization, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 7° andar, Parte B, Butantã, City and State of São Paulo, CNPJ No. 13.079.757/ 0001-64.7 ------------------------------------- ------------------------------------------------------------

7 Statutory Lien of shares, pursuant to the terms of the *Private Instrument of Fiduciary Formation of Shares in Guarantee*, entered into by Odebrecht S.A. - EM RECUPERAÇÃO JUDICIAL, Odebrecht Energia Investimentos S.A., Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários and, as a consenting intervening party, Odebrecht Energia S.A., on June 8, 2016, as amended. ----------------------------- ------------------------------------------------------------

**ODEBRECHT ENERGIA PARTICIPATIONS S.A. –** EM RECUPERAÇÃO JUDICIAL -------------------------------------------------- Shares issued by ODEBRECHT ENERGIA DO BRASIL S.A. – Under Reorganization, a closely-held corporation, with registered office at Rua Lemos Monteiro, n° 120, 11°





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 130

andar, Parte B, Butantã, City and State of São Paulo, CNPJ n° 113.439.547/ 0001-30. ----------------------------------
----------------------------------------------------------

**ODEBRECHT ENERGIA DO BRASIL S.A. -** EM RECUPERAÇÃO JUDICIAL Units of CAIXA FUNDO DE INVESTIMENTO EM PARTICIPAÇÕES AMAZÔNIA, CNPJ/MF No. 08.991.641/0001-67. -----------------
MADEIRA ENERGIA S.A. - MESA, a closely-held corporation, with registered office at Av. das Nações Unidas, n° 4777, piso 6, sala 2, City and State of São Paulo, CNPJ n° 09.068.805/0001-41. --------------------------------------
----------------------------------------------------------

**ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. S.A. –** EM RECUPERAÇÃO JUDICIAL ---------------------------------------
Shares issued by ARENA ITAQUERA S.A., a joint stock company with registered office at Rua Iguatemi, 151, 19° andar, City and State of São Paulo, CNPJ/ME n° 14.278.551/0001-268. --------------------------------------
----------------------------------------------------------

8 Statutory lien over shares, established pursuant to the terms of the Statutory Lien *Agreement of Shares in Guarantee and Other C*ovenants entered into between Jequitibá Patrimonial S.A., Odebrecht Participações e Investimentos S.A. - EM RECUPERAÇÃO JUDICIAL, Caixa Econômica Federal and, as consenting intervening party, Arena Itaquera S.A., on November 29, 2013, as amended. ----
----------------------------------------------------------

Shares issued by ODEBRECHT LATINVEST S.A.R.L, a company organized under the laws of Luxembourg, registered under





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 131

no. B. 195.784, with registered office at avenue JF Kennedy, L-1855, Luxembourg. ------------------------------ Shares issued by ODEBRECHT LATIN FINANCE S.A.R.L, a company organized under the laws of Luxembourg, registered under no. B. 175,583, with registered office at avenue JF Kennedy, L-1855, Luxembourg. ------------------------------ H2OLMOS S.A., a company organized under the laws of Peru, registered under no. 20523611250, with registered office at Av. Victor Andrés Belaunde, 280, San Isidro, City of Lima, Peru. --------------------------------------------- Shares issued by CONCESSIONÁRIA RIO BARRA S.A., a joint stock company with registered office at Avenida Rio Branco, 156, Salas 1702 e 1703, Centro, CEP 20.040-901, City and State of Rio de Janeiro, CNPJ/ME No. 02.893.588/0001-85. -------------------------------------- Issue of Shares of BAIRRO NOVO EMPREENDIMENTOS IMOBILIÁRIOS S.A., a joint stock company with registered office at Rua Lemos Monteiro, 120, Butantã, 9º Andar, CEP 05501- 050, City and State of São Paulo, CNPJ/ME nº 08.758.695/0001-87.5. ------------------------------------ ------------------------------------------------------------

**ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. –** EM RECUPERAÇÃO JUDICIAL ------------------------------------------------- Shares Issued by ENSEADA INDÚSTRIA NAVAL E PARTICIPÇÕES S.A., a closely-held corporation, with registered office at Av. Cidade de Lima, 86, Cidade de Santo Cristo, State of Rio de Janeiro, CNPJ No. 15.426.668/0001-97. ----------- ------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 132

**ODEBRECHT PROPERTIES INVESTIMENTOS S.A. –** EM RECUPERAÇÃO JUDICIAL -------------------------------------------------- ODEBRECHT PROPERTIES ENTRETENIMENTO S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte B, Butantã, City and State of São Paulo, CNPJ No. 21.264.583/0001-38 ------------------------ ODEBRECHT PROPERTIES PARCERIAS S.A. - EM RECUPERAÇÃO JUDICIAL, Closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte B, Butantã, City and State of São Paulo, CNPJ No. 16.584.908/0001- 20. ----------------------------------------------------------

**ODEBRECHT PROPERTIES PARCERIAS S.A. -** EM RECUPERAÇÃO JUDICIAL -------------------------------------------------- Shares issued by SPE SAÚDE PRIMÁRIA BH S.A, a closely-held corporation, with registered office at Avenida Raja Gabaglia, 2000 Sala 319, torre 02, ALPES, BELO HORIZONTE - MG, CNPJ n° 23.921.007/0001-41. -------------------------- Shares Issued by FONTE NOVA NEGÓCIOS E PARTICIPAÇÕES S.A., a closely-held corporation, with registered office at Rua Ladeira da Fonte das Pedras, S/N NAZARE, SALVADOR - BA, CNPJ No. 08.906.994/0001-11.9 ---------------------------- Shares issued by OP CENTRO ADMINISTRATIVO S.A. - EM RECUPERAÇÃO JUDICIAL, Closely-held corporation, with registered office at QS 1, Rua 210, n° 34, Lot e 34 TR 3, Sala 1010 C, Áreal (Águas Claras), City of Brasília, Federal District, CNPJ n° 19.128.923/ 0001-51.10 ---------- Shares Issued by CONCESSIONÁRIA RIO MAIS S.A., a closely-held corporation, with registered office at Avenida das





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 133

Américas, 04430 Sal 201, Barra da Tijuca, City of Rio de Janeiro, State of Rio de Janeiro, CNPJ No. 15.404.443/0001-15. ---------------------------------------

Shares Issued by CONCESSIONÁRIA PORTO NOVO S.A., a closely-held corporation, with registered office at Avenida Rodrigues Alves, 455, Salas Técnicas no Interior do Túnel Marcelo Alencar Next to Praça Muhammad Ali, Gamboa, City of Rio de Janeiro, State of Rio de Janeiro, CNPJ No. 12.749.710/0001-06. -----------------------------

 ------------------------------------------------------------

9Pledge established on the shares, pursuant to the terms of the *Fonte Nova Project - First-Degree Shares Pledge Agreement*, entered into by Construtora OAS Ltda - EM RECUPERAÇÃO JUDICIAL, Odebrecht Participações e Investimentos S.A. - EM RECUPERAÇÃO JUDICIAL, Banco do Nordeste do Brasil S.A., Desenbahia - Agência de Fomento do Estado da Bahia S.A. and, as consenting intervening party. Source: Nova Negócios e Participações S.A., on February 8, 2011. -----------------------------------------

10 Created a pledge on the shares, pursuant to the terms of the *Pledge Agreement of Shares in Guarantee and Other Covenants*, executed between Odebrecht Participações e Investimentos S.A. - EM RECUPERAÇÃO JUDICIAL, Construtora Norberto Odebrecht S.A., RB Capital Companhia de Securitização e Centrad Participações, on November 6, 2013. ------------------------------------------------------

 ------------------------------------------------------------

**OP CENTRO ADMINISTRATIVO S.A. –** EM RECUPERAÇÃO JUDICIAL ---





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 134

Shares Issued by CENTRAD HOLDING S.A., a closely-held corporation, with registered office at Q QS 1, Rua 210, nº 34, Lote 34 TR 3, Sala 1010 C, Áreal (Águas Claras), City of Brasília, Federal District, CNPJ under nº 18.569.416/0001-90. -------------------------------------

-------------------------------------------------------------

**ODEBRECHT S.A. -** EM RECUPERAÇÃO JUDICIAL ------------------ ODEBRECHT ENERGIA E INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 20.541.146/0001-51. -------------------------------------

OCYAN PARTICIPAÇÕES S.A., a closely-held corporation, with registered office at Avenida Cidade Lima, 86 - salas 501 e 502, City and State of Rio de Janeiro, CNPJ under nº 23.075.178/0001-05.11 -------------------------------------

-------------------------------------------------------------

11 Statutory lien constituted on the shares, pursuant to the terms of the *Private Instrument of Constitution of Guarantee – Statutory Lien over Shares Issued by Ocyan Participações S.A. under Suspensive Condition*, entered into by Odebrecht S.A. - EM RECUPERAÇÃO JUDICIAL, Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários, BNDES Participações S.A. and, as consenting intervening parties, Odebrecht Energia Participações S.A. - EM RECUPERAÇÃO JUDICIAL, Ocyan Participações S.A., on May 23, 2018. ---------------------------------------------

-------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 135

ODEBRECHT CORRETORA DE SEGUROS LTDA, with registered office at Av Luis Viana, 2.841, Edifício Odebrecht, Paralela, Salvador, BA, CEP 41730-900, Brazil, CNPJ No. 14.588.248/0001-20. --------------------------------------

ODEBRECHT ENGENHARIA E CONSTRUÇÃO S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 19.821.234/0001-28 -----------------------

Shares Issued by OPI S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Part A, Butantã, City and State of São Paulo, CNPJ No. 17.337.615/ 0001-00. ---------

ODEBRECHT UTILITIES S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14° andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 17.382.530/0001-44. --------------------------------------

ODEBRECHT AMBIENTAL PARTICIPAÇÕES S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 19° andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 19.014.214/0001-45. -----------------------

Issue of Shares of EDIFÍCIO ODEBRECHT RIO DE JANEIRO S.A. (EORJ) - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Av. Cidade de Lima, n° 86, Santo Cristo, City and state of Rio de Janeiro, CNPJ under n° 19.432.176/ 0001- 40.12 ---------------------

----------------------------------------------------------

12 Pledge on shares, pursuant to the terms of the *Private Instrument of Pledge of First-Degree Shares under*





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 136

*Guarantee and Other Covenants*, entered into between OP Gestão de Propriedades S.A. - EM RECUPERAÇÃO JUDICIAL, OR Empreendimentos Imobiliários e Participações S.A., Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda. and Edifício Odebrecht R.J. - EM RECUPERAÇÃO JUDICIAL, on September 26, 2018, as amended. -- ----------------------------------------------------------

Shares Issued by OP GESTÃO DE PROPRIEDADES S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Part E, Butantã, City and State of São Paulo, CNPJ No. 20.620.396/ 0001-87. ------------------------------------

OSP INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 9o andar, Part I, Butantã, City and State of São Paulo, CNPJ No. 22.606.673/ 0001-22. ---------

ODEBRECHT TRANSPORT S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 8° andar, Parte I, Butantã, City and State of São Paulo, CNPJ No. 12.251.483/0001-86. --------------------------------------

ODB INTERNATIONAL CORPORATION - EM RECUPERAÇÃO JUDICIAL, Company existing and organized under the laws of the Bahamas, with registered office at George Street, n° 4, Mareva House, Nassau, registered under n° 138020. ---------

Shares issued by ODEBRECHT DEFESA E TECNOLOGIA S.A., a private limited liability company, with registered office at Avenida Cidade Lima, 86 - sala 302, City and State of Rio de Janeiro, CNPJ No. 13.688.755/0001-72 ---------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 137

MECTRON ENGENHARIA INDÚSTRIA E COMÉRCIO S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Av. Brigadeiro Faria Lima, n° 1.389 e 1.399, Parque Martim Cererê, City of São José dos Campos, State of São Paulo, CNPJ n° 65.481.012/ 0001-20. ----------
Shares Issued by OR S.A, a closely-held corporation, with registered office at Rua Lemos Monteiro, n° 120, 18° andar, Parte L, Butantã, City and State of São Paulo, CNPJ n° 10.917.143/0001-16 ------------------------------------
ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Av. Luís Viana Filho, n° 2.841, Sala Enseada, Paralela, Cidade de Salvador, Estado da Bahia, CNPJ n° 17.851.495/ 0001-65. --------------------------------------
ODEBRECHT PROPERTIES E INVESTIMENTOS S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Part H, Butantã, City and State of São Paulo, CNPJ No. 21.264.618/ 0001-39. ---------------------
Shares Issued by FAZENDAS REUNIDAS VALE DO JULIANA S.A, located at ROD JULIANA, S/N, KM FINAL Bairro ZONA RURAL, City of Igrapiúna, State of Bahia, CNPJ No. 96.788.856/0001-42. --------------------------------------
Issue of Shares of ODB INFRA-ESTRUTURAS LOGISTICAS SGPS, S.A., located at Lagoas Park Edifício 8 2°, 2740-268, Porto Salvo Oeiras, Lisbon - Portugal, with Tax Identification Number 508556376. ------------------------
Issue of Shares of CONDOR PARTICIPAÇÕES S.A., with registered office at Rua Lemos Monteiro, 120, 16o andar,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 138

Parte D, Butantã, City and State of São Paulo, CNPJ No. 15.786.709/0001-31. ---------------------------------------

Shares Issued by BAHIA AMIDO S.A, a closely-held corporation, with registered office at ROD BR 101, S/N, KM 279 Neighborhood ZONA RURAL – City of Laje - Bahia - BA, CNPJ nº 11.676.185/0001-75. ------------------------------

Shares of the Capital Stock of OAI IMPORTADORA DE COMBUSTÍVEIS LTDA, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 13o andar, Parte C, Butantã, City and State of São Paulo, CNPJ No. 28.788.371/0001-07. ---------------------------------------

----------------------------------------------------------

**OSP INVESTIMENTOS S.A. –** EM RECUPERAÇÃO JUDICIAL ----------

Shares Issued by ATVOS AGROINDUSTRIAL INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 18° andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 11.218.273/0001-23. ---------------------------------------

ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 18° andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 10.904.193/0001- 69.13 ------------------------------------

Shares Issued by BRASKEM S.A., a publicly-held corporation, with registered office at Rua Lemos Monteiro, n° 120, 22° andar, Parte L, Butantã, City and State of São Paulo, CNPJ n° 42.150.391/0001-7014. ----------------------

----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 139

13 Statutory lien of the shares constituted pursuant to the terms of the *Private Instrument of Constitution of Guarantee – Statutory Lien of Shares Issued by Odebrecht Serviços e Participações S.A. and Other Covenants*, entered into by and between OSP Investimentos S.A. - EM RECUPERAÇÃO JUDICIAL, Odebrecht S.A. - EM RECUPERAÇÃO JUDICIAL, Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda, Banco do Brasil S.A., Banco do Brasil S.A - New York Branch, Banco Bradesco S.A., Banco Bradesco S.A. - Grand Cayman Branch, Itaú Unibanco S.A., Banco Itaú BBA S.A., Banco Santander (Brasil) S.A., Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários and BNDES Participações S.A., on April 13, 2018, as amended. ---------------------------------------
14 Constituted statutory lien on the preferred shares, pursuant to the terms of the *Private Instrument of Constitution of Guarantee – Statutory lien of Preferred Shares issued by Braskem S.A. and Other Covenants*, executed by and between Odebrecht Serviços e Participações S.A. - EM RECUPERAÇÃO JUDICIAL, Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda, Banco do Brasil S.A., Banco do Brasil S.A - New York Branch, Banco Bradesco S.A., Banco Bradesco S.A. - Grand Cayman Branch, Itaú Unibanco S.A., Banco Itaú BBA S.A., Banco Santander (Brasil) S.A., Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários and BNDES Participações S.A., on November 27, 2013, as amended. *Statutory lien on the common shares, pursuant to the terms of the Private*





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 140

*Instrument of Constitution of Guarantee - Statutory lien on Common Shares Issued by Braskem S.A. and Other Covenants*, entered into by Odebrecht Serviços e Participações S.A. - EM RECUPERAÇÃO JUDICIAL, Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda, Banco do Brasil S.A., Banco Bradesco S.A., Banco Bradesco S.A. - Grand Cayman Branch, Itaú Unibanco S.A., Banco Itaú BBA S.A., Banco Santander (Brasil) S.A., Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários and BNDES Participações S.A., on September 24, 2018, as amended. -----------------------------------------
-----------------------------------------------------------

**OSP SERVIÇOS E PARTICIPAÇÕES S.A. -** EM RECUPERAÇÃO JUDICIAL -------------------------------------------------
-----------------------------------------------------------

| | |
|---|---|
| HYDRAULIC CRAWLER EXCAVATOR KOMATSU PC-600-LC-8 | 55222 |
| HYDRAULIC CRAWLER EXCAVATOR KOMATSU PC-600-LC-8 | 55221 |
| TOWER CRANE LIEBHERR 98.3-HC (STD) | 121/039 |
| TOWER CRANE LIEBHERR 98.3-HC (STD) | 121/042 |
| HYDRAULIC JUMBO TAMROCK MAXI HS-305T | 93D863A |
| Manitowoc Max-Spander (M-250) Implements | 2503004 |
| Manitowoc X-Pander Implement (M-250) | 2502002 |
| SCANIA P124 CB6X4 NZ 420 Truck with Dump Truck soil-rock 16M3 | 9BSP5X4B083615498 |
| Scania P420 CB6X4 NZ Truck with 16M3 with Dump Truck soil/rock | 9BSP6X40083622751 |
| Scania P420 CB6X4 NZ Truck with 16M3 with soil-rock Dump Truck | 9BSP6X40083622878 |
| Scania P420 CB6X4 NZ Truck with 16M3 soil-rock Dump Truck | 9BSP6X400B3674538 |
| Volvo L220G Tire Loader | VCEL220GL00009113-PA |
| SCANIA P124 CB6X4 NZ 420 Truck with 16M3 soil/rock dump truck | 9BSP6X4B073613700 |
| SCANIA P124 CB6X4 NZ 420 Truck with 16M3 soil/rock Dump Truck | 9BSP6X4B073613741 |
| Scania P420 CB6X4 NZ Truck with 16M3 soil-rock Dump Truck Floor/Road | 9BSP6X40083622872 |
| Scania P420 CB6X4 NZ Truck with 16M3 soil-rock Dump Truck | 9BSP6X40083622881 |
| FORD C-1517 4X2 Truck with 9000LT Fuel Tank | 9BFXCE5U47BB84588 |



PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 141

| | |
|---|---|
| FORD C-1717 4X2 Truck with 5500LT Hydraulic Train | 9BFYCE6U4BBB78706 |
| VOLKSWAGEN 31260E 6X4 Truck with 20000LT Water Tank | 9BWPB82U78R813744 |
| Self-Loading Mobile Concrete Self-Loader. Fiori mod. DB460SL | BF08H0293 |
| JLG 1350SJP Telescopic Spear Platform | 300145722 |
| FORD C-2932 6X4 Truck with 20000LT Water Tank | 9BFZCEKY58BB02966 |
| Hydraulic Foundation Hammer, Junttan Make, Model HHK 14S | 21207 |
| FORD C-1517 4X2 Truck with 9000LT Fuel Tank | 9BFXCE5U77BB98582 |
| FORD Truck C-1717 4X2 with 6000LT Hydraulic Train | 9BFY CE6U09BB15662 |
| Mercedez-Benz LS-2635/40 6X4 Mechanical Horse | 9BM388368WB172667 |
| CUMMINS C400 D6 Generating Group 4 - 500KVA | J07Q006413 |
| Terex RT-775 Telescopic Tire Crane | 14937 |
| Crawler Crane, Manitowoc Brand, Model 4000W | 40427 |
| RODO LINEA Carry All Semi-Trailer 03EIXOS-45T | 943PRA163A1004825 |
| JLG 460SJ Telescopic Spear Platform | 300126297 |
| JLG 1350SJP Telescopic Spear Platform | 300145711 |
| GENIE/TEREX Z-80/60 4X4 Articulated Spear Platform | Z8011-3215 |
| GENIE/TEREX Z-135/70 4X4 Articulated Spear Platform | Z13511-1492 |
| GENIE/TEREX Z-135/70 4X4 Articulated Spear Platform | Z13511-1491 |
| GENIE/TEREX Z-135/70 4X4 Articulated Spear Platform | Z13511-1534 |
| MB Truck Atego 1725/42 4x4 Hyva Crane HB 170E3+2Man and Bodywork | 9BM958078CB835882 |
| VW 31.260E 6x4 Truck with  BR 400 Telescopic Crane | 9BWPB82U38R849298 |
| Semi-Trailer Straight Plank 03 axles, 45t, Krone | 9AU181430W1032226 |
| 1725/42 4x4 MB Atego Truck with PKB 15,500, Cabin and Bodywork | 9BM9580789B635886 |
| 1725/42 4x4 MB Truck Atego with PKB 15,500, Cabin and Bodywork | 9BM9580789B636302 |
| 1725/42 4x4MB Atego Truck with PKB 15,500 and bodywork | 9BM9580789B636409 |
| 1725/42 4x4 Hyva Crane HB 170E3 MB Truck Atego +2Man and Bodywork | 9BM958078CB846522 |
| Ford C1317 4x2 Truck with PKB 6500 Crane, Cabin and Metallic Bodywork | 9BFXCE2U05BB54876 |
| Ford C2628 6x4 Truck with PKK 23000 Crane and Metallic Bodywork | 9BFZCEEX89BB23900 |
| Ford C2628 6x4 Truck with PKK 23000 Crane and Metallic Bodywork | 9BFZCEEX59BB23904 |
| Ford C2628 6x4 Truck with PKK 23000 Crane and Metallic Bodywork | 9BFZCEEX99BB23906 |
| C-2628E 6X4 Ford Truck with PK23000 and bodywork | 9BFZCEEX49BB23909 |
| C-6332E 6x4 Ford Truck with 20,000L Gascom Water Tank | 9BFZCA9Y6BBB66326 |
| C-6332E 6x4 Ford Truck with 20,000L Gascom Water Tank | 9BFZCA9Y2BBB72527 |
| C-6332E 6x4 Ford Truck with 20,000L Gascom Water Tank | 9BFZCA9Y0BBB79508 |
| C-6332E 6x4 Ford Truck with 20,000L Gascom Water Tank | 9BFZCA9Y0BBB82084 |
| VW 31.260E Truck 6x4 with BR 400Telescopic Crane | 9BWPB82U68R831281 |
| VW 31.260E 6x4 Truck with BR 400 Telescopic Crane | 9BWPB82U38R831948 |



TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL
PAULO FERNANDO SANTOS DE LACERDA



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 142

| | |
|---|---|
| VW 31.260E 6x4 Truck with BR 400 Telescopic Crane | 9BWPB82U48R832235 |
| Scania P420 A 6x4 Mechanical Horse | 9BSP6X400936554 |
| Scania P420 A 6x4 Mechanical Horse | 9BSP6X40093639020 |
| Scania G420 A 6x4 Mechanical Horse | 9BSG6X400B3688652 |
| Scania G420 A 6x4 Mechanical Horse | 9BSG6X400B3688740 |
| Telescopic Tire Crane, Terex-Demag, AC 250-1 | 85046 |
| Terex Tire Telescopic Crane, RT 230 Year 2008 | 15795 |
| Terex Tire Telescopic Crane, RT 230 Year 2008 | 16371 |
| Terex Tire Telescopic Crane, Model RT555-1 | 14478 |
| Terex Tire Telescopic Crane, RT 665 Year 2008 | 16109 |
| Terex Tire Telescopic Crane, RT 665 Year 2008 | 16346 |
| Terex Tire Telescopic Crane, RT 780 Year 2011 | 1T9RT700JBW160413 |
| Terex Tire Telescopic Crane, RT 780 Year 2011 | 1T9RT700VBW160415 |
| Terex Tire Telescopic Crane, RT 780 Year 2011 | 1T9RT700CBW160445 |
| Terex Tire Telescopic Crane, RT 780 Year 2011 | 1T9RT700PBW160456 |
| Telescopic Tire Crane Grove, RT 890E Year 2011 | 231853 |
| Grove Tire Telescopic Crane, RT 890E | 232288 |
| Grove Tire Telescopic Crane, RT 890E | 232127 |
| Grove Tire Telescopic Crane, RT 890E | 232255 |
| Tower crane Liebherr model 195.3-HC | 125/005 |
| Tower crane Liebherr model 195.3-HC | 125/004 |
| Crawler Crane, Manitowoc Brand, Model 4000W | 40451 |
| Crawler Crane, Manitowoc Brand, M250T Model | 2501031 |
| Crawler Crane, Manitowoc Brand, M250T Model | 2501086 |
| Crawler Crane, Manitowoc Make, Model 4100W- S2 | 41895 |
| Manitowoc crawler crane, model 4600 - S4, year 1980 | 460054 |
| Crawler Crane, Terex brand, model HC 165 | AC-4382 |
| Low Bed Plank Semi-Trailer, 03 axles, 45t, Facchini | 94BC148388V017355 |
| Carry All Rodolinea Semi-Trailer 03E-45T | 943PRA163B1006171 |
| Carry All Randon 03E-45T Semi-Trailer | 9ADC145389M281255 |
| Facchini Dry Cargo Semi-Trailer 02E-24T | 94BA125299V023930 |

----------------------------------------------------------



**KIEPPE  PARTICIPAÇÕES  E  ADMINISTRAÇÃO  LTDA.  –** EM
RECUPERAÇÃO JUDICIAL -------------------------------------
Lot of own plot of land nº 05 of block VI with area of
675,00m ² of the of Caminho das Árvores development,



**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 143

registered in the municipal real estate register under n°
239.302, in the sub-district of Amarilina, urban area of
this capital, 19.00m front facing street J; 27.00m deep;
30.00 from the right side with the lot n° 06 and 30.00
left side with lot n° 04, both located in block 06, said
lot is located on the odd side of the yard and 67;00m away
from the next corner. Registration 45.27315 ---------------
Own plot of land no. 06 of block VI with area of 675.00 of
the plot of land caminho das árvores, in the Sub-district
of Amarilina, urban area of this capital, registered in
the real estate census under No. 239.303, 19.00m on the
front facing Rua J; 27.00m on the rear with land of
agrícola contendas s/a; 30.00 on the right side with lot
No. 07 and 30.00 on the left side with lot No. 05, both
located in court 06, said lot is located on the odd side
of the location and  86.00 yards away from the next
corner. Registration 36.23416 ----------------------------
Own lot of land No. 07 of block VI with area of 675.00m²
of the caminho das arvores development, registered in the
municipal real estate register under No. 239,304, in the
sub-district of Amarilina, urban area of this capital,
19.00m front with Rua J; 27.00m on the rear; 30.00 on the
right side with plot of land No. 08 and 30.00 on the left
side with plot of land No. 06, both located in block 06,
said plot is located on the odd side of the yard and
105.00m away from the next corner. Registration 44.92217 --
------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 144

15-18 Mortgages on real estate through the following transactions: (i) Bank Credit Note with Mortgage and Personal guarantees No. 2016034530104061000016, signed on June 22, 2016 by Kieppe Participações e Administração Ltda. – EM RECUPERAÇÃO JUDICIAL, with Banco do Estado do Rio Grande do Sul S. A. – BANRISUL, amended on three occasions, the last being by the 3rd Amendment, executed on December 19, 2018; (ii) Bank Credit Note with Mortgage and Personal Guarantee No. 2017034530104081000004, executed on September 6, 2017 pela Kieppe Participações e Administração Ltda. – EM RECUPERAÇÃO JUDICIAL, with Banco do Estado do Rio Grande do Sul S. A. – BANRISUL, amended on three occasions, the last by the 3rd Amendment, executed on March 20, 2019. ------------------------------
16 *(Blank)* -------------------------------------------------
17 *(Blank)* -------------------------------------------------
 -----------------------------------------------------------
Own Lot of land n° 04 of block VI with area of 540,00m² of the plot of the caminho das árvores development, registered in the municipal real estate register under n° 239.301, in the Sub-district of Amarilina, urban area of this capital, through 18,00m on the front with the Rua J; 18,00m on the rear; 30.00 on the right side with lot n° 05 and 30,00 on the left with the lot n° 03, both located in block 06, said lot is located on the odd side of the yard and 49.00m away from the next corner. Registration number 38.53918 house n° 320, door, and 239.300 of registration in the Real Estate Register C.I., consisting





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 145

of 2 floors, that is, ground floor, with a room, three rooms, one being a suite, two balconies and one toilet, and the superior floor, with garage, one room, one toilet, one balcony, kitchen, servants' area, two rooms and one toilet of employee totaling constructed area of 227.56m ², in the ow plot of land n° 03 of block VI of the of Caminho das Árvores development, with 540,00m ², measuring 18,00 on the front to Rua J, 18.00 on the rear, 30.00 on the right side with plot 04, 30.00 on the left with plot 02. The plot is located on the odd side of the location and 31.00m away from the next corner. Registration 10.825 (19) house n° 338 from the door and 239.299-2 of registration in the C.I., consisting of two balconies, living, dining-room, two bedrooms, toilet, kitchen, bedroom and servants' toilet, servants' area, totaling constructed area of 301,00m², in plot of own land n° 03 of block VI of the of Caminho das Árvores development, with 540.00m², measuring 18.00 on the front to Rua J, 18.00 on the rear, 30.00 on the right side with plot 01, 30.00 on the left side with plot 03. the plot is located on the odd side of the yard and 31.00m away from the next corner. Registration 53.22820 -------------------------------------------------
 -------------------------------------------------------
18 *(Blank)* -------------------------------------------------
19 *(Blank)* -------------------------------------------------
20 *(Blank)* -------------------------------------------------
 -------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 146

Apartment n° 002, door, and municipal registration n° 333.468-Blade 01, of the undertaking called "Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, development of lots "Caminho das Arvores", in the sub-district of Amaralina, of this capital, comprised of living-room, balcony, circulation, three bedrooms, one being a suite, two toilets, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and 127.81m² of total area and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E Alameda das Espatódias, of the aforementioned development, measuring 115.90m on the front, following the curb of the existing street behind the newspaper "Jornal A Tarde", and, in bend following the curb of Rua E of the development, 30.00m on the right side, on the boundary with area B-1;25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E of the aforementioned development and, 137.92m² in five segments from point F to point L, on the rear, on the boundary with the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the caminho das árvores development. ---------------------------------------------
Apartment n° 102, door, and municipal registration n° 333.470-8-Blade 01, of the undertaking called "Edifício Solar caminho das árvores" (Solar Building Tree Path) located at Rua 26, remnant from Parque Jockey Club, 66, in





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 147

the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and garage space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2 with 6,539.00m², located at Rua E Alameda das Espatódias, caminho das árvores development. ------------------------------------- Apartment nº 202, door, and municipal registration nº 333.472, Blade 01, of the undertaking called "Edifício Solar caminho das arvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated area B2, with 6,539m², located at Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, followed by the curb of the existing Street behind "Jornal A Tarde", 30.00m on the right side, on the limit with area B-1; 25.12m in bend and 81.00m straight, totaling 106.12m², on





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 148

the left side following the curb of Rua E, of caminho das arvores development and, 137.92m² in five segments from point F to point L, on the rear bordering the rear of Lots 1.2.3.4.5.6 and 7 of the caminho das árvores development. - Apartment n° 001 door and municipal registration n° 333.473, Blade 02, of the undertaking "Solar Caminho das Árvores" located at Rua 26, remnant from Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117,62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated area B2, with 6,539m², located in Rua E, Alameda das Espatódias, of the Caminho das Árvores Development, measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, 30.00m on the right side, on the border with area B-1; 25.12m in bend and 81.00m straight line, totaling 106.12m², on the left side following the curb of Rua "E" of Caminho das Árvores Development and, 137.92m² in five segments from point F to point L, on the rear bordering with rear of Lots 1,2,3,4,5,6 and 7 of Caminho das Árvores Development. ----- Apartment n° 002 door and municipal registration n° 333.474 Blade 02, of the undertaking "Edificio Solar Caminho das Árvores" located at Rua 26, remnant from the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 149

Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ------------------------------------
Apartment No. 101 door and 333.475 registration in the real estate register, part of the building called Edificio Solar Caminho das Árvores- blade 02, located at Rua E, Alameda das Espatódias, in the Caminho das Árvores development, in the sub-district of Amaralina urban area of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, servants' room and toilet, vertical circulation and main and servants' hall, said apartment also having a parking space, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.76m², with the coefficient 2.0061% this building built in the area of land with 6,539m² (six thousand five hundred and thirty nine square meters) called Area B-2 measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, 30.00m on the right side, at





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 150

bordering area B-1; 25.12m bend and 80.00m straight line, from point F to point L, on the rear of the border with the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. ------------------------------------- Apartment n° 201, door, and municipal registration n° 333.477-5 Blade 02, of the undertaking " Edifício Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Arvores Development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartódias, Caminho das Árvores development. ------------- Apartment n° 202, door, and municipal registration n° 333.478-3 Blade 02, of the undertaking "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet and a parking space in the open parking





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 151

lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development, bordering lots 1.2.3.4.5.6 and 7 of Caminho das Árvores development. Apartment n° 001, door, municipal registration n° 333.479 Blade 03, of the undertaking "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ------------------------------------- Apartment n° 002, door, and municipal registration n° 333.480-5 Blade 03, of the undertaking "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 152

pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6.539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ------------------------------------
Apartment nº 101, door, and municipal registration nº 333.481 Blade 03, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, garage space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, called B2 area, with 6,539m², located at Rua E - Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing street behind the "Jornal A Tarde", in a bend following the curb of Rua E, Caminho das Árvores development, 30.00m on the right side, bordering area B-1; 25.12m in a bend and 81.00m straight line, totaling 106.12m², on the left side following the curb of Rua E, Caminho das Árvores development and, 137.92m² in five segments from point F to point L, rear bordered by the





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 153

rear of lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. ------------------------------------- Apartment n° 102, door, and municipal registration n° 333.482-1 Blade 03, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development. -------------- Apartment n° 201, door, and municipal registration n° 333.483 Blade 03, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², Total area of 129.83m² and ideal fraction





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 154

equivalent to 136.949m² of the total area of own land designated area B-2, dismembered from the largest portion of the area of 12,000.00m², measuring 115.90m on the front of the boundary with lots 1.2.3.4.5.6 and 7 of block VI, of the Caminho das Árvores development; 30.00m on the right side on the boundary with area B-1; 106.12 on the left side on the boundary with Rua E of the Caminho das Árvores development, with 6,539.00m². --------------------- Apartment n° 202, door, and municipal registration n° 333.484 Blade 03, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, servants' room and toilet and garage space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development, bordering lots 1.2.3.4.5.6 and 7 of the Caminho das Árvores development. ---------------------------------------------- Apartment No. 001, door, and 333.485-6 of registration in the real estate register, part of the building called "Solar Caminho das Arvores", blade 04, located at Rua 26,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 155

current Alameda das Espatódeas, remnant from Parque Jockey Clube, 66, Caminho das Árvores, in the sub-district of the Amaralina urban area, in this capital, consisting of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, room and toilet, vertical circulation and main and servants' hall, with parking space for the apartment, with private area of 117.62m2, Common area 10,19m² and total area of 127,81m² and ideal fraction of 134,790m², of its respective land designated by Area B-2, measuring in all 6.539,00m², located Rua E, Alameda das Espatódeas, Caminho das Árvores development, portion of land in the Amaralina sub-district, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and in the bend following the curbof Rua E, of said Caminho das Árvores development, 30.00m on the right side, on the boundary with area B-1; 25.12m in bend and 81.00m straight line, totaling 106.12m on the left side following the curb of Rua E of the same development and 137.92m in five segments from point F to point L, to the rear of point F to point L, to the rear of the boundary with lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. --------------------------
Apartment n° 002, door, and municipal registration n° 333.486-4 Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 156

three bedrooms, one suite, two toilets, internal circulation, living, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located to Rua E, Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right, bordering area B-1; 25.12m on the bend and 81.00m on a straight line, totalizing 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. - Apartment n° 101, door, and municipal registration n° 333.487, Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 119,47m2, Common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated  area B2, with 6,539m², located Rua E





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 157

Alameda das Espatódias, of the Caminho das Árvores development, previous stretch comprising the Brotas sub-district, measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right side, bordering area B-1; 25.12m in bend and 81.00m straight-line, totaling 106.12m², on the left side following the curb of Rua E, from the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the of Caminho das Árvores development. -----------------------
Apartment nº 102, door, and municipal registration nº 333.488-0 Blade 04, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E of Espatódias, Caminho das Árvores development. -------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 158

Apartment no. 201, door, and municipal registration no. 333.489, Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 119.47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated area B2, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development, stretch previously measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right, on the boundary with area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ------------- Apartment n° 202, door, and municipal registration n° 333.490, Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 159

three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, with 6,539m², located Rua E, Alameda das Espatódias, of Caminho das Árvores development, stretch previously measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left following the curb of Rua E of the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ------------------ Apartment n° 001, door, and municipal registration n° 333.491 Blade 05, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 160

127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located at Rua E, Alameda das Espatódias, of Caminho das Árvores development, bordering lots 01, 202, 03, 04, 05, 06 and 07 of the Caminho das Árvores development. -------------------
Apartment n° 002, door, and municipal registration n° 333.492 Blade 05, of the undertaking called "Edificio Solar Caminho das Árvores" located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the Amaralina sub-district, of this capital, Caminho das Árvores development, comprised of three bedrooms, one being en-suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, divided from the largest portion of the area of 12.00m², 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering lots 01 to 07 of block VI of said Caminho das Árvores development, 30.00m on the right bordering area B-1, 106.12m on the left bordering Rua E of said development, with the area of 6,539.00m². ----------------------------------------------
Apartment n° 101, door, and municipal registration n° 333.493, Blade 05, of the undertaking called "Edificio Solar Caminho das Árvores", located at Rua 26, remnant





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 161

from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as B2 area, with 6,539m², located Alameda das Espatódias, of the Caminho das Árvores Development, measuring 115.90m on the front, following the curb the existing street behind Jornal A Tarde, 30.00m on the right side, bordering the area B-1; 25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E, the Caminho das Árvores Development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores Development. -- Apartment n° 102, door, and municipal registration n° 333.494-5 Blade 05, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 162

area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Esparto Deas, Caminho das Árvores development. --------------------
Apartment n° 202, door, and municipal registration n° 333.496 Blade 05, of the undertaking called "Edificio Solar caminho das árvores situated at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the sub-district of Amaralina, of this capital, Caminho das Árvores development, comprised of three bedrooms, one en-suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²; namely, 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m², with the area of 6.539,00m², on the boundary with lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------------------
Apartment n° 001, door, and municipal registration n° 333.497 Blade 06, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 163

three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located to Rua E, Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ------------------------------------- Apartment n° 002, door, and municipal registration n° 333.498-8 Blade 06, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 164

of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. -------------------------------------
Apartment n° 101, door, and municipal registration n° 333.499,-6, Blade 06, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, separated from the largest portion of area of 12.000m², located at Rua E alameda das Espatódeas, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30,00m on the right, on the boundary with the area B-1; with 6.539m², located Rua E Alameda das Espatódias, of the Caminho das Árvores development. ----------------------------------------------
Apartment n° 102, door, and municipal registration n° 333.500-3, Blade 06, of the undertaking called "Edificio Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 165

capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, with 6,539m², located at Alameda das Espatódias, of the Caminho das Árvores Development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right side, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left side following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to the point L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ------------------- Apartment n° 201, door, and municipal registration n° 333.501-1 Blade 06, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with a private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 166

equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development,. -------------- Apartment nº 202, door, and municipal registration nº 333.502, Blade 06, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development, stretch previously measuring 115.90m on the front, followed by the curb of the existing street behind "Jornal A Tarde", and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right side, bordering the area B-1; 25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. --------------





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 167

Apartment n° 001, door, and municipal registration n° 333.503 Blade 07, of the undertaking called "Edifício Solar Caminho das Árvores located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the sub-district of Amaralina, of this capital, Caminho das Árvores development, comprised of three bedrooms, one en-suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, room and servants' toilet; parking space in the open parking, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²: 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering the rear of lots 01 to 07 of  block VI of said Caminho das Árvores development, 30.00m on the right bordering area B-1, 106.12m on the left bordering Rua E of the mentioned development, with area of 6,539.00m², on the boundary with lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. ---------------------------------------------
Apartment n° 002, door, and municipal registration n° 333.504 Blade 07, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the Amaralina sub-district, of this capital, Caminho das Árvores development, comprised of





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 168

three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²; namely, 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering lots 01 to 07 of the above mentioned Caminho das Árvores development, 30.00m on the right side on the boundary of area B-1, 106.12m on the left side bordering Rua E of the above mentioned development, with area of 6,539.00m², on the boundary with the lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ----------------------------------
Apartment n° 101, door, and municipal registration n° 333.505 Blade 07, of the undertaking called " Edifício Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, at the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one en-suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 169

designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development,. ------------- Apartment n° 102, door, and municipal registration n° 333.506 Blade 07, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with a private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development,. ------------- Apartment n° 201, door, and municipal registration n° 333.507 Blade 07, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 170

area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartodeas, of the Caminho das Árvores development, bordering lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. ----------------------------------------------
Apartment n° 202, door, and municipal registration n° 333.508, Blade 07, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, separated from the largest portion of area of 12.000m², located in Rua E, Alameda das Espatódias, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30,00m on the right, on the boundary with the area B-1; with 6.539m², located Rua E, Alameda das Espatódias, of the Caminho das Árvores development, stretch previously (sic). --------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 171

Apartment n° 001, door, and municipal registration n° 333.509 Blade 08, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ------------------------------------
Apartment n° 002, door, and municipal registration n° 333.510 Blade 08, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located to Rua E, Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 172

following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totalizing 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to L, on the rear bordering the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------------------------------- Apartment n° 101, door, and municipal registration n° 333,511 Blade 08, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with a private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartodeas, Caminho das Árvores development,. ------------ Apartment n° 102, door, and municipal registration n° 333.512 Blade 08, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 173

capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartodeas, of Caminho das Árvores development, limited with lots 1,2,3,4,5,6 and 7 of the of Caminho das Árvores development. ----------------------------------------------- Apartment n° 201, door, and municipal registration n° 333.513 Blade 08, of the undertaking called "Edificio Solar caminho das árvores" located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the Amaralina sub-district, of this capital, Caminho das Arvores development, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and contract toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²; namely, 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering lots 01 to





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 174

07 of the above mentioned Caminho das Árvores development, 30.00m on the right side on the boundary of area B-1, 106.12m on the left side on the boundary with Rua E of the above mentioned development, with area of 6,539.00m², on the boundary with the lots 1, 2, 3, 4, 5, 6 and 7 of the plot of the Caminho das Árvores development. --------------
Apartment n° 202, door, and municipal registration n° 333.501-1, Blade 08, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, separated from the largest portion of area of 12.000m², located in Rua E, Alameda das Espatódias, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30,00m on the right, on the boundary with the area B-1; with 6.539m², located Rua E, Alameda das Espatódias, of the aforementioned Caminho das Árvores development. -------------------------------------
Units of the capital stock of FRVJ PATRIMONIAL LTDA, limited business y company, with registered office at





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 175

Avenida Tancredo Neves, 1672, Edifício Catabas Empresarial, 5° andar, Caminho das Árvores, Salvador, State of Bahia, taxpayer identification number CNPJ 21.027.346/0001-53. ---------------------------------------
--------------------------------------------------------

**MECTRON ENGENHARIA, INDÚSTRIA E COMÉRCIO S.A. –** EM RECUPERAÇÃO JUDICIAL --------------------------------------
Property located at Rua Ipê Roxo, n° 300, Distrito Industrial, Jambeiro -SP, and registered in the real estate register of the district of Caçapava -SP, under number 2122521 --------------------------------------------
Property located at Avenida Brigadeiro Faria Lima, n° 1399, quadra 1, parque residencial flamboyant, São José dos Campos, and registered at the São José dos Campos -SP real estate register under number 158044 22 ---------------
Property located at Avenida Domingos Maldonado Campoy, lote 3, parque residencial flamboyant, São José dos Campos, and registered at the São José dos Campos -SP real estate register under number 8276423 ----------------------
Property located at Avenida Domingos Maldonado Campoy, lote 4, parque residencial flamboyant, São José dos Campos, and registered at the real estate and annexes register of São José dos Campos -SP, under registration number 82765 24 --------------------------------------------
Property located at Avenida Domingos Maldonado Campoy lote 2, parque residencial flamboyant, São José dos Campos, and registered at the São José dos Campos -SP real estate register under number 8276325 ----------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 176

Acauan Technical Project Collection ----------------------
------------------------------------------------------------
21 Statutory lien of land, pursuant to the terms of *Bank Credit Note No. 01-2619- 15*, issued by Mectron Engenharia, Indústria e Comércio S.A. – EM RECUPERAÇÃO JUDICIAL on December 18, 2015. ---------------------------------------

22 Statutory lien on the land, pursuant to the terms of *Bank Credit Note No. 01-2717-16*, issued by Mectron Engenharia, Indústria e Comércio S.A. - EM RECUPERAÇÃO JUDICIAL on July 1, 2016. --------------------------------

23 Statutory lien on the land, pursuant to the terms of *Bank Credit Note No. 01-2717- 16*, issued by Mectron Engenharia, Indústria e Comércio S.A. – EM RECUPERAÇÃO JUDICIAL on July 1, 2016. --------------------------------

24 Statutory lien on the land, pursuant to the terms of *Bank Credit Note No. 01-2717- 16*, issued by Mectron Engenharia, Indústria e Comércio S.A. - EM RECUPERAÇÃO JUDICIAL on July 1, 2016. --------------------------------

25 Statutory lien on the land, pursuant to the terms of *Bank Credit Note No. 01-2717-16*, issued by Mectron Engenharia, Indústria e Comércio S.A. - EM RECUPERAÇÃO JUDICIAL on July 1, 2016. --------------------------------
------------------------------------------------------------
**ANNEX 6.126** ------------------------------------------------

**List of Corporate Reorganization Transactions** -------------
**1.** Pursuant to the terms of the applicable law, the Companies under Reorganization are authorized to carry out the following corporate reorganization transactions: ------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 177

(i) **OEI:** OEP shall promote the assignment of assets and liabilities to OEI (specifically credit of debentures with ATVOS S.A. – EM RECUPERAÇÃO JUDICIAL and liabilities with BNDESPAR and OSPINV). -------------------------------------

(ii) **OEP:** OE may incorporate the OPE after the implementation of the restructuring contemplated in item (ii). ------------------------------------------------------

(iii) **OEI Acquisition:** ODB may acquire the OEI so that the debentures credits with ATVOS S.A. – EM RECUPERAÇÃO JUDICIAL. and the liabilities with BNDESPAR and OSPINV appear in ODB's balance sheet. ----------------------------

-----------------------------------------------------------

26 Annex 6.1 shall be adjusted to depend upon Petitioners who join the substantial consolidation. -------------------

-----------------------------------------------------------

**ANNEX 7.4.12**7 -----------------------------------------------

**Rules for Allocating Remittances of Funds to Petitioners** --

-----------------------------------------------------------

| Petitioners | Maximum Remittance Value (in BRL Million) |
|---|---|
| OPISA and OPI | 38,0 |
| OE and OEB | 13,0 |
| OPP and OP Administrative Center | 16,9 |
| MECTRON, OSP and OFL | 5,6 |
| Total | 73,4 |

-----------------------------------------------------------

The residual amount of BRL 6,600,000.00 (six million and six hundred thousand Brazilian reais) may be freely allocated among Petitioners to fulfill the obligations





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 178

contained     in     their     respective     court-supervised
reorganization plans. ------------------------------------
27   Annex   7.4.1   shall   be   adjusted   depending   on   the
Petitioners who join the substantial consolidation. -------
 ----------------------------------------------------------

**HAVING NOTHING FURTHER TO TRANSLATE FROM THIS DOCUMENT, I
SIGN IT BY SETTING MY RIGHT HAND AND AFFIXING MY GOLDEN
SEAL AND OFFICIAL STAMP. ----------------------------------
PAULO FERNANDO SANTOS DE LACERDA, Ph.D --------------------
SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER PERMIT
#243 -----------------------------------------------------
April 17, 2020. ------------------------------------------**



