Richard J. Cooper, Esq.
Luke A. Barefoot, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for the Foreign Representative of Odebrecht S.A. and affiliated debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Odebrecht S.A., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding | Chapter 15<br><br>Case No. 19-12731 (SMB)<br><br>(Jointly Administered) |

**NOTICE OF REVISED EXHIBIT A TO**
**NOTICE REGARDING THE STATUS OF THE BRAZILIAN RJ PROCEEDING**

**PLEASE TAKE NOTICE**, that on May 4, 2020, Marcelo Rossini, the foreign representative in the jointly-administered judicial reorganization proceeding of Odebrecht S.A. – Em Recuperação Judicial ("**ODB**") and its affiliated debtors in the above-captioned jointly administered Chapter 15 Cases, by and through his undersigned counsel, filed the *Notice Regarding the Status of the Brazilian RJ Proceeding* [ECF No. 28] (the "May 4th Notice").

**PLEASE TAKE FURTHER NOTICE** that attached to the May 4th Notice as Exhibit A was an amended version of ODB's reorganization plan (the "Amended ODB RJ Plan") along with a certified translation thereof.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit A is an updated version of the Amended ODB RJ Plan along with a certified translation thereof, which supersedes and replaces the version attached as Exhibit A to the May 4th Notice.

[1] The Debtors in the above-captioned jointly administered chapter 15 cases (the "Chapter 15 Cases") and the last four identifying digits of the tax number in the jurisdiction are: Odebrecht S.A., (Brazil – 01-72); Odebrecht Participações e Investimentos S.A., (Brazil – 01-00); Odebrecht Finance Ltd., (Cayman – 1323); and ODB International Corporation (Nassau - 8020 B).

Dated: May 7, 2020
New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ *Luke A. Barefoot*
Luke A. Barefoot

Richard J. Cooper, Esq.
Luke A. Barefoot, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
(lbarefoot@cgsh.com)

*Attorneys for the Foreign Representative of Odebrecht S.A. and its affiliated debtors*

# Exhibit A

## ODB Plan and Certified Translation



# PLANO DE RECUPERAÇÃO JUDICIAL

22 de abril de 2020

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**PLANO DE RECUPERAÇÃO JUDICIAL**

**(1) KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL**, sociedade de responsabilidade limitada, com sede no município de Salvador, estado da Bahia, na Avenida Tancredo Neves, nº 1672, Edifício Catabas Empresarial, 5º andar, sala 501, Caminho das Árvores, CEP 41.820-020, inscrita no CNPJ/ME sob o nº 04.215.837/0001-09 ("KIEPPE"); **(2) ODBINV S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luís Viana, nº 2841, Ed. Odebrecht, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 15.105.588/0001-15 ("ODBINV"); **(3) ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luis Viana, nº 2841, Ed. Odebrecht, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 05.144.757/0001-72 ("ODB"); **(4) ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte L, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 20.541.146/0001-51 ("OEI"); **(5) EDIFÍCIO ODEBRECHT RJ S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município do Rio de Janeiro, estado do Rio de Janeiro, na Avenida Cidade de Lima, nº 86, Santo Cristo, CEP 20.220-710, inscrita no CNPJ/ME sob o nº 19.432.176/0001-40 ("EORJ"); **(6) ODEBRECHT PROPERTIES INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, 120, 14º andar, parte H, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 21.264.618/0001-39 ("OPINV" e, em conjunto com as empresas listadas entre os itens **(1)** e **(5)**, "Recuperandas"), apresentam, nos autos do seu processo de recuperação judicial, autuado sob nº 1057756-77.2019.8.26.0100, em curso perante o D. Juízo da 1ª Vara de Falências e Recuperações Judiciais do Foro Central Cível da Comarca da Capital de São Paulo ("Recuperação Judicial"), o seguinte Plano de Recuperação Judicial ("Plano"), em cumprimento ao disposto no artigo 53 da Lei nº 11.101/2005 ("LFR").

**CONSIDERANDO QUE:**

**(i)** as Recuperandas são parte do grupo Odebrecht, um dos maiores conglomerados empresariais do País, com atuação nos setores de infraestrutura, óleo e gás, sucroalcooleiro, incorporação imobiliária, mobilidade e transporte, energia, defesa e serviços navais, reunindo diversas sociedades sob controle comum (direto ou indireto) da KIEPPE, com atividades

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

desenvolvidas em inúmeras localidades do território nacional e em 27 países correspondendo a uma das maiores empresas brasileiras, nos seus segmentos de atuação ("Grupo Odebrecht");

**(ii)** apesar de possuírem patrimônio e personalidade jurídica próprios, as Recuperandas atuam sob controle societário, operacional, financeiro e gerencial único, por meio de uma estrutura plurissocietária típica destinada a otimizar as sinergias financeiras, administrativas e operacionais, com vistas a aumentar a eficiência e maximizar os resultados, estando sob o mesmo comando e planejamento estratégico, com administração centralizada, e, em sua maioria, identidade de sócios e de administradores;

**(iii)** o Grupo Odebrecht nasceu com a exploração da atividade de construção civil, desenvolvida pela Construtora Norberto Odebrecht S.A., a qual se volta a atividades de engenharia e construção de grande porte, em que acumulou larga experiência e desenvolveu sofisticada tecnologia, a ponto de tornar-se a maior construtora da América Latina e uma das 30 maiores exportadoras de serviços no mundo;

**(iv)** a expansão do Grupo Odebrecht foi marcada por investimentos em outros segmentos, além do setor de engenharia e construção, a saber: (a) no setor petroquímico; (b) no setor de serviços de produção, importação, exportação e comercialização de produtos de agricultura em geral, especialmente a cultura, industrialização e comercialização da cana-de-açúcar para produção de açúcar, etanol e derivados; (c) no setor de construção naval offshore; (d) no desenvolvimento de empreendimentos imobiliários; (e) no setor energético; (f) no setor estratégico de defesa militar; e (g) em negócios de infraestrutura, incluindo participações em concessões de rodovias e hidroelétricas;

**(v)** para o exercício de suas atividades e para proporcionar o crescimento do Grupo Odebrecht, as Recuperandas estruturaram-se para viabilizar a captação de recursos junto ao mercado financeiro e de capitais brasileiro e internacional, por meio da contratação de financiamentos bancários, garantias bancárias, seguros-garantia e emissão de títulos de dívida no mercado local (debêntures) e no mercado internacional (*bonds*); para tanto, as Recuperandas atuaram de forma eficiente e coordenada, como financiadoras, garantidoras e contra-garantidoras das referidas operações financeiras;

**(vi)** diante das dificuldades financeiras enfrentadas, as quais foram agravadas por ataques de determinados credores, e com o intuito de assegurar a função social das Recuperandas, bem

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

como preservar os postos de trabalho e sua capacidade produtiva e de estímulo à economia, em 17.06.2019, foi apresentado pedido de Recuperação Judicial pelas Recuperandas em conjunto com **(1) OSP INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 9º andar, parte I, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 22.606.673/0001-22 ("OSP INV"); **(2) ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 9º andar, parte E, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 10.904.193/0001-69 ("OSP"); **(3) OPI S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte A, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 17.337.615/0001-00 ("OPISA"); **(4) ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 12º andar, parte C, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 07.668.258/0001-00 ("OPI"); **(5) ODB INTERNATIONAL CORPORATION**, sociedade existente e constituída de acordo com as leis de Bahamas, com sede em Nassau, na MB&H Corporate Services Ltd., Mareva House, 4 George Street, registrada sob o nº 138020 B ("ODBIC"); **(6) ODEBRECHT FINANCE LIMITED**, sociedade existente e constituída de acordo com as leis das Ilhas Cayman, com sede em George Town, Grand Cayman, Ilhas Cayman na South Church Street, PO Box 309GT, Ugland House, registrada sob o nº 181323 ("OFL"); **(7) ODEBRECHT ENERGIA S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 7º andar, parte B, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 13.079.757/0001-64 ("OE"); **(8) ODEBRECHT ENERGIA PARTICIPAÇÕES S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 7º andar, parte D, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 19.790.376/0001-75 ("OEP"); **(9) ODEBRECHT ENERGIA DO BRASIL S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 11º andar, parte D, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 13.439.547/0001-30 ("OEB"); **(10) ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luis Viana, nº 2841, Ed. Odebrecht, Sala Enseada, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 17.851.495/0001-65 ("OPE"); **(11) ODEBRECHT PROPERTIES PARCERIAS S.A. – EM**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte B, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 16.584.908/0001-20 ("OPP"); **(12) OP CENTRO ADMINISTRATIVO S.A. – EM RECUPERAÇÃO JUDICIAL,** sociedade por ações, com sede em Brasília, no Distrito Federal, na Rua 210, Quadra 01, Lote 34 TR 3, sala 1010 C, Areal (Águas Claras), CEP 71950-770, inscrita no CNPJ/ME sob o nº 19.128.923/0001-51 ("OP Centro Administrativo"); **(13) OP GESTÃO DE PROPRIEDADES S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 14º andar, parte E, CEP 05.501-050, inscrita no CNPJ/ME sob o nº 20.620.396/0001-87 ("OP Gestão"); e **(14) MECTRON – ENGENHARIA, INDÚSTRIA E COMÉRCIO S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede município de São José dos Campos, estado de São Paulo, na Avenida Brigadeiro Faria Lima, nº 1389, Parque Martim Cererê, E 1399, CEP 12227-000, inscrita no CNPJ/ME sob o nº 65.481.012/0001-20 ("MECTRON" e, em conjunto com as empresas listadas entre os itens **(1)** e **(13)** "Requerentes");

**(vii)** em atenção aos despachos de fls. 278/285 e 355/363, proferidos respectivamente no âmbito dos Agravos de Instrumento nº 2262371-21.2019.8.26.0000 e 226277-73.2019.8.26.000, os Credores Concursais das Recuperandas deliberaram, em sede de assembleia geral de credores, pela consolidação substancial da ODB com as demais Recuperandas, de modo que o presente Plano é composto pelos ativos e passivos de titularidade de todas as Recuperandas ("Consolidação Substancial das Recuperandas"); e, por fim

**(viii)** em cumprimento à decisão de deferimento do processamento da Recuperação Judicial e aos requisitos do art. 53 da LFR, este Plano apresenta os meios de recuperação almejados pelas Recuperandas, bem como demonstra a sua viabilidade econômica, por meio dos Laudos, conforme abaixo definido, sendo certo que este Plano reflete as negociações mantidas com a coletividade de credores das Recuperandas;

As Recuperandas apresentam este Plano ao Juízo da Recuperação, nos termos e condições a seguir.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

## 1. DEFINIÇÕES E REGRAS DE INTERPRETAÇÃO

**1.1. Definições:** Os termos utilizados neste Plano têm os significados definidos abaixo. Tais termos definidos serão utilizados, conforme apropriado e aplicável, na sua forma singular ou plural, no gênero masculino ou feminino, sem que, com isso, percam o significado que lhes é atribuído.

1.1.1. "Ações Judiciais ou Procedimentos Arbitrais": são os processos judiciais de natureza trabalhista ou cível, ajuizados contra as Recuperandas, ou os procedimentos arbitrais que envolvem as Recuperandas, e que versam sobre relações jurídicas que, em razão da sua causa de pedir, irão originar Créditos Concursais que constarão da Lista de Credores.

1.1.2. "Adesão à Consolidação Substancial": tem o significado atribuído na Cláusula 2.5.

1.1.3. "Administrador Judicial": é a Alvarez & Marsal Administração Judicial Ltda., inscrita no CNPJ/ME sob nº 07.016.138/0001-28, com endereço na Rua Surubim, 577, 9º andar, Brooklin Novo, CEP 04571-050, na Cidade e Estado de São Paulo, ou quem a substituir.

1.1.4. "Afiliadas": significa, com relação a qualquer pessoa, qualquer pessoa direta ou indiretamente mantida, Controladora, Controlada ou sob Controle comum.

1.1.5. "Agente de Monitoramento": significa qualquer uma das empresas especializadas na prestação de serviços de consultoria e perícia listadas no Apêndice I do **Anexo 1.1.73**, bem como as sucessoras, a qualquer título, de tais empresas, que tenham como principal atividade a prestação de serviços de consultoria e perícia, cujas atribuições estão descritas no item 6 no **Anexo 1.1.73**.

1.1.6. "Aniversário": é a data que corresponde ao 365º (trecentésimo sexagésimo quinto) dia após a Data de Homologação Judicial do Plano.

1.1.7. "Aprovação do Plano": é a aprovação deste Plano pelos Credores Concursais das Recuperandas reunidos na Assembleia de Credores designada para deliberar sobre ele. Para os efeitos deste Plano, considera-se que a Aprovação do Plano ocorre na data da Assembleia de Credores em que ocorrer a votação do Plano, desde que seja posteriormente homologado judicialmente nos termos do artigo 58, § 1º, da LFR.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

1.1.8. "Assembleia de Credores": é qualquer assembleia geral de credores das Recuperandas, realizada no âmbito desta Recuperação Judicial, nos termos do Capítulo II, Seção IV, da LFR.

1.1.9. "Bônus de Adimplência": é a revisão da taxa de juros e correção monetária aplicável aos Instrumentos de Pagamento nos termos do item 3 do **Anexo 1.1.73** do Plano, que passará a ser correspondente à TR a partir do 15º (décimo quinto) ano desde que tenham sido realizadas amortizações, no total agregado, iguais ou superiores a R$ 500.000,00 (quinhentos mil reais) desde a Data de Homologação Judicial do Plano.

1.1.10. "Caixa Disponível": significa a soma de todos os montantes, recursos financeiros de liquidez imediata e aplicações financeiras desoneradas detidos em caixa por cada uma das Recuperandas, incluindo por força de alienação de ativos, recebimento de Dividendos Controladas (observado o rateio da Cláusula 1.1.13), ou por quaisquer outras fontes de recursos, conforme apuração a ser realizada nas datas-bases estabelecidas no Anexo 1.1.73, e que poderão ser utilizados pelas Recuperandas para os fins descritos no Anexo 1.1.10.

1.1.11. "Caixa para Distribuição": significa, em uma determinada data-base após o decurso do Prazo de Carência previsto no item 5 do **Anexo 1.1.73**, todo valor de Caixa Disponível que exceder montante correspondente à soma de R$ 300.000.000,00 (trezentos milhões de reais), conforme corrigido a IPCA em cada ano fiscal. Na apuração do Caixa para Distribuição no último bimestre de cada ano, do valor de R$ 300.000.000,00 (trezentos milhões de reais) deverão ser descontados os valores eventualmente remetidos a Requerentes no mesmo ano fiscal, nos termos da Cláusula 7.4.1.

Não estão incluídos no conceito de Caixa para Distribuição:

i. os Recursos para Pagamento de Despesas Ordinárias recebidos até 31 de dezembro de 2022, que não tenham sido utilizados e estejam disponíveis na referida data-base e/ou Recursos para Pagamento de Despesas Ordinárias cuja liberação esteja contratada, porém ainda não tenham sido disponibilizados às Recuperandas até a referida data-base; e

ii. se aplicável, até o término do Período de Carência, podendo tal prazo ser estendido caso autorizado pelos titulares dos Instrumentos de Pagamento em

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

deliberação realizada nos termos da item 8.3 do Anexo 1.1.73, os montantes necessários para pagamento das despesas de venda, fiscais e tributárias decorrentes de alienações de ativos das Recuperandas e/ou Requerentes materializadas até a data de apuração, bem como as não materializadas que possam ser estimadas em razão das obrigações contratadas até a data de apuração, subtraídos dos recursos líquidos recebidos ou a serem recebidos pelas Recuperandas e/ou Requerentes provenientes da referida alienação de ativos.

Para que não restem dúvidas, todos recursos referentes aos eventos descritos no item ii, incluindo os recursos líquidos provenientes da referida alienação de ativos a serem recebidos pelas Recuperandas e/ou Requerentes, no limite das despesas mencionadas no item ii, ficarão reservados até a materialização das obrigações ali descritas ou até o encerramento do prazo de 18 (dezoito) meses contados do término do Período de Carência, o que ocorrer primeiro, não integrando o Caixa para Distribuição para fins da Cláusula 1.1.11. Caso tais obrigações não se materializem, a integralidade dos montantes retidos pelas Recuperandas deverá ser utilizada para pagamento dos Instrumentos de Pagamento.

O Caixa para Distribuição será apurado, a partir do término do Prazo de Carência, com base no relatório gerencial de fechamento contábil, entregue pelas Recuperandas ao Agente de Monitoramento, referente aos meses de Fevereiro, Abril, Junho, Agosto, Outubro e Dezembro.

1.1.12. "*Chapter 15*": significa o procedimento de insolvência auxiliar previsto no capítulo 15 do *U.S. Bankruptcy Code* dos Estados Unidos da América.

1.1.13. "Cascata de Dividendos Controladas": significa parte dos valores recebidos pelas Recuperandas a título de Dividendos Controladas, que serão aplicados ao pagamento por Dividendos Controladas até 31 de Dezembro de 2025 segundo a seguinte proporção:

| **Dividendos Controladas (R$ milhões)** | **Utilização Dividendos Controladas** |
|---|---|

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

| | |
|---|---|
| Até 100 em um determinado ano fiscal | integralmente utilizado para composição do Caixa Disponível e Caixa para Distribuição, conforme aplicável |
| Acima de 100 e até 200 em um determinado ano fiscal | 10% dos Dividendos Controladas recebidos no ano fiscal serão destinados para pagamento por Dividendos Controladas e 90% para composição do Caixa Disponível e Caixa para Distribuição, conforme aplicável |
| Acima de 200 em um determinado ano fiscal | 20% dos Dividendos Controladas recebidos no ano fiscal serão destinados para pagamento por Dividendos Controladas e 80% para composição do Caixa Disponível e Caixa para Distribuição, conforme aplicável |

Após 31 de Dezembro de 2025, os Dividendos Controladas serão integralmente destinados à composição do Caixa Disponível e do Caixa para Distribuição, conforme aplicável.

1.1.14. "Código Civil": é a Lei Federal n.º 10.406, de 10 de janeiro de 2002.

1.1.15. "Código de Processo Civil": é a Lei Federal n.º 13.105, de 16 de março de 2015.

1.1.16. "Consolidação Substancial das Recuperandas": tem o significado atribuído no considerando (vii).

1.1.17. "Controle": significa, nos termos do art. 116 da Lei das SA, (i) a titularidade de direitos de sócios que assegurem ao seu titular, de modo permanente, a maioria dos votos na deliberações sociais e o poder de eleger a maioria dos administradores da sociedade; e (ii) o uso efetivo de tal poder para dirigir as atividades sociais e orientar o funcionamento dos órgãos da sociedade. As expressões e termos "Controlador", "Controlado por", "sob Controle comum" e "Controlada" têm os significados logicamente decorrentes desta definição de "Controle".

1.1.18. "Coobrigação": é a obrigação assumida em decorrência da outorga de quaisquer garantias fidejussórias, tais como obrigações solidárias, avais e fianças, por: (i) uma Recuperanda em favor de uma Recuperanda em relação a um Crédito; (ii) uma Recuperanda

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

em favor de um Terceiro em relação a qualquer Crédito, ou (iii) um Terceiro em favor de uma Recuperanda em relação a um Crédito.

1.1.19. "Créditos": são os créditos e obrigações, materializados ou contingentes, líquidos ou ilíquidos, objeto de ação judicial/administrativa/arbitragem iniciada ou não, que estejam ou não relacionados na Lista de Credores das Recuperandas, sejam ou não sujeitos à Recuperação Judicial.

1.1.20. "Créditos com Garantia Real": são os Créditos Concursais existentes em face das Recuperandas garantidos por direitos reais de garantia (v.g., penhor e hipoteca), nos termos do artigo 41, inciso II, da LFR, até o limite do valor do bem gravado, existentes na Data do Pedido, conforme valores atribuídos na Lista de Credores.

1.1.21. "Créditos com Garantia Real Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.2.1.

1.1.22. "Créditos Concursais": são os Créditos Trabalhistas, Créditos com Garantia Real, Créditos Quirografários e Créditos ME/EPP e demais Créditos sujeitos à Recuperação Judicial e que, em razão disso, podem ser reestruturados por este Plano, nos termos da LFR, incluindo eventuais Créditos que sejam reconhecidos como sujeitos à Recuperação Judicial no âmbito de habilitações ou impugnações de crédito.

1.1.23. "Créditos Concursais Garantidos por Terceiro": tem o significado atribuído na Cláusula 3.7.9.2.

1.1.24. "Créditos Concursais por Garantia Outorgada por Recuperanda": tem o significado atribuído na Cláusula 3.7.9.1.

1.1.25. "Créditos Elegíveis para Subscrição de Instrumentos de Pagamento": significa, conjuntamente, (i) os Créditos com Garantia Real Elegíveis para Subscrição de Instrumentos de Pagamento; (ii) os Créditos Quirografários Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento; (iii) os Créditos Quirografários Não Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento; e (iv) os Créditos ME/EPP Elegíveis para Subscrição de Instrumentos de Pagamento.

1.1.26. "Créditos Extraconcursais": são os Créditos detidos contra as Recuperandas: (i) cujo fato gerador seja posterior à Data do Pedido; (ii) derivados de contratos celebrados até a Data

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

do Pedido que não se submetem aos efeitos deste Plano de acordo com o artigo 49, §§ 3º e 4º, da LFR, tais como, alienações fiduciárias em garantia, cessões fiduciárias em garantia ou contratos de arrendamento mercantil; (iii) outros Créditos não sujeitos à Recuperação Judicial, nos termos da LFR; ou (iv) Créditos reconhecidos como extraconcursais no âmbito de impugnações de crédito. No que diz respeito a Créditos garantidos por alienação fiduciária ou cessão fiduciária nos termos deste item (ii), o saldo remanescente do Crédito após eventual excussão ou integral monetização da respectiva garantia, não está incluído, para todos os fins, na definição de Créditos Extraconcursais, e receberá o tratamento conferido aos Créditos Quirografários.

1.1.27. "Créditos Ilíquidos": são os Créditos Concursais contingentes ou ilíquidos, objeto de Ações Judiciais ou Procedimentos Arbitrais, iniciados ou não, derivados de quaisquer fatos geradores até a Data do Pedido, que podem ser considerados Créditos Concursais e que, em razão disso, podem ser reestruturados por este Plano, nos termos da LFR, como Créditos com Garantia Real, Créditos *Intercompany*, Créditos ME/EPP, Créditos Quirografários ou Créditos Trabalhistas, conforme aplicável.

1.1.28. "Créditos *Intercompany*": são os Créditos Concursais cujo credor seja sociedade integrante do Grupo Odebrecht e/ou suas Controladoras, diretas ou indiretas, Controladas ou sociedades sob Controle comum.

1.1.29. "Créditos ME/EPP": são os Créditos Concursais detidos por empresário individual, EIRELI, sociedade empresária e/ou sociedade simples, desde que classificados como microempresas e empresas de pequeno porte, conforme definidas pela Lei Complementar nº 123, de 14 de dezembro de 2006 e conforme previstos nos artigos 41, inciso IV e 83, inciso IV, alínea d, da LFR.

1.1.30. "Créditos ME/EPP Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.4.2.1.

1.1.31. "Créditos Quirografários": são os Créditos Concursais quirografários, com privilégio especial, com privilégio geral ou subordinado, conforme previsto nos artigos 41, inciso III e 83, inciso VI da LFR, além do saldo residual oriundo da excussão de qualquer garantia real ou fiduciária. Para fins deste Plano, Créditos Quirografários incluem os Créditos Quirografários Financeiros e os Créditos Quirografários Não Financeiros, conforme significados respectivamente atribuídos nas Cláusulas 1.1.32 e 1.1.36.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

1.1.32. "Créditos Quirografários Financeiros": são os Créditos Quirografários decorrentes de operações realizadas no âmbito do Sistema Financeiro Nacional, com seguradoras, instituições financeiras estrangeiras, fundos de investimento ou participação, ou envolvendo estruturas estrangeiras semelhantes a fundos de investimento ou participação, *private equity*, e/ou emissões de títulos de dívida nos mercados nacionais e estrangeiros, incluindo mas não limitado às emissões de *notes* ou *bonds*, os quais serão reestruturados nos termos da Cláusula 3.3.1. Para fins deste Plano, Créditos Quirografários Financeiros incluem todo e qualquer Crédito Quirografário detido por uma instituição financeira ou qualquer empresa do seu grupo econômico, nacional ou estrangeira, independentemente da sua origem.

1.1.33. "Créditos Quirografários Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.3.1.2.1.

1.1.34. "Créditos Quirografários Financeiros Opção A": tem o significado atribuído na Cláusula 3.3.1.1.

1.1.35. "Créditos Quirografários Financeiros Opção B": tem o significado atribuído na Cláusula 3.3.1.2.

1.1.36. "Créditos Quirografários Não Financeiros": são todos os Créditos Quirografários, que não são Créditos Quirografários Financeiros, os quais serão reestruturados nos termos da Cláusula 3.3.2.

1.1.37. "Créditos Quirografários Não Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento": tem o significado atribuído na Cláusula 3.3.2.2.2.1.

1.1.38. "Créditos Quirografários Não Financeiros Opção A": tem o significado atribuído na Cláusula 3.3.2.1.

1.1.39. "Créditos Quirografários Não Financeiros Opção B": tem o significado atribuído na Cláusula 3.3.2.2.

1.1.40. "Créditos Quirografários Partes Relacionadas": significa os Créditos Quirografários detidos por Partes Relacionadas, os quais serão reestruturados nos termos da Cláusula 3.3.4.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

1.1.41. "Créditos Retardatários": são os Créditos Concursais que forem reconhecidos por decisão judicial ou administrativa superveniente, ou que forem incluídos na Lista de Credores em decorrência de quaisquer habilitações de crédito, impugnações de crédito ou qualquer outro incidente ou requerimento de qualquer natureza formulado com a mesma finalidade, desde que apresentados após o decurso dos prazos legais a que se referem os artigos 7º, §§1º e 2º, e 8º, da LFR, na forma do disposto no artigo 10 da LFR, que podem ser restruturados por este Plano, nos termos da LFR, como Créditos com Garantia Real, Créditos *Intercompany*, Créditos ME/EPP, Créditos Quirografários ou Créditos Trabalhistas, conforme aplicável.

1.1.42. "Créditos Trabalhistas": são os Créditos Concursais e direitos derivados da legislação do trabalho ou decorrentes de acidente de trabalho, nos termos dos artigos 41, inciso I, e 83, inciso I, da LFR, que mantenham o seu caráter alimentar na Data de Homologação Judicial do Plano.

1.1.43. "Créditos Trabalhistas Partes Relacionadas": são os Créditos Trabalhistas detidos por Partes Relacionadas, os quais serão reestruturados nos termos da Cláusula 3.1.2.

1.1.44. "Credores": são as pessoas físicas ou jurídicas detentoras de Créditos, estejam ou não sujeitos aos efeitos do Plano, estejam ou não relacionadas na Lista de Credores.

1.1.45. "Credores com Garantia Real": são os titulares de Créditos com Garantia Real.

1.1.46. "Credores Concursais": são os titulares de Créditos Concursais.

1.1.47. "Credores Extraconcursais": são os titulares de Créditos Extraconcursais.

1.1.48. "Credores ME/EPP": são os titulares de Créditos ME/EPP.

1.1.49. "Credores Quirografários": são os titulares de Créditos Quirografários Financeiros e os titulares de Créditos Quirografários Não Financeiros.

1.1.50. "Credores Quirografários Financeiros": são os titulares de Créditos Quirografários Financeiros.

1.1.51. "Credores Quirografários Financeiros Opção B": são os titulares de Créditos Quirografários Financeiros Opção B.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

1.1.52. "Credores Quirografários Não Financeiros": são os titulares de Créditos Quirografários Não Financeiros.

1.1.53. "Credores Quirografários Não Financeiros Opção A": são os titulares de Créditos Quirografários Não Financeiros Opção A.

1.1.54. "Credores Quirografários Não Financeiros Opção B": são os titulares de Créditos Quirografários Não Financeiros Opção B.

1.1.55. "Credores Retardatários": são os titulares de Créditos Retardatários.

1.1.56. "Credores Trabalhistas": são os titulares de Créditos Trabalhistas.

1.1.57. "Credores Trabalhistas Partes Relacionadas": são os titulares de Créditos Trabalhistas Partes Relacionadas.

1.1.58. "Data de Amortização": é a data em que o Caixa para Distribuição será destinado à amortização dos Instrumentos de Pagamento, conforme Regra de Utilização do Caixa para Distribuição. Para fins deste Plano, a Data de Amortização sempre ocorrerá até o último Dia Útil dos meses de Janeiro, Março, Maio, Julho, Setembro e Novembro.

1.1.59. "Data de Homologação Judicial do Plano": é a data em que ocorrer a publicação, no Diário Oficial da Justiça, da decisão de Homologação Judicial do Plano proferida pelo Juízo da Recuperação.

1.1.60. "Data do Pedido": é o dia 17 de junho de 2019, data em que o pedido de recuperação judicial das Recuperandas foi ajuizado.

1.1.61. "Data Final de Pagamento dos Créditos Trabalhistas": tem o significado atribuído na Cláusula 3.1.1, item (iv).

1.1.62. "Dia Corrido": é qualquer dia do mês, de modo que os prazos contados em Dias Corridos não são suspensos ou interrompidos.

1.1.63. "Dia Útil": qualquer dia que não seja sábado, domingo ou feriado na Cidade de São Paulo, Estado de São Paulo; além disso, não será Dia Útil qualquer dia em que, por qualquer motivo, não haja expediente bancário na Cidade de São Paulo, Estado de São Paulo. Exclusivamente para atos que devam ser praticados em outras comarcas, "Dia Útil" também

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

significa qualquer dia que, cumulativamente, não seja sábado, domingo ou feriado na respectiva localidade, na Cidade de São Paulo, Estado de São Paulo, ou qualquer dia em que, por qualquer motivo, não haja expediente bancário na Cidade de São Paulo, Estado de São Paulo.

1.1.64. "Dividendos Controladas": significa os recursos recebidos, em caixa e disponíveis para uso pelas Recuperandas, a título de dividendos, juros sobre capital próprio, redução de capital ou qualquer outra forma de remuneração de acionistas, em razão de participações societárias detidas pelas Recuperandas.

1.1.65. "DTC": é o *The Depository Trust Company*, sociedade devidamente estabelecida sob as Leis do Estado de Nova Iorque, Estados Unidos da América, que provê plataforma para registro e negociação de títulos de dívida emitidos e negociáveis (*Bonds*) em dólares norte-americanos.

1.1.66. "Emissora/Devedora Principal": tem o significado atribuído no item 1 do **Anexo 1.1.73**.

1.1.67. "EORJ": tem o significado atribuído no preâmbulo.

1.1.68. "Garantias Reais": são os direitos de garantia (v.g., penhor e hipoteca, conforme Título X do Código Civil), nos termos deste Plano e/ou do artigo 41, II da LFR, que garantem os Créditos com Garantia Real.

1.1.69. "Garantidores": tem o significado atribuído no item 2 do **Anexo 1.1.73**.

1.1.70. "Grupo Odebrecht": tem o significado atribuído no Considerando (i).

1.1.71. "Homologação *Chapter 15*": tem o significado atribuído na Cláusula 4.7.

1.1.72. "Homologação Judicial do Plano": é a decisão judicial proferida pelo Juízo da Recuperação Judicial que homologa o Plano e, consequentemente, concede a Recuperação Judicial, nos termos do artigo 58, *caput* e/ou §1º da LFR.

1.1.73. "Instrumentos de Pagamento": são os (i) Instrumentos de Pagamento – *Bonds*; (ii) Instrumentos de Pagamento – Debêntures Privadas; (iii) Instrumentos de Pagamento – Debêntures Públicas; e (iv) Instrumentos de Pagamento – Plano, os quais serão entregues aos Credores Concursais, conforme aplicável, e que conferirão aos seus respectivos titulares o

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

direito de recebimento do Caixa para Distribuição observada a Regra de Utilização do Caixa para Distribuição, de forma *pro rata*, cujos termos e condições são detalhados no **Anexo 1.1.73**.

1.1.74. "Instrumentos de Pagamento – *Bonds*": tem o significado atribuído na Cláusula 4.1.4 abaixo.

1.1.75. "Instrumentos de Pagamento – Debêntures Privadas": tem o significado atribuído na Cláusula 4.1.2 abaixo.

1.1.76. "Instrumentos de Pagamento – Debêntures Públicas": tem o significado atribuído na Cláusula 4.1.3 abaixo.

1.1.77. "Instrumentos de Pagamento – Plano": tem o significado atribuído na Cláusula 4.1.1 abaixo.

1.1.78. "IPCA": é o Índice Nacional de Preços ao Consumidor Amplo calculado mensalmente pelo Instituto Brasileiro de Geografia e Estatística (IBGE). Na ausência de apuração e/ou divulgação do número-índice por prazo superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, o IPCA deverá ser substituído pelo índice que reflita economicamente sua qualidade ou, na sua ausência, o último índice divulgado.

1.1.79. "Juízo da Recuperação Judicial": é o Juízo da 1ª Vara de Falências e Recuperações Judiciais da Comarca de São Paulo, Estado de São Paulo.

1.1.80. "KIEPPE": tem o significado atribuído no preâmbulo.

1.1.81. "Laudos": são, conjuntamente, o laudo de viabilidade econômica e o laudo econômico-financeiro, elaborados nos termos do artigo 53, incisos II e III, respectivamente, da LFR, constantes do **Anexo 1.1.81 (a)** e **(b)** deste Plano.

1.1.82. "Lei das SA": é a Lei Federal nº 6.404, de 15 de dezembro de 1976.

1.1.83. "LFR": tem o significado atribuído no preâmbulo.

1.1.84. "Lista de Credores": é a relação de Credores da Recuperanda elaborada pelo Administrador Judicial, conforme alterada por decisões judiciais transitadas em julgado que

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

reconhecerem novos Créditos Concursais ou alterarem a legitimidade, classificação ou o valor de Créditos Concursais já reconhecidos.

1.1.85. MECTRON": tem o significado atribuído no preâmbulo.

1.1.86. "ODB": tem o significado atribuído no preâmbulo.

1.1.87. "ODBIC": tem o significado atribuído no preâmbulo.

1.1.88. "ODBINV": tem o significado atribuído no preâmbulo.

1.1.89. "OE": tem o significado atribuído no preâmbulo.

1.1.90. "OEB": tem o significado atribuído no preâmbulo.

1.1.91. "OEI": tem o significado atribuído no preâmbulo.

1.1.92. "OEP": tem o significado atribuído no preâmbulo.

1.1.93. "OFL": tem o significado atribuído no preâmbulo.

1.1.94. "OP Centro Administrativo": tem o significado atribuído no preâmbulo.

1.1.95. "OP Gestão": tem o significado atribuído no preâmbulo.

1.1.96. "Opção A – Créditos Quirografários Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Financeiros, nos termos da Cláusula 3.3.1.1.

1.1.97. "Opção A – Créditos Quirografários Não Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Não Financeiros, nos termos da Cláusula 3.3.2.1.

1.1.98. "Opção B – Créditos Quirografários Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Financeiros, nos termos da Cláusula 3.3.1.2.

1.1.99. "Opção B – Créditos Quirografários Não Financeiros": é a Opção de Pagamento oferecida aos Credores Quirografários Não Financeiros, nos termos da Cláusula 3.3.2.2.

1.1.100. "Opções de Pagamento": tem o significado atribuído na Cláusula 2.2.2.

1.1.101. "OPE": tem o significado atribuído no preâmbulo.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

1.1.102. "OPI": tem o significado atribuído no preâmbulo.

1.1.103. "OPINV": tem o significado atribuído no preâmbulo.

1.1.104. "OPISA": tem o significado atribuído no preâmbulo.

1.1.105. "OPP": tem o significado atribuído no preâmbulo.

1.1.106. "OSP": tem o significado atribuído no preâmbulo.

1.1.107. "OSP INV": tem o significado atribuído no preâmbulo.

1.1.108. "Pagamentos em Dinheiro": tem o significado atribuído na Cláusula 3.3.2.2.

1.1.109. "Partes Relacionadas": são as pessoas físicas ou jurídicas que sejam, na Data do Pedido, direta ou indiretamente, individual ou em conjunto, acionistas Controladoras de quaisquer empresas do Grupo Odebrecht, incluindo as Recuperandas e Requerentes, bem como os seus cônjuges ou parentes, consanguíneos ou afins, colaterais até o 3º (terceiro) grau, ascendente ou descendente.

1.1.110. "Percentual de Pagamentos": significa percentual referente às amortizações ou pagamentos, a qualquer título, de Créditos tomados ou garantidos pelas Recuperandas, a ser apurado pelo Agente de Monitoramento conforme método de cálculo detalhado no Anexo 1.1.110.

1.1.111. "Plano": tem o significado atribuído no preâmbulo.

1.1.112. "Prazo de Adesão à Consolidação Substancial": tem o significado atribuído na Cláusula 2.5.

1.1.113. "Prazo de Carência": tem o significado atribuído no item 5 do **Anexo 1.1.73**.

1.1.114. "Prazo para Eleição" tem o significado atribuído na Cláusula 4.2.

1.1.115. "Publicação do Quadro de Eleição": tem o significado atribuído na Cláusula 4.3.2.

1.1.116. "Recuperação Judicial": tem o significado atribuído no preâmbulo.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

1.1.117. "Recuperandas": tem o significado atribuído no preâmbulo, observado o quanto disposto na Cláusula 1.7.

1.1.118. "Recursos para Pagamento de Despesas Ordinárias": significa todo e qualquer valor recebido nos termos da Cláusula 7.2, limitado ao montante global de R$ 1.000.000.000,00 (um bilhão de reais), que deverá ser aplicado prioritariamente na manutenção ordinária das atividades das Recuperandas, no pagamento de despesas gerais e administrativas e no cumprimento das obrigações de pagamento dos Créditos Trabalhistas, Créditos Quirografários Não Financeiros e Créditos ME/EPP previstas neste Plano.

1.1.119. "Regra de Utilização do Caixa para Distribuição": significa a seguinte regra de alocação do Caixa para Distribuição:

(i) até 31 de Dezembro de 2025 ou até o pagamento integral do montante de R$ 150.000.000,00 (cento e cinquenta milhões de reais) previsto na Cláusula 3.3.2.2.1.2, o que ocorrer primeiro, o Caixa para Distribuição será alocado da seguinte forma:

(a) 10% do Caixa para Distribuição será destinado ao pagamento de Créditos Quirografários Não Financeiros Opção B na forma da Cláusula 3.3.2.2.1.2;

(b) 90% do Caixa para Distribuição será destinado à amortização dos Instrumentos de Pagamento e ao uso pelas Recuperandas conforme descrito no item (iii) abaixo, respeitadas as seguintes proporções e condições:

| **% do Caixa para Distribuição alocado para** | | **Condição** |
|---|---|---|
| **Amortização Instrumentos de Pagamento** | **Uso das Recuperandas** | |
| **72%** | **18%** | Até que o Percentual de Pagamentos atinja 35% |
| **67,5%** | **22,5%** | Caso o Percentual de Pagamentos seja superior a 35% ou igual a 45% |
| **63%** | **27%** | Caso o Percentual de Pagamentos seja superior a 45% ou igual a 50% |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

| | | |
|---|---|---|
| **58,5%** | **31,5%** | Caso o Percentual de Pagamentos seja superior a 50% ou igual a 55% |
| **54%** | **36%** | Caso o Percentual de Pagamentos seja superior a 55% ou igual a 60% |
| **49,5%** | **40,5%** | Caso o Percentual de Pagamentos seja superior a 60% ou igual a 65% |
| **45%** | **45%** | Caso o Percentual de Pagamentos seja superior a 65% |

(ii) e, após a ocorrência dos eventos descritos no item (i) acima, o Caixa para Distribuição será alocado da seguinte forma:

| **% do Caixa para Distribuição alocado para** | | **Condição** |
|---|---|---|
| **Amortização Instrumentos de Pagamento** | **Uso das Recuperandas** | |
| **80%** | **20%** | Até que o Percentual de Pagamentos atinja 35% |
| **75%** | **25%** | Caso o Percentual de Pagamentos seja superior a 35% ou igual a 45% |
| **70%** | **30%** | Caso o Percentual de Pagamentos seja superior a 45% ou igual a 50% |
| **65%** | **35%** | Caso o Percentual de Pagamentos seja superior a 50% ou igual a 55% |
| **60%** | **40%** | Caso o Percentual de Pagamentos seja superior a 55% ou igual a 60% |
| **55%** | **45%** | Caso o Percentual de Pagamentos seja superior a 60% ou igual a 65% |
| **50%** | **50%** | Caso o Percentual de Pagamentos seja superior a 65% |

(iii) Uso das Recuperandas. Desde que realizadas as amortizações dos Instrumentos de Pagamento, na forma prevista nos itens (i) e (ii) acima, as distribuições destinadas ao Uso das Recuperandas nos termos das tabelas acima serão reservadas para utilização pelas Recuperandas, a seu exclusivo critério, e não integrarão o montante de Caixa Disponível nas próximas apurações de Caixa para Distribuição, podendo ser alocadas para distribuições de lucro, realização de investimentos,

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

mútuos, aportes ou quaisquer outras movimentações de recursos entre Recuperandas, suas Afiliadas, Coligadas ou Controladas, da forma permitida pela lei, **desde que, cumulativamente** (a) o saldo devedor original de Instrumentos de Pagamento tenha sido reduzido em ao menos R$ 10.000.000.000,00 (dez bilhões de reais), não incluindo em tal valor a quantia excepcionada na parte final do item 1(i)(a) do **Anexo 1.1.110**; e (b) tenham (b.1) ocorrido quaisquer alienações, excussões ou dações em pagamento de ativos de titularidade da ODB e outorgados em garantia fiduciária em benefício de Credores no valor de, pelo menos, R$ 1.000.000.000,00 (um bilhão de reais) ou (b.2) transcorrido 4 (quatro) anos contados da Data de Homologação Judicial do Plano, o que ocorrer primeiro. Tais recursos não poderão ser reservados e, caso já tenham sido reservados, deverão ser integralmente utilizados para amortização dos Instrumentos de Pagamento caso ocorra qualquer discussão ou questionamento judicial por parte das Requerentes na hipótese (b.1), a qual também é aplicável para fins desta vedação aos ativos das demais Requerentes.

1.1.120. "Requerentes" tem o significado atribuído no preâmbulo.

1.1.121. "Saldo de Créditos ME/EPP": tem o significado atribuído na Cláusula 3.4.2.

1.1.122. "Salário Mínimo": significa o salário mínimo, fixado em lei e anualmente ajustado, em conformidade com o artigo 7º, inciso IV, da Constituição Federal da República Federativa do Brasil de 1988, com o capítulo III do Decreto-Lei nº 5.452, de 1º de maio de 1943, e com a Medida Provisória nº 919 de 30 de janeiro de 2020.

1.1.123. "Securities Act": significa o *U.S. Securities Act* de 1933, conforme emendado de tempos em tempos.

1.1.124. "Sociedades Atvos": são, em conjunto, as sociedades (1) Atvos Agroindustrial S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 13º andar, Butantã, inscrit a no CNPJ/MF sob o nº 08.636.745/0001-53; (2) Atvos Agroindustrial Participações S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 13º andar, Butantã, inscrita no CNPJ/MF sob o nº 08.842.690/0001-38; (3) Pontal Agropecuária S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Teodoro Sampaio, estado de São

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Paulo, na Fazenda Alcídia, s/n, Zona Rural, inscrita no inscrita no CNPJ/MF sob o nº 46.453.403/0001-97; (4) Rio Claro Agroindustrial S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Caçú, estado de Goiás, na Fazenda Santo Antônio, s/n, Zona Rural, inscrita no CNPJ/MF sob o nº 08.598.391/0001-08; (5) Usina Conquista Do Pontal S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Mirante do Paranapanema, estado de São Paulo, na Fazenda Conquista do Pontal, Rodovia SP 563, km 13, s/n, Zona Rural, inscrita no CNPJ/MF sob o nº 07.298.800/0001-80; (6) Agro Energia Santa Luzia S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Nova Alvorada do Sul, estado do Mato Grosso do Sul, na Fazenda São Sebastião, Rodovia BR 267, km 231, s/n, inscrita no CNPJ/MF sob o nº 08.906.558/0001-42; (7) BRENCO – Companhia Brasileira De Energia Renovável – Em Recuperação Judicial, sociedade por ações, com sede no município de São Paulo, estado de São Paulo, na Rua Lemos Monteiro, nº 120, 13º andar, Butantã, inscrita no CNPJ/MF sob o nº 08.070.566/0001-00; (8) Destilaria Alcídia S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Teodoro Sampaio, estado de São Paulo, na Fazenda Alcídia, s/n, Zona Rural, inscrita no CNPJ/MF sob o nº 46.448.270/0001-60; e (9) Usina Eldorado S.A. – Em Recuperação Judicial, sociedade por ações, com sede no município de Rio Brilhante, estado do Mato Grosso do Sul, na Fazenda São Pedro, s/n, Rodovia MS 145, km 49, ao lado direto no sentido Ipezal/Deodapolis, inscrita no CNPJ/MF sob o nº 05.620.523/0001-54 , as quais ajuizaram o processo de recuperação judicial autuado sob nº 1050977-09.2019.8.29.0000, em curso perante o D. Juízo da 1ª Vara de Falências e Recuperações Judiciais do Foro Central Cível da Comarca da Capital de São Paulo.

1.1.125. "Terceiro": é a pessoa jurídica diversa da Recuperanda contra a qual os Credores Concursais detêm créditos e direitos, seja por (a) obrigação principal com Coobrigação ou garantia real e/ou fiduciária assumida ou prestada por uma Recuperanda; e/ou (b) Coobrigação ou garantia real e/ou fiduciária assumida ou prestada pelo Terceiro.

1.1.126. "Termo de adesão à Consolidação Substancial": tem o significado atribuído na Cláusula 2.5.

1.1.127. "Termo Original do Stay Period": é o dia 16 de dezembro de 2019, data em que se findou o prazo previsto no art. 6º, §4º, da LFR.

1.1.128. "TR": é a taxa de referência instituída pela Lei nº 8.177/1991, conforme apurada e divulgada pelo Banco Central do Brasil, cujo produto, quando expressamente previsto neste

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Plano, agregar-se-á ao saldo do valor nominal do Crédito para fins de cálculo do valor pecuniário das obrigações dispostas neste Plano, e que será devido nas datas de pagamento da parcela de amortização das referidas obrigações. No caso de indisponibilidade temporária da TR, será utilizado, em sua substituição, o último número-índice divulgado, calculado *pro rata temporis* por Dias Úteis, porém, não cabendo, quando da divulgação do número-índice devido, quaisquer compensações financeiras. Na ausência de apuração e/ou divulgação do número-índice por prazo superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, a TR deverá ser substituída pela média simples da taxa TR verificada nos 12 (doze) meses anteriores à Data de Homologação do Plano, calculado *pro rata temporis* por Dias Úteis.

1.1.129. "UPI": é a Unidade Produtiva Isolada, na forma do artigo 60 da LFR, que poderá ser composta por bens e/ou direitos.

1.1.130. "*U.S. Bankrupcy Code*": significa o Título 11 do *United States Code* 11 U.S.C. §§ 11 *et seq*.

**1.2. Cláusulas e Anexos.** Exceto se especificado de forma diversa, todas as Cláusulas e Anexos mencionados neste Plano referem-se a Cláusulas e Anexos deste Plano. Referências a Cláusulas, subcláusulas ou a itens deste Plano referem-se também às suas respectivas subcláusulas ou itens. Os Anexos incluem-se e são parte integrante do Plano para todos os fins de direito.

**1.3. Títulos.** Os títulos dos Capítulos, das Cláusulas, subcláusulas e itens deste Plano foram incluídos exclusivamente para referência e não devem afetar sua interpretação ou o conteúdo de suas previsões.

**1.4. Referências.** As referências a quaisquer documentos ou instrumentos incluem todos os respectivos aditivos, consolidações e complementações, exceto se de outra forma expressamente previsto. Sempre que aplicável, as referências às Recuperandas deverão ser interpretadas como sendo as pessoas jurídicas que as sucederem em suas obrigações em razão de operações societárias previstas ou permitidas no âmbito deste Plano, e quaisquer outras que sejam necessárias ao redimensionamento e incremento da eficiência organizacional e redução de custos do Grupo Odebrecht.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**1.5. Disposições Legais.** As referências a disposições legais e a leis devem ser interpretadas como referências a essas disposições tais como vigentes nesta data ou em data que seja especificamente determinada pelo contexto.

**1.6. Prazos.** Todos os prazos previstos neste Plano serão contados na forma prevista no artigo 132 do Código Civil, desprezando-se o dia do começo e incluindo-se o dia do vencimento. Quaisquer prazos deste Plano (sejam contados em Dias Úteis ou não) cujo termo inicial ou final caia em um dia que não seja Dia Útil, serão automaticamente prorrogados para o Dia Útil imediatamente posterior.

**1.7. Adesão aos termos e condições deste Plano**. Caso venha a ser aprovada a Adesão à Consolidação Substancial pelos credores de uma ou mais Requerentes, todas as definições contendo referências à "Recuperanda", seus ativos, passivos, direitos e obrigações deverão ser interpretadas como incluindo os ativos, passivos, direitos e obrigações das Requerentes em questão.

**1.8. Créditos Extraconcursais**. Nada neste Plano deverá ser interpretado ou considerado como causa para a (i) novação de Créditos Extraconcursais ou (ii) alteração, modificação ou renúncia de quaisquer obrigações de quaisquer Recuperandas ou dos direitos de quaisquer Credores Extraconcursais frente aos Créditos Extraconcursais, incluindo, sem limitar, sobre quaisquer garantias prestadas no âmbito de tais Créditos Extraconcursais ou reconhecimentos prestados pelas Recuperandas,

**1.9. Conflito**. Em caso de conflito entre as disposições (i) deste Plano e seus Anexos, os termos e condições previstos no Plano deverão prevalecer; e (ii) entre o **Anexo 1.1.73** e os **Anexos 4.1.2**,e **4.1.3,** os termos e condições previstos no **Anexo 1.1.73** deverão prevalecer.

**2. PRINCIPAIS MEIOS DE RECUPERAÇÃO**

**2.1. Visão Geral**. As Recuperandas propõem a adoção das medidas indicadas nas Cláusulas 2.2, 2.3 e 2.4 abaixo, como forma de superar a sua atual e momentânea crise econômico-financeira e dar continuidade a suas atividades.

**2.2. Reestruturação da Dívida**. As Recuperandas irão reestruturar as dívidas contraídas perante os Credores Concursais, conforme detalhado na Cláusula 3 abaixo.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

2.2.1. Pagamentos pelas Recuperandas. Considerando (i) a possibilidade de Adesão à Consolidação Substancial; (ii) que o Caixa Disponível e o Caixa para Distribuição serão auferidos em Recuperandas distintas; (iii) a administração dos recursos das Recuperandas é concentrada na ODB, sociedade consolidadora e gestora de participações societárias; (iv) há muitas garantias cruzadas entre as Recuperandas, bem como diversos Créditos *Intercompany*; e, ainda (v) o objetivo de garantir a implementação do presente Plano e viabilizar uma solução global para a reorganização operacional e financeira de todas as Recuperandas, os Créditos e as obrigações de pagamento neste Plano serão, na data da Homologação Judicial do Plano, centralizados na ODB, qualquer sociedade que venha a suceder a ODB, qualquer Recuperanda, observado o quanto disposto nos termos previstos na Cláusula 3 abaixo e no Anexo 1.1.73.

2.2.2. Opções de Pagamento à escolha do Credor. O Plano confere a determinados Credores Concursais o direito de escolher, dentre um número de opções oferecidas, a alternativa de recebimento de seus Créditos Concursais (indistintamente, "Opções de Pagamento"), nos termos da Cláusula 4.1abaixo. A atribuição da possibilidade de escolher entre as Opções de Pagamento é uma medida que promove o tratamento isonômico entre os Credores Concursais, pois permite a cada Credor Concursal eleger a opção que melhor atenda a seus interesses.

2.2.3. Antecipação de Pagamentos. As Recuperandas poderão, a qualquer tempo, antecipar quaisquer pagamentos de forma *pro rata* entre os Credores Trabalhistas nos limites previstos na Cláusula 3 abaixo.

**2.3. Alienação de Bens e Constituição de UPIs.** As Recuperandas estão autorizadas desde já a alienar, vender, locar, arrendar, dar em pagamento, remover, onerar ou oferecer em garantia, inclusive garantia judicial, bens, ativos e/ou direitos que sejam parte de seu ativo circulante, assim como bens, ativos e/ou direitos que sejam parte do seu ativo não-circulante, observados para todos os casos os termos, condições e restrições descritos na Cláusula 5, devendo ainda os recursos líquidos obtidos com eventual alienação, inclusive de ativos litigiosos, presentes ou futuros, nacionais ou estrangeiros, ser utilizados conforme estabelecido neste Plano sempre se observando a Cláusula 1.1.11.

**2.4. Reorganização Societária.** As Recuperandas ficam autorizadas a realizar operações de reorganização societária, incluindo aquelas necessárias para implementação deste Plano, inclusive fusões, incorporações, incorporações de ações, cisões e transformações, ou promover

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

transferências patrimoniais dentro do Grupo Odebrecht, observados os termos e condições da Cláusula 6.1.

**2.5. Adesão à Consolidação Substancial**: quaisquer das Requerentes poderão, de maneira irrevogável e irretratável, aderir ao presente Plano, por meio do envio da declaração constante do **Anexo 2.5,** acompanhada de cópia da ata da assembleia geral de credores que deliberar pela adesão ao presente Plano ("Termo de Adesão à Consolidação Substancial"), desde que tais atos sejam realizados em até 90 (noventa) Dias Corridos contados da Data de Homologação Judicial do Plano ("Prazo de Adesão à Consolidação Substancial"). Por meio do Termo de Adesão à Consolidação Substancial, a respectiva Requerente, seus credores, assim como as Recuperandas e os seus Credores Concursais, reconhecem e concordam que, por força da adesão, todos os Créditos Concursais, ativos e passivos da referida Requerente passarão, para todos os fins, a integrar o presente Plano.

## 3. PAGAMENTO DOS CREDORES

### 3.1. Créditos Trabalhistas.

3.1.1. Regra Geral. Os Credores Trabalhistas, excetuados os Credores Trabalhistas Partes Relacionadas, terão seus Créditos Trabalhistas reestruturados e pagos em recursos monetários nacionais, até o limite de R$ 3.000.000,00 (três milhões de reais), sempre observado o limite do valor do respectivo Crédito Trabalhista, em até 4 (quatro) parcelas, observadas as seguintes regras:

(i) *1ª Parcela*. Pagamento de até R$ 650.000,00 (seiscentos e cinquenta mil reais), a serem pagos a cada um dos Credores Trabalhistas, em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do Termo Original do Stay Period;

(ii) *2ª Parcela*. Eventual saldo remanescente de Créditos Trabalhistas existente após o pagamento previsto no item (i) acima receberá pagamento de até R$ 650.000,00 (seiscentos e cinquenta mil reais), em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do pagamento previsto no item (i) acima;

(iii) *3ª Parcela*. Eventual saldo remanescente de Créditos Trabalhistas existente após o pagamento previsto nos itens (i) e (ii) acima, receberá pagamento de até R$ 850.000,00

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

(oitocentos e cinquenta mil reais), em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do pagamento previsto no item (ii) acima; e

(iv) *4ª Parcela*. Eventual saldo remanescente de Créditos Trabalhistas existente após o pagamento previsto nos itens (i), (ii) e (iii) acima receberá pagamento de até R$ 850.000,00 (oitocentos e cinquenta mil reais), em parcela devida no último Dia Útil do 12º (décimo segundo) mês contado do pagamento previsto no item (iii) acima ("Data Final de Pagamento dos Créditos Trabalhistas").

3.1.1.1. Pagamento Diferido. Os pagamentos previstos nos itens (ii) e (iii) acima poderão ser postergados para as datas de pagamento previstas para o ano subsequente e até a Data Final de Pagamento dos Créditos Trabalhistas caso as Recuperandas recebam Dividendos Controladas em montante inferior a R$ 100.000.000,00 (cem milhões de reais) no respectivo ano fiscal de pagamento.

3.1.1.2. Juros e Correção. Juros e correção monetária incidindo sobre respectivo Crédito Trabalhista, correspondentes ao IPCA desde a Data do Pedido até a implementação dos pagamentos previstos na Cláusula 3.1.1 acima.

3.1.1.3. Novação. Os Créditos Trabalhistas serão novados, passando a corresponder a R$ 3.000.000,00 (três milhões de reais), com juros e correção previstos na Cláusula 3.1.1.2 acima, caso o montante do Crédito Trabalhista do respectivo Credor Concursal seja superior a R$ 3.000.000,00 (três milhões de reais).

3.1.2. **Créditos Trabalhistas Partes Relacionadas.** Os Credores Trabalhistas que sejam Partes Relacionadas terão seus Créditos Trabalhistas Partes Relacionadas reestruturados e pagos em recursos monetários nacionais, até o limite de 150 (cento e cinquenta) Salários Mínimos, em dinheiro, em parcela única, devida no último Dia Útil do 12º (décimo segundo) mês contado do Termo Original do Stay Period.

3.1.2.1. Juros e Correção. Juros e correção monetária incidindo sobre respectivo Crédito Trabalhista Parte Relacionada, correspondentes ao IPCA desde a Data do Pedido até a implementação do pagamento previsto na Cláusula 3.1.2 acima.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.1.2.2. Novação. Os Créditos Trabalhistas Partes Relacionadas serão novados, passando a corresponder ao equivalente a 150 (cento e cinquenta) Salários Mínimos, com juros e correção previstos na Cláusula 3.1.2 acima, caso o montante do Crédito Trabalhistas Parte Relacionadas do respectivo Credor Concursal seja superior a 150 (cento e cinquenta) Salários Mínimos.

3.1.3. Créditos Trabalhistas Retardatários. Os Créditos Trabalhistas Retardatários serão pagos na forma descrita nas Cláusulas 3.1.1 e 3.1.2, conforme aplicável, sendo o primeiro pagamento devido no último Dia Útil do 12º (décimo segundo) mês contado da data da certidão de trânsito em julgado da decisão que determinar a inclusão do referido Crédito Trabalhista na Lista de Credores.

3.1.4. Quitação. A implementação dos pagamentos previstos nestas Cláusulas 3.1.1 e 3.1.2 implica, necessariamente, na mais ampla, geral e irrestrita quitação do Crédito Trabalhista em questão.

**3.2. Créditos com Garantia Real.** Os Credores com Garantia Real terão seus Créditos com Garantia Real reestruturados e integralmente pagos por meio de Instrumentos de Pagamento, conforme oportunamente eleitos, cujos termos e condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73**.

3.2.1. Critério de Subscrição. Cada Credor com Garantia Real terá o direito de receber ou subscrever R$ 1,00 (um real), conforme aplicável, de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real), conforme aplicável, em Créditos com Garantia Real ("Créditos com Garantia Real Elegíveis para Subscrição de Instrumentos de Pagamento"). Caso necessário, os Créditos Concursais denominados em moeda estrangeira serão convertidos para real ou dólar norte-americano de acordo com as taxas de câmbio de venda disponíveis no Sistema de Informações do Banco Central do Brasil (SISBACEN), no Dia Útil imediatamente anterior à data do ato a ser praticado nos termos deste Plano.

3.2.2. Garantia Reais. Os Créditos com Garantia Real serão garantidos pelos seus respectivos direitos reais em garantia atualmente constituídos. Para que não restem dúvidas, as Garantias Reais atualmente constituídas para cada um dos Credores com Garantia Real não serão compartilhadas com os demais Credores Concursais.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.2.3. Dação em Pagamento. Os Credores com Garantia Real que desejarem receber o bem gravado com garantia real em pagamento dos respectivos Créditos com Garantia Real deverão enviar notificação para as Recuperandas, no prazo de 30 (trinta) Dias Corridos contados do término do Prazo de Adesão à Consolidação Substancial e na forma da Cláusula 8.3, comunicando sua opção, a qual será considerada final, definitiva, vinculante, irrevogável e irretratável. As Recuperadas deverão praticar todos os atos necessários para implementar a dação em pagamento nos termos convencionados com o respectivo Credor com Garantia Real.

3.2.3.1. Transcorrido o prazo indicado na Cláusula 3.2.3 acima, a dação dos bens gravados com garantia real em pagamento dos respectivos Créditos com Garantia Real somente será implementada caso convencionada de comum acordo entre a(s) Recuperanda(s) e o respectivo Credor com Garantia Real.

3.2.3.2. Eventual saldo remanescente de Créditos com Garantia Real, após a implementação da dação em pagamento dos bens gravados com garantia real previstas nas Cláusulas 3.2.3 e 3.2.3.1 acima, será considerado um Crédito Quirografário Financeiro Elegível para Subscrição de Instrumentos de Pagamento.

3.2.4. Créditos Com Garantia Real Retardatários. Os Créditos com Garantia Real que sejam Créditos Retardatários serão reestruturados e pagos na forma descrita na Cláusula 3.2 acima, sendo certo que (i) o prazo indicado na Cláusula 3.2.3 somente terá início após a efetiva inclusão do referido Crédito Retardatário na Lista de Credores; e (ii) os respectivos Credores com Garantia Real terão direito a receber todos os pagamentos realizados em data-base posterior ao trânsito em julgado da decisão que determinar a inclusão do referido Crédito Retardatário na Lista de Credores.

**3.3. Créditos Quirografários.**

3.3.1. Créditos Quirografários Financeiros. Os Credores Quirografários Financeiros poderão eleger a forma de pagamento de seus Créditos Quirografários Financeiros, de acordo com uma das seguintes Opções de Pagamento, e desde que observado o procedimento para eleição de Opção de Pagamento descrito na Cláusula 4.2 abaixo:

3.3.1.1. Opção A – Créditos Quirografários Financeiros. Credores Quirografários Financeiros que validamente elegerem a presente Opção A ("Opção A – Créditos

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Quirografários Financeiros") terão seus Créditos Quirografários Financeiros reestruturados e pagos em recursos monetários nacionais, até o limite de R$ 150.000,00 (cento e cinquenta mil reais), em dinheiro, em parcela única, no último Dia Útil do 12º (décimo segundo) mês contado da Data de Homologação Judicial do Plano ("Créditos Quirografários Financeiros – Opção A").

3.3.1.1.1. Juros e Correção. Juros e correção monetária incidindo sobre o respectivo montante de Créditos Quirografários Financeiros e sobre o limite de R$ 150.000,00 (cento e cinquenta mil reais), previsto na Cláusula 3.3.1.1 acima, correspondentes à TR desde a Data do Pedido até a data do efetivo pagamento.

3.3.1.1.2. Novação. Os Créditos Quirografários Financeiros – Opção A serão novados, passando a corresponder a R$ 150.000,00 (cento e cinquenta mil reais), com juros e correção previstos na Cláusula 3.3.1.1.1 acima, caso o montante do Crédito Quirografário Financeiro – Opção A do respectivo Credor Concursal seja superior a R$ 150.000,00 (cento e cinquenta mil reais).

3.3.1.1.3. Quitação. A escolha dessa opção e o respectivo pagamento ora previsto implica, necessariamente, ampla, geral e irrestrita quitação do Crédito Quirografário Financeiro em questão.

3.3.1.2. Opção B – Créditos Quirografários Financeiros. Os Credores Quirografários Financeiros que validamente elegerem a presente Opção B ("Opção B – Créditos Quirografários Financeiros") terão seus Créditos Quirografários Financeiros reestruturados e integralmente pagos por meio de Instrumentos de Pagamento, conforme oportunamente eleito, cujos termos e condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73** ("Créditos Quirografários Financeiros – Opção B").

3.3.1.2.1. Critério de Subscrição. Cada Credor Quirografário Financeiro que eleger a Opção B – Créditos Quirografários Financeiros terá o direito de receber ou subscrever R$ 1,00 (um real), conforme aplicável, de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real), conforme aplicável, em Créditos Quirografários Financeiros ("Créditos Quirografários Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento"). Caso necessário, os Créditos Concursais denominados

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

em moeda estrangeira serão convertidos para real ou dólar norte-americano de acordo com as taxas de câmbio de venda disponíveis no Sistema de Informações do Banco Central do Brasil (SISBACEN), no Dia Útil imediatamente anterior à data do ato a ser praticado nos termos deste Plano.

3.3.2. Créditos Quirografários Não Financeiros. Os Credores Quirografários Não Financeiros poderão eleger a forma de pagamento de seus Créditos Quirografários Não Financeiros, de acordo com uma das Opções de Pagamento abaixo descritas, e desde que observado o procedimento para eleição de Opção de Pagamento descrito na Cláusula 4.2 abaixo:

3.3.2.1. Opção A – Créditos Quirografários Não Financeiros. Credores Quirografários Não Financeiros que validamente elegerem a presente Opção A ("Opção A – Créditos Quirografários Não Financeiros") terão seus Créditos Quirografários Não Financeiros reestruturados e pagos em recursos monetários nacionais, até o limite de R$ 150.000,00 (cento e cinquenta mil reais), em dinheiro, em parcela única, no último Dia Útil do 12º (décimo segundo) mês contado da Data de Homologação Judicial do Plano ("Créditos Quirografários Não Financeiros Opção A").

3.3.2.1.1. Juros e Correção. Juros e correção monetária incidindo sobre o respectivo montante de Créditos Quirografários Não Financeiros Opção A e sobre o limite de R$ 150.000,00 (cento e cinquenta mil reais), previsto na Cláusula 3.3.2.1 acima, correspondentes à TR desde a Data do Pedido até a data do efetivo pagamento.

3.3.2.1.2. Novação. Os Créditos Quirografários Não Financeiros Opção A serão novados, passando a corresponder a R$ 150.000,00 (cento e cinquenta mil reais), com juros e correção previstos na Cláusula 3.3.2.1.1 acima, caso o montante do Crédito Quirografário Não Financeiro Opção A do respectivo Credor Concursal seja superior a R$ 150.000,00 (cento e cinquenta mil reais).

3.3.2.1.3. Quitação. A escolha dessa opção e o respectivo pagamento ora previsto implica, necessariamente, ampla, geral e irrestrita quitação do Crédito Quirografário Não Financeiro em questão.

3.3.2.2. Opção B – Créditos Quirografários Não Financeiros. Credores Quirografários Não Financeiros que validamente elegerem a presente Opção B ("Opção B – Créditos

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Quirografários Não Financeiros") terão seus Créditos Quirografários Não Financeiros ("Créditos Quirografários Não Financeiros Opção B") reestruturados e pagos por meio da combinação de (i) pagamento em dinheiro, com recursos monetários nacionais sujeito aos e decorrentes dos eventos detalhados nas Cláusulas 3.3.2.2.1 e 3.3.2.2.1.2 ("Pagamentos em Dinheiro"); e (ii) e Instrumentos de Pagamento, sujeitos aos termos, condições e limites detalhados na Cláusula 3.3.2.2.2, conforme aplicável e da seguinte forma:

(i) *para Créditos Quirografários Não Financeiros Opção B até R$ 750.000,00* (setecentos e cinquenta mil reais), o Credor receberá o montante integral de seu Crédito por meio de Pagamento em Dinheiro;

(ii) *para Créditos Quirografários Não Financeiros Opção B superiores a R$ 750.000,00 (setecentos e cinquenta mil reais) e inferiores ou iguais a R$ 1.071.429,00 (um milhão, setenta e um mil, quatrocentos e vinte nove reais)*, o Credor receberá seu Crédito por meio da combinação entre ((ii).1) Pagamento em Dinheiro, até o limite de R$ 750.000,00 (setecentos e cinquenta mil reais) e ((ii).2) para o saldo de Crédito Quirografários Não Financeiros Opção B remanescente, Instrumentos de Pagamento;

(iii) *para Créditos Quirografários Não Financeiros Opção B superiores a R$ 1.071.429,00 (um milhão, setenta e um mil, quatrocentos e vinte nove reais) e inferiores ou iguais a R$ 4.285.714,00 (quatro milhões, duzentos e oitenta e cinco mil, setecentos e catorze reais)*, o Credor receberá seu Crédito por meio da combinação entre ((iii).1) Pagamento em Dinheiro, em montante correspondente a 70% (setenta por cento) de seu Crédito Quirografário Não Financeiro Opção B; e ((iii).2) para o saldo de Crédito Quirografários Não Financeiros Opção B remanescente, Instrumentos de Pagamento, sujeitos aos termos, condições e limites detalhados na Cláusula 3.3.2.2.2; e

(iv) *para Créditos Quirografários Não Financeiros Opção B superiores a R$ 4.285.714,00 (quatro milhões, duzentos e oitenta e cinco mil, setecentos e catorze reais)*, o Credor receberá seu Crédito por meio da combinação entre ((iv).1) Pagamento em Dinheiro, correspondente a R$ 3.000.000,00 (três milhões de reais); e ((iv).2) para o saldo de Crédito Quirografários Não Financeiros Opção B remanescente, Instrumentos de Pagamento, sujeitos aos termos, condições e limites detalhados na Cláusula 3.3.2.2.2.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.3.2.2.1. Fontes do Pagamento em Dinheiro. Os Pagamentos em Dinheiro descritos na Cláusula 3.3.2.2 terão origem nas seguintes fontes:

3.3.2.2.1.1. Primeiro Componente – Dividendos Controladas. Pagamento em recursos monetários nacionais, mediante recebimento, pelas Recuperandas, de recursos a título de Dividendos Controladas referentes aos anos fiscais de 2019, 2020 e 2021, de acordo com a Cascata de Dividendos Controladas, até o limite de R$ 39.000.000,00 (trinta e nove milhões de reais) por ano, a serem distribuídos igualmente entre os Credores Quirografários Não Financeiros Opção B, e pagos em até 60 (sessenta) Dias Corridos contados da data em que quaisquer Recuperandas efetivamente recebam Dividendos Controladas.

3.3.2.2.1.1.1. Para fins da Cláusula 3.3.2.2.1.1 acima, caso em um dos anos de distribuição de Dividendos Controladas o montante de Pagamento em Dinheiro - Dividendos Controladas seja inferior a R$ 39.000.000,00 (trinta e nove milhões de reais), o referido saldo remanescente deverá ser acrescido ao limite anual do(s) ano(s) subsequente(s), conforme aplicável.

3.3.2.2.1.2. Segundo Componente – Caixa para Distribuição. Eventual saldo remanescente de Créditos Quirografários Não Financeiros Opção B após pagamentos previstos na Cláusula 3.3.2.2.1.1, será pago com recursos monetários nacionais, até o limite agregado de R$ 150.000.000,00 (cento e cinquenta milhões de reais), por meio da alocação do Caixa para Distribuição, observada a Regra de Utilização do Caixa para Distribuição, a serem distribuídos *pro rata* entre os referidos saldos de Créditos Quirografários Não Financeiros Opção B, e pagos nas Datas de Amortização.

3.3.2.2.1.3. Pagamentos e Limites. Para que não restem dúvidas, o montante efetivamente recebido por cada Credor Quirografário Não Financeiro Opção B como resultado da soma dos Pagamentos em Dinheiro jamais poderá ser superior aos montantes de Pagamento em Dinheiro indicados nos itens (i) a (iv) da Cláusula 3.3.2.2, conforme aplicável.

3.3.2.2.2. Pagamento em Instrumentos de Pagamento. Eventual saldo de Créditos Quirografários Não Financeiros Opção B após os pagamentos previstos na Cláusula 3.3.2.2 acima fará jus ao recebimento de Instrumentos de Pagamento, cujos termos e

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73**, que é parte integrante deste Plano para todos os fins e efeitos.

3.3.2.2.2.1. Critério de Subscrição. Cada Credor Quirografário Não Financeiro Opção B terá o direito de receber ou subscrever R$ 1,00 (um real) de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real) em saldo de Créditos Quirografários Não Financeiros Opção B calculado conforme a Cláusula 3.3.2.2.2 acima. Caso necessário, os Créditos Concursais denominados em moeda estrangeira serão convertidos para real ou dólar norte-americano de acordo com as taxas de câmbio de venda disponíveis no Sistema de Informações do Banco Central do Brasil (SISBACEN), no Dia Útil imediatamente anterior à data do ato a ser praticado nos termos deste Plano. ("Créditos Quirografários Não Financeiros Elegíveis para Subscrição de Instrumentos de Pagamento").

3.3.2.2.2.2. Instrumentos de Pagamento Adicionais. Caso os Pagamentos em Dinheiro efetuados na forma descrita acima, até 31 de dezembro de 2025, sejam inferiores aos montantes indicados nos itens (i) a (iv) da Cláusula 3.3.2.2 para Pagamentos em Dinheiro, tal diferença será considerada um Crédito Quirografário Não Financeiro Elegível para Subscrição de Instrumentos de Pagamento, e passará a ser reestruturada e paga por meios dos Instrumentos de Pagamento. Para que não restem dúvidas, os Credores Quirografários Não Financeiros Opção B não farão jus ao recebimento de qualquer quantia paga no âmbito dos Instrumentos de Pagamento anteriormente à emissão dos Instrumentos de Pagamento adicionais por força desta Cláusula 3.3.2.2.2.2.

3.3.2.2.3. Juros e Correção. Juros e correção monetária (i) sobre Créditos Quirografários Não Financeiros Opção B que fizerem jus a Pagamentos em Dinheiro, a serem incorporados no valor de principal devido, correspondente ao IPCA, desde a Data do Pedido até a implementação de todos os pagamentos previstos na Cláusula 3.3.2.2.1; (ii) sobre os limites de Dividendos Controladas e Caixa para Distribuição descritos nas Cláusulas 3.3.2.2.1.1 e 3.3.2.2.1.2, correspondente à TR, desde a Data da Homologação Judicial do Plano; e (iii) nas hipóteses constantes da Cláusula 3.3.2.2.2, correspondentes à taxa prevista no item 3 do **Anexo 1.1.73**.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.3.3. Credores Quirografários Retardatários e Opção Padrão de Pagamento. Os Credores Quirografários que não validamente realizarem a Eleição de Opção de Pagamento, assim como os Credores Quirografários que sejam Credores Retardatários, serão reestruturados e pagos necessariamente nos termos da Opção B – Créditos Quirografários Financeiros ou da Opção B – Créditos Quirografários Não Financeiros, conforme aplicável, sendo que (i) para os pagamentos a título de Pagamento em Dinheiro, se aplicável, o primeiro pagamento será devido apenas no último Dia Útil do 12º (décimo segundo) mês contado da data da certidão de trânsito em julgado da decisão que determinar a inclusão do referido Crédito Quirografário na Lista de Credores; e (ii) para os pagamentos a título de Instrumentos de Pagamento, os respectivos Credores Concursais terão direito a receber todos os pagamentos realizados em data-base posterior ao trânsito em julgado da decisão que determinar a inclusão do referido Crédito Retardatário na Lista de Credores.

3.3.4. Pagamento dos Credores Quirografários Partes Relacionadas. O pagamento dos Créditos Quirografários detidos por Credores Quirografários Partes Relacionadas estará subordinado à quitação integral dos Créditos Quirografários dos demais Credores Quirografários, sendo certo que, após a integral quitação destes, os Credores Quirografários Partes Relacionadas terão seus Créditos Quirografários pagos nos termos das Cláusulas 3.3.1, 3.3.2 ou 3.3.3 acima, conforme aplicável.

**3.4. Créditos ME/EPP.** Os Credores ME/EPP terão seus Créditos ME/EPP reestruturados e integralmente pagos da seguinte forma:

3.4.1. Pagamento Inicial. Pagamento em recursos monetários nacionais, até o limite de R$ 150.000,00 (cento e cinquenta mil reais) por Credor ME/EPP, em dinheiro, em parcela única, no último Dia Útil do 12º (décimo segundo) mês contado da Data de Homologação Judicial do Plano.

3.4.2. Pagamento em Instrumentos de Pagamento. Eventual saldo remanescente existente após o pagamento previsto na Cláusula 3.4.1 acima (sendo tal saldo de Créditos ME/EPP doravante referido como "Saldo de Créditos ME/EPP"), será pago em Instrumentos de Pagamento, cujos termos e condições de emissão, vigência, vencimento e remuneração estão detalhados no **Anexo 1.1.73**, e segundo os termos e condições de eleição de modalidade de Instrumentos de Pagamento descritos na Cláusula 4.1 abaixo.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.4.2.1. Critério de Subscrição. Cada Credor ME/EPP terá o direito de receber ou subscrever R$ 1,00 (um real) de valor de face de Instrumentos de Pagamento para cada R$ 1,00 (um real) em Saldo de Créditos ME/EPP ("Créditos ME/EPP Elegíveis para Subscrição de Instrumentos de Pagamento").

3.4.3. Juros e Correção. Juros e correção monetária (i) sobre o saldo de Créditos ME/EPP devidos nos termos da Cláusula 3.4.1, a serem incorporados no valor de principal devido, bem como sobre os valores indicados na Cláusula 3.4.1, correspondentes ao IPCA; e (ii) nas hipóteses constantes da Cláusula 3.4.2, correspondentes à taxa prevista na Cláusula 3 do **Anexo 1.1.73.**

3.4.4. Crédito ME/EPP Retardatário. Os Créditos ME/EPP Retardatários serão pagos na forma descrita na Cláusula 3.4.1 acima, contando-se o termo inicial para pagamento a partir do trânsito em julgado da decisão que determinar a inclusão do referido Crédito ME/EPP Retardatário na Lista de Credores. Os Créditos ME/EPP Retardatários que tenham valor superior ao limite estabelecido na Cláusula 3.4.1 acima, serão pagos por meio de Instrumentos de Pagamento – Debêntures Privadas, sendo certo que os Credores ME/EPP Retardatários titulares de tais Créditos somente farão jus ao recebimento dos Recursos de Distribuição aos Instrumentos de Pagamento e recursos decorrentes de Eventos de Amortização Extraordinários destinados aos titulares de Instrumentos de Pagamento, após o trânsito em julgado da decisão que determinar a inclusão do referido Crédito Retardatário na Lista de Credores.

**3.5. Créditos Ilíquidos.** Todos os Créditos Ilíquidos, incluindo os Créditos ainda sujeitos a Ações Judiciais e/ou Procedimentos Arbitrais, que são tratados neste Plano como Créditos Ilíquidos, estão integralmente sujeitos aos termos e condições deste Plano e aos efeitos da Recuperação Judicial, nos termos do artigo 49 da LFR. Os Créditos Ilíquidos, uma vez materializados e reconhecidos por decisão judicial transitada em julgado e/ou arbitral final e irrecorrível, serão pagos conforme tratamento atribuídos aos Créditos Retardatários nos termos deste Plano e na classe correspondente ao Crédito Ilíquido em questão.

**3.6. Créditos *Intercompany*.** O pagamento dos Créditos *Intercompany* será, em quaisquer hipóteses, subordinado a todos os Créditos Concursais em termos de estrutura, garantias e tempo de pagamento. Os Créditos *Intercompany* poderão ser convertidos em capital social ou poderão ser objeto de compensação, nos termos dos artigos 368 e seguintes do Código Civil (inclusive o

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

artigo 380), desde que, em qualquer das hipóteses, a conversão em capital, subordinação ou compensação (cumulativamente): (i) não gere transferência ou impacto de caixa; (ii) não implique qualquer tipo de desembolso pelas Recuperandas ou Requerentes; (iii) não resulte na ampliação do valor da exposição de crédito ou de débito de qualquer Recuperanda ou Requerente, como credora ou devedora de qualquer uma delas, entre si; (iv) não reduza ou afete negativamente as obrigações de pagamento das Recuperandas e Requerentes neste Plano; e (v) não reduza, coloque em risco ou afete negativamente, os direitos, créditos e prerrogativas, incluindo garantias, dos Credores Concursais e dos Credores Extraconcursais não envolvidos na operação, e segundo a legislação aplicável, observado o quanto previsto nas Cláusulas 6.1 e 7.4. As Recuperandas e as Requerentes poderão oportunamente convencionar formas alternativas de extinção desses Créditos *Intercompany* observadas as hipóteses, cumulativamente, dos itens (i) a (v) desta Cláusula, os procedimentos e legislação aplicáveis e o disposto neste Plano.

**3.7. Disposições Gerais de Pagamento dos Créditos Concursais**

3.7.1. Reclassificação de Créditos. Na hipótese de Créditos Concursais indicados na Lista de Credores sobre os quais, na Homologação Judicial do Plano, haja impugnação de crédito que verse sobre a sua reclassificação ainda pendente de decisão judicial transitada em julgado, o respectivo Credor Concursal está sujeito aos termos e condições de pagamento aplicáveis à classe na qual seu Crédito encontra-se alocado na Homologação Judicial do Plano até a data da certidão de trânsito em julgado da decisão judicial que determinar sua reclassificação, sendo certo que o Credor deverá adotar todas as medidas perante as Recuperandas para que seja promovida a alteração dos termos e condições de pagamento de seus Créditos em conformidade com a sua nova classe. Caso seja posteriormente reconhecida a reclassificação do Crédito que implique modificação dos termos e condições de pagamento já aplicados: (i) na hipótese de tal modificação representar majoração dos valores a serem pagos, o saldo majorado do respectivo Crédito será considerado Crédito Retardatário para fins de pagamento, sendo certo os Créditos reclassificados não farão jus a pagamentos que já tenham sido realizados às classes para as quais tenham sido realocados em decorrência da reclassificação, ou (ii) na hipótese de tal modificação representar diminuição dos valores a serem pagos ou a entrega de outro meio de recuperação, o Credor Concursal deverá restituir à Recuperanda os valores que já tenham sido pagos e que superem o valor de seu Crédito, tal como retificado, ou os títulos mobiliários que tenham sido a ele entregues, indevidamente, em correspondência ao montante reduzido.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.7.2. Majoração dos Créditos. Na hipótese de se verificar eventual majoração no valor de qualquer Crédito decorrente de decisão judicial transitada em julgado ou acordo entre as partes, o montante correspondente à diferença entre o Crédito decorrente de decisão judicial transitada em julgado ou acordo entre as partes e o montante reconhecido na Lista de Credores será pago na forma prevista neste Plano para os Créditos Retardatários de cada classe. Neste caso, as regras de pagamento do valor majorado de tais Créditos, notadamente quanto à incidência de juros, passarão a ser aplicáveis apenas a partir do referido trânsito em julgado da decisão judicial ou da data de celebração do acordo entre as partes.

3.7.3. Redução dos Créditos. Na hipótese de se verificar eventual redução no valor de Créditos decorrentes de decisão judicial transitada em julgado ou acordo entre as partes, e a consequente retificação da Lista de Credores, o Credor Concursal titular do respectivo Crédito Concursal deverá restituir às Recuperandas, no prazo de 10 (dez) Dias Úteis a contar do referido trânsito em julgado ou acordo entre as partes, conforme o caso, os valores que já tenham sido pagos e que superem o valor de seu Crédito Concursal, tal como retificado, ou os títulos mobiliários que tenham sido a ele entregues, indevidamente, em correspondência ao montante reduzido.

3.7.4. Notificação. Para fins desta Cláusula, o Credor Concursal deverá notificar a Recuperandas, na forma da Cláusula 8.3, para comunicar o trânsito em julgado da decisão judicial que houver reconhecido a alteração do Crédito Concursal já reconhecido na Lista de Credores do Administrador Judicial.

3.7.5. Data do Pagamento. Na hipótese de qualquer pagamento ou obrigação desde Plano estar previsto para ser realizado ou satisfeita em um dia que não seja considerado um Dia Útil, o referido pagamento ou obrigação deverá ser realizado ou satisfeita, conforme o caso, no Dia Útil seguinte.

3.7.6. Forma de Pagamento. Conforme aplicável, os valores devidos nos termos deste Plano serão pagos por meio da transferência direta de recursos à conta bancária do respectivo credor, incluindo envio de ordens de pagamento ou remessa para o exterior, por meio de documento de ordem de crédito (DOC), ou de transferência eletrônica disponível (TED), ou qualquer outro documento que comprove a transação, sendo que as Recuperandas poderão contratar um agente de pagamento para tanto. O comprovante de depósito do valor creditado servirá de prova de quitação do respectivo pagamento.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.7.7. Contas Bancárias dos Credores. Conforme aplicável, os Credores Concursais devem informar às Recuperandas, nos contatos indicados e na forma da Cláusula 8.3, suas respectivas contas bancárias para esse fim.

3.7.7.1. Ausência de indicação de Contas Bancárias. Os pagamentos que não forem realizados em razão de os Credores Concursais não terem informado suas contas bancárias ou terem prestado essa informação de maneira equivocada ou incompleta não serão considerados como descumprimento do Plano. Não haverá a incidência de juros ou encargos moratórios se os pagamentos não tiverem sido realizados em razão de os Credores Concursais não terem informado tempestivamente e corretamente seus dados bancários para depósito.

3.7.8. Alteração da Titularidade de Crédito Concursal. Na hipótese de se verificar a eventual alteração da titularidade de determinado Crédito Concursal, seja por cessão, sucessão, sub-rogação ou qualquer outra forma admitida, durante a vigência e o cumprimento deste Plano, caberá ao respectivo cessionário, sucessor ou credor por sub-rogação adotar as medidas necessárias para reconhecimento de sua titularidade sobre o Crédito Concursal em questão e para retificação da Lista de Credores, devendo notificar as Recuperandas e, até que a Recuperação Judicial seja encerrada, notificar também o Juízo da Recuperação Judicial e o Administrador Judicial, na forma da Cláusula 8.3. Em qualquer caso, a alteração na titularidade do Crédito Concursal não afetará os pagamentos que tenham sido eventualmente realizados ao Credor Concursal original, ou a modalidade de Instrumento de Pagamento eleita por ele na forma deste Plano.

3.7.8.1. Partes Relacionadas. Caso o cessionário ou o cedente do Crédito Concursal seja um Credor Quirografário Parte Relacionada ou integrante do Grupo Odebrecht, o respectivo Crédito Concursal será pago nos termos das Cláusulas 3.3.4 e 3.6, respectivamente.

3.7.9. Pagamentos por Terceiros. Os Credores Concursais que sejam titulares de Créditos Concursais nos quais um Terceiro figure como devedor principal ou garantidor, deverão observar os seguintes termos:

3.7.9.1. Créditos Concursais por Força de Garantias Outorgadas por Recuperandas. Os Créditos Concursais que correspondam a obrigações de pagamento nas quais uma ou mais

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Recuperandas figurem como prestadoras de garantias que não sejam fiduciárias ("Créditos Concursais por Garantia Outorgada por Recuperandas"), terão, exclusivamente no que se refere a tais garantias, seus Créditos Concursais por Garantia Outorgada por Recuperandas reestruturados nos termos da Cláusula 3 deste Plano e tais Credores Concursais receberão, por parte das Recuperandas, seus Créditos Concursais na mesma forma que os demais Credores Concursais da sua classe, independentemente da exigibilidade da dívida contra o devedor principal. As obrigações de Terceiros garantidas por Recuperandas se manterão válidas, vigentes, exigíveis e eficazes de acordo com os seus respectivos termos e condições. Nada neste Plano significará ou deverá ser interpretado ou usado para alterar ou modificar tais obrigações de Terceiros, independentemente da novação dos termos do pagamento da respectiva Coobrigação prestada por qualquer Recuperanda, podendo tais Credores exigir ou cobrar a dívida de tal Terceiro de acordo com os termos dos respectivos instrumentos, sem prejuízo, caso qualquer Credor opte, a seu exclusivo critério, por exercer uma das Opções de Pagamento constantes das Cláusulas 4.1.2.1 e 4.1.3.1.

3.7.9.1.1. Créditos Concursais por Garantias Outorgadas por Recuperandas que Sejam Efetivamente Pagos por Terceiro. Sem prejuízo do quanto disposto na Cláusula 7.7, caso os Créditos Concursais por Garantia Outorgada por Recuperandas sejam, a qualquer tempo, no todo ou em parte, pagos pelo respectivo Terceiro (na qualidade de devedor principal) ou em benefício deste Terceiro, os referidos Créditos Concursais serão considerados amortizados, no que se refere às obrigações das Recuperandas previstas neste Plano, sob pena de enriquecimento sem causa do Credor. O saldo de Créditos existente segundo as condições originalmente contratadas que não tenha sido amortizado por meio do pagamento referido nesta Cláusula, também não será considerado quitado em relação ao Crédito Concursal por Garantia Outorgada por Recuperanda em questão, sendo certo que as Recuperandas jamais serão obrigadas a realizar qualquer pagamento que supere o valor do Crédito Concursal corrigido e remunerado nos termos deste Plano. Caso as Recuperandas tenham efetuado qualquer pagamento ou celebrado a dação em pagamento prevista na Cláusula 3.2.3.1 que, somados a eventuais valores pagos pelo Terceiro, supere o valor do Crédito nas condições originalmente contratadas, incluindo principal, juros e demais encargos incidentes até o respectivo pagamento, e/ou entregue Instrumentos de Pagamento – *Bonds*, Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas em benefício de tal Credor Concursal, o referido Credor Concursal deverá devolver às Recuperandas, imediatamente, os montantes

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

pagos e/ou os referidos títulos recebidos a maior (ou seja, incluindo principal, juros e demais encargos incidentes até o respectivo pagamento). Caso as Recuperandas ainda não tenham efetuado qualquer pagamento, e/ou entregue Instrumentos de Pagamento – *Bonds*, Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas ao referido Credor Concursal e o Credor Concursal tenha recebido a totalidade dos valores devidos nos termos originais dessa dívida de Terceiro, as Recuperandas ficarão desobrigadas de efetuar os respectivos pagamentos ou de entregar os respectivos Instrumentos de Pagamento – *Bonds*, Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas em sua totalidade ou na proporção dos Créditos Concursais pagos pelo Terceiro.

3.7.9.1.2. Reestruturação do Crédito celebrada com Terceiro. Eventual reestruturação de Créditos Concursais por Garantias Outorgadas por Recuperandas celebrada com Terceiros após a Data do Pedido não altera as condições, valores e garantias originais desses Créditos Concursais contra as Recuperandas, que realizarão o pagamento de acordo com os termos e condições estabelecidas neste Plano.

3.7.9.2. Créditos Concursais Garantidos por Terceiro. Os Credores Concursais cujos Créditos Concursais correspondam a obrigações de pagamento nas quais uma Recuperanda figure como devedora principal e um ou mais Terceiros figurem como garantidores ("Créditos Concursais Garantidos por Terceiro"), terão seus Créditos Concursais Garantidos por Terceiro pagos nos termos da Cláusula 3 deste Plano, e poderão eleger quaisquer das modalidades de Instrumentos de Pagamento nos termos da Cláusula 4.1 fazendo jus a quaisquer pagamentos feitos nos termos deste Plano, sem prejuízo do direito dos Credores Concursais de perseguirem o recebimento dos Créditos, nas condições originalmente contratadas, contra o Terceiro. As garantias de Terceiros se manterão válidas, vigentes, exigíveis e eficazes de acordo com os seus respectivos termos e condições originalmente contratados. Nada neste Plano significará ou deverá ser interpretado ou usado para alterar ou modificar tais obrigações de Terceiros, independentemente da novação dos termos do pagamento do Crédito Concursal por qualquer Recuperanda, podendo os Credores exigir ou cobrar a dívida, nas condições originalmente contratadas, de tal Terceiro de acordo com os termos dos respectivos instrumentos.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.7.9.2.1. Créditos Concursais Garantidos por Terceiro que Sejam Efetivamente Pagos por Terceiro. Caso os Créditos Concursais Garantidos por Terceiros sejam, a qualquer tempo, no todo ou em parte, pagos pelo respectivo Terceiro ou em benefício deste Terceiro, o Terceiro se sub-rogará nos direitos do respectivo Credor Concursal, observado, em caso de sub-rogação parcial do Terceiro nos direitos do Credor Concursal, o previsto no art. 351 do Código Civil, aplicando-se o quanto disposto na Cláusula 3.7.8 e 3.7.8.1.

3.7.9.2.2. Reestruturação do Crédito Garantidos por Terceiro celebrada com Terceiro. Eventual reestruturação de Créditos Concursais Garantidos por Terceiros celebrada com Terceiro após da Data do Pedido não altera as condições, valores e garantias originais desses Créditos Concursais contra as Recuperandas, que realizarão o pagamento de acordo com os termos e condições estabelecidas neste Plano independentemente das condições reestruturadas com o Terceiro.

3.7.10. Compensação. As Recuperandas estão autorizadas a efetuar compensações de crédito, nos termos do artigo 368 e seguintes do Código Civil, nos casos em que as Recuperandas e seus Credores Concursais possuírem obrigações recíprocas de créditos e débitos, desde que prévia e expressamente autorizadas pelos respectivos Credores Concursais. Para que não restem dúvidas, eventual saldo remanescente após efetuada a compensação prevista nesta Cláusula receberá o tratamento conferido à natureza do respectivo Crédito, nos termos deste Plano. Esta Cláusula não se aplica à compensação dos Créditos *Intercompany,* os quais devem observar as disposições da Cláusula 3.6.

3.7.11. Custos e Tributos. As obrigações financeiras decorrentes do presente Plano e todos os pagamentos a serem realizados pelas Recuperandas, nos termos deste Plano, serão cumpridos e pagos, líquidos de quaisquer tributos presentes e futuros, impostos, encargos, taxas ou outras cobranças de qualquer natureza.

**3.8. Créditos Extraconcursais**. Fica ressaltado que os Créditos Extraconcursais não estão sujeitos e não serão novados por força da aprovação do presente Plano, sendo certo que a sua reestruturação dependerá de negociações bilaterais com os Credores Extraconcursais, bem como que nada neste Plano poderá desconstituir ou de qualquer forma modificar garantias fiduciárias outorgadas em favor de Credores Extraconcursais.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

3.8.1. Garantias Fiduciárias Outorgadas por Recuperandas. As garantias fiduciárias outorgadas por Recuperandas, inclusive no âmbito da Consolidação Substancial das Recuperandas, se manterão válidas, vigentes, exigíveis e eficazes de acordo com os seus respectivos termos e condições originalmente contratados. Nada neste Plano significará ou deverá ser interpretado ou usado para alterar ou modificar tais obrigações e prerrogativas decorrentes de tais garantias fiduciárias, podendo os Credores exigir a garantia fiduciária, nas condições originalmente contratadas.

## 4. ATOS DE IMPLEMENTAÇÃO DA REESTRUTURAÇÃO DOS CRÉDITOS

**4.1. Eleição do Instrumento de Pagamento**. Os Credores com Garantia Real, Credores Quirografários Financeiros Opção B, os Credores Quirografários Não Financeiros Opção B e os Credores ME/EPP que tiverem seus Créditos Concursais reestruturados por meio de Instrumentos de Pagamento poderão escolher dentre os seguintes títulos de dívida, observados os requisitos a seguir descritos, sendo certo que tais Credores poderão escolher mais de um título de dívida para receber seus Créditos Concursais:

4.1.1. Plano. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento poderão optar por ter os termos e condições da reestruturação de seus Créditos Elegíveis para Subscrição de Instrumentos de Pagamento instrumentalizados pelo Plano na forma do **Anexo 1.1.73**, sem a emissão de quaisquer valores mobiliários, que, por força da Homologação Judicial, passarão a reger os termos de pagamento dos respectivos Créditos Concursais ("Instrumentos de Pagamento – Plano").

4.1.1.1. Efeitos da Opção. A opção pelo recebimento do Crédito Concursal por meio do Instrumento de Pagamento – Plano não implica na quitação de obrigação de Terceiro perante o respectivo Credor Concursal, observadas as Cláusulas 3.7.9 e seguintes.

4.1.2. Debêntures Privadas. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento poderão optar por subscrever, com seus Créditos Concursais, debêntures colocadas privadamente, a serem emitidas por meio de escritura de emissão em forma substancialmente igual à minuta presente no **Anexo 4.1.2** deste Plano ("Instrumentos de Pagamento – Debêntures Privadas").

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

fls. 31843

4.1.2.1. Implementação da Opção. Todo e qualquer Credor que optar pelo recebimento de Instrumentos de Pagamento – Debêntures Privadas deverá subscrever e integralizar as debêntures com seus respectivos Créditos, sem prejuízo da manutenção das garantias prestadas por Terceiros.

4.1.3. Debêntures Públicas. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento que, cumulativamente, (i) por razões regulatórias ou regulamentares, não podem ser titulares de Instrumentos de Pagamento – Debêntures Privadas, e (ii) sejam investidores profissionais nos termos da Instrução CVM nº 554, de 17 de dezembro de 2014, conforme alterada, poderão optar por subscrever debêntures a serem distribuídas publicamente, com esforços restritos de captação nos termos da Instrução CVM nº 476, de 16 de janeiro de 2009, conforme alterada, cuja escritura de emissão será firmada substancialmente igual à minuta presente no **Anexo 4.1.3** deste Plano, observadas as disposições regulatórias aplicáveis ("Instrumento de Pagamento – Debêntures Públicas").

4.1.3.1. Implementação da Opção. Todo e qualquer Credor que optar pelo recebimento de Instrumentos de Pagamento – Debêntures Públicas deverá subscrever e integralizar as debêntures com seus respectivos Créditos, sem prejuízo da manutenção das garantias prestadas por Terceiro.

4.1.4. *Bonds*. Todos os titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento que são atualmente titulares de títulos, bônus ou notas de pagamento, na qualidade de (i) investidor institucional qualificado (*qualified institutional buyers*), conforme definidos na regra 144 A do *Securities Act*; (ii) pessoas não americanas (*non – US persons*), conforme definido no Regulamento S (*Regulation S*), de acordo com o *Securities Act*, localizadas fora dos Estados Unidos da América; ou (iii) investidores credenciados institucionais (*institutional accredited investors*), conforme definido na Regra 501, de acordo com o *Securities Act*, poderão optar por receber títulos de dívida custodiados e registrados no sistema DTC, a serem emitidos em dólares norte-americanos e regidos sob as leis do Estado de Nova Iorque, Estados Unidos da América, cujo conteúdo compreenda os termos e condições descritos no **Anexo 1.1.73** deste Plano ("Instrumentos de Pagamento - *Bonds*").

**4.2. Procedimento de escolha da Opção Pagamento e do Instrumento de Pagamento.** Para formalizar a escolha da Opção de Pagamento e dos Instrumentos de Pagamento que deseja receber, se aplicável, os Credores com Garantia Real, os Credores Quirografários e os Credores

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

ME/EPP deverão manifestar, em até 15 (quinze) Dias Corridos contados do término do Prazo de Adesão à Consolidação Substancial ("Prazo para Eleição"), a sua escolha por um dos Instrumentos de Pagamento previstos nas Cláusulas 4.1.1 a 4.1.4. Caso não haja escolha da Opção de Pagamento no Prazo para Eleição, será aplicável o previsto na Cláusula 4.3.1.

**4.3. Envio de Documentos.** O Credor Concursal deverá enviar e-mail para os endereços eletrônicos aj_odb@alvarezandmarsal.com e rjodb@odebrecht.com, encaminhando (i) o formulário constante do **Anexo 4.3** devidamente preenchido e assinado; e (iii) os seguintes documentos:

(i) documentos básicos. Todos os Credores com Garantia Real, Credores Quirografários e Credores ME/EPP deverão anexar (a) documentos comprobatórios dos poderes do remetente e do subscritor para efetuar tal escolha em benefício do respectivo Credor Concursal, incluindo (a.1.) no caso de pessoa física, cópia de documento de identificação oficial válido em território nacional, e (a.2.) no caso de pessoa jurídica, cópia dos atos societários e da procuração que lhe outorga poderes de representação do respectivo Credor; e (b) indicar a conta bancária que deverá ser utilizada para o recebimento de quaisquer valores a que faz jus; e

(ii) documentos específicos. Os Credores Concursais que optarem por eleger receber Instrumentos de Pagamento – Debêntures Públicas deverão anexar também a declaração constante do **Anexo 4.3(ii)** devidamente assinada pelo respectivo Credor.

4.3.1. Opção Diferida. Aqueles Credores que não optarem por um Instrumento de Pagamento no Prazo para Eleição terão sua escolha por um dos Instrumentos de Pagamento de Pagamento previstos nas Cláusulas 4.1.1 a 4.1.4 diferida pelo prazo de 5 (cinco) anos contados da Data de Homologação Judicial do Plano.

4.3.2. Relatório do procedimento de escolha da Opção Pagamento e do Instrumento de Pagamento. Em até 30 (trinta) Dias Corridos contados do término do Prazo para Eleição, o Administrador Judicial deverá apresentar relatório, nos autos da Recuperação Judicial e no seu sítio eletrônico (https://www.alvarezandmarsal.com/content/grupo-odebrecht), informando o resultado do procedimento de escolha da Opção de Pagamento e do Instrumento de Pagamento, com a indicação da alocação dos Créditos Concursais entre as Opções de

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Pagamento e os Instrumentos de Pagamento disponíveis, incluindo os Credores Concursais que optaram por diferir a escolha pela Opção de Pagamento por não terem feito validamente a eleição durante o Prazo para Eleição ("Publicação do Quadro de Eleição").

4.3.3. Vinculação e Efeitos. A eleição da Opção de Pagamento e do Instrumento de Pagamento feita pelos Credores Concursais realizada na forma prescrita neste Plano, é final, definitiva, vinculante e irrevogável e irretratável, sendo que os efeitos da eleição da Opção de Pagamento e do Instrumento de Pagamento retroagirão à Data de Homologação Judicial do Plano.

4.3.4. Créditos Objeto de Impugnações. Poderão exercer o direito de eleger a Opção de Pagamento e o Instrumento de Pagamento de sua preferência, nos termos e prazos deste Plano, os Credores com Garantia Real, os Credores Quirografários Financeiros Opção B, os Credores Quirografários Não Financeiros Opção B e os Credores ME/EPP, incluindo aqueles cujos Créditos tenham sido objeto de impugnações à Lista de Credores, nos termos do art. 8º da LFR, as quais não tenham sido objeto de decisão transitada em julgado à época do término do Prazo para Eleição. Nesses casos, o Crédito será utilizado para cálculo da alocação dos Instrumentos de Pagamento, devendo as Recuperandas, (i) em relação à parcela incontroversa do Crédito, se houver, instrumentalizar a reestruturação do respectivo Crédito eleita nos termos deste Plano; e (ii) em relação à parcela controversa, instrumentalizar a reestruturação do respectivo Crédito nos mesmos termos da parcela incontroversa caso já tenha sido eleito o Instrumento de Pagamento e não tenha transcorrido o prazo previsto na Cláusula 4.3.1. Caso já tenha transcorrido o prazo previsto na Cláusula 4.3.1, as Recuperandas deverão instrumentalizar a reestruturação do respectivo Crédito controverso na forma de Instrumentos de Pagamento – Plano, quando, em decorrência de decisão transitada em julgado, tais montantes se tornarem incontroversos (na exata medida em que forem devidos ao Credor Concursal pelas Recuperandas).

4.3.5. Instrumento de Pagamento Padrão – Créditos com Garantia Real. Os Credores com Garantia Real que não validamente elegerem o Instrumento de Pagamento e os Credores com Garantia Real Retardatários terão seus Créditos Elegíveis para Subscrição dos Instrumentos de Pagamento necessariamente reestruturados na forma de Instrumentos de Pagamento – Plano.

4.3.6. Instrumento de Pagamento Padrão – Créditos Quirografários. Os Credores Quirografários que não validamente elegerem o Instrumento de Pagamento e os Credores

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Quirografários Retardatários terão seus Créditos Elegíveis para Subscrição dos Instrumentos de Pagamento necessariamente reestruturados na forma de Instrumentos de Pagamento – Plano.

4.3.7. Instrumento de Pagamento Padrão – Créditos ME/EPP. Os Credores ME/EPP que não validamente elegerem o Instrumento de Pagamento, terão seus Créditos Elegíveis para Subscrição dos Instrumentos de Pagamento necessariamente reestruturados na forma de Instrumentos de Pagamento – Plano.

**4.4. Emissão dos Instrumentos de Pagamento – Debêntures Privadas, Debêntures Públicas e *Bonds***. A Recuperanda, que for a Emissora/Devedora Principal, na forma prevista no Item 1 do **Anexo 1.1.73,** deverá formalizar todos os atos necessários e providenciar a emissão, colocação e distribuição, conforme o caso, dos Instrumentos de Pagamento – Debêntures Privadas, Instrumentos de Pagamento – Debêntures Públicas e Instrumentos de Pagamento – *Bonds* nos prazos de até (i) 300 (trezentos) Dias Corridos contados da Publicação do Quadro de Eleição, desde que titulares de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento correspondentes a, no mínimo, R$ 10.000.000.000,00 (dez bilhões de reais) tenham optado por receber Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas, considerados de forma agregada, até o término do Prazo de Eleição; ou (ii) 100 (cem) Dias Corridos contados do encerramento do prazo indicado no item (ii) da Cláusula 4.2 acima, independentemente do valor de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento que optarem por receber Instrumentos de Pagamento – Debêntures Públicas ou Instrumentos de Pagamento – Debêntures Privadas; e (iii) 480 (quatrocentos e oitenta) Dias Corridos contados da Publicação do Quadro de Eleição, para os Instrumentos de Pagamento – *Bonds* ou 590 (quinhentos e noventa) Dias Corridos contados do trânsito em julgado da decisão de Homologação *Chapter 15*, o que ocorrer por último.

**4.5. Emissões Adicionais**. Caso a Recuperanda, que seja a Emissora/Devedora Principal, na forma prevista no Item 1 **Anexo 1.1.73**, por força dos termos deste Plano, deva realizar mais de uma emissão, colocação e distribuição, conforme o caso, dos Instrumentos de Pagamento – Debêntures Privadas, Debêntures Públicas ou *Bonds* (cada uma, uma "Emissão Adicional"), a ODB deverá fazer com que sejam formalizados todos os atos necessários e providenciadas a emissão, colocação e distribuição dos referidos Instrumentos de Pagamento em até 360 (trezentos e sessenta) Dias Corridos contados da verificação da obrigação de implementar as Emissões Adicionais, respeitados os prazos regulatórios vigentes e aplicáveis.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**4.6. Disposições Transitórias**. Uma vez verificado saldo de Caixa para Distribuição a ser destinado aos titulares de Instrumentos de Pagamento em uma Data de Amortização sem que o respectivo Instrumento de Pagamento tenha sido emitido e subscrito pelos, ou entregue aos Credores Concursais, as Recuperandas efetuarão os pagamentos eventualmente devidos como se tivessem aderido à opção de pagamento previsto na Cláusula 4.1.1.

4.6.1. Efeitos do Diferimento da Opção de Pagamento. Os Créditos Elegíveis para Subscrição de Instrumentos de Pagamento detido por Credores que optarem por diferir o exercício do direito de escolher uma das Opções de Pagamento nos termos da Cláusula 4.2(ii) serão exigíveis nos termos das Cláusulas 4.1.1 e 7.3.

**4.7. Implementação no Exterior**. As Recuperandas ficam autorizadas a adotar todas as medidas necessárias para (i) submeter a Aprovação do Plano ao processo de homologação de efeitos em curso perante a *United States Bankruptcy Court of the Southern District of New York* (*Chapter 15 – Case No. 19-12731 (SMB)*), com o objetivo de conferir efeitos ao Plano em território norte-americano, nos termos da legislação aplicável ("Homologação *Chapter 15*"), bem como (ii) iniciar e/ou dar andamento a outros procedimentos judiciais, extrajudiciais ou administrativos, sejam de insolvência ou de outra natureza, em outras jurisdições além da República Federativa do Brasil, conforme necessário, para a implementação desta Recuperação Judicial, incluindo, mas não se limitando, aos processos de insolvência ou procedimentos necessários à implementação das disposições deste Plano. Os processos auxiliares no exterior não poderão alterar os termos e as condições deste Plano.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

fls. 31848

**5. ALIENAÇÃO E/OU ONERAÇÃO DE ATIVOS**

**5.1. Alienação de bens do ativo circulante.** As Recuperandas poderão alienar, vender, locar, arrendar, dar em pagamento, remover, onerar ou oferecer em garantia, inclusive garantia judicial, observados parâmetros de mercado, quaisquer bens, ativos e/ou direitos que sejam parte de seu ativo circulante sem necessidade de autorização ou cientificação adicional do Juízo da Recuperação e/ou dos Credores Concursais, sempre observados direitos e prerrogativas assegurados contratualmente a terceiros, Credores com Garantia Real, Credores Extraconcursais, ou perante autoridades públicas sobre o bem ou ativo, bem como os limites estabelecidos na lei aplicável e neste Plano, (i) desde que o bem ou ativo esteja desonerado; ou (ii) se onerado, desde que a transação seja autorizada pelo respectivo Credor Extraconcursal ou Credor com Garantia Real, conforme aplicável.

**5.2. Alienação de bens do ativo não circulante**. As Recuperandas estarão autorizadas a alienar, vender, locar, arrendar, dar em pagamento, remover, onerar ou oferecer em garantia, inclusive garantia judicial, observados parâmetros de mercado, em benefício de qualquer parte, sempre observados direitos e prerrogativas assegurados contratualmente a terceiros, Credores com Garantia Real, Credores Extraconcursais, ou perante autoridades públicas sobre o bem ou ativo, bem como os limites estabelecidos na lei aplicável e neste Plano:

(i) quaisquer dos bens ou ativos que sejam parte do seu ativo não-circulante e que estejam indicados no **Anexo 5.2**, sob qualquer modalidade, inclusive por meio de alienação de UPI’s, nos termos da Cláusula 5.3 abaixo, (i.a.) desde que o bem ou ativo esteja desonerado; ou (i.b.) se onerado, desde que a transação seja autorizada pelo respectivo Credor Extraconcursal ou Credor com Garantia Real, conforme aplicável; e

(ii) quaisquer dos bens ou ativos que sejam parte do seu ativo não-circulante e não estejam indicados no **Anexo 5.2** deste Plano, desde que o valor contábil líquido de depreciação de tal (tais) bens ou ativos, considerados individualmente e de forma agregada dentro do mesmo ano fiscal, seja menor ou igual a R$ 50.000.000,00 (cinquenta milhões de reais) em cada ano fiscal, e, ainda, (ii.a.) desde que o bem ou ativo esteja desonerado; ou (ii.b.) se onerado, desde que a

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

transação seja autorizada pelo respectivo Credor Extraconcursal ou Credor com Garantia Real, conforme aplicável.

5.2.1. Alienação de bens de Requerentes que venham a aderir à Consolidação Substancial. Para que não restem dúvidas, todos os bens e ativos parte do ativo não-circulante de Requerentes que venham a aderir à Consolidação Substancial das Recuperandas estarão sujeitos às regras de alienação de ativos prevista neste Capítulo 5, sendo certo que o **Anexo 5.2** passará a contemplar, para todos os fins e efeitos, o **Anexo 1.1.2** do Termo de Adesão à Consolidação Substancial.

**5.3. Alienação de UPIs.** A alienação de UPIs, salvo regras previstas neste Plano, será realizada observando-se os arts. 60 e 142 da LFR, ou mediante venda direta, nos termos e condições gerais definidos pelas Recuperandas.

5.3.1. Ausência de Sucessão. Tendo em vista que a alienação das UPIs observará o quanto disposto nos artigos 60 e 142 da LFR, em nenhuma hipótese, haverá sucessão do adquirente por quaisquer dívidas e obrigações das Recuperandas, inclusive as de natureza tributária, trabalhista, as relacionadas ao Grupo Odebrecht e às Partes Relacionadas e as derivadas de obrigações assumidas no âmbito da Lei nº 12.846, de 1º de agosto de 2013. A ausência de sucessão deverá ser reconhecida pelo Juízo da Recuperação Judicial.

## 6. ESTRUTURA SOCIETÁRIA E REORGANIZAÇÃO

**6.1. Reorganização**. As Recuperandas ficam autorizadas a realizar operações de reorganização societária listadas no **Anexo 6.1** ou, caso não listadas, aquelas necessárias para implementação deste Plano, bem como fusões, incorporações, incorporações de ações, cisões, reduções de capital e transformações, ou promover transferências patrimoniais dentro do Grupo Odebrecht, desde que, cumulativamente, (i) não implique em transferência de recursos (caixa) e/ou ativos para entidades do Grupo Odebrecht que não as Recuperandas, exceto se permitida por este Plano na Cláusula 7.4, incluindo, mas não se limitando, participações societárias diretas ou indiretas detidas pelas Recuperandas, (ii) não implique ou prejudique eventuais direitos e obrigações contraídas pelas Recuperandas e/ou por outras entidades do Grupo Odebrecht em instrumentos celebrados com Credores com garantia fiduciária prestada por Recuperandas ou terceiros, (iii) não implique em efeitos de consolidação com as Recuperandas de Requerentes que não tiveram a Adesão à Consolidação Substancial aprovada, (iv) seja implementada com o objetivo de otimizar estrutura ou reduzir custos e (v) não resulte em participação recíproca ou

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

cruzamento de participações societárias entre empresas do Grupo Odebrecht, sendo desde logo permitidos aumentos de capital mediante emissão de novas ações ou quotas para serem integralizadas com participações em sociedades do Grupo Odebrecht, Créditos *Intercompany* e a capitalização de Créditos *Intercompany*. As Recuperandas. ainda, poderão realizar quaisquer operações de reorganização societária que não atendam aos requisitos cumulativos estabelecidos acima, desde que sejam expressamente autorizadas em deliberação realizada nos termos da Cláusula 8.3 do **Anexo 1.1.73**.

## 7. EFEITOS DO PLANO

**7.1. Vinculação do Plano.** As disposições do Plano vinculam as Recuperandas e os Credores Concursais, e os seus respectivos cessionários e sucessores, a qualquer título, assim como credores que venham a se tornar Credores Concursais das Recuperandas por força de atribuição de responsabilidade incidental, subsidiária ou solidária por força de lei ou decisão judicial, administrativa, arbitral, desde que o fato gerador de tal Crédito Concursal seja anterior ao ajuizamento da presente Recuperação Judicial a partir da Data de Homologação Judicial do Plano.

**7.2. Liberação de Recursos**. Tendo em vista que este Plano não afeta, desconstitui ou de qualquer forma modifica garantias fiduciárias outorgadas em favor de Credores Extraconcursais, os recursos financeiros, que forem objeto de garantia fiduciária e disponibilizados às Recuperandas e às Requerentes, serão considerados, para todos os fins de direitos, Créditos Extraconcursais, nos termos do art. 67 da LFR. Em caso de superveniência de falência das Recuperandas, tais recursos serão pagos com precedência sobre todos os Créditos Concursais e Créditos Extraconcursais, observado o disposto nos arts. 84, 85, 149 e demais disposições aplicáveis da LFR.

**7.3. Novação.** A Homologação Judicial do Plano implicará a novação dos Créditos Concursais, nos termos do art. 59 da LFR, os quais serão pagos segundo os termos e condições estabelecidos neste Plano. Salvo disposição em sentido contrário neste Plano, ficam mantidas as garantias reais e fidejussórias dos Créditos Concursais. Para que não restem dúvidas, nada neste Plano afeta as obrigações extraconcursais de responsabilidade das Recuperandas e tampouco obrigações de Terceiros, incluindo, sem limitar, avais, fianças, garantias fiduciárias, reais, fidejussórias, que serão mantidas em suas condições originais, inclusive de exigibilidade, contra os Terceiros, independentemente da novação deste Plano, conforme as Cláusulas 3.7.9 e

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

seguintes do Plano.

**7.4.** **Remessa de Recursos**. Observada a necessidade de caixa e as regras societárias aplicáveis, as Recuperandas estão autorizadas a realizar qualquer tipo de movimentação financeira dentre as Recuperandas.

7.4.1. Remessas para o Grupo. Observada a necessidade de caixa e as regras societárias aplicáveis, as Recuperandas estão autorizadas a realizar qualquer tipo de movimentação financeira, incluindo, mas não se limitando ao aporte de recursos e celebração de mútuos, em benefício de quaisquer das Requerentes, nos termos da Lei das S.A., (i) relacionadas ao cumprimento das obrigações contratadas nos respectivos planos de recuperação judicial das Requerentes e ao pagamento de despesas gerais e administrativas, tais como obrigações e despesas de manutenção das atividades, despesas com fornecedores e assessores e despesas fiscais, desde que tais transações não excedam o montante global de R$ 80.000.000,00 (oitenta milhões de reais) e respeitem a alocação descrita no **Anexo 7.4.1**; (ii) relacionadas aos pagamentos previstos no item ii da Cláusula 1.1.11 e no item (iii) da Cláusula 1.1.119 apenas nos seus respectivos prazos.

**7.5.** **Cessão de Créditos**. Após a Aprovação do Plano, os Credores Concursais poderão ceder seus Créditos a outros Credores Concursais ou a Terceiros, e a cessão deverá ser notificada às Recuperandas e ao Administrador Judicial nos termos da Cláusula 8.3. A notificação ao Administrador Judicial e ao Juízo da Recuperação Judicial só será necessária enquanto a Recuperação Judicial não tiver sido encerrada. Os Créditos Concursais cedidos serão pagos conforme as condições previstas no Plano, observado o quanto disposto nas Cláusulas 3.7.8.1 e 7.3.

**7.6.** **Reconstituição de Direitos.** Caso a Recuperação Judicial seja convolada em falência no prazo de supervisão no art. 61 da LFR, os Credores Concursais terão reconstituídos seus direitos e garantias nas condições originalmente contratadas, deduzidos os valores eventualmente pagos e ressalvados os atos validamente praticados no âmbito da Recuperação Judicial, observados o disposto nos arts. 61, §2º, e 74 da LFR.

**7.7.** **Quitação.** O cumprimento das obrigações de pagamentos de acordo com os termos e condições estabelecidos neste Plano acarretará, de forma automática e independentemente de qualquer formalidade adicional, ampla, geral e irrestrita quitação de todos os Créditos

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Concursais contra as Recuperandas e seus diretores, conselheiros, agentes, funcionários e representantes, observado o disposto na Cláusula 3.7.9.

**7.8. Extinção das Ações**. Em virtude da novação dos Créditos Concursais decorrente da Homologação Judicial do Plano, e enquanto este Plano estiver sendo cumprido pelas Recuperandas, os Credores Concursais não poderão, a partir da Homologação do Plano, (i) ajuizar ou prosseguir toda e qualquer ação e/ou execução judicial ou processo de qualquer natureza relacionado a qualquer Crédito Concursal contra as Recuperandas; (ii) executar qualquer sentença, decisão judicial ou sentença arbitral relacionada a qualquer Crédito Concursal contra as Recuperandas; (iii) penhorar ou onerar quaisquer bens das Recuperandas para satisfazer seus Créditos Concursais ou praticar contra elas qualquer outro ato constritivo para satisfação de Créditos Concursais; (iv) criar, aperfeiçoar ou executar qualquer garantia real sobre bens e direitos das Recuperandas para assegurar o pagamento de seus Créditos Concursais; e (v) buscar a satisfação de seus Créditos Concursais por quaisquer outros meios contra as Recuperandas. A partir da Data de Homologação Judicial do Plano, todo e qualquer processo de execução, de qualquer natureza, relacionado a qualquer Crédito Concursal contra as Recuperandas, deverão ser extintos completamente ou, caso mais de uma pessoa figure no polo passivo da referida ação, exclusivamente em relação à(s) Recuperanda(s) em questão, sendo certo que as penhoras e constrições existentes sobre bens e direitos das Recuperandas serão liberadas, bem como o saldo de bloqueios judiciais eventualmente efetivados nas referidas ações judiciais. Para que não restem dúvidas, nada nesta Cláusula impede o trâmite de impugnações de crédito relacionadas à presente Recuperação Judicial.

**7.9. Formalização de Documentos e Outras Providências.** As Recuperandas obrigam-se, em caráter irrevogável e irretratável, por força deste Plano, a realizar todos os atos e firmar todos os contratos e outros documentos que, na forma e na substância, sejam necessários ou adequados ao cumprimento e implementação deste Plano e obrigações correlatas.

**7.10. Aditamentos, Alterações ou Modificações do Plano**. Aditamentos, alterações ou modificações ao Plano podem ser propostas a qualquer tempo após a Homologação Judicial do Plano, desde que tais aditamentos, alterações ou modificações sejam aceitas pelas Recuperandas e aprovadas em Assembleia de Credores, nos termos da LFR. Aditamentos ao Plano, desde que aprovados nos termos da LFR, obrigam todos os Credores Concursais, independentemente da expressa concordância destes com aditamentos posteriores. Para fins de cômputo, os Créditos Concursais deverão ser atualizados na forma deste Plano e descontados dos valores já pagos a

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

qualquer título em favor dos Credores Concursais, conforme o caso.

**8. DISPOSIÇÕES GERAIS**

**8.1. Anexos.** Todos os anexos a este Plano são a ele incorporados e constituem parte integrante deste Plano. Na hipótese de haver qualquer inconsistência entre este Plano e qualquer anexo, o Plano prevalecerá.

**8.2. Contratos Existentes e Conflitos.** Na hipótese de conflito entre as disposições deste Plano e as obrigações das Recuperandas sujeitas à Recuperação Judicial previstas nos contratos celebrados com qualquer Credor Concursal anteriormente à Data do Pedido, este Plano prevalecerá, sem prejuízo da manutenção das condições originalmente contratadas com Terceiros, conforme previsto nas Cláusulas 3.7.9.1 e seguintes.

**8.3. Comunicações**. Todas as notificações, requerimentos, pedidos e outras comunicações às Recuperandas, requeridas ou permitidas por este Plano, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando enviadas (i) por correspondência registrada, com aviso de recebimento, ou courier; ou (ii) por e-mail quando efetivamente entregues, valendo o aviso de leitura como prova de entrega e recebimento da mensagem, obrigando-se as Recuperandas a verificar suas mensagens periodicamente. Todas as comunicações devem ser enviadas aos seguintes endereços, salvo se houver alteração devidamente comunicada aos Credores Concursais:

**Às Recuperandas**:

Rua Lemos Monteiro, nº 120, 16º andar
Butantã, São Paulo/SP, CEP 05501-050
A/C: Departamento Jurídico
E-mail: rjodb@odebrecht.com

**Ao Administrador Judicial**

Rua Surubim, nº 577, 9º andar
Brooklyn Novo, São Paulo/SP, CEP 04571-050
A/C: Eduardo Seixas e Luciana Gasques
E-mail: aj_odb@alvarezandmarsal.com

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**8.4. Divisibilidade das Previsões do Plano.** Na hipótese de qualquer termo ou disposição deste Plano ser considerada inválida, nula ou ineficaz, o restante dos termos e disposições do Plano devem permanecer válidos e eficazes.

**8.5. Créditos em moeda estrangeira**. Os Créditos denominados em moeda estrangeira serão mantidos na moeda original para todos os fins de direito, em conformidade com o disposto no artigo 50, § 2º, da LFR, e serão liquidados em conformidade com as disposições deste Plano.

**8.6. Encerramento da Recuperação Judicial.** A Recuperação Judicial será encerrada nos termos dos arts. 61 e 63 da LFR.

**8.7. Lei Aplicável.** Os direitos, deveres e obrigações decorrentes deste Plano deverão ser regidos, interpretados e executados de acordo com as leis vigentes na República Federativa do Brasil, ainda que haja Créditos originados sob a regência de leis de outra jurisdição e sem que quaisquer regras ou princípios de direito internacional privado sejam aplicadas.

**8.8. Foro.** Todas as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Plano serão resolvidas pelo Juízo da Recuperação. Após o encerramento da Recuperação Judicial as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Plano serão resolvidas pelo foro da Comarca de São Paulo.

São Paulo, 22 de abril de 2020
(*Seguem páginas de assinaturas do Plano*)

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

*(páginas de assinaturas do Plano de Recuperação Judicial apresentado por Odebrecht S.A. – Em Recuperação Judicial e outras sociedades integrantes de seu grupo econômico)*

| | |
|---|---|
| **Nome:** | **Nome:** |
| **Cargo:** | **Cargo:** |

Por: **KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL; ODBINV S.A – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL; EDIFÍCIO ODEBRECHT RJ S.A. – EM RECUPERAÇÃO JUDICIAL** e **ODEBRECHT PROPERTIES INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL.**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**ANEXOS AO PLANO**

| | |
|---|---|
| **Anexo 1.1.10** | Uso do Caixa Disponível |
| **Anexo 1.1.73** | Instrumentos de Pagamento |
| **Anexo 1.1.81 (a)** | Laudo de Viabilidade Econômica |
| **Anexo 1.1.81 (b)** | Laudo Econômico-Financeiro |
| **Anexo 1.1.110** | Método de Cálculo do Percentual de Pagamento |
| **Anexo 2.5** | Termo de Adesão à Consolidação Substancial |
| **Anexo 4.1.2** | Escritura de Emissão: Instrumentos de Pagamento – Debêntures Privadas |
| **Anexo 4.1.3** | Escritura de Emissão: Instrumentos de Pagamento – Debêntures Públicas |
| **Anexo 4.3** | Formulário de Opção de Pagamento |
| **Anexo 4.3(ii)** | Declaração de Investidor Qualificado – Debêntures Públicas |
| **Anexo 5.2** | Lista de Ativos |
| **Anexo 6.1** | Lista de Operações de Reorganização Societárias |
| **Anexo 7.4.1** | Alocação de Remessas para Requerentes |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 1.1.10**

**Uso do Caixa Disponível**

**1.** O Caixa Disponível poderá ser utilizado na manutenção ordinária das atividades do Grupo Odebrecht, (i) para despesas gerais e administrativas das Recuperandas, tais como (a) obrigações e despesas relacionadas a contingências diretas e indiretas, cuja origem tenha natureza administrativa, civil, comercial, financeira, fiscal, tributária, ambiental, penal ou trabalhista; (b) despesas gerais de manutenção das atividades, tais como, despesas de manutenção predial, condomínio, *facilities*, comunicação, TI, serviços de pagamento, reembolso de despesas, assessores jurídicos e financeiros, despesas de auditoria e despesas com fornecedores e prestadores de serviço, incluindo aquelas relacionadas à Recuperação Judicial e ao cumprimento deste Plano; (c) pagamento de obrigações não sujeitas à Recuperação Judicial; (d) custo de manutenção da estrutura de governança e *compliance*; e (ii) transações permitidas no âmbito da Cláusula 7.4 ou de qualquer outra forma por este Plano.

**2.** Para que não restem dúvidas, a lista de eventos acima é exemplificativa e não exaustiva, sendo certo que as Recuperandas jamais poderão utilizar o Caixa Disponível (i) para prática dos atos vedados pelo inciso IV do art. 64 da LFR, e (ii) para pagamento de dividendos de Recuperandas para sociedades que não são Recuperandas, sendo certo que esta disposição não afeta, impede ou limita o uso ou a distribuição dos recursos nos termos do item (iii) da Cláusula 1.1.119 do Plano.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 1.1.73**

**Instrumentos de Pagamento**

*(termos e condições aplicáveis aos Créditos Concursais que forem reestruturados por meio de qualquer modalidade de Instrumentos de Pagamento)*

1. **Emissora / Devedor Principal**. ODB, qualquer sociedade que venha a suceder a ODB, ou, caso autorizado pelo respectivo Credor, qualquer Recuperanda, sendo certo que, na hipótese de reestruturação de Créditos por meio de Instrumentos de Pagamento – Plano, será mantido (i) o devedor principal original ou (ii) caso as Recuperandas não sejam as devedoras principais originais, o coobrigado/garantidor ("Emissora/Devedora Principal").

2. **Garantidor(es)**. Todas as Recuperandas figurarão como garantidoras solidárias do Instrumento de Pagamento ("Garantidores").

2.1. **Garantia Real**: Os Créditos com Garantia Real manterão as respectivas Garantias Reais, conforme originalmente pactuado, sendo certo que as Garantias Reais não serão compartilhadas entre os demais Créditos Elegíveis para Subscrição de Instrumentos de Pagamento.

3. **Juros e Correção**. Os Instrumentos de Pagamento contarão com juros e correção monetária, a serem incorporados ao valor de face dos Instrumentos de Pagamento, correspondentes à variação positiva do IPCA desde a Data do Pedido até a implementação de todos os pagamentos previstos nos Instrumentos de Pagamento, observado o Bônus de Adimplência.

4. **Vencimento**. Vencimento no 40º (quadragésimo) Aniversário, sendo que a Devedora Principal deverá amortizar antecipadamente a integralidade dos Instrumentos de Pagamento:

(i) no 25º (vigésimo quinto) Aniversário, caso não tenha apresentado, em até 6 (seis) meses contados do 24º (vigésimo quarto) Aniversário, laudo preparado por empresa de auditoria, especializada e de renome, integrante de uma das quatro maiores empresas de auditoria do mundo (*big four*) ou categoria semelhante à época, demonstrando que as Recuperandas possuem

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

capacidade de geração de caixa e/ou ativos passíveis de monetização de ao menos R$ 50.000.000,00 (cinquenta milhões de reais) até o 40º (quadragésimo) Aniversário; ou

(ii) a partir do 3º (terceiro) Aniversário, caso se verifique que o Caixa para Distribuição em uma determinada Data de Amortização é suficiente para amortizar e/ou resgatar 100% (cem por cento) do saldo devedor de Instrumentos de Pagamento.

**5.** **Amortizações e Carência**. Os Instrumentos de Pagamento serão amortizados a cada Data de Amortização com recursos provenientes do Caixa para Distribuição, conforme apurado nos termos da Cláusula 1.1.11, observada a Regra de Utilização do Caixa para Distribuição, de forma *pro rata* entre os Créditos Elegíveis para Subscrição de Instrumentos de Pagamento. O primeiro pagamento será devido na primeira Data de Amortização que ocorrer após 3 (três) anos contados da Data de Homologação Judicial do Plano ("Prazo de Carência"), sendo que para cada R$ 1,00 (um real) de Caixa para Distribuição destinado à amortização dos Instrumentos de Pagamento, R$ 1,00 (um real) será deduzido do valor de face e/ou do valor de principal dos respectivos Instrumentos de Pagamento, podendo as Recuperandas, a qualquer tempo, realizar amortizações antecipadas.

**5.1.** Nas hipóteses em que os Credores Concursais possuam Créditos Concursais formalizados originalmente por mais de 1 (um) instrumento, as amortizações previstas no item 55 acima deverão ocorrer de forma proporcional entre tais instrumentos originais.

**6.** **Agente de Monitoramento**. Os Instrumentos de Pagamento contarão com um Agente de Monitoramento que acompanhará as movimentações financeiras das Recuperandas e que deverá ser contratado pela Emissora/Devedora Principal em até 60 (sessenta) Dias Corridos contados da Data de Homologação Judicial do Plano, sendo responsável por:

(i) divulgar o montante de Caixa para Distribuição que será destinado à amortização dos Instrumentos de Pagamento, observada a Regra de Utilização do Caixa para Distribuição;

(ii) verificar e ratificar o Caixa Disponível, o Caixa para Distribuição e a Regra de Utilização do Caixa para Distribuição, com base em relatório gerencial contemplando o saldo do caixa consolidado das Recuperandas e demais documentos que sejam considerados necessários pelo Agente de

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Monitoramento que deverão ser fornecidos pelas Recuperandas como, por exemplo, extratos bancários;

(iii) monitorar os pagamentos previstos nos Instrumentos de Pagamento, bem como o cumprimento das demais obrigações previstas;

(iv) monitorar a materialização de Créditos Elegíveis para Subscrição de Instrumentos de Pagamento posteriores a data de emissão dos Instrumentos de Pagamentos; e

(v) divulgar relatórios mensais consolidando as informações referentes às atribuições previstas nos itens anteriores.

**6.1.** **Acesso a Informações**. As Recuperandas deverão facultar ao Agente de Monitoramento acesso a todas as informações e documentos considerados necessários pelo Agente de Monitoramento para o bom desempenho de suas funções.

**6.2.** **Procedimento de Escolha**. A Recuperanda deverá contratar uma das empresas listadas no Apêndice I para ocupar a posição de Agente de Monitoramento em até 60 (sessenta) dias contados da Data de Homologação Judicial do Plano, devendo optar por aquela que oferecer a melhor proposta considerando as condições de preço e escopo de trabalho, observadas as condições de substituição descritas no Apêndice I.

**7.** **Hipóteses de Vencimento Antecipado**. As obrigações previstas no Instrumento de Pagamento serão consideradas antecipadas vencidas, independentemente de aviso, interpelação ou notificação, na ocorrência dos seguintes eventos:

(i) inadimplemento pela Devedora Principal de qualquer obrigação pecuniária que não seja sanado no prazo de 3 (três) Dias Úteis da sua ocorrência;

(ii) inadimplemento pela Devedora Principal de qualquer obrigação não pecuniária prevista no Instrumento de Pagamento que não seja sanado no prazo de 30 (trinta) Dias Úteis contados da sua ocorrência, caso não seja prazo específico;

(iii) decisão judicial colegiada ou decisão judicial sem efeito suspensivo, que declare o Instrumento de Pagamento ilegal, observado que todos eventuais recursos que

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

deveriam ter sido destinados aos Credores Elegíveis para Subscrição de Instrumentos de Pagamento, mas que não tenham sido em virtude de tal decisão, deverão permanecer retidos para posterior distribuição aos Credores Elegíveis para Subscrição de Instrumentos de Pagamento;

(iv) liquidação, dissolução, decretação da falência ou pedido de autofalência da Devedora Principal;

(v) cessão, promessa de cessão ou qualquer outro tipo de transferência das obrigações da Devedora Principal a Terceiro, sem anuência dos Créditos Quirografários Elegíveis para Subscrição de Instrumentos de Pagamento;

(vi) transformação da Devedora Principal em sociedade limitada;

(vii) alteração do objeto social da Devedora Principal, ressalvada a hipótese em que há autorização dos Créditos Elegíveis a Subscrição de Instrumentos de Pagamento ***ou*** em que não resulte em alteração substancial das atividades da Devedora Principal;

(viii) comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer declaração feita pela Devedora Principal no Instrumento de Pagamento é falsa, desde que tal falsidade acarrete qualquer evento ou situação que possa causar qualquer efeito adverso relevante na: (a) situação financeira, nos negócios, nos bens, nos resultados operacionais e/ou nas perspectivas da Devedora Principal; e/ou (b) na capacidade da Devedora Principal de cumprir qualquer de suas obrigações nos termos do Instrumento de Pagamento;

(ix) comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer declaração feita pela Devedora Principal no Instrumento de Pagamento relativas a questões de prática de corrupção é falsa;

(x) incorporação, fusão ou cisão da Devedora Principal, sem a prévia anuência dos Créditos Quirografários Elegíveis para Subscrição de Instrumentos de Pagamento, salvo se a reorganização societária estiver autorizada no Plano ou neste Anexo; e

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

(xi) prolação de sentença condenatória, sem efeito suspensivo, que ateste que a Devedora Principal praticou atos que importem trabalho infantil, análogo ao escravo e/ou provimento criminoso de prostituição

(xii) inadimplemento de qualquer obrigação pecuniária constante de quaisquer Instrumentos de Pagamento, desde que não sanado prazo de cura aplicável; ou

(xiii) decretação de vencimento antecipado no âmbito de quaisquer Instrumentos de Pagamento.

**8. Disposições Gerais**.

**8.1. Divulgação de Informações**. As Recuperandas deverão fornecer mensalmente ao Agente de Monitoramento as informações financeiras e contábeis a respeito da composição do Caixa Disponível e do Caixa para Distribuição ou em prazo inferior sempre que solicitadas, mediante envio de comunicação enviada nos termos da Cláusula 8.3, que deverá ser respondida pelas Recuperandas com as informações solicitadas no prazo de 10 (dez) Dias Úteis contados do recebimento da comunicação.

**8.2. Comunicação**. A Devedora/Emissora Principal, os Garantidores e os titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento deverão enviar ao Agente de Monitoramento e manter atualizados, a todo tempo, (i) sua qualificação completa; (ii) telefone; (iii) endereço eletrônico (e-mail); e (iv) o endereço para envio de correspondência física. Todas as notificações, requerimentos, pedidos e outras comunicações relacionadas aos Instrumentos de Pagamento, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando enviadas (i) por correspondência registrada, com aviso de recebimento, ou courier; ou (ii) por e-mail quando efetivamente entregues, valendo o aviso de leitura como prova de entrega e recebimento da mensagem.

**8.3. Deliberações**. A Devedora Principal poderá, a qualquer momento, convocar reunião com os Credores Concursais titulares de Créditos Elegíveis a Subscrição de Instrumentos de Pagamento para que estes possam deliberar:

(i) sobre a renúncia prévia (*waiver*) ao direito de exigir o cumprimento das obrigações previstas no Instrumento de Pagamento;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

(ii) a renúncia (*waiver*) ao direito de declarar o vencimento antecipado das obrigações previstas neste Instrumento de Pagamento;

(iii) a extensão do prazo descrito no item ii da Cláusula 1.1.11;

(iv) a realização de operações de reorganização societária nos termos da Cláusula 6.1 do Plano;

(v) a substituição do Agente de Monitoramento nos termos do item 4 do Apêndice I deste Anexo; e

(vi) outras matérias que sejam relevantes.

**8.3.1.** Convocação. A reunião será convocada por meio de envio de notificação aos Credores Concursais titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento com no mínimo 8 (oito) Dias Úteis de antecedência da primeira convocação e 5 (cinco) Dias Úteis de antecedência da segunda convocação, devendo a convocação conter, data, hora, local e ordem do dia.

**8.3.2.** Instalação e Realização. A reunião se instalará, em primeira convocação, com a presença de 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento e, em segunda convocação, com qualquer quórum de presentes. A reunião será presidida pela Emissora/Devedora Principal e será acompanhada pelo Agente de Monitoramento.

8.3.2.1. Instalação para Deliberação Sobre Matérias Qualificadas. A reunião para deliberação das matérias indicadas nos itens (iii), (iv) e (v) no item 8.3 acima somente será instalada com a presença titulares de Instrumentos de Pagamento representando, ao menos, 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento em aberto na data da convocação, seja em primeira ou em segunda convocação.

8.3.2.2. Os Credores de Crédito *Intercompany* e as Partes Relacionadas não serão considerados para fins de quórum.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**8.3.3.** Quórum de Deliberação. As matérias colocadas em votação serão aprovadas pela maioria absoluta de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento presentes na reunião, conforme saldos em aberto considerados na data de convocação da reunião. As atas de reunião serão enviadas ao Agente de Monitoramento e, enquanto perdurar a Recuperação Judicial, ao Administrador Judicial.

8.3.3.1. Quórum de Deliberação Sobre Matérias Qualificadas. As matérias indicadas nos itens, (iii), (iv) e (v) do item 8.3 acima colocadas em votação somente serão aprovadas pelo voto afirmativo de ao menos 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento presentes.

8.3.3.2. Os Credores de Crédito *Intercompany* e as Partes Relacionadas não terão direito de voto.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

*APENDICE I*
*AGENTE DE MONITORAMENTO*

**3.** As Recuperandas poderão contratar, para o cargo de Agente de Monitoramento, uma das seguintes empresas especializadas (seu sucessor ou quaisquer empresas integrantes do grupo econômico das sociedades listadas abaixo):

**(i)** CCC Consultoria Financeira e Empresarial Ltda., inscrita no CNPJ sob o nº 07.458.740/0001-15, com sede na Rua Japão, nº 484, unidade 31 E, Jardim São Luís, na Cidade de Santana de Parnaíba, Estado de São Paulo, CEP 06502-345;

**(ii)** FTI Consultoria Ltda., inscrita no CNPJ sob nº 07.174.869/0001-00, com sede na Rua Tabapuã, nº 474, 8º andar, Itaim Bibi, CEP 04533-001, na Cidade e Estado de São Paulo; ou

**(iii)** Empresa de auditoria, especializada e de renome, integrante de uma das quatro maiores empresas de auditoria do mundo (*big four*) ou categoria semelhante à época.

**4.** Caso, a qualquer tempo, seja necessário substituir o Agente de Monitoramento, as Recuperandas deverão contratar, preferencialmente, uma das empresas descritas no item 1 acima. Não sendo possível ou viável, as Recuperandas estão desde já autorizadas a contratar outra empresa com capacidade técnica, reputação e experiência semelhante às das empresas listadas no item 1 acima, desde que aprovada pelos titulares de Instrumentos de Pagamento nos termos da Cláusula 8.3 deste Anexo.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 1.1.81 (a)**

**Laudo de Viabilidade Econômica**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 1.1.81 (b)**

**Laudo Econômico-Financeiro**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 1.1.110**

**Método de Cálculo do Percentual de Pagamentos**

**1.** O Percentual de Pagamentos será apurado, a partir do término do Prazo de Carência, com base no relatório gerencial de fechamento contábil, entregue pelas Recuperandas ao Agente de Monitoramento, referente aos meses de Fevereiro, Abril, Junho, Agosto, Outubro e Dezembro, segundo a seguinte fórmula:

$$Percentual\ de\ Pagamentos\ = \frac{'pagamentos'}{'base\ de\ créditos'}$$

sendo:

**(i)** *pagamentos*: a soma de todas as amortizações de

**(a)** Créditos Elegíveis à Subscrição de Instrumento de Pagamento feitas por Recuperandas, excetuadas aquelas decorrentes de Coobrigações prestadas por dívidas das Sociedades Atvos;

**(b)** Créditos Extraconcursais por garantia fiduciária outorgada pela ODB; e

**(c)** Créditos Concursais por Garantia Outorgada por Recuperanda que sejam feitas por Terceiros, inclusive a parcela que não gerar amortizações de Instrumentos de Pagamento conforme previsto na Cláusula 3.7.9.1.1, excetuadas aquelas decorrentes de Coobrigações prestadas por dívidas das Sociedades Atvos.

**(ii)** *base de Créditos*: a soma de todos os (ii.a.) Créditos Elegíveis à Subscrição de Instrumento de Pagamento, excetuadas aquelas decorrentes de Coobrigações prestadas por dívidas das Sociedades Atvos; e (ii.b) Créditos Extraconcursais por garantia fiduciária outorgada pela ODB.

**2.** Em cada apuração, os valores descritos acima serão atualizados / trazidos a valor presente segundo as seguintes regras:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

- *base de Créditos*: a base de créditos se refere aos valores destas obrigações na Data do Pedido, sem incorrer correção monetária / juros;

- *Créditos listados nas alíneas (a), (b) e (c) do item 1(i) acima*: os valores serão trazidos a valor presente até a Data do Pedido pelo fator de correção incidente dos respectivos instrumentos vigentes até a data de apuração.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 2.5**

**Termo de Adesão à Consolidação Substancial**

Pelo presente instrumento particular,

[Denominação Legal da Requerente], sociedade anônima de capital fechado, com sede na [Sede], inscrita no CNPJ/ME sob o nº [*], neste ato devidamente representada na forma de seu Estatuto Social ("Requerente")

**CONSIDERANDO QUE:**

(i) a **ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL**, sociedade por ações, com sede no município de Salvador, estado da Bahia, na Avenida Luis Viana, nº 2841, Ed. Odebrecht, Paralela, CEP 41.730-900, inscrita no CNPJ/ME sob o nº 05.144.757/0001-72, [Denominação Legal das demais Recuperandas] (em conjunto "Recuperandas") e a Requerente apresentaram, em 17.06.2019, pedido de recuperação judicial, autuado sob o nº 1057756-77.2019.8.26.0100, em curso perante a 1ª Vara de Falências e Recuperação Judiciais do Foro Central Cível da Comarca da Capital de São Paulo ("Recuperação Judicial");

(ii) em [*], os Credores Concursais das Recuperandas deliberaram, em sede de assembleia geral de credores, pela consolidação substancial e aprovaram plano de recuperação judicial unitário, composto pelos ativos e passivos de titularidade de todas as Recuperandas ("Plano");

(iii) em [*], o Plano foi homologado pelo Juízo da Recuperação Judicial na decisão de fls. [*], publicada no Diário de Justiça Eletrônico no dia [*];

(iv) nos termos da Cláusula 2.5 do Plano, a Requerente poderá aderir ao Plano, por meio do envio do Termo de Adesão à Consolidação Substancial, acompanhado da cópia da ata de assembleia geral de credores que deliberar a sua adesão, sendo certo que o efeito de tal adesão será a consolidação de todos os ativos e da passivos da Requerente com os ativos e passivos das Recuperandas; e

(v) em [*], em sede de assembleia geral de credores, os credores da Requerente ("Credores Concursais da Requerente") deliberaram pela adesão da Requerente ao Plano, de modo a formalizar seu ingresso na Consolidação Substancial das Recuperandas, reconhecendo e

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

concordando que todos os ativos e passivos da Requerente passarão, para todos os fins, a integrar o Plano ("AGC Consolidação Substancial").

**RESOLVE** a Requerente, conforme deliberado por seus credores na AGC Consolidação Substancial, firmar este Termo de Adesão à Consolidação Substancial ("Termo"), que será regido pelas cláusulas e condições abaixo.

**1. OBJETO**

**1.1. Adesão:** Pelo presente Termo, a Requerente adere, de maneira irrevogável e irretratável, ao Plano, consolidando todos os seus ativos e passivos com os ativos e passivos das Recuperandas, na forma da Cláusula 2.5 do Plano ("Adesão").

1.1.1. Reestruturação dos Créditos. Por força de Adesão descrita na Cláusula 1.1 deste Termo, os Credores Concursais da Requerente terão seus créditos concursais reestruturados e pagos, nos termos das cláusulas 3.1, 3.2, 3.3, 3.4 e 3.6 do Plano, conforme aplicável considerando a natureza de cada Crédito Concursal.

1.1.2. Alienação e/ou Oneração de Ativos. Por força de Adesão descrita na Cláusula 1.1 deste Termo, todos os bens e ativos parte do ativo circulante e não-circulante da Requerente estarão sujeitos às regras de alienação de ativos previstas nas Cláusulas 5.1 e 5.2 do Plano, sendo certo que o Anexo 1.1.2 deste Termo passará a compor, para todos os fins e efeitos, o Anexo 5.2 do Plano.

1.1.3. Disposições Aplicáveis. Por força de Adesão descrita na Cláusula 1.1 deste Termo, todas as disposições, condições e definições descritas no Plano aplicar-se-ão à Requerente e aos seus Credores Concursais.

**2. DECLARAÇÕES**

**2.1. Declarações da Requerente:** A Requerente declara e garante que:

(i) possui plena capacidade e legitimidade para celebrar o Termo, tendo tomado todas as medidas de natureza societária e outras eventualmente necessárias para autorizar a sua celebração, incluindo ter submetido a Adesão à deliberação dos Credores Concursais da

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Requerente em sede da AGC Consolidação Substancial, para implementar todas as previsões contidas no Plano e cumprir todas as obrigações ali assumidas;

(ii) esta Adesão é validamente celebrada e constitui obrigação legal, válida, vinculante e exequível, de acordo com os seus termos;

(iii) a celebração desta Adesão e o cumprimento de suas obrigações: (a) não violam qualquer disposição contida em seus documentos societários; (b) não violam qualquer lei, regulamento, decisão judicial, administrativa ou arbitral, aos quais esteja vinculada, incluindo as decisões proferidas pelo Juízo da Recuperação Judicial; e (c) não viola qualquer deliberação tomada pelos Credores Concursais da Requerente em sede de assembleia geral de credores; e

(iv) as discussões sobre o objeto contratual desta Adesão foram feitas, conduzidas e implementadas por sua livre iniciativa, tendo a Requerente e os Credores Concursais da Requerente discutido amplamente todas as condições do presente negócio, sendo assessoradas por seus respectivos advogados que as informaram e alertaram de todas as condições e circunstâncias envolvidas na negociação desta Adesão, dos termos deste Termo e do Plano.

**3. DISPOSIÇÕES GERAIS**

**3.1. Irrevogabilidade e Irretratabilidade:** Este Termo, os compromissos e as responsabilidades nele assumida pela Requerente são irrevogáveis e irretratáveis. Este Termo é vinculante e é celebrado em benefício da Requerente e de seus respectivos sucessores e cessionários autorizados.

**3.2. Vinculação do Plano:** As disposições do Plano vinculam a Requerente, os Credores Concursais da Requerente, e os seus respectivos cessionários e sucessores, a qualquer título (i) a partir da data de Homologação Judicial do Plano e (ii) do envio deste Termo, acompanhado de copiada ata da AGC Consolidação Substancial às Recuperandas, nos termos da cláusula 8.3 do Plano, o que ocorrer por último.

**3.3. Definições:** Os termos grafados ou iniciados em letras maiúsculas usados neste Termo, mas não definidos neste instrumento terão os significados atribuídos no Plano.

**3.4. Lei Aplicável:** Os direitos, deveres e obrigações decorrentes deste Termo deverão ser

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

regidos, interpretados e executados de acordo com as leis vigentes na República Federativa do Brasil, ainda que haja Créditos originados sob a regência de leis de outra jurisdição e sem que quaisquer regras ou princípios de direito internacional privado sejam aplicadas.

**3.5. Foro**: Todas as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Termo serão resolvidas pelo Juízo da Recuperação. Após o encerramento da Recuperação Judicial as controvérsias ou disputas que surgirem ou estiverem relacionadas a este Termo serão resolvidas pelo foro da Comarca de São Paulo.

São Paulo, [dia] de [mês] de 2020

______________________________________________

**[DENOMINAÇAO LEGAL COMPLETA DA REQUERENTE]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 4.1.2**

**Escritura de Emissão: Instrumentos de Pagamento – Debêntures Privadas**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 4.1.3**

**Escritura de Emissão: Instrumentos de Pagamento – Debêntures Públicas**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 4.3**

**Formulário de Opção de Pagamento**

[Local, data]

À
Odebrecht S.A. – Em Recuperação Judicial e Outras
Rua Lemos Monteiro, nº 120, 16º Andar
Butantã, São Paulo/SP, CEP 05501-050
A/C: Departamento Jurídico e Departamento Financeiro
E-mail:rjodb@odebrecht.com

C/C
Administrador Judicial
Rua Surubim, nº 577, 9º andar
Brooklyn Novo, São Paulo/SP, CEP 04571-050
A/C: Eduardo Seixas e Luciana Gasques
E-mail:aj_odb@alvarezandmarsal.com

Ref.: **Exercício da Opção e Escolha do Instrumento de Pagamento.**

Prezados Senhores,

Nos termos da **Cláusula 4.1** do Plano de Recuperação Judicial da Odebrecht S.A. – Em Recuperação Judicial e Outras, conforme aprovado pelos credores na assembleia geral de credores realizado no dia [*], elegemos:

| | |
|---|---|
| *Créditos Quirografários Financeiros:* | ( ) Opção A – Créditos Quirografários Financeiros<br>( ) Opção B – Créditos Quirografários Financeiros<br>**( ) Não Aplicável** |
| *Créditos Quirografários Não Financeiros:* | ( ) Opção A – Créditos Quirografários Não Financeiros<br>( ) Opção B – Créditos Quirografários Não Financeiros<br>**( ) Não Aplicável** |
| Instrumento de Pagamento Disponíveis<br><br>(*Créditos com Garantia Real, Créditos Quirografários e Créditos ME/EPP)*: | ( ) Instrumento de Pagamento – Plano<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Instrumento de Pagamento – Debêntures Privadas<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Instrumento de Pagamento – Debêntures Públicas<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Instrumento de Pagamento – *Bonds*<br>Montante de Créditos Concursais Alocados neste Instrumento de Pagamento: [INSERIR VALOR DO CRÉDITO]<br><br>( ) Diferimento da escolha da Opção de Pagamento |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

<table>
<tr><td></td><td colspan="3">Montante de Créditos Concursais Alocados na opção de diferimento: [INSERIR VALOR DO CRÉDITO]<br><br>(   ) Não Aplicável</td></tr>
<tr><td>Denominação Legal Completa:</td><td colspan="3"></td></tr>
<tr><td>Banco:</td><td></td><td>CNPJ/CPF:</td><td></td></tr>
<tr><td>Agência:</td><td></td><td>Conta-Corrente:</td><td></td></tr>
</table>

Atenciosamente,

**[DENOMINAÇÃO LEGAL COMPLETA]**

__________________________________

**Nome:**

**CPF:**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**Anexo 5.2[1]**

**Lista de Ativos**

**EDIFÍCIO ODEBRECHT RJ S.A - EM RECUPERAÇÃO JUDICIAL**

EDÍFICO CORPORATIVO PORTO MARAVILHA: edifício comercial com 14.357,52 m² de área privativa total, considerando escritórios e lojas, sobre uma área de terreno de 3.450,00 m². Localizado na Avenida Cidade de Lima 86, Rio de Janeiro - RJ, CEP: 20220-710 Matrículas - registrado no 2 ofício do Registro de Imóveis sob os números: 103.970//103.971 //103.972 //103.973 //103.974 //103.975 //103.976 // 103.977 // 103.978 // 109.979 // 103.980 // 103.981 // 103.982 //103.983 // 103.984 // 103985 // 103.986 // 103.987 // 103.988 // 103.989 // 103.990 // 103.991 // 103.992 // 103.993 // 103.994 // 103.995 // 103.996[2].

**ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇAO JUDICIAL**

Ações de emissão da ODEBRECHT ENERGIA S.A - Em Recuperação, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 7º andar, Parte B, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 13.079.757/ 0001-64.[3]

[1] O Anexo 5.2 e a Cláusula 5.2 do Plano respeitam gravames, direitos e prioridades assegurados aos detentores de créditos garantidos por garantias reais e/ou fiduciárias.
[2] Constituída alienação fiduciária sobre os imóveis, nos termos do *Instrumento Particular de Contrato Alienação Fiduciária de Imóvel e Outras Avenças*, celebrado entre Edifício Odebrecht RJ S.A. – Em Recuperação Judicial e Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda., em 26 de setembro de 2018.
[3] Constituída alienação fiduciária sobre ações, nos termos do *Instrumento Particular de Constituição Fiduciária de Ações em Garantia*, celebrado entre Odebrecht S.A. – Em Recuperação Judicial, Odebrecht Energia Investimentos S.A., Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários e, na qualidade de interveniente anuente, Odebrecht Energia S.A., em 08 de junho de 2016, conforme aditado.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

**ODEBRECHT PROPERTIES INVESTIMENTOS S.A. -EM RECUPERAÇÃO JUDICIAL**

Ações de Emissão da ODEBRECHT PROPERTIES ENTRETENIMENTO S.A., Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte B, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 21.264.583/0001-38

Ações de Emissão da ODEBRECHT PROPERTIES PARCERIAS S.A - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte B, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 16.584.908/ 0001-20.

**ODEBRECHT S.A. - EM RECUPERAÇÃO JUDICIAL**

Ações de Emissão da ODEBRECHT ENERGIA E INVESTIMENTOS S.A - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte L, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 20.541.146/ 0001-51.

Ações de Emissão da OCYAN PARTICIPAÇÕES S.A., Sociedade anônima fechada, com sede à Avenida Cidade Lima, 86 - salas 501 e 502, Cidade e Estado do Rio de Janeiro, inscrito no CNPJ sob o nº 23.075.178/0001-05.[4]

Ações de Emissão da ODEBRECHT CORRETORA DE SEGUROS LTDA, com sede à Av Luis Viana, 2.841, Edif Odebrecht, Paralela, Salvador, BA, CEP 41730-900, Brasil, inscrito no CNPJ sob o nº 14.588.248/0001-20.

Ações de Emissão da ODEBRECHT ENGENHARIA E CONSTRUÇÃO S.A., Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte L, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 19.821.234/0001-28

[4] Constituída alienação fiduciária sobre as ações, nos termos do *Instrumento Particular de Constituição de Garantia – Alienação Fiduciária de Ações de Emissão da Ocyan Participações S.A. sob Condição Suspensiva*, celebrado entre Odebrecht S.A. – Em Recuperação Judicial, Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários, BNDES Participações S.A. e, na qualidade de intervenientes anuentes, Odebrecht Energia Participações S.A. – Em Recuperação Judicial, Ocyan Participações S.A., em 23 de maio de 2018.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Ações de Emissão da OPI S.A - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte A, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 17.337.615/ 0001-00.

Ações de Emissão da ODEBRECHT UTILITIES S.A., Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte L, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 17.382.530/0001-44.

Ações de Emissão da ODEBRECHT AMBIENTAL PARTICIPAÇÕES S.A, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 19º andar, Parte L, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 19.014.214/0001-45.

Ações de Emissão do EDIFÍCIO ODEBRECHT RIO DE JANEIRO S.A. (EORJ) - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Av. Cidade de Lima, nº 86, Santo Cristo, Cidade e Estado de Rio de Janeiro, inscrito no CNPJ sob o nº 19.432.176/ 0001-40.[5]

Ações de Emissão da OP GESTÃO DE PROPRIEDADES S.A - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Part E, Butantã, Cidade e Est ado de São Paulo, inscrito no CNPJ sob o nº 20.620.396/ 0001-87.

Ações de Emissão da OSP INVESTIMENTOS S.A - em recuperação judicial, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 9º andar, Parte I, Butantã, Cidade e Est ado de São Paulo, inscrito no CNPJ sob o nº 22.606.673/ 0001-22.

Ações de Emissão da ODEBRECHT TRANSPORT S.A, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 8º andar, Parte I, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 12.251.483/0001-86.

Ações de Emissão da ODB INTERNATIONAL CORPORATION - Em Recuperação Judicial, Sociedade existente e constituída de acordo com as leis de Bahamas, com sede à George Street , nº 4, Mareva House, Nassau, inscrito sob o nº 138020.

---

[5] Constituído penhor sobre as ações, nos termos do *Instrumento Particular de Contrato de Penhor de Ações em Primeiro Grau em Garantia e Outras Avenças*, celebrado entre OP Gestão de Propriedades S.A. – Em Recuperação Judicial, OR Empreendimentos Imobiliários e Participações S.A., Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda e Edifício Odebrecht R.J. – Em Recuperação Judicial, em 26 de setembro de 2018, conforme aditado.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Ações de Emissão da ODEBRECHT DEFESA E TECNOLOGIA S.A., Sociedade anônima fechada, Sociedade anônima fechada, com sede à Avenida Cidade Lima, 86 - sala 302, Cidade e Estado do Rio de Janeiro, inscrito no CNPJ sob o nº 13.688.755/0001-72

Ações de Emissão da MECTRON ENGENHARIA INDÚSTRIA E COMÉRCIO S.A - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Av. Brigadeiro Faria Lima, nº 1.389 e 1.399, Parque Martim Cererê, Cidade de São José dos Campos, Estado de São Paulo, inscrito no CNPJ sob o nº 65.481.012/ 0001-20.

Ações de Emissão da OR S.A, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 18º andar, Parte L, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 10.917.143/0001-16

Ações de Emissão da ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A - Em Recuperação Judicial, Sociedade anônima fechada, com sede à Av. Luís Viana Filho, nº 2.841, Sala Enseada, Paralela, Cidade de Salvador, Est ado da Bahia, inscrito no CNPJ sob o nº 17.851.495/ 0001-65.

Ações de Emissão da ODEBRECHT PROPERTIES E INVESTIMENTOS S.A, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 14º andar, Parte H, Butantã, Cidade e Est ado de São Paulo, inscrito no CNPJ sob o nº 21.264.618/ 0001-39.

Ações de Emissão da FAZENDAS REUNIDAS VALE DO JULIANA S.A, localizada na ROD JULIANA, S/N, KM FINAL Bairro ZONA RURAL, Cidade Igrapiúna, estado da Bahia, inscrita no CNPJ sob o n 96.788.856/0001-42.

Ações de Emissão da ODB INFRA-ESTRUTURAS LOGISTICAS SGPS, S.A., localizada na Lagoas Park Edifício 8 2º, 2740-268, Porto Salvo Oeiras, Lisboa - Portugal, com NIF sob o n NIF 508556376.

Ações de Emissão da CONDOR PARTICIPAÇÕES S.A., com sede à Rua Lemos Monteiro, nº 120, 16º andar, Parte D, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 15.786.709/0001-31.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACE.

Ações de Emissão da BAHIA AMIDO S.A, Sociedade anônima fechada, com sede à ROD BR 101, S/N, KM 279 Bairro ZONA RURAL - Cidade Laje - Bahia - BA, inscrito no CNPJ sob o nº 11.676.185/0001-75.

Cotas do Capital Social da OAI IMPORTADORA DE COMBUSTÍVEIS LTDA, Sociedade anônima fechada, com sede à Rua Lemos Monteiro, nº 120, 13º andar, Parte C, Butantã, Cidade e Estado de São Paulo, inscrito no CNPJ sob o nº 28.788.371/0001-07.

**KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA - EM RECUPERAÇÃO JUDICIAL**

Lote de terreno próprio de nº 05 da quadra VI com área de 675,00m² do loteamento caminho das arvores, inscrito no cadastro imobiliário municipal sob nº 239.302, no subdistrito de Amarilina, zona urbana desta capital, mediante 19,00m de frente com a rua J; 27,00m de fundo; 30,00 do lado direito com o lote nº 06 e 30,00 do lado esquerdo com o lote nº 04, ambos localizados na quadra 06, dito lote fica localizado do lado impar do logradouro e dista 67,00m da próxima esquina. Matrícula 45.273[6]

Lote de terreno próprio de nº 06 da quadra VI com área de 675,00 do loteamento caminho das arvores, no Subdistro de Amarilina, zona urbana desta capital, inscrito no censo imobiliário sob. Nº 239.303, mediante 19,00m de frente com a rua J; 27,00m de fundo com terrenos da agrícola contendas s/a; 30,00 do lado direito com o lote nº 07 e 30,00 do lado esquerdo com o lote nº 05, ambos localizados na quadra 06, dito lote fica localizado do lado impar do logradouro e dista 86,00m da próxima esquina. Matrícula 36.234[7]

Lote de terreno próprio de nº 07 da quadra VI com área de 675,00m² do loteamento caminho das arvores, inscrito no cadastro imobiliário municipal sob nº 239.304, no subdistrito de Amarilina, zona urbana desta capital, mediante 19,00m de frente com a rua J; 27,00m de fundo; 30,00 do lado direito com o lote nº 08

[6-18] Constituída hipoteca sobre os imóveis através das operações: (i) Cédula de Crédito Bancário com Garantias Hipotecária e Fidejussória No 20160345301040610000016, firmada em 22 de junho de 2016 pela Kieppe Participações e Administração Ltda – Em Recuperação Judicial, com Banco do Estado do Rio Grandedo Sul S. A. – BANRISUL, aditada por três oportunidades, sendo a última por meio do Terceiro Aditamento, firmado em 19 de dezembro de 2018; (ii) Cédula de Crédito Bancário com Garantias Hipotecária e Fidejussória No 20170345301040810000004, firmada em 6 de setembro de 2017 pela Kieppe Participações e Administração Ltda. – Em Recuperação Judicial, com Banco do Estado do Rio Grande do Sul S. A. – BANRISUL, aditada por três oportunidades, sendo a última por meio do Terceiro Aditamento, firmado em 20 de março de 2019.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

e 30,00 do lado esquerdo com o lote nº 06, ambos localizados na quadra 06, dito lote fica localizado do lado impar do logradouro e dista 105,00m da próxima esquina. Matrícula 44.922[8]

Lote de terreno próprio de nº 04 da quadra VI com área de 540,00m² do loteamento caminho das arvores, inscrito no cadastro imobiliário municipal sob nº 239.301, no Subdistrito de Amarilina, zona urbana desta capital, mediante 18,00m de frente com a rua J; 18,00m de fundo; 30,00 do lado direito com o lote nº 05 e 30,00 do lado esquerdo com o lote nº 03, ambos localizados na quadra 06, dito lote fica localizado do lado impar do logradouro e dista 49,00m da próxima esquina. Matrícula 38.539[9]

casa nº 320 da porta e 239.300 de inscrição no C.I., constituída de 2 pavimentos, ou seja, pavimento térreo, com uma sala, três quartos, sendo uma suíte duas varandas e um sanitário, e o pavimento superior, com garagem, uma sala, um lavabo, uma varanda, cozinha, área de serviço, dois quartos e um sanitário de empregada totalizando a área construída de 227,56m², no lote de terreno próprio de nº 03 da quadra VI do loteamento caminho das arvores, com 540,00m², medindo 18,00de frente para rua J, 18,00 de fundo, 30,00 do lado direito com o lote 04, 30,00 do lado esquerdo com o lote 02. o lote fica localizado do lado impar do logradouro e dista 31,00m da próxima esquina. Matrícula 10.825.

casa nº 338 da porta e 239.299-2 de inscrição no C.I., constituída de duas varandas, living, sala de jantar, dois quartos, sanitário social, cozinha, quarto e sanitário de empregada, área de serviço, totalizando a área construída de 301,00m², no lote de terreno próprio de nº 03 da quadra VI do loteamento caminho das arvores, com 540,00m², medindo 18,00 de frente para rua J, 18,00 de fundo, 30,00 do lado direito com o lote 01, 30,00 do lado esquerdo com o lote 03. o lote fica localizado do lado impar do logradouro e dista 31,00m da próxima esquina. Matrícula 53.228

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.468-Lamina 01, do empreendimento denominado "Solar caminho das arvores, situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no subdistrito de Amaralina, desta capital, composto de living, varanda, circulação, três quartos, sendo uma suíte, dois sanitários sociais, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m², de área comum 10,19m² e 127,81m² de área total e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à Rua "E" Alameda das Espatódias, do Loteamento citado acima, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e, em curva acompanhamento o meio fio da Rua E do loteamento, 30,00m do lado direito, no limite com a área B-1;25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento supra e, 137,92m² em cinco segmentos do ponto F ao ponto L, ao fundo, no limite com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.470-8-Lamina 01, do empreendimento denominado " Edifício Solar caminho das árvores situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2 com 6.539,00m², localizada a rua E alameda das Espatódias, loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.472, Lamina 01, do empreendimento denominado "Edifício Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no subdistrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 001 da porta e de inscrição municipal nº 333.473, Lamina 02, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.474 Lamina 02, do empreendimento denominado "Edificio Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores.

Apartamento designado pelo numero 101 da porta e 333.475 de inscrição no cadastro imobiliário, integrante do predio denominado Edificio Solar caminho das Arvores- lamina 02, situado a Rua E Alameda das Espatodeas, no, loteamento Caminho das Arvores, no sub-distrito de Amaralina zona urbana, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, circulação vestical e hall social e de serviço, cabendo ainda ao citado apartamento uma uma vaga de garagem, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,76m², com o coeficiente 2,0061% prédio esse edificado na área de terreno priprio com 6.539m²(seis mil quinhentos e trinta e nove metros quadrados) denominada de Área B-2 medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 80,00m em reta, do ponto F ao ponto L, ao fundo do limite com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 201 da porta e de inscrição municipal nº 333.477-5 Lamina 02, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.478-3 Lamina 02, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores, limitando-se com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 001 da porta e de inscrição municipal nº 333.479 Lamina 03, do empreendimento denominado "Edificio Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.480-5 Lamina 03, do empreendimento denominado "Edificio Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 101 da porta e de inscrição municipal nº 333.481 Lamina 03, do empreendimento denominado " Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizada à Rua E - Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, em curva acompanhando o meio fio da rua E, do loteamento Caminho das Arvores, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.482-1 Lamina 03, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Apartamento designado pelo nº 201 da porta e de inscrição municipal nº 333.483 Lamina 03, do empreendimento denominado " Solar caminho das árvores situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 12.000,00m², medindo 115,90m de frente no limite com os lotes 1,2,3,4,5,6 e 7 da quadra VI, do loteamento caminho das arvores; 30,00m do lado direito no limite da área B-1; 106,12 do lado esquerdo no limite da Rua E do loteamento caminho das arvores, com 6.539,00m².

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.484 Lamina 03, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores, limitando-se com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo numero 001 da porta e 333.485-6 de inscrição no cadastro imobiliário, integrante do prédio denominado Solar caminho das Arvores- lamina 04, situado a Rua 26, atual Alameda das Espatodeas, remanescente do Parque Jockey Clube, 66, Caminho das Arvores, no sub-distrito de Amaralina zona urbana, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, circulação vestical e hall social e de serviço, cabendo ainda ao citado apartamento uma uma vaga de garagem, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m², do seu respectivo terreno próprio designado pela Área B-2 que mede na sua totalidade 6.539,00m², Localizado a rua E, alameda das espatodeas, loteamento caminho das arvores, trecho compreendido no sub distrito de amaralina, medindo 115,90m de frente, acompanhado o meio fio existente da rua existente atrás do Jornal A Tarde, e em curva acompanhada o ,meio fio da rua E, do referido loteamento caminho das arvores, , 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m do lado esquerdo acompanhando o meio-fio da rua E do mesmo loteamento e 137,92m em cinco segmentos do ponto F ao ponto L, ao fundo ponto F ao ponto L, ao fundo do limite os Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.486-4 Lamina 04, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 101 da porta e de inscrição municipal nº 333.487, Lamina 04, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores, trecho anterior compreendido o sub-distrito de Brotas, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.488-0 Lamina 04, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Apartamento designado pelo nº 201 da porta e de inscrição municipal nº 333.489, Lamina 04, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores, trecho anteriormente medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.490, Lamina 04, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores, trecho anteriormente medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 001 da porta e de inscrição municipal nº 333.491 Lamina 05, do empreendimento denominado "Edificio Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores, limitando -se aos lotes 01,202,03,04,05,06 e 07 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.492 Lamina 05, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 02, atual professor Milton Cayres de Brito, remanescente do Parque Jockey Clube, 22, no sub-distrito de Amaralina, desta capital, Loteamento Caminho das Arvores, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empreagada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, dividido da maior porção da área de 12.00m², sendo 115,90m de frente no limite com a rua existente atras do Jornal A Tarde, 137,92m² de fundo no limite dos lotes 01 à 07 da quadra VI do citado Loteamento Caminho das Arvores, 30,00m do lado direito no limite da área B-1, 106,12m do lado esquerdo no limite da rua E do citado loteamento, com a área de 6.539,00m².

Apartamento designado pelo nº 101 da porta e de inscrição municipal nº 333.493, Lamina 05, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.494-5 Lamina 05, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.496 Lamina 05, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 02, atual professor Milton Cayres de Brito, remanescente do Parque Jockey Clube, 22, no sub-distrito de Amaralina, desta capital, Loteamento Caminho das Arvores, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empreagada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, dividido da maior porção da área de 12.00m², sendo 115,90m de frente no limite com a rua existente atras do Jornal A Tarde, 137,92m² , com a área de 6.539,00m², no limite com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 001 da porta e de inscrição municipal nº 333.497 Lamina 06, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.498-8 Lamina 06, do empreendimento denominado "Edificio Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 101 da porta e de inscrição municipal nº 333.499,-6, Lamina 06, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, dividido de maior porção de área de 12.000m², localizada na rua E alameda das espatodeas, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.500-3, Lamina 06, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 201 da porta e de inscrição municipal nº 333.501-1 Lamina 06, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.502, Lamina 06, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores, trecho anteriormente medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 001 da porta e de inscrição municipal nº 333.503 Lamina 07, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 02, atual professor Milton Cayres de Brito, remanescente do Parque Jockey Clube, 22, no sub-distrito de Amaralina, desta capital, Loteamento Caminho das Arvores, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empreagada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, dividido da maior porção da área de 12.00m², sendo 115,90m de frente no limite com a rua existente atras do Jornal A Tarde, 137,92m² de fundo no limite dos lotes 01 à 07 da quadra VI do citado Loteamento Caminho das Arvores, 30,00m do lado direito no limite da área B-1, 106,12m do lado esquerdo no limite da rua E do citado loteamento, com a área de 6.539,00m², no limite com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.504 Lamina 07, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 02, atual professor Milton Cayres de Brito, remanescente do Parque Jockey Clube, 22, no sub-distrito de Amaralina, desta capital, Loteamento Caminho das Arvores, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empreagada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, dividido da maior porção da área de 12.00m², sendo 115,90m de frente no limite com a rua existente atras do Jornal A Tarde, 137,92m² de fundo no limite dos lotes 01 à 07 da quadra VI do citado Loteamento Caminho das Arvores, 30,00m do lado direito no limite da área B-1, 106,12m do lado esquerdo no limite da rua E do citado loteamento, com a área de 6.539,00m², no limite com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 101 da porta e de inscrição municipal nº 333.505 Lamina 07, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.506 Lamina 07, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 201 da porta e de inscrição municipal nº 333.507 Lamina 07, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores, limitando-se com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.508, Lamina 07, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, dividido de maior porção de área de 12.000m², localizada na rua E alameda das espatodeas, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores, trecho anteriormente.

Apartamento designado pelo nº 001 da porta e de inscrição municipal nº 333.509 Lamina 08, do empreendimento denominado "Edificio Solar caminho das arvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 002 da porta e de inscrição municipal nº 333.510 Lamina 08, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de serviço, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, com 6.539m², localizado à rua E, Alameda das espatódias, do Loteamento caminho das Arvores, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, 30,00m do lado direito, no limite com a área B-1; 25,12m em curva e 81,00m em reta, totalizando 106,12m², do lado esquerdo acompanhando o meio fio da Rua "E", do loteamento caminho das arvores e, 137,92m² em cinco segmentos do ponto F ao ponto L, de fundo limitando -se com os fundos dos Lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 101 da porta e de inscrição municipal nº 333.511 Lamina 08, do empreendimento denominado " Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores,.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 102 da porta e de inscrição municipal nº 333.512 Lamina 08, do empreendimento denominado "  Edificio Solar caminho das arvores, situado na Rua 26, remanescente do Parque Jockey Club, 66, no Loteamento Caminho das Arvores, na Pituba, sub distrito de Amaralina, nesta capital, composto de três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, vestíbulo, varanda, cozinha, depósito, despensa, área de serviço, quarto e sanitário de serviço e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m², área comum de 10,36m², área total de 129,83m² e fração ideal equivalente a 136,949m² da área total de terreno próprio designado de área B-2, desmembrada da maior porção da área de 6.539,00m², localizada à da Rua E das Espartodeas, loteamento caminho das arvores, limitando-se com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Apartamento designado pelo nº 201 da porta e de inscrição municipal nº 333.513 Lamina 08, do empreendimento denominado "Edificio Solar caminho das árvores situado a Rua 02, atual professor Milton Cayres de Brito, remanescente do Parque Jockey Clube, 22, no sub-distrito de Amaralina, desta capital, Loteamento Caminho das Arvores, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empreagada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 117,62m2, área comum 10,19m² e área total de 127,81m² e fração ideal de 134,790m² da área total de terreno próprio, designado de área B2, dividido da maior porção da área de 12.00m², sendo 115,90m de frente no limite com a rua existente atras do Jornal A Tarde, 137,92m² de fundo no limite dos lotes 01 à 07 da quadra VI do citado Loteamento Caminho das Arvores, 30,00m do lado direito no limite da área B-1, 106,12m do lado esquerdo no limite da rua E do citado loteamento, com a área de 6.539,00m², no limite com os lotes 1,2,3,4,5,6 e 7 do loteamento caminho das arvores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

Apartamento designado pelo nº 202 da porta e de inscrição municipal nº 333.501-1, Lamina 08, do empreendimento denominado "Solar caminho das árvores situado a Rua 26, remanescente do Parque Jockey Clube, 66, loteamento Caminho das Arvores, no sub-distrito de Amaralina, desta capital, composto três quartos, sendo uma suíte, dois sanitários sociais, circulação interna, living, varanda, cozinha, deposito, despensa, área de serviço, quarto e sanitário de empregada, e uma vaga de garagem no estacionamento descoberto, com área privativa de 119,47m2, área comum 10,36m² e área total de 129,83m² e fração ideal de 136,949m² da área total de terreno próprio, designado de área B2, dividido de maior porção de área de 12.000m², localizada na rua E alameda das espatodeas, medindo 115,90m de frente, acompanhado o meio fio da Rua existente atrás do Jornal A Tarde, e me curva acompanhando o meio fio da rua E do loteamento caminho das arvores, 30,00m do lado direito, no limite com a área B-1; com 6.539m², localizado a rua E Alameda das espatódias, do Loteamento caminho das Arvores, trecho anteriormente.

Cotas do capital social da FRVJ PATRIMONIAL LTDA, Sociedade empresarial limitada, com sede à Avenida Tancredo Neves, 1672, Edifício Catabas Empresarial, 5º Andar, Caminho das Árvores, Salvador, Estado da Bahia, inscrito no CNPJ sob o nº 21.027.346/0001-53.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

**ANEXO 6.1**

**Lista de Operações de Reorganização Societária**

**1.** Nos termos da legislação aplicável, as Recuperandas ficam autorizadas a realizar as seguintes operações de reorganização societárias:

(i) **Incorporação OEI**: A ODB poderá incorporar a OEI de tal forma que os créditos das debentures com a ATVOS S.A. – EM RECUPERAÇÃO JUDICIAL. e os passivos junto ao BNDESPAR e OSPINV figurem no balanço da ODB.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

**ANEXO 7.4.1**

**Regras de Alocação de Remessas de Recursos para Requerentes**

| Requerentes | Valor Máximo de Remessas (em R$ Milhões) |
|---|---|
| OPISA e OPI | 38,0 |
| OE e OEB | 13,0 |
| OPP e OP Centro Administrativo | 16,9 |
| MECTRON, OSP e OFL | 5,6 |
| **Total** | **73,4** |

O valor residual de R$ 6.600.000,00 (seis milhões e seiscentos mil reais) poderá ser livremente alocado dentre as Requerentes para cumprimento das obrigações constantes em seus respectivos planos de recuperação judicial.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9ACF.

**Annex 4.1.2 - Private Debenture**

**INSTRUMENTO PARTICULAR DE ESCRITURA DA [--] EMISSÃO DE DEBÊNTURES SIMPLES, NÃO CONVERSÍVEIS EM AÇÕES, DA ESPÉCIE QUIROGRAFÁRIA, COM GARANTIA ADICIONAL FIDEJUSSÓRIAS, EM SÉRIE ÚNICA, PARA COLOCAÇÃO PRIVADA, DA [EMISSORA]**[1]

celebrado entre

**[EMISSORA]**
*como Emissora*

e

**[AGENTE FIDUCIÁRIO]**
*como Agente Fiduciário, representando a comunhão dos Debenturistas*

**[FIADORAS]**
*na qualidade de intervenientes garantidoras*

[*data*]

[1] A ser adaptada e ajustada conforme disposições do Plano de Recuperação Judicial.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**INSTRUMENTO PARTICULAR DE ESCRITURA DA [--] EMISSÃO DE DEBÊNTURES SIMPLES, NÃO CONVERSÍVEIS EM AÇÕES, DA ESPÉCIE QUIROGRAFÁRIA, COM GARANTIA ADICIONAL FIDEJUSSÓRIAS, EM SÉRIE ÚNICA, PARA COLOCAÇÃO PRIVADA, DA [EMISSORA]**

Pelo presente instrumento particular,

**[EMISSORA]**, [*qualificação*], neste ato representada na forma do seu estatuto social ("Emissora");

**AGENTE FIDUCIÁRIO,** [*qualificação*], neste ato representada na forma do seu [contrato/estatuto] social, na qualidade de agente fiduciário da presente emissão ("Agente Fiduciário"), representando a comunhão dos Credores Quirografários Não Financeiros que adquirirem as debêntures desta emissão ("Debenturistas" e, individualmente, "Debenturista");

na qualidade de intervenientes fiadoras e principal pagadoras,

**[FIADORA 1]**, [*qualificação*], neste ato representada na forma do seu estatuto social ("[*Fiadora 1*]");

**[FIADORA 2]**, [*qualificação*], neste ato representada na forma do seu estatuto social ("[*Fiadora 2*]" e, em conjunto com a Fiadora 1, "Fiadoras"); [**NOTA: QUANTIDADE DE FIADORAS E SUAS RESPECTIVAS QUALIFICAÇÕES A SER DEFINIDA OPORTUNAMENTE A DEPENDER DAS RECUPERANDAS QUE ADERIREM AO PLANO DE RECUPERAÇÃO JUDICIAL]**

**CONSIDERANDO QUE:**

(A) a Emissora e as Fiadoras são integrantes do grupo Odebrecht, um dos maiores conglomerados empresariais do País, um conglomerado empresarial com atuação nos setores de infraestrutura, óleo e gás, sucroalcooleiro, incorporação imobiliária, mobilidade e transporte, energia, defesa e serviços navais, reunindo diversas sociedades sob controle comum (direto ou indireto) da Kieppe Participações e Administração Ltda. – Em Recuperação Judicial ("Grupo Odebrecht");

(B) no exercício de suas atividades, a Emissora e outras sociedades integrantes do Grupo Odebrecht, incluindo as Fiadoras (em conjunto denominadas "Recuperandas ODB") estruturaram-se para viabilizar a captação de recursos junto ao mercado financeiro e de capitais brasileiro e internacional, por meio da contratação de financiamentos bancários, garantias bancárias, seguros-garantia e emissão de títulos de dívida no mercado local (debêntures) e no mercado internacional (*bonds*) (em conjunto, "Dívidas Reestruturadas");

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(C) em razão de dificuldades financeiras enfrentadas pelas Recuperandas ODB que culminaram no inadimplemento de parte relevante das Dívidas Reestruturadas, em 17 de junho de 2019, foi apresentado pedido de recuperação judicial conjunto, autuado sob o nº 1057756-77.2019.8.26.0100, em curso perante a 1ª Vara de Falências e Recuperação Judiciais do Foro Central Cível da Comarca da Capital de São Paulo, com o objetivo de permitir o seguimento e preservação das atividades das Recuperandas ODB ("Plano de Recuperação Judicial");

(D) em atenção aos despachos de fls. 278/285 e 355/363, proferidos respectivamente no âmbito dos Agravos de Instrumento nº 2262371-21.2019.8.26.0000 e 226277-73.2019.8.26.000, os Credores Concursais (conforme definido no Plano de Recuperação Judicial) das Recuperandas listadas no Anexo II à presente Escritura, conforme aditado de tempos em tempos para a inclusão de eventuais novas Recuperandas ("Recuperandas") deliberaram, em sede de assembleia geral de credores, pela consolidação substancial da Odebrecht S.A. – em Recuperação Judicial ("ODB") com as demais Recuperandas, de modo que o Plano de Recuperação Judicial é composto pelos ativos e passivos de titularidade de todas as Recuperandas ("Consolidação Substancial das Recuperandas");

(E) no âmbito do Plano de Recuperação Judicial, foi outorgada a possibilidade aos credores de créditos quirografários decorrentes de operações realizadas no âmbito do Sistema Financeiro Nacional, com seguradoras, instituições financeiras estrangeiras, fundos de investimento ou participação, ou envolvendo estruturas estrangeiras semelhantes a fundos de investimento ou participação, *private equity*, e/ou emissões de títulos de dívida nos mercados nacionais e estrangeiros, incluindo, sem limitação, emissões de debêntures, *notes* ou *bonds* ("Créditos Quirografários Financeiros") de terem seus créditos reestruturados e integralmente pagos por meio de determinados instrumentos, conforme oportunamente eleitos, dentre os quais debêntures a serem emitidas com esforços restritos de colocação, nos termos da Instrução da CVM nº 476, de 16 de janeiro de 2009, conforme alterada ("Debêntures Públicas");

(F) no âmbito do Plano de Recuperação Judicial, foi também outorgada a possibilidade aos credores de créditos quirografários que não os Créditos Quirografários Financeiros, bem com os credores detentores de créditos concursais detidos por empresário individual, EIRELI, sociedade empresária e/ou sociedade simples, desde que classificados como microempresas e empresas de pequeno porte, conforme definidas pela Lei Complementar nº 123, de 14 de dezembro de 2006 e conforme previstos nos artigos 41, inciso IV e 83, inciso IV, alínea d, da Lei nº 11.101 de 9 de fevereiro de 2015 (em conjunto "Créditos Quirografárias Não Financeiros") de terem seus créditos reestruturados e integralmente pagos por meio de determinados instrumentos, conforme oportunamente eleitos, dentre os quais debêntures privadas ("Debêntures Privadas");

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(G) a fim de viabilizar a emissão das Debêntures Privadas para que os credores dos Créditos Quirografários Não Financeiros com crédito em valor superior a R$150.000.000 (cento e cinquenta mil reais) ("Credores Quirografários Não Financeiros") tenham seus créditos satisfeitos, os termos e condições substanciais da presente Escritura (conforme definido abaixo) foram inseridos na forma de anexo ao Plano de Recuperação Judicial;

(H) o Plano de Recuperação Judicial foi devidamente aprovado pelos credores concursais e posteriormente homologado judicialmente nos termos do artigo 58, § 1º, da Lei nº 11.101 de 9 de fevereiro de 2015, em [*data*]; e

(I) os Credores Quirografários Não Financeiros que optarem por ter seus Créditos Quirografários Não Financeiros pagos por meio de Debêntures Privadas poderão subscrever as Debêntures objeto da presente Emissão (conforme definido abaixo) nos termos constantes deste instrumento.

Sendo a Emissora, o Agente Fiduciário e as Fiadoras doravante denominados, em conjunto, como "Partes" e, individual e indistintamente, como "Parte".

Resolvem as Partes, por meio desta e na melhor forma de direito, celebrar o presente "*Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em Série Única, para Colocação Privadas, da [Emissora]*" ("Escritura"), conforme as cláusulas e condições a seguir.

Para efeitos desta Escritura, define-se "Dia Útil" como sendo qualquer dia da semana, exceto sábados, domingos e feriados declarados nacionais. Quando a indicação de prazo contado por dia na presente Escritura não vier acompanhada da indicação de "Dia Útil", entende-se que o prazo é contado em dias corridos.

## CLÁUSULA I
## AUTORIZAÇÃO

1.1 A presente Escritura é firmada com base na autorização da [*Assembleia Geral Extraordinária de acionistas da Emissora realizada em [data] ("AGE da Emissora")*], por meio da qual foi deliberada a emissão de debêntures simples, não conversíveis em ações, da espécie quirografária, com garantia adicional fidejussória, em série única, da Emissora ("Debêntures" e "Emissão", respectivamente), para colocação privada, nos termos do artigo 59 da Lei nº 6.404 de 15 de dezembro de 1976, conforme alterada ("Lei das Sociedades por Ações"), e das demais disposições legais e regulamentares aplicáveis; e (ii) a autorização para que a diretoria da Emissora pratique todos os atos necessários à efetivação das deliberações ali consubstanciadas, incluindo a celebração de todos os

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

fls. 32742

documentos necessários à concretização da Emissão e da Emissão. **[NOTA: APROVAÇÃO DA EMISSÃO VIA AGE E/OU RCA A SER CONFIRMADA A DEPENDER DA EMISSORA]**

1.2. A Fiança (conforme abaixo definida) será realizada com base nas deliberações da [*Assembleia Geral Extraordinária de acionistas da Fiadora 1 realizada em [data] ("AGE da Fiadora 1")]* e na [*Assembleia Geral Extraordinária de acionistas da Fiadora 2 realizada em [data] ("AGE da Fiadora 2"]* e, em conjunto com a [AGE da Fiadora 1], "Atos Societários das Fiadoras"). **[NOTA: APROVAÇÃO DA FIANÇA VIA AGE E/OU RCA A SER CONFIRMADA A DEPENDER DAS FIADORAS]**

**CLÁUSULA II**
**REQUISITOS**

A Emissão será realizada com observância aos requisitos abaixo.

**2.1. Dispensa de Registro na CVM e na Associação Brasileira das Entidades dos Mercados Financeiro e de Capitais ("ANBIMA")**

2.1.1. A Emissão não foi e não será objeto de registro perante a CVM ou perante a ANBIMA, uma vez que as Debêntures serão objeto de colocação privada, sem qualquer esforço de venda ou intermediação de instituições integrantes do sistema de distribuição perante investidores.

**2.2. Arquivamento na Junta Comercial e Publicação da Ata de AGE da Emissora**

2.2.1. A ata da [AGE da Emissora] será devidamente arquivada na Junta Comercial do Estado de [--] ("Junta Comercial") e deverá ser publicada nos jornais "Diário Oficial do Estado de [--] ("Diário Oficial") e no jornal "[--]", nos termos da Lei das Sociedades por Ações. Os atos societários que eventualmente venham a ser praticados após o arquivamento desta Escritura também serão arquivados na Junta Comercial e publicadas pela Emissora no Diário Oficial e no jornal "[--]", conforme legislação em vigor

**2.4. Arquivamento e Registro desta Escritura e seus Aditamentos**

2.4.1. Esta Escritura e seus eventuais aditamentos serão arquivados na Junta Comercial, nos termos do artigo 62, inciso II e parágrafo 3º, da Lei das Sociedades por Ações. A Emissora deverá enviar 1 (uma) via original da Escritura e de seus eventuais aditamentos devidamente registrados na Junta Comercial ao Agente Fiduciário em até 5 (cinco) Dias Úteis contados da obtenção do respectivo registro. Adicionalmente, em razão da Fiança outorgada pela Fiadora, esta Escritura de Emissão e seus eventuais aditamentos também

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

serão registrados nos competentes Cartórios de Registro de Títulos e Documentos nas Cidades de [--], no Estado de [--] ("RTDs"), devendo esta Escritura de Emissão (e eventuais aditamentos) ser levada a registro nos RTDs em até 5 (cinco) Dias Úteis contados da data de sua assinatura e enviada 1 (uma) via original pela Emissora ao Agente Fiduciário em até 5 (cinco) Dias Úteis, contados do respectivo registro.

**2.5. Registro na B3**

2.5.1. As Debêntures poderão, a critério da Emissora, ser registradas em nome dos titulares na B3 S.A. – Brasil, Bolsa, Balcão - Segmento Cetip UTVM ("B3"), sendo a liquidação financeira dos eventos realizada por meio da B3, considerando que as Debêntures estejam registradas em nome dos respectivos Debenturistas na B3 na data de cada evento de pagamento pela Emissora.

## CLÁUSULA III
## CARACTERÍSTICAS DA EMISSÃO

**3.1 Objeto Social da Emissora**

3.1.1. Nos termos do estatuto social da Emissora atualmente em vigor, o objeto social da Emissora compreende [*incluir descrição do objeto social da Emissora*].

**3.2 Número da Emissão**

3.2.1. A presente Emissão constitui a [--]ª ([--]) emissão de debêntures da Emissora.

**3.3 Valor Total da Emissão**

3.3.1. O valor total da Emissão será de R$ [--] ([--]), na Data de Emissão (conforme abaixo definido), observada a possibilidade de distribuição parcial das Debêntures prevista na Cláusula 3.5.3, de modo que o Valor Total da Emissão deverá ser ajustado por meio de aditamento à presente Escritura, após transcorrido o Prazo de Subscrição (conforme abaixo definido) ("Valor Total da Emissão").

**3.4 Número de Séries**

3.4.1. A Emissão será realizada em série única.

**3.5 Colocação das Debêntures**

3.5.1. As Debêntures serão objeto de colocação privada destinada somente aos Credores Quirografários Não Financeiros, sem qualquer esforço de venda ou intermediação de

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

instituições integrantes do sistema de distribuição perante investidores, sendo certo que as Debêntures poderão ser subscritas pelos Credores Quirografárias Não Financeiros até o prazo máximo de 36 (trinta e seis) meses contados de [*data*] ("Prazo de Subscrição").

3.5.2. A colocação das Debêntures para os Credores Quirografários Não Financeiro será realizada de acordo com o Plano de Recuperação Judicial, conforme aplicável.

3.5.3. Será admitida a distribuição parcial das Debêntures, observado que o montante final da Oferta Privada será definido após o término do Prazo de Subscrição.

3.5.3.1. Ao final do Prazo de Subscrição, as Debêntures efetivamente emitidas e não distribuídas serão canceladas pela Emissora.

3.5.3.2. Tendo em vista que a distribuição poderá ser parcial, o Credor Quirografário Não Financeiro que adquirir as Debêntures renunciará expressamente, no ato da aceitação à Oferta Privada, a possibilidade de condicionar sua adesão à distribuição total ou de uma proporção ou quantidade mínima das Debêntures.

**3.6 Banco Liquidante e Escriturador**

3.6.1. A instituição prestadora de serviços de banco liquidante das Debêntures é o [*Banco Liquidante*], [*qualificação*] ("Banco Liquidante").

3.6.2. A instituição prestadora de serviços de escrituração das Debêntures é o [*Escriturador*], [*qualificação*] ("Escriturador").

3.6.3. O Escriturador será responsável por efetuar a escrituração das Debêntures, dentre outras atribuições descritas no Manual de Normas da B3, no caso das Debêntures registradas em nome dos respectivos Debenturistas na B3.

**3.7 Destinação dos Recursos**

3.7.1. Os créditos integralizados recebidos pela Emissora em decorrência da subscrição das Debêntures serão utilizados pela Emissora para capitalização de suas subsidiárias e/ou reestruturação de suas dívidas observados os termos e condições do Plano de Recuperação Judicial. **[NOTA: DESTINAÇÃO DOS RECURSOS A SER ADAPTADA CONFORME DEFINIÇÃO DO PLANO DE RJ]**

**3.8. Garantia Fidejussória**

3.8.1. Em garantia do pagamento integral de todos e quaisquer valores, principais ou acessórios, incluindo Encargos Moratórios (conforme definido abaixo), devidos pela Emissora ou pelas Fiadoras, nos termos desta Escritura, bem como eventuais indenizações, todo e qualquer custo ou despesa comprovadamente e razoavelmente incorrido pelo Agente

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Fiduciário e/ou pelos Debenturistas em decorrência de processos, procedimentos e/ou outras medidas judiciais ou extrajudiciais necessários à salvaguarda de seus direitos e prerrogativas decorrentes das Debêntures, desta Escritura ("Obrigações Garantidas"), as Fiadoras, neste ato, se obrigam, solidariamente entre si e com a Emissora, em caráter irrevogável e irretratável, perante os Debenturistas, como fiadoras, principais pagadoras das Obrigações Garantidas, renunciando expressamente aos benefícios de ordem, direitos e faculdades de exoneração de qualquer natureza previstos nos artigos 333, parágrafo único, 364, 366, 368, 821, 824, 825, 827, 829, parágrafo único, 830, 834, 835, 836, 837, 838 e 839 da Lei n.º 10.406, de 10 de janeiro de 2002, conforme alterada ("Código Civil"), e dos artigos 130 e 794 da Lei n.º 13.105, de 16 de março de 2015, conforme alterada ("Código de Processo Civil" e "Fiança", respectivamente).

3.8.2. Cabe ao Agente Fiduciário requerer a execução, judicial ou extrajudicial, da Fiança, conforme função que lhe é atribuída nesta Escritura, uma vez verificada qualquer hipótese de insuficiência de pagamento das Obrigações Garantidas. A Fiança poderá ser excutida e exigida pelo Agente Fiduciário quantas vezes forem necessárias, até a integral e efetiva liquidação de todas as Obrigações Garantidas, sendo certo que a não execução da Fiança por parte do Agente Fiduciário não ensejará, em qualquer hipótese, perda do direito de execução da Fiança pelos Debenturistas.

3.8.3. As Fiadoras se obrigam a, de forma solidariamente entre si, independentemente de qualquer pretensão, ação, disputa ou reclamação que a Emissora venha a ter ou exercer em relação às suas obrigações, ressalvado o disposto na Cláusula 3.8.6 abaixo, honrar a Fiança, independemente de notificação do Agente Fiduciário informando a falta de pagamento pela Emissora, no prazo de até [30 (trinta)] dias contados do descumprimento de qualquer das Obrigações Garantidas pela Emissora, fora do âmbito da B3.

3.8.4. A Fiança aqui referida é prestada em caráter irrevogável e irretratável e entrará em vigor na data de celebração desta Escritura e permanecerá válida até o pagamento integral das Obrigações Garantidas.

3.8.5. As Fiadoras, desde já, concordam e se obrigam, solidariamente entre si, a, (i) somente após a integral liquidação de todos os valores devidos aos Debenturistas e ao Agente Fiduciário nos termos desta Escritura, exigir e/ou demandar a Emissora em decorrência de qualquer valor que tiver honrado no âmbito das Debêntures e nos termos desta Escritura; e (ii) caso a Emissora esteja em mora no cumprimento das obrigações pecuniárias previstas nesta Escritura e as Fiadoras sejam reembolsadas pela Emissora em decorrência de qualquer valor que tiver honrado no âmbito das Debêntures, nos termos desta Escritura antes da integral liquidação de todos os valores devidos aos Debenturistas e ao Agente Fiduciário nos termos das Debêntures, desta Escritura, repassar, no prazo de 30 (trinta) Dias contados da data de seu recebimento, tal valor ao Agente Fiduciário, para pagamento aos Debenturistas.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

3.8.6. A Fiança permanecerá válida e plenamente eficaz, em caso de aditamentos, alterações e quaisquer outras modificações nesta Escritura e nos demais documentos da Emissão.

## CLÁUSULA IV
## CARACTERÍSTICAS GERAIS DAS DEBÊNTURES

**4.1. Data de Emissão:** Para todos os fins e efeitos legais, a data de emissão das Debêntures será o dia [*data*] ("Data de Emissão").

**4.2. Forma, Tipo e Comprovação de Titularidade**: As Debêntures serão emitidas sob a forma nominativa e escritural, sem emissão de cautelas ou certificados, sendo que, para todos os fins de direito, a titularidade das Debêntures será comprovada pelo extrato das Debêntures emitido pelo Escriturador e, adicionalmente, com relação às Debêntures que estiverem registadas em nome dos respectivos Debenturistas na B3 será expedido por esta extrato em nome do Debenturista, que servirá como comprovante de titularidade de tais Debêntures.

**4.3. Conversibilidade**: As Debêntures não serão conversíveis em ações de emissão da Emissora.

**4.4. Espécie:** As Debêntures serão da espécie quirografária nos termos do artigo 58 da Lei das Sociedades por Ações e contarão com garantia adicional fidejussória.

**4.5. Prazo e Data de Vencimento:** Sem prejuízo das possibilidades de liquidação antecipada das Debêntures em razão das hipóteses de vencimento antecipado ou da realização de eventual Resgate Antecipado Obrigatório (conforme definido abaixo), nos termos desta Escritura, as Debêntures terão prazo de vencimento de 40 (quarenta) anos contados da Data de Emissão, vencendo-se, portanto, em [*data*] ("Data de Vencimento").

**4.6. Valor Nominal Unitário**: O valor nominal unitário das Debêntures será de R$ [--] ([--]), na Data de Emissão ("Valor Nominal Unitário").

**4.7. Quantidade de Debêntures Emitidas:** Serão emitidas até [--] ([--]) Debêntures, observada a possibilidade de distribuição parcial nos termos da Cláusula 3.5.3 acima.

**4.8. Forma de Subscrição e Integralização**: As Debêntures serão subscritas e integralizadas, em uma ou mais datas, de acordo com as regras de liquidação aplicáveis [à B3/ao Banco Liquidante], pelo seu Valor Nominal Unitário Atualizado (conforme definido abaixo). As Debêntures serão subscritas exclusivamente por Credores Quirografários Não Financeiros e integralizadas exclusivamente com os Créditos Quirografários Não Financeiros, observado o disposto no Plano de Recuperação Judicial, por meio de boletim de subscrição, cujo modelo segue anexo à presente Escritura como Anexo II.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**4.9. Atualização Monetária**: O Valor Nominal Unitário ou o saldo do Valor Nominal Unitário, conforme aplicável, das Debêntures será atualizado monetariamente pelo IPCA ou pela TR (conforme definidos abaixo), conforme disposto a seguir.

4.9.1 *Atualização Monetária pelo IPCA.* Observado o disposto na Cláusula 4.9.2 e subscláusulas abaixo, o Valor Nominal Unitário ou o saldo do Valor Nominal Unitário, conforme aplicável, das Debêntures será atualizado monetariamente pela variação positiva acumulada do Índice Nacional de Preços ao Consumidor Amplo ("IPCA"), apurado e divulgado mensalmente pelo Instituto Brasileiro de Geografia e Estatística ("IBGE"), desde a Data de Emissão (inclusive) até a Data Modificadora TR (conforme definido abaixo) (inclusive) ou a Data de Vencimento (inclusive), conforme o caso, ("Atualização Monetária IPCA"), sendo o produto da Atualização Monetária IPCA automaticamente incorporado ao Valor Nominal Unitário das Debêntures ou, se for o caso, ao saldo do Valor Nominal Unitário das Debêntures, conforme aplicável ("Valor Nominal Unitário Atualizado IPCA"), calculado de forma *pro rata temporis* por Dias Úteis conforme a fórmula abaixo:

$$VNa = VNe \times C$$

Onde:

VNa = Valor Nominal Unitário Atualizado IPCA calculado com 8 (oito) casas decimais, sem arredondamento;

VNe = Valor Nominal Unitário IPCA ou saldo do Valor Nominal Unitário IPCA (valor nominal remanescente após amortização de principal), conforme o caso, calculado com 8 (oito) casas decimais, sem arredondamento.

C = Fator acumulado das variações mensais do índice utilizado, calculado com 8 (oito) casas decimais, sem arredondamento, apurado da seguinte forma:

$$C = \prod_{k=1}^{n} \left[ \left( \frac{NI_k}{NI_{k-1}} \right)^{dup/dut} \right]$$

$$C = \prod_{k=1}^{n} \left[ \left( \frac{NI_k}{NI_{k-1}} \right)^{dup/dut} \right]$$

Onde:

n = número total de índices utilizados na Atualização Monetária IPCA, sendo "n" um número inteiro;

dup = número de Dias Úteis entre a Data de Emissão ou a última Data de Aniversário Mensal IPCA das Debêntures e a data de cálculo, limitado ao número total de Dias Úteis de vigência do índice utilizado, sendo "dup" um número inteiro;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

dut = número de Dias Úteis entre a última e a próxima Data de Aniversário Mensal IPCA, sendo “dut” um número inteiro;

NIk = valor do número-índice do mês anterior ao mês de atualização, caso a atualização seja em data anterior ou na própria Data de Aniversário Mensal IPCA. Após a Data de Aniversário Mensal IPCA, valor do número-índice do mês de atualização; e

NIk-1 = valor do número-índice do mês anterior ao mês “k”.

O fator resultante da expressão abaixo descrita é considerado com 8 (oito) casas decimais, sem arredondamento:

$$\left(\frac{NI_k}{NI_{k-1}}\right)^{\frac{dup}{dut}}$$

O produtório final é executado a partir do fator mais recente, acrescentando-se, em seguida, os mais remotos. Os resultados intermediários são calculados com 16 (dezesseis) casas decimais, sem arredondamento.

A aplicação do IPCA incidirá no menor período permitido pela legislação em vigor, sem necessidade de ajuste à Escritura ou qualquer outra formalidade.

O IPCA deverá ser utilizado considerando idêntico número de casas decimais divulgado pelo IBGE.

Considera-se “Data de Aniversário Mensal IPCA” todo dia 15 de cada mês, e caso referida data não seja Dia Útil, o primeiro Dia Útil subsequente.

Considera-se como mês de atualização o período mensal compreendido entre duas datas de aniversários consecutivas das Debêntures.

Se até a Data de Aniversário Mensal IPCA das Debêntures o NIk não houver sido divulgado, deverá ser utilizado em substituição a NIk na apuração do Fator “C” um número-índice projetado calculado com base na última projeção disponível divulgada pela ANBIMA (“Número Índice Projetado” e “Projeção”, respectivamente) da variação percentual do IPCA, conforme fórmula a seguir:

$$NI_{kp} = NI_{k-1} \times (1 + Projeção)$$

Onde:

NIkp = Número Índice Projetado do IPCA para o mês de atualização, calculado com 2 (duas) casas decimais, com arredondamento;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Projeção = variação percentual projetada pela ANBIMA referente ao mês de atualização;

O Número Índice Projetado será utilizado, provisoriamente, enquanto não houver sido divulgado o número índice correspondente ao mês de atualização, não sendo, porém, devida nenhuma compensação entre a Emissora e os Debenturistas quando da divulgação posterior do IPCA que seria aplicável; e

O número índice do IPCA, bem como as projeções de sua variação, deverá ser utilizado considerando idêntico número de casas decimais divulgado pelo órgão responsável por seu cálculo/apuração.

4.9.1.1. Na ausência de indisponibilidade do IPCA por prazo inferior a 5 (cinco) Dias Úteis contados da data esperada para sua apuração e/ou divulgação, será utilizado, em sua substituição, o último número-índice divulgado, calculado *pro rata temporis* por Dias Úteis, porém, não cabendo, quando da divulgação do número-índice devido, quaisquer compensações financeiras. Na ausência de apuração e/ou divulgação do IPCA por prazo igual ou superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, o IPCA deverá ser substituído pela média simples do IPCA verificada nos 12 (doze) meses anteriores à data de homologação do Plano de Recuperação Judicial, calculado *pro rata temporis* por Dias Úteis.

4.9.2 *Atualização Monetária pela TR.* A partir do 15º (décimo quinto) ano contado da Data de Emissão, caso tenha ocorrido nos últimos [--] ([--]) anos o pagamento, pela Emissora aos Debenturistas, em valor, individual ou agregado, igual ou superior a R$ 500.000,00 (quinhentos mil reais) a título de Amortização Extraordinária Obrigatória (conforme definido abaixo) ("Amortização Extraordinária Modificadora"), a partir do segundo Dia Útil subsequente à próxima Data de Aniversário Anual (conforme definido abaixo) das Debêntures ("Data Modificadora TR") o Valor Nominal Unitário ou o saldo do Valor Nominal Unitário, conforme aplicável, das Debêntures passará a ser atualizado monetariamente pela taxa de referência instituída pela Lei nº 8.177, de 01 de março de 1991, conforme apurada e divulgada pelo Banco Central do Brasil ("TR" e "BACEN", respectivamente), desde a Data Modificadora TR (inclusive) até a Data Modificadora IPCA (conforme definido abaixo) (inclusive) ou a Data de Vencimento (inclusive), conforme o caso ("Atualização Monetária TR"), sendo o produto da Atualização Monetária TR automaticamente incorporado ao Valor Nominal Unitário das Debêntures ou, se for o caso, ao saldo do Valor Nominal Unitário das Debêntures, conforme aplicável ("Valor Nominal Unitário Atualizado TR" e, em conjunto com o Valor Nominal Unitário Atualizado IPCA, "Valor Nominal Atualizado"), calculado de forma *pro rata temporis* por Dias Úteis, conforme a fórmula abaixo:

$$VNa = VNe \times FatorTR$$

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Onde:

VNa = Valor Nominal Unitário Atualizado TR calculado com 8 (oito) casas decimais, sem arredondamento;

VNe = Valor Nominal Unitário TR ou saldo do Valor Nominal Unitário TR (valor nominal remanescente após amortização de principal), conforme o caso, calculado com 8 (oito) casas decimais, sem arredondamento.

FatorTR = Produtório das Taxas Referenciais divulgadas pelo Banco Central do Brasil entre a data de emissão, início de rentabilidade, incorporação, amortização ou pagamento de atualização, o que ocorrer por último, e a data de atualização, calculado com 8 (oito) casas decimais, sem arredondamento, apurado da seguinte forma:

$$FatorTR = \prod_{k=1}^{n}\left[\left(1+\frac{TR_k}{100}\right)^{dup_k/dut_k}\right]$$

Onde:

n = Número total de TR´s consideradas entre a Data de Emissão, início de rentabilidade, incorporação, amortização ou pagamento de atualização, o que ocorrer por último, e a data de atualização;

$TR_k$ = Taxa Referencial das Datas-Base divulgadas pelo BACEN entre a Data de Emissão, início de rentabilidade, incorporação, amortização ou pagamento de atualização, o que ocorrer por último, e a data de atualização;

$dut_k$ = Número total de Dias Úteis para o período de vigência da $TR_k$ utilizada;

$dup_k$ = Número de Dias Úteis compreendidos entre a data da $TR_k$ utilizada e a data do cálculo, limitado ao número de Dias Úteis total de vigência da $TR_k$

**Observações:**

1ª) Data-Base é o dia da data de vencimento das Debêntures em cada mês.

2ª) Caso o dia da Data de Emissão não seja coincidente com a correspondente Data-Base, a atualização será efetuada até a primeira Data-Base ocorrida após a Emissão, com base no critério *pro rata* Dia Útil, com utilização da TR relativa à Data de Emissão (Circular nº 2.456 de 28/07/1994 – art. 2º).

3ª) Caso as Debêntures tenham vencimento indeterminado, a Data-Base será o dia primeiro de cada mês.

4ª) Cada fator resultante da expressão $\left(1+\frac{TR_k}{100}\right)^{dup_k/dut_k}$ é considerado com 8 (oito) casas decimais, sem arredondamento. A cada novo fator incluído no produtório, este gera um fator intermediário que será considerado com 8 (oito) casas decimais, sem arredondamento.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

4.9.2.1. Na ausência de indisponibilidade da TR por prazo inferior a 5 (cinco) Dias Úteis contados da data esperada para sua apuração e/ou divulgação, será utilizado, em sua substituição, o último número-índice divulgado, calculado *pro rata temporis* por Dias Úteis, porém, não cabendo, quando da divulgação do número-índice devido, quaisquer compensações financeiras. Na ausência de apuração e/ou divulgação do número-índice da TR por prazo igual ou superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, a TR deverá ser substituída pela média simples da TR verificada nos 12 (doze) meses anteriores à data de homologação do Plano de Recuperação Judicial, calculado *pro rata temporis* por Dias Úteis.

4.9.2.2. Anualmente, a partir da Data Modificadora TR ("Períodos de Verificação"), o Agente Fiduciário deverá verificar se houve naquele Período de Verificação o pagamento, pela Emissora aos Debenturistas, em valor, individual ou agregado, igual ou superior a R$ 500.000,00 (quinhentos mil reais) a título de Amortização Extraordinária Obrigatória ("Valor Mínimo").

4.9.2.3. Na medida em que se verifique a ocorrência de evento(s) de Amortização Extraordinária Obrigatória em valor igual ou superior ao Valor Mínimo nos respectivos Períodos de Verificação, o Valor Nominal Unitário Atualizado das Debêntures continuará sendo atualizado monetariamente pela TR até a Data de Vencimento.

4.9.2.4. Caso, ao final de um Período de Verificação, em determinada data de apuração, pelo Agente Fiduciário, dos valores pagos pela Emissora aos Debenturistas a título de Amortização Extraordinária Obrigatória, se verifique que não foi atingido o Valor Mínimo, o Valor Nominal Atualizado das Debêntures voltará a ser atualizado monetariamente pelo IPCA, nos termos da Cláusula 4.9.1 acima, a partir do segundo Dia Útil subsequente à próxima Data de Aniversário Anual das Debêntures ("Data Modificadora IPCA" e "Evento de Reversão IPCA", respectivamente).

4.9.2.5. Caso ocorra um Evento de Reversão IPCA, o Agente Fiduciário continuará realizando as verificações do Valor Mínimo durante os Períodos de Verificação, sendo certo que, caso a Emissora volte a realizar pagamentos para os Debenturistas, a título de Amortização Extraordinária Obrigatória, em valor igual ou superior ao Valor Mínimo em determinado Período de Verificação, novamente o Valor Nominal Atualizado das Debêntures passará a ser atualizado monetariamente pelo IPCA, a partir do segundo Dia Útil subsequente à próxima Data de Aniversário Mensal TR (conforme definido abaixo) ("Evento de Reversão TR")

4.9.2.6. Os procedimentos de verificação do Valor Mínimo pelo Agente Fiduciário e de reversão da taxa de atualização monetária das Debêntures previstos acima serão realizados até a Data de Vencimento, sendo certo que as Debêntures não poderão ser corrigidas

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

fls. 32752

monetariamente (i) pelo IPCA, por período inferior a 12 (doze) meses, e (ii) pela TR, por período inferior a 1 (um) mês, salvo se permitido pelas normas legais e contábeis aplicáveis.

4.9.2.7. Para fins desta Escritura, considera-se (i) "Data de Aniversário Anual" todo dia [--] de [--] de cada ano, e caso referida data não seja Dia Útil, o primeiro Dia Útil subsequente; e (ii) "Data de Aniversário Mensal TR" o último dia de cada mês contado da Data Modificadora, e caso referida data não seja Dia Útil, o primeiro Dia Útil subsequente

**4.10. Juros Remuneratórios:** as Debêntures não farão jus ao recebimento de juros remuneratórios.

**4.11. Amortização do Valor Nominal Unitário Atualizado**: Ressalvadas as hipóteses de vencimento antecipado ou da realização de eventual Resgate Antecipado Obrigatório (conforme definido abaixo), Amortização Extraordinária Obrigatória e Aquisição Facultativa (conforme definidos abaixo), Valor Nominal Unitário Atualizado das Debêntures será amortizado em uma única parcela, na Data de Vencimento das Debêntures.

**4.12. Local de Pagamento:** Os pagamentos a que fizerem jus as Debêntures serão efetuados pela Emissora no respectivo vencimento, utilizando-se, conforme o caso: (a) os procedimentos adotados pela B3, para as Debêntures registradas em nome dos respectivos Debenturistas na B3; e/ou (b) por meio do Banco Liquidante, para caso dos Debenturistas não tenham suas Debêntures registradas na B3.

**4.13. Prorrogação dos Prazos:** Considerar-se-ão prorrogados os prazos referentes ao pagamento de qualquer obrigação prevista nesta Escritura até o 1º (primeiro) Dia Útil subsequente, se a data do vencimento coincidir com dia em que não houver expediente bancário na cidade de [--], Estado de [--], ressalvados os casos cujos pagamentos devam ser realizados por meio da B3, hipótese em que somente haverá prorrogação quando a data de pagamento coincidir com feriado declarado nacional, sábado ou domingo, sem quaisquer acréscimos devidos aos pagamentos.

**4.14. Encargos Moratórios:** Sem prejuízo dos demais valores devidos aos Debenturistas nos termos desta Escritura, ocorrendo impontualidade no pagamento pela Emissora e pelas Fiadoras de qualquer quantia devida aos Debenturistas, os valores em atraso vencidos e não pagos pela Emissora e/ou pelas Fiadoras, serão, independentemente de aviso, notificação ou interpelação judicial ou extrajudicial, acrescidos de: (i) multa moratória, não compensatória, de 2% (dois por cento); e (ii) juros de mora de 1% (um por cento) ao mês calculados *pro rata temporis* desde a data do inadimplemento até a data do efetivo pagamento, ambos incidentes sobre o valor devido e não pago("Encargos Moratórios").

**4.15. Decadência dos Direitos aos Acréscimos:** Sem prejuízo do disposto na Cláusula 4.14 acima, o não comparecimento do Debenturista para receber o valor correspondente a quaisquer das obrigações pecuniárias da Emissora, nas datas previstas

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

nesta Escritura, ou em comunicado publicado pela Emissora no jornal indicado na Cláusula 4.17 abaixo, não lhe dará direito ao recebimento dos Encargos Moratórios no período relativo ao atraso no recebimento, sendo-lhe, todavia, assegurados os direitos adquiridos até a data do respectivo vencimento ou pagamento.

**4.16. Repactuação Programada:** Salvo pelo disposto na Cláusula 4.9 acima, as Debêntures não serão objeto de repactuação programada.

**4.17. Publicidade:** Todos os atos e decisões a serem tomados decorrentes desta Emissão que, de qualquer forma, vierem a envolver interesses dos Debenturistas, deverão ser obrigatoriamente comunicados na forma de avisos ("Aviso aos Debenturistas") na página na Internet da Emissora, bem como comunicados, na forma de aviso, no Diário Oficial e no jornal "[--]", conforme estabelecido no artigo 289 da Lei das Sociedades por Ações, observados os prazos legais, devendo a Emissora comunicar o Agente Fiduciário a respeito de qualquer publicação na data da sua realização. A Emissora poderá alterar o jornal acima por outro jornal de grande circulação que seja adotado para suas publicações societárias, mediante comunicação por escrito ao Agente Fiduciário e publicação, na forma de aviso, no jornal a ser substituído.

**4.18. Imunidade Tributária:** Caso qualquer Debenturista tenha imunidade ou isenção tributária, este deverá encaminhar ao Banco Liquidante, no prazo mínimo de 10 (dez) Dias Úteis anteriores à data prevista para recebimento de valores relativos às Debêntures, documentação comprobatória da referida imunidade ou isenção tributária, sob pena de ter descontado de seus pagamentos os valores devidos nos termos da legislação tributária em vigor.

4.18.1. O Debenturista que tenha apresentado documentação comprobatória de sua condição de imunidade ou isenção tributária, nos termos da Cláusula 4.18 acima, e que tiver essa condição alterada por disposição normativa, ou por deixar de atender as condições e requisitos porventura prescritos no dispositivo legal aplicável, ou ainda, tiver essa condição questionada por autoridade judicial, fiscal ou regulamentar competente, deverá comunicar esse fato, de forma detalhada e por escrito, ao Banco Liquidante e ao Escriturador, bem como prestar qualquer informação adicional em relação ao tema que lhe seja solicitada pelo Banco Liquidante e/ou pelo Escriturador e/ou pela Emissora.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**CLÁUSULA V**
**RESGATE ANTECIPADO FACULTATIVO, AMORTIZAÇÃO EXTRAORDINÁRIA FACULTATIVA, RESGATE ANTECIPADO OBRIGATÓRIO, AMORTIZAÇÃO EXTRAORDINÁRIA OBRIGATÓRIA E AQUISIÇÃO FACULTATIVA**

**5.1. Resgate Antecipado Facultativo e Amortização Extraordinária Facultativa:** As Debêntures não serão objeto de resgate antecipado facultativo, total ou parcial, e/ou de amortização extraordinária facultativa.

**5.2. Resgate Antecipado Obrigatório:** A Emissora obriga-se a realizar o resgate antecipado obrigatório total das Debêntures, em até 30 (trinta) dias contados da data em que for informada pelo Agente Fiduciário a esse respeito, nas seguintes hipóteses ("Resgate Antecipado Obrigatório"):

(I) após de corridos 25 (vinte e cinco) anos contados da Data de Emissão, ou seja, a partir de [*data*] (inclusive), e caso a Emissora não tenha apresentado no prazo de 6 (seis) meses contados do 24º (vigésimo quarto) ano contado da Data de Emissão, ou seja, até [*data*] (inclusive), laudo elaborado por empresa de auditoria especializada e de renome, integrante de uma das quatro maiores empresas de auditoria do mundo (*big four*) ou categoria semelhante à época, demonstrando que as Recuperandas possuem capacidade de geração de caixa e/ou ativos passíveis de monetização de ao menos R$ 50.000.000,00 (cinquenta milhões de reais) até a Data de Vencimento das Debêntures; ou

(II) após decorridos 3 (três) anos contados da Data de Emissão, ou seja, a partir de [*data*] (inclusive) ("Data de Início"), caso seja verificado Caixa Disponível (conforme definido abaixo) em uma determinada Data de Amortização (conforme definido abaixo), em montante suficiente para resgatar a totalidade das Debêntures.

5.2.1. Por ocasião do Resgate Antecipado Obrigatório, o Debenturista fará jus ao recebimento do Valor Nominal Unitário Atualizado, acrescido de eventuais Encargos Moratórios devidos pela Emissora, não sendo devido o pagamento de nenhum prêmio adicional.

5.2.2. O Resgate Antecipado Obrigatório será realizado (a) mediante envio de comunicação individual enviada aos Debenturistas, com cópia para o Agente Fiduciário, ou publicação de Aviso aos Debenturistas, nos termos da Cláusula 4.17 acima, com 10 (dez) dias de antecedência da data em que se pretende realizar o efetivo resgate antecipado, sendo que na referida comunicação deverá constar: (i) a data de realização do Resgate Antecipado Obrigatório; (ii) menção ao valor aproximado do Resgate Antecipado Obrigatório; e (iii) outras informações necessárias à operacionalização do Resgate Antecipado Obrigatório.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

5.2.3. Com relação às Debêntures que estejam registradas em nome dos respectivos Debenturistas na B3, o Resgate Antecipado Obrigatório seguirá os procedimentos de liquidação de eventos adotados pela B3. Caso as Debêntures não estejam registradas em nome dos respectivos Debenturistas na B3, o Resgate Antecipado Obrigatório será realizado por meio do Escriturador.

5.2.4. A Emissora deverá informar a B3, no caso das Debêntures registadas em nome dos respectivos Debenturistas na B3, sobre a data do Resgate Antecipado Obrigatório com ao menos 3 (três) Dias Úteis de antecedência.

5.2.5. As Debêntures objeto do Resgate Antecipado Obrigatório serão obrigatoriamente canceladas.

5.2.6. A data para realização do resgate das Debêntures que tenham sido objeto do Resgate Antecipado Obrigatório deverá, obrigatoriamente, ser um Dia Útil.

**5.3. Amortização Extraordinária Obrigatória:** A Emissora deverá, em cada Data de Amortização, conforme definido na Cláusula 5.3.1.3 abaixo, a partir da Data de Início, com recursos provenientes do Caixa para Distribuição, observados os termos e condições estabelecidos a seguir, independentemente de sua vontade, realizar a amortização extraordinária obrigatória das Debêntures, de forma equânime, simultânea e proporcional entre todos os Debenturistas, limitada a 98% (noventa e oito por cento) do Valor Nominal Unitário Atualizado das Debêntures ou saldo do Valor Nominal Unitário Atualizado das Debêntures, conforme aplicável ("Amortização Extraordinária Obrigatória"), observados os termos e condições estabelecidos abaixo.

5.3.1. Para fins de apuração da obrigação de Amortização Extraordinária Obrigatória, "Caixa para Distribuição" significa a soma de todos os montantes, recursos financeiros de liquidez imediata e aplicações financeiras desoneradas detidos em caixa por cada uma das Recuperandas, incluindo por força de alienação de ativos, recebimento de dividendos, juros sobre capital próprio, redução de capital ou qualquer outra forma de remuneração de acionistas em razão de participações societárias detidas pelas Recuperandas em outras sociedades, nos termos do Plano de Recuperação Judicial, ou por quaisquer outras fontes de recursos, que excederem o montante de R$ 300.000.000,00 (trezentos milhões de reais), valor este que será corrigido pelo IPCA em cada ano fiscal, sendo descontados deste montante, nas apurações do Caixa para Distribuição que ocorrerem no último bimestre de cada ano fiscal (ou seja, nas apurações realizadas pelo Agente de Monitoramento nos meses de agosto, outubro e dezembro, nos termos da Cláusula 5.3.2 abaixo), os valores decorrentes de movimentações financeiras pelas Recuperandas, incluindo, mas não limitado ao aporte de recursos e a celebração de mútuos em benefício de quaisquer Recuperandas ODB que não aderiram à Consolidação Substancial das Recuperandas, os quais deverão ser utilizados exclusivamente para (a) o cumprimento das obrigações contratadas nos respectivos planos de recuperação judicial das Recuperandas ODB que não aderiram à

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Consolidação Substancial das Recuperandas e ao pagamento de despesas gerais e administrativas, tais como obrigações e despesas de manutenção das atividades, despesas com fornecedores e assessores e despesas fiscais, desde que tais transações não excedam o montante global de R$ 80.000.000,00 (oitenta milhões de reais) e respeitem a alocação descrita no Anexo III a esta Escritura, conforme verificado pelo Agente de Monitoramento; ou (b) os pagamentos previstos na Cláusula 5.3.1.2 abaixo, apenas nos seus respectivos prazos;

5.3.1.1. Não estão incluídos no conceito de Caixa para Distribuição:

(i) os Recursos para Pagamento de Despesas Ordinárias (conforme definido abaixo) (i.a) recebidos até 31 de dezembro de 2022 que não tenham sido utilizados e estejam disponíveis na respectiva Data de Amortização, ou (i.b) cuja liberação esteja contratada, porém ainda não tenham sido disponibilizado às Recuperandas até respectiva Data de Amortização;

(ii) se aplicável, até a Data de Início ou prazo superior, conforme aprovado pelos Debenturistas em assembleia geral, as despesas de venda, fiscais e tributárias decorrentes de alienações de ativos das Recuperandas materializadas até a data de apuração, bem como as não materializadas que possam ser estimadas em razão das obrigações contratadas até a data de apuração, que excederem os recursos líquidos recebidos ou a serem recebidos pelas Recuperandas provenientes da referida alienação de ativos; e

(iii) conforme aplicável e sempre de acordo com os termos previstos no Plano de Recuperação Judicial, (i) os valores devidos no âmbito do Plano de Recuperação Judicial aos titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento (conforme definido no Plano de Recuperação Judicial) que não subscreveram as Debêntures objeto da Emissão, (ii) os pagamentos devidos aos titulares de Créditos Quirografários Financeiros Opção B (conforme definido no Plano de Recuperação Judicial), nos termos previstos na Cláusula 3.3.1.2 do Plano de Recuperação Judicial, e (iii) os valores devidos às Recuperandas, conforme regra de utilização do Caixa para Distribuição prevista na Cláusula 1.1.119, item (ii), do Plano de Recuperação Judicial.

5.3.1.2. Para que não restem dúvidas, todos recursos referentes aos eventos descritos no item (ii) da Cláusula 5.3.1.1 acima, incluindo os recursos líquidos provenientes da referida alienação de ativos a serem recebidos pelas Recuperandas, ficarão reservados até a materialização das obrigações ali descritas ou até o encerramento do prazo de 18 (dezoito) meses contados da Data de Início, o que ocorrer primeiro, não integrando o Caixa para Distribuição para fins da Cláusula 5.3.1. Caso tais obrigações não se materializem, a integralidade dos montantes retidos pelas Recuperandas deverá ser utilizada para a Amortização Extraordinária Obrigatória das Debêntures e a amortização extraordinária

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

obrigatória dos instrumentos celebrados pelos titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, nos termos previstos nesta Escritura e no Plano de Recuperação Judicial.

5.3.1.3 Para fins desta Escritura, "Datas de Amortização": serão as datas em que ocorrerá a Amortização Extraordinária Obrigatória das Debêntures que sempre deverão ocorrer até o último Dia Útil dos meses de janeiro, marco, maio, julho, setembro e novembro.

5.3.1.4. Para fins desta Escritura, "Recursos para Pagamento de Despesas Ordinárias": significa todo e qualquer valor recebido pelas Recuperandas decorrentes de eventuais garantias fiduciárias e disponibilizados às Recuperandas e às Recuperandas ODB que não aderiram à Consolidação Substancial das Recuperandas pelos respectivos credores, conforme previsto no Plano de Recuperação Judicial, limitado ao montante global de R$ 1.000.000.000,00 (um bilhão de reais), que deverá ser aplicado prioritariamente na manutenção ordinária das atividades das Recuperandas, no pagamento de despesas gerais e administrativas e no cumprimento das obrigações de pagamento dos créditos trabalhistas, Credores Quirografários Não Financeiros – Dinheiro e créditos ME/EPP, conforme previsto no Plano de Recuperação Judicial.

5.3.2. A apuração do Caixa para Distribuição será feita pelo Agente de Monitoramento, a partir da Data de Início, sempre no dia [--] dos meses de fevereiro, abril, junho, agosto, outubro e dezembro (cada uma dessas datas uma "Data de Verificação"), com base em relatório mensal gerencial de fechamento contábil contemplando o saldo do caixa consolidado das Recuperandas, a ser enviado pela Emissora ao Agente de Monitoramento ao final de cada mês ("Relatório Gerencial", respectivamente) ou em prazo inferior, sempre que solicitado pelo Agente de Monitoramento, mediante envio de comunicação às Recuperandas, que deverá ser respondida com as informações solicitadas no prazo de 10 (dez) Dias Úteis contados do recebimento pelas Recuperandas da referida comunicação. O Agente de Monitoramento deverá comunicar ao Agente Fiduciário, no prazo de até [10 (dez) Dias Úteis] contados da Data de Verificação, o Caixa para Distribuição que será destinado à Amortização Extraordinária Obrigatória das Debêntures, se houver. Por sua vez, o Agente Fiduciário deverá, no prazo de até [5 (cinco)] Dias Úteis contados da data em que for comunicado pelo Agente de Monitoramento, verificar as informações fornecidas a ele e aplicar o disposto na Cláusula 5.3.3 abaixo.

5.3.3. Caso seja apurada a existência de Caixa Disponível para Distribuição, a Emissora deverá realizar a Amortização Extraordinária Obrigatória das Debêntures na próxima Data de Amortização imediatamente posterior à Data de Verificação em que foi apurado o Caixa para Distribuição.

5.3.4. Caso seja apurada a existência de Caixa Disponível para Distribuição, a Emissora deverá enviar, no Dia Útil subsequente à respectiva Data de Verificação, notificação escrita aos Debenturistas, com cópia para o Agente Fiduciário, a B3, caso aplicável, e o Banco

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Liquidante, comunicando a realização da Amortização Extraordinária Obrigatória ("Comunicação de Amortização Extraordinária Obrigatória").

5.3.5. Na Comunicação de Amortização Extraordinária Obrigatória deverá constar: (i) a Data de Amortização e o procedimento de Amortização Extraordinária Obrigatória, observada a legislação pertinente, bem como os termos, condições e prazos estabelecidos nesta Escritura; (ii) o percentual do Valor Nominal Atualizado a ser amortizado por Debênture; e (iii) as demais informações consideradas relevantes pela Emissora para conhecimento dos Debenturistas a respeito da Amortização Extraordinária Obrigatória.

5.3.6. Por ocasião da Amortização Extraordinária Obrigatória, os Debenturistas farão jus ao pagamento do percentual do Valor Nominal Unitário Atualizado a ser amortizado, acrescido de eventuais Encargos Moratórios devidos pela Emissora.

5.3.7. A Emissora deverá informar a B3, no caso das Debêntures registadas em nome dos respectivas Debenturistas na B3, sobre a data da Amortização Extraordinária Obrigatória com ao menos 3 (três) Dias Úteis de antecedência.

5.3.8. A data para realização da Amortização Extraordinária Obrigatória das Debêntures deverá, obrigatoriamente, ser um Dia Útil.

**5.4. Oferta de Resgate Antecipado:** A Emissora não poderá realizar oferta de resgate anteipado.

**5.5. Aquisição Facultativa:** A Emissora poderá, a qualquer tempo, adquirir Debêntures desde que observe o disposto no artigo 55, parágrafo 3º, da Lei das Sociedades por Ações, devendo tal fato, se assim exigido pelas disposições legais e regulamentares aplicáveis, constar do relatório da administração e das demonstrações financeiras da Emissora. As Debêntures adquiridas pela Emissora poderão, a critério da Emissora, ser canceladas, permanecer em tesouraria ou ser novamente colocadas no mercado. As Debêntures adquiridas pela Emissora para permanência em tesouraria nos termos desta Cláusula 5.5, se e quando recolocadas no mercado, farão jus à mesma Remuneração aplicável às demais Debêntures.

**5.6. Agente de Monitoramento:** Observado o disposto no Plano de Recuperação Judicial, o desempenho financeiro consolidado das Recuperandas será acompanhado pela [--], na qualidade de responsável pelo acompanhamento das atividades das Recuperandas ("Agente de Monitoramento"), de acordo com os termos e condições previstos no instrumento de contratação do Agente de Monitoramento a ser celebrado entre as Recuperandas e o Agente de Monitoramento, observado o disposto na Cláusula 5.3.2 acima.

5.6.1. São obrigações do Agente de Monitoramento, sem prejuízo de outras que vierem a ser estabelecidas contratualmente:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(i) divulgar as informações necessárias para compor o montante de Caixa para Distribuição que será destinado à Amortização Extraordinária Obrigatória das Debêntures;

(ii) verificar e ratificar o Caixa Disponível (conforme definido no Plano de Recuperação Judicial) o Caixa para Distribuição e as Regras de Utilização do Caixa para Distribuição, previstas no Plano de Recuperação Judicial, com base no Relatório Gerencial e demais documentos que sejam considerados necessários pelo Agente de Monitoramento que deverão ser fornecidos pelas Recuperandas como, por exemplo, extratos bancários;

(iii) monitorar os pagamentos e amortizações previstas na presente Escritura;

(iv) monitorar a materialização de créditos elegíveis para subscrição de Debêntures posteriores à Data de Emissão das Debêntures; e

(v) divulgar relatórios mensais consolidando as informações referentes às atribuições previstas nos itens anteriores.

**CLÁUSULA VI**
**VENCIMENTO ANTECIPADO**

6.1. Observado o disposto nas Cláusulas 6.2 e 6.3 abaixo, o Agente Fiduciário poderá considerar antecipadamente vencidas todas as obrigações constantes desta Escritura e exigir o imediato pagamento, pela Emissora e pelas Fiadoras, conforme o caso, do Valor Nominal Unitário Atualizado, até a data do efetivo pagamento, sem prejuízo do pagamento dos Encargos Moratórios, quando for o caso, e de quaisquer outros valores eventualmente devidos pela Emissora nos termos desta Escritura, independentemente de aviso, interpelação ou notificação, judicial ou extrajudicial, na ciência da ocorrência das seguintes hipóteses (cada uma, um "Evento de Inadimplemento"):

(i) inadimplemento, pela Emissora e/ou pelas Fiadoras, de qualquer obrigação pecuniária relativa às Debêntures e/ou prevista nesta Escritura, não sanado no prazo de até 3 (três) Dias Úteis contados da respectiva data de pagamento prevista nesta Escritura;

(ii) inadimplemento, pela Emissora, de qualquer obrigação não pecuniária prevista nesta Escritura e/ou no Plano de Recuperação Judicial, sendo certo que (a) tal inadimplemento estará sujeito ao prazo de cura aplicável conforme previsto nesta Escritura, ou ainda na legislação ou na regulamentação em vigor; (b) caso não exista prazo de cura específico nesta Escritura, tal inadimplemento estará sujeito a prazo de cura de até 30 (trinta) Dias Úteis contados da data em que for notificada sobre referido inadimplemento;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(iii) declaração de invalidade, nulidade ou inexequibilidade desta Escritura por decisão judicial proferida em segunda instância, salvo na hipótese de ser obtido efeito suspensivo para referida decisão, observado que todos eventuais recursos que teriam sido destinados aos Debenturistas durante a ocorrência do presente Evento de Inadimplemento mas que não tenham sido em virtude do presente Evento de Inadimplemento deverão permanecer retidos até a efetiva cura do presente Evento de Inadimplemento para posterior distribuição aos Debenturistas;

(iv) cessão, promessa de cessão ou qualquer forma de transferência ou promessa de transferência a terceiros, no todo ou em parte, pela Emissora, de qualquer de suas obrigações nos termos desta Escritura, sem a prévia anuência dos Debenturistas;

(v) (a) liquidação, dissolução ou extinção da Emissora; (b) decretação de falência da Emissora por sentença judicial transitada em julgado; ou (c) pedido de autofalência formulado pela Emissora, independentemente do deferimento do pedido;

(vi) transformação da forma societária da Emissora de sociedade por ações para sociedade limitada, nos termos dos artigos 220 a 222 da Lei das Sociedades por Ações;

(vii) alteração do objeto social da Emissora, conforme disposto em seu estatuto social vigente na Data de Emissão, exceto se (a) previamente autorizado por Debenturistas; ou (b) não resultar em alteração substancial das atividadesda Emissora;

(viii) incorporação, fusão ou cisão da Emissora sem a prévia anuência dos Debenturistas, exceto pelas reorganizações societárias envolvendo a Emissora necessárias para o cumprimento das determinações constantes do Plano de Recuperação Judicial;

(ix) comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer das declarações prestadas pela Emissora nesta Escritura é falsa, desde que tal falsidade acarrete um Efeito Adverso Relevante (conforme abaixo definido);

(x) sem prejuízo do disposto no item (ix) imediatamente anterior, comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer declaração feita pela Emissora nesta Escritura relativas a questões de prática de corrupção é falsa;

(xi) proferimento de sentença condenatória judicial sem efeito suspensivo, em razão da prática, pela Emissora, de atos que importem trabalho infantil, trabalho análogo ao escravo e/ou proveito criminoso da prostituição;

(xii) inadimplemento de qualquer obrigação pecuniária constante de quaisquer Instrumentos de Pagamento (conforme definido no Plano de Recuperação Judicial), observados os respectivos prazos de cura previstos em referidos instrumentos; ou

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(xiii) decretação de vencimento antecipado de quaisquer Instrumentos de Pagamento.

6.2. A Emissora poderá, a qualquer momento durante o prazo das Debêntures, convocar Assembleia Geral de Debenturistas para discussão e deliberação de renúncia prévia (*waiver*) para a ocorrência de qualquer Evento de Inadimplemento, sendo certo que referida renúncia prévia (*waiver*) só será concedido caso haja aprovação de Debenturistas titulares de, no mínimo, 50% (cinquenta por cento) mais 1 (uma) das Debêntures em Circulação, em primeira convocação, ou maioria simples dos presentes em Assembleia Geral de Debenturistas, em segunda convocação.

6.3. Na ocorrência dos Eventos de Inadimplemento previstos na Cláusula 6.1 acima, o Agente Fiduciário deverá convocar, no prazo máximo de 2 (dois) Dias Úteis contados da data em que tiver ciência de sua ocorrência, Assembleia Geral de Debenturistas, a se realizar de acordo com os prazos estabelecidos na Cláusula 9 abaixo.

6.3.1. A Emissora se obriga a notificar o Agente Fiduciário em até 2 (dois) Dias Úteis da data em que tomar ciência da ocorrência de qualquer Evento de Inadimplemento descrito na cláusula 6.1 acima.

6.4. Se, na Assembleia Geral de Debenturistas mencionada na Cláusula 6.3acima, Debenturistas representando, no mínimo, 50% (cinquenta por cento) mais 1 (uma) das Debêntures em Circulação, em primeira convocação, ou maioria simples dos presentes em Assembleia Geral de Debenturistas, em segunda convocação, decidirem por não considerar o vencimento antecipado das obrigações decorrentes das Debêntures, o Agente Fiduciário não deverá declarar o vencimento antecipado das obrigações decorrentes das Debêntures. Em caso de não instalação, em segunda convocação, da referida Assembleia Geral de Debenturistas, o Agente Fiduciário deverá, imediatamente, declarar o vencimento antecipado das obrigações decorrentes das Debêntures.

6.5. Na ocorrência do vencimento antecipado das obrigações decorrentes das Debêntures, a Emissora se obriga a pagar o Valor Nominal Unitário Atualizado, sem prejuízo do pagamento dos Encargos Moratórios, quando for o caso, e de quaisquer outros valores eventualmente devidos pela Emissora nos termos desta Escritura, no prazo de até 3 (três) Dias Úteis contados da data do recebimento da comunicação enviada pelo Agente Fiduciário acerca do vencimento antecipado, sob pena de pagamento dos Encargos Moratórios.

6.6. Uma vez vencidas antecipadamente as Debêntures, o Agente Fiduciário deverá enviar notificação à Emissora, o Banco Liquidante e à B3, no caso das Debêntures que estiverem registradas em nome dos Debenturistas na B3, imediatamente após o vencimento antecipado das Debêntures.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

## CLÁUSULA VII
## OBRIGAÇÕES ADICIONAIS DA EMISSORA

7.1. Sem prejuízo das demais obrigações previstas nesta Escritura e na legislação e regulamentação aplicáveis, enquanto o saldo devedor das Debêntures não for integralmente pago, a Emissora obriga-se, ainda, a:

(i) fornecer ao Agente Fiduciário:

(i.1) bem como disponibilizar em sua respectiva página na Internet (www.[--]), na data em que ocorrer o primeiro entre o decurso de 90 (noventa) dias contados da data de término de cada exercício social ou a data da efetiva divulgação, cópia das demonstrações financeiras consolidadas da Emissora auditadas por auditor independente registrado na CVM, relativas ao respectivo exercício social, preparadas de acordo com os princípios contábeis determinados pela legislação e regulamentação em vigor ("Demonstrações Financeiras Consolidadas Auditadas");

(i.2) declaração anual firmada por diretores da Emissora, na forma do seu estatuto social, atestando: (1) que permanecem válidas as disposições contidas na Escritura, (2) acerca da não ocorrência de qualquer Evento de Inadimplemento e inexistência de descumprimento de obrigações da Emissora perante os Debenturistas; (3) que não foram praticados atos em desacordo com seu estatuto social e (4) acerca do cumprimento de todas as obrigações do Plano de Recuperação Judicial;

(i.3) os Avisos aos Debenturistas no prazo de até 5 (cinco) Dias Úteis contados da data em que forem publicados;

(i.4) em até 5 (cinco) Dias Úteis após sua ciência, (1) informações a respeito da ocorrência de qualquer Evento de Inadimplemento; ou (2) envio de cópia de qualquer correspondência ou notificação, judicial ou extrajudicial, recebida pela Emissora, relacionada a um Evento de Inadimplemento; ou (3) informações a respeito da ocorrência de qualquer evento ou situação que possa causar (3.1) qualquer efeito adverso relevante na situação (financeira ou de outra natureza), nos negócios, nos bens, nos resultados operacionais e/ou nas perspectivas da Emissora (inclusive decorrentes de impactos negativos de caráter reputacional ou de imagem); e/ou (3.2) qualquer efeito adverso na capacidade da Emissora de cumprir qualquer de suas obrigações nos termos desta Escritura e/ou na situação financeiras, nos negócios, nos bens e nos resultados operacionais da Emissora ("Efeito Adverso Relevante");

(i.5) no prazo de até 5 (cinco) Dias Úteis contados da data de recebimento da respectiva solicitação, resposta a eventuais dúvidas do Agente Fiduciário sobre qualquer informação que lhe venha a ser razoavelmente solicitada;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(i.6) via original desta Escritura e de eventuais aditamentos, devidamente arquivados na Junta Comercial e registrados nos RTDs, em até 5 (cinco) dias contados da data do respectivo registro, nos termos da Cláusula 2.4.1 acima; e

(i.7) via original arquivada na Junta Comercial dos atos societários e reuniões dos Debenturistas com relação à Emissão das Debêntures, em até 5 (cinco) dias contados da data do respectivo registro;

(ii) manter válidas e regulares as licenças, concessões e/ou aprovações necessárias ao seu regular funcionamento, conforme aplicável, na forma e prazo exigidos pela legislação e regulamentação aplicáveis, exceto aquelas cuja perda, revogação ou cancelamento não resulte em um Efeito Adverso Relevante;

(iii) cumprir, em todos os aspectos materiais, as leis, regras, regulamentos, normas administrativas e determinações dos órgãos governamentais, autarquias ou tribunais, aplicáveis à condução de seus negócios, em qualquer jurisdição na qual realize negócios ou possua ativo, exceto por aquelas leis, regras, regulamentos, normas administrativas e determinações dos órgãos governamentais, autarquias ou tribunas que estejam sendo questionados de boa-fé pela Emissora ou cujo descumprimento não cause um Efeito Adverso Relevante;

(iv) contratar e manter contratados, às suas expensas, os prestadores de serviços inerentes às obrigações previstas nesta Escritura, incluindo o Agente Fiduciário, o Banco Mandatário, o Escriturador e o sistema de negociação das Debêntures no mercado secundário;

(v) convocar, nos termos da Cláusula 9.1 abaixo, Assembleias Gerais de Debenturistas para deliberar sobre qualquer das matérias que direta ou indiretamente se relacionem com a presente Emissão, caso o Agente Fiduciário deva fazer, nos termos desta Escritura, mas não o faça;

(vi) não praticar quaisquer atos em desacordo com o seu estatuto social e com a presente Escritura, em especial os que possam, direta ou indiretamente, comprometer o pontual e integral cumprimento das obrigações assumidas pela Emissora perante a comunhão de Debenturistas;

(vii) manter as Debêntures registradas para negociação no mercado secundário durante o prazo de vigência das Debêntures, arcando com os custos do referido registro;

(viii) cumprir as obrigações assumidas no âmbito do Plano de Recuperação Judicial;

(ix) cumprir todas as obrigações previstas na presente Escritura, incluindo, sem limitação, a obrigação de realizar o Resgate Obrigatório das Debêntures, nos termos da

Cláusula 5.2 acima; e

(x) manter sempre válidas, eficazes, em perfeita ordem e em pleno vigor, todas as autorizações necessárias à assinatura desta Escritura e ao cumprimento de todas as obrigações aqui previstas.

(xi) contratar e manter contratados, durante a vigência desta Escritura, o Agente de Monitoramento, que exercerá suas funções conforme escopo definido no instrumento que dispor sobre sua contratação, observado o disposto no Plano de Recuperação Judicial e na presente Escritura; e

(xii) em caso de renúncia e/ou destituição do Agente de Monitoramento, por qualquer motivo, contratar novo prestador de serviço para exercer as funções atribuídas ao Agente de Monitoramento, no prazo máximo de 30 (trinta) dias contados da data de renúncia e/ou destituição do Agente de Monitoramento.

**CLÁUSULA VIII**
**AGENTE FIDUCIÁRIO**

**8.1. Nomeação**

8.1.1. A Emissora constitui e nomeia a **[*Agente Fiduciário*]**, qualificada no preâmbulo desta Escritura, como Agente Fiduciário, representando os Debenturistas, a qual, neste ato e pela melhor forma de direito, aceita a nomeação para, nos termos da lei e da presente Escritura, representar perante a Emissora a comunhão dos Debenturistas.

**8.2. Declaração**

8.2.1. O Agente Fiduciário declara, neste ato, sob as penas da lei:

(i) não ter qualquer impedimento legal, conforme artigo 66, parágrafo 3º da Lei das Sociedades por Ações, para exercer a função que lhe é conferida;

(ii) aceitar a função que lhe é conferida, assumindo integralmente os deveres e atribuições previstos na legislação específica e nesta Escritura;

(iii) conhecer e aceitar integralmente a presente Escritura, todas as suas cláusulas e condições;

(iv) não ter qualquer ligação com a Emissora que o impeça de exercer suas funções;

(v) estar ciente da regulamentação aplicável emanada do Banco Central do Brasil e da CVM, incluindo a Circular do Banco Central do Brasil nº 1.832, de 31 de outubro de 1990;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(vi) estar devidamente autorizado a celebrar esta Escritura e a cumprir com suas obrigações aqui previstas, tendo sido satisfeitos todos os requisitos legais e societários necessários para tanto;

(vii) não se encontrar em nenhuma das situações de conflito de interesse;

(viii) estar devidamente qualificado a exercer as atividades de Agente Fiduciário, nos termos da regulamentação aplicável vigente;

(ix) ser instituição financeira, estando devidamente organizado, constituído e existente de acordo com as leis brasileiras;

(x) que esta Escritura constitui uma obrigação legal, válida, vinculativa e eficaz do Agente Fiduciário, exequível de acordo com os seus termos e condições;

(xi) que a celebração desta Escritura e o cumprimento de suas obrigações aqui previstas não infringem qualquer obrigação anteriormente assumida pelo Agente Fiduciário;

(xii) que [não atua, nesta data, como agente fiduciário em outras emissões de debêntures da Emissora] {OU} [que atua, na data de assinatura da presente Escritura, como agente fiduciário nas seguintes emissões de valores mobiliários da Emissora e de sociedades coligadas, controladas, controladoras ou integrantes do seu grupo econômico: [--];

(xiii) assegura e assegurará tratamento equitativo a todos os Debenturistas, respeitadas as garantias, as obrigações e os direitos específicos atribuídos aos respectivos Debenturistas de cada emissão ou série;

(xiv) que a pessoa que o representa na assinatura desta Escritura tem poderes bastantes para tanto; e

(xv) que verificou a consistência das demais informações contidas nesta Escritura, por meio das informações e documentos fornecidos pela Emissora, sendo certo que o Agente Fiduciário não efetuou qualquer tipo de verificação independente ou adicional.

8.2.2. O Agente Fiduciário exercerá suas funções a partir da data de assinatura desta Escritura ou de eventual aditamento relativo à sua substituição, devendo permanecer no exercício de suas funções até a Data de Vencimento ou, caso ainda restem obrigações da Emissora nos termos desta Escritura inadimplidas após a Data de Vencimento, até que todas as obrigações da Emissora nos termos desta Escritura sejam integralmente cumpridas, ou, ainda, até sua efetiva substituição, conforme Cláusula 8.3 abaixo.

8.2.3. O Agente Fiduciário não emitirá qualquer tipo de opinião ou fará qualquer juízo sobre a orientação acerca de qualquer fato da Emissão que seja de competência de definição

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

pelos Debenturistas, comprometendo-se tão somente a agir em conformidade com as instruções que lhe forem transmitidas pelos Debenturistas. Neste sentido, o Agente Fiduciário não possui qualquer responsabilidade sobre o resultado ou sobre os efeitos jurídicos decorrentes do estrito cumprimento das orientações dos Debenturistas a ele transmitidas conforme definidas nos termos desta Escritura e reproduzidas perante a Emissora, independentemente de eventuais prejuízos que venham a ser causados em decorrência disto aos Debenturistas e/ou à Emissora. A atuação do Agente Fiduciário limita-se ao escopo dos artigos aplicáveis da Lei das Sociedades por Ações, estando este isento, sob qualquer forma ou pretexto, de qualquer responsabilidade adicional que não tenha decorrido da legislação aplicável.

8.2.4. Sem prejuízo do dever de diligência do Agente Fiduciário, o mesmo assumirá que os documentos originais ou cópias autenticadas de documentos encaminhados pela Emissora ou por terceiros a seu pedido não foram objeto de fraude ou adulteração. Não será ainda, sob qualquer hipótese, responsável pela elaboração de documentos societários da Emissora, que permanecerão sob obrigação legal e regulamentar da Emissora elaborá-los, nos termos da legislação aplicável.

8.2.5. Os atos ou manifestações por parte do Agente Fiduciário, que criarem responsabilidade para os Debenturistas e/ou exonerarem terceiros de obrigações para com eles, bem como aqueles relacionados ao devido cumprimento das obrigações assumidas neste instrumento, somente serão válidos quando previamente assim deliberado em Assembleia Geral de Debenturistas (conforme abaixo definido).

**8.3. Substituição**

8.3.1. Nas hipóteses de impedimentos temporários, renúncia, intervenção, liquidação judicial ou extrajudicial, falência, ou qualquer outro caso de vacância do Agente Fiduciário, será realizada, dentro do prazo máximo de 30 (trinta) dias contados do evento que a determinar, Assembleia Geral de Debenturistas (conforme abaixo definido) para a escolha do novo agente fiduciário, a qual poderá ser convocada pelo próprio Agente Fiduciário a ser substituído, pela Emissora ou por Debenturistas que representem 10% (dez por cento), no mínimo, das Debêntures em Circulação. Na hipótese da convocação não ocorrer em até 15 (quinze) dias antes do término do prazo acima citado, caberá à Emissora efetuá-la, observado o prazo de 15 (quinze) dias para a primeira convocação e 8 (oito) dias para a segunda convocação.

8.3.2. Na hipótese de não poder o Agente Fiduciário continuar a exercer as suas funções por circunstâncias supervenientes a esta Escritura, inclusive no caso do item (iv) da Cláusula 8.4.1. abaixo, o Agente Fiduciário deverá comunicar imediatamente o fato aos Debenturistas e à Emissora, mediante convocação de Assembleia Geral de Debenturistas, solicitando sua substituição.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

8.3.3. É facultado aos Debenturistas proceder à substituição do Agente Fiduciário e à indicação de seu substituto, em condições de mercado, escolhido pela Emissora a partir da lista tríplice apresentada pela Assembleia Geral de Debenturistas especialmente convocada para esse fim.

8.3.4. O Agente Fiduciário entrará no exercício de suas funções a partir da data de assinatura desta Escritura ou de eventual aditamento relativo à sua substituição, no caso de agente fiduciário substituto, devendo permanecer no exercício de suas funções até a efetiva substituição ou até o cumprimento de todas as suas obrigações decorrentes desta Escritura e da legislação em vigor.

8.3.5. O Agente Fiduciário, se substituído nos termos desta Cláusula 8.3, sem qualquer custo adicional para a Emissora ou para os Debenturistas, deverá colocar à disposição da instituição que vier a substituí-lo, no prazo de até 10 (dez) Dias Úteis antes de sua efetiva substituição, cópia de todos os registros, relatórios, extratos, bancos de dados e demais informações sobre a Emissão e sobre a Emissora que tenham sido obtidos, gerados, preparados ou desenvolvidos pelo Agente Fiduciário ou por qualquer de seus agentes envolvidos, direta ou indiretamente, com a Emissão ou que quaisquer das pessoas acima referidas tenham tido acesso por força da execução de suas funções, independentemente do meio em que as mesmas estejam armazenadas ou disponíveis, de forma que a instituição substituta cumpra, sem solução de continuidade, os deveres e as obrigações do Agente Fiduciário substituído, nos termos desta Escritura.

8.3.6. Caso ocorra a efetiva substituição do Agente Fiduciário, esse substituto receberá a mesma remuneração recebida pelo Agente Fiduciário em todos os seus termos e condições, sendo que a primeira parcela anual devida ao substituto será calculada *pro rata temporis*, a partir da data de início do exercício de sua função como agente fiduciário. Esta remuneração poderá ser alterada de comum acordo entre a Emissora e o agente fiduciário substituto, desde que previamente aprovada pela Assembleia Geral de Debenturistas (conforme abaixo definido).

**8.4. Obrigações**

8.4.1. Além de outros previstos em lei e nesta Escritura, constituem obrigações do Agente Fiduciário:

(i) exercer suas atividades com boa-fé, transparência e lealdade perante os Debenturistas;

(ii) responsabilizar-se integralmente pelos serviços contratados, nos termos da legislação vigente;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(iii) proteger os direitos e interesses dos Debenturistas, empregando no exercício da função o cuidado e a diligência com que todo homem ativo e probo emprega na administração de seus próprios bens;

(iv) renunciar à função, na hipótese de superveniência de conflitos de interesses ou de qualquer outra modalidade de inaptidão e realizar a imediata convocação da Assembleia Geral de Debenturistas para deliberar sobre sua substituição;

(v) conservar em boa guarda toda a documentação relativa ao exercício de suas funções;

(vi) verificar, no momento de aceitar a função, a veracidade das informações relativas a eventuais garantias e à consistência das demais informações contidas nesta Escritura, diligenciando para que sejam sanadas as omissões, falhas ou defeitos de que tenha conhecimento;

(vii) diligenciar junto à Emissora para que a Escritura e seus aditamentos sejam registrados nos órgãos competentes, adotando, no caso da omissão da Emissora, as medidas eventualmente previstas em lei;

(viii) diligenciar junto ao emissor para que a Escritura e seus aditamentos, sejam registrados nos órgãos competentes, adotando, no caso da omissão da Emissora, as medidas eventualmente previstas em lei;

(ix) acompanhar a prestação das informações periódicas pela Emissora e alertar aos Debenturistas, no relatório anual sobre inconsistências ou omissões de que tenha conhecimento;

(x) opinar sobre a suficiência das informações prestadas nas propostas de modificação das condições das Debêntures;

(xi) solicitar, quando julgar necessário para o fiel cumprimento de suas funções ou se assim solicitado pelos Debenturistas, certidões atualizadas dos distribuidores cíveis, das Varas de Fazenda Pública, Cartórios de Protesto, das Varas do Trabalho, Procuradoria da Fazenda Pública, da localidade onde se situe o bem dado em garantia ou o domicílio ou sede da Emissora;

(xii) convocar, quando necessário, a Assembleia Geral de Debenturistas, nos termos da Cláusula 9.1.2 abaixo;

(xiii) comparecer à Assembleia Geral de Debenturistas a fim de prestar as informações que lhe forem solicitadas;

(xiv) elaborar o relatório anual destinado aos Debenturistas acerca da observância da periodicidade na prestação de informações obrigatórias, alertando os Debenturistas acerca

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

de eventuais inconsistências, omissões ou inverdades. Para tanto, a Emissora enviará o organograma, os atos societários e todos os documentos necessários à realização do relatório que venham a ser solicitados pelo Agente Fiduciário, os quais deverão ser devidamente encaminhados pela Emissora até o prazo máximo de 30 (trinta) dias antes do encerramento do prazo para disponibilização do relatório, bem como as Demonstrações Financeiras Consolidadas Auditadas da Emissora, que deverão ser devidamente encaminhados pela Emissora dentro do prazo máximo de 3 (três) meses contados do encerramento do exercício social. O referido organograma do grupo societário da Emissora deverá conter, inclusive, seus controladores, controladas, controle comum, coligadas e integrantes de bloco de controle, conforme aplicável, no encerramento de cada exercício social;

(xv) manter atualizada a relação dos Debenturistas e seus endereços, sendo que a Emissora e os Debenturistas (estes a partir da respectiva data de subscrição, integralização ou aquisição das Debêntures) autorizam, desde já, o Banco Liquidante, o Escriturador e a B3 a atenderem às solicitações do Agente Fiduciário que sejam necessárias ao cumprimento desta alínea;

(xvi) fiscalizar o cumprimento do previsto nesta Escritura, inclusive das obrigações de fazer e não fazer, através de documentos e informações fornecidas pela Emissora;

(xvii) acompanhar a ocorrência dos Eventos de Inadimplemento, conforme venha a ser informado pela Emissora, e agir conforme estabelecido nesta Escritura;
(xviii) acompanhar o resgate das Debêntures nos casos previstos nesta Escritura;

(xix) acompanhar o preço unitário das Debêntures calculado pela Emissora, disponibilizando-o aos Debenturistas e à própria Emissora;

(xx) comunicar aos Debenturistas qualquer inadimplemento, pela Emissora, de obrigações financeiras assumidas na Escritura, incluindo as cláusulas contratuais destinadas a proteger o interesse dos debenturistas e que estabelecem condições que não devem ser descumpridas pela Emissora, indicando as consequências para os Debenturistas e as providências que pretende tomar a respeito do assunto, no prazo de 7 (sete) Dias Úteis contados do conhecimento pelo Agente Fiduciário acerca do respectivo inadimplemento;

(xxi) adotar as medidas judiciais ou extrajudiciais necessárias à defesa dos interesses dos Debenturistas;

(xxii) manter disponível em sua página na rede mundial de computadores lista atualizada das emissões em que em exerce a função de agente fiduciário;

(xxiii) assegurar tratamento equitativo aos Debenturistas e a todos os titulares de valores mobiliários da emissão da Emissora ou de sociedades coligadas, controladas, controladoras

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

ou integrantes do mesmo grupo da Emissora, respeitadas as garantias, obrigações e direitos específicos atribuídos aos respetivos titulares de valores mobiliários;

(xxiv) manter, pelo prazo mínimo de 5 (cinco) anos, ou por prazo superior, conforme solicitado pelos Debenturistas, todos os documentos e informações relacionadas à Emissão, podendo tais documentos ser guardados em meio físico ou eletrônico, admitindo-se a substituição de documentos pelas respectivas imagens digitalizadas.

8.4.2. No caso de inadimplemento de quaisquer condições da Emissão, o Agente Fiduciário deve usar de toda e qualquer medida prevista em lei ou na Escritura para proteger direitos ou defender os interesses dos Debenturistas.

8.4.3. Sem prejuízo do dever de diligência do Agente Fiduciário, o Agente Fiduciário assumirá que os documentos originais ou cópias autenticadas de documentos encaminhados pela Emissora ou por terceiros a seu pedido não foram objeto de fraude ou adulteração. O Agente Fiduciário não será, sob qualquer hipótese, responsável pela elaboração de documentos societários da Emissora.

8.4.4. O Agente Fiduciário não fará qualquer juízo sobre a orientação acerca de qualquer fato da Emissão que seja de competência de definição pelos Debenturistas, comprometendo-se tão somente a agir em conformidade com as instruções que forem deliberadas pelos Debenturistas. Neste sentido, o Agente Fiduciário não possui qualquer responsabilidade sobre o resultado ou sobre os efeitos jurídicos decorrentes do estrito cumprimento das orientações dos Debenturistas a ele transmitidas conforme definidas pelos Debenturistas e reproduzidas perante a Emissora, independentemente de eventuais prejuízos que venham a ser causados em decorrência disto aos Debenturistas ou à Emissora. A atuação do Agente Fiduciário limita-se ao escopo previsto na presente Escritura e dos artigos aplicáveis da Lei das Sociedades por Ações, estando o Agente Fiduciário isento, sob qualquer forma ou pretexto, de qualquer responsabilidade adicional que não tenha decorrido da legislação aplicável.

## 8.5 **Remuneração do Agente Fiduciário**

8.5.1. Serão devidos, pela Emissora ao Agente Fiduciário ou à instituição que vier a substituí-lo, nos termos da Cláusula 8.3 acima, honorários pelo desempenho dos deveres e atribuições que lhe competem, nos termos da legislação em vigor e desta Escritura, correspondentes a remuneração [*periodicidade*] de R$ [--] ([--]), sendo a primeira parcela devida até o [--]º ([--]) Dia Útil após a assinatura desta Escritura e as demais parcelas no mesmo dia dos [*periodicidade*] subsequentes até a Data de Vencimento, calculadas *pro rata die*, se necessário. A remuneração será devida mesmo após o vencimento final das Debêntures, caso o Agente Fiduciário ainda esteja exercendo atividades inerentes a sua função em relação à Emissão, remuneração essa que será calculada *pro rata die*. A primeira

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

parcela será devida ainda que as Debêntures não tenham sido integralizadas, a título de estruturação e implantação da Emissão.

8.5.2. O pagamento das parcelas descritas na Cláusula 8.5.1 acima deverá ser feito ao Agente Fiduciário acrescido dos valores relativos aos impostos e contribuições incidentes sobre o faturamento: (a) ISS (Impostos sobre Serviços de Qualquer Natureza); (b) PIS (Contribuição ao Programa de Integração Social); (c) COFINS (Contribuição para o Financiamento da Seguridade Social); (d) CSLL (Contribuição Social sobre o Lucro Líquido); (e) IRRF (Imposto de Renda Retido na Fonte); e (f) quaisquer outros impostos que venham a incidir sobre a remuneração do Agente Fiduciário, Escriturador ou Banco Liquidante nas alíquotas vigentes nas datas de cada pagamento de forma que o Agente Fiduciário receba a remuneração como se tais tributos não fossem incidentes;

8.5.3. As parcelas mencionadas na Cláusula 8.5.1 acima serão reajustadas pela variação positiva acumulada do IPCA/IBGE, ou na falta deste, ou ainda na impossibilidade de sua utilização, pelo índice que vier a substituí-lo, a partir da data do primeiro pagamento, até as datas de pagamento seguintes, calculadas *pro rata die*, se necessário.

8.5.4. Em caso de mora no pagamento de qualquer quantia devida em decorrência da remuneração ora proposta, os débitos em atraso ficarão sujeitos à multa contratual de 2% (dois por cento) sobre o valor do débito, bem como a juros moratórios de 1% (um por cento) ao mês, ficando o valor do débito em atraso sujeito a atualização monetária pelo IPCA/IBGE, incidente desde a data da inadimplência até a data do efetivo pagamento, calculado *pro rata die*.

8.5.5. O pagamento da remuneração do Agente Fiduciário será feito mediante depósito na conta corrente a ser indicada por este no momento oportuno, servindo o comprovante do depósito como prova de quitação do pagamento.

**8.6 Despesas**

8.6.1 A remuneração do Agente Fiduciário não inclui despesas consideradas necessárias ao exercício da função de agente fiduciário durante a implantação e vigência do serviço, a serem cobertas pela Emissora, mediante pagamento das respectivas cobranças acompanhadas dos respectivos comprovantes, emitidas diretamente em nome da Emissora ou mediante reembolso, após, sempre que possível, prévia aprovação, quais sejam: custos incorridos em contatos telefônicos relacionados à Emissão, notificações, extração de certidões, despesas cartorárias, fotocópias, digitalizações, envio de documentos, viagens, alimentação e estadias, despesas com especialistas, tais como auditoria e/ou fiscalização, entre outros, ou assessoria legal aos debenturistas.

8.6.2. No caso de inadimplemento da Emissora, todas as despesas necessárias em que o Agente Fiduciário venha a incorrer para resguardar os interesses dos Debenturistas deverão ser previamente aprovadas e adiantadas pelos Debenturistas, e posteriormente, ressarcidas

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

pela Emissora. Tais despesas incluem os gastos com honorários advocatícios, inclusive de terceiros, depósitos, indenizações, custas e taxas judiciárias de ações propostas pelo Agente Fiduciário, desde que relacionadas à solução da inadimplência, enquanto representante dos Debenturistas. As eventuais despesas, depósitos e custas judiciais decorrentes da sucumbência em ações judiciais serão igualmente suportadas pelos Debenturistas, bem como a remuneração e as despesas reembolsáveis do Agente Fiduciário, na hipótese de a Emissora permanecer em inadimplência com relação ao pagamento destas por um período superior a 15 (quinze) dias corridos, mediante envio de relatório das despesas e as devidas comprovações.

8.6.3. Em caso de inadimplemento, pecuniário ou não, pela Emissora, ou de reestruturação das condições da operação, será devida ao Agente Fiduciário uma remuneração adicional equivalente a R$ [--] ([--]) por hora-homem de trabalho dedicado às atividades relacionadas à Emissão. A mesma remuneração será devida quando da participação em assembleias, análise e celebração de aditamentos, conferências telefônicas e reuniões presenciais, remuneração esta a ser paga no prazo de 10 (dez) dias após a conferência e aprovação pela Emissora do respectivo "Relatório de Horas".

8.6.4 Todas as despesas acima de R$ [--] ([--]) em que o Agente Fiduciário venha a incorrer para resguardar os interesses dos Debenturistas deverão ser previamente aprovadas e adiantadas pelos Debenturistas, e posteriormente, conforme previstas em Lei, ressarcidas pela Emissora. Tais despesas incluem os gastos comprovados com honorários advocatícios, inclusive de terceiros, depósitos, custas e taxas judiciárias de ações propostas pelo Agente Fiduciário, enquanto representante dos Debenturistas. As eventuais despesas, depósitos e custas judiciais decorrentes da sucumbência em ações judiciais serão igualmente suportadas pelos Debenturistas, bem como a remuneração e as despesas reembolsáveis do Agente Fiduciário, na hipótese de a Emissora permanecer em inadimplência com relação ao pagamento destas por um período superior a 30 (trinta) dias, podendo o Agente Fiduciário solicitar garantia aos Debenturistas para cobertura do risco de sucumbência.

## CLÁUSULA IX
## ASSEMBLEIA GERAL DE DEBENTURISTAS

9.1. Os Debenturistas poderão, a qualquer tempo, reunir-se em assembleia geral, de acordo com o disposto no artigo 71 da Lei das Sociedades por Ações, a fim de deliberar sobre matéria de interesse da comunhão dos Debenturistas ("Assembleia Geral de Debenturistas").

9.1.1. Aplica-se à Assembleia Geral de Debenturistas, no que couber, o disposto na Lei das Sociedades por Ações sobre assembleia geral de acionistas.

**9.2 Convocação e Instalação**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

9.2.1. A Assembleia Geral de Debenturistas pode ser convocada pelo Agente Fiduciário, pela Emissora, por Debenturistas que representem 10% (dez por cento), no mínimo, das Debêntures em Circulação.

9.2.2. A convocação das Assembleias Gerais de Debenturistas se dará mediante anúncio divulgado nos termos desta Escritura, observado o disposto na Cláusula 4.17 acima, respeitadas outras regras relacionadas à publicação de anúncio de convocação de assembleias gerais constantes da Lei das Sociedades por Ações, da regulamentação aplicável e desta Escritura.

9.2.3. As Assembleias Gerais de Debenturistas deverão ser realizadas em prazo mínimo de 8 (oito) dias contados da data da primeira publicação da convocação. Qualquer Assembleia Geral de Debenturistas em segunda convocação somente poderá ser realizada em, no mínimo, 5 (cinco) dias após a data da publicação do novo edital de convocação.

9.2.4. Independentemente das formalidades previstas na legislação aplicável e nesta Escritura, será considerada regular a Assembleia Geral de Debenturistas a que comparecerem os titulares de todas as Debêntures em Circulação.

9.2.5. As Assembleias Gerais de Debenturistas serão instaladas, em primeira convocação, com a presença de Debenturistas que representem 2/3 (dois terços), no mínimo, das Debêntures em Circulação e, em segunda convocação, com qualquer quórum.

**9.3. Mesa Diretora**

9.3.1. A presidência e a secretaria das Assembleias Gerais de Debenturistas caberá ao representante eleito pelos Debenturistas e poderá ser acompanhada pelo Agente de Monitoramento, se necessário.

**9.4. Quórum de Deliberação**

9.4.1. Nas deliberações das Assembleias Gerais de Debenturistas, a cada Debênture em Circulação caberá um voto, admitida a constituição de mandatário, titulares de Debêntures ou não.

9.4.1.1 Para efeito da constituição de todos os quóruns de instalação e/ou deliberação de qualquer Assembleia Geral de Debenturistas previstos nesta Escritura, consideram-se, "Debêntures em Circulação" todas as Debêntures subscritas, integralizadas e não resgatadas, excluídas aquelas Debêntures: (i) mantidas em tesouraria pela Emissora; ou (ii) de titularidade de: (a) empresas controladas pela Emissora (diretas ou indiretas), (b) controladoras (ou grupo de controle) da Emissora; (c) sociedades sobre controle comum; e (d) administradores da Emissora, incluindo, mas não se limitando a, pessoas direta ou

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

indiretamente relacionadas a qualquer das pessoas anteriormente mencionadas, incluindo seus cônjuges, companheiros ou parentes até o 3º (terceiro) grau.

9.4.2. Quando não houver quórum específico determinado nesta Escritura, todas as deliberações a serem tomadas em Assembleia Geral de Debenturistas dependerão de aprovação de Debenturistas representando, no mínimo, (i) 50% (cinquenta por cento) mais 1 (uma) das Debêntures em Circulação, em primeira convocação e (ii) maioria simples dos presentes em Assembleia Geral de Debenturistas, em segunda convocação.

9.4.3. Será obrigatória a presença dos representantes legais da Emissora nas Assembleias Gerais de Debenturistas convocadas pela Emissora. Nos demais casos, será facultada a presença dos representantes legais da Emissora nas Assembleias Gerais de Debenturistas, sendo certo que os Debenturistas poderão discutir e deliberar sem a presença destes, caso desejarem.

9.4.4. O Agente Fiduciário deverá comparecer às Assembleias Gerais de Debenturistas e prestar aos Debenturistas as informações que lhe forem solicitadas, bem como enviar as respectivas atas das Assembleias Gerais de Debenturistas ao Agente de Monitoramento e, enquanto perdurar o Plano de Recuperação Judicial, ao administrador judicial indicado pela Emissora.

9.4.5. As deliberações tomadas pelos Debenturistas, em Assembleias Gerais de Debenturistas, no âmbito de sua competência legal, observados os quóruns desta Escritura, vincularão a Emissora e obrigarão todos os titulares de Debêntures em Circulação, independentemente de terem comparecido à Assembleia Geral de Debenturistas ou do voto proferido nas respectivas Assembleias Gerais de Debenturistas.

**9.5. Reunião de Credores no âmbito do Plano de Recuperação Judicial**

9.5.1. A Emissora poderá, a qualquer momento, convocar reunião de credores das Recuperandas composta pelos titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, dentre os quais os Debenturistas ("Reunião de Credores"), para que estes deliberem sobre:

(i) a renúncia prévia (*waiver*) ao direito de exigir o cumprimento de qualquer uma das obrigações previstas nos Instrumentos de Pagamento, dentre os quais a presente Escritura;

(ii) a renúncia (*waiver*) ao direito de declarar o vencimento antecipado das obrigações previstas nos Instrumentos de Pagamento, dentre os quais a presente Escritura;

(iii) a extensão de prazos previstos nos Instrumentos de Pagamento, dentre os quais a presente Escritura

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(iv) a realização de operações de reorganização societária nos termos da Cláusula 6.1 do Plano de Recuperação Judicial;

(v) a substituição do Agente de Monitoramento; e

(vi) outras matérias que sejam relevantes.

9.5.1.1. Nos termos do Plano de Recuperação Judicial, a reunião para deliberação das matérias indicadas nos itens (iii), (iv) e (v) da Cláusula 9.5.2 acima somente será instalada com a presença de titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento que representem, no mínimo, 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, seja em primeira ou em segunda convocação.

9.5.1.2. Nos termos do Plano de Recuperação, as matérias indicadas nos itens, (iii), (iv) e (v) da Cláusula 9.1.2 acima dependerão aprovação de titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento que representem, no mínimo, 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, em primeira e em segunda convocação.

9.5.2. Caso ocorra a convocação para determinada Reunião de Credores, o Agente Fiduciário se obriga a, em até 1 (um) Dia Útil contados do recebimento da notificação de convocação da respectiva Reunião de Credores, a convocar uma Assembleia Geral de Debenturistas, na forma e prazo estabelecidos na Cláusula 9.2 acima, que terá como ordem do dia a deliberação sobre as matérias constantes da notificação de convocação da Reunião de Credores.

9.5.3. Ocorrida a Assembleia Geral de Debenturistas prevista na Cláusula 9.5.2 acima, o Agente Fiduciário se obriga a comparecer à respectiva Reunião de Credores e votar, na qualidade de representante dos Debenturistas, conforme instruído por estes na Assembleia Geral de Debenturistas.

9.5.4. Caso o voto manifestado pelos Debenturistas seja vencido no âmbito da correspondente Reunião de Credores, as deliberações tomadas na respectiva Reunião de Credores deverão prevalecer sobre aquelas tomadas na Assembleia Geral de Debenturistas, vinculando os Debenturistas em todos os seus termos.

## CLÁUSULA X
## DECLARAÇÕES E GARANTIAS DA EMISSORA

10.1. A Emissora declara e garante, na data da assinatura desta Escritura, que:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(i) é sociedade devidamente organizada, constituída e existente sob a forma de sociedade por ações, de acordo com as leis brasileiras;

(ii) está devidamente autorizada e obteve todas as licenças e autorizações necessárias, inclusive as societárias, à celebração desta Escritura e seus eventuais aditamentos, à realização da Emissão e ao cumprimento de suas obrigações aqui previstas, tendo sido satisfeitos todos os requisitos legais e estatutários necessários para tanto;

(iii) nenhum registro, consentimento, autorização, aprovação, licença, ordem de, ou qualificação perante qualquer autoridade governamental ou órgão regulatório adicional aos já concedidos, é exigido para o cumprimento, pela Emissora de suas obrigações nos termos desta Escritura e das Debêntures, ou para a realização da Emissão, exceto a inscrição da [AGE da Emissora], dos Atos Societários das Fiadoras, da Escritura na Junta Comercial, o registro da Escritura nos RTDs e da aprovação do Plano de Recuperação Judicial pelo juízo competente;

(iv) os representantes legais da Emissora que assinam esta Escritura têm poderes estatutários e/ou delegados para assumir, em seu nome, as obrigações ora estabelecidas e, sendo mandatários, tiveram os poderes legitimamente outorgados, estando os respectivos mandatos em pleno vigor;

(v) esta Escritura e as obrigações aqui previstas, constituem obrigações legais, válidas, vinculantes da Emissora, exequíveis de acordo com os seus termos e condições, com força de título executivo extrajudicial nos termos do artigo 784, incisos I e III, do Código de Processo Civil;

(vi) a celebração, os termos e condições desta Escritura e o cumprimento das obrigações aqui previstas e a realização da Emissão não infringem o estatuto social da Emissora;

(vii) está adimplente com o cumprimento de todas as obrigações assumidas no âmbito do Plano de Recuperação Judicial;

(viii) os documentos e informações fornecidos ao Agente Fiduciário e/ou aos Debenturistas são verdadeiros, consistentes, corretos e suficientes, estão atualizados até a data em que foram fornecidos e incluem os documentos e informações relevantes para a tomada de decisão de investimento sobre as Debêntures, tendo sido disponibilizadas informações sobre as operações relevantes da Emissora, bem como sobre os direitos e obrigações relevantes delas decorrentes;

(ix) não há qualquer ligação entre a Emissora e o Agente Fiduciário que impeça o Agente Fiduciário de exercer plenamente suas funções; e

(x) está cumprindo as leis, regulamentos, normas administrativas e determinações dos

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

órgãos governamentais, autarquias, juízos ou tribunais, aplicáveis à condução de seus negócios e que sejam relevantes para a execução das atividades da Emissora, exceto com relação àquelas leis e regulamentos que (a) estejam sendo contestados de boa-fé pela Emissora,(b) para as quais a Emissora possua provimento jurisdicional ou administrativo vigente determinando sua não aplicabilidade ou (c) cujo descumprimento não cause um Efeito Adverso Relevante.

10.2. A Emissora obriga-se a notificar o Agente Fiduciário, em até 3 (três) Dias Úteis da data em que tomar conhecimento, caso qualquer das declarações prestadas nos termos da Cláusula 10.1 acima seja falsa e/ou incorreta.

## CLÁUSULA XI
## DISPOSIÇÕES GERAIS

**11.1 Comunicações**

11.1.1. As comunicações a serem enviadas por qualquer das Partes nos termos desta Escritura deverão ser encaminhadas para os seguintes endereços:

**Para a Emissora:**
**[*EMISSORA*]**
[*Endereço Completo*]
CEP [--]–[*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para as Fiadoras**
**[*FIADORA 1*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**[*FIADORA 2*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Para o Agente Fiduciário:**
**[*AGENTE FIDUCIÁRIO*]**
[*Endereço Completo*]
CEP [--]–[*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para o Banco Liquidante**
**[*BANCO LIQUIDANTE*]**
[*Endereço Completo*]
CEP [--]–[*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para o Escriturador:**
**[*ESCRITURADOR*]**
[*Endereço Completo*]
CEP [--]–[*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para a B3:**
**B3 S.A. – BRASIL, BOLSA, BALCÃO**
**Segmento Cetip UTVM**
Praça Antônio Prado, 48, 2º andar
CEP 01010-901, São Paulo/SP
At.: Superintendência de Ofertas de Títulos Corporativos e Fundos
Telefone: (11) 2565-5061
E-mail: valores.mobiliarios@b3.com.br

11.1.2. As comunicações serão consideradas entregues quando recebidas sob protocolo ou com "aviso de recebimento" expedido pela Empresa Brasileira de Correios ou por corrier nos endereços acima. As comunicações feitas por correio eletrônico serão consideradas recebidas na data de seu envio, desde que seu recebimento seja confirmado por meio de indicativo (recibo emitido pela máquina utilizada pelo remetente). A mudança de qualquer dos endereços deverá ser imediatamente comunicada às demais Partes pela Parte que tiver seu endereço alterado com cópia para o Agente de Monitoramento. Eventuais prejuízos decorrentes da não comunicação quanto à alteração de endereço serão arcados pela Parte inadimplente, exceto se de outra forma previsto nesta Escritura.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

11.2. **Renúncia:** Não se presume a renúncia a qualquer dos direitos decorrentes da presente Escritura. Desta forma, nenhum atraso, omissão ou liberalidade no exercício de qualquer direito, faculdade ou remédio que caiba à Emissora, ao Agente Fiduciário e/ou aos Debenturistas em razão de qualquer inadimplemento prejudicará tais direitos, faculdades ou remédios, ou será interpretado como constituindo uma renúncia aos mesmos ou concordância com tal inadimplemento, nem constituirá novação ou modificação de quaisquer outras obrigações assumidas pelas Partes nesta Escritura ou precedente no tocante a qualquer outro inadimplemento ou atraso.

11.2.1 Fica desde já dispensada a realização de Assembleia Geral para deliberar sobre aditamentos decorrentes: (i) da correção de erros materiais, seja ele um erro grosseiro, de digitação ou aritmético, (ii) das alterações a quaisquer documentos da emissão já expressamente permitidas nos termos do(s) respectivo(s) documento(s) da Emissão, (iii) das alterações a quaisquer documentos da Emissão em razão de exigências formuladas pela B3, ou (iv) da atualização dos dados cadastrais das Partes, tais como alteração na razão social, endereço e telefone, entre outros, desde que as alterações ou correções referidas nos itens (i), (ii), (iii) e (iv) acima, não possam acarretar qualquer prejuízo aos Debenturistas ou qualquer alteração no fluxo dos Debenturistas, e desde que não haja qualquer custo ou despesa adicional para os Debenturistas.

11.3. **Despesas:** Todas e quaisquer despesas incorridas com a Emissão ou com a execução de valores devidos nos termos desta Escritura incluindo publicações, inscrições, registros, averbações, contratação do Agente Fiduciário e dos prestadores de serviços e quaisquer outros custos relacionados às Debêntures serão de responsabilidade exclusiva da Emissora, nos termos desta Escritura.

11.4. **Título Executivo Extrajudicial e Execução Específica:** Esta Escritura e as Debêntures constituem títulos executivos extrajudiciais nos termos do artigo 784, I e III, do Código de Processo Civil, reconhecendo as Partes desde já que, independentemente de quaisquer outras medidas cabíveis, as obrigações assumidas nos termos desta Escritura e com relação às Debêntures estão sujeitas à execução específica, submetendo-se às disposições dos artigos 497, 806, 814 e seguintes do Código de Processo Civil, sem prejuízo do direito de declarar o vencimento antecipado das Debêntures nos termos desta Escritura.

11.5. **Cômputo do Prazo:** Exceto se de outra forma especificamente disposto nesta Escritura, os prazos estabelecidos na presente Escritura serão computados de acordo com a regra prescrita no artigo 132 do Código Civil, sendo excluído o dia do começo e incluído o do vencimento.

11.5. **Aditamentos:** Quaisquer aditamentos a esta Escritura deverão ser formalizados por escrito, com assinatura da Emissora e do Agente Fiduciário, inscritos na Junta Comercial e registrados nos RTDs, nos termos desta Escritura. As Partes concordam que a presente Escritura, assim como os demais documentos da Emissão, poderão ser alterados, sem a

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

necessidade de qualquer aprovação dos Debenturistas, sempre e somente: (i) quando tal alteração decorrer exclusivamente da necessidade de atendimento a exigências de adequação a normas legais, regulamentares ou exigências da B3, de qualquer autoridade pública ou órgão regulador, conforme o caso; (ii) quando verificado erro material, seja ele um erro grosseiro, de digitação ou aritmético; (iii) alterações a quaisquer documentos relativos à Emissão das Debêntures já expressamente permitidas nos termos dos respectivos documentos; ou ainda (iv) em virtude da atualização dos dados cadastrais das Partes, tais como alteração na razão social, endereço e telefone, entre outros, desde que não haja qualquer custo ou despesa adicional para os Debenturistas.

**11.6. Outras Disposições**

11.6.1. Esta Escritura é celebrada em caráter irrevogável e irretratável, obrigando as Partes e seus sucessores, a qualquer título.

11.6.2. Os termos aqui iniciados em letra maiúscula, estejam no singular ou no plural, terão o significado a eles atribuído nesta Escritura, ainda que posteriormente ao seu uso.

11.6.3. A invalidação ou nulidade, no todo ou em parte, de quaisquer das cláusulas desta Escritura não afetará as demais, que permanecerão sempre válidas e eficazes até o cumprimento, pelas Partes, de todas as suas obrigações aqui previstas. Ocorrendo a declaração de invalidação ou nulidade de qualquer Cláusula desta Escritura, as Partes desde já se comprometem a negociar, no menor prazo possível, em substituição à Cláusula declarada inválida ou nula, a inclusão, nesta Escritura, de termos e condições válidos que reflitam os termos e condições da Cláusula invalidada ou nula, observados a intenção e o objetivo das Partes quando da negociação da Cláusula invalidada ou nula e o contexto em que se insere.

11.6.4. As Partes declaram, mútua e expressamente, que esta Escritura foi celebrada respeitando-se os princípios de probidade e de boa-fé, por livre, consciente e firme manifestação de vontade das Partes e em perfeita relação de equidade.

11.6.5. Os prazos estabelecidos nesta Escritura serão computados de acordo com o disposto no artigo 132 do Código Civil, sendo excluído o dia de início e incluído o do vencimento.

11.7. **Lei Aplicável**

11.7.1. Esta Escritura é regida pelas Leis da República Federativa do Brasil.

11.8. **Foro**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

11.8.1. As Partes elegem o foro da Comarca de [--], do Estado de [--], com renúncia expressa de qualquer outro, por mais privilegiado, como competente para dirimir quaisquer controvérsias decorrentes desta Escritura.

Estando assim, as Partes, certas e ajustadas, firmam esta Escritura em [--] ([--]) vias de igual teor e forma, juntamente com 2 (duas) testemunhas, que também a assinam.

São Paulo, [*data*].

*(As assinaturas seguem nas páginas seguintes.)*

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

*(Página de Assinaturas do Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em Série Única, para Colocação Privada, da [Emissora])*

**[EMISSORA]**

| ______________________ | ______________________ |
|---|---|
| Nome: | Nome: |
| Cargo: | Cargo: |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

*(Página de Assinaturas do Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em Série Única, para Colocação Privada, da [Emissora])*

**[FIADORA 1]**

______________________________ ______________________________

Nome:
Cargo:

**[FIADORA 2]**

______________________________ ______________________________

Nome:
Cargo:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

*(Página de Assinaturas do Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em Série Única, para Colocação Privada, da [Emissora])*

**[AGENTE FIDUCIÁRIO]**

____________________________________ ____________________________________

Nome:
Cargo:

**TESTEMUNHAS**

| ________________________________ | ________________________________ |
|---|---|
| Nome: | Nome: |
| RG: | RG: |
| CPF: | CPF: |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Anexo I ao Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em Série Única, para Colocação Privada, da [Emissora]**

**[*a ser incluído*]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Anexo II ao Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em Série Única, para Colocação Privada, da [Emissora]**

**[*a ser incluído*]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Annex 4.1.3 - Public Debenture**

fls. 32787

Autorregulação ANBIMA
Agente Fiduciário

**INSTRUMENTO PARTICULAR DE ESCRITURA DA [--] EMISSÃO DE DEBÊNTURES SIMPLES, NÃO CONVERSÍVEIS EM AÇÕES, DA ESPÉCIE QUIROGRAFÁRIA, COM GARANTIA ADICIONAL FIDEJUSSÓRIA, EM [SÉRIE ÚNICA], PARA DISTRIBUIÇÃO PÚBLICA, COM ESFORÇOS RESTRITOS, DA [EMISSORA]** [1]

celebrado entre

**[EMISSORA]**
*como Emissora*

e

**[AGENTE FIDUCIÁRIO]**
*como Agente Fiduciário, representando a comunhão dos Debenturistas*

**[FIADORAS]**

*na qualidade de intervenientes garantidoras*

---

[*data*]

---

[1] A ser adaptada e ajustada conforme disposições do Plano de Recuperação Judicial

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**INSTRUMENTO PARTICULAR DE ESCRITURA DA [--] EMISSÃO DE DEBÊNTURES SIMPLES, NÃO CONVERSÍVEIS EM AÇÕES, DA ESPÉCIE QUIROGRAFÁRIA, COM GARANTIA ADICIONAL FIDEJUSSÓRIA, EM [SÉRIE ÚNICA], PARA DISTRIBUIÇÃO PÚBLICA, COM ESFORÇOS RESTRITOS, DA [EMISSORA]**

Pelo presente instrumento particular,

**[EMISSORA]**, [*qualificação*], neste ato representada na forma do seu estatuto social ("Emissora");

**AGENTE FIDUCIÁRIO,** [*qualificação*], neste ato representada na forma do seu [contrato/estatuto] social, na qualidade de agente fiduciário da presente emissão ("Agente Fiduciário"), representando a comunhão dos titulares das debêntures desta emissão ("Debenturistas" e, individualmente, "Debenturista");

na qualidade de intervenientes fiadoras e principal pagadoras,
**[FIADORA 1]**, [*qualificação*], neste ato representada na forma do seu estatuto social ("[*Fiadora 1*]");

**[FIADORA 2]**, [*qualificação*], neste ato representada na forma do seu estatuto social ("[*Fiadora 2*]" e, em conjunto com a Fiadora 1, "Fiadoras"); [**NOTA: QUANTIDADE DE FIADORAS E SUAS RESPECTIVAS QUALIFICAÇÕES A SER DEFINIDA OPORTUNAMENTE A DEPENDER DAS RECUPERANDAS QUE ADERIREM AO PLANO DE RECUPERAÇÃO JUDICIAL]**

**CONSIDERANDO QUE:**

(A) a Emissora e as Fiadoras são integrantes do grupo Odebrecht, um dos maiores conglomerados empresariais do País, com atuação nos setores de infraestrutura, óleo e gás, sucroalcooleiro, incorporação imobiliária, mobilidade e transporte, energia, defesa e serviços navais, reunindo diversas sociedades sob controle comum (direto ou indireto) da Kieppe Participações e Administração Ltda. – Em Recuperação Judicial ("Grupo Odebrecht");

(B) no exercício de suas atividades, a Emissora e outras sociedades integrantes do Grupo Odebrecht, incluindo as Fiadoras, (em conjunto denominadas "Recuperandas ODB") estruturaram-se para viabilizar a captação de recursos junto ao mercado financeiro e de capitais brasileiro e internacional, por meio da contratação de financiamentos bancários, garantias bancárias, seguros-garantia e emissão de títulos de dívida no mercado local (debêntures) e no mercado internacional (*bonds*) (em conjunto, "Dívidas Reestruturadas");

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(C) em razão de dificuldades financeiras enfrentadas pelas Recuperandas ODB que culminaram no inadimplemento de parte relevante das Dívidas Reestruturadas, em 17 de junho de 2019, foi apresentado pedido de recuperação judicial conjunto, autuado sob o nº 1057756-77.2019.8.26.0100, em curso perante a 1ª Vara de Falências e Recuperação Judiciais do Foro Central Cível da Comarca da Capital de São Paulo, com o objetivo de permitir o seguimento e preservação das atividades das Recuperandas ODB ("Plano de Recuperação Judicial");

(D) em atenção aos despachos de fls. 278/285 e 355/363, proferidos respectivamente no âmbito dos Agravos de Instrumento nº 2262371-21.2019.8.26.0000 e 226277-73.2019.8.26.000, os Credores Concursais (conforme definido no Plano de Recuperação Judicial) das Recuperandas listadas no Anexo II à presente Escritura, conforme aditado de tempos em tempos para a inclusão de eventuais novas Recuperandas ("Recuperandas") deliberaram, em sede de assembleia geral de credores, pela consolidação substancial da Odebrecht S.A. – em Recuperação Judicial ("ODB") com as demais Recuperandas, de modo que o Plano de Recuperação Judicial é composto pelos ativos e passivos de titularidade de todas as Recuperandas ("Consolidação Substancial das Recuperandas");

(E) no âmbito do Plano de Recuperação Judicial, foi outorgada a possibilidade aos credores de créditos quirografários decorrentes de operações realizadas no âmbito do Sistema Financeiro Nacional, com seguradoras, instituições financeiras estrangeiras, fundos de investimento ou participação, ou envolvendo estruturas estrangeiras semelhantes a fundos de investimento ou participação, *private equity*, e/ou emissões de títulos de dívida nos mercados nacionais e estrangeiros, incluindo, sem limitação, emissões de debêntures, *notes* ou *bonds* ("Créditos Quirografários Financeiros") de terem seus créditos reestruturados e integralmente pagos por meio de determinados instrumentos, conforme oportunamente eleitos, dentre os quais debêntures a serem emitidas com esforços restritos de colocação, nos termos da Instrução da CVM nº 476, de 16 de janeiro de 2009, conforme alterada ("Debêntures Públicas");

(F) a fim de viabilizar a emissão das Debêntures Públicas para que os credores dos Créditos Quirografários Financeiros com crédito em valor superior a R$ 150.000,00 (cento e cinquenta mil reais) ("Credores Quirografários Financeiros") tenham seus créditos satisfeitos, os termos e condições substanciais da presente Escritura (conforme definido abaixo) foram inseridos na forma de anexo ao Plano de Recuperação Judicial;

(G) o Plano de Recuperação Judicial foi devidamente aprovado pelos credores concursais e posteriormente homologado judicialmente nos termos do artigo 58, §1º, da Lei nº 11.101 de 9 de fevereiro de 2015, em [*data*]; e

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(H) os Credores Quirografários Financeiros que optarem por ter seus Créditos Quirografários Financeiros oriundos de suas respectivas Dívidas Reestruturadas pagos por meio de Debêntures Públicas poderão subscrever as Debêntures objeto da presente Emissão (conforme definido abaixo) nos termos constantes deste instrumento.

Sendo a Emissora, o Agente Fiduciário e as Fiadoras doravante denominados, em conjunto, como "Partes" e, individual e indistintamente, como "Parte";

Resolvem as Partes, por meio desta e na melhor forma de direito, celebrar o presente "*Instrumento Particular de Escritura da [--]ª Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], para Distribuição Pública, com Esforços Restritos, da [Emissora]*" ("Escritura"), conforme as cláusulas e condições a seguir.

Para efeitos desta Escritura, define-se "Dia Útil" como sendo qualquer dia da semana, exceto sábados, domingos e feriados declarados nacionais. Quando a indicação de prazo contado por dia na presente Escritura não vier acompanhada da indicação de "Dia Útil", entende-se que o prazo é contado em dias corridos.

**CLÁUSULA I**
**AUTORIZAÇÃO**

1.1 A presente Escritura é firmada com base na autorização da [*Assembleia Geral Extraordinária de acionistas da Emissora realizada em [data] ("AGE da Emissora")*], por meio da qual foi deliberada a emissão de debêntures simples, não conversíveis em ações, da espécie quirografária, com garantia adicional fidejussória, em [série única], da Emissora ("Debêntures" e "Emissão", respectivamente), para distribuição pública, com esforços restritos, nos termos da Instrução CVM 476, nos termos do artigo 59 da Lei nº 6.404 de 15 de dezembro de 1976, conforme alterada ("Lei das Sociedades por Ações"), e das demais disposições legais e regulamentares aplicáveis ("Oferta"); e (ii) a autorização para que a diretoria da Emissora pratique todos os atos necessários à efetivação das deliberações ali consubstanciadas, incluindo a celebração de todos os documentos necessários à concretização da Emissão e da Oferta. **[NOTA: APROVAÇÃO DA EMISSÃO VIA AGE E/OU RCA A SER CONFIRMADA A DEPENDER DA EMISSORA]**

1.2. A Fiança (conforme abaixo definida) será realizada com base nas deliberações da [*Assembleia Geral Extraordinária de acionistas da Fiadora 1 realizada em [data] ("AGE da Fiadora 1")*] e na [*Assembleia Geral Extraordinária de acionistas da Fiadora 2 realizada em [data] ("AGE da Fiadora 2")*] e, em conjunto com a [AGE da

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Fiadora 1], "Atos Societários das Fiadoras"). **[NOTA: APROVAÇÃO DA FIANÇA VIA AGE E/OU RCA A SER CONFIRMADA A DEPENDER DAS FIADORAS]**

**CLÁUSULA II**
**REQUISITOS**

A Emissão será realizada com observância aos requisitos abaixo.

**2.1. Dispensa de Registro na CVM**

2.1.1. Nos termos do artigo 6º da Instrução CVM 476 e do artigo 19, §5º, I, da Lei nº 6.385, de 7 de dezembro de 1976, conforme alterada, a Oferta está automaticamente dispensada de registro perante a CVM, por se tratar de oferta pública de valores mobiliários com esforços restritos de distribuição, não sendo objeto de protocolo, registro e arquivamento perante a CVM, exceto pelo envio da comunicação sobre o início da Oferta e a comunicação de seu encerramento à CVM, nos termos dos artigos 7º-A e 8º, respectivamente, da Instrução CVM 476 ("Comunicação de Início" e "Comunicação de Encerramento", respectivamente).

**2.2. Registro na Associação Brasileira das Entidades dos Mercados Financeiro e de Capitais ("ANBIMA")**

2.2.1. Considerando que a Oferta será distribuída com esforços restritos de colocação, nos termos da Instrução CVM 476, será registrada na ANBIMA, no prazo máximo de 15 (quinze) dias a contar da data do comunicado encerramento da Oferta, nos termos do artigo 16 e seguintes do "*Código ANBIMA de Regulação e Melhores Práticas para Ofertas Públicas*" em vigor desde 03 de junho de 2019.

**2.3. Arquivamento na Junta Comercial e Publicação da Ata de AGE da Emissora**

2.3.1. A ata da [AGE da Emissora] será devidamente arquivada na Junta Comercial do Estado de [--] ("Junta Comercial") e deverá ser publicada nos jornais "Diário Oficial do Estado de [--] ("Diário Oficial") e no jornal "[--]", nos termos da Lei das Sociedades por Ações. Os atos societários que eventualmente venham a ser praticados após o arquivamento desta Escritura também serão arquivados na Junta Comercial e publicadas pela Emissora no Diário Oficial e no jornal "[--]", conforme legislação em vigor.

**2.4. Arquivamento e Registro desta Escritura e seus Aditamentos**

2.4.1. Esta Escritura e seus eventuais aditamentos serão arquivados na Junta Comercial, nos termos do artigo 62, inciso II e parágrafo 3º, da Lei das Sociedades por

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Ações. A Emissora deverá enviar 1 (uma) via original da Escritura e de seus eventuais aditamentos devidamente registrados na Junta Comercial ao Agente Fiduciário em até 5 (cinco) Dias Úteis contados da obtenção do respectivo registro. Adicionalmente, em razão da Fiança outorgada pela Fiadora, esta Escritura de Emissão e seus eventuais aditamentos também serão registrados nos competentes Cartórios de Registro de Títulos e Documentos nas Cidades de [--], no Estado de [--] ("RTDs"), devendo esta Escritura de Emissão (e eventuais aditamentos) ser levada a registro nos RTDs em até 5 (cinco) Dias Úteis contados da data de sua assinatura e enviada 1 (uma) via original pela Emissora ao Agente Fiduciário em até 5 (cinco) Dias Úteis, contados do respectivo registro.

**2.5. Depósito para Distribuição, Negociação e Custódia Eletrônica**

2.5.1. As Debêntures serão depositadas para:

(i) distribuição no mercado primário, por meio do MDA – Módulo de Distribuição de Ativos ("MDA"), administrado e operacionalizado pela B3 S.A. – Brasil, Bolsa, Balcão - Segmento Cetip UTVM ("B3"), sendo a distribuição liquidada financeiramente por meio da B3; e

(ii) negociação no mercado secundário, por meio do CETIP21 – Títulos e Valores Mobiliários ("CETIP21"), administrado e operacionalizado pela B3, sendo as negociações liquidadas financeiramente e as Debêntures custodiadas eletronicamente na B3.

2.5.2. Não obstante o descrito na Cláusula 2.5.1 acima, as Debêntures somente poderão ser negociadas nos mercados regulamentados de valores mobiliários entre Investidores Qualificados, conforme definidos no artigo 9º-B da Instrução da CVM nº 539, de 13 de novembro de 2013, conforme alterada ("Instrução CVM 539"), e depois de decorridos 90 (noventa) dias da data de cada subscrição ou aquisição pelos Investidores Profissionais, conforme disposto nos artigos 13 e 15 da Instrução CVM 476, e uma vez verificado o cumprimento, pela Emissora, de suas obrigações previstas no artigo 17 da Instrução CVM 476, observado, ainda, o disposto no inciso II do artigo 13 da Instrução CVM 476, sendo que a negociação das Debêntures deverá sempre respeitar as disposições legais e regulamentares aplicáveis.

## CLÁUSULA III
## CARACTERÍSTICAS DA EMISSÃO

**3.1 Objeto Social da Emissora**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

3.1.1. Nos termos do estatuto social da Emissora atualmente em vigor, o objeto social da Emissora compreende [*incluir descrição do objeto social da Emissora*].

**3.2 Número da Emissão**

3.2.1. A presente Emissão constitui a [--]ª ([--]) emissão de debêntures da Emissora.

**3.3 Valor Total da Emissão**

3.3.1. O valor total da Emissão será de até R$ [--] ([--]), na Data de Emissão (conforme abaixo definido), observada a possibilidade de distribuição parcial das Debêntures prevista na Cláusula 3.5.8, de modo que o Valor Total da Emissão deverá ser ajustado por meio de aditamento à presente Escritura, após transcorrido o Prazo de Subscrição (conforme definido abaixo) ("Valor Total da Emissão").

**3.4 Número de Séries**

3.4.1. A Emissão será realizada em [série única]/[--] séries. **[NOTA: A EMISSÃO PODERÁ OCORRER EM UMA OU MAIS SÉRIES A DEPENDER DAS GARANTIAS A SEREM PRESTADAS]**

**3.5 Procedimento de Distribuição**

3.5.1. As Debêntures serão objeto de distribuição pública, com esforços restritos, nos termos da Instrução CVM 476, sob o regime de melhores esforços de colocação para a totalidade das Debêntures, com a intermediação de instituições financeiras integrantes do sistema de distribuição de valores mobiliários responsáveis pela distribuição das Debêntures ("Coordenadores", sendo a instituição intermediária líder denominada "Coordenador Líder"), nos termos do "*Instrumento Particular de Contrato de Coordenação e Distribuição Pública, Com Esforços Restritos de Colocação, de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], da [--] Emissão da [Emissora]*", celebrado entre a Emissora e os Coordenadores ("Contrato de Distribuição"), sendo certo que as Debêntures poderão ser subscritas por Credores Quirografários Financeiros até o prazo máximo de 24 (vinte e quatro) meses, contados da data de envio da Comunicação de Início, nos termos do artigo 8º-A da Instrução CVM 476 ("Prazo de Subscrição"). **[NOTA: SE HOUVER GARANTIA REAL PRESTADA POR TECEIROS, O NOME DO CONTRATO DE DISTRIBUIÇÃO DEVERÁ SER AJUSTADO PARA FAZER CONSTAR QUE AS DEBÊNTURES SERÃO DA ESPÉCIE COM GARANTIA REAL ADICIONAL]**

3.5.2. O plano de distribuição seguirá o procedimento descrito na Instrução CVM 476, conforme previsto no Contrato de Distribuição. Para tanto, o Coordenador Líder poderá

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

acessar, no máximo, 75 (setenta e cinco) Investidores Profissionais (conforme definido abaixo), sendo possível a subscrição ou aquisição por, no máximo, 50 (cinquenta) Investidores Profissionais, os quais deverão estar obrigatoriamente enquadrados na categoria de Credores Quirografários Financeiros.

3.5.2.1. Nos termos da Instrução CVM 476, são considerados "Investidores Profissionais" aqueles investidores referidos no artigo 9º-A da Instrução CVM 539, observado que os fundos de investimento e carteiras administradas de valores mobiliários cujas decisões de investimento sejam tomadas pelo mesmo gestor serão considerados como um único investidor, para os fins dos limites previstos na Cláusula 3.5.2 acima.

3.5.2.2. No ato de subscrição das Debêntures, os Investidores Profissionais assinarão declaração atestando que efetuaram sua própria análise com relação à capacidade de pagamento da Emissora e atestando sua condição de Investidor Profissional, bem como de que estão cientes, entre outras coisas: (a) de que a Oferta não foi registrada perante a CVM; (b) de que as Debêntures estão sujeitas a restrições de negociação previstas na regulamentação aplicável e nesta Escritura; e (c) de todos os termos e condições desta Escritura, com os quais estão plenamente de acordo.

3.5.3. A Emissora obriga-se a: (i) não contatar ou fornecer informações acerca da Oferta a qualquer Investidor Profissional, exceto se previamente acordado com o Coordenador Líder; e (ii) informar ao Coordenador Líder, até o Dia Útil imediatamente subsequente, a ocorrência de contato que receba de potenciais Investidores Profissionais que venham a manifestar seu interesse na Oferta, comprometendo-se desde já a não tomar qualquer providência em relação aos referidos potenciais Investidores Profissionais nesse período.

3.5.4. Não será concedido qualquer tipo de desconto pelos Coordenadores aos Investidores Profissionais interessados em adquirir Debêntures no âmbito da Oferta, bem como não existirão reservas antecipadas, nem fixação de lotes mínimos ou máximos para a Oferta, independentemente da ordem cronológica.

3.5.5. Não haverá preferência para subscrição das Debêntures pelos atuais acionistas ou controladores diretos ou indiretos da Emissora.

3.5.6. Não será constituído fundo de sustentação de liquidez ou firmado contrato de garantia de liquidez para as Debêntures. Não será firmado contrato de estabilização de preço das Debêntures no mercado secundário.

3.5.7. A colocação das Debêntures será realizada de acordo com os procedimentos da B3, com o plano de distribuição descrito nesta Cláusula 3.5. e com o Plano de Recuperação Judicial, conforme aplicável.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

fls. 32795

3.5.8. Nos termos dos artigos 30 e 31 da Instrução CVM nº 400, de 29 de dezembro de 2003 ("Instrução CVM 400") e do artigo 5°-A da Instrução CVM 476, será admitida a distribuição parcial das Debêntures, observado que, o montante total final da Oferta Restrita será definido após o término do Prazo de Subscrição.

3.5.8.1. Ao final do Prazo de Subscrição, as Debêntures efetivamente emitidas e não distribuídas serão canceladas pela Emissora.

3.5.9. Tendo em vista que a distribuição poderá ser parcial, nos termos do artigo 31 da Instrução CVM 400 e do artigo 5°-A da Instrução CVM 476, o Credor Quirografário Financeiro que adquirir as Debêntures renunciará expressamente, no ato da aceitação à Oferta Restrita, as disposições previstas no artigo 31 da Instrução CVM 400 e no artigo 5°-A da Instrução CVM 476, de forma que referido investidor não poderá condicionar sua adesão à distribuição total das Debêntures.

**3.6 Banco Liquidante e Escriturador**

3.6.1. A instituição prestadora de serviços de banco liquidante das Debêntures é o [*Banco Liquidante*], [*qualificação*] ("Banco Liquidante").

3.6.2. A instituição prestadora de serviços de escrituração das Debêntures é o [*Escriturador*], [*qualificação*] ("Escriturador").

3.6.3. O Escriturador será responsável por efetuar a escrituração das Debêntures, dentre outras atribuições descritas no Manual de Normas da B3.

**3.7 Destinação dos Recursos**

3.7.1. Os créditos integralizados recebidos pela Emissora em decorrência da subscrição das Debêntures serão utilizados pela Emissora para capitalização de suas subsidiárias e/ou reestruturação de suas dívidas observados os termos e condições do Plano de Recuperação Judicial. **[NOTA: DESTINAÇÃO DOS RECURSOS A SER ADAPTADA CONFORME DEFINIÇÃO DO PLANO DE RJ]**

**3.8. Garantias**

**3.8.1 Garantia Fidejussória [NOTA: A EMISSÃO (OU SÉRIES DA PRESENTE EMISSÃO) PODERÁ SER GARANTIDA POR GARANTIA FIDEJUSSÓRIA DE TERCEIROS, O QUE SERÁ DEFINIDO CONFORME OPÇÕES FEITAS PELOS CREDORES NO PLANO DE RECUPERAÇÃO JUDICIAL. CASO HAJA ESSA GARANTIA, A CLÁUSULA ABAIXO DEVERÁ SER UTILIZADA]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

3.8.1.1 Em garantia do pagamento integral de todos e quaisquer valores, principais ou acessórios, incluindo Encargos Moratórios (conforme definido abaixo), devidos pela Emissora ou pelas Fiadoras, nos termos desta Escritura, bem como eventuais indenizações, todo e qualquer custo ou despesa comprovadamente e razoavelmente incorrido pelo Agente Fiduciário e/ou pelos Debenturistas em decorrência de processos, procedimentos e/ou outras medidas judiciais ou extrajudiciais necessários à salvaguarda de seus direitos e prerrogativas decorrentes das Debêntures, desta Escritura ("Obrigações Garantidas"), as Fiadoras, neste ato, se obrigam, solidariamente entre si e com a Emissora, em caráter irrevogável e irretratável, perante os Debenturistas, como fiadoras, principais pagadoras das Obrigações Garantidas, renunciando expressamente aos benefícios de ordem, direitos e faculdades de exoneração de qualquer natureza previstos nos artigos 333, parágrafo único, 364, 366, 368, 821, 824, 825, 827, 829, parágrafo único, 830, 834, 835, 836, 837, 838 e 839 da Lei n.º 10.406, de 10 de janeiro de 2002, conforme alterada ("Código Civil"), e dos artigos 130 e 794 da Lei n.º 13.105, de 16 de março de 2015, conforme alterada ("Código de Processo Civil" e "Fiança", respectivamente).

3.8.1.2. Cabe ao Agente Fiduciário requerer a execução, judicial ou extrajudicial, da Fiança, conforme função que lhe é atribuída nesta Escritura, uma vez verificada qualquer hipótese de insuficiência de pagamento das Obrigações Garantidas. A Fiança poderá ser excutida e exigida pelo Agente Fiduciário quantas vezes forem necessárias, até a integral e efetiva liquidação de todas as Obrigações Garantidas, sendo certo que a não execução da Fiança por parte do Agente Fiduciário não ensejará, em qualquer hipótese, perda do direito de execução da Fiança pelos Debenturistas.

3.8.1.3. As Fiadoras se obrigam a, de forma solidariamente entre si, independentemente de qualquer pretensão, ação, disputa ou reclamação que a Emissora venha a ter ou exercer em relação às suas obrigações, ressalvado o disposto na Cláusula 3.8.6 abaixo, honrar a Fiança, independentemente de notificação do Agente Fiduciário informando a falta de pagamento pela Emissora, no prazo de até [30 (trinta)] dias contados do descumprimento de qualquer das Obrigações Garantidas pela Emissora, fora do âmbito da B3.

3.8.1.4. A Fiança aqui referida é prestada em caráter irrevogável e irretratável e entrará em vigor na data de celebração desta Escritura e permanecerá válida até o pagamento integral das Obrigações Garantidas.

3.8.1.5. As Fiadoras, desde já, concordam e se obrigam, solidariamente entre si, a, (i) somente após a integral liquidação de todos os valores devidos aos Debenturistas e ao Agente Fiduciário nos termos desta Escritura, exigir e/ou demandar a Emissora em decorrência de qualquer valor que tiver honrado no âmbito das Debêntures e nos termos desta Escritura; e (ii) caso a Emissora esteja em mora no cumprimento das obrigações pecuniárias previstas nesta Escritura e as Fiadoras sejam reembolsadas pela Emissora

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

em decorrência de qualquer valor que tiver honrado no âmbito das Debêntures, nos termos desta Escritura antes da integral liquidação de todos os valores devidos aos Debenturistas e ao Agente Fiduciário nos termos das Debêntures, desta Escritura, repassar, no prazo de 30 (trinta) dias contados da data de seu recebimento, tal valor ao Agente Fiduciário, para pagamento aos Debenturistas.

3.8.1.6. A Fiança permanecerá válida e plenamente eficaz, em caso de aditamentos, alterações e quaisquer outras modificações nesta Escritura e nos demais documentos da Oferta.

**3.8.2. Garantia(s) Real(is)**

**NOTA: A EMISSÃO (OU SÉRIES DA PRESENTE EMISSÃO) PODERÁ SER GARANTIDA POR GARANTIA REAL, O QUE SERÁ DEFINIDO CONFORME OPÇÕES FEITAS PELOS CREDORES NO PLANO DE RECUPERAÇÃO JUDICIAL. CASO HAJA ESSA(S) GARANTIA(S), DEVERÃO SER FIRMADOS CONTRATOS ESPECÍFICOS CONFORME A DEFINIÇÃO DA(S) GARANTIA(S) A SER(EM) UTILIZADA(S). MENÇÃO A ESSA(S) GARANTIA(S) SERÁ INCLUÍDA NESTA CLÁUSULA.]**

## CLÁUSULA IV
## CARACTERÍSTICAS GERAIS DAS DEBÊNTURES

**4.1. Data de Emissão:** Para todos os fins e efeitos legais, a data de emissão das Debêntures será o dia [*data*] ("Data de Emissão").

**4.2. Forma, Tipo e Comprovação de Titularidade**: As Debêntures serão emitidas sob a forma nominativa e escritural, sem emissão de cautelas ou certificados, sendo que, para todos os fins de direito, a titularidade das Debêntures será comprovada pelo extrato das Debêntures emitido pelo Escriturador e, adicionalmente, com relação às Debêntures que estiverem custodiadas eletronicamente na B3, conforme o caso, será expedido por esta extrato em nome do Debenturista, que servirá como comprovante de titularidade de tais Debêntures.

**4.3. Conversibilidade**: As Debêntures não serão conversíveis em ações de emissão da Emissora.

**4.4. Espécie:** As Debêntures serão da espécie quirografária nos termos do artigo 58 da Lei das Sociedades por Ações e contarão com garantia adicional fidejussória. **[NOTA: SE HOUVER GARANTIA REAL PRESTADA POR TECEIROS, ESSA CLÁUSULA DEVERÁ SER AJUSTADA PARA FAZER CONSTAR QUE AS DEBÊNTURES SERÃO DA ESPÉCIE COM GARANTIA REAL ADICIONAL]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**4.5. Prazo e Data de Vencimento:** Sem prejuízo das possibilidades de liquidação antecipada das Debêntures em razão das hipóteses de vencimento antecipado ou da realização de eventual Resgate Antecipado Obrigatório (conforme definido abaixo), nos termos desta Escritura, as Debêntures terão prazo de vencimento de 40 (quarenta) anos contados da Data de Emissão, vencendo-se, portanto, em [*data*] ("Data de Vencimento").

**4.6. Valor Nominal Unitário**: O valor nominal unitário das Debêntures será de R$ [--] ([--]), na Data de Emissão ("Valor Nominal Unitário").

**4.7. Quantidade de Debêntures Emitidas:** Serão emitidas até [--] ([--]) Debêntures, observada a possibilidade de distribuição parcial nos termos da Cláusula 3.5.8 acima.

**4.8. Forma de Subscrição e Integralização**: As Debêntures serão subscritas e integralizadas no mercado primário, durante o Prazo de Subscrição, em uma ou mais datas, de acordo com as regras de liquidação aplicáveis à B3, pelo seu Valor Nominal Unitário Atualizado (conforme definido abaixo). As Debêntures serão subscritas exclusivamente por Investidores Profissionais enquadrados na categoria de Credores Quirografários Financeiros e integralizadas exclusivamente com os Créditos Quirografários Financeiros oriundos das Dívidas Reestruturadas, conforme descritos no Anexo I à presente Escritura.

**4.9. Atualização Monetária**: O Valor Nominal Unitário ou o saldo do Valor Nominal Unitário, conforme aplicável, das Debêntures será atualizado monetariamente pelo IPCA ou pela TR (conforme definidos abaixo), conforme disposto a seguir.

4.9.1 *Atualização Monetária pelo IPCA.* Observado o disposto na Cláusula 4.9.2 e subcláusulas abaixo, o Valor Nominal Unitário ou o saldo do Valor Nominal Unitário, conforme aplicável, das Debêntures será atualizado monetariamente pela variação positiva acumulada do Índice Nacional de Preços ao Consumidor Amplo ("IPCA"), apurado e divulgado mensalmente pelo Instituto Brasileiro de Geografia e Estatística ("IBGE"), desde a Data de Emissão (inclusive) até a Data Modificadora TR (conforme definido abaixo) (inclusive) ou a Data de Vencimento (inclusive), conforme o caso ("Atualização Monetária IPCA"), sendo o produto da Atualização Monetária IPCA automaticamente incorporado ao Valor Nominal Unitário das Debêntures ou, se for o caso, ao saldo do Valor Nominal Unitário das Debêntures, conforme aplicável ("Valor Nominal Unitário Atualizado IPCA"), calculado de forma *pro rata temporis* por Dias Úteis conforme a fórmula abaixo:

$$VNa = VNe \times C$$

Onde:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

VNa = Valor Nominal Unitário Atualizado IPCA calculado com 8 (oito) casas decimais, sem arredondamento;

VNe = Valor Nominal Unitário IPCA ou saldo do Valor Nominal Unitário IPCA (valor nominal remanescente após amortização de principal), conforme o caso, calculado com 8 (oito) casas decimais, sem arredondamento.

C = Fator acumulado das variações mensais do índice utilizado, calculado com 8 (oito) casas decimais, sem arredondamento, apurado da seguinte forma:

$$C = \prod_{k=1}^{n} \left[ \left( \frac{NI_k}{NI_{k-1}} \right)^{dup/dut} \right]$$

$$C = \prod_{k=1}^{n} \left[ \left( \frac{NI_k}{NI_{k-1}} \right)^{dup/dut} \right]$$

Onde:

n = número total de índices utilizados na Atualização Monetária IPCA, sendo "n" um número inteiro;

dup = número de Dias Úteis entre a Data de Emissão ou a última Data de Aniversário Mensal IPCA das Debêntures e a data de cálculo, limitado ao número total de Dias Úteis de vigência do índice utilizado, sendo "dup" um número inteiro;

dut = número de Dias Úteis entre a última e a próxima Data de Aniversário Mensal IPCA, sendo "dut" um número inteiro;

NIk = valor do número-índice do mês anterior ao mês de atualização, caso a atualização seja em data anterior ou na própria Data de Aniversário Mensal IPCA. Após a Data de Aniversário Mensal IPCA, valor do número-índice do mês de atualização; e

NIk-1 = valor do número-índice do mês anterior ao mês "k".

O fator resultante da expressão abaixo descrita é considerado com 8 (oito) casas decimais, sem arredondamento:

$$\left( \frac{NI_k}{NI_{k-1}} \right)^{\frac{dup}{dut}}$$

O produtório final é executado a partir do fator mais recente, acrescentando-se, em seguida, os mais remotos. Os resultados intermediários são calculados com 16 (dezesseis) casas decimais, sem arredondamento.

A aplicação do IPCA incidirá no menor período permitido pela legislação em vigor, sem necessidade de ajuste à Escritura ou qualquer outra formalidade.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

O IPCA deverá ser utilizado considerando idêntico número de casas decimais divulgado pelo IBGE.

Considera-se "Data de Aniversário Mensal IPCA" todo dia 15 de cada mês, e caso referida data não seja Dia Útil, o primeiro Dia Útil subsequente.

Considera-se como mês de atualização o período mensal compreendido entre duas datas de aniversários consecutivas das Debêntures.

Se até a Data de Aniversário Mensal IPCA das Debêntures o NIk não houver sido divulgado, deverá ser utilizado em substituição a NIk na apuração do Fator "C" um número- índice projetado calculado com base na última projeção disponível divulgada pela ANBIMA ("Número Índice Projetado" e "Projeção", respectivamente) da variação percentual do IPCA, conforme fórmula a seguir:

$$NI_{kp} = NI_{k-1} \times (1 + Projeção)$$

Onde:

NIkp = Número Índice Projetado do IPCA para o mês de atualização, calculado com 2 (duas) casas decimais, com arredondamento;

Projeção = variação percentual projetada pela ANBIMA referente ao mês de atualização;

O Número Índice Projetado será utilizado, provisoriamente, enquanto não houver sido divulgado o número índice correspondente ao mês de atualização, não sendo, porém, devida nenhuma compensação entre a Emissora e os Debenturistas quando da divulgação posterior do IPCA que seria aplicável; e

O número índice do IPCA, bem como as projeções de sua variação, deverá ser utilizado considerando idêntico número de casas decimais divulgado pelo órgão responsável por seu cálculo/apuração.

4.9.1.1. Na ausência de indisponibilidade do IPCA por prazo inferior a 5 (cinco) Dias Úteis contados da data esperada para sua apuração e/ou divulgação, será utilizado, em sua substituição, o último número-índice divulgado, calculado *pro rata temporis* por Dias Úteis, porém, não cabendo, quando da divulgação do número-índice devido, quaisquer compensações financeiras. Na ausência de apuração e/ou divulgação do IPCA por prazo igual ou superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, o IPCA deverá ser substituído pela média simples do IPCA verificada nos 12

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(doze) meses anteriores à data de homologação do Plano de Recuperação Judicial, calculado *pro rata temporis* por Dias Úteis.

4.9.2 *Atualização Monetária pela TR.* A partir do 15º (décimo quinto) ano contado da Data de Emissão, caso tenha ocorrido nos últimos [--] ([--]) anos o pagamento, pela Emissora aos Debenturistas, em valor, individual ou agregado, igual ou superior a R$ 500.000,00 (quinhentos mil reais) a título de Amortização Extraordinária Obrigatória (conforme definido abaixo) ("Amortização Extraordinária Modificadora"), a partir do segundo Dia Útil subsequente à próxima Data de Aniversário Anual (conforme definido abaixo) das Debêntures ("Data Modificadora TR") o Valor Nominal Unitário ou o saldo do Valor Nominal Unitário, conforme aplicável, das Debêntures passará a ser atualizado monetariamente pela taxa de referência instituída pela Lei nº 8.177, de 01 de março de 1991, conforme apurada e divulgada pelo Banco Central do Brasil ("TR" e "BACEN", respectivamente), desde a Data Modificadora TR (inclusive) até a Data Modificadora IPCA (conforme definido abaixo) (inclusive) ou a Data de Vencimento (inclusive), conforme o caso ("Atualização Monetária TR"), sendo o produto da Atualização Monetária TR automaticamente incorporado ao Valor Nominal Unitário das Debêntures ou, se for o caso, ao saldo do Valor Nominal Unitário das Debêntures, conforme aplicável ("Valor Nominal Unitário Atualizado TR" e, em conjunto com o Valor Nominal Unitário Atualizado IPCA, "Valor Nominal Atualizado"), calculado de forma *pro rata temporis* por Dias Úteis, conforme a fórmula abaixo:

$$VNa = VNe \times FatorTR$$

Onde:

VNa = Valor Nominal Unitário Atualizado TR calculado com 8 (oito) casas decimais, sem arredondamento;

VNe = Valor Nominal Unitário TR ou saldo do Valor Nominal Unitário TR (valor nominal remanescente após amortização de principal), conforme o caso, calculado com 8 (oito) casas decimais, sem arredondamento.

FatorTR = Produtório das Taxas Referenciais divulgadas pelo Banco Central do Brasil entre a data de emissão, início de rentabilidade, incorporação, amortização ou pagamento de atualização, o que ocorrer por último, e a data de atualização, calculado com 8 (oito) casas decimais, sem arredondamento, apurado da seguinte forma:

$$FatorTR = \prod_{k=1}^{n}\left[\left(1 + \frac{TR_k}{100}\right)^{dup_k/dut_k}\right]$$

Onde:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

n = Número total de TR´s consideradas entre a Data de Emissão, início de rentabilidade, incorporação, amortização ou pagamento de atualização, o que ocorrer por último, e a data de atualização;

$TR_k$ = Taxa Referencial das Datas-Base divulgadas pelo BACEN entre a Data de Emissão, início de rentabilidade, incorporação, amortização ou pagamento de atualização, o que ocorrer por último, e a data de atualização;

$dut_k$ = Número total de Dias Úteis para o período de vigência da $TR_k$ utilizada.;

$dup_k$ = Número de Dias Úteis compreendidos entre a data da $TR_k$ utilizada e a data do cálculo, limitado ao número de Dias Úteis total de vigência da $TR_k$

**Observações:**

1ª) Data-Base é o dia da data de vencimento das Debêntures em cada mês.
2ª) Caso o dia da Data de Emissão não seja coincidente com a correspondente Data-Base, a atualização será efetuada até a primeira Data-Base ocorrida após a Emissão, com base no critério *pro rata* Dia Útil, com utilização da TR relativa à Data de Emissão (Circular nº 2.456 de 28/07/1994 – art. 2º).
3ª) Caso as Debêntures tenham vencimento indeterminado, a Data-Base será o dia primeiro de cada mês.
4ª) Cada fator resultante da expressão $\left(1+\frac{TR_k}{100}\right)^{dup_k/dut_k}$ é considerado com 8 (oito) casas decimais, sem arredondamento. A cada novo fator incluído no produtório, este gera um fator intermediário que será considerado com 8 (oito) casas decimais, sem arredondamento.

4.9.2.1. Na ausência de indisponibilidade da TR por prazo inferior a 5 (cinco) Dias Úteis contados da data esperada para sua apuração e/ou divulgação, será utilizado, em sua substituição, o último número-índice divulgado, calculado *pro rata temporis* por Dias Úteis, porém, não cabendo, quando da divulgação do número-índice devido, quaisquer compensações financeiras. Na ausência de apuração e/ou divulgação do número-índice da TR por prazo igual ou superior a 5 (cinco) Dias Úteis após a data esperada para sua divulgação, ou, ainda, no caso de sua extinção ou por imposição legal ou determinação judicial, a TR deverá ser substituída pela média simples da TR verificada nos 12 (doze) meses anteriores à data de homologação do Plano de Recuperação Judicial, calculado *pro rata temporis* por Dias Úteis.

4.9.2.2. Anualmente, a partir da Data Modificadora TR ("Períodos de Verificação"), o Agente Fiduciário deverá verificar se houve naquele Período de Verificação o pagamento, pela Emissora aos Debenturistas, em valor, individual ou agregado, igual ou superior a R$ 500.000,00 (quinhentos mil reais) a título de Amortização Extraordinária Obrigatória ("Valor Mínimo").

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

4.9.2.3. Na medida em que se verifique a ocorrência de evento(s) de Amortização Extraordinária Obrigatória em valor igual ou superior ao Valor Mínimo nos respectivos Períodos de Verificação, o Valor Nominal Unitário Atualizado das Debêntures continuará sendo atualizado monetariamente pela TR até a Data de Vencimento.

4.9.2.4. Caso, ao final de um Período de Verificação, em determinada data de apuração, pelo Agente Fiduciário, dos valores pagos pela Emissora aos Debenturistas a título de Amortização Extraordinária Obrigatória, se verifique que não foi atingido o Valor Mínimo, o Valor Nominal Atualizado das Debêntures voltará a ser atualizado monetariamente pelo IPCA, nos termos da Cláusula 4.9.1 acima, a partir do segundo Dia Útil subsequente à próxima Data de Aniversário Anual das Debêntures ("Data Modificadora IPCA" e "Evento de Reversão IPCA", respectivamente).

4.9.2.5. Caso ocorra um Evento de Reversão IPCA, o Agente Fiduciário continuará realizando as verificações do Valor Mínimo durante os Períodos de Verificação, sendo certo que, caso a Emissora volte a realizar pagamentos para os Debenturistas, a título de Amortização Extraordinária Obrigatória, em valor igual ou superior ao Valor Mínimo em determinado Período de Verificação, novamente o Valor Nominal Atualizado das Debêntures passará a ser atualizado monetariamente pelo IPCA, a partir do segundo Dia Útil subsequente à próxima Data de Aniversário Mensal TR (conforme definido abaixo) ("Evento de Reversão TR").

4.9.2.6. Os procedimentos de verificação do Valor Mínimo pelo Agente Fiduciário e de reversão da taxa de atualização monetária das Debêntures previstos acima serão realizados até a Data de Vencimento, sendo certo que as Debêntures não poderão ser corrigidas monetariamente (i) pelo IPCA, por período inferior a 12 (doze) meses, e (ii) pela TR, por período inferior a 1 (um) mês, salvo se permitido pelas normas legais e contábeis aplicáveis.

4.9.2.7. Observado o disposto acima, verificada a ocorrência da Amortização Extraordinária Modificadora, de um Evento de Reversão IPCA ou de um Evento de Reversão TR, o Agente Fiduciário deverá comunicar tal fato à B3, por escrito, em até 1 (um) Dia Útil contado da ocorrência do respectivo evento, devendo referida comunicação informar (i) a natureza e data de ocorrência do evento, (ii) o índice/taxa de atualização monetária das Debêntures que passará a vigorar e (iii) a data em que tal índice/taxa de atualização monetária passará a incidir sobre as Debêntures.

4.9.2.8. Para fins desta Escritura, considera-se (i) "Data de Aniversário Anual" todo dia [--] de [--] de cada ano, e caso referida data não seja Dia Útil, o primeiro Dia Útil subsequente; e (ii) "Data de Aniversário Mensal TR" o último dia de cada mês contado da Data Modificadora, e caso referida data não seja Dia Útil, o primeiro Dia Útil subsequente.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**4.10. Juros Remuneratórios:** as Debêntures não farão jus ao recebimento de juros remuneratórios.

**4.11. Amortização do Valor Nominal Unitário Atualizado**: Ressalvadas as hipóteses de vencimento antecipado ou da realização de eventual Resgate Antecipado Obrigatório, Amortização Extraordinária Obrigatória e Aquisição Facultativa (conforme definidos abaixo), Valor Nominal Unitário Atualizado das Debêntures será amortizado em uma única parcela, na Data de Vencimento das Debêntures.

**4.12. Local de Pagamento:** Os pagamentos referentes às Debêntures serão realizados em conformidade com os procedimentos da B3 para as Debêntures que estejam custodiadas eletronicamente na B3 ou, caso as Debêntures não estejam custodiadas eletronicamente na B3, na sede da Emissora, ou ainda em conformidade com os procedimentos adotados pelo Escriturador, conforme aplicável.

**4.13. Prorrogação dos Prazos:** Considerar-se-ão prorrogados os prazos referentes ao pagamento de qualquer obrigação prevista nesta Escritura até o 1º (primeiro) Dia Útil subsequente, se a data do vencimento coincidir com dia em que não houver expediente bancário na cidade de [--], Estado de [--], ressalvados os casos cujos pagamentos devam ser realizados por meio da B3, hipótese em que somente haverá prorrogação quando a data de pagamento coincidir com feriado declarado nacional, sábado ou domingo, sem quaisquer acréscimos devidos aos pagamentos.

**4.14. Encargos Moratórios:** Sem prejuízo dos demais valores devidos aos Debenturistas nos termos desta Escritura, ocorrendo impontualidade no pagamento pela Emissora e pelas Fiadoras de qualquer quantia devida aos Debenturistas, os valores em atraso vencidos e não pagos pela Emissora e/ou pelas Fiadoras, serão, independentemente de aviso, notificação ou interpelação judicial ou extrajudicial, acrescidos de: (i) multa moratória, não compensatória, de 2% (dois por cento); e (ii) juros de mora de 1% (um por cento) ao mês calculados *pro rata temporis* desde a data do inadimplemento até a data do efetivo pagamento, ambos incidentes sobre o valor devido e não pago ("Encargos Moratórios").

**4.15. Decadência dos Direitos aos Acréscimos:** Sem prejuízo do disposto na Cláusula 4.14 acima, o não comparecimento do Debenturista para receber o valor correspondente a quaisquer das obrigações pecuniárias da Emissora, nas datas previstas nesta Escritura, ou em comunicado publicado pela Emissora no jornal indicado na Cláusula 4.17 abaixo, não lhe dará direito ao recebimento de Encargos Moratórios no período relativo ao atraso no recebimento, sendo-lhe, todavia, assegurados os direitos adquiridos até a data do respectivo vencimento ou pagamento.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**4.16. Repactuação Programada:** Salvo pelo disposto na Cláusula 4.9 acima, as Debêntures não serão objeto de repactuação programada.

**4.17. Publicidade:** Todos os atos e decisões a serem tomados decorrentes desta Emissão que, de qualquer forma, vierem a envolver interesses dos Debenturistas, deverão ser obrigatoriamente comunicados na forma de avisos ("Aviso aos Debenturistas") na página na Internet da Emissora, bem como comunicados, na forma de aviso, no Diário Oficial e no jornal "[--]", conforme estabelecido no artigo 289 da Lei das Sociedades por Ações, observados os prazos legais, devendo a Emissora comunicar o Agente Fiduciário a respeito de qualquer publicação na data da sua realização. A Emissora poderá alterar o jornal acima por outro jornal de grande circulação que seja adotado para suas publicações societárias, mediante comunicação por escrito ao Agente Fiduciário e publicação, na forma de aviso, no jornal a ser substituído.

4.17.1. Sem prejuízo do disposto na Cláusulas 4.17 acima, os Avisos aos Debenturistas deverão observar as limitações impostas pela Instrução CVM 476 em relação à publicidade da Oferta e os prazos legais, devendo a Emissora comunicar o Agente Fiduciário e a B3 a respeito de qualquer publicação na data da sua realização.

**4.18. Imunidade Tributária**: Caso qualquer Debenturista tenha imunidade ou isenção tributária, este deverá encaminhar ao Banco Liquidante, no prazo mínimo de 10 (dez) Dias Úteis anteriores à data prevista para recebimento de valores relativos às Debêntures, documentação comprobatória da referida imunidade ou isenção tributária, sob pena de ter descontado de seus pagamentos os valores devidos nos termos da legislação tributária em vigor.

4.18.1. O Debenturista que tenha apresentado documentação comprobatória de sua condição de imunidade ou isenção tributária, nos termos da Cláusula 4.18 acima, e que tiver essa condição alterada por disposição normativa, ou por deixar de atender as condições e requisitos porventura prescritos no dispositivo legal aplicável, ou ainda, tiver essa condição questionada por autoridade judicial, fiscal ou regulamentar competente, deverá comunicar esse fato, de forma detalhada e por escrito, ao Banco Liquidante e ao Escriturador, bem como prestar qualquer informação adicional em relação ao tema que lhe seja solicitada pelo Banco Liquidante e/ou pelo Escriturador e/ou pela Emissora.

## CLÁUSULA V
## RESGATE ANTECIPADO FACULTATIVO, AMORTIZAÇÃO EXTRAORDINÁRIA FACULTATIVA, RESGATE ANTECIPADO OBRIGATÓRIO, AMORTIZAÇÃO EXTRAORDINÁRIA OBRIGATÓRIA E AQUISIÇÃO FACULTATIVA

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

fls. 32806

**5.1. Resgate Antecipado Facultativo e Amortização Extraordinária Facultativa:** As Debêntures não serão objeto de resgate antecipado facultativo, total ou parcial, e/ou de amortização extraordinária facultativa.

**5.2. Resgate Antecipado Obrigatório:** A Emissora obriga-se a realizar o resgate antecipado obrigatório total das Debêntures, em até 30 (trinta) dias contados da data em que for informada pelo Agente Fiduciário a esse respeito, nas seguintes hipóteses ("Resgate Antecipado Obrigatório"):

(I) após decorridos 25 (vinte e cinco) anos contados da Data de Emissão, ou seja, a partir de [*data*] (inclusive) e caso a Emissora não tenha apresentado no prazo de 6 (seis) meses contados do 24º (vigésimo quarto) ano contado da Data de Emissão, ou seja, até [*data*] (inclusive), laudo elaborado por empresa de auditoria especializada e de renome, integrante de uma das quatro maiores empresas de auditoria do mundo (*big four*) ou categoria semelhante à época, demonstrando que as Recuperandas possuem capacidade de geração de caixa e/ou ativos passíveis de monetização de ao menos R$ 50.000.000,00 (cinquenta milhões de reais) até a Data de Vencimento das Debêntures; ou

(II) após decorridos 3 (três) anos contados da Data de Emissão, ou seja, a partir de [*data*] (inclusive) ("Data de Início"), caso seja verificado Caixa para Distribuição (conforme definido abaixo) em uma determinada Data de Amortização (conforme definido abaixo), em montante suficiente para resgatar a totalidade das Debêntures.

5.2.1. Por ocasião do Resgate Antecipado Obrigatório, o Debenturista fará jus ao recebimento do Valor Nominal Unitário Atualizado, acrescido de eventuais Encargos Moratórios devidos pela Emissora, não sendo devido o pagamento de nenhum prêmio adicional.

5.2.2. O Resgate Antecipado Obrigatório será realizado (a) mediante envio de comunicação individual enviada aos Debenturistas, com cópia para o Agente Fiduciário, ou publicação de Aviso aos Debenturistas, nos termos da Cláusula 4.17 acima, com 10 (dez) dias de antecedência da data em que se pretende realizar o efetivo resgate antecipado, sendo que na referida comunicação deverá constar: (i) a data de realização do Resgate Antecipado Obrigatório; (ii) menção ao valor aproximado do Resgate Antecipado Obrigatório; e (iii) outras informações necessárias à operacionalização do Resgate Antecipado Obrigatório.

5.2.3. Com relação às Debêntures que estejam custodiadas eletronicamente na B3, o Resgate Antecipado Obrigatório seguirá os procedimentos de liquidação de eventos adotados pela B3. Caso as Debêntures não estejam custodiadas eletronicamente na B3, o Resgate Antecipado Obrigatório será realizado por meio do Escriturador.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

5.2.4. A Emissora deverá informar a B3 sobre a data do Resgate Antecipado Obrigatório com ao menos 3 (três) Dias Úteis de antecedência.

5.2.5. As Debêntures objeto do Resgate Antecipado Obrigatório serão obrigatoriamente canceladas.

5.2.6. A data para realização do resgate das Debêntures que tenham sido objeto do Resgate Antecipado Obrigatório deverá, obrigatoriamente, ser um Dia Útil.

**5.3. Amortização Extraordinária Obrigatória:** A Emissora deverá, em cada Data de Amortização, conforme definido na Cláusula 5.3.1.3. abaixo, a partir da Data de Início, com recursos provenientes do Caixa para Distribuição, observados os termos e condições estabelecidos a seguir, independentemente de sua vontade, realizar a amortização extraordinária obrigatória das Debêntures, de forma equânime, simultânea e proporcional entre todos os Debenturistas, limitada a 98% (noventa e oito por cento) do Valor Nominal Unitário Atualizado das Debêntures ou saldo do Valor Nominal Unitário Atualizado das Debêntures, conforme aplicável ("Amortização Extraordinária Obrigatória"), observados os termos e condições estabelecidos abaixo.

5.3.1. Para fins de apuração da obrigação de Amortização Extraordinária Obrigatória o "Caixa para Distribuição" significa a soma de todos os montantes, recursos financeiros de liquidez imediata e aplicações financeiras desoneradas detidos em caixa por cada uma das Recuperandas, incluindo por força de alienação de ativos, recebimento de dividendos, juros sobre capital próprio, redução de capital ou qualquer outra forma de remuneração de acionistas, em razão de participações societárias detidas pelas Recuperandas em outras sociedade, nos termos do Plano de Recuperação Judicial, ou por quaisquer outras fontes de recursos, que excederem o montante de R$ 300.000.000,00 (trezentos milhões de reais), valor este que será corrigido pelo IPCA em cada ano fiscal, sendo descontados desse montante, nas apurações do Caixa para Distribuição que ocorrerem no último bimestre de cada ano fiscal (ou seja, nas apurações realizadas pelo Agente de Monitoramento nos meses de agosto, outubro e dezembro, nos termos da Cláusula 5.3.2 abaixo), os valores decorrentes de movimentações financeiras pelas Recuperandas, incluindo, mas não limitado ao aporte de recursos e a celebração de mútuos em benefício de quaisquer Recuperandas ODB que não aderiram à Consolidação Substancial das Recuperandas, os quais deverão ser utilizados exclusivamente para (a) o cumprimento das obrigações contratadas nos respectivos planos de recuperação judicial das Recuperandas ODB que não aderiram à Consolidação Substancial das Recuperandas e ao pagamento de despesas gerais e administrativas, tais como obrigações e despesas de manutenção das atividades, despesas com fornecedores e assessores e despesas fiscais, desde que tais transações não excedam o montante global de R$ 80.000.000,00 (oitenta milhões de reais) e respeitem a alocação descrita no Anexo III a esta Escritura, conforme verificado pelo Agente de

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Monitoramento; ou (b) os pagamentos previstos na Cláusula 5.3.1.2 abaixo, apenas nos seus respectivos prazos.

5.3.1.1. Não estão incluídos no conceito de Caixa para Distribuição:

(i) os Recursos para Pagamento de Despesas Ordinárias (conforme definido abaixo) (i.a) recebidos até 31 de dezembro de 2022 que não tenham sido utilizados e estejam disponíveis na respectiva Data de Amortização, ou (i.b) cuja liberação esteja contratada, porém ainda não tenham sido disponibilizado às Recuperandas até respectiva Data de Amortização;

(ii) se aplicável, até a Data de Início ou prazo superior, conforme aprovado pelos Debenturistas em assembleia geral, as despesas de venda, fiscais e tributárias decorrentes de alienações de ativos das Recuperandas materializadas até a data de apuração, bem como as não materializadas que possam ser estimadas em razão das obrigações contratadas até a data de apuração, que excederem os recursos líquidos recebidos ou a serem recebidos pelas Recuperandas provenientes da referida alienação de ativos; e

(iii) conforme aplicável e sempre de acordo com os termos previstos no Plano de Recuperação Judicial, (i) os valores devidos no âmbito do Plano de Recuperação Judicial aos titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento (conforme definido no Plano de Recuperação Judicial) que não subscreveram as Debêntures objeto da Emissão, (ii) os pagamentos devidos aos titulares de Créditos Quirografários Não Financeiros Opção B (conforme definido no Plano de Recuperação Judicial), nos termos previstos na Cláusula 3.3.2.2.1.2 do Plano de Recuperação Judicial, até o limite agregado de R$ 150.000.000,00 (cento e cinquenta milhões de reais) ou até 31 de dezembro de 2025, o que ocorrer primeiro e (iii) os valores devidos às Recuperandas, conforme regra de utilização do Caixa para Distribuição prevista na Cláusula 1.1.119, item (ii), do Plano de Recuperação Judicial.

5.3.1.2. Para que não restem dúvidas, todos recursos referentes aos eventos descritos no item (ii) da Cláusula 5.3.1.1 acima, incluindo os recursos líquidos provenientes da referida alienação de ativos a serem recebidos pelas Recuperandas, ficarão reservados até a materialização das obrigações ali descritas ou até o encerramento do prazo de 18 (dezoito) meses contados da Data de Início, o que ocorrer primeiro, não integrando o Caixa para Distribuição para fins da Cláusula 5.3.1. Caso tais obrigações não se materializem, a integralidade dos montantes retidos pelas Recuperandas deverá ser utilizada para a Amortização Extraordinária Obrigatória das Debêntures e a amortização extraordinária obrigatória dos instrumentos celebrados pelos titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, nos termos previstos nesta Escritura e no Plano de Recuperação Judicial.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

5.3.1.3. Para fins desta Escritura, "Datas de Amortização": serão as datas em que ocorrerá a Amortização Extraordinária Obrigatória das Debêntures que sempre deverão ocorrer até o último Dia Útil dos meses de janeiro, março, maio, julho, setembro e novembro.

5.3.1.4. Para fins desta Escritura, "Recursos para Pagamento de Despesas Ordinárias": significa todo e qualquer valor recebido pelas Recuperandas decorrentes de eventuais garantias fiduciárias e disponibilizados às Recuperandas e às Recuperandas ODB que não aderiram à Consolidação Substancial das Recuperandas pelos respectivos credores, conforme previsto no Plano de Recuperação Judicial, limitado ao montante global de R$ 1.000.000.000,00 (um bilhão de reais), que deverá ser aplicado prioritariamente na manutenção ordinária das atividades das Recuperandas, no pagamento de despesas gerais e administrativas e no cumprimento das obrigações de pagamento dos créditos trabalhistas, Credores Quirografários Não Financeiros – Dinheiro e créditos ME/EPP, conforme previsto no Plano de Recuperação Judicial.

5.3.2. A apuração do Caixa para Distribuição será feita pelo Agente de Monitoramento, a partir da Data de Início, sempre no dia [--] dos meses de fevereiro, abril, junho, agosto, outubro e dezembro (cada uma dessas datas uma "Data de Verificação"), com base em relatório mensal gerencial de fechamento contábil contemplando o saldo do caixa consolidado das Recuperandas, a ser enviado pela Emissora ao Agente de Monitoramento ao final de cada mês ("Relatório Gerencial", respectivamente) ou em prazo inferior, sempre que solitcitado pelo Agente de Monitoramento, mediante envio de comunicação às Recuperandas, que deverá ser respondida com as informações solicitadas no prazo de 10 (dez) Dias Úteis contados do recebimento pelas Recuperandas da referida comunicação. O Agente de Monitoramento deverá comunicar ao Agente Fiduciário, no prazo de até [10 (dez) Dias Úteis] contados da Data de Verificação, o Caixa para Distribuição que será destinado à Amortização Extraordinária Obrigatória das Debêntures, se houver. Por sua vez, o Agente Fiduciário deverá, no prazo de até [5 (cinco)] Dias Úteis contados da data em que for comunicado pelo Agente de Monitoramento, verificar as informações fornecidas a ele e aplicar o disposto na Cláusula 5.3.3 abaixo.

5.3.3. Caso seja apurada a existência de Caixa para Distribuição, a Emissora deverá realizar a Amortização Extraordinária Obrigatória das Debêntures na próxima Data de Amortização imediatamente posterior à Data de Verificação em que foi apurado o Caixa para Distribuição.

5.3.4. Caso seja apurada a existência de Caixa para Distribuição, a Emissora deverá enviar, no Dia Útil subsequente à respectiva Data de Verificação, notificação escrita aos Debenturistas, com cópia para o Agente Fiduciário, a B3 e o Banco Liquidante,

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

comunicando a realização da Amortização Extraordinária Obrigatória ("Comunicação de Amortização Extraordinária Obrigatória").

5.3.5. Na Comunicação de Amortização Extraordinária Obrigatória deverá constar: (i) a Data de Amortização e o procedimento de Amortização Extraordinária Obrigatória, observada a legislação pertinente, bem como os termos, condições e prazos estabelecidos nesta Escritura; (ii) o percentual do Valor Nominal Atualizado a ser amortizado por Debênture; e (iii) as demais informações consideradas relevantes pela Emissora para conhecimento dos Debenturistas a respeito da Amortização Extraordinária Obrigatória.

5.3.6. Por ocasião da Amortização Extraordinária Obrigatória, os Debenturistas farão jus ao pagamento do percentual do Valor Nominal Unitário Atualizado a ser amortizado, acrescido de eventuais Encargos Moratórios devidos pela Emissora.

5.3.7. A Emissora deverá informar a B3 sobre a data da Amortização Extraordinária Obrigatória com ao menos 3 (três) Dias Úteis de antecedência.

5.3.8. A data para realização da Amortização Extraordinária Obrigatória das Debêntures deverá, obrigatoriamente, ser um Dia Útil.

**5.4. Oferta de Resgate Antecipado:** A Emissora não poderá realizar oferta de resgate antecipado.

**5.5. Aquisição Facultativa:** A Emissora poderá, a qualquer tempo, adquirir Debêntures desde que observe o disposto no artigo 55, parágrafo 3º, da Lei das Sociedades por Ações, nos artigos 13 e 15 da Instrução CVM 476 e na regulamentação aplicável da CVM, devendo tal fato, se assim exigido pelas disposições legais e regulamentares aplicáveis, constar do relatório da administração e das demonstrações financeiras da Emissora. As Debêntures adquiridas pela Emissora poderão, a critério da Emissora, ser canceladas, permanecer em tesouraria ou ser novamente colocadas no mercado. As Debêntures adquiridas pela Emissora para permanência em tesouraria nos termos desta Cláusula 5.5, se e quando recolocadas no mercado, farão jus à mesma Remuneração aplicável às demais Debêntures.

**5.6. Agente de Monitoramento:** Observado o disposto no Plano de Recuperação Judicial, o desempenho financeiro consolidado das Recuperandas será acompanhado pela [--], na qualidade de responsável pelo acompanhamento das atividades das Recuperandas ("Agente de Monitoramento"), de acordo com os termos e condições previstos no instrumento de contratação do Agente de Monitoramento a ser celebrado entre as Recuperandas e o Agente de Monitoramento, observado o disposto na Cláusula 5.3.2 acima.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

5.6.1. São obrigações do Agente de Monitoramento, sem prejuízo de outras que vierem a ser estabelecidas contratualmente:

(i) divulgar as informações necessárias para compor o montante de Caixa para Distribuição que será destinado à Amortização Extraordinária Obrigatória das Debêntures;

(ii) verificar e ratificar o Caixa Disponível (conforme definido no Plano de Recuperação Judicial) o Caixa para Distribuição e as regras de utilização do Caixa para Distribuição previstas no Plano de Recuperação Judicial, com base no Relatório Gerencial e demais documentos que sejam considerados necessários pelo Agente de Monitoramento que deverão ser fornecidos pelas Recuperandas como, por exemplo, extratos bancários;

(iii) monitorar os pagamentos e amortizações previstas na presente Escritura;

(iv) monitorar a materialização de créditos elegíveis para subscrição de Debêntures posteriores à Data de Emissão das Debêntures; e

(v) divulgar relatórios mensais consolidando as informações referentes às atribuições previstas nos itens anteriores.

**CLÁUSULA VI**
**VENCIMENTO ANTECIPADO**

6.1. Observado o disposto nas Cláusulas 6.2 e 6.3 abaixo, o Agente Fiduciário poderá considerar antecipadamente vencidas todas as obrigações constantes desta Escritura e exigir o imediato pagamento, pela Emissora e pelas Fiadoras, conforme o caso, do Valor Nominal Unitário Atualizado, até a data do efetivo pagamento, sem prejuízo do pagamento dos Encargos Moratórios, quando for o caso, e de quaisquer outros valores eventualmente devidos pela Emissora nos termos desta Escritura, independentemente de aviso, interpelação ou notificação, judicial ou extrajudicial, na ciência da ocorrência das seguintes hipóteses (cada uma, um "Evento de Inadimplemento"):

(i) inadimplemento, pela Emissora e/ou pelas Fiadoras, de qualquer obrigação pecuniária relativa às Debêntures e/ou prevista nesta Escritura, não sanado no prazo de até 3 (três) Dias Úteis contados da respectiva data de pagamento prevista nesta Escritura;

(ii) inadimplemento, pela Emissora, de qualquer obrigação não pecuniária prevista

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

nesta Escritura e/ou no Plano de Recuperação Judicial, sendo certo que (a) tal inadimplemento estará sujeito ao prazo de cura aplicável conforme previsto nesta Escritura, ou ainda na legislação ou na regulamentação em vigor; (b) caso não exista prazo de cura específico nesta Escritura, tal inadimplemento estará sujeito a prazo de cura de até 30 (trinta) Dias Úteis contados da data em que for notificada sobre referido inadimplemento;

(iii) declaração de invalidade, nulidade ou inexequibilidade desta Escritura por decisão judicial proferida em segunda instância, salvo na hipótese de ser obtido efeito suspensivo para referida decisão, observado que todos eventuais recursos que teriam sido destinados aos Debenturistas durante a ocorrência do presente Evento de Inadimplemento mas que não tenham sido em virtude do presente Evento de Inadimplemento deverão permanecer retidos até a efetiva cura do presente Evento de Inadimplemento para posterior distribuição aos Debenturistas;

(iv) cessão, promessa de cessão ou qualquer forma de transferência ou promessa de transferência a terceiros, no todo ou em parte, pela Emissora, de qualquer de suas obrigações nos termos desta Escritura, sem a prévia anuência dos Debenturistas;

(v) (a) liquidação, dissolução ou extinção da Emissora; (b) decretação de falência da Emissora por sentença judicial transitada em julgado; ou (c) pedido de autofalência formulado pela Emissora, independentemente do deferimento do pedido;

(vi) transformação da forma societária da Emissora de sociedade por ações para sociedade limitada, nos termos dos artigos 220 a 222 da Lei das Sociedades por Ações;

(vii) alteração do objeto social da Emissora, conforme disposto em seu estatuto social vigente na Data de Emissão, exceto se (a) previamente autorizado por Debenturistas; ou (b) não resultar em alteração substancial das atividades da Emissora;

(viii) incorporação, fusão ou cisão da Emissora sem a prévia anuência dos Debenturistas, exceto pelas reorganizações societárias envolvendo a Emissora necessárias para o cumprimento das determinações constantes do Plano de Recuperação Judicial;

(ix) comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer das declarações prestadas pela Emissora nesta Escritura é falsa, desde que tal falsidade acarrete um Efeito Adverso Relevante (conforme abaixo definido);

(x) sem prejuízo do disposto no item (ix) imediatamente anterior, comprovação, atestada em decisão judicial sem efeito suspensivo, de que qualquer declaração feita pela Emissora nesta Escritura relativas a questões de prática de corrupção é falsa;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(xi) proferimento de sentença condenatória judicial sem efeito suspensivo, em razão da prática, pela Emissora, de atos que importem trabalho infantil, trabalho análogo ao escravo e/ou proveito criminoso da prostituição;

(xii) inadimplemento de qualquer obrigação pecuniária constante de quaisquer Instrumentos de Pagamento (conforme definido no Plano de Recuperação Judicial), observados os respectivos prazos de cura previstos em referidos instrumentos; ou

(xiii) decretação de vencimento antecipado de quaisquer Instrumentos de Pagamento.

6.2. A Emissora poderá, a qualquer momento durante o prazo das Debêntures, convocar Assembleia Geral de Debenturistas para discussão e deliberação de renúncia prévia (*waiver*) para a ocorrência de qualquer Evento de Inadimplemento, sendo certo que referida renúncia prévia (*waiver*) só será concedido caso haja aprovação de Debenturistas titulares de, no mínimo, 50% (cinquenta por cento) mais 1 (uma) das Debêntures em Circulação, em primeira convocação, ou maioria simples dos presentes em assembleia geral de Debenturistas, em segunda convocação.

6.3. Na ocorrência dos Eventos de Inadimplemento previstos na Cláusula 6.1 acima, o Agente Fiduciário deverá convocar, no prazo máximo de 2 (dois) Dias Úteis contados da data em que tiver ciência de sua ocorrência, Assembleia Geral de Debenturistas, a se realizar de acordo com os prazos estabelecidos na Cláusula 9 abaixo.

6.3.1. A Emissora se obriga a notificar o Agente Fiduciário em até 2 (dois) Dias Úteis da data em que tomar ciência da ocorrência de qualquer Evento de Inadimplemento descrito na cláusula 6.1 acima.

6.4. Se, na Assembleia Geral de Debenturistas mencionada na Cláusula 6.3 acima, Debenturistas representando, no mínimo, 50% (cinquenta por cento) mais 1 (uma) das Debêntures em Circulação, em primeira convocação, ou maioria simples dos presentes em Assembleia Geral de Debenturistas, em segunda convocação, decidirem por não considerar o vencimento antecipado das obrigações decorrentes das Debêntures, o Agente Fiduciário não deverá declarar o vencimento antecipado das obrigações decorrentes das Debêntures. Em caso de não instalação, em segunda convocação, da referida Assembleia Geral de Debenturistas, o Agente Fiduciário deverá, imediatamente, declarar o vencimento antecipado das obrigações decorrentes das Debêntures.

6.5. Na ocorrência do vencimento antecipado das obrigações decorrentes das Debêntures, a Emissora se obriga a pagar o Valor Nominal Unitário Atualizado, sem prejuízo do pagamento dos Encargos Moratórios, quando for o caso, e de quaisquer outros valores eventualmente devidos pela Emissora nos termos desta Escritura, no prazo de até 3 (três) Dias Úteis contados da data do recebimento da comunicação

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

enviada pelo Agente Fiduciário acerca do vencimento antecipado, sob pena de pagamento dos Encargos Moratórios.

6.6. Uma vez vencidas antecipadamente as Debêntures, o Agente Fiduciário deverá enviar notificação à Emissora e à B3 imediatamente após o vencimento antecipado das Debêntures.

**CLÁUSULA VII**
**OBRIGAÇÕES ADICIONAIS DA EMISSORA**

7.1. Sem prejuízo das demais obrigações previstas nesta Escritura e na legislação e regulamentação aplicáveis, enquanto o saldo devedor das Debêntures não for integralmente pago, a Emissora obriga-se, ainda, a:

(i) fornecer ao Agente Fiduciário:

(i.1) bem como disponibilizar em sua respectiva página na Internet (www.[--]), na data em que ocorrer o primeiro entre o decurso de 90 (noventa) dias contados da data de término de cada exercício social ou a data da efetiva divulgação, cópia das demonstrações financeiras consolidadas da Emissora auditadas por auditor independente registrado na CVM, relativas ao respectivo exercício social, preparadas de acordo com os princípios contábeis determinados pela legislação e regulamentação em vigor ("Demonstrações Financeiras Consolidadas Auditadas");

(i.2) declaração anual firmada por diretores da Emissora, na forma do seu estatuto social, atestando: (1) que permanecem válidas as disposições contidas na Escritura, (2) acerca da não ocorrência de qualquer Evento de Inadimplemento e inexistência de descumprimento de obrigações da Emissora perante os Debenturistas; (3) que não foram praticados atos em desacordo com seu estatuto social e (4) acerca do cumprimento de todas as obrigações do Plano de Recuperação Judicial;

(i.3) os Avisos aos Debenturistas no prazo de até 5 (cinco) Dias Úteis contados da data em que forem publicados;

(i.4) em até 5 (cinco) Dias Úteis após sua ciência, (1) informações a respeito da ocorrência de qualquer Evento de Inadimplemento; ou (2) envio de cópia de qualquer correspondência ou notificação, judicial ou extrajudicial, recebida pela Emissora, relacionada a um Evento de Inadimplemento; ou (3) informações a respeito da ocorrência de qualquer evento ou situação que possa causar (3.1) qualquer efeito adverso relevante na situação (financeira ou de outra natureza), nos negócios, nos bens, nos resultados operacionais e/ou nas perspectivas da Emissora (inclusive decorrentes de impactos negativos de caráter reputacional ou de imagem); e/ou (3.2) qualquer efeito

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

adverso na capacidade da Emissora de cumprir qualquer de suas obrigações nos termos desta Escritura e/ou na situação financeiras, nos negócios, nos bens e nos resultados operacionais da Emissora ("Efeito Adverso Relevante");

(i.5) no prazo de até 5 (cinco) Dias Úteis contados da data de recebimento da respectiva solicitação, resposta a eventuais dúvidas do Agente Fiduciário sobre qualquer informação que lhe venha a ser razoavelmente solicitada;

(i.6) via original desta Escritura e de eventuais aditamentos, devidamente arquivadas na Junta Comercial e registradas nos RTDs, em até 5 (cinco) dias contados da data do respectivo registro, nos termos da Cláusula 2.4.1 acima; e

(i.7) via original arquivada na Junta Comercial dos atos societários e reuniões dos Debenturistas com relação à Emissão das Debêntures, em até 5 (cinco) dias contados da data do respectivo registro;

(ii) manter válidas e regulares as licenças, concessões e/ou aprovações necessárias ao seu regular funcionamento, conforme aplicável, na forma e prazo exigidos pela legislação e regulamentação aplicáveis, exceto aquelas cuja perda, revogação ou cancelamento não resulte em um Efeito Adverso Relevante;

(iii) cumprir, em todos os aspectos materiais, as leis, regras, regulamentos, normas administrativas e determinações dos órgãos governamentais, autarquias ou tribunais, aplicáveis à condução de seus negócios, em qualquer jurisdição na qual realize negócios ou possua ativo, exceto por aquelas leis, regras, regulamentos, normas administrativas e determinações dos órgãos governamentais, autarquias ou tribunas que estejam sendo questionados de boa-fé pela Emissora ou cujo descumprimento não cause um Efeito Adverso Relevante;

(iv) contratar e manter contratados, às suas expensas, os prestadores de serviços inerentes às obrigações previstas nesta Escritura, incluindo o Agente Fiduciário, o Banco Mandatário, o Escriturador e o sistema de negociação das Debêntures no mercado secundário;

(v) convocar, nos termos da Cláusula 9.1 abaixo, Assembleias Gerais de Debenturistas para deliberar sobre qualquer das matérias que direta ou indiretamente se relacionem com a presente Emissão, caso o Agente Fiduciário deva fazer, nos termos desta Escritura, mas não o faça;

(vi) sem prejuízo das demais obrigações previstas acima ou de outras obrigações expressamente previstas na regulamentação em vigor e nesta Escritura, nos termos do artigo 17 da Instrução CVM 476, quais sejam: (a) preparar demonstrações financeiras de encerramento de exercício e, se for o caso, demonstrações consolidadas, em

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

conformidade com a Lei das Sociedades por Ações e com a regulamentação da CVM; (b) submeter suas demonstrações financeiras a auditoria, por auditor registrado na CVM; (c) divulgar, até o dia anterior ao início das negociações, as demonstrações financeiras, acompanhadas de notas explicativas e do relatório dos auditores independentes, relativas aos 3 (três) últimos exercícios sociais encerrados, exceto quando o emissor não as possua por não ter iniciado suas atividades previamente ao referido período; (d) divulgar as demonstrações financeiras subsequentes, acompanhadas de notas explicativas e relatório dos auditores independentes, dentro de 3 (três) meses contados do encerramento do exercício social; (e) observar as disposições da Instrução da CVM nº 358, de 03 de janeiro de 2002, conforme alterada ("Instrução CVM 358"), no tocante ao dever de sigilo e vedações à negociação; (f) divulgar a ocorrência de fato relevante, conforme definido pelo art. 2º da Instrução CVM 358; (g) fornecer as informações solicitadas pela CVM; e (h) divulgar em sua página na rede mundial de computadores o relatório anual e demais comunicações enviadas pelo Agente Fiduciário de longo prazo e pelo agente fiduciário na mesma data do seu recebimento, observado ainda o disposto no inciso (d) acima;

(vii) não praticar quaisquer atos em desacordo com o seu estatuto social e com a presente Escritura, em especial os que possam, direta ou indiretamente, comprometer o pontual e integral cumprimento das obrigações assumidas pela Emissora perante a comunhão de Debenturistas;

(viii) manter as Debêntures registradas para negociação no mercado secundário durante o prazo de vigência das Debêntures, arcando com os custos do referido registro;

(ix) cumprir com todas as determinações emanadas da CVM e pela B3, com o envio de documentos, prestando, ainda, as informações que lhes forem solicitadas pela CVM e/ou pela B3;

(x) cumprir as obrigações assumidas no âmbito do Plano de Recuperação Judicial;

(xi) cumprir todas as obrigações previstas na presente Escritura, incluindo, sem limitação, a obrigação de realizar o Resgate Obrigatório das Debêntures, nos termos da Cláusula 5.2 acima;

(xii) manter sempre válidas, eficazes, em perfeita ordem e em pleno vigor, todas as autorizações necessárias à assinatura desta Escritura e ao cumprimento de todas as obrigações aqui previstas;

(xiii) contratar e manter contratados, durante a vigência desta Escritura, o Agente de Monitoramento, que exercerá suas funções conforme escopo definido no instrumento que dispor sobre sua contratação, observado o disposto no Plano de Recuperação Judicial e na presente Escritura; e

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(xiv) em caso de renúncia e/ou destituição do Agente de Monitoramento, por qualquer motivo, contratar novo prestador de serviço para exercer as funções atribuídas ao Agente de Monitoramento, no prazo máximo de 30 (trinta) dias contados da data de renúncia e/ou destituição do Agente de Monitoramento.

## CLÁUSULA VIII
## AGENTE FIDUCIÁRIO

### 8.1. Nomeação

8.1.1. A Emissora constitui e nomeia a **[*Agente Fiduciário*]**, qualificada no preâmbulo desta Escritura, como Agente Fiduciário, representando os Debenturistas, a qual, neste ato e pela melhor forma de direito, aceita a nomeação para, nos termos da lei e da presente Escritura, representar perante a Emissora a comunhão dos Debenturistas.

### 8.2. Declaração

8.2.1. O Agente Fiduciário declara, neste ato, sob as penas da lei:

(i) não ter qualquer impedimento legal, conforme artigo 66, parágrafo 3º da Lei das Sociedades por Ações, e o artigo 6 da Instrução CVM nº 583, de 20 de dezembro de 2016 ("Instrução CVM 583"), para exercer a função que lhe é conferida;

(ii) aceitar a função que lhe é conferida, assumindo integralmente os deveres e atribuições previstos na legislação específica e nesta Escritura;

(iii) conhecer e aceitar integralmente a presente Escritura, todas as suas cláusulas e condições;

(iv) não ter qualquer ligação com a Emissora que o impeça de exercer suas funções;

(v) estar ciente da regulamentação aplicável emanada do Banco Central do Brasil e da CVM, incluindo a Circular do Banco Central do Brasil nº 1.832, de 31 de outubro de 1990;

(vi) estar devidamente autorizado a celebrar esta Escritura e a cumprir com suas obrigações aqui previstas, tendo sido satisfeitos todos os requisitos legais e societários necessários para tanto;

(vii) não se encontrar em nenhuma das situações de conflito de interesse previstas no artigo 6º da Instrução CVM 583;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(viii) estar devidamente qualificado a exercer as atividades de Agente Fiduciário, nos termos da regulamentação aplicável vigente;

(ix) ser instituição financeira, estando devidamente organizado, constituído e existente de acordo com as leis brasileiras;

(x) que esta Escritura constitui uma obrigação legal, válida, vinculativa e eficaz do Agente Fiduciário, exequível de acordo com os seus termos e condições;

(xi) que a celebração desta Escritura e o cumprimento de suas obrigações aqui previstas não infringem qualquer obrigação anteriormente assumida pelo Agente Fiduciário;

(xii) que [não atua, nesta data, como agente fiduciário em outras emissões de debêntures da Emissora] {OU} [que atua, na data de assinatura da presente Escritura, como agente fiduciário nas seguintes emissões de valores mobiliários da Emissora e de sociedades coligadas, controladas, controladoras ou integrantes do seu grupo econômico: [--];

(xiii) assegura e assegurará, nos termos do parágrafo 1° do artigo 6º da Instrução CVM 583, tratamento equitativo a todos os Debenturistas, respeitadas as garantias, as obrigações e os direitos específicos atribuídos aos respectivos Debenturistas de cada emissão ou série;

(xiv) que a pessoa que o representa na assinatura desta Escritura tem poderes bastantes para tanto; e

(xv) que verificou a consistência das demais informações contidas nesta Escritura, por meio das informações e documentos fornecidos pela Emissora, sendo certo que o Agente Fiduciário não efetuou qualquer tipo de verificação independente ou adicional.

8.2.2. O Agente Fiduciário exercerá suas funções a partir da data de assinatura desta Escritura ou de eventual aditamento relativo à sua substituição, devendo permanecer no exercício de suas funções até a Data de Vencimento ou, caso ainda restem obrigações da Emissora nos termos desta Escritura inadimplidas após a Data de Vencimento, até que todas as obrigações da Emissora nos termos desta Escritura sejam integralmente cumpridas, ou, ainda, até sua efetiva substituição, conforme Cláusula 8.3 abaixo.

8.2.3. O Agente Fiduciário não emitirá qualquer tipo de opinião ou fará qualquer juízo sobre a orientação acerca de qualquer fato da Emissão que seja de competência de definição pelos Debenturistas, comprometendo-se tão somente a agir em conformidade com as instruções que lhe forem transmitidas pelos Debenturistas. Neste sentido, o

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Agente Fiduciário não possui qualquer responsabilidade sobre o resultado ou sobre os efeitos jurídicos decorrentes do estrito cumprimento das orientações dos Debenturistas a ele transmitidas conforme definidas nos termos desta Escritura e reproduzidas perante a Emissora, independentemente de eventuais prejuízos que venham a ser causados em decorrência disto aos Debenturistas e/ou à Emissora. A atuação do Agente Fiduciário limita-se ao escopo da Instrução CVM 583 e dos artigos aplicáveis da Lei das Sociedades por Ações, estando este isento, sob qualquer forma ou pretexto, de qualquer responsabilidade adicional que não tenha decorrido da legislação aplicável.

8.2.4. Sem prejuízo do dever de diligência do Agente Fiduciário, o mesmo assumirá que os documentos originais ou cópias autenticadas de documentos encaminhados pela Emissora ou por terceiros a seu pedido não foram objeto de fraude ou adulteração. Não será ainda, sob qualquer hipótese, responsável pela elaboração de documentos societários da Emissora, que permanecerão sob obrigação legal e regulamentar da Emissora elaborá-los, nos termos da legislação aplicável.

8.2.5. Os atos ou manifestações por parte do Agente Fiduciário, que criarem responsabilidade para os Debenturistas e/ou exonerarem terceiros de obrigações para com eles, bem como aqueles relacionados ao devido cumprimento das obrigações assumidas neste instrumento, somente serão válidos quando previamente assim deliberado em Assembleia Geral de Debenturistas (conforme abaixo definido).

**8.3. Substituição**

8.3.1. Nas hipóteses de impedimentos temporários, renúncia, intervenção, liquidação judicial ou extrajudicial, falência, ou qualquer outro caso de vacância do Agente Fiduciário, será realizada, dentro do prazo máximo de 30 (trinta) dias contados do evento que a determinar, Assembleia Geral de Debenturistas (conforme abaixo definido) para a escolha do novo agente fiduciário, a qual poderá ser convocada pelo próprio Agente Fiduciário a ser substituído, pela Emissora ou por Debenturistas que representem 10% (dez por cento), no mínimo, das Debêntures em Circulação. Em casos excepcionais, a CVM pode proceder à convocação da assembleia para a escolha de novo agente fiduciário ou nomear substituto provisório. Na hipótese da convocação não ocorrer em até 15 (quinze) dias antes do término do prazo acima citado, caberá à Emissora efetuá-la, observado o prazo de 15 (quinze) dias para a primeira convocação e 8 (oito) dias para a segunda convocação, sendo certo que a CVM poderá nomear substituto provisório enquanto não se consumar o processo de escolha do novo agente fiduciário.

8.3.2. Na hipótese de não poder o Agente Fiduciário continuar a exercer as suas funções por circunstâncias supervenientes a esta Escritura, inclusive no caso do item (iv) da Cláusula 8.4.1. abaixo, o Agente Fiduciário deverá comunicar imediatamente o

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

fato aos Debenturistas e à Emissora, mediante convocação de Assembleia Geral de Debenturistas, solicitando sua substituição.

8.3.3. É facultado aos Debenturistas, a qualquer tempo após o encerramento da distribuição pública, proceder à substituição do Agente Fiduciário e à indicação de seu substituto, em condições de mercado, escolhido pela Emissora a partir da lista tríplice apresentada pela Assembleia Geral de Debenturistas especialmente convocada para esse fim. A substituição, em caráter permanente, do Agente Fiduciário deve ser comunicada à CVM no prazo de até 7 (sete) Dias Úteis contados do registro do aditamento à Escritura na Junta Comercial, o qual deverá ocorrer em até 30 (trinta) dias da sua celebração.

8.3.4. O Agente Fiduciário entrará no exercício de suas funções a partir da data de assinatura desta Escritura ou de eventual aditamento relativo à sua substituição, no caso de agente fiduciário substituto, devendo permanecer no exercício de suas funções até a efetiva substituição ou até o cumprimento de todas as suas obrigações decorrentes desta Escritura e da legislação em vigor.

8.3.5. O Agente Fiduciário, se substituído nos termos desta Cláusula 8.3, sem qualquer custo adicional para a Emissora ou para os Debenturistas, deverá colocar à disposição da instituição que vier a substituí-lo, no prazo de até 10 (dez) Dias Úteis antes de sua efetiva substituição, cópia de todos os registros, relatórios, extratos, bancos de dados e demais informações sobre a Emissão e sobre a Emissora que tenham sido obtidos, gerados, preparados ou desenvolvidos pelo Agente Fiduciário ou por qualquer de seus agentes envolvidos, direta ou indiretamente, com a Emissão ou que quaisquer das pessoas acima referidas tenham tido acesso por força da execução de suas funções, independentemente do meio em que as mesmas estejam armazenadas ou disponíveis, de forma que a instituição substituta cumpra, sem solução de continuidade, os deveres e as obrigações do Agente Fiduciário substituído, nos termos desta Escritura.

8.3.6. Caso ocorra a efetiva substituição do Agente Fiduciário, esse substituto receberá a mesma remuneração recebida pelo Agente Fiduciário em todos os seus termos e condições, sendo que a primeira parcela anual devida ao substituto será calculada *pro rata temporis*, a partir da data de início do exercício de sua função como agente fiduciário. Esta remuneração poderá ser alterada de comum acordo entre a Emissora e o agente fiduciário substituto, desde que previamente aprovada pela Assembleia Geral de Debenturistas (conforme abaixo definido).

8.3.7. Em qualquer hipótese, a substituição do Agente Fiduciário deverá ser comunicada à CVM no prazo de até 7 (sete) Dias Úteis contados do registro do aditamento à presente Escritura, nos termos da Cláusula 8.3.3. acima, devendo ser encaminhados os documentos e demais informações exigidas pelo *caput* e pelo

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

parágrafo 1º do art. 5º da Instrução da CVM nº 583, de 20 de dezembro de 2016, conforme alterada ("Instrução CVM 583") à B3 no mesmo prazo.

8.3.8. Aplicam-se às hipóteses de substituição do Agente Fiduciário as normas e preceitos a respeito emanados da CVM.

**8.4. Obrigações**

8.4.1. Além de outros previstos em lei, em ato normativo da CVM e nesta Escritura, constituem obrigações do Agente Fiduciário:

(i) exercer suas atividades com boa-fé, transparência e lealdade perante os Debenturistas;

(ii) responsabilizar-se integralmente pelos serviços contratados, nos termos da legislação vigente;

(iii) proteger os direitos e interesses dos Debenturistas, empregando no exercício da função o cuidado e a diligência com que todo homem ativo e probo emprega na administração de seus próprios bens;

(iv) renunciar à função, na hipótese de superveniência de conflitos de interesses ou de qualquer outra modalidade de inaptidão e realizar a imediata convocação da Assembleia Geral de Debenturistas prevista no art. 7° da Instrução CVM 583 para deliberar sobre sua substituição;

(v) conservar em boa guarda toda a documentação relativa ao exercício de suas funções;

(vi) verificar, no momento de aceitar a função, a veracidade das informações relativas a eventuais garantias e à consistência das demais informações contidas nesta Escritura, diligenciando para que sejam sanadas as omissões, falhas ou defeitos de que tenha conhecimento;

(vii) diligenciar junto à Emissora para que a Escritura e seus aditamentos sejam registrados nos órgãos competentes, adotando, no caso da omissão da Emissora, as medidas eventualmente previstas em lei;

(viii) diligenciar junto ao emissor para que a Escritura e seus aditamentos sejam registrados nos órgãos competentes, adotando, no caso da omissão da Emissora, as medidas eventualmente previstas em lei;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(ix) acompanhar a prestação das informações periódicas pela Emissora e alertar aos Debenturistas, no relatório anual de que trata o artigo 15 da Instrução CVM 583, sobre inconsistências ou omissões de que tenha conhecimento;

(x) opinar sobre a suficiência das informações prestadas nas propostas de modificação das condições das Debêntures;

(xi) solicitar, quando julgar necessário para o fiel cumprimento de suas funções ou se assim solicitado pelos Debenturistas, certidões atualizadas dos distribuidores cíveis, das Varas de Fazenda Pública, Cartórios de Protesto, das Varas do Trabalho, Procuradoria da Fazenda Pública, da localidade onde se situe o bem dado em garantia ou o domicílio ou sede da Emissora;

(xii) convocar, quando necessário, a Assembleia Geral de Debenturistas, nos termos da Cláusula 9.1.2 abaixo;

(xiii) comparecer à Assembleia Geral de Debenturistas a fim de prestar as informações que lhe forem solicitadas;

(xiv) elaborar o relatório anual destinado aos Debenturistas, nos termos do artigo 15 da Instrução CVM 583 acerca da observância da periodicidade na prestação de informações obrigatórias, alertando os Debenturistas acerca de eventuais inconsistências, omissões ou inverdades, o qual deverá conter, ao menos, as informações descritas no Anexo 15 da Instrução CVM 583. Para tanto, a Emissora enviará o organograma, os atos societários e todos os documentos necessários à realização do relatório que venham a ser solicitados pelo Agente Fiduciário, os quais deverão ser devidamente encaminhados pela Emissora até o prazo máximo de 30 (trinta) dias antes do encerramento do prazo para disponibilização do relatório, bem como as Demonstrações Financeiras Consolidadas Auditadas da Emissora, que deverão ser devidamente encaminhados pela Emissora dentro do prazo máximo de 3 (três) meses contados do encerramento do exercício social. O referido organograma do grupo societário da Emissora deverá conter, inclusive, seus controladores, controladas, controle comum, coligadas e integrantes de bloco de controle, conforme aplicável, no encerramento de cada exercício social;

(xv) manter atualizada a relação dos Debenturistas e seus endereços, sendo que a Emissora e os Debenturistas (estes a partir da respectiva data de subscrição, integralização ou aquisição das Debêntures) autorizam, desde já, o Banco Liquidante, o Escriturador e a B3 a atenderem às solicitações do Agente Fiduciário que sejam necessárias ao cumprimento desta alínea;

(xvi) fiscalizar o cumprimento do previsto nesta Escritura, inclusive das obrigações de fazer e não fazer, através de documentos e informações fornecidas pela Emissora;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(xvii) acompanhar a ocorrência dos Eventos de Inadimplemento, conforme venha a ser informado pela Emissora, e agir conforme estabelecido nesta Escritura;

(xviii) divulgar em sua página na rede mundial de computadores, em até 4 (quatro) meses após o fim do exercício social da Emissora, relatório anual descrevendo os fatos relevantes ocorridos durante o exercício relativos às Debêntures, conforme o conteúdo mínimo estabelecido no Anexo 15 da Instrução CVM 583;

(xix) no mesmo prazo de que o item (xviii) acima, o relatório anual deve ser enviado pelo Agente Fiduciário à Emissora, para divulgação na forma prevista na regulamentação específica;

(xx) relatório anual que trata o item (xix) acima deve ser mantido disponível para consulta pública da página do Agente Fiduciário na rede mundial de computadores, na página http://www.[--], pelo prazo de 3 (três) anos;

(xxi) acompanhar o resgate das Debêntures nos casos previstos nesta Escritura;

(xxii) acompanhar o preço unitário das Debêntures calculado pela Emissora, disponibilizando-o aos Debenturistas e à própria Emissora por meio do seu *website*;

(xxiii) comunicar aos Debenturistas qualquer inadimplemento, pela Emissora, de obrigações financeiras assumidas na Escritura, incluindo as cláusulas contratuais destinadas a proteger o interesse dos debenturistas e que estabelecem condições que não devem ser descumpridas pela Emissora, indicando as consequências para os Debenturistas e as providências que pretende tomar a respeito do assunto, observado o prazo previsto no artigo 16, II, da Instrução CVM 583;

(xxiv) adotar as medidas judiciais ou extrajudiciais necessárias à defesa dos interesses dos Debenturistas;

(xxv) manter disponível em sua página na rede mundial de computadores lista atualizada das emissões em que em exerce a função de agente fiduciário;

(xxvi) assegurar, nos termos do parágrafo 1° do artigo 6° da Instrução da CVM 583, tratamento equitativo aos Debenturistas e a todos os titulares de valores mobiliários da emissão da Emissora ou de sociedades coligadas, controladas, controladoras ou integrantes do mesmo grupo da Emissora, respeitadas as garantias, obrigações e direitos específicos atribuídos aos respetivos titulares de valores mobiliários;

(xxvii) divulgar em sua página na rede mundial de computadores as informações eventuais previstas no artigo 16 da Instrução CVM 583. Tais informações deverão ser

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

mantidas disponíveis para consulta pública em sua página na rede mundial de computadores pelo prazo mínimo de 3 (três) anos; e

(xxviii) manter, pelo prazo mínimo de 5 (cinco) anos, ou por prazo superior por determinação expressa da CVM, todos os documentos e informações exigidas pela Instrução CVM 583, podendo tais documentos ser guardados em meio físico ou eletrônico, admitindo-se a substituição de documentos pelas respectivas imagens digitalizadas.

8.4.2. No caso de inadimplemento de quaisquer condições da Emissão, o Agente Fiduciário deve usar de toda e qualquer medida prevista em lei ou na Escritura para proteger direitos ou defender os interesses dos Debenturistas.

8.4.3. Sem prejuízo do dever de diligência do Agente Fiduciário, o Agente Fiduciário assumirá que os documentos originais ou cópias autenticadas de documentos encaminhados pela Emissora ou por terceiros a seu pedido não foram objeto de fraude ou adulteração. O Agente Fiduciário não será, sob qualquer hipótese, responsável pela elaboração de documentos societários da Emissora.

8.4.4. O Agente Fiduciário não fará qualquer juízo sobre a orientação acerca de qualquer fato da Emissão que seja de competência de definição pelos Debenturistas, comprometendo-se tão somente a agir em conformidade com as instruções que forem deliberadas pelos Debenturistas. Neste sentido, o Agente Fiduciário não possui qualquer responsabilidade sobre o resultado ou sobre os efeitos jurídicos decorrentes do estrito cumprimento das orientações dos Debenturistas a ele transmitidas conforme definidas pelos Debenturistas e reproduzidas perante a Emissora, independentemente de eventuais prejuízos que venham a ser causados em decorrência disto aos Debenturistas ou à Emissora. A atuação do Agente Fiduciário limita-se ao escopo da Instrução CVM 583, e alterações posteriores, e dos artigos aplicáveis da Lei das Sociedades por Ações, estando o Agente Fiduciário isento, sob qualquer forma ou pretexto, de qualquer responsabilidade adicional que não tenha decorrido da legislação aplicável.

## 8.5 **Remuneração do Agente Fiduciário**

8.5.1. Serão devidos, pela Emissora ao Agente Fiduciário ou à instituição que vier a substituí-lo, nos termos da Cláusula 8.3 acima, honorários pelo desempenho dos deveres e atribuições que lhe competem, nos termos da legislação em vigor e desta Escritura, correspondentes a remuneração [*periodicidade*] de R$ [--] ([--]), sendo a primeira parcela devida até o [--]º ([--]) Dia Útil após a assinatura desta Escritura e as demais parcelas no mesmo dia dos [*periodicidade*] subsequentes até a Data de Vencimento, calculadas *pro rata die*, se necessário. A remuneração será devida mesmo após o vencimento final das Debêntures, caso o Agente Fiduciário ainda esteja exercendo atividades inerentes a sua função em relação à Emissão, remuneração essa que será

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

calculada *pro rata die*. A primeira parcela será devida ainda que as Debêntures não tenham sido integralizadas, a título de estruturação e implantação da Emissão.

8.5.2. O pagamento das parcelas descritas na Cláusula 8.5.1 acima deverá ser feito ao Agente Fiduciário acrescido dos valores relativos aos impostos e contribuições incidentes sobre o faturamento: (a) ISS (Impostos sobre Serviços de Qualquer Natureza); (b) PIS (Contribuição ao Programa de Integração Social); (c) COFINS (Contribuição para o Financiamento da Seguridade Social); (d) CSLL (Contribuição Social sobre o Lucro Líquido); (e) IRRF (Imposto de Renda Retido na Fonte); e (f) quaisquer outros impostos que venham a incidir sobre a remuneração do Agente Fiduciário, Escriturador ou Banco Liquidante nas alíquotas vigentes nas datas de cada pagamento de forma que o Agente Fiduciário receba a remuneração como se tais tributos não fossem incidentes;

8.5.3. As parcelas mencionadas na Cláusula 8.5.1 acima serão reajustadas pela variação positiva acumulada do IPCA/IBGE, ou na falta deste, ou ainda na impossibilidade de sua utilização, pelo índice que vier a substituí-lo, a partir da data do primeiro pagamento, até as datas de pagamento seguintes, calculadas *pro rata die*, se necessário.

8.5.4. Em caso de mora no pagamento de qualquer quantia devida em decorrência da remuneração ora proposta, os débitos em atraso ficarão sujeitos à multa contratual de 2% (dois por cento) sobre o valor do débito, bem como a juros moratórios de 1% (um por cento) ao mês, ficando o valor do débito em atraso sujeito a atualização monetária pelo IPCA/IBGE, incidente desde a data da inadimplência até a data do efetivo pagamento, calculado *pro rata die*.

8.5.5. O pagamento da remuneração do Agente Fiduciário será feito mediante depósito na conta corrente a ser indicada por este no momento oportuno, servindo o comprovante do depósito como prova de quitação do pagamento.

**8.6 Despesas**

8.6.1 A remuneração do Agente Fiduciário não inclui despesas consideradas necessárias ao exercício da função de agente fiduciário durante a implantação e vigência do serviço, a serem cobertas pela Emissora, mediante pagamento das respectivas cobranças acompanhadas dos respectivos comprovantes, emitidas diretamente em nome da Emissora ou mediante reembolso, após, sempre que possível, prévia aprovação, quais sejam: custos incorridos em contatos telefônicos relacionados à Emissão, notificações, extração de certidões, despesas cartorárias, fotocópias, digitalizações, envio de documentos, viagens, alimentação e estadias, despesas com especialistas, tais como auditoria e/ou fiscalização, entre outros, ou assessoria legal aos debenturistas.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

8.6.2. No caso de inadimplemento da Emissora, todas as despesas necessárias em que o Agente Fiduciário venha a incorrer para resguardar os interesses dos Debenturistas deverão ser previamente aprovadas e adiantadas pelos Debenturistas, e posteriormente, ressarcidas pela Emissora. Tais despesas incluem os gastos com honorários advocatícios, inclusive de terceiros, depósitos, indenizações, custas e taxas judiciárias de ações propostas pelo Agente Fiduciário, desde que relacionadas à solução da inadimplência, enquanto representante dos Debenturistas. As eventuais despesas, depósitos e custas judiciais decorrentes da sucumbência em ações judiciais serão igualmente suportadas pelos Debenturistas, bem como a remuneração e as despesas reembolsáveis do Agente Fiduciário, na hipótese de a Emissora permanecer em inadimplência com relação ao pagamento destas por um período superior a 15 (quinze) dias corridos, mediante envio de relatório das despesas e as devidas comprovações.

8.6.3. Em caso de inadimplemento, pecuniário ou não, pela Emissora, ou de reestruturação das condições da operação, será devida ao Agente Fiduciário uma remuneração adicional equivalente a R$ [--] ([--]) por hora-homem de trabalho dedicado às atividades relacionadas à Emissão. A mesma remuneração será devida quando da participação em assembleias, análise e celebração de aditamentos, conferências telefônicas e reuniões presenciais, remuneração esta a ser paga no prazo de 10 (dez) dias após a conferência e aprovação pela Emissora do respectivo "Relatório de Horas".

8.6.4 Todas as despesas acima de R$ [--] ([--]) em que o Agente Fiduciário venha a incorrer para resguardar os interesses dos Debenturistas deverão ser previamente aprovadas e adiantadas pelos Debenturistas, e posteriormente, conforme previstas em Lei, ressarcidas pela Emissora. Tais despesas incluem os gastos comprovados com honorários advocatícios, inclusive de terceiros, depósitos, custas e taxas judiciárias de ações propostas pelo Agente Fiduciário, enquanto representante dos Debenturistas. As eventuais despesas, depósitos e custas judiciais decorrentes da sucumbência em ações judiciais serão igualmente suportadas pelos Debenturistas, bem como a remuneração e as despesas reembolsáveis do Agente Fiduciário, na hipótese de a Emissora permanecer em inadimplência com relação ao pagamento destas por um período superior a 30 (trinta) dias, podendo o Agente Fiduciário solicitar garantia aos Debenturistas para cobertura do risco de sucumbência.

## CLÁUSULA IX
## ASSEMBLEIA GERAL DE DEBENTURISTAS

9.1. Os Debenturistas poderão, a qualquer tempo, reunir-se em assembleia geral, de acordo com o disposto no artigo 71 da Lei das Sociedades por Ações, a fim de deliberar sobre matéria de interesse da comunhão dos Debenturistas ("Assembleia Geral de Debenturistas"). **[NOTA: CASO A EMISSÃO SEJA REALIZADA EM MAIS DE UMA SÉRIE, ESTA CLÁUSULA DEVERÁ SER AJUSTADA PARA DEFINIR**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**SE AS ASSEMBLEIAS GERAIS DOS DEBENTURISTAS DE CADA UMA DAS SÉRIES SERÃO REALIZADAS EM CONJUNTO OU SEPARADEMENTE, BEM COMO DEFINIR OS QUÓRUNS DE INSTALAÇÃO E DELIBERAÇÃO DE EVENTUAIS MATÉRIAS QUE SEJAM APLICÁVEIS A APENAS DETERMINADAS SÉRIES]**

9.1.1. Aplica-se à Assembleia Geral de Debenturistas, no que couber, o disposto na Lei das Sociedades por Ações sobre assembleia geral de acionistas.

**9.2 Convocação e Instalação**

9.2.1. A Assembleia Geral de Debenturistas pode ser convocada pelo Agente Fiduciário, pela Emissora, por Debenturistas que representem 10% (dez por cento), no mínimo, das Debêntures em Circulação ou pela CVM.

9.2.2. A convocação das Assembleias Gerais de Debenturistas se dará mediante anúncio divulgado nos termos desta Escritura, observado o disposto na Cláusula 4.17 acima, respeitadas outras regras relacionadas à publicação de anúncio de convocação de assembleias gerais constantes da Lei das Sociedades por Ações, da regulamentação aplicável e desta Escritura.

9.2.3. As Assembleias Gerais de Debenturistas deverão ser realizadas em prazo mínimo de 8 (oito) dias contados da data da primeira publicação da convocação. Qualquer Assembleia Geral de Debenturistas em segunda convocação somente poderá ser realizada em, no mínimo, 5 (cinco) dias após a data da publicação do novo edital de convocação.

9.2.4. Independentemente das formalidades previstas na legislação aplicável e nesta Escritura, será considerada regular a Assembleia Geral de Debenturistas a que comparecerem os titulares de todas as Debêntures em Circulação.

9.2.5. As Assembleias Gerais de Debenturistas serão instaladas, em primeira convocação, com a presença de Debenturistas que representem 2/3 (dois terços), no mínimo, das Debêntures em Circulação e, em segunda convocação, com qualquer quórum.

**9.3. Mesa Diretora**

9.3.1. A presidência e a secretaria das Assembleias Gerais de Debenturistas caberá os representantes eleitos pelos Debenturistas ou àqueles que forem designados pela CVM e poderá ser acompanhada pelo Agente de Monitoramento, se necessário.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**9.4. Quórum de Deliberação**

9.4.1. Nas deliberações das Assembleias Gerais de Debenturistas, a cada Debênture em Circulação caberá um voto, admitida a constituição de mandatário, titulares de Debêntures ou não.

9.4.1.1 Para efeito da constituição de todos os quóruns de instalação e/ou deliberação de qualquer Assembleia Geral de Debenturistas previstos nesta Escritura, consideram-se, "Debêntures em Circulação" todas as Debêntures subscritas, integralizadas e não resgatadas, excluídas aquelas Debêntures: (i) mantidas em tesouraria pela Emissora; ou (ii) de titularidade de: (a) empresas controladas pela Emissora (diretas ou indiretas), (b) controladoras (ou grupo de controle) da Emissora; (c) sociedades sobre controle comum; e (d) administradores da Emissora, incluindo, mas não se limitando a, pessoas direta ou indiretamente relacionadas a qualquer das pessoas anteriormente mencionadas, incluindo seus cônjuges, companheiros ou parentes até o 3º (terceiro) grau.

9.4.2. Quando não houver quórum específico determinado nesta Escritura, todas as deliberações a serem tomadas em Assembleia Geral de Debenturistas dependerão de aprovação de Debenturistas representando, no mínimo, (i) 50% (cinquenta por cento) mais 1 (uma) das Debêntures em Circulação, em primeira convocação e (ii) maioria simples dos presentes em Assembleia Geral de Debenturistas, em segunda convocação.

9.4.3. Será obrigatória a presença dos representantes legais da Emissora nas Assembleias Gerais de Debenturistas convocadas pela Emissora. Nos demais casos, será facultada a presença dos representantes legais da Emissora nas Assembleias Gerais de Debenturistas, sendo certo que os Debenturistas poderão discutir e deliberar sem a presença destes, caso desejarem.

9.4.4. O Agente Fiduciário deverá comparecer às Assembleias Gerais de Debenturistas e prestar aos Debenturistas as informações que lhe forem solicitadas, bem como enviar as respectivas atas das Assembleias Gerais de Debenturistas ao Agente de Monitoramento e, enquanto perdurar o Plano de Recuperação Judicial, ao administrador judicial indicado pela Emissora.

9.4.5. As deliberações tomadas pelos Debenturistas, em Assembleias Gerais de Debenturistas, no âmbito de sua competência legal, observados os quóruns desta Escritura, vincularão a Emissora e obrigarão todos os titulares de Debêntures em Circulação, independentemente de terem comparecido à Assembleia Geral de Debenturistas ou do voto proferido nas respectivas Assembleias Gerais de Debenturistas.

**9.5. Reunião de Credores no âmbito do Plano de Recuperação Judicial**

9.5.1. A Emissora poderá, a qualquer momento, convocar reunião de credores das Recuperandas composta pelos titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, dentre os quais os Debenturistas ("Reunião de Credores"), para que estes deliberem sobre:

(i) a renúncia prévia (*waiver*) ao direito de exigir o cumprimento de qualquer uma das obrigações previstas nos Instrumentos de Pagamento, dentre os quais a presente Escritura;

(ii) a renúncia (*waiver*) ao direito de declarar o vencimento antecipado das obrigações previstas nos Instrumentos de Pagamento, dentre os quais a presente Escritura;

(iii) a extensão de prazos previstos nos Instrumentos de Pagamento, dentre os quais a presente Escritura

(iv) a realização de operações de reorganização societária nos termos da Cláusula 6.1 do Plano de Recuperação Judicial;

(v) a substituição do Agente de Monitoramento; e

(vi) outras matérias que sejam relevantes.

9.5.1.1. Nos termos do Plano de Recuperação Judicial, a reunião para deliberação das matérias indicadas nos itens (iii), (iv) e (v) da Cláusula 9.5.2 acima somente será instalada com a presença de titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento que representem, no mínimo, 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, seja em primeira ou em segunda convocação.

9.5.1.2. Nos termos do Plano de Recuperação, as matérias indicadas nos itens, (iii), (iv) e (v) da Cláusula 9.1.2 acima dependerão aprovação de titulares de Créditos Elegíveis à Subscrição de Instrumentos de Pagamento que representem, no mínimo, 2/3 (dois terços) dos Créditos Elegíveis à Subscrição de Instrumentos de Pagamento, em primeira e em segunda convocação.

9.5.2. Caso ocorra a convocação para determinada Reunião de Credores, o Agente Fiduciário se obriga a, em até 1 (um) Dia Útil contados do recebimento da notificação de convocação da respectiva Reunião de Credores, a convocar uma Assembleia Geral de Debenturistas, na forma e prazo estabelecidos na Cláusula 9.2 acima, que terá como ordem do dia a deliberação sobre as matérias constantes da notificação de convocação da Reunião de Credores.

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

9.5.3. Ocorrida a Assembleia Geral de Debenturistas prevista na Cláusula 9.5.2 acima, o Agente Fiduciário se obriga a comparecer à respectiva Reunião de Credores e votar, na qualidade de representante dos Debenturistas, conforme instruído por estes na Assembleia Geral de Debenturistas.

9.5.4. Caso o voto manifestado pelos Debenturistas seja vencido no âmbito da correspondente Reunião de Credores, as deliberações tomadas na respectiva Reunião de Credores deverá prevalecer sobre aquelas tomadas na Assembleia Geral de Debenturistas, vinculando os Debenturistas em todos os seus termos.

## CLÁUSULA X
## DECLARAÇÕES E GARANTIAS DA EMISSORA

10.1. A Emissora declara e garante, na data da assinatura desta Escritura, que:

(i) é sociedade devidamente organizada, constituída e existente sob a forma de sociedade por ações, de acordo com as leis brasileiras;

(ii) está devidamente autorizada e obteve todas as licenças e autorizações necessárias, inclusive as societárias, à celebração desta Escritura e seus eventuais aditamentos, à realização da Emissão e ao cumprimento de suas obrigações aqui previstas, tendo sido satisfeitos todos os requisitos legais e estatutários necessários para tanto;

(iii) nenhum registro, consentimento, autorização, aprovação, licença, ordem de, ou qualificação perante qualquer autoridade governamental ou órgão regulatório adicional aos já concedidos, é exigido para o cumprimento, pela Emissora de suas obrigações nos termos desta Escritura e das Debêntures, ou para a realização da Emissão, exceto a inscrição da [AGE da Emissora], dos Atos Societários das Fiadoras, da Escritura na Junta Comercial, o registro da Escritura nos RTDs e o depósito das Debêntures na B3 e da aprovação do Plano de Recuperação Judicial pelo juízo competente;

(iv) os representantes legais da Emissora que assinam esta Escritura têm poderes estatutários e/ou delegados para assumir, em seu nome, as obrigações ora estabelecidas e, sendo mandatários, tiveram os poderes legitimamente outorgados, estando os respectivos mandatos em pleno vigor;

(v) esta Escritura e as obrigações aqui previstas, constituem obrigações legais, válidas, vinculantes da Emissora, exequíveis de acordo com os seus termos e condições, com força de título executivo extrajudicial nos termos do artigo 784, incisos I e III, do Código de Processo Civil;

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

(vi) a celebração, os termos e condições desta Escritura e o cumprimento das obrigações aqui previstas e a realização da Emissão e da Oferta não infringem o estatuto social da Emissora;

(vii) está adimplente com o cumprimento de todas as obrigações assumidas no âmbito do Plano de Recuperação Judicial;

(viii) os documentos e informações fornecidos ao Agente Fiduciário e/ou aos Debenturistas são verdadeiros, consistentes, corretos e suficientes, estão atualizados até a data em que foram fornecidos e incluem os documentos e informações relevantes para a tomada de decisão de investimento sobre as Debêntures, tendo sido disponibilizadas informações sobre as operações relevantes da Emissora, bem como sobre os direitos e obrigações relevantes delas decorrentes;

(ix) não há qualquer ligação entre a Emissora e o Agente Fiduciário que impeça o Agente Fiduciário de exercer plenamente suas funções; e

(x) está cumprindo as leis, regulamentos, normas administrativas e determinações dos órgãos governamentais, autarquias, juízos ou tribunais, aplicáveis à condução de seus negócios e que sejam relevantes para a execução das atividades da Emissora, exceto com relação àquelas leis e regulamentos que (a) estejam sendo contestados de boa-fé pela Emissora,(b) para as quais a Emissora possua provimento jurisdicional ou administrativo vigente determinando sua não aplicabilidade ou (c) cujo descumprimento não cause um Efeito Adverso Relevante.

10.2. A Emissora obriga-se a notificar o Agente Fiduciário, em até 3 (três) Dias Úteis da data em que tomar conhecimento, caso qualquer das declarações prestadas nos termos da Cláusula 10.1 acima seja falsa e/ou incorreta.

## CLÁUSULA XI
## DISPOSIÇÕES GERAIS

**11.1 Comunicações**

11.1.1. As comunicações a serem enviadas por qualquer das Partes nos termos desta Escritura deverão ser encaminhadas para os seguintes endereços:

**Para a Emissora:**
**[*EMISSORA*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para as Fiadoras**
**[*FIADORA 1*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**[*FIADORA 2*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para o Agente Fiduciário:**
**[*AGENTE FIDUCIÁRIO*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para o Banco Liquidante**
**[*BANCO LIQUIDANTE*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

**Para o Escriturador:**
**[*ESCRITURADOR*]**
[*Endereço Completo*]
CEP [--] – [*Cidade/Estado*]
At.: Sr. [--]
Telefone: ([--]) [--]
E-mail: [--]

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Para a B3:**
**B3 S.A. – BRASIL, BOLSA, BALCÃO**
**Segmento Cetip UTVM**
Praça Antônio Prado, 48, 2º andar
CEP 01010-901, São Paulo/SP
At.: Superintendência de Ofertas de Títulos Corporativos e Fundos
Telefone: (11) 2565-5061
E-mail: valores.mobiliarios@b3.com.br

11.1.2. As comunicações serão consideradas entregues quando recebidas sob protocolo ou com "aviso de recebimento" expedido pela Empresa Brasileira de Correios ou corrier nos endereços acima. As comunicações feitas por correio eletrônico serão consideradas recebidas na data de seu envio, desde que seu recebimento seja confirmado por meio de indicativo (recibo emitido pela máquina utilizada pelo remetente). A mudança de qualquer dos endereços deverá ser imediatamente comunicada às demais Partes pela Parte que tiver seu endereço alterado, com cópia para o Agente de Monitoramento. Eventuais prejuízos decorrentes da não comunicação quanto à alteração de endereço serão arcados pela Parte inadimplente, exceto se de outra forma previsto nesta Escritura.

11.2. **Renúncia:** Não se presume a renúncia a qualquer dos direitos decorrentes da presente Escritura. Desta forma, nenhum atraso, omissão ou liberalidade no exercício de qualquer direito, faculdade ou remédio que caiba à Emissora, ao Agente Fiduciário e/ou aos Debenturistas em razão de qualquer inadimplemento prejudicará tais direitos, faculdades ou remédios, ou será interpretado como constituindo uma renúncia aos mesmos ou concordância com tal inadimplemento, nem constituirá novação ou modificação de quaisquer outras obrigações assumidas pelas Partes nesta Escritura ou precedente no tocante a qualquer outro inadimplemento ou atraso.

11.2.1 Fica desde já dispensada a realização de Assembleia Geral para deliberar sobre aditamentos decorrentes: (i) da correção de erros materiais, seja ele um erro grosseiro, de digitação ou aritmético, (ii) das alterações a quaisquer documentos da emissão já expressamente permitidas nos termos do(s) respectivo(s) documento(s) da Emissão, (iii) das alterações a quaisquer documentos da Emissão em razão de exigências formuladas pela CVM, pela B3, ou (iv) da atualização dos dados cadastrais das Partes, tais como alteração na razão social, endereço e telefone, entre outros, desde que as alterações ou correções referidas nos itens (i), (ii), (iii) e (iv) acima, não possam acarretar qualquer prejuízo aos Debenturistas ou qualquer alteração no fluxo dos Debenturistas, e desde que não haja qualquer custo ou despesa adicional para os Debenturistas.

11.3. **Despesas:** Todas e quaisquer despesas incorridas com a Emissão e a Oferta ou com a execução de valores devidos nos termos desta Escritura incluindo publicações, inscrições, registros, averbações, contratação do Agente Fiduciário e dos prestadores de

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

serviços e quaisquer outros custos relacionados às Debêntures serão de responsabilidade exclusiva da Emissora, nos termos desta Escritura.

11.4. **Título Executivo Extrajudicial e Execução Específica:** Esta Escritura e as Debêntures constituem títulos executivos extrajudiciais nos termos do artigo 784, I e III, do Código de Processo Civil, reconhecendo as Partes desde já que, independentemente de quaisquer outras medidas cabíveis, as obrigações assumidas nos termos desta Escritura e com relação às Debêntures estão sujeitas à execução específica, submetendo-se às disposições dos artigos 497, 806, 814 e seguintes do Código de Processo Civil, sem prejuízo do direito de declarar o vencimento antecipado das Debêntures nos termos desta Escritura.

11.5. **Cômputo do Prazo:** Exceto se de outra forma especificamente disposto nesta Escritura, os prazos estabelecidos na presente Escritura serão computados de acordo com a regra prescrita no artigo 132 do Código Civil, sendo excluído o dia do começo e incluído o do vencimento.

11.5. **Aditamentos:** Quaisquer aditamentos a esta Escritura deverão ser formalizados por escrito, com assinatura da Emissora e do Agente Fiduciário, inscritos na Junta Comercial e registrados nos RTDs, nos termos desta Escritura. As Partes concordam que a presente Escritura, assim como os demais documentos da Emissão, poderão ser alterados, sem a necessidade de qualquer aprovação dos Debenturistas, sempre e somente: (i) quando tal alteração decorrer exclusivamente da necessidade de atendimento a exigências de adequação a normas legais, regulamentares ou exigências da CVM, ANBIMA, B3 ou demais reguladores; (ii) quando verificado erro material, seja ele um erro grosseiro, de digitação ou aritmético; (iii) alterações a quaisquer documentos relativos à Emissão das Debêntures já expressamente permitidas nos termos dos respectivos documentos; ou ainda (iv) em virtude da atualização dos dados cadastrais das Partes, tais como alteração na razão social, endereço e telefone, entre outros, desde que não haja qualquer custo ou despesa adicional para os Debenturistas.

**11.6. Outras Disposições**

11.6.1. Esta Escritura é celebrada em caráter irrevogável e irretratável, obrigando as Partes e seus sucessores, a qualquer título.

11.6.2. Os termos aqui iniciados em letra maiúscula, estejam no singular ou no plural, terão o significado a eles atribuído nesta Escritura, ainda que posteriormente ao seu uso.

11.6.3. A invalidação ou nulidade, no todo ou em parte, de quaisquer das cláusulas desta Escritura não afetará as demais, que permanecerão sempre válidas e eficazes até o cumprimento, pelas Partes, de todas as suas obrigações aqui previstas. Ocorrendo a declaração de invalidação ou nulidade de qualquer Cláusula desta Escritura, as Partes

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

desde já se comprometem a negociar, no menor prazo possível, em substituição à Cláusula declarada inválida ou nula, a inclusão, nesta Escritura, de termos e condições válidos que reflitam os termos e condições da Cláusula invalidada ou nula, observados a intenção e o objetivo das Partes quando da negociação da Cláusula invalidada ou nula e o contexto em que se insere.

11.6.4. As Partes declaram, mútua e expressamente, que esta Escritura foi celebrada respeitando-se os princípios de probidade e de boa-fé, por livre, consciente e firme manifestação de vontade das Partes e em perfeita relação de equidade.

11.6.5. Os prazos estabelecidos nesta Escritura serão computados de acordo com o disposto no artigo 132 do Código Civil, sendo excluído o dia de início e incluído o do vencimento.

11.7. **Lei Aplicável**

11.7.1. Esta Escritura é regida pelas Leis da República Federativa do Brasil.

11.8. **Foro**

11.8.1. As Partes elegem o foro da Comarca de [--], do Estado de [--], com renúncia expressa de qualquer outro, por mais privilegiado, como competente para dirimir quaisquer controvérsias decorrentes desta Escritura.

Estando assim, as Partes, certas e ajustadas, firmam esta Escritura em [--] ([--]) vias de igual teor e forma, juntamente com 2 (duas) testemunhas, que também a assinam.

São Paulo, [*data*].

*(As assinaturas seguem nas páginas seguintes.)*

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

*(Página de Assinaturas do Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], para Distribuição Pública, com Esforços Restritos, da [Emissora])*

**[EMISSORA]**

| _________________________ | _________________________ |
|---|---|
| Nome: | Nome: |
| Cargo: | Cargo: |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

*(Página de Assinaturas do Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], para Distribuição Pública, com Esforços Restritos, da [Emissora])*

**[FIADORA 1]**

Nome:
Cargo:

**[FIADORA 2]**

Nome:
Cargo:

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

*(Página de Assinaturas do Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], para Distribuição Pública, com Esforços Restritos, da [Emissora])*

**[AGENTE FIDUCIÁRIO]**

| ______________________________ | ______________________________ |
|---|---|
| Nome: | |
| Cargo: | |

**TESTEMUNHAS**

| ______________________________ | ______________________________ |
|---|---|
| Nome: | Nome: |
| RG: | RG: |
| CPF: | CPF: |

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Anexo I ao Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], para Distribuição Pública, com Esforços Restritos, da [Emissora]**

**[*a ser incluído*]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.

**Anexo II ao Instrumento Particular de Escritura da [--] Emissão de Debêntures Simples, Não Conversíveis em Ações, da Espécie Quirografária, Com Garantia Adicional Fidejussória, em [Série Única], para Distribuição Pública, com Esforços Restritos, da [Emissora]**

**[*a ser incluído*]**

Este documento é cópia do original, assinado digitalmente por JULIA PERETO TALIBERTI e Tribunal de Justica do Estado de Sao Paulo, protocolado em 24/04/2020 às 07:38 , sob o número WJMJ20405173440 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 1057756-77.2019.8.26.0100 e código 8ED9AE6.



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

200.317(001) Livro 756 Fl. 350-508

**I, SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER SIGNED BELOW, APPOINTED BY THE PRESIDENT OF THE TRADE BOARD OF THE STATE OF RIO DE JANEIRO (JUCERJA), LICENSED IN THE FOLLOWING LANGUAGES: ENGLISH, FRENCH, AND SPANISH UNDER PERMIT 243---------------------------------------------------------------------------- HEREBY CERTIFY IN GOOD FAITH---------------------------------------------------- THAT ON THIS DATE A DOCUMENT WAS PRESENTED TO ME WRITTEN IN PORTUGUESE, WHICH I NOW TRANSLATE INTO THE ENGLISH IDIOM WITH THE BEST OF MY KNOWLEDGE AND IN GOOD FAITH, AS COMMANDED BY MY OFFICIAL DUTY, AS FOLLOWS: ---------------------------**

-----------------------------------------------------------

**COURT-SUPERVISED REORGANIZATION PLAN** ----------------------

April 22, 2020 -----------------------------------------------

-----------------------------------------------------------

**COURT-SUPERVISED REORGANIZATION PLAN** ----------------------

-----------------------------------------------------------

**(1) KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL**, limited liability company, with registered office in the city of Salvador, state of Bahia, at Avenida Tancredo Neves, n° 1672, Edifício Catabas Empresarial, 5th floor, room 501, Caminho das Árvores, Postal Code [CEP] 41.820-020, taxpayer identification number CNPJ/ME 04.215.837/0001-09 ("KIEPPE"); **(2) ODBINV S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the city of Salvador, state of Bahia, at Avenida Luís Viana, n° 2841, Ed. Odebrecht, Paralela, Postal Code [CEP] 41.730-900, taxpayer identification number CNPJ/ME 15.105.588/0001-15 ("ODBINV"); **(3) ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the municipality of Salvador, State of Bahia, at Avenida Luis Viana, 2841, Ed.





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Odebrecht, Paralela, Postal Code [CEP] 41.730-900, **taxpayer identification number CNPJ/ME** 05.144.757/0001-72 ("ODB"); **(4) ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL**, a joint stock company, with principal place of business at Rua Lemos Monteiro, n° 120, 14th floor, parte L, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 20.541.146/0001-51 ("OEI"); **(5) EDIFÍCIO ODEBRECHT RJ S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of Rio de Janeiro, State of Rio de Janeiro, at Avenida Cidade de Lima, 86, Santo Cristo, Postal Code [CEP] 20.220-710, taxpayer identification number CNPJ/ME 19.432.176/0001-40 ("EORJ"); **(6) ODEBRECHT PROPERTIES INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 14th floor, parte H, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 21.264.618/0001-39 ("OPINV"), and together with the companies listed in items (1) and (5) **(5)**, "Companies under Reorganization"), submit, in the records of their court-supervised reorganization proceedings, filed under No. 1057756-77.2019.8.26.0100, in progress at the 1st Court of Bankruptcy and Court-Supervised Reorganization of the Central Civil Jurisdiction of the Capital of São Paulo ("Court-supervised Reorganization"), the following Court-supervised Reorganization Plan ("Plan"), in compliance with article 53 of Law No. 11.101/2005 ("LFR"). -----------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

------------------------------------------------------------

**WHEREAS:** ---------------------------------------------------

**(i)** the Companies under Reorganization are part of the Odebrecht Group, one of the largest business conglomerates in Brazil, operating in the sectors of infrastructure, oil and gas, sugar and ethanol, real estate development, mobility and transportation, energy, defense and naval services, bringing together several companies under common control (direct or indirect) of KIEPPE, with activities developed in innumerable locations in the Brazilian national territory and in 27 countries corresponding to one of the largest Brazilian companies in its segments of operation ("Odebrecht Group"); -----------------------------

------------------------------------------------------------

**(ii)** despite having their own assets and legal personality, the Companies under Reorganization act under corporate, operational, financial and single management control, by means of a typical multidisciplinary structure aimed at optimizing financial, administrative and operational synergies, with view to increasing efficiency and maximizing income, and are under the same command and strategic planning, with centralized administration, and, for the most part, the identity of shareholders and management; ------------------------------------------------

------------------------------------------------------------

**(iii)** The Odebrecht Group was created with the exploration of the civil construction activity, developed by Construtora Norberto Odebrecht S.A., which is geared to





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

large engineering and construction activities, in which it accumulated extensive experience and developed sophisticated technology, to the point of becoming the largest construction company in Latin America and one of the 30 largest service exporters in the world; ------------
------------------------------------------------------------

**(iv)** the expansion of the Odebrecht Group was marked by investments in other segments besides the engineering and construction sector, namely: (a) in the petrochemical sector; (b) in the services sector of production, import, export and marketing of agricultural products in general, especially the cultivation, industrialization and marketing of sugarcane for the production of sugar, ethanol and derivatives; (c) in the offshore shipbuilding sector; (d) in the development of real estate undertakings; (e) in the energy sector; (f) in the strategic sector of military defense; and (g) in infrastructure businesses, including participation in highway and hydroelectric concessions; --------------------
------------------------------------------------------------

**(v)** in order to conduct their activities and provide for the growth of the Odebrecht Group, the Companies under Reorganization structured themselves in order to enable them to raise funds in the Brazilian and international financial and capital markets through the contracting of bank financing, bank guarantees, insurance-guarantees and the issue of debt instruments in the local market (debentures) and in the international market *(bonds)*; to





Pg 217 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 354

this end, the Companies under Reorganization have acted efficiently and in coordination as lenders, guarantors and counter-guarantors of the aforementioned financial transactions; ------------------------------------------------
---------------------------------------------------------

**(vi)** given the financial difficulties they faced, which were aggravated by attacks from certain creditors, and in order to ensure the social function of the Companies under Reorganization, as well as to preserve jobs and their productive capacity and stimulus to the economy, on ------- 06.17.2019, a request for Court-supervised Reorganization was filed by the Companies under Reorganization together with

**(1) OSP INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL,** joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, nº 120, 9º floor, parte I, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 22.606.673/0001-22 ("**OSP INV**"); **(2) ODEBRECHT SERVIÇOS E PARTICIPAÇÕES S.A. - EM RECUPERAÇÃO JUDICIAL,** joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 9th floor, parte E, Postal Code [CEP]05.501-050, taxpayer identification number CNPJ/ME 10.904.193/0001-69 ("OSP"); **(3) OPI S.A. -**

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 14th floor, parte A, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 17.337.615/0001-00 ("OPISA"); **(4) ODEBRECHT PARTICIPAÇÕES E INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL**, a joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 12th floor, parte C, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 07.668.258/0001-00 ("OPI"); **(5) ODB INTERNATIONAL CORPORATION**, a company existing and organized under the laws of the Bahamas, with registered office in Nassau, at MB&H Corporate Services Ltd., Mareva House, 4 George Street, registered under No. 138020 B ("ODBIC"); **(6) ODEBRECHT FINANCE LIMITED**, a company organized and existing under the laws of the Cayman Islands, with principal place of business at George Town, Grand Cayman, Cayman Island at South Church Street, PO Box 309GT, Ugland House, registered under No. 181323 ("OFL"); **(7) ODEBRECHT ENERGIA S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo,





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

State of São Paulo, at Rua Lemos Monteiro, nº 120, 7th floor, parte B, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 13.079.757/0001-64 ("OE"); **(8) ODEBRECHT ENERGIA PARTICIPAÇÕES S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, nº 120, 7th floor, parte D, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 19.790.376/0001-75 ("OEP"); **(9) ODEBRECHT ENERGIA DO BRASIL S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the city and state of São Paulo, at Rua Lemos Monteiro, nº 120, 11th floor, parte D, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 13.439.547/0001-30 ("OEB"); **(10) ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the municipality of Salvador, State of Bahia, at Avenida Luis Viana, 2841, Ed. Odebrecht, Sala Enseada, Paralela, Postal Code [CEP] 41.730-900, taxpayer identification number CNPJ/ME 17.851.495/0001-65 ("OPE"); **(11) ODEBRECHT PROPERTIES PARCERIAS S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, 120, 14th floor, parte B, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 16.584.908/0001-20 ("OPP"); **(12) OP CENTRO ADMINISTRATIVO S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in Brasília, Federal District, at Rua 210, Quadra 01, Lote 34 TR 3, room 1010 C, Areal (Águas Claras), Postal Code [CEP] 71950-770, taxpayer identification number CNPJ/ME 19.128.923/0001-51 ("OP Centro Administrativo"); **(13) OP GESTÃO DE PROPRIEDADES S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the City of São Paulo, State of São Paulo, at Rua Lemos Monteiro, No. 120, 14th floor, parte E, Postal Code [CEP] 05.501-050, taxpayer identification number CNPJ/ME 20.620.396/0001-87 ("OP Gestão"); and **(14) MECTRON - ENGENHARIA, INDÚSTRIA E COMÉRCIO S.A. - EM RECUPERAÇÃO JUDICIAL**, joint stock company, with registered office in the city of São José dos Campos, state of São Paulo, at Avenida Brigadeiro Faria Lima, 1389, Parque Martim Cererê, E 1399, Postal Code [CEP] 12227-000, taxpayer identification number CNPJ/ME 65.481.012/0001-20





Pg 221 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 358

("MECTRON" and, together with the companies listed between items **(1)** and **(13)** ("Petitioners");------------------------
------------------------------------------------------------
------------------------------------------------------------

**(vii)** in attention to the orders of pages 278/285 and 355/363, issued respectively under Interlocutory Appeals No.s 2262371-21.2019.8.26.0000 and 226277-73.2019.8.26.000, the Bankruptcy Creditors of the Companies under Reorganization resolved, at the general meeting of creditors, to substantially consolidate ODB with the other Companies under Reorganization; therefore, this Plan is comprised of the assets and liabilities held by all the Companies under Reorganization ("Substantial Consolidation of the Companies under Reorganization"); and finally ------------------------------------------------
------------------------------------------------------------

**(viii)** in compliance with the decision to grant processing of the Court-supervised Reorganization and the requirements of article 53 of the LFR, this Plan presents the means of reorganization sought by the Companies under Reorganization, and demonstrates its economic feasibility, through the Reports, as defined below, it being established that this Plan reflects the negotiations held with the collectivity of Creditors of the Companies under Reorganization; ------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

The Companies under Reorganization present this Plan to the Judge of the Reorganization, pursuant to the following terms and conditions. ------------------------------------------------------------------------------------------

**1. DEFINITIONS AND RULES OF INTERPRETATION** ------------------------------------------------------------------------------

**1.1. Definitions:** The terms used in this Plan have the meanings defined below. Such defined terms shall be used, as appropriate and applicable, in their singular or plural form, in the male or female gender, without losing the meaning attributed to them. -----------------------------------------------------------------------------------------

1.1.1 "Judicial Claims or Arbitration Proceedings": are the judicial claims of labor or civil nature, filed against the Companies under Reorganization, or the arbitration proceedings involving the Companies under Reorganization, which involve legal relationships that, due to their cause of filing, originate the Bankruptcy Credits in Bankruptcy that shall be included in the List of Creditors. ----------------------------------------------------------------------------------------------

1.1.2 "Adherence to Substantial Consolidation" has the meaning ascribed to it in Clause 2.5. -----------------------------------------------------------------------------

1.1.3 "Judicial Administrator": is Alvarez & Marsal Administração Judicial Ltda., CNPJ/ME No. 07.016.138/0001-28, with its address at Rua Surubim, 577, 9° andar,





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Brooklin Novo, Postal Code [CEP] 04571-050, in the City and State of São Paulo, or whoever replaces it. ------------------------------------------------------------------------

1.1.4 "Affiliates": means, in relation to any person, any person directly or indirectly held, Controlling, Controlled or under common Control. ----------------------------------------------------------------------------------

1.1.5 "Monitoring Agent" means any of the firms specializing in the provision of consultancy and expert examination services listed in Appendix I to **Annex 1.1.73**, as well as the successors on any account of such firms whose principal activity is the provision of consultancy and expert services, whose attributions are described in section 6 of **Annex 1.1.73.** --------------------------------------------------------------------------------------------

1.1.6 "Anniversary": is the date that corresponds to the 365th (three-hundred sixty-fifth) day after the Date of Judicial Confirmation of the Plan. ----------------------------------------------------------------------------------

1.1.7 "Approval of the Plan": is the approval of this Plan by the Bankruptcy Creditors of the Companies under Reorganization gathered at the Creditors' Meeting appointed to resolve thereon. For purposes of this Plan, Approval of the Plan is deemed to occur on the date of the Creditors' Meeting at which the vote on the Plan takes place, provided that it is subsequently confirmed in court pursuant to the terms of article 58, paragraph 1 of LFR. ------------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.8 "Creditors' Meeting": is any general meeting of creditors of the Companies under Reorganization, held within the scope of this Court-supervised Reorganization, pursuant to the terms of Chapter II, Section IV, of LFR. -----------------------------------------------------------

1.1.9 "Compliance Bonus": is the revision of the interest rate and inflation adjustment applicable to the Payment Instruments pursuant to item 3 of **Annex 1.1.73** of the Plan, shall become correspondent to the TR on 15th (fifteenth) year provided that the amortizations, in the aggregate total, equal to or greater than BRL 500,000.00 (five hundred thousand reais) have been made since the Date of Judicial Confirmation of the Plan. ----------------------------------------------------------------------------

1.1.10. "Available Cash": means the sum of all amounts, immediately liquid funds and unencumbered financial investments held in cash by each of the Companies under Reorganization, including by virtue of the sale of assets, receipt of Dividends from the Subsidiaries (with due regard for the apportionment of Clause 1.1.13), or by any other source of funds, according to the calculation to be made on the base dates established in Annex 1.1.73, and which may be used by the Companies under Reorganization for the purposes described in Annex 1.1.10. ---------------------------------------------------------------------------

1.1.11. "Cash for Distribution": means, on a given base date after the Grace Period provided in item 5 of **Appendix 1.1.73** has elapsed, every amount of Available Cash that





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

exceeds the sum of BRL 300,000,000.00 (three hundred million reais), as adjusted by the IPCA in each fiscal year. When calculating the Cash for Distribution in the last two months of each year, there shall be a deduction from the amount of BRL 300,000,000.00 (three hundred million reais) the amounts eventually remitted to the Petitioners in the same fiscal year, pursuant to Clause 7.4.1. -------------------------------------------------------------------------------------------------------------------

The following are not included in the Cash for Distribution concept: ---------------------------------------------------------------------------------------------

i. Funds for Payment of Ordinary Expenses received until December 31, 2022 that have not been used and are available on the referred base date and/or Funds for Payment of Ordinary Expenses whose release is contracted but which have not yet been made available to the Companies under Reorganization until the referred base date; and ----------------------------------------------------------------------------------------------------------

ii. if applicable, until the end of the Grace Period, considering such period may be extended in case it is authorized by the holders of the Payment Instruments in a resolution taken pursuant to item 8.3 of Annex 1.1.73, the amounts necessary for payment of sales, tax and fiscal expenses arising from the sale of assets of the Companies under Reorganization and/or the Petitioners materialized by the date of their calculation, as well as those not





Pg 226 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 363

materialized that may be estimated due to the obligations contracted up to the ascertainment date, subtracted from the net funds received or to be received by the Companies under Reorganization and/or Petitioners arising from the aforementioned sale of assets. ----------------------------
------------------------------------------------------------

For the avoidance of doubt, all funds related to the events described in item ii, including net funds from the disposal of assets to be received by the Companies under Reorganization and/or Petitioners, within the limit of the expenses mentioned in item ii, shall be reserved until the materialization of the obligations described therein or until the end of the period of 18 (eighteen) months as of the end of the Grace Period, whichever occurs first, not including the Cash for Distribution for the purposes of Clause 1.1.11. If such obligations do not materialize, the full amounts retained by the Companies under Reorganization shall be used for the payment of the Payment Instruments. --------------------------------------
------------------------------------------------------------

The Cash for Distribution shall be calculated, from the end of the Grace Period, based on the accounts closing management report, delivered by the Companies under Reorganization to the Monitoring Agent, for the months of February, April, June, August, October and December. ------
------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.12. "Chapter 15": means the auxiliary insolvency procedure provided in Chapter 15 of the U.S. Bankruptcy Code of the United States of America. ---------------------
--------------------------------------------------------

1.1.13. "Cascade of Dividends from Subsidiaries": means part of the amounts received by the Companies under Reorganization as Dividends from Subsidiaries, which shall be used to pay Dividends from Subsidiaries until December 31, 2025 in the following proportion: ---------------------
--------------------------------------------------------

| Dividends from Subsidiaries (BRL million) | Use of Dividends from Subsidiaries |
|---|---|
| Up to 100 in a given fiscal year | fully used for composition of Available Cash and Cash for Distribution, as applicable |
| Over 100 and up to 200 in a given fiscal year | 10% of the Dividends from Subsidiaries received in the fiscal year shall be allocated to payment by Dividends from Subsidiaries and 90% to composition of the Available Cash and Cash for Distribution, as applicable |
| Above 200 in a given fiscal year | 20% of the Dividends from Subsidiaries received in the fiscal year shall be allocated to the payment for Dividends from Subsidiaries and 80% to composition of Available Cash and Cash for Distribution, as applicable |

--------------------------------------------------------

After December 31st, 2025, the Dividends from Subsidiaries shall be entirely allocated to the composition of the Available Cash and Cash for Distribution, as applicable. --
--------------------------------------------------------

1.1.14. "Civil Code": is the Federal Law No. 10,406 of January 10, 2002. ----------------------------------------
--------------------------------------------------------

1.1.15. "Code of Civil Procedure": is the Federal Law No. 13,105 of March 16, 2015. ---------------------------------
--------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.16. "Substantial Consolidation of the Companies under Reorganization" has the meaning ascribed to it in recital (vii). ------------------------------------------------------------------------------------------------------------

1.1.17. "Control": means, according to article 116 of the Corporation Law, (i) the ownership of rights of shareholders which ensure to each holder, on a permanent basis, the majority of votes in company resolutions and the power to elect the majority of the company's management; and (ii) the effective use of such power to direct the company's activities and guide the operation of the company's bodies. The expressions and terms "Controller", "Controlled by", "under Common Control" and "Controlled" have the meanings logically derived from this definition of "Control". ----------------------------------------------------------------------------------------------

1.1.18. "Co-obligation" means the obligation arising out of granting any personal guarantees, such as joint and several obligations, endorsements ("aval") and sureties, by: (i) a Company under Reorganization in favor of a Company under Reorganization in relation to a Credit; (ii) a Company under Reorganization in favor of a Third Party in relation to any Credit, or (iii) a Third Party in favor of a Company under Reorganization in relation to a Credit. -------------------------------------------------------

1.1.19. "Credits": are the credits and obligations, materialized or contingent, net or gross, subject of judicial/administrative/arbitration claims initiated or





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

not, whether or not related to the List of Creditors of the Companies under Reorganization , whether or not subject to Court-supervised Reorganization. ---------------
--------------------------------------------------------

1.1.20. "Secured Credits": are credits existing in relation to the Companies under Reorganization secured by in rem Guarantees(e.g. pledge and mortgage), in accordance with article 41(II) of the LFR, up to the value of the encumbered asset, existing on the Date of Filing, in accordance with the values attributed in the List of Creditors. ---------------------------------------------
--------------------------------------------------------

1.1.21. "Secured Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.2.1. -------------------------------------------
--------------------------------------------------------

1.1.22. "Bankruptcy Credits" are Labor Credits, Secured Credits, Unsecured Credits and ME/EPP Credits as well as other Credits subject to Court-Supervised Reorganization and which, as a result, may be restructured by this Plan pursuant to the terms of the LFR, including any Credits that are recognized as being subject to Court-Supervised Reorganization within the context of qualification or challenges to Credits. ------------------------------------
--------------------------------------------------------

1.1.23. "Bankruptcy Credits Guaranteed by Third Party" has the meaning ascribed to it in Clause 3.7.9.2. -------------
--------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.24. "Bankruptcy Credits by Guarantee Granted by Companies under Reorganization" has the meaning ascribed to it in Clause 3.7.9.1. ---------------------------------------------------------------------------------------------

1.1.25. "Credits Eligible for Subscription of Payment Instruments" means, collectively, (i) Secured Credits Eligible for Subscription of Payment Instruments; (ii) Unsecured Financial Credits Eligible for Subscription of Payment Instruments; (iii) Unsecured Non-Financial Credits Eligible for Subscription of Payment Instruments; and (iv) ME/EPP Credits Eligible for Subscription of Payment Instruments. ---------------------------------------------------------------------------------------------------

1.1.26. "Non-bankruptcy Credits" means credits held against Companies under Reorganization: (i) whose triggering event is subsequent to the Date of Filing; (ii) derived from contracts entered into by the Date of Filing which are not subject to the effects of this Plan in accordance with article 49,§§ 3 and 4 of the LFR, such as statutory liens in guarantee, fiduciary guarantee or commercial lease agreements; (iii) other Credits not subject to Court-supervised Reorganization under the LFR; or (iv) Credits recognized as non-bankruptcy credits in the scope of credit challenges. With respect to Credits secured by statutory lien or fiduciary guarantee pursuant to the terms of this item (ii), the remaining balance of the Credits after eventual foreclosure or full monetization of the relevant, is not included, for all





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

purposes, in the definition of Non-Bankruptcy Credits, and shall receive the treatment granted to the Unsecured Credits. -----------------------------------------------------------------------------------------------------------

1.1.27. "Illiquid Credits": are contingent or illiquid Bankruptcy Credits, the subject of Lawsuits or Arbitration Proceedings, whether initiated or not, derived from any triggering events by the Date of Filing, which may be considered as Bankruptcy Credits and, as a result, may be restructured by this Plan, pursuant to the terms of the LFR, as Secured Credits, *Intercompany* Credits, ME/EPP Credits, Unsecured Credits or Labor Credits, as applicable. -------------------------------------------------------------------------------------------------------

1.1.28. "*Intercompany* Credits": are the Bankruptcy Credits whose creditor is a company that is part of the Odebrecht Group and/or its direct or indirect Controlling companies, Subsidiaries or companies under common Control. -----------------------------------------------------------------

1.1.29. "ME/EPP Credits": are Bankruptcy Credits held by an individual entrepreneur, EIRELI, a business company and/or a limited partnership, provided that classified as small businesses and small companies, as defined in Complementary Law No. 123, dated of December 14, 2006, and as provided in articles 41, Clause IV and 83, Clause IV, d, of the LFR. -----------------------------------------------------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.30. "ME/EPP Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.4.2.1. ----------------------------------------------------------------------------------------------

1.1.31. "Unsecured Credits": are Unsecured Bankruptcy Credits, with special privilege, with general privilege or subordinated, as provided in articles 41, III and 83, VI of the LFR, in addition to the residual balance arising from the foreclosure of any in rem or fiduciary guarantee. For the purposes of this Plan, Unsecured Credits include Unsecured Financial Credits and Unsecured Non-Financial Credits, according to the meanings attributed in Clauses 1.1.32 and 1.1.36 respectively. ---------------------------------------------------------------------------------

1.1.32. "Unsecured Financial Credits" are those Unsecured Financial Credits arising from operations within the National Financial System, with insurance companies, foreign financial institutions, investment or equity funds, or involving foreign structures similar to investment or equity funds, *private equity*, and/or issues of debt instruments in domestic and foreign markets, including but not limited to issues of *notes* or *bonds*, which shall be restructured in accordance with Clause 3.3.1. For purposes of this Plan, Unsecured Financial Credits include any and all Unsecured Credits held by a financial institution or any company of its economic group, domestic or foreign, regardless of its origin. ----------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



Pg 233 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 370

1.1.33. "Unsecured Financial Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.3.1.2.1. ------------------------
--------------------------------------------------------------

1.1.34. "Unsecured Financial Credits Option A": has the meaning ascribed to it in Clause 3.3.1.1. ------------------
--------------------------------------------------------------

1.1.35. "Unsecured Financial Credits Option B": has the meaning ascribed to it in Clause 3.3.1.2. ------------------
--------------------------------------------------------------

1.1.36. "Unsecured Non-Financial Credits" are all Unsecured Credits, which are not Unsecured Financial Credits, and shall be restructured in accordance with Clause 3.3.2. --------------------------------------------
--------------------------------------------------------------

1.1.37. "Unsecured Non-Financial Credits Eligible for Subscription of Payment Instruments" has the meaning ascribed to it in Clause 3.3.2.2.1. ------------------------
--------------------------------------------------------------

1.1.38. "Unsecured Non-Financial Credits Option A": has the meaning ascribed to it in Clause 3.3.2.1. --------------
--------------------------------------------------------------

1.1.39. "Unsecured Non-Financial Credits Option B": has the meaning ascribed to it in Clause 3.3.2.2. --------------
--------------------------------------------------------------

1.1.40. "Unsecured Related Party Credits" means Unsecured Credits held by Related Parties, which shall be restructured in accordance with Clause 3.3.4. --------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

---------------------------------------------------------

1.1.41. "Late Credits" are Bankruptcy Credits that are recognized by supervening judicial or administrative decision, or that are included in the List of Creditors as a result of any credit entitlement, credit challenges or any other incident or request of any nature formulated for the same purpose, provided that submitted after the legal deadlines mentioned in articles 7, paragraphs 1 and 2, and 8 of the LFR, pursuant to the provisions of article 10 of the LFR, which may be restructured by this Plan, pursuant to the terms of the LFR, as Secured Credits, *Intercompany* Credits, ME/EPP Credits, Unsecured Credits or Labor Credits, as applicable. ---------------------------------

---------------------------------------------------------

1.1.42. "Labor Credits": are Bankruptcy Credits and rights derived from the labor legislation or arising from an occupational accident at work, pursuant to the terms of articles 41, Clause I, and 83, Clause I, of the LFR, which maintain the nature of alimony on the Date of Judicial Confirmation of the Plan. --------------------------------

---------------------------------------------------------

1.1.43. "Related Party Labor Credits" are those Labor Credits held by Related Parties, which shall be restructured in accordance with Clause 3.1.2. -------------

---------------------------------------------------------

1.1.44. "Creditors" are the natural persons or legal entities holding Credits, whether or not subject to the





Pg 235 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 372

effects of the Plan, whether or not listed on the List of Creditors. ----------------------------------------------------------------------------------------------------------

1.1.45. "Secured Creditors": are holders of Secured Credits. ----------------------------------------------------------------------------------------------------------

1.1.46. "Bankruptcy Creditors" are holders of Bankruptcy Credits. ----------------------------------------------------------------------------------------------------------

1.1.47. "Non-bankruptcy Creditors" are holders of Non-Bankruptcy Credits. ------------------------------------------------------------------------------------------

1.1.48. "ME/EPP Creditors" are holders of ME/EPP Credits. ----------------------------------------------------------

1.1.49. "Unsecured Creditors" are holders of Unsecured Financial Credits and the holders of Unsecured Non-Financial Credits. ------------------------------------------------------------------------------------------

1.1.50. "Unsecured Financial Creditors" are the holders of Unsecured Financial Credits. ------------------------------------------------------------------------------------------

1.1.51. "Unsecured Financial Creditors Option B": are the holders of Unsecured Financial Credits Option B. -----------------------------------------------------------------------

1.1.52. "Unsecured Non-financial Creditors" are holders of Unsecured Non-Financial Credits. ----------------------------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.53. "Unsecured Non-Financial Creditors Option A": are the holders of Non-Financial Unsecured Credits Option A. ----------------------------------------------------------------

1.1.54. "Unsecured Non-Financial Creditors Option B": are the holders of Unsecured Non-Financial Credits Option B. ----------------------------------------------------------------

1.1.55. "Late Creditors" are holders of credits paid late. -------------------------------------------------------------

1.1.56. "Labor Creditors" are holders of Labor Credits. --------------------------------------------------------------

1.1.57. "Related Party Labor Creditors" are holders of Related Party Labor Credits. ------------------------------------------------------------------------------------------

1.1.58. "Amortization Date" is the date on which Cash for Distribution shall be used to amortize the Payment Instruments, in accordance with the Rule of Use of Cash for Distribution. For purposes of this Plan, the Amortization Date shall always occur by the last Business Day of January, March, May, July, September and November. --------------------------------------------------------------

1.1.59. "Date of Judicial Confirmation of the Plan": is the date on which the decision of Judicial Confirmation of the Plan issued by the Reorganization Court is published in the Diário de Justiça Eletrônio do Estado de São Paulo. -------------------------------------------------------------

1.1.60. "Date of Filing": is June 17, 2019, the date on which the request for court-supervised reorganization of the Companies under Reorganization was filed. -------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

------------------------------------------------------------

1.1.61. "Final Date for Payment of Labor Credits": has the meaning ascribed to it in Clause 3.1.1, item (iv). --------

------------------------------------------------------------

1.1.62. "Consecutive Day" is any day of the month, so that periods counted in Consecutive Days are not suspended or interrupted. ------------------------------------------------

------------------------------------------------------------

1.1.63. "Business Day": any day other than Saturday, Sunday or holiday in the City of São Paulo, State of São Paulo; furthermore, it shall not be a Business Day any day on which, for any reason, there is no banking business in the City of São Paulo, State of São Paulo. Exclusively for acts that must be performed in other districts, "Business Day" also means any day that, cumulatively, is not a Saturday, Sunday or holiday in the respective location, in the City of São Paulo, State of São Paulo, or any day on which, for any reason, there is no banking in the City of São Paulo, State of São Paulo. ---------------------------

------------------------------------------------------------

1.1.64. "Dividends from Subsidiaries": means the funds received, in cash and available for use by the Companies under Reorganization, as dividends, interest on equity, capital reduction or any other form of shareholder remuneration, due to corporate interest held by the Companies under Reorganization. --------------------------

------------------------------------------------------------





Pg 238 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 375

1.1.65. "DTC": is The Depository Trust Company, duly incorporated under the laws of the State of New York, United States of America, which provides a platform for registration and trading of debt instruments issued and negotiable (Bonds) in U.S. dollars. ----------------------------------------------------------------------------

1.1.66. "Issuer/ Principal Debtor" has the meaning ascribed to it in **Annex 1.1.73**, item 1. ---------------------------------------------------------------------------

1.1.67. "EORJ" has the meaning ascribed to it in the preamble. ---------------------------------------------------------------------------

1.1.68. "In Rem Guarantees": are in rem guarantee rights (e.g. pledge and mortgage, in accordance with Title X of the Civil Code) under this Plan and/or article 41, II of the LFR, which guarantee the Secured Credits. ---------------------------------------------------------------------------

1.1.69. "Guarantors": has the meaning ascribed to it in **Annex 1.1.73**, item 2. ---------------------------------------------------------------------------

1.1.70. "Odebrecht Group" has the meaning ascribed to it in recital (i). ---------------------------------------------------------------------------

1.1.71. "*Chapter 15* Confirmation" has the meaning ascribed to it in Clause 4.7. ---------------------------------------------------------------------------

1.1.72. "Judicial Confirmation of the Plan": is the judicial decision rendered by the Court-supervised

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

Reorganization Court that confirms the Plan and, consequently, grants the Court-supervised Reorganization, pursuant to article 58, *caput* and/or §1 of the LFR. -------
------------------------------------------------------------

1.1.73. "Payment Instruments" are (i) Payment Instruments - Bonds; (ii) Payment Instruments - Private Debentures; (iii) Payment Instruments - Public Debentures; and (iv) Payment Instruments - Plan, which shall be delivered to the Bankruptcy Creditors, as applicable, and which shall grant their respective holders the right to receive Cash for Distribution, in compliance with the Rule of Use of the Cash for Distribution, on a *pro rata* basis, whose terms and conditions are detailed in **Appendix 1.1.73.** -----
------------------------------------------------------------

1.1.74. "Payment Instruments - *Bonds*" has the meaning ascribed to it in Clause 4.1.4 below. ---------------------
------------------------------------------------------------

1.1.75. "Payment Instruments - Private Debentures": has the meaning ascribed to it in Clause 4.1.2 below. ---------
------------------------------------------------------------

1.1.76. "Payment Instruments - Public Debentures": has the meaning ascribed to it in Clause 4.1.3 below. -------------
------------------------------------------------------------

1.1.77. "Payment Instruments - Plan" has the meaning ascribed to it in Clause 4.1.1 below. ---------------------
------------------------------------------------------------

1.1.78. "IPCA": is the National Extended Consumer Price Index calculated monthly by the Brazilian Institute of





Pg 240 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 377

Geography and Statistics (IBGE). In the absence of verification and/or disclosure of the index number for a period longer than five (5) Business Days after the expected date of its disclosure, or in the event of its extinction or by legal imposition or judicial determination, the IPCA shall be replaced by the index that economically reflects its quality or, in its absence, the last index disclosed. ----------------------------------
------------------------------------------------------------

1.1.79. "Court-Supervised Reorganization Court": is the 1st Circuit Court of Bankruptcy and Court-Supervised Reorganization of the Central Civil Jurisdiction District of São Paulo, State of São Paulo. --------------------------
------------------------------------------------------------

1.1.80. "KIEPPE" has the meaning ascribed to it in the preamble. ----------------------------------------------------
------------------------------------------------------------

1.1.81. "Reports" are, collectively, the economic feasibility report and the economic-financial report, prepared pursuant to article 53, clauses II and III, respectively, of the LFR, included in **Annex 1.1.81 (a)** and **(b)** of this Plan. -----------------------------------------
------------------------------------------------------------

1.1.82. "Corporation Law": is the Federal Law No. 6404 dated of December 15, 1976. --------------------------------
------------------------------------------------------------

1.1.83. "LFR" has the meaning ascribed to it in the preamble. ----------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

---------------------------------------------------------------

1.1.84. "List of Creditors" is the list of Creditors of the Companies under Reorganization prepared by the Judicial Administrator, as amended by final unappealable judicial decisions recognizing new Bankruptcy Credits or changing the legitimacy, classification or value of already recognized Bankruptcy Credits. ---------------------

---------------------------------------------------------------

1.1.85. "MECTRON" has the meaning ascribed to it in the preamble. ------------------------------------------------

---------------------------------------------------------------

1.1.86. "ODB" has the meaning ascribed to it in the preamble. ------------------------------------------------

---------------------------------------------------------------

1.1.87. "ODBIC" has the meaning ascribed to it in the preamble. ------------------------------------------------

---------------------------------------------------------------

1.1.88. "ODBINV" has the meaning ascribed to it in the preamble. ------------------------------------------------

---------------------------------------------------------------

1.1.89. "OE" has the meaning ascribed to it in the preamble. ------------------------------------------------

---------------------------------------------------------------

1.1.90. "OEB" has the meaning ascribed to it in the preamble. ------------------------------------------------

---------------------------------------------------------------

1.1.91. "OEI" has the meaning ascribed to it in the preamble. ------------------------------------------------





Pg 242 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 379

1.1.92. "OEP" has the meaning ascribed to it in the preamble.

1.1.93. "OFL" has the meaning ascribed to it in the preamble.

1.1.94. "OP Centro Administrativo" has the meaning ascribed to it in the preamble.

1.1.95. "OP Gestão" has the meaning ascribed to it in the preamble.

1.1.96. "Option A - Unsecured Financial Credits": is the Payment Option offered to Unsecured Financial Creditors pursuant to Clause 3.3.1.1.

1.1.97. "Option A - Unsecured Non-Financial Credits": is the Payment Option offered to Unsecured Non-Financial Creditors under Clause 3.3.2.1.

1.1.98. "Option B - Unsecured Financial Credits": is the Payment Option offered to Unsecured Financial Creditors under Clause 3.3.1.2.

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

1.1.99. "Option B - Unsecured Non-Financial Credits": is the Payment Option offered to Unsecured Non-Financial Creditors under Clause 3.3.2.2.





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

1.1.100. "Payment Options" has the meaning ascribed to it in Clause 2.2.2. ----------------------------------------

1.1.101. "OPE" has the meaning ascribed to it in the preamble. ----------------------------------------

1.1.102. "OPI" has the meaning ascribed to it in the preamble. ----------------------------------------

1.1.103. "OPINV" has the meaning ascribed to it in the preamble. ----------------------------------------

1.1.104. "OPISA" has the meaning ascribed to it in the preamble. ----------------------------------------

1.1.105. "OPP" has the meaning ascribed to it in the preamble ----------------------------------------

1.1.106. "OSP" has the meaning ascribed to it in the preamble. ----------------------------------------

1.1.107. "OSP INV" has the meaning ascribed to it in the preamble. ----------------------------------------

1.1.108. "Payments in Cash" has the meaning ascribed to it in Clause 3.3.2.2. ----------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

1.1.109. "Related Parties": are the individuals or legal entities that are, on the Date of the Request, directly or indirectly, individually or collectively, controlling shareholders of any companies of the Odebrecht Group, including the Companies under Reorganization and Petitioners, as well as their spouses or relatives, by blood or similar, collateral up to the 3rd (third) degree, ascendant or descendant. ------------------------------------
------------------------------------------------------------

1.1.110. "Percentage of Payments": means a percentage related to the amortizations or payments, on any account, of Credits taken or guaranteed by the Companies under Reorganization, to be calculated by the Monitoring Agent according to the calculation method detailed in Annex 1.1.110. ---------------------------------------------------
------------------------------------------------------------

1.1.111. "Plan" has the has the meaning ascribed to it in the preamble. ----------------------------------------------
------------------------------------------------------------

1.1.112. "Period of Adherence to Substantial Consolidation" has the meaning ascribed to it in Clause 2.5. -------------------------------------------------------
------------------------------------------------------------

1.1.113. "Grace Period" has the meaning ascribed to it in item 5 of **Annex 1.1.73.** ------------------------------------
------------------------------------------------------------

1.1.114. "Election Term" has the meaning ascribed to it in Clause 4.2. ----------------------------------------------





Pg 245 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

p. 382

---------------------------------------------------------------

1.1.115. "Publication of the Election Board" has the meaning ascribed to it in Clause 4.3.2. -------------------

---------------------------------------------------------------

1.1.116. "Court-Supervised Reorganization" has the meaning ascribed to it in the preamble. ---------------------------

---------------------------------------------------------------

1.1.117. "Companies under Reorganization" has the meaning ascribed to it in the preamble, subject to the provisions of Clause 1.7. --------------------------------------------

---------------------------------------------------------------

1.1.118. "Funds for Payment of Ordinary Expenses": means any and all amounts received pursuant to the terms of Clause 7.2, limited to the overall amount of BRL 1,000,000.000.00 (one billion reais), which shall be invested primarily in the ordinary maintenance of the Companies under Reorganization's activities, in the payment of general and administrative expenses and in the compliance with the payment obligations of Labor Credits, Unsecured Non-Financial Credits and ME/EPP Credits provided in this Plan. ------------------------------------

---------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

1.1.119. "Rule of Use of Cash for Distribution": means the following rule of allocation of cash for distribution: ----

(i) until December 31, 2025 or until full payment of the amount of BRL 150,000,000.00 (one hundred and fifty million reais) provided for in Clause 3.3.2.1.2, whichever





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

occurs first, the Cash for Distribution shall be allocated as follows: ------------------------------------------------------------------------------------------------------------

(a) 10% of the Cash for Distribution shall be allocated for payment of Unsecured Non-Financial Credits Option B pursuant to Clause 3.3.2.1.2; ------------------------------------------------------------------------------------------

(b) 90% of the Cash for Distribution shall be allocated for amortization of the Payment Instruments and to the use by the Companies under Reorganization as described in item (iii) below, observing the following proportions and conditions: ------------------------------------------------------------------------------------------------------------

| % of Cash for Distribution allocated to | | The Condition |
|---|---|---|
| **Amortization Payment Instruments** | **Use of the Companies under Reorganization** | |
| 72% | 18% | Until the Percentage of Payments reaches 35% |
| 67,5% | 22,5% | If the Percentage of Payments is higher than 35% or equal to 45% |
| 63% | 27% | If the Percentage of Payments is greater than 45% or equal to 50% |
| 58,5% | 31,5% | If the Percentage of Payments is greater than 50% or equal to 55% |
| 54% | 36% | If the Percentage of Payments is higher than 55% or equal to 60% |
| 49,5% | 40,5% | If the Percentage of Payments is greater than 60% or equal to 65% |
| 45% | 45% | If the Percentage of Payments is higher than 65% |

------------------------------------------------------

(ii) and, after the occurrence of the events described in item (i) above, the Cash for Distribution shall be allocated as follows: ------------------------------------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

| % of Cash for Distribution allocated to | | Condition |
|---|---|---|
| Amortization Payment Instruments | Use of the Companies under Reorganization | |
| 80% | 20% | Until the Percentage of Payments reaches 35% |
| 75% | 25% | If the Percentage of Payments is higher than 35% or equal to 45% |
| 70% | 30% | If the Percentage of Payments is greater than 45% or equal to 50% |
| 65% | 35% | If the Percentage of Payments is greater than 50% or equal to 55% |
| 60% | 40% | If the Percentage of Payments is higher than 55% or equal to 60% |
| 55% | 45% | If the Percentage of Payments is greater than 60% or equal to 65% |
| 50% | 50% | If the Percentage of Payments is higher than 65% |

------------------------------------------------------------

(iii) Use of the Companies under Reorganization. Provided that the amortizations of the Payment Instruments are made, as provided in items (i) and (ii) above, the distributions intended for Use by the Companies under Reorganization pursuant to the terms of tables above shall be reserved for use by the Companies under Reorganization, at their sole discretion, and shall not integrate the amount of Available Cash in the next calculations of Cash for Distribution, and may be allocated to profit distributions, investments, loans, contributions or any other movement of funds between the Companies under Reorganization, their Affiliates, associated companies or Controlled companies, as permitted by law, **provided that, cumulatively** (a) the original outstanding balance of Payment Instruments has been reduced by at least BRL 10,000,000,000.00 (ten billion Reais), this amount not including the amount excepted in the final part of item





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1(i)(a) of **Attachment 1.1.110**; and (b) any disposals, foreclosures or payment in kind of assets owned by ODB and granted as a fiduciary guarantee for the benefit of Creditors in the amount of at least BRL 1,000,000,000.00 (one billion Reais) or (b.2) four (4) years have elapsed from the Date of Judicial Confirmation of the Plan, whichever occurs first. Such funds may not be reserved and, if already reserved, they shall be fully used for amortization of the Payment Instruments in the event of any discussion or judicial questioning by Petitioners in the event (b.1), which is also applicable for purposes of this prohibition to the assets of other Petitioners. ------------------------------------------------------------------

1.1.120. "Petitioners" has the meaning ascribed to it in the preamble. ---------------------------------------------------------------------------------------------------------

1.1.121. "ME/EPP Credits Balance" has the meaning ascribed to it in Clause 3.4.2. -------------------------------------------------------------------------------------------

1.1,122. "Minimum wage": means the minimum wage, fixed by law and adjusted annually, pursuant to article 7, Clause IV of the Federal Constitution of the Federative Republic of Brazil of 1988, chapter III of Decree-Law No. 5,452 of May 1st, 1943, and Provisional Measure No. 919 of January 30, 2020. -------------------------------------------------------------------------------------------------------

1.1.123. "Securities Act" means the U.S. Securities Act of 1933, as amended from time to time. -----------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

---------------------------------------------------------------

1.1.124. "<u>Atvos Companies</u>": are, collectively, the (1) Atvos Agroindustrial companies S.A. - Em Recuperação Judicial, joint stock company, with registered office in the city of São Paulo, state of São Paulo, at Rua Lemos Monteiro, n° 120, 13th floor, Butantã, CNPJ/MF under n° 08.636.745/0001-53; (2) Atvos Agroindustrial Participações S.A. - Em Recuperação Judicial, a joint-stock company, with registered office in the city of São Paulo, state of São Paulo, at Rua Lemos Monteiro, n° 120, 13° andar, Butantã, enrolled with CNPJ/MF n° 08.842.690/0001-38; (3) Pontal Agropecuária S.A. - Em Recuperação Judicial, a company, with its headquarters in the city of Teodoro Sampaio, state of São Paulo, at Fazenda Alcídia, Zona Rural, enrolled with CNPJ/MF under No. 46.453.403/0001-97(4) Rio Claro Agroindustrial S.A. – Em Recuperação Judicial, joint-stock company, with registered office in the municipality of Teodoro Sampaio, state of São Paulo, at Fazenda Alcídia, s/n, Zona Rural, CNPJ/MF No. 46.453.403/0001-97;(5) Usina Conquista Do Pontal S.A. - Em Recuperação Judicial, joint-stock company, with registered office in the municipality of Mirante do Paranapanema, state of São Paulo, at Fazenda Conquista do Pontal, Rodovia SP 563, km 13, s/n, Rural Area, CNPJ/MF No. 07.298.800/0001-80; (6) Agro Energia Santa Luzia S.A. - Em Recuperação Judicial, joint-stock company, with registered office in the municipality of Nova Alvorada do Sul, State of Mato Grosso do Sul, at Fazenda São Sebastião, Highway





Pg 250 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 387

BR 267, km 231, s/n, CNPJ/MF No. 08.906.558/0001-42; (7) BRENCO - Companhia Brasileira De Energia Renovável - Em Recuperação Judicial, joint-stock company, with registered office in the municipality of São Paulo, State of São Paulo, (8) Destilaria Alcídia S.A. - Em Recuperação Judicial, joint stock company, with registered office in the city of Teodoro Sampaio, state of São Paulo, at Fazenda Alcídia, s/n, Zona Rural, CNPJ/MF no. 46,448,270/0001-60; and (9) Usina Eldorado S.A. - Em Recuperação Judicial, a joint stock company, with registered office in the municipality of Rio Brilhante, State of Mato Grosso do Sul, at Fazenda São Pedro, s/n, Highway MS 145, km 49, directly adjacent to Ipezal/Deodapolis, CNPJ/MF under No. 05.620.523/0001-54, which filed the court-supervised reorganization proceeding under No. 1050977-09.2019.8.29.0000, in progress before the 1st Court of Bankruptcy and Court-Supervised Reorganization of the Central Civil Jurisdiction of the Capital of São Paulo. ------------------------------------------------------------------------------------------------

1.1.125. "Third Party" means a legal entity other than the Company under Reorganization of which the Bankruptcy Creditors hold credits and rights against, whether for (a) a principal obligation with Co-obligation or in rem and/or fiduciary guarantee assumed or provided by a Company under Reorganization; and/or (b) Co-obligation or in rem and/or fiduciary guarantee assumed or provided by the Third Party. ----------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

1.1.126. "Substantial Consolidation Joinder Agreement" has the meaning ascribed to it in Clause 2.5.

1.1.127. "Original Term of the Stay Period": means December 16, 2019, the date on which the period provided for in article 6, §4 of LFR expired.

1.1.128. "TR" is the reference rate established by Act 8,177/1991, as ascertained and disclosed by the Central Bank of Brazil, whose proceeds, when expressly provided in this Plan, shall be added to the balance of the par value of the Credit for purposes of calculation of the monetary value of the obligations set forth in this Plan, which shall be due on the dates of payment of the amortization tranche of the referred obligations. In case of temporary unavailability of the TR, the last index number disclosed, calculated *pro rata temporis* by Business Days, shall be used instead, however, no financial compensation shall apply upon disclosure of the proper index number. In the absence of ascertainment and/or disclosure of the index number for a period longer than five (5) Business Days after the expected date of its disclosure, or even in the event of its extinction or by legal imposition or judicial determination, the TR shall be replaced by the simple average of the TR rate verified in the 12 (twelve) months prior to the Date of Confirmation of the Plan, calculated *pro rata temporis* per Business Days.





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

---------------------------------------------------------

1.1.129. "UPI" is the Isolated Production Unit pursuant to article 60 of LFR, which may be comprised of goods and/or rights. --------------------------------------------------

---------------------------------------------------------

1.1.130. "*U.S. Bankruptcy Code*": means Title 11 of the United States Code 11 U.S.C. §§ 11 *et seq*. ----------------

---------------------------------------------------------

**1.2. Clauses and Annexes.** Unless otherwise specified, all Clauses and Annexes mentioned in this Plan refer to Clauses and Annexes to this Plan. References to Clauses, sub-clauses or items in this Plan also refer to their respective sub-clauses or items. The Annexes are included and are an integral part of the Plan for all legal purposes. ----------------------------------------------

---------------------------------------------------------

**1.3. Titles.** The titles of the Chapters, Clauses, sub-clauses and items in this Plan have been included solely for reference and should not affect their interpretation or the content of their provisions. -----------------------

---------------------------------------------------------

**1.4. References.** References to any documents or instruments include all respective amendments, consolidations and complementation, unless expressly provided otherwise. Whenever applicable, references to the Companies under Reorganization should be interpreted as being the legal entities that succeed them in their obligations due to corporate operations contemplated or





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

permitted under this Plan, and any others that are necessary for the resizing and increase of the organizational efficiency and cost reduction of the Odebrecht Group. ------------------------------------------
-----------------------------------------------------------

**1.5. Legal provisions.** References to legal provisions and laws shall be construed as references to such provisions as are in force on or as of a date specifically determined by the context. ------------------------------------------
-----------------------------------------------------------

**1.6. Deadlines.** All periods provided in this Plan shall be counted as provided in article 132 of the Civil Code, ignoring the day of commencement and including the day of expiration. Any terms of this Plan (whether counted in Business Days or not) whose initial or final term falls on a day that is not a Business Day, shall automatically be extended to the immediately following Business Day. -------
-----------------------------------------------------------

**1.7. Adherence to the terms and conditions of this Plan.** In the event the Adherence to Substantial Consolidation is approved by the creditors of one or more Petitioners, all definitions containing references to a "Company under Reorganization", its assets, liabilities, rights and obligations shall be construed to include the assets, liabilities, rights and obligations of the Petitioners in question. -------------------------------------------------
-----------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**1.8. Non-Bankruptcy Credits.** Nothing in this Plan shall be construed or considered to cause (i) novation of Non-Bankruptcy Credits or (ii) alteration, modification or waiver of any obligations of any Companies under Reorganization or of the rights of any Non-Bankruptcy Creditors in respect of Non-Bankruptcy Credits, including, without limitation, any guarantees provided under such Non-Bankruptcy Credits or acknowledgments provided by the Companies under Reorganization. ----------------------------
------------------------------------------------------------

**1.9. Conflict.** In the event of conflict between the provisions of (i) this Plan and its Annexes, the terms and conditions of the Plan shall prevail; and (ii) between **Annex 1.1.73** and **Annexes 4.1.2**, and **4.1.3**, the terms and conditions of **Annex 1.1.73** shall prevail. -----------------
------------------------------------------------------------

**2. PRIMARY MEANS OF REORGANIZATION** ------------------------
------------------------------------------------------------

**2.1. Overview.** The Companies under Reorganization propose the adoption of the measures indicated in Clauses 2.2, 2.3 and 2.4 below, as a way to overcome its current and momentary economic and financial crisis and to continue its activities. ------------------------------------------
------------------------------------------------------------

**2.2. Debt restructuring.** The Companies under Reorganization shall restructure the debts contracted with the Bankruptcy Creditors, as detailed in Clause 3 below. --
------------------------------------------------------------





Pg 255 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 392

2.2.1. Payments by the Companies under Reorganization. Considering (i) the possibility of Adherence to the Substantial Consolidation; (ii) that the Available Cash and the Cash for Distribution shall be obtained by distinct Companies under Reorganization; (iii) the administration of the Companies under Reorganization' funds is concentrated in ODB, the consolidating and managing company of equity holdings; (iv) there are many cross guarantees amongst the Companies under Reorganization , as well as several *Intercompany* Credits; and, also (v) the objective of guaranteeing the implementation of this Plan and enabling a global solution for the operational and financial reorganization of all Companies under Reorganization, the Credits and payment obligations in this Plan shall be, on the date of the Judicial Confirmation of the Plan, centralized in ODB, any company that succeeds ODB, any Company under Reorganization, observing the provisions set forth in Clause 3 below and in Annex 1.1.73. -----------------------
-----------------------------------------------------------

2.2.2. Payment options at the Creditor's choice. The Plan provides certain Bankruptcy Creditors the right to choose from a number of options offered, the alternative of receiving their Bankruptcy Credits (indistinctly, "Payment Options"), pursuant to Clause 4.1 below. The granting of the possibility to choose between the Payment Options is a measure that promotes isonomic treatment among the

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Bankruptcy Creditors as it allows each Bankruptcy Creditor to choose the option that best suits its interests. -------
------------------------------------------------------------

2.2.3. Advance of Payments. Companies under Reorganization may, at any time, accelerate any payments on a *pro rata* basis among the Labor Creditors within the limits provided in Clause 3 below. ----------------------------------------
------------------------------------------------------------

**2.3. Disposal of Property and Constitution of UPIs.** The Companies under Reorganization are herein authorized to sell, rent, lease, give in payment, remove, encumber or offer in guarantee, including judicial guarantee, property, assets and/or rights that are part of its current assets, as well as property, assets and/or rights that are part of its non-current assets, observing in all cases the terms, conditions and restrictions described in Clause 5, and also the net funds obtained with eventual disposal, including litigious assets, present or future, national or foreign, shall be used as established in this Plan always observing Clause 1.1.11. ----------------------
------------------------------------------------------------

**2.4. Corporate Reorganization.** The Companies under Reorganization are authorized to carry out corporate reorganization operations, including those necessary to implement this Plan, including mergers, acquisitions, acquisition of shares, spin-offs and transformations, or promote asset transfers within the Odebrecht Group, subject to the terms and conditions of Clause 6.1. --------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

------------------------------------------------------------

**2.5. Adherence to Substantial Consolidation:** any of the Petitioners may, irrevocably and irreversibly, join this Plan, by sending the declaration in **Annex 2.5**, accompanied by a copy of the minutes of the general meeting of creditors that resolve to adhere this Plan ("Instrument of Adherence to the Substantial Consolidation"), provided that such acts are performed within ninety (90) Consecutive Days as of the Date of Judicial Confirmation of the Plan ("Period of Adherence to the Substantial Consolidation"). By means of the Instrument of Adherence to the Substantial Consolidation, the relevant Petitioner, its creditors, as well as the Companies under Reorganization and its Bankruptcy Creditors, acknowledge and agree that, by virtue of the adherence, all the Bankruptcy Credits, assets and liabilities of said Petitioner shall become, for all purposes, part of this Plan. -------------------------------------------------------

------------------------------------------------------------

**3. PAYMENT OF CREDITORS** -------------------------------------

------------------------------------------------------------

**3.1. Labor Credits.** ----------------------------------------

3.1.1. General rule. The Labor Creditors, except the Labor Creditors Related Parties, shall have their Labor Credits restructured and paid in national funds, up to the limit of BRL 3,000,000.00 (three million reais), always observing the limit of the value of the respective Labor





Pg 258 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 395

Credit, in up to 4 (four) installments, observing the following rules: ---------------------------------------------------------------------------------------------------

(i) *1st Installment*. Payment of up to BRL 650,000.00 (six hundred and fifty thousand reais), to be paid to each of the Labor Creditors, in installment due on the last Business Day of the 12th (twelfth) month counted from the Original Term of the Stay Period; -----------------------------------------------------------------------------------

(ii) *2nd Installment*. Eventual remaining balance of Labor Credits existing after the payment provided for in item (i) above shall receive payment of up to BRL 650,000.00 (six hundred and fifty thousand reais), in installments due on the last Business Day of the 12th (twelfth) month from the payment contemplated in item (i) above; ----------

(iii) *3rd Installment*. Eventual remaining balance of Labor Credits existing after the payment contemplated in items (i) and (ii) above, shall receive payment of up to BRL 850,000.00 (eight hundred and fifty thousand reais), in installments due on the last Business Day of the 12th (twelfth) month from the payment contemplated in item (ii) above; and ------------------------------------------------------------------------------------------

(iv) *4th Installment*. Eventual remaining balance of Labor Credits existing after the payment contemplated in items (i), (ii) and (iii) above shall receive payment of up to BRL 850,000.00 (eight hundred and fifty thousand reais), in installments due on the last Business Day of the 12th

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 259 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 396

(twelfth) month as of the payment contemplated in item (iii) above ("Final Date for Payment of Labor Credits"). ---------------------------------------------------------------

3.1.1.1. Deferred payment. The payments contemplated in items (ii) and (iii) above may be postponed to the payment dates contemplated for the following year and until the Final Payment Date of Labor Credits provided that the Companies under Reorganization receive Dividends from Subsidiaries in an amount below RL 100,000,000.00 (one hundred million reais) in the respective fiscal year of payment. ------------------------------------------------------------------------------------------------------------

3.1.1.2. Interest and Inflation adjustment. Interest and inflation adjustment on the respective Labor Credit, corresponding to the IPCA from the Date of Filing until the implementation of the payments contemplated in Clause 3.1.1 above. ------------------------------------------------------------------------------------------------------

3.1.1.3. Novation. The Labor Credits shall be novated, and will corresponding to BRL 3,000,000.00 (three million reais), with the interest and inflation adjustment contemplated in Clause 3.1.1.2 above, if the amount of the Labor Credit of the respective Bankruptcy Creditor is higher than BRL 3,000,000.00 (three million reais). ----------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

3.1.2. Related Parties Labor Credits. Labor Creditors that are Related Parties shall have their Related Party Labor Credits restructured and paid in domestic currency, up to





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

a limit of 150 (one hundred and fifty) Minimum Wages, in cash, in a single installment, due on the last Business Day of the 12th (twelfth) month counted from the Original Term of the Stay Period. ----------------------------------
------------------------------------------------------------

3.1.2.1. Interest and Inflation adjustment. Interest and inflation adjustment on the respective Related Party Labor Credit, corresponding to the IPCA from the Date of Filing until the implementation of the payment contemplated in Clause 3.1.2 above. ----------------------------------------
------------------------------------------------------------

3.1.2.2. Novation. The Related Party Labor Credits shall be novated, corresponding to the equivalent of 150 (one hundred and fifty) Minimum Wages, with interest and adjustment contemplated in Clause 3.1.2 above, in case the amount of the Related Party Labor Credits of the respective Bankruptcy Creditor is higher than 150 (one hundred and fifty) Minimum Wages. -------------------------
------------------------------------------------------------

3.1.3. Late Labor Credits. Late Labor Credits shall be paid as described in Clauses 3.1.1 and 3.1.2, as applicable, with the first payment due on the last Business Day of the 12th (twelfth) month from the date of the certificate of final unappealable decision determining the inclusion of the said Labor Credit in the List of Creditors. --------------------------------------------
------------------------------------------------------------





Pg 261 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 398

3.1.4. Release. The implementation of the payments provided in Clauses 3.1.1 and 3.1.2 necessarily entails the most general and unrestricted release of the Labor Credit in question. ---------------------------------------
------------------------------------------------------------

**3.2. Secured Credits.** The Secured Creditors with in rem Guarantee shall have their Secured Credits restructured and fully paid by means of Payment Instruments, as timely elected, whose terms and conditions of issue, effectiveness, maturity and remuneration are detailed in **Annex 1.1.73.** ------------------------------------------------
------------------------------------------------------------

3.2.1. Subscription Criteria. Each Secured Creditor shall be entitled to receive or subscribe to BRL 1.00 (one Real), as applicable, of face value of Payment Instruments for each BRL 1.00 (one Real), as applicable, in Secured Credits ("Secured Credits Eligible for Subscription of Payment Instruments"). If necessary, the Bankruptcy Credits denominated in foreign currency shall be converted into Brazilian reais or U.S. dollars in accordance with the exchange rates for sale available in the Information System of the Central Bank of Brazil (SISBACEN), on the Business Day immediately prior to the date of the act to be performed under this Plan. ------------------------------
------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

3.2.2. In Rem Guarantees. Secured Credits shall be guaranteed by their respective In Rem Guarantee currently constituted. For the avoidance of doubt, the In Rem





Pg 262 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 399

Guarantees currently constituted for each of the Secured Creditors shall not be shared with the other Bankruptcy Creditors. ------------------------------------------------------------------------------------------------------------

3.2.3. Payment in kind. Secured Creditors who wish to receive the property encumbered with In Rem Guarantee in payment of the respective Secured Credits shall send a notification to the Companies under Reorganization, within 30 (thirty) Consecutive Days counted from the expiry of the Period of Adherence to the Substantial Consolidation and pursuant to Clause 8.3, informing their option, which shall be considered final, definitive, binding, irrevocable and irreversible. The Companies under Reorganization shall perform all acts necessary to implement the payment in kind under the terms agreed with the respective Secured Creditor. ------------------------------------------------------------------------------

3.2.3.1. After the period indicated in Clause 3.2.3 above has elapsed, the payment in kind with assets encumbered with In Rem Guarantee as a form of payment of the respective Secured Credits shall only be implemented if agreed between the Companies under Reorganization and the respective Secured Creditor. ----------------------------------------------------------------------------------------

3.2.3.2. Any remaining balance of Secured Credits, after the implementation of the payment in instalments of the assets encumbered with In Rem guarantee provided in Clauses 3.2.3 and 3.2.3.1 above, shall be considered an

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Unsecured Financial Credit Eligible for Subscription of Payment Instruments. ------------------------------------------------------------------------------------------

3.2.4. Late Secured Credits. Late Secured Credits shall be restructured and paid as described in Clause 3.2 above, and it is certain that (i) the period indicated in Clause 3.2.3 shall only commence after the effective inclusion of said Late Credits in the List of Creditors; and (ii) the respective Secured Creditors shall be entitled to receive all payments made on a date subsequent to the final unappealable decision determining the inclusion of said Late Credits in the List of Creditors. ------------------------------------------------------------------------------

**3.3. Unsecured Credits.** ----------------------------------------------------------------------------------------

3.3.1. Unsecured Financial Credits. The Unsecured Financial Creditors may elect the form of payment of their Unsecured Financial Credits in accordance with one of the following Payment Options, and provided that the Payment Option election procedure described in Clause 4.2 below is followed: ---------------------------------------------------------------------------------------------------

3.3.1.1. Option A - Unsecured Financial Credits. Unsecured Financial Creditors who validly elect this Option A ("Option A - Unsecured Financial Credits") shall have their Unsecured Financial Credits restructured and paid in domestic currency, up to the limit of BRL 150,000.00 (one hundred and fifty thousand reais), in cash, in a single





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

installment, on the last Business Day of the 12th (twelfth) month as of the Plan's Judicial Confirmation Date ("Unsecured Financial Credits - Option A"). ----------
------------------------------------------------------------

3.3.1.1.1. Interest and Inflation adjustment. Interest and inflation adjustment on the respective amount of Unsecured Financial Credits and on the limit of BRL 150,000.00 (one hundred and fifty thousand Reais), contemplated in Clause 3.3.1.1 above, corresponding to the TR since the Date of Filing until the date of effective payment. ---------------
------------------------------------------------------------

3.3.1.1.2. Novation. The Unsecured Financial Credits - Option A shall be novated to correspond to BRL 150,000.00 (one hundred and fifty thousand Reais), with interest and inflation adjustment contemplated in Clause 3.3.1.1 above, in case the amount of the Unsecured Financial Credits - Option A of the respective Bankruptcy Creditor is greater than BRL 150,000.00 (one hundred and fifty thousand Reais). ------------------------------------------------------
------------------------------------------------------------

3.3.1.1.3. Release. The choice of this option and the respective payment envisaged herein necessarily implies in a broad, general and unrestricted release of the Unsecured Financial Credit in question. -----------------------------
------------------------------------------------------------

3.3.1.2. Option B - Unsecured Financial Credits. The Unsecured Financial Creditors that validly elect this Option B ("Option B - Unsecured Financial Credits") shall





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

have their Unsecured Financial Credits restructured and paid in full by means of Payment Instruments, as appropriately elected, the terms and conditions of issue, term, maturity and remuneration detailed in **Annex 1.1.73** ("Unsecured Financial Credits - Option B"). ---------------------------------------------------------------------------

3.3.1.2.1. Subscription Criteria. Each Unsecured Financial Creditor who elects Option B - Unsecured Financial Credits shall be entitled to receive or subscribe to BRL 1.00 (one Real), as applicable, of face value of Payment Instruments for each BRL 1.00 (one Real), as applicable, in Unsecured Financial Credits ("Unsecured Financial Credits Eligible for Subscription of Payment Instruments"). If necessary, the Bankruptcy Credits denominated in foreign currency shall be converted into Brazilian reais or US dollars according to the exchange rates for sale available in the Information System of the Central Bank of Brazil (SISBACEN), on the Business Day immediately prior to the date of the act to be performed under this Plan. -------------------------------------------------------------------

3.3.2. Unsecured Non-Financial Credits. The Unsecured Non-Financial Creditors may elect the form of payment of their Unsecured Non-Financial Credits in accordance with one of the Payment Options described below, and provided that the Payment Option election procedure described in Clause 4.2 below is followed: ----------------------------------------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

3.3.2.1. Option A - Unsecured Non-Financial Credits. Unsecured Non-Financial Creditors who validly elect this Option A ("Option A - Unsecured Non-Financial Credits") shall have their Unsecured Non-Financial Credits restructured and paid in domestic currency, up to the limit of BRL 150,000.00 (one hundred and fifty thousand reais), in cash, in a single installment, on the last Business Day of the 12th (twelfth) month as of the Plan's Judicial Confirmation Date ("Unsecured Non-Financial Credits Option A"). ------------------------------------------------------------------------------------------------

3.3.2.1.1. Interest and Inflation adjustment. Interest and inflation adjustment on the respective amount of Unsecured Non-Financial Credits Option A and on the limit of BRL 150,000.00 (one hundred and fifty thousand reais), contemplated in Clause 3.3.2.1 above, corresponding to the TR from the Date of Filing until the date of effective payment. ----------------------------------------------------------------------------------------------------------

3.3.2.1.2. Novation. The Unsecured Non-Financial Credits Option A shall be novated to correspond to BRL 150,000.00 (one hundred and fifty thousand reais), with interest and inflation adjustment adjustment comtemplated in Clause 3.3.2.1.1 above, in case the amount of the Unsecured Non-Financial Credits Option A of the respective Bankruptcy Creditor is greater than BRL 150,000.00 (one hundred and fifty thousand reais). ----------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
Paulo Fernando Santos de Lacerda
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

3.3.2.1.3. Release. The choice of this option and the respective payment envisaged herein necessarily implies in a broad, general and unrestricted release of the Unsecured Non-Financial Credit in question. ------------------------------------------------------------------------------

3.3.2.2. Option B – Unsecured Non-Financial Credits. Unsecured Non-Financial Creditors who validly elect this Option B ("Option B - Unsecured Non-Financial Credits") shall have their Unsecured Non-Financial Credits ("Unsecured Non-Financial Credits Option B") restructured and paid through the combination of (i) cash payment, with domestic currency subject to and arising from the events detailed in Clauses 3.3.2.2.1 and 3.3.2.2.1.2 ("Payments in Cash"); and (ii) and Payment Instruments, subject to the terms, conditions and limits detailed in Clause 3.3.2.2, as applicable and as follows: ----------------------------------------------------------------------------

(i) *for Unsecured Non-Financial Credits Option B up to BRL 750,000.00* (seven hundred and fifty thousand reais), the Creditor shall receive the full amount of his Credit by means of Payment in Cash; ------------------------------------------------------------------------------------------

(ii) *for Unsecured Non-Financial Credits Option B over BRL 750.000.00 (seven hundred and fifty thousand reais) and less than or equal to BRL 1,071,429.00 (one million, seventy one thousand, four hundred and twenty nine reais).* the Creditor shall receive his Credit through the combination of ((ii).1) Payment in Cash, up to the limit





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

of BRL 750,000.00 (seven hundred and fifty thousand reais) and ((ii).2) for the balance of Unsecured Non-Financial Credit Option B, Payment Instruments; ----------------------------------------------------------------------------------

(iii) *for Unsecured Non-Financial Credits Option B over R$ 1.071,429.00 (one million, seventy one thousand, four hundred and twenty nine reais) and below or equal to BRL 4,285,714.00 (four million, two hundred and eighty-five thousand, seven hundred and fourteen reais).* The Creditor shall receive his Credit by a combination of ((iii).1) Payment in Cash, in an amount corresponding to seventy percent (70%) of its Unsecured Non-Financial Credit Option B; and ((iii).2) for the balance of the remaining Unsecured Non-Financial Credit Option B, Payment Instruments, subject to the terms, conditions and limits detailed in Clause 3.3.2.2; and ----------------------------------------------------------------------------------

(iv) *for Unsecured Non-Financial Credits Option B over BRL 4.285,714.00 (four million, two hundred and eighty-five thousand, seven hundred and fourteen reais).* The Creditor shall receive his Credit by means of a combination of ((iv).1) Payment in Cash, corresponding to BRL 3,000,000.00 (three million reais); and ((iv).2) for the balance of the remaining Unsecured Non-Financial Credit Option, Payment Instruments, subject to the terms, conditions and limits detailed in Clause 3.3.2.2. ----------------------------------------------------------------------------------





Pg 269 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 406

3.3.2.2.1. Sources of Payment in Cash. Payments in Cash described in Clause 3.3.2.2 shall be made from the following sources: ---------------------------------------------------------------------------------------------

3.3.2.2.1. First Component - Dividends from Subsidiaries. Payment in domestic currency, upon obtainment by the Companies under Reorganization, of funds as Dividends from Subsidiaries related to fiscal years 2019, 2020 and 2021, according to the Cascade of Dividends from Subsidiaries, up to the limit of BRL 39,000,000.00 (thirty nine million reais) per year, to be distributed equally amongst the Unsecured Non-Financial Creditors Option B, and paid in up to 60 (sixty) Days from the date on which any Companies under Reorganization effectively receive Dividends from Subsidiaries. ---------------------------------------------------------------------------------------------

3.3.2.2.1. For the purposes of Clause 3.3.2.1.1 above, if in one of the years of distribution of Dividends from Subsidiaries the amount of Payment in Cash - Dividends from Subsidiaries is less than BRL 39,000,000.00 (thirty-nine million reais), the remaining balance shall be added to the annual limit of the following year(s), as applicable. ---------------------------------------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

3.3.2.2.1.2. Second Component – Cash for Distribution. Any remaining balance of Unsecured Non-Financial Credits Option B after payments under Clause 3.3.2.1.1, shall be paid with domestic currency, up to the aggregate limit of





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

BRL 150,000,000.00 (one hundred and fifty million reais), through the allocation of Cash for Distribution, observing the Rule of Use of Cash for Distribution, to be distributed on *a pro r*ata basis among said balances of Unsecured Non-Financial Credits Option B, and paid on the Amortization Dates. ---------------------------------------------------------------------------------------------------

3.3.2.2.1.3. Payments and Limits. For the avoidance of doubt, the amount effectively received by each Unsecured Non-Financial Creditor Option B as a result of the sum of the Payments in Cash shall never be greater than the Payment in Cash amounts indicated in items (i) to (iv) of Clause 3.3.2.2, as applicable. -----------------------------------------------------------------------------------------

3.3.2.2.2. Payment in Payment Instruments. Possible Balance of Unsecured Non-Financial Credits Option B after Payments under Clause 3.3.2.2 above shall be entitled to receive Payment Instruments, the terms and conditions of issue, which are detailed in **Annex 1.1.73**, which is an integral part of this Plan for all purposes and effects. --------------------------------------------------------------

3.3.2.2.2.1. Subscription Criteria. Each Unsecured Non-Financial Creditor Option B shall be entitled to receive or subscribe to BRL 1.00 (one Real) of face value of Payment Instruments for each BRL 1.00 (one Real) in balance of Unsecured Non-Financial Credits Option B calculated in accordance with Clause 3.3.2.2 above. If necessary, Bankruptcy Credits denominated in foreign





Pg 271 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 408

currency shall be converted into Brazilian reais or U.S. dollars in accordance with the exchange rates for sale available in the Information System of the Central Bank of Brazil (SISBACEN) on the Business Day immediately prior to the date of the act to be performed under this Plan. ("Unsecured Non-Financial Credits Eligible for Subscription of Payment Instruments"). ---------------------------------------------------------------------------------

3.3.2.2.2.2. Additional Payment Instruments. If the Payments in Cash made as described above, up to December 31, 2025, are less than the amounts indicated in items (i) to (iv) of Clause 3.3.2.2 for Payments in Cash, such difference shall be considered a Unsecured Non-Financial Credit Eligible for Subscription of Payment Instruments, and shall be restructured and paid by means of the Payment Instruments. For the avoidance of doubt, the Unsecured Non-Financial Creditors Option B shall not be entitled to receive any amount paid in under the Payment Instruments prior to the issue of the additional Payment Instruments under this Clause 3.3.2.2.2. -----------------------------------------------------------------------------------------

3.3.2.2.3. Interest and Inflation adjustment. Interest and inflation adjustment (i) on Unsecured Non-Financial Credits Option B that are entitled to Payments in Cash, to be incorporated into the principal amount due, corresponding to the IPCA, from the Date of Filing until the implementation of all payments provided in Clause 3.3.2.2.1; (ii) on the limits of Dividends from

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 272 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 409

Subsidiaries and Cash for Distribution described in Clauses 3.3.2.2.1.1 and 3.3.2.2.1.2, corresponding to the TR, from the Date of Judicial Confirmation of the Plan; and (iii) in the events contained in Clause 3.3.2.2.2, corresponding to the rate provided for in item 3 of **Annex 1.1.73.** -------------------------------------------------------------------------------------------------------------

3.3.3. Late Unsecured Creditors and Standard Payment Option. Unsecured Creditors that do not validly perform the Payment Option election, as well as Unsecured Creditors that are Late Creditors, shall be restructured and necessarily paid pursuant to the terms of Option B - Unsecured Financial Credits or Option B - Unsecured Non-Financial Credits, as applicable, and (i) for the payments as Payments in Cash , if applicable, the first payment shall be only due on the last Business Day of the 12th (twelfth) month from the date of the certificate of final unappealable decision determining the inclusion of said Unsecured Credit in the List of Creditors; and (ii) for the payments under the Payment Instruments, the respective Bankruptcy Creditors shall be entitled to receive all payments made at a later date after the final unappealable decision determining the inclusion of said Late Credit in the List of Creditors. -------------------------------------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

3.3.4. Payment of Unsecured Related Parties Creditors. The payment of Unsecured Credits held by Unsecured Related Party Creditors shall be subject to the full discharge of





Pg 273 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 410

the Unsecured Credits of the other Unsecured Creditors, and it is certain that, after their full release, the Unsecured Related Party Creditors shall have their Unsecured Credits paid pursuant to Clauses 3.3.1, 3.3.2 or 3.3.3 above, as applicable. ------------------------------
------------------------------------------------------------

**3.4. ME/EPP credits.** The ME/EPP Creditors shall have their ME/EPP Credits restructured and fully paid as follows: ----
------------------------------------------------------------

3.4.1. Initial Payment. Payment in domestic currency, up to the limit of BRL 150,000.00 (one hundred and fifty thousand reais) per ME/EPP Creditor, in cash, in a single installment, on the last Business Day of the 12th (twelfth month following the Plan's Judicial Confirmation Date. ----
------------------------------------------------------------

3.4.2. Payment in Payment Instruments. Any balance remaining after the payment provided in Clause 3.4.1 above (such balance of ME/EPP Credits being hereinafter referred to as "ME/EPP Credits Balance"), shall be paid on Payment Instruments, the terms and conditions of which are detailed in Schedule **1.1.73**, and in accordance with the terms and conditions of election of mode of payment instrument described in Clause 4.1 below. -----------------
------------------------------------------------------------

3.4.2.1. Subscription Criteria. Each ME/EPP Creditor shall be entitled to receive or subscribe to BRL 1.00 (one Real) of face value of Payment Instruments for each BRL

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

1.00 (one Real) in ME/EPP Credits Balance ("ME/EPP Credits Eligible for Subscription of Payment Instruments"). --------------------------------------------------------------

3.4.3. Interest and Inflation adjustment. Interest and inflation adjustment (i) on the ME/EPP Credits Balance due under Clause 3.4.1, to be incorporated into the principal amount due, as well as on the amounts indicated in Clause 3.4.1, corresponding to the IPCA; and (ii) in the cases contained in Clause 3.4.2, corresponding to the rate contemplated in Clause 3 of **Annex 1.1.73.** -------------------------------------------------------------------------

3.4.4. Late ME/EPP. The Late ME/EPP Credits shall be paid as described in Clause 3.4.1 above, with the initial term for payment counted from the final unappealable decision determining the inclusion of the said Late ME/EPP Credit in the List of Creditors. The Late ME/EPP Credits with value above the limit established in Clause 3.4.1 above shall be paid by means of Payment Instruments - Private Debentures, it being certain that the Late ME/EPP Creditors holders of such Credits shall only be entitled to receive the Funds of Distribution to the Payment Instruments and the funds arising from Extraordinary Amortization Events intended for the holders of Payment Instruments, after the decision determining the inclusion of the said Late Credit in the List of Creditors has become final. ------------------------------------------------------------------------------------------------------





Pg 275 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 412

**3.5. Illiquid Credits.** All Illiquid Credits, including those still subject to Judicial Claims and/or Arbitration Proceedings, which are treated in this Plan as Illiquid Credits, are fully subject to the terms and conditions of this Plan and to the effects of Court-Supervised Reorganization, pursuant to article 49 of the LFR. Once the Illiquid Credits have been materialized and recognized by final and unappealable judicial decision, they shall be paid according to the treatment attributed to the Late Credits pursuant to the terms of this Plan and in the class corresponding to the Illiquid Credit in question. ---
------------------------------------------------------------

**3.6. Intercompany Credits.** Payment of Intercompany Credits shall, in any event, be subordinated to all Bankruptcy Credits in terms of structure, guarantees and term of payment. Intercompany Credits may be converted into capital stock or may be subject to compensation, pursuant to articles 368 *et seq.* of the Civil Code (including article 380), provided that, in any event, the conversion into capital, subordination or compensation (cumulatively): (i) does not generate any cash transfer or impact; (ii) does not entail any disbursement by the Companies under Reorganization or Petitioners; (iii) does not result in any increase in the credit or debt exposure value of Company under Reorganization or Petitioner, as a creditor or debtor of any of them, among themselves; (iv) does not reduce or adversely affect the payment obligations of the Companies under Reorganization and

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Petitioners under this Plan; and (v) does not reduce, jeopardize or adversely affect the rights, credits and prerogatives, including guarantees, of the Bankruptcy Creditors and Non-Bankruptcy Creditors that are not involved in the transaction, and in accordance with the applicable legislation, with due regard to the provisions of Clauses 6.1 and 7.4. The Companies under Reorganization and the Petitioners may timely agree on alternative forms of extinction of these *Intercompany* Credits, observing the assumptions, cumulatively, of items (i) to (v) of this Clause, the applicable procedures and legislation and the provisions of this Plan. ----------------------------------

**3.7. General Provisions for the Payment of Bankruptcy Credits** -----------------------------------------------------------
-----------------------------------------------------------

3.7.1. Credit Reclassification. In the event that Bankruptcy Credits indicated in the List of Creditors, in the Judicial Confirmation of the Plan, there is an objection to a credit involving its rerating pending a final unappealable judicial decision, the respective Bankruptcy Creditor is subject to the terms and conditions of payment applicable to the class in which its Credit is allocated in the Judicial Confirmation of the Plan until the date of the certificate of final unappealable judicial decision that determines its rerating, it being understood that the Creditor shall take all measures before the Companies under Reorganization to promote a change of the terms and conditions of payment of its Credits in





Pg 277 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 414

accordance with its new class. If it is subsequently recognized that the rerating of the Credit that entails modification of the terms and conditions of payment already applied: (i) in the event that such modification represents an increase in the amounts to be paid, the balance increased by the respective Credit shall be considered as Late Credit for payment purposes, it being certain that the rerated Credits shall not be entitled to payments that have already been made to the classes to which they have been reallocated as a result of the rerating, or (ii) in the event that such modification represents a decrease in the amounts to be paid or the delivery of another means of recovery, the Bankruptcy Creditor shall reimburse the Company under Reorganization for the amounts that have already been paid and that exceed the value of its Credit, as rectified, or the securities that have been unduly delivered to it, corresponding to the reduced amount.----------------------

3.7.2. Increase in Credits. In the event of any increase in the amount of any Credit resulting from a final unappealable judicial decision or agreement between the parties, the amount corresponding to the difference between the Creditor resulting from a final unappealable judicial decision or agreement between the parties and the amount recognized in the List of Creditors shall be paid as provided in this Plan for the Late Credits of each class. In this case, the rules for payment of the increased amount of such claims, particularly regarding

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the incidence of interest, shall apply only from said final unappealable judicial decision or the date of execution of the agreement between the parties. -----------
-----------------------------------------------------------

3.7.3. Reduction of Credits. In the event of any reduction in the value of the Credits arising from a final unappealable judicial decision or agreement between the parties, and the consequent rectification of the List of Creditors, the Bankruptcy Creditor holding the respective Bankruptcy Credit shall, within ten (10) Business Days of said final unappealable judicial decision or agreement between the parties, as the case may be, return to the Companies under Reorganization the amounts that have already been paid and that exceed the value of its Bankruptcy Credit, as rectified, or the securities that have been unduly delivered to it, corresponding to the reduced amount. ------------------------------------------
-----------------------------------------------------------

3.7.4. Notification. For purposes of this Clause, the Bankruptcy Creditor shall notify the Companies under Reorganization, pursuant to Clause 8.3, to communicate the final unappealable judicial decision that has recognized the change in the Bankruptcy Credit already recognized in the Judicial Administrator's List of Creditors. -----------
-----------------------------------------------------------

3.7.5. Date of Payment. In the event that any payment or obligation from the Plan is expected to be made or satisfied on a day that is not considered a Business Day,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

said payment or obligation must be made or satisfied, as the case may be, on the following Business Day. ------------------------------------------------------------------------

3.7.6. Form of Payment. As applicable, the amounts due pursuant to this Plan shall be paid by direct transfer of funds to the bank account of the respective creditor, including sending money orders or making remittances abroad, by means of a credit order document (DOC), or available electronic transfer (TED), or any other document that proves the transaction, and the Companies under Reorganization may hire a payment agent for this purpose. The deposit slip showing the amount credited shall serve as proof of discharge of the respective payment. ----------------------------------------------------------------------

3.7.7. Creditors' Bank Accounts. As applicable, the Bankruptcy Creditors shall inform the Companies under Reorganization, in the indicated contacts and pursuant to Clause 8.3, their respective bank accounts for this purpose. ---------------------------------------------------------------------------------------------------------

3.7.7.1. No indication of Bank Accounts. Payments that are not made because the Bankruptcy Creditors did not inform their bank accounts or provided such information mistakenly or incompletely shall not be considered a breach of the Plan. There shall not be interest or late payment charges if the payments have not been made due to failure by the Bankruptcy Creditors to timely and correctly inform their bank details for deposit. ----------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



Pg 280 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 417

3.7.8. Alteration of the Bankruptcy Credit Holder. In the event of any change in ownership of a certain Bankruptcy Credit, whether by assignment, succession, subrogation or any other form admitted, during the term and compliance with this Plan, the relevant assignee, successor or creditor by subrogation shall adopt the necessary measures for recognition of their ownership to the Bankruptcy Credit in question and for rectification of the List of Creditors, and shall notify the Companies under Reorganization for rectification and, until the Court-supervised Reorganization is terminated, also notify the Court-supervised Reorganization Court and the Judicial Administrator, pursuant to Clause 8.3. In any event, the change of owenrship to the Bankruptcy Credit shall not affect payments that may have been made to the original Bankruptcy Creditor, or the mode of Payment Instrument elected by it under this Plan.

3.7.8.1. Related Parties. If the assignee or assignor of the Bankruptcy Credit is an Unsecured Related Party Creditor or member of the Odebrecht Group, the respective Bankruptcy Credit shall be paid pursuant to the terms of Clauses 3.3.4 and 3.6, respectively.

3.7.9. Payments by Third Parties. Bankruptcy Creditors who hold Bankruptcy Credits in which a Third Party appears as

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

principal debtor or guarantor shall observe the following terms: ------------------------------------------------------------------------------------------------------------

3.7.9.1. Bankruptcy Credit as a result of Guarantees Granted by Companies under Reorganization. Bankruptcy Credits corresponding to payment obligations in which one or more Companies under Reorganization figure as guarantors other than trustees ("Bankruptcy Credits by Guarantee Granted by a Companies under Reorganization"), shall, exclusively in respect of such guarantees, have their Bankruptcy Credits by Guarantee Granted by Companies under Reorganization restructured pursuant to the terms of Clause 3 of this Plan and such Bankruptcy Creditors shall receive, from the Companies under Reorganization, their Bankruptcy Credits in the same way as the other Bankruptcy Creditors of their class, irrespective of the enforceability of the debt against the principal debtor. The obligations of Third Parties guaranteed by the Companies under Reorganization shall remain valid, in force, enforceable and effective according to their respective terms and conditions. Nothing in this Plan shall mean or be construed or used to alter or modify such Third Party obligations, irrespective of the novation of the terms of payment of the respective Co-obligation provided by any Company under Reorganization. Such Creditors are entitled to demand or collect the debt from such Third Party according to the terms of the respective instruments, without prejudice, should any Creditor





Pg 282 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 419

choose, at its sole discretion, to exercise one of the Payment Options set forth in Clauses 4.1.2.1 and 4.1.3.1. ---------------------------------------------------------

3.7.9.1.1. Bankruptcy Credits for Guarantees Granted by Companies under Reorganization Effectively Paid by Third Parties. Without prejudice to the provisions of Clause 7.7, in the event that the Bankruptcy Credits for Guarantee Granted by the Companies under Reorganization are, at any time, paid in whole or in part by the respective Third Party (as principal debtor) or for the benefit of this Third Party, said Bankruptcy Credits shall be considered amortized, with regard to the obligations of the Companies under Reorganization provided in this Plan, under penalty of unjust enrichment of the Creditor. The balance of Credits existing according to the originally contracted conditions that has not been amortized by the payment mentioned in this Clause shall also not be considered as settled in relation to the Bankruptcy Credit by Guarantee Granted by Companies under Reorganization, it being established that the Companies under Reorganization shall never be obliged to make any payment that exceeds the amount of the Bankruptcy Credit adjusted and remunerated pursuant to the terms of this Plan. If the Companies under Reorganization have made any payment or entered into a payment transaction as payment in kind provided in Clause 3.2.3.1 which, added to any amounts paid by the Third Party, exceeds the amount of the Credit under the conditions originally contracted, including

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

principal, interest and other charges incurred until the respective payment, and/or delivered Payment Instruments - *Bonds*, Payment Instruments - Public Debentures or Payment Instruments - Private Debentures for the benefit of such Bankruptcy Creditor, said Bankruptcy Creditor shall immediately return to the Companies under Reorganization the amounts paid and/or said financial instruments received in excess (i.e., including principal, interest and other charges levied until the respective payment). If the Companies under Reorganization have not yet made any payment and/or delivered Payment Instruments - *Bonds*, Payment Instruments - Public Debentures or Payment Instruments - Private Debentures to the aforementioned Bankruptcy Creditor and the Bankruptcy Creditor has received all amounts due under the original terms of such Third Party debt, the Companies under Reorganization shall be released from making the respective payments or delivering the respective Payment Instruments - *Bonds*, Payment Instruments - Public Debentures or Payment Instruments - Private Debentures in their entirety or in proportion to the Bankruptcy Credits paid by the Third Party. ----------------------------------------------------------------------------------------------------------------

3.7.9.1.2. Credit restructuring executed with Third Party. Eventual restructuring of Bankruptcy Credits by Guarantees Granted by the Companies under Reorganization entered into with Third Parties after the Date of Filing does not alter the original conditions, amounts and guarantees of these





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Bankruptcy Credits against the Companies under Reorganization, which shall make the payment in accordance with the terms and conditions established in this Plan. ---
--------------------------------------------------------------

3.7.9.2. Bankruptcy Credits Guaranteed by Third Party. Bankruptcy Creditors whose Bankruptcy Credits correspond to payment obligations in which a Company under Reorganization is the principal debtor and one or more Third Party is the guarantor ("Bankruptcy Credits Secured by a Third Party"), shall have their Bankruptcy Credits Guaranteed by Third Party paid pursuant to the terms of Clause 3 of this Plan, and may elect any of the types of Payment Instruments pursuant to the terms of Clause 4.1 being entitled to any payments made pursuant to this Plan, without prejudice to the Bankruptcy Creditors' right to pursue receipt of the Credits, on the terms originally agreed, against the Third Party. Third Party guarantees shall remain valid, effective, enforceable and effective in accordance with their respective original terms and conditions. Nothing in this Plan shall mean or be construed or used to alter or modify such Third Party obligations, irrespective of the novation of the terms of payment of the Bankruptcy Credit by any Company under Reorganization, and the Creditors may demand or collect the debt, under the conditions originally contracted, from such Third Party in accordance with the terms of the respective instruments. ----------------------------------
--------------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

3.7.9.2.1. Bankruptcy Credits Guaranteed by Third Party which are Effectively Paid by the Third Party. If the Bankruptcy Credits Guaranteed by Third Parties are, at any time, paid in whole or in part by the respective Third Party or for the benefit of such Third Party, the Third Party shall subrogate itself to the rights of the respective Bankruptcy Creditor, with due regard, in the event of partial subrogation of the Third Party to the rights of the Bankruptcy Creditor, to the provisions of article 351 of the Civil Code, applying the provisions of Clauses 3.7.8 and 3.7.8.1. --------------------------------
-------------------------------------------------------------

3.7.9.2.2. Restructuring of Credit Guaranteed by Third Parties entered with Third Parties. Any restructuring of Bankruptcy Credits Guaranteed by Third Parties entered into with a Third Party after the Date of Filing does not alter the original conditions, amounts and guarantees of these Bankruptcy Credits against the Companies under Reorganization, which shall make the payment in accordance with the terms and conditions of this Plan regardless of the conditions restructured with the Third Party. ---------

3.7.10. Compensation. The Companies under Reorganization are authorized to make credit compensations, pursuant to the terms of article 368 *et seq.* of the Civil Code, in the cases in which the Companies under Reorganization and their Bankruptcy Creditors have reciprocal obligations of credits and debits, provided that these are previously and expressly authorized by the respective Bankruptcy





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Creditors. For the avoidance of doubt, any balance remaining after the compensation provided in this Clause shall receive the treatment granted to the nature of the respective Credit, in accordance with this Plan. This Clause does not apply to the compensation of *Intercompany* Credits, which must comply with the provisions of Clause 3.6. ----------------------------------------------------------

3.7.11. Costs and Taxes. The financial obligations arising from this Plan and all payments to be made by the Companies under Reorganization, pursuant to the terms of this Plan, shall be met and paid, net of any present and future taxes, charges, fees or any other levies. ----------

**3.8. Non-Bankruptcy Credits.** It should be noted that Non-Bankruptcy Credits are not subject to and shall not be novated by virtue of the Approval of the Plan, and it is certain that their restructuring shall depend on bilateral negotiations with Non-Bankruptcy Creditors, and that nothing in this Plan may disregard or modify in any way the fiduciary guarantees granted in favor of Non-Bankruptcy Creditors. ------------------------------------

3.8.1. Fiduciary Guarantees Granted by the Companies under Reorganization. The fiduciary guarantees granted by the Companies under Reorganization, including within the scope of the Substantial Consolidation of the Companies under Reorganization, shall remain valid, in force, enforceable

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

and effective according to their respective terms and conditions originally contracted. Nothing in this Plan shall mean or be construed or used to alter or modify such obligations and prerogatives arising from such fiduciary guarantees, and the Creditors may require the fiduciary guarantee under the conditions originally contracted. -----
------------------------------------------------------------

**4. ACTS OF IMPLEMENTATION OF CREDIT RESTRUCTURING** ---------
------------------------------------------------------------

**4.1. Election of Payment Instrument.** Secured Creditors, Unsecured Financial Creditors Option B, Unsecured Non-Financial Unsecured Creditors Option B and ME/EPP Creditors that have their Bankruptcy Credits restructured through Payment Instruments may choose from the following debt instruments, subject to the requirements described below, it being established that such Creditors may choose more than one debt instrument to receive their Bankruptcy Credits: -----------------------------------------------
------------------------------------------------------------

4.1.1. Plan. All holders of Credits Eligible for Subscription of Payment Instruments may elect to have the terms and conditions of the restructuring of their Credits Eligible for Subscription of Payment Instruments instrumentalized by the Plan pursuant to **Annex 1.1.73**, without the issue of any securities, which, by virtue of the Judicial Confirmation, shall govern the terms of payment of the respective Bankruptcy Credits ("Payment Instruments - Plan"). ------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

4.1.1.1. Effects of the Option. The option to receive the Bankruptcy Credit by means of the Payment Instrument - Plan does not entail release from the Third Party's obligation to the respective Bankruptcy Creditor, with due regard for Clauses 3.7.9 et seq.

4.1.2. Private Debentures. All holders of Credits Eligible for Subscription of Payment Instruments may elect to subscribe, with their Bankruptcy Credits, privately placed debentures, to be issued by way of indenture in substantially the same form as the draft present in **Annex 4.1.2** to this Plan ("Payment Instruments - Private Debentures").

4.1.2.1. Implementation of the Option. Any and all Creditors that choose to receive Payment Instruments - Private Debentures shall subscribe and pay up the debentures with their respective Credits, without prejudice to the maintenance of guarantees provided by Third Parties.

4.1.3. Public Debentures. All holders of Credits Eligible for Subscription of Payment Instruments who, cumulatively, (i) due to regulatory reasons, cannot hold Payment Instruments - Private Debentures, and (ii) are professional investors under CVM Instruction No. 554, dated of December 17, 2014, as amended, may elect to





Pg 289 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 426

subscribe to debentures to be publicly distributed, with restricted funding efforts under CVM Instruction No. 476, of January 16, 2009, as amended, to be issued by way of indenture in substantially the same form as the draft present in **Annex 4.1.3** to this Plan, subject to the applicable regulatory provisions ("Payment Instrument - Public Debentures"). ------------------------------------------------------------------------------------------------

4.1.3.1. Implementation of the Option. Each and every Creditor that choose to receive Payment Instruments - Public Debentures shall subscribe and pay up the debentures with their respective Credits, without prejudice to the maintenance of the guarantees provided by Third Parties. ------------------------------------------------------------------------------------------------------

4.1.4. *Bonds*. All the holders of Credits Eligible for Subscription of Payment Instruments who are currently holders of securities, bonds or payment notes as (i) *qualified institutional buyers* as defined in Rule 144 A of the Securities *Act*; (ii) *non-US* persons as defined in *Regulation* S under the Securities Act located outside the United States; or (iii) *institutional accredited* investors as defined in Rule 501 under the *Securities* Act may elect to receive debt instruments under custody and registered in the DTC system to be issued in U.S. dollars and governed under the laws of the State of New York, United States of America, whose contents include the terms and

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
Paulo Fernando Santos de Lacerda
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

conditions described in **Annex 1.1.73** of this Plan ("Payment Instruments - *Bonds*"). --------------------------------------------------------------------------------------

**4.2. Procedure for choosing the Payment Option and Payment Instrument.** To formalize the choice of the Payment Option and the Payment Instruments they wish to receive, if applicable, the Secured creditors, the Unsecured Creditors and the ME/EPP Creditors shall express, within fifteen (15) Consecutive Days from the end of the Period of Adherence to Substantial Consolidation ("Election Term"), their choice for one of the Payment Instruments set forth in Clauses 4.1.1 to 4.1.4. If there is no choice of Payment Option in the Election Term, the provisions of Clause 4.3.1 shall apply. ----------------------------------------------------------------------------------

**4.3. Sending Documents.** The Bankruptcy Creditor shall send an email to aj_odb@alvarezandmarsal.com and rjodb@odebrecht.com, forwarding (i) the form in **Annex 4.3** duly filled and signed; and (iii) the following documents:

(i) Basic documents. All Secured Creditors, Unsecured Creditors and ME/EPP Creditors shall attach (a) documents demonstrating the powers of the sender and subscriber to make such choice for the benefit of the respective Bankruptcy Creditor, including (a.1.) in the case of an individual, a copy of the official identification document valid in the national territory, and (a.2.) in the case of a legal entity, a copy of the corporate acts and of the power of attorney granting its powers of representation of





Pg 291 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 428

the respective Creditor; and (b) indicate the bank account that shall be used to receive any sort of amount to which they may be entitled; and ---------------------------------
------------------------------------------------------------

(ii) specific documents. The Bankruptcy Creditors that choose to receive Payment Instruments - Public Debentures shall also attach the declaration in **Annex 4.3(ii)** duly signed by the respective Creditor. ------------------------
------------------------------------------------------------

4.3.1. Deferred Option. Those Creditors who do not opt for a Payment Instrument in the Election Term shall have their choice of one of the Payment Instruments provided for in Clauses 4.1.1 to 4.1.4 deferred for a period of five (5) years from the Date of Judicial Confirmation of the Plan. -
------------------------------------------------------------

4.3.2. Report on the procedure for choosing the Payment Option and Payment Instrument. Within thirty (30) Consecutive Days from the end of the Election Term, the Judicial Administrator shall submit a report, in the records of the Court-supervised Reorganization and on its website (https://www.alvarezandmarsal.com/content/grupo-odebrecht), stating the result of the procedure of election of the Payment Option and the Payment Instrument, with the indication of the allocation of the Bankruptcy Credits between the Payment Options and the available Payment Instruments, including the Bankruptcy Creditors that have chosen to defer the choice of the Payment Option

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 292 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 429

because they have not validly made the election during the Election Period ("Publication of the Election Board"). -----------------------------------------------------------------

4.3.3. Restriction and Effects. The election of the Payment Option and the Payment Instrument made by the Bankruptcy Creditors as prescribed in this Plan is final, definitive, binding, irrevocable and irreversible, and the effects of the election of the Payment Option and the Payment Instrument shall be retroactive to the Date of Judicial Confirmation of the Plan. -----------------------------------------------------------------------------------

4.3.4. Credits Subject to Opposition. The right to elect the Payment Option and the Payment Instrument of their choice may be exercised, under the terms and periods of this Plan, by the Secured Creditors, the Unsecured Financial Creditors Option B, the Unsecured Non-Financial Creditors Option B and the ME/EPP Creditors, including those whose Credits have been the subject of challenges to the List of Creditors, pursuant to the terms of article 8 of the LFR, which have not been the subject of a final unappealable decision at the time of the Election Term. In such cases, the Credit shall be used to calculate the allocation of the Payment Instruments, and the Companies under Reorganization shall, (i) in relation to the uncontroversial portion of the Credit, if any, instrumentalize the restructuring of the respective Credit elected pursuant to the terms of this Plan; and (ii) in relation to the disputed portion, instrumentalize the

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

restructuring of the respective Credit under the same terms as the uncontroversial portion if the Payment Instrument has already been elected and the term provided in Clause 4.3.1 has not elapsed. If the period provided in Clause 4.3.1 has already elapsed, the Companies under Reorganization shall instrumentalize the restructuring of the respective controversial Credit as Payment Instruments - Plan, when, as a result of a final unappealable decision, such amounts become uncontroversial (to the exact extent to which they are owed to the Bankruptcy Creditor by the Companies under Reorganization). ----------
------------------------------------------------------------

4.3.5. Standard Payment Instrument – Secured Credits. The Secured Creditors that do not validly elect the Payment Instrument and the Late Secured Creditors shall have their Credits Eligible to Subscription of Payment Instruments necessarily restructured pursuant to the Payment Instruments - Plan. ----------------------------------------
------------------------------------------------------------

4.3.6. Standard Payment Instrument - Unsecured Credits. The Unsecured Creditors who do not validly elect the Payment Instrument and the Late Unsecured Creditors shall have their Credits Eligible for Subscription of the Payment Instruments necessarily restructured pursuant to the Payment Instruments - Plan. ---------------------------
------------------------------------------------------------

4.3.7. Standard Payment Instrument - ME/EPP credits. The ME/EPP Creditors that do not validly elect the Payment





Pg 294 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 431

Instrument shall have their Credits Eligible for Subscription of the Payment Instruments necessarily restructured pursuant to the Payment Instruments - Plan. --

**4.4. Issuance of Payment Instruments - Private Debentures, Public Debentures and *Bonds*.** The Company under Reorganization, which is the Issuer/Principal Debtor, as provided in Item 1 of **Annex 1.1.73**, shall formalize all necessary acts and provide the issuance, placement and distribution, as the case may be, of Payment Instruments - Private Debentures, Payment Instruments - Public Debentures and Payment Instruments - *Bonds* within the period of up to (i) 300 (three hundred) Consecutive Days from the Publication of the Election Board, provided that the holders of Credits Eligible for the Subscription of Payment Instruments corresponding to at least BRL 10,000,000.00 (ten billion reais) have opted to receive Payment Instruments - Public Debentures or Payment Instruments - Private Debentures, considered in aggregate, until the end of the Election Period; or (ii) 100 (One hundred) Consectuive Days from the end of the term indicated in item (ii) of Clause 4.2 above, regardless of the amount of Credits Eligible for Subscription of Payment Instruments that choose to receive Payment Instruments - Public Debentures or Payment Instruments - Private Debentures; and (iii) 480 (Four hundred and eighty) Consecutive Days from the Publication of the Election Board, for Payment Instruments - *Bonds* or five hundred and

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 295 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 432

ninety (590) Consecutive Days from the final unappealable decision of *Chapter 15*, whichever occurs last. ------------
-----------------------------------------------------------

**4.5. Additional Issuances.** If the Company under Reorganization, which is the Issuer/Principal Debtor, as provided in Item 1 **Annex 1.1.73**, pursuant to the terms of this Plan, shall carry out more than one issuance, placement and distribution, as the case may be, of the Payment Instruments - Private Debentures, Public Debentures or *Bonds* (each one, an "Additional Issue"), ODB shall cause all necessary acts to be formalized and provided for the issue, placement and distribution of said Payment Instruments within three hundred and sixty (360) Consecutive Days counted from the verification of the obligation to implement the Additional Issuances, in compliance with the current and applicable regulatory deadlines. ------------------------------------------------
-----------------------------------------------------------

**4.6. Transitional Provisions.** Once the balance of Cash for Distribution has been verified to be allocated to the holders of Payment Instruments on an Amortization Date and taking into account that the respective Payment Instrument had not been issued and subscribed by, or delivered to, the Bankruptcy Creditors, the Companies under Reorganization shall make any payments due as if they had adhered to the payment option provided in Clause 4.1.1. ---
-----------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

4.6.1. Effects of Deferral of Payment Option. The Credits Eligible for Payment Instruments held by Creditors who elect to defer the exercise of the right to choose one of the Payment Options under Clause 4.2(ii) shall be enforceable under Clauses 4.1.1 and 7.3. ------------------
------------------------------------------------------------

**4.7. Implementation Abroad.** The Companies under Reorganization are authorized to take all necessary steps to (i) submit the Plan's Approval to the process of Confirmation of effects in force with the *United States Bankruptcy Court of the Southern District of New York (Chapter 15 - Case No. 19-12731 (SMB)*), for purposes of giving effect to the Plan in U.S. territory, pursuant to terms of the applicable law ("*Chapter 15* Confirmation"), as well as (ii) to initiate and/or proceed with other judicial, extrajudicial or administrative proceedings, whether insolvency or of other nature, in jurisdictions other than the Federative Republic of Brazil, as necessary, for the implementation of this Court-supervised Reorganization, including, but not limited to, insolvency proceedings or proceedings necessary to implement the provisions of this Plan. Auxiliary processes abroad may not alter the terms and conditions of this Plan. ----------
------------------------------------------------------------

**5. DISPOSAL AND/OR ENCUMBRANCE OF ASSETS** ------------------
------------------------------------------------------------

**5.1. Disposal of current assets.** The Companies under Reorganization may dispose of, sell, rent, lease, give in





Pg 297 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 434

payment, remove, encumber or offer in guarantee, including judicial guarantee, observing market parameters, any property, assets and/or rights that are part of their current assets without the need of authorization or additional awareness of the Judge of the Reorganization and/or of the Bankruptcy Creditors, always observing the rights and prerogatives contractually assured to third parties, Secured Creditors, Non-Bankruptcy Creditors, or before public authorities over the property or assets, as well as the limits established in the applicable law and in this Plan, (i) provided that the property or asset is unencumbered; or ------------------------------------------
------------------------------------------------------------

(ii) if encumbered, provided that the transaction is authorized by the respective Non-Bankruptcy Creditor or Secured Creditor, as applicable. --------------------------
------------------------------------------------------------

**5.2. Disposal of non-current assets.** The Companies under Reorganization shall be authorized to dispose of, sell, rent, lease, give in payment, remove, encumber or offer in guarantee, including judicial guarantee, observing the market parameters, for the benefit of any party, always observing the rights and prerogatives contractually assured to third parties, Secured Creditors, Bankruptcy Creditors, or to public authorities over the property or assets, as well as the limits established in the applicable law and this Plan: -----------------------------
------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



Pg 298 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 435

(i) any of the property or assets which are part of their non-current assets and that are indicated in **Annex 5.2**, in any mode, including through the disposal of UPIs, pursuant to Clause 5.3 below, (i.a.) provided that the property or asset is unencumbered; or (i.b.) if encumbered, provided that the transaction is authorized by the respective Non-Bankruptcy Creditor or Secured Creditor, as applicable; and ----------------------------------------------------------------------------------------------------

(ii) any of the property or assets that are part of its non-current assets and are not listed in **Annex 5.2** to this Plan, provided that the book value net of depreciation of such property or assets, considered individually and in aggregate within the same fiscal year, is less than or equal to BRL 50,000,000.00 (fifty million reais) in each fiscal year, and, further, (ii.a.) provided that the property or asset is unencumbered; or (ii.b.) if encumbered, provided that the transaction is authorized by the respective Non-Bankruptcy Creditor or Secured Creditor, as applicable. ------------------------------------------------------------------------------------------

5.2.1. Disposal of assets of the Petitioners who join the Substantial Consolidation. For the avoidance of doubt, all the property and assets and part of the non-current assets of the Petitioners that adhere to the Substantial Consolidation of the Companies under Reorganization shall be subject to the rules of disposal of assets set forth in this Chapter 5, it being certain that **Annex 5.2** shall, for

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

all purposes and effects, include **Annex 1.1.2** of the Term of Adherence to Substantial Consolidation. ----------------------------------------------------------------------------

**5.3. Disposal O UPIs.** The disposal of UPIs, except for the rules provided in this Plan, shall be carried out observing the arts. 60 and 142 of LFR, or by direct sale, under the general terms and conditions defined by the Companies under Reorganization. ----------------------------------------------------------------------------

5.3.1. No Succession. In view of the fact that the disposal of UPIs shall comply with the provisions of articles 60 and 142 of the LFR, under no circumstances shall there be any succession of the acquirer for any debts and obligations of the Companies under Reorganization, including those of a tax and labor nature, those related to the Odebrecht Group and Related Parties and those arising from obligations assumed under Law No. 12,846, of August 1, 2013. The absence of succession shall be recognized by the Court-Supervised Reorganization Court. ----------------------------------------------------------------------------

**6. CORPORATE STRUCTURE AND REORGANIZATION** ----------------------------------------------------------------------------

**6.1. Reorganization.** The Companies under Reorganization are authorized to carry out the corporate reorganization transactions listed in **Annex 6.1** or, if not listed, those necessary to implement this Plan, as well as mergers, acquisitions, acquisition of shares, spin-offs, capital





Pg 300 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 437

reductions and transformations, or promote transfers of assets within the Odebrecht Group, provided that, cumulatively, (i) it does not entail the transfer of funds (cash) and/or assets to Odebrecht Group entities other than the Companies under Reorganization, except when permitted by this Plan in Clause 7.4, including, but not limited to, direct or indirect interests held by the Companies under Reorganization, (ii) it does not entail or impair any rights and obligations contracted by the Companies under Reorganization and/or other Odebrecht Group entities in instruments entered into with Creditors with fiduciary guarantee provided by the Companies under Reorganization or third parties, (iii) it does not entail effects of consolidation with the Companies under Reorganization of Petitioners whose Adherence to Substantial Consolidation has not been approved, (iv) it is implemented with the objective of optimizing structure or reducing costs and (v) it does not result in reciprocal participation or cross corporate interests between companies of the Odebrecht Group, with capital increases being herein permitted through the issuance of new shares or units to be paid in with interests in companies of the Odebrecht Group, *Intercompany* Credits and the capitalization of *Intercompany* Credits. The Companies under Reorganization may also carry out any corporate reorganization transactions that do not meet the cumulative requirements established above, provided that

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

they are expressly authorized in a resolution pursuant to Clause 8.3 of **Annex 1.1.73.** ---------------------------------------------------------------------------------------

**7. EFFECTS OF THE PLAN** ---------------------------------------------------------------------------------------

**7.1. Binding Effects of the Plan.** The provisions of the Plan bind the Companies under Reorganization and the Bankruptcy Creditors, and their respective assignees and successors on any account, as well as creditors that may become Bankruptcy Creditors of the Companies under Reorganization by virtue of incidental, subsidiary or joint and several liability pursuant to the law or judicial, administrative or arbitration decision, provided that the triggering event of such Bankruptcy Credit is prior to the filing of this Court-supervised Reorganization as of the Date of Judicial Confirmation of the Plan. ---------------------------------------------------------------------------------------

**7.2. Release of Funds.** Bearing in mind that this Plan does not affect, disestablish or in any way modifies fiduciary guarantees granted in favor of Non-Bankruptcy Creditors, the funds, which are the subject of the fiduciary guarantee and made available to the Companies under Reorganization and the Petitioners, shall be considered, for all purposes of rights, Non-Bankruptcy Credits, pursuant to the terms of article 67 of the LFR. In case of bankruptcy of the Companies under Reorganization, such funds shall be paid with precedence on all the Bankruptcy





Pg 302 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 439

Credits and Non-Bankruptcy Credits, observing the provisions of articles 84, 85, 149 and other applicable provisions of LFR. ------------------------------------------------------------------------------------------------

**7.3. Novation.** Judicial Confirmation of the Plan shall entail novation of the Bankruptcy Credits, pursuant to the terms of article 59 of the LFR, which shall be paid according to the terms and conditions established in this Plan. Unless provided otherwise in this Plan, the in rem and personal guarantees of the Bankruptcy Credits are maintained. For the avoidance of doubt, nothing in this Plan affects the non-bankruptcy obligations of the Companies under Reorganization or the obligations of Third Parties, including, without limitation, guarantees, surety, fiduciary guarantee, in rem or personal guarantees, which shall be maintained in their original conditions, including of enforceability, against Third Parties, regardless of novation of this Plan, pursuant to Clauses 3.7.9 et seq. of the Plan. ------------------------------------------------------------------------------------

**7.4. Remittance of Funds** Observing the need for cash and the applicable corporate rules, the Companies under Reorganization are authorized to carry out any type of financial movement among the Companies under Reorganization. ------------------------------------------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL

7.4.1. Remittances to the Group. In compliance with the cash requirements and applicable corporate rules, the





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Companies under Reorganization are authorized to carry out any type of financial transaction, including, but not limited to, the contribution of funds and making of loans, for the benefit of any of Petitioners, pursuant to the terms of the Corporations Law, (i) related to compliance with the obligations contracted in the respective court-supervised reorganization plans of Petitioners and the payment of general and administrative expenses, such as obligations and expenses for maintenance of activities, expenses with suppliers and advisors and tax expenses, provided that such transactions do not exceed the overall amount of BRL 80,000,000.00 (eighty million reais) and observe the allocation described in **Annex 7.4.1;** (ii) related to the payments contemplated in item ii of Clause 1.1.11 and in item (iii) of Clause 1.1.119 only in their respective deadlines. ------------------------------------
----------------------------------------------------------

**7.5. Assignment of Credits.** After Approval of the Plan, the Bankruptcy Creditors may assign their Claims to other Bankruptcy Creditors or to Third Parties, and the assignment shall be notified to the Companies under Reorganization and to the Judicial Administrator pursuant to the terms of Clause 8.3. The Notification to the Judicial Administrator and the Court-supervised Reorganization Court shall only be required while the Court-supervised Reorganization has not been completed. The Bankruptcy Credits assigned shall be paid in





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

accordance with the conditions set forth in the Plan, observing the provisions of Clauses 3.7.8.1 and 7.3. ------------------------------------------------------------------

**7.6. Reconstitution of Rights.** If the Court-supervised Reorganization is changed into bankruptcy within the term of supervision in article 61 of the LFR, the Bankruptcy Creditors shall have their rights and guarantees reestablished under the conditions originally contracted, deducting any amounts paid and subject to the acts validly performed within the scope of the Court-supervised Reorganization, in compliance with the provisions of articles. 61, §2, and 74 of LFR. ------------------------------------------------------------------------------------

**7.7. Discharge.** Compliance with payment obligations in accordance with the terms and conditions established in this Plan shall automatically entail, regardless of any additional, extensive, full, general and unrestricted formality discharge of all Bankruptcy Credits against the Companies under Reorganization and their officers, directors, agents, employees and representatives, subject to the provisions of Clause 3.7.9. -------------------------------------------------------------------------------------

**7.8. Winding Up of Claims.** By virtue of the novation of the Bankruptcy Credits arising from the Plan's Judicial Confirmation, and while this Plan is being complied with by the Companies under Reorganization, the Bankruptcy Creditors may not, as of the Plan's Confirmation, (i) file or pursue any and all actions and/or judicial execution or





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

proceedings of any nature related to any Bankruptcy Credit against the Companies under Reorganization; (ii) enforce any judgment, court order or arbitration award related to any Bankruptcy Credit against the Companies under Reorganization; (iii) pledge or encumber any assets of the Companies under Reorganization to satisfy their Bankruptcy Credits or perform against them any other constructive act for the satisfaction of Bankruptcy Credits; (iv) create, perfect or enforce any in rem guarantee over assets and rights of the Companies under Reorganization to ensure the payment of their Bankruptcy Credits; and (v) seek the satisfaction of their Bankruptcy Credits by any other means against the Companies under Reorganization. As of the Date of Judicial Confirmation of the Plan, any and all execution proceedings, related to any Bankruptcy Credit against the Companies under Reorganization, shall be completely extinguished or, if more than one person appears as defendant in said action, exclusively in relation to the Company(ies) under Reorganization in question, it being established that the existing pledges and constrictions on the assets and rights of the Companies under Reorganization shall be released, as well as the balance of judicial blocking that may be made in the said judicial actions. For the avoidance of doubt, nothing in this Clause prevents the processing of credit challenges related to this Court-Supervised Reorganization.---------------------------------------------------------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**7.9. Formalization of Documents and Other Provisions.** The Companies under Reorganization undertake, irrevocably and irreversibly, by virtue of this Plan, to carry out all acts and sign all contracts and other documents that, in form and substance, are necessary or appropriate for the fulfilment and implementation of this Plan and related obligations. ------------------------------------------------
----------------------------------------------------------

**7.10. Amendments, changes or modifications to the Plan.** Amendments, changes or modifications to the Plan may be proposed at any time after the Judicial Confirmation of the Plan, provided that such amendments, alterations or modifications are accepted by the Companies under Reorganization and approved by the Creditors' Meeting, under the LFR. Amendments to the Plan, provided they are approved pursuant to the terms of the LFR, shall bind all the Bankruptcy Creditors, regardless of their express agreement to subsequent amendments. For calculation purposes, the Bankruptcy Credits shall be adjusted pursuant to this Plan and deducted from the amounts already paid on any account in favor of the Bankruptcy Creditors, as the case may be. ---------------------------
----------------------------------------------------------

**8. GENERAL PROVISIONS** -------------------------------------
----------------------------------------------------------

**8.1. Annexes.** All the annexes to this Plan are incorporated into it and form an integral part thereof. If



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

there is any inconsistency between this Plan and any annex, the Plan shall prevail. ---------------------------------------------------------------------------------------

**8.2. Existing Contracts and Conflicts.** In the event of conflict between the provisions of this Plan and the obligations of the Companies under Reorganization subject to Court-supervised Reorganization provided in the contracts entered into with any Bankruptcy Creditor prior to the Date of Filing, this Plan shall prevail, without prejudice to the maintenance of the conditions originally contracted with Third Parties, as provided in Clauses 3.7.9.1 *et seq*.. ---------------------------------------------------------------------------------------------------

**8.3. Communications.** All notices, applications, requests and other communications to the Companies under Reorganization, required or permitted by this Plan, in order to be effective, shall be made in writing and shall be deemed to have been made when sent (i) by registered mail, with acknowledgment of receipt, or by courier; or (ii) by email when effectively delivered, the notice of reading serving as valid proof of delivery and receipt of the message, and the Companies under Reorganization undertake to check their messages periodically. All the communications shall be sent to the following addresses, unless there is a change duly communicated to the Bankruptcy Creditors: ------------------------------------------------------------------------------------------

**To the Companies under Reorganization:** --------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Rua Lemos Monteiro, nº 120, 16º andar ---------------------
Butantã, São Paulo/SP, Postal Code [CEP] 05501-050 --------
C/o: Legal Department -------------------------------------
Email: rjodb@odebrecht.com --------------------------------
-----------------------------------------------------------

**To** the Judicial Administrator -------------------------
Rua Surubim, nº 577, 9º andar -----------------------------
Brooklyn Novo, São Paulo/SP, Postal Code [CEP] 04571-050 --
C/o: Eduardo Seixas and Luciana Gasques -------------------
Email: aj_odb@alvarezandmarsal.com ------------------------
-----------------------------------------------------------

**8.4. Severability.** In the event that any term or provision of this Plan is held to be invalid, void or unenforceable, the remainder of the terms and provisions of the Plan shall remain valid and effective. -------------------------
-----------------------------------------------------------

**8.5. Credits in foreign currency.** Credits denominated in foreign currency shall be kept in the original currency for all legal purposes, in accordance with the provisions of Article 50, Paragraph 2 of LFR, and shall be settled in accordance with the provisions of this Plan. --------------
-----------------------------------------------------------

**8.6. Termination of the Court-Supervised Reorganization.** The Court-supervised Reorganization shall be terminated pursuant to the terms of articles 61 and 63 of the LFR. ---
-----------------------------------------------------------

**8.7. Applicable Law.** The rights, duties and obligations arising from this Plan shall be governed, interpreted and





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

executed in accordance with the laws in force in the Federative Republic of Brazil, even if there are Credits originated under the laws of another jurisdiction and without the application of any rules or principles of private international law. -------------------------------
-------------------------------------------------------------

**8.8. Jurisdiction.** All the disputes or controversies that arise or are related to this Plan shall be resolved by the Reorganization Court. After the conclusion of the Court-supervised Reorganization, the controversies or disputes that arise or are related to this Plan shall be resolved by the forum of the Judicial District of São Paulo. -------

São Paulo, April 22, 2020 --------------------------------

*(The signature of the Plan follow*) ------------------------
-------------------------------------------------------------

*(pages of signatures of the Court-supervised Reorganization Plan filed by Odebrecht S.A. – EM RECUPERAÇÃO JUDICIAL and other companies belonging to its economic group)* ------------------------------------------

**Name:** *(Blank)* -------------------------------------------
**Title:** *(Blank)* ------------------------------------------
**Name:** *(Blank)* -------------------------------------------
**Title:** *(Blank)* ------------------------------------------

By: **KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL; ODBINV S.A – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL; ODEBRECHT ENERGIA INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL; EDIFÍCIO ODEBRECHT RJ S.A. – EM RECUPERAÇÃO**





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**JUDICIAL ODEBRECHT PROPERTIES INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL.** ----------------------------------------------------------------------------

**ANNEXES TO THE PLAN** ----------------------------------------------------------------------------

| | |
|---|---|
| **Annex 1.1.10** | Use of Available Cash |
| **Annex 1.1.73** | Payment Instruments |
| **Annex 1.1.81 (a)** | Economic Feasibility Report |
| **Annex 1.1.81 (b)** | Economic and Financial Report |
| **Annex 1.1.110** | Method of Calculating the Percentage of Payment |
| **Annex 2.5** | Substantial Consolidation Adherence Instrument |
| **Annex 4.1.2** | Indenture: Payment Instruments - Private Debentures |
| **Annex 4.1.3** | Indenture: Payment Instruments - Public Debentures |
| **Annex 4.3** | Payment Option Form |
| **Annex 4.3(ii)** | Declaration of Qualified Investor - Public Debentures |
| **Annex 5.2** | List of Assets |
| **Annex 6.1** | List of Corporate Reorganization Transactions |
| **Annex 7.4.1** | Allocation of Remittances to Petitioners |

----------------------------------------------------------------

**Annex 1.1.10** ----------------------------------------------

**Use of Available Cash** ----------------------------------------------------------------------------

**1.** The Available Cash may be used for the ordinary maintenance of the Odebrecht Group's activities, (i) for general and administrative expenses of the Companies under Reorganization, such as (a) obligations and expenses related to direct and indirect contingencies, whose origin is of an administrative, civil, commercial, financial, fiscal, tax, environmental, criminal or labor nature; (b) general expenses with the maintenance of activities, such as building maintenance expenses, condominium, *facilities*,





Pg 311 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 448

communication, IT, payment services, reimbursement of expenses, legal and financial advisors, auditing expenses and expenses with suppliers and service providers, including those related to Court-supervised Reorganization and to the fulfillment of this Plan; (c) payment of obligations that are not subject to Court-supervised Reorganization; (d) cost of maintenance of the governance and *compliance* structure; and (ii) transactions permitted under Clause 7.4 or in any other form by this Plan. -------
-----------------------------------------------------------

**2.** For the avoidance of doubt, the list of events above is exemplary and is not exhaustive, and it is certain that the Companies under Reorganization shall never be able to use the Available Cash (i) to perform acts forbidden under Clause IV of article 64 of the LFR, and (ii) for payment of Companies under Reorganization dividends to companies that are not Companies under Reorganization, and it shall be clear that this provision does not affect, prevent or limit the use or distribution of the funds pursuant the terms of item (iii) of Clause 1.1.119 of the Plan. --------
-----------------------------------------------------------

**Annex 1.1.73** -----------------------------------------------

**Payment Instruments** ---------------------------------------

*(terms and conditions applicable to Bankruptcy Credits that are restructured using any mode of Payment Instrument)* -------------------------------------------
-----------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

1. **Issuer / Principal Debtor**. ODB, any company that may succeed ODB, or, if authorized by the respective Creditor, any Company under Reorganization, and it shall be certain that, in the event of restructuring of Credits by means of Payment Instruments - Plan, the original principal debtor or (ii) if the Companies under Reorganization are not the original principal debtor, the co-obligor/guarantor ("Issuer/Principal Debtor") shall be maintained. ----------
--------------------------------------------------------------

2. **Guarantor(s)**. All the Companies under Reorganization shall figure as joint guarantors of the Payment Instrument ("Guarantors"). ------------------------------------------
--------------------------------------------------------------

2.1. **In Rem Guarantee**: The Secured Credits shall maintain the respective In Rem Guarantees, as originally covenanted, it being certain that the In Rem Guarantees shall not be shared among the other Credits Eligible for the Subscription of Payment Instruments. ------------------
--------------------------------------------------------------

3. **Interest and Inflation adjustment**. The Payment Instruments shall bear interest and inflation adjustment, to be incorporated into the face value of the Payment Instruments, corresponding to the positive variation of the IPCA from the Date of Filing until the implementation of all payments provided in the Payment Instruments, observing the Compliance Bonus. --------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

4. **Maturity**. Maturity on the 40th (fortieth) Anniversary, with the Principal Debtor having to amortize in advance the totality of the Payment Instruments: ------------------------------------------------------------------------

(i) on the 25th (twenty-fifth) Anniversary, if it has not presented, within 6 (six) months from the 24th (twenty-fourth) Anniversary, a report prepared by a specialized and renowned auditing firm, member of one of the big four auditing firms in the world *(big four*) or a similar category at the time, demonstrating that the Companies under Reorganization are able to generate cash and/or assets that can be monetized of at least BRL 50,000,000.00 (fifty million reais) until the 40th (fortieth) Anniversary; or ------------------------------------------------------------------------------------------

(ii) from the 3rd (third) Anniversary, if it is verified that the Cash for Distribution on a given Amortization Date is sufficient to amortize and/or redeem 100% (one hundred percent) of the balance due of Payment Instruments. --------------------------------------------------------------------------------------------------

5. **Amortizations and Grace Period**. Payment Instruments shall be amortized on each Amortization Date with funds from the Cash for Distribution, as calculated in accordance with Clause 1.1.11, observing the Rule of Use of the Cash for Distribution, on a *pro rata* basis among the Credits Eligible for Subscription of Payment Instruments. The first payment shall be due on the first





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Amortization Date that occurs after 3 (three) years from the Date of Judicial Confirmation of the Plan ("Grace Period"), and for each BRL 1.00 (one Real) of Cash for Distribution intended for amortization of the Payment Instruments, BRL 1.00 (one Real) shall be deducted from the face value and/or the principal value of the respective Payment Instruments, and the Companies under Reorganization may, at any time, make early amortizations.
---------------------------------------------------------------

**5.1.** In the event the Bankruptcy Creditors have Bankruptcy Credits originally formalized for more than one (1) instrument, the amortizations contemplated in item 55 above shall occur proportionally among such original instruments. ------------------------------------------------
---------------------------------------------------------------

**6. Monitoring Agent**. The Payment Instruments shall have a Monitoring Agent that shall follow the financial movements of the Companies under Reorganization and who must be hired by the Issuer/Principal Debtor within 60 (sixty) Consecutive Days from the Date of Judicial Confirmation of the Plan, who shall: ----------------------------------------
---------------------------------------------------------------

(i) disclose the amount of Cash for Distribution that shall be used to amortize the Payment Instruments, observing the Rule of Use of the Cash for Distribution; ---
---------------------------------------------------------------

(ii) verify and ratify the Available Cash, the Cash for Distribution and the Rule of Use of Cash for Distribution,





Pg 315 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 452

based on a management report including the consolidated cash balance of the Companies under Reorganization and other documents deemed necessary by the Monitoring Agent to be provided by the Companies under Reorganization, such as, for example, bank statements; -------------------------
-----------------------------------------------------------
(iii) monitor the payments provided in the Payment Instruments, as well as the fulfilment of other obligations provided; -------------------------------------
(iv) monitor the materialization of Credits Eligible for Subscription of Payment Instruments after the date of issue of the Payment Instruments; and ---------------------
-----------------------------------------------------------
(v) disclose monthly reports consolidating the information regarding the attributions contemplated in the previous items. -----------------------------------------------------
-----------------------------------------------------------

**6.1. Access to Information.** The Companies under Reorganization shall provide the Monitoring Agent with access to all information and documents deemed necessary by the Monitoring Agent for the proper performance of its duties. ----------------------------------------------------
-----------------------------------------------------------

**6.2. Choice Procedure.** The Company under Reorganization shall hire one of the companies listed in Appendix I to hold the position of Monitoring Agent within 60 (sixty) days counted from the Date of Judicial Confirmation of the Plan, and shall choose the company that offers the best

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

proposal considering the price conditions and scope of work, observing the substitution conditions described in Appendix I. ---------------------------------------------
-----------------------------------------------------------

7. **Early Maturity Assumptions**. The obligations provided in the Payment Instrument shall be deemed to be overdue, irrespective of notice, interpellation or notification, upon the occurrence of the following events: --------------
-----------------------------------------------------------

(i) default by the Principal Debtor of any monetary obligation that is not remedied within three (3) Business Days of its occurrence; -----------------------------------

(ii) default by the Principal Debtor of any non-monetary obligation under the Payment Instrument that is not remedied within thirty (30) Business Days of its occurrence, if not within a specified period; -------------
-----------------------------------------------------------

(iii) a collegiate court decision or court order without suspensive effect declaring the Payment Instrument illegal, noting that any appeals that should have been addressed to the Creditors Eligible for the Subscription of Payment Instruments, but which have not been made by virtue of such decision, shall remain withheld for further distribution to the Creditors Eligible for the Subscription of Payment Instruments; ----------------------
-----------------------------------------------------------

(iv) liquidation, dissolution, decree of bankruptcy or petition for self-bankruptcy of the Principal Debtor; -----





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

-----------------------------------------------------------

(v) assignment, promise of assignment or any other type of transfer of the obligations of the Principal Debtor to a Third Party, without the consent of the Credits Eligible for the Subscription of Payment Instruments; --------------

-----------------------------------------------------------

(vi) transformation of the Principal Debtor into a limited company; -----------------------------------------------------

-----------------------------------------------------------

(vii) alteration of the corporate purpose of the Principal Debtor, except in the event of authorization of Credits Eligible for the Subscription of Payment Instruments ***or*** that does not result in a substantial change in the activities of the Principal Debtor; -----------------------

-----------------------------------------------------------

(viii) evidence, certified in a court order without suspensive effect, that any declaration made by the Principal Debtor in the Payment Instrument is untrue, provided that such untrue event or situation causes any material adverse effect on: (a) the Principal Debtor's financial condition, business, assets, results of operations and/or prospects; and/or (b) the ability of the Principal Debtor to perform any of its obligations under the Payment Instrument; -----------------------------------

-----------------------------------------------------------

(ix) evidence, attested by a court decision without suspensive effect, that any representation made by the





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Principal Debtor in the Payment Instrument relating to matters of corrupt practice is false; ----------------------------------------------------------------------------------

(x) acquisition, merger or spin-off of the Principal Debtor, without the prior consent of the Credits Eligible for the Subscription of Payment Instruments, unless the corporate reorganization is authorized in the Plan or in this Annex; and ----------------------------------------------------------------------------------

(xi) issuance of a sentence, without suspensive effect, certifying that the Principal Debtor has committed acts involving the use of child labor, labor analogous to slave labor and/or criminal provision of prostitution -----------

(xii) default on any monetary obligation in any Payment Instruments, provided that not remedied within the applicable remediation term; or ----------------------------------------------------------------------------------

(xiii) decree of early maturity under any Payment Instruments. ----------------------------------------------------------------------------------

**8. General Provisions.** ----------------------------------------------------------------------------------

**8.1. Disclosure of Information.** The Companies under Reorganization shall provide in a monthly basis to the Monitoring Agent the financial and accounting information regarding the composition of the Available Cash and the Cash for Distribution or in a shorter period whenever requested, by means of a communication sent pursuant to





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Clause 8.3, which shall be answered by the Companies under Reorganization with the information requested within 10 (ten) Business Days from receipt of the communication. ----
------------------------------------------------------------

**8.2. Communication.** The Debtor/Main Issuer, the Guarantors and the holders of Credits Eligible for the Subscription of Payment Instruments shall send to the Monitoring Agent and keep up-to-date at all times (i) their complete identification; (ii) telephone; (iii) email address; and (iv) the address for sending physical correspondence. All notices, applications, requests and other communications relating to the Payment Instruments shall be in writing in order to be effective and shall be deemed to have been given when sent (i) by registered mail with acknowledgement of receipt or by courier; or (ii) by email when effectively delivered, the notice of reading being taken as proof of delivery and receipt of the message. ----
------------------------------------------------------------

**8.3. Resolutions.** The Principal Debtor may, at any time, call a meeting with the Bankruptcy Creditors holding Credits Eligible for the Subscription of Payment Instruments so that they may resolve: ---------------------
------------------------------------------------------------

(i) on the *waiver* of the right to demand compliance with the obligations set forth in the Payment Instrument; ------
------------------------------------------------------------





Pg 320 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 457

(ii) on the *waiver* of the right to declare the early maturity of the obligations set forth in this Payment Instrument; ------------------------------------------------------------

(iii) on the extension of the term described in item ii of Clause 1.1.11; ------------------------------------------------------------

(iv) on the carrying out of corporate reorganization operations pursuant to the terms of Clause 6.1 of the Plan; ------------------------------------------------------------

(v) on the substitution of the Monitoring Agent pursuant to item 4 of Appendix I to this Annex; and ------------------------------------------------------------

(vi) on other matters that are relevant. ------------------------------------------------------------

**8.3.1.** Call Notice. The meeting shall be convened by means of a notice sent to the Bankruptcy Creditors holding Credits Eligible for Subscription of Payment Instruments at least eight (8) Business Days in advance to the first call and five (5) Business Days in advance to the second call, and the call shall contain the date, time, place and agenda. ------------------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL

**8.3.2.** Convening. The meeting shall be convened, on first call, with the presence of two-thirds (2/3) of the Credits Eligible for Subscription of Payment Instruments and, on second call, with any quorum of those present. The meeting





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

shall be chaired by the Issuer/Principal Debtor and shall be monitored by the Monitoring Agent. ---------------------------------------------------------------------------------

8.3.2.1. Convening for Resolution on Qualified Matters. The meeting to resolve on the matters indicated in items (iii), (iv) and (v) in item 8.3 above shall only be convened with the presence of Payment Instruments representing at least two-thirds (2/3) of the Credits Eligible for the Subscription of Payment Instruments outstanding on the date of the call, either on first or second call. ----------------------------------------------------------------------------------------------------

8.3.2.2. *Intercompany* Credit Creditors and Related Parties shall not be considered for quorum purposes. -------------------------------------------------------------------------

**8.3.3.** Quorum of Resolution. The matters put to a vote shall be approved by an absolute majority of Credits Eligible for Subscription of Payment Instruments present at the meeting, according to outstanding balances considered on the date the meeting is called. The meeting minutes shall be sent to the Monitoring Agent and, while Court-Supervised Reorganization lasts, to the Judicial Administrator. -----------------------------------------------------------------------------------------------

8.3.3.1. Quorum of Resolution on Qualified Matters. The matters indicated in items (iii), (iv) and (v) of item 8.3 above put to vote shall only be approved by the affirmative vote of at least two-thirds (2/3) of the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Credits Eligible for Subscription of Payment Instruments present. -----------------------------------------------------------------------------------------------------------

8.3.3.2. *Intercompany* Credit Creditors and Related Parties shall not have voting rights. -------------------------------------------------------------------------------------------

*APPENDIX I* ---------------------------------------------

*MONITORING AGENT* ---------------------------------------

**3.** The Companies under Reorganization may hire, for the position of Monitoring Agent, one of the following specialized companies (their successor or any companies belonging to the economic group of the companies listed below): -----------------------------------------------------------------------------------------------------------

**(i)** CCC Consultoria Financeira e Empresarial Ltda., CNPJ No. 07.458.740/0001-15, with registered office at Rua Japão, n° 484, unidade 31 E, Jardim São Luís, in the City of Santana de Parnaíba, State of São Paulo, CEP 06502-345; -----------------------------------------------------

**(ii)** FTI Consultoria Ltda., CNPJ No .07.174.869/0001-00, with registered office at Rua Tabapuã, n° 474, 8° floor, Itaim Bibi, CEP 04533-001, in the City and State of São Paulo; or ----------------------------------------------

**(iii)** A specialized and renowned audit firm, among the big four audit firms in the world *(big four*) or a similar category at the time. ------------------------------------

**4.** If, at any time, it is necessary to replace the Monitoring Agent, the Companies under Reorganization shall





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

preferably hire one of the companies described in item 1 above. If it is not possible or feasible, the Companies under Reorganization are herein authorized to hire another company with technical capacity, reputation and experience similar to those of the companies listed in item 1 above, provided that it is approved by the holders of Payment Instruments pursuant to the terms of Clause 8.3 of this Annex. -----------------------------------------------------

-----------------------------------------------------------

**Annex 1.1.81 (a)** -------------------------------------------

**Economic Feasibility Report** --------------------------------

-----------------------------------------------------------

**Annex 1.1.81 (b)** -------------------------------------------

**Economic-Financial Report** ---------------------------------

-----------------------------------------------------------

**Annex 1.1.110** ----------------------------------------------

**Method for Calculating the Percentage of Payments** ---------

**1.** The Percentage of Payments shall be calculated, from the end of the Grace Period, based on the management report of accounting closing, delivered by the Companies under Reorganization to the Monitoring Agent, for the months of February, April, June, August, October and December, according to the following formula: -------------

$$\text{Percentage of Payments} = \frac{\text{'payments'}}{\text{'credits base'}}$$

where: -----------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

---------------------------------------------------------------

**(i)** *payments*: the sum of all amortizations of -------------

**(a)** Credits Eligible for Subscription of Payment Instruments made by Companies under Reorganization, except for those arising from Co-obligations for debts of the Atvos Companies; ---------------------------------------------

**(b)** Non-bankruptcy Credits for fiduciary guarantees granted by ODB; and ------------------------------------------

**(c)** Bankruptcy Credits for Guarantees Granted by Companies under Reorganization issued by Third Parties, including the portion that does not generate amortizations of Payment Instruments as provided in Clause 3.7.9.1.1, except for those arising from Co-obligations provided for debts of the Atvos Companies. -----------------------------

**(ii)** *credits base*: the sum of all (ii.a.) Credits Eligible for the Subscription of Payment Instrument, except for those arising from Co-obligations for debts of the Atvos Companies; and (ii.b) Non-Bankruptcy Credits for fiduciary guarantee granted by ODB. ---------------------------------

**2.** In each calculation, the values described above shall be monetarily adjusted / brought to present value according to the following rules: -------------------------

- *credits base* The credit base refers to the values of these obligations the Order Date without incurring inflation adjustment / interest; --------------------------
- *Credits listed in (a), (b) and (c) of item 1(i) above* The values shall be brought to present value until the Order Date by the accruing inflation adjustment factor of





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

the respective instruments in force until the calculation date. ------------------------------------------------

------------------------------------------------------------

**Annex 2.5** ---------------------------------------------

**Substantial Consolidation Adherence Instrument** ------------

By this private instrument, -------------------------------

[Legal Name of Petitioner], a private limited liability company, with registered office at [Registered Office], taxpayer identification number CNPJ/ME [*], herein duly represented pursuant to its articles ("Petitioner") -------

**WHEREAS:** ---------------------------------------------

(i) ODEBRECHT S.A. – EM RECUPERAÇÃO JUDICIAL, a joint stock company, with registered office in the municipality of Salvador, State of Bahia, at Avenida Luis Viana, 2841, Ed. Odebrecht, Paralela, CEP 41,730-900, taxpayer identification number CNPJ/ME 05,144,757/0001-72, [Legal Name of the other Companies under Reorganization] (together "Companies under Reorganization") and Petitioner filed, on June 17, 2019, a petition for court-supervised reorganization, filed under No. 1057756-77,2019.8.26.0100, in progress at the 1st Court of Bankruptcy and Court-Supervised Reorganization of the Central Civil Jurisdiction of the Capital of São Paulo ("Court-supervised Reorganization"); ----------------------

(ii) in [*], the Bankruptcy Creditors of the Companies under Reorganization decided, at the Creditor's Meeting, to consolidate substantially and approved a unit court-supervised reorganization plan, comprised of the assets





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

and liabilities owned by all the Companies under Reorganization ("Plan"); ----------------------------------

(iii) on [*], the Plan was confirmed by the Court-supervised Reorganization Court in the decision of page [*], published in the Electronic Gazette on [*]; ----------

(iv) pursuant to Clause 2.5 of the Plan, Petitioner may join the Plan, by sending the Instrument of Adherence to the Substantial Consolidation, accompanied by a copy of the minutes of the Creditors' Meeting deciding on its adherence, it being certain that the effect of such adherence shall be the consolidation of all assets and liabilities of Petitioner with the assets and liabilities of the Companies under Reorganization ; and ---------------

(v) on [*], at a general meeting of creditors, the Petitioner's creditors ("Petitioner's Bankruptcy Creditors") resolved to join the Plan to formalize their entry into the Substantial Consolidation of the Companies under Reorganization, recognizing and agreeing that all of Petitioner's assets and liabilities shall become, for all purposes, part of the Plan (the "AGC Substantial Consolidation"). -----------------------------------------

**PETITIONER RESOLVES**, as resolved by its creditors in the AGC Substantial Consolidation, to enter into this Substantial Consolidation Adherence Agreement ("Agreement"), which shall be governed by the clauses and conditions below. ----------------------------------------

**1. PURPOSE** ---------------------------------------------

-----------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**1.1. Adherence:** Petitioner hereby irrevocably and irreversibly joins the Plan, consolidating all of its assets and liabilities with the assets and liabilities of the Companies Under Reorganization, pursuant to Clause 2.5 of the Plan ("Adherence"). --------------------------------

1.1.1. Restructuring of Credits. By virtue of the Adherence described in Clause 1.1 of this Instrument, Petitioner's Bankruptcy Creditors shall have their bankruptcy credits restructured and paid, pursuant to clauses 3.1, 3.2, 3.3, 3.4 and 3.6 of the Plan, as applicable considering the nature of each Bankruptcy Credit. ----------------------------------------------------

1.1.2. Disposal and/or Encumbrance of Assets. By virtue of the Adherence described in Clause 1.1 of this Instrument, all the property and assets of Petitioner's current and non-current assets shall be subject to the rules of disposal of assets set forth in Clauses 5.1 and 5.2 of the Plan, it being certain that Annex 1.1.2 of this Instrument shall become, for all effects and purposes, Annex 5.2 of the Plan. ------------------------------------------------

1.1.3. Applicable Provisions. By virtue of the Adherence described in Clause 1.1 hereof, all provisions, conditions and definitions described in the Plan shall apply to Petitioner and its Bankruptcy Creditors. ------------------

**2. REPRESENTATIONS** ----------------------------------------

**2.1. Representations of Petitioner:** Petitioner represents and warrants that: ----------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(i) it has full capacity and legitimacy to enter into this Instrument, having taken all corporate and other measures that may be necessary to authorize its execution, including having submitted the Adherence to resolution by Petitioner's Bankruptcy Creditors at the AGC Substantial Consolidation, to implement all forecasts contained in the Plan and comply with all the obligations assumed therein; -

(ii) this Adherence is validly executed and constitutes a legal, valid, binding and enforceable obligation according to its terms; ------------------------------------------------

(iii) the execution of this Adherence and compliance with its obligations: (a) do not violate any provision contained in its corporate documents; (b) do not violate any law, regulation, judicial, administrative or arbitration decision or award to which it is bound, including the decisions rendered by the Court-supervised Reorganization Court; and (c) do not violate any resolution taken by Petitioner's Bankruptcy Creditors at the General Creditors' Meeting; and -----------------------

(iv) discussions on the contractual purpose of this Adherence were held, conducted and implemented at Petitioner's own initiative, Petitioner and Petitioner's Bankruptcy Creditors having extensively discussed all the conditions of this business, advised by their respective attorneys who informed and alerted them of and to all the conditions and circumstances involved in the negotiation of this Adherence, the terms of this Instrument and the Plan. --------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

**3. GENERAL PROVISIONS** ------------------------------------

**3.1. Irrevocability and Irreversibility:** This Instrument, the undertakings and responsibilities assumed therein by Petitioner are irrevocable and irreversible. This Instrument is binding and is entered into for the benefit of Petitioner and its respective successors and permitted assigns. ---------------------------------------------------

**3.2. Binding Nature of the Plan:** The provisions of the Plan bind Petitioner, Petitioner's Bankruptcy Creditors, and their respective assigns and successors, on any account (i) as of the date of the Plan's Judicial Confirmation and of (ii) remittance of this Instrument, accompanied by a copy of the minutes of the AGC Substantial Consolidation to the Companies under Reorganization, pursuant to clause 8.3 of the Plan, whichever occurs later. ------------------------------------

**3.3. Definitions:** Terms spelled or initiated in capital letters used but not defined herein shall have the meanings assigned in the Plan. ----------------------------

**3.4. Applicable Law:** The rights, duties and obligations arising from this Instrument shall be governed, interpreted and performed in accordance with the laws in force in the Federative Republic of Brazil, even if there are Credits originated under the laws of another jurisdiction and without the application of any rules or principles of private international law. ------------------

**3.5. Venue:** All controversies or disputes that arise or are related hereto shall be resolved by the Reorganization





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Court. After termination of the Court-supervised Reorganization the disputes or controversies arising or which are related hereto shall be resolved by the venue of the judicial district of São Paulo. -----------------------

São Paulo, [month] [day], 2020 ---------------------------

**[FULL LEGAL NAME OF PETITIONER**] ---------------------------

-------------------------------------------------------

**Annex 4.1.2** ------------------------------------------

**Indenture: Payment Instruments - Private Debentures** -------

-------------------------------------------------------

**Annex 4.1.3** ------------------------------------------

**Indenture: Payment Instruments - Public Debentures** --------

-------------------------------------------------------

**Annex 4.3** -------------------------------------------

**Payment Option Form** ---------------------------------

**[Place, date]** ----------------------------------------

-------------------------------------------------------

| To<br>Odebrecht S.A. – EM RECUPERAÇÃO JUDICIAL and Others<br>Rua Lemos Monteiro, nº 120, 16º Floor<br>Butantã, São Paulo/SP, CEP 05501-050<br>C/o: Legal Department and Finance Department<br>Email:rjodb@odebrecht.com | C/o<br>Judicial Administrator<br>577 Rua Surubim, 9o andar<br>Brooklyn Novo, São Paulo/SP, CEP 04571-050<br>C/o: Eduardo Seixas and Luciana Gasques<br>Email:aj_odb@alvarezandmarsal.com |
|---|---|

-------------------------------------------------------

Re: **Exercise of Option and Choice of Payment Instrument.** --

Dear Sirs, ---------------------------------------------

Pursuant to the terms of **Clause 4.1** of the Plan of Odebrecht S.A.'s - EM RECUPERAÇÃO JUDICIAL and Others, as approved by creditors at the Creditors' Meeting held on [*], we elected: ----------------------------------------

-------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

| | | | |
|---|---|---|---|
| *Unsecured Financial Credits:* | ( ) Option A – Unsecured Financial Credits<br>( ) Option B - Unsecured Financial Credits<br>**( ) Not Applicable** | | |
| *Unsecured Non-Financial Credits:* | ( ) Option A - Unsecured Non-Financial Credits<br>( ) Option B - Unsecured Non-Financial Credits<br>**( ) Not Applicable** | | |
| Available Payment Instrument *(Secured Credits, Unsecured Credits and ME/EPP Credits)*: | ( ) Payment Instrument – Plan<br>Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Payment Instrument - Private Debentures Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Payment Instrument - Public Debentures Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Payment Instrument - Bonds<br>Amount of Bankruptcy Credits Allocated in this Payment Instrument: [INSERT VALUE OF CREDIT]<br>( ) Deferral of the Choice of Payment Option Amount of Allocated Bankruptcy Credits under the deferment option: [<br>INSERT CREDIT VALUE]<br>**( ) Not Applicable** | | |
| Legal Name Complete: | --- | | |
| Bank: | --- | CNPJ/CPF: | --- |
| Branch: | --- | Checking Account: | --- |

---------------------------------------------------------

Sincerely, ---------------------------------------------

**[FULL LEGAL NAME]** ---------------------------------------

**Name:** *(Blank)* ----------------------------------------

**CPF:** *(Blank)* -----------------------------------------

---------------------------------------------------------

**ANNEX** 5.2[1] ----------------------------------------

**List of Assets** ---------------------------------------

**EDIFÍCIO ODEBRECHT RJ S.A - EM RECUPERAÇÃO JUDICIAL** -------

EDÍFICO CORPORATIVO PORTO MARAVILHA: commercial building with 14,357.52 m² of total private area, considering offices and shops, over a plot of 3,450.00 m². located at Avenida Cidade de Lima 86, Rio de Janeiro - RJ, CEP: 20220-710 Registration - registered in the 2nd Office of the Real Estate Register under numbers: 103.970//103.971 //103.972 //103.973 //103.974 //103.975 //103.976 //





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

103.977 // 103.978 // 109.979 // 103.980 // 103.981 // 103.982 //103.983 // 103.984 // 103985 // 103.986 // 103.987 // 103.988 // 103.989 // 103.990 // 103.991 // 103.992 // 103.993 // 103.994 // 103.995 // 103.996[2]. ----- ---------------------------------------------------------

**ODEBRECHT ENERGIA INVESTIMENTOS S.A. -** EM RECUPERAÇÃO JUDICIAL ----------------------------------------------------

Shares issued by ODEBRECHT ENERGIA S.A. - In Reorganization, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 7° andar, Parte B, Butantã, City and State of São Paulo, CNPJ No. 13.079.757/ 0001-64.[3] ---------------------------------------
---------------------------------------------------------

1 Annex 5.2 and Clause 5.2 of the Plan comply with the encumbrances, rights and priorities assured to the holders of Secured Credits and/or personal guarantees. ------------

2 Statutory lien *of* real estate pursuant to the terms of the *Private Instrument of the Statutory Lien Contract and Other Covenants*, entered into by Edíficio Odebrecht RJ S.A. - EM RECUPERAÇÃO JUDICIAL and Simplific Pavarini Distribuidora de Títulos e Valores Mobiliários Ltda, on September 26, 2018. ---------------------------------------

3 Statutory Lien of shares, pursuant to the terms of the *Private Instrument of Fiduciary Formation of Shares in Guarantee*, entered into by Odebrecht S.A. - EM RECUPERAÇÃO JUDICIAL, Odebrecht Energia Investimentos S.A., Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários and,





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

as a consenting intervening party, Odebrecht Energia S.A., on June 8, 2016, as amended. ------------------------------
-----------------------------------------------------------

**ODEBRECHT PROPERTIES INVESTIMENTOS S.A. – EM RECUPERAÇÃO JUDICIAL** -----------------------------------------------

Shares issued by ODEBRECHT PROPERTIES ENTRETENIMENTO S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte B, Butantã, City and State of São Paulo, CNPJ No. 21.264.583/0001-38 -----------

Shares issued by ODEBRECHT PROPERTIES PARCERIAS S.A. - EM RECUPERAÇÃO JUDICIAL, Closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte B, Butantã, City and State of São Paulo, CNPJ No. 16.584.908/0001- 20. -------------------------------------
-----------------------------------------------------------

**ODEBRECHT S.A. - EM RECUPERAÇÃO JUDICIAL** ------------------

Shares issued by ODEBRECHT ENERGIA E INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 20.541.146/0001-51. --------------------------------------

Shares issued by OCYAN PARTICIPAÇÕES S.A., a closely-held corporation, with registered office at Avenida Cidade Lima, 86 - salas 501 e 502, City and State of Rio de Janeiro, CNPJ under n° 23.075.178/0001-05.4 ---------------

Shares issued by ODEBRECHT CORRETORA DE SEGUROS LTDA, with registered office at Av Luis Viana, 2.841, Edifício





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Odebrecht, Paralela, Salvador, BA, CEP 41730-900, Brazil, CNPJ No. 14.588.248/0001-20. ------------------------------

Shares issued by ODEBRECHT ENGENHARIA E CONSTRUÇÃO S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 19.821.234/0001-28 -----------
-----------------------------------------------------------

4 Statutory lien constituted on the shares, pursuant to the terms of the *Private Instrument of Constitution of Guarantee – Statutory Lien over Shares Issued by Ocyan Participações S.A. under Suspensive Condition*, entered into by Odebrecht S.A. - EM RECUPERAÇÃO JUDICIAL, Pentágono S.A. Distribuidora de Títulos e Valores Mobiliários, BNDES Participações S.A. and, as consenting intervening parties, Odebrecht Energia Participações S.A. - EM RECUPERAÇÃO JUDICIAL, Ocyan Participações S.A., on May 23, 2018. ---------------------------------------------
-----------------------------------------------------------

Shares Issued by OPI S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Part A, Butantã, City and State of São Paulo, CNPJ No. 17.337.615/ 0001-00. ---------

Shares issued by ODEBRECHT UTILITIES S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14° andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 17.382.530/0001-44. -----------------------

Shares Issued by ODEBRECHT AMBIENTAL PARTICIPAÇÕES S.A., a closely-held corporation, with registered office at Rua





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Lemos Monteiro, 120, 19° andar, Parte L, Butantã, City and State of São Paulo, CNPJ No. 19.014.214/0001-45. ----------

Shares Issued by EDIFÍCIO ODEBRECHT RIO DE JANEIRO S.A. (EORJ) - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Av. Cidade de Lima, n° 86, Santo Cristo, City and state of Rio de Janeiro, CNPJ under n° 19.432.176/ 0001- 40.5 ---------------------

Shares Issued by OP GESTÃO DE PROPRIEDADES S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Part E, Butantã, City and State of São Paulo, CNPJ No. 20.620.396/ 0001-87. ------------------------------------

Shares Issued by OSP INVESTIMENTOS S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 9o andar, Part I, Butantã, City and State of São Paulo, CNPJ No. 22.606.673/ 0001-22. ---------------------------------------------

Shares Issued by ODEBRECHT TRANSPORT S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 8° andar, Parte I, Butantã, City and State of São Paulo, CNPJ No. 12.251.483/0001-86. ----------------------

-------------------------------------------------------

5 Pledge on shares, pursuant to the terms of the *Private Instrument of Pledge of First-Degree Shares under Guarantee and Other Covenants*, entered into between OP Gestão de Propriedades S.A. - EM RECUPERAÇÃO JUDICIAL, OR Empreendimentos Imobiliários e Participações S.A., Simplific Pavarini Distribuidora de Títulos e Valores





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Mobiliários Ltda. and Edifício Odebrecht R.J. - EM RECUPERAÇÃO JUDICIAL, on September 26, 2018, as amended. ------------------------------------------------------------

Shares Issued by ODB INTERNATIONAL CORPORATION - EM RECUPERAÇÃO JUDICIAL, Company existing and organized under the laws of the Bahamas, with registered office at George Street, n° 4, Mareva House, Nassau, registered under n° 138020. -----------------------------------------------------

Shares issued by ODEBRECHT DEFESA E TECNOLOGIA S.A., a private limited liability company, with registered office at Avenida Cidade Lima, 86 - sala 302, City and State of Rio de Janeiro, CNPJ No. 13.688.755/0001-72 ---------------

Shares Issued by MECTRON ENGENHARIA INDÚSTRIA E COMÉRCIO S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Av. Brigadeiro Faria Lima, n° 1.389 e 1.399, Parque Martim Cererê, City of São José dos Campos, State of São Paulo, CNPJ n° 65.481.012/ 0001-20. ---------------------------------------

Shares Issued by OR S.A, a closely-held corporation, with registered office at Rua Lemos Monteiro, n° 120, 18° andar, Parte L, Butantã, City and State of São Paulo, CNPJ n° 10.917.143/0001-16 --------------------------------------

Shares Issued by ODEBRECHT PARTICIPAÇÕES E ENGENHARIA S.A. - EM RECUPERAÇÃO JUDICIAL, a closely-held corporation, with registered office at Av. Luís Viana Filho, n° 2.841, Sala Enseada, Paralela, Cidade de Salvador, Estado da Bahia, CNPJ n° 17.851.495/ 0001-65. ----------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Shares Issued by ODEBRECHT PROPERTIES E INVESTIMENTOS S.A., a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 14o andar, Part H, Butantã, City and State of São Paulo, CNPJ No. 21.264.618/ 0001-39.

Shares Issued by FAZENDAS REUNIDAS VALE DO JULIANA S.A, located at ROD JULIANA, S/N, KM FINAL Bairro ZONA RURAL, City of Igrapiúna, State of Bahia, CNPJ No. 96.788.856/0001-42. ----------------------------------------

Shares Issued by ODB INFRA-ESTRUTURAS LOGISTICAS SGPS, S.A., located at Lagoas Park Edifício 8 2°, 2740-268, Porto Salvo Oeiras, Lisbon - Portugal, with Tax Identification Number 508556376. --------------------------

Shares issued by CONDOR PARTICIPAÇÕES S.A., with registered office at Rua Lemos Monteiro, 120, 16o andar, Parte D, Butantã, City and State of São Paulo, CNPJ No. 15.786.709/0001-31. ----------------------------------------

Shares Issued by BAHIA AMIDO S.A, a closely-held corporation, with registered office at ROD BR 101, S/N, KM 279 Neighborhood ZONA RURAL – City of Laje - Bahia - BA, CNPJ n° 11.676.185/0001-75. --------------------------------

Shares of the Capital Stock of OAI IMPORTADORA DE COMBUSTÍVEIS LTDA, a closely-held corporation, with registered office at Rua Lemos Monteiro, 120, 13o andar, Parte C, Butantã, City and State of São Paulo, CNPJ No. 28.788.371/0001-07. ----------------------------------------

--------------------------------------------------------

**KIEPPE PARTICIPAÇÕES E ADMINISTRAÇÃO LTDA. - EM RECUPERAÇÃO JUDICIAL** ----------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Lot of own plot of land n° 05 of block VI with area of 675,00m ² of the of Caminho das Árvores development, registered in the municipal real estate register under n° 239.302, in the sub-district of Amarilina, urban area of this capital, 19.00m front facing street J; 27.00m deep; 30.00 from the right side with the lot n° 06 and 30.00 left side with lot n° 04, both located in block 06, said lot is located on the odd side of the yard and 67;00m away from the next corner. Registration 45.27315 ---------------
Own plot of land no. 06 of block VI with area of 675.00 of the plot of land caminho das árvores, in the Sub-district of Amarilina, urban area of this capital, registered in the real estate census under No. 239.303, 19.00m on the front facing Rua J; 27.00m on the rear with land of agrícola contendas s/a; 30.00 on the right side with lot No. 07 and 30.00 on the left side with lot No. 05, both located in court 06, said lot is located on the odd side of the location and 86.00 yards away from the next corner. Registration 36.234[7] -------------------------------
6-18 Mortgages on real estate through the following transactions: (i) Bank Credit Note with Mortgage and Personal guarantees No. 2016034530104061000016, signed on June 22, 2016 by Kieppe Participações e Administração Ltda. – EM RECUPERAÇÃO JUDICIAL, with Banco do Estado do Rio Grande do Sul S. A. – BANRISUL, amended on three occasions, the last being by the 3rd Amendment, executed on December 19, 2018; (ii) Bank Credit Note with Mortgage and Personal Guarantee No. 2017034530104081000004,





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

executed on September 6, 2017 pela Kieppe Participações e Administração Ltda. – EM RECUPERAÇÃO JUDICIAL, with Banco do Estado do Rio Grande do Sul S. A. – BANRISUL, amended on three occasions, the last by the 3rd Amendment, executed on March 20, 2019. ------------------------------
--------------------------------------------------------

Own lot of land No. 07 of block VI with area of 675.00m² of the caminho das arvores development, registered in the municipal real estate register under No. 239,304, in the sub-district of Amarilina, urban area of this capital, 19.00m front with Rua J; 27.00m on the rear; 30.00 on the right side with plot of land No. 08 and 30.00 on the left side with plot of land No. 06, both located in block 06, said plot is located on the odd side of the yard and 105.00m away from the next corner. Registration 44.922[8] ---
--------------------------------------------------------

Own Lot of land n° 04 of block VI with area of 540,00m² of the plot of the caminho das árvores development, registered in the municipal real estate register under n° 239.301, in the Sub-district of Amarilina, urban area of this capital, through 18,00m on the front with the Rua J; 18,00m on the rear; 30.00 on the right side with lot n° 05 and 30,00 on the left with the lot n° 03, both located in block 06, said lot is located on the odd side of the yard and 49.00m away from the next corner. Registration number 38.539[9] ------------------------------------------

house n° 320, door, and 239.300 of registration in the Real Estate Register C.I., consisting of 2 floors, that





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

is, ground floor, with a room, three rooms, one being a suite, two balconies and one toilet, and the superior floor, with garage, one room, one toilet, one balcony, kitchen, servants' area, two rooms and one toilet of employee totaling constructed area of 227.56m ², in the ow plot of land n° 03 of block VI of the of Caminho das Árvores development, with 540,00m ², measuring 18,00 on the front to Rua J, 18.00 on the rear, 30.00 on the right side with plot 04, 30.00 on the left with plot 02. The plot is located on the odd side of the location and 31.00m away from the next corner. Registration 10.825 ------------ house n° 338 from the door and 239.299-2 of registration in the C.I., consisting of two balconies, living, dining-room, two bedrooms, toilet, kitchen, bedroom and servants' toilet, servants' area, totaling constructed area of 301,00m², in plot of own land n° 03 of block VI of the of Caminho das Árvores development, with 540.00m², measuring 18.00 on the front to Rua J, 18.00 on the rear, 30.00 on the right side with plot 01, 30.00 on the left side with plot 03. the plot is located on the odd side of the yard and 31.00m away from the next corner. Registration 53.228 -
-------------------------------------------------------------
-------------------------------------------------------------

Apartment n° 002, door, and municipal registration n° 333.468-Blade 01, of the undertaking called "Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, development of lots "Caminho das Arvores", in the sub-district of Amaralina, of this capital,

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL



**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

comprised of living-room, balcony, circulation, three bedrooms, one being a suite, two toilets, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and 127.81m² of total area and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E Alameda das Espatódias, of the aforementioned development, measuring 115.90m on the front, following the curb of the existing street behind the newspaper "Jornal A Tarde", and, in bend following the curb of Rua E of the development, 30.00m on the right side, on the boundary with area B-1;25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E of the aforementioned development and, 137.92m² in five segments from point F to point L, on the rear, on the boundary with the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the caminho das árvores development. ----------------------------------------------------

Apartment n° 102, door, and municipal registration n° 333.470-8-Blade 01, of the undertaking called "Edifício Solar caminho das árvores" (Solar Building Tree Path) located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and garage





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2 with 6,539.00m², located at Rua E Alameda das Espatódias, caminho das árvores development. ------------------------------------

Apartment n° 202, door, and municipal registration n° 333.472, Blade 01, of the undertaking called "Edifício Solar caminho das arvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated area B2, with 6,539m², located at Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, followed by the curb of the existing Street behind "Jornal A Tarde", 30.00m on the right side, on the limit with area B-1; 25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E, of caminho das arvores development and, 137.92m² in five segments from point F to point L, on the rear bordering the rear of Lots 1.2.3.4.5.6 and 7 of the caminho das árvores development. -





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Apartment n° 001 door and municipal registration n° 333.473, Blade 02, of the undertaking "Solar Caminho das Árvores" located at Rua 26, remnant from Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117,62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated area B2, with 6,539m², located in Rua E, Alameda das Espatódias, of the Caminho das Árvores Development, measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, 30.00m on the right side, on the border with area B-1; 25.12m in bend and 81.00m straight line, totaling 106.12m², on the left side following the curb of Rua "E" of Caminho das Árvores Development and, 137.92m² in five segments from point F to point L, on the rear bordering with rear of Lots 1,2,3,4,5,6 and 7 of Caminho das Árvores Development. -----
Apartment n° 002 door and municipal registration n° 333.474 Blade 02, of the undertaking "Edificio Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom,





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. -------------------------------------

Apartment No. 101 door and 333.475 registration in the real estate register, part of the building called Edificio Solar Caminho das Árvores- blade 02, located at Rua E, Alameda das Espatódias, in the Caminho das Árvores development, in the sub-district of Amaralina urban area of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, servants' room and toilet, vertical circulation and main and servants' hall, said apartment also having a parking space, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.76m², with the coefficient 2.0061% this building built in the area of land with 6,539m² (six thousand five hundred and thirty nine square meters) called Area B-2 measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, 30.00m on the right side, at bordering area B-1; 25.12m bend and 80.00m straight line, from point F to point L, on the rear of the border with the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Apartment n° 201, door, and municipal registration n° 333.477-5 Blade 02, of the undertaking " Edifício Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Arvores Development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartódias, Caminho das Árvores development. -------------

Apartment n° 202, door, and municipal registration n° 333.478-3 Blade 02, of the undertaking "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development, bordering lots 1.2.3.4.5.6 and 7 of Caminho das Árvores development.

Apartment n° 001, door, municipal registration n° 333.479 Blade 03, of the undertaking "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development.-------------------------------------

Apartment n° 002, door, and municipal registration n° 333.480-5 Blade 03, of the undertaking "Edificio Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

of own land, designated as B2 area, with 6.539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ---------------------------------------
Apartment n° 101, door, and municipal registration n° 333.481 Blade 03, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, garage space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, called B2 area, with 6,539m², located at Rua E - Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing street behind the "Jornal A Tarde", in a bend following the curb of Rua E, Caminho das Árvores development, 30.00m on the right side, bordering area B-1; 25.12m in a bend and 81.00m straight line, totaling 106.12m², on the left side following the curb of Rua E, Caminho das Árvores development and, 137.92m² in five segments from point F to point L, rear bordered by the rear of lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. ---------------------------------------
Apartment n° 102, door, and municipal registration n° 333.482-1 Blade 03, of the undertaking called "Edifício





**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development.--------------
Apartment n° 201, door, and municipal registration n° 333.483 Blade 03, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², Total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated area B-2, dismembered from the largest portion of the area of 12,000.00m², measuring 115.90m on the front of the boundary with lots 1.2.3.4.5.6 and 7 of block VI,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

of the Caminho das Árvores development; 30.00m on the right side on the boundary with area B-1; 106.12 on the left side on the boundary with Rua E of the Caminho das Árvores development, with 6,539.00m². ---------------------

Apartment n° 202, door, and municipal registration n° 333.484 Blade 03, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, servants' room and toilet and garage space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development, bordering lots 1.2.3.4.5.6 and 7 of the Caminho das Árvores development. -------------------------------------------

Apartment No. 001, door, and 333.485-6 of registration in the real estate register, part of the building called "Solar Caminho das Arvores", blade 04, located at Rua 26, current Alameda das Espatódeas, remnant from Parque Jockey Clube, 66, Caminho das Árvores, in the sub-district of the Amaralina urban area, in this capital, consisting of three bedrooms, one suite, two toilets, internal circulation,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, room and toilet, vertical circulation and main and servants' hall, with parking space for the apartment, with private area of 117.62m2, Common area 10,19m² and total area of 127,81m² and ideal fraction of 134,790m², of its respective land designated by Area B-2, measuring in all 6.539,00m², located Rua E, Alameda das Espatódeas, Caminho das Árvores development, portion of land in the Amaralina sub-district, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and in the bend following the curbof Rua E, of said Caminho das Árvores development, 30.00m on the right side, on the boundary with area B-1; 25.12m in bend and 81.00m straight line, totaling 106.12m on the left side following the curb of Rua E of the same development and 137.92m in five segments from point F to point L, to the rear of point F to point L, to the rear of the boundary with lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------------------

Apartment n° 002, door, and municipal registration n° 333.486-4 Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 117.62m2,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located to Rua E, Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right, bordering area B-1; 25.12m on the bend and 81.00m on a straight line, totalizing 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. - Apartment n° 101, door, and municipal registration n° 333.487, Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 119,47m2, Common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated area B2, with 6,539m², located Rua E Alameda das Espatódias, of the Caminho das Árvores development, previous stretch comprising the Brotas sub-district, measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, and





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right side, bordering area B-1; 25.12m in bend and 81.00m straight-line, totaling 106.12m², on the left side following the curb of Rua E, from the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the of Caminho das Árvores development.-----------------------

Apartment n° 102, door, and municipal registration n° 333.488-0 Blade 04, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet and parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E of Espatódias, Caminho das Árvores development.--------------------------

Apartment no. 201, door, and municipal registration no. 333.489, Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 119.47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated area B2, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development, stretch previously measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right, on the boundary with area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. -------------

Apartment n° 202, door, and municipal registration n° 333.490, Blade 04, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m²





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

and ideal fraction of 136.949m² of the total area of own land, designated as area B2, with 6,539m², located Rua E, Alameda das Espatódias, of Caminho das Árvores development, stretch previously measuring 115.90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left following the curb of Rua E of the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development.-----------------

Apartment n° 001, door, and municipal registration n° 333.491 Blade 05, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located at Rua E, Alameda das Espatódias, of Caminho das Árvores development, bordering lots 01, 202, 03, 04, 05, 06 and 07 of the Caminho das Árvores development.-------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Apartment n° 002, door, and municipal registration n° 333.492 Blade 05, of the undertaking called "Edificio Solar Caminho das Árvores" located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the Amaralina sub-district, of this capital, Caminho das Árvores development, comprised of three bedrooms, one being en-suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and garage space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, divided from the largest portion of the area of 12.00m², 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering lots 01 to 07 of block VI of said Caminho das Árvores development, 30.00m on the right bordering area B-1, 106.12m on the left bordering Rua E of said development, with the area of 6,539.00m². -----------------------------------------------

Apartment n° 101, door, and municipal registration n° 333.493, Blade 05, of the undertaking called "Edificio Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

servants' toilet, and parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as B2 area, with 6,539m², located Alameda das Espatódias, of the Caminho das Árvores Development, measuring 115.90m on the front, following the curb the existing street behind Jornal A Tarde, 30.00m on the right side, bordering the area B-1; 25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E, the Caminho das Árvores Development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores Development. -- Apartment nº 102, door, and municipal registration nº 333.494-5 Blade 05, of the undertaking called "Edifício Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Esparto Deas, Caminho das Árvores development. --------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Apartment n° 202, door, and municipal registration n° 333.496 Blade 05, of the undertaking called "Edificio Solar caminho das árvores situated at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the sub-district of Amaralina, of this capital, Caminho das Árvores development, comprised of three bedrooms, one en-suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²; namely, 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m², with the area of 6.539,00m², on the boundary with lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------------------

Apartment n° 001, door, and municipal registration n° 333.497 Blade 06, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located to Rua E, Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ------------------------------------

Apartment n° 002, door, and municipal registration n° 333.498-8 Blade 06, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ------------------------------------

Apartment n° 101, door, and municipal registration n° 333.499,-6, Blade 06, of the undertaking called "Solar





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, separated from the largest portion of area of 12.000m², located at Rua E alameda das Espatódeas, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30,00m on the right, on the boundary with the area B-1; with 6.539m², located Rua E Alameda das Espatódias, of the Caminho das Árvores development. ---------------------------------------------

Apartment n° 102, door, and municipal registration n° 333.500-3, Blade 06, of the undertaking called "Edificio Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m²





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, with 6,539m², located at Alameda das Espatódias, of the Caminho das Árvores Development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right side, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totaling 106.12m², on the left side following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to the point L, on the rear bordering the rear of Lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. -------------------
Apartment n° 201, door, and municipal registration n° 333.501-1 Blade 06, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital city, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with a private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development,. -------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Apartment n° 202, door, and municipal registration n° 333.502, Blade 06, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development, stretch previously measuring 115.90m on the front, followed by the curb of the existing street behind "Jornal A Tarde", and bend following the curb of Rua E of the Caminho das Árvores development, 30.00m on the right side, bordering the area B-1; 25.12m in bend and 81.00m straight, totaling 106.12m², on the left side following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments from point F to L, on the rear bordering the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------

Apartment n° 001, door, and municipal registration n° 333.503 Blade 07, of the undertaking called "Edificio Solar Caminho das Árvores located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the sub-district of Amaralina, of





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

this capital, Caminho das Árvores development, comprised of three bedrooms, one en-suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, room and servants' toilet; parking space in the open parking, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²: 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering the rear of lots 01 to 07 of block VI of said Caminho das Árvores development, 30.00m on the right bordering area B-1, 106.12m on the left bordering Rua E of the mentioned development, with area of 6,539.00m², on the boundary with lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development.--------------------------------------------

Apartment n° 002, door, and municipal registration n° 333.504 Blade 07, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the Amaralina sub-district, of this capital, Caminho das Árvores development, comprised of three bedrooms, one suite, two toilets, internal circulation, living-room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area 10.19m² and total area of 127.81m²





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²; namely, 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering lots 01 to 07 of the above mentioned Caminho das Árvores development, 30.00m on the right side on the boundary of area B-1, 106.12m on the left side bordering Rua E of the above mentioned development, with area of 6,539.00m², on the boundary with the lots 1,2,3,4,5,6 and 7 of the Caminho das Árvores development. ----------------------------------

Apartment n° 101, door, and municipal registration n° 333.505 Blade 07, of the undertaking called " Edifício Solar Caminho das Árvores", located at Rua 26, remnant from the Jockey Club Park, 66, at the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one en-suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development,. -------------

Apartment n° 102, door, and municipal registration n° 333.506 Blade 07, of the undertaking called " Edificio





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Árvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with a private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espatódias, Caminho das Árvores development,. -------------
Apartment n° 201, door, and municipal registration n° 333.507 Blade 07, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartodeas, of the Caminho das Árvores development, bordering lots 1,





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development.-----------------------------------------------
Apartment n° 202, door, and municipal registration n° 333.508, Blade 07, of the undertaking called "Solar Caminho das Árvores", located at Rua 26, remnant from Parque Jockey Clube, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119.47m2, common area of 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, separated from the largest portion of area of 12.000m², located in Rua E, Alameda das Espatódias, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30,00m on the right, on the boundary with the area B-1; with 6.539m², located Rua E, Alameda das Espatódias, of the Caminho das Árvores development, stretch previously (sic).--------------------
Apartment n° 001, door, and municipal registration n° 333.509 Blade 08, of the undertaking called "Edifício Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as B2 area, with 6,539m², located at Rua E, Alameda das Espatódias, of the Caminho das Árvores development. ------------------------------------

Apartment nº 002, door, and municipal registration nº 333.510 Blade 08, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Árvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area of 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, with 6,539m², located to Rua E, Alameda das Espatódias, of the Caminho das Árvores development, measuring 115.90m on the front, following the curb of the existing Street behind Jornal A Tarde, 30.00m on the right, on the boundary with the area B-1; 25.12m in bend and 81.00m on a straight-line, totalizing 106.12m², on the left following the curb of Rua E, of the Caminho das Árvores development and, 137.92m² in five segments of the point F to L, on the rear bordering





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the rear of Lots 1, 2, 3, 4, 5, 6 and 7 of the Caminho das Árvores development. -------------------------------------

Apartment n° 101, door, and municipal registration n° 333,511 Blade 08, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from the Jockey Club Park, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with a private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartodeas, Caminho das Árvores development,. ------------

Apartment n° 102, door, and municipal registration n° 333.512 Blade 08, of the undertaking called " Edificio Solar caminho das arvores", located at Rua 26, remnant from Parque Jockey Club, 66, in the Caminho das Arvores development, in Pituba, Amaralina sub-district, in this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, dressing room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet and a parking space in the open parking lot, with private area of 119.47m², common area of 10.36m², total area of 129.83m² and ideal fraction





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

equivalent to 136.949m² of the total area of own land designated as area B-2, separated from the largest portion of the area of 6,539.00m², located at Rua E das Espartodeas, of Caminho das Árvores development, limited with lots 1,2,3,4,5,6 and 7 of the of Caminho das Árvores development. ---------------------------------------------

Apartment n° 201, door, and municipal registration n° 333.513 Blade 08, of the undertaking called "Edificio Solar caminho das árvores" located at Rua 02, current Professor Milton Cayres de Brito, remnant from Parque Jockey Clube, 22, in the Amaralina sub-district, of this capital, Caminho das Arvores development, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and contract toilet, and a parking space in the open parking lot, with private area of 117.62m2, common area 10.19m² and total area of 127.81m² and ideal fraction of 134.790m² of the total area of own land, designated as area B2, separated from the largest portion of the area of 12.00m²; namely, 115.90m on the front on the boundary with the existing street behind Jornal A Tarde, 137.92m² on the rear bordering lots 01 to 07 of the above mentioned Caminho das Árvores development, 30.00m on the right side on the boundary of area B-1, 106.12m on the left side on the boundary with Rua E of the above mentioned development, with area of 6,539.00m², on the boundary with the lots 1, 2, 3, 4, 5, 6 and 7 of the plot of the Caminho das Árvores development. --------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Apartment n° 202, door, and municipal registration n° 333.501-1, Blade 08, of the undertaking called "Solar Caminho das Árvores" located at Rua 26, remnant from the Jockey Club Park, 66, Caminho das Arvores development, in the Amaralina sub-district, of this capital, comprised of three bedrooms, one suite, two toilets, internal circulation, living room, balcony, kitchen, storeroom, pantry, servants' area, bedroom and servants' toilet, and a parking space in the open parking lot, with private area of 119,47m2, common area 10.36m² and total area of 129.83m² and ideal fraction of 136.949m² of the total area of own land, designated as area B2, separated from the largest portion of area of 12.000m², located in Rua E, Alameda das Espatódias, measuring 115,90m on the front, following the curb of the existing street behind Jornal A Tarde, and bend following the curb of Rua E of the Caminho das Árvores development, 30,00m on the right, on the boundary with the area B-1; with 6.539m², located Rua E, Alameda das Espatódias, of the aforementioned Caminho das Árvores development. ----------------------------------------

Units of the capital stock of FRVJ PATRIMONIAL LTDA, limited business y company, with registered office at Avenida Tancredo Neves, 1672, Edifício Catabas Empresarial, 5° andar, Caminho das Árvores, Salvador, State of Bahia, taxpayer identification number CNPJ 21.027.346/0001-53. ----------------------------------------
------------------------------------------------------------
------------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**ANNEX 6.1** -----------------------------------------------

**List of Corporate Reorganization Transactions** -------------

**1.** Pursuant to the terms of the applicable law, the Companies under Reorganization are authorized to carry out the following corporate reorganization transactions: ------

(i)

**OEI Acquisition:** ODB may acquire the OEI so that the debentures credits with ATVOS S.A. – EM RECUPERAÇÃO JUDICIAL. and the liabilities with BNDESPAR and OSPINV appear in ODB's balance sheet. ----------------------------

-----------------------------------------------------------

**ANNEX 7.4.1** ---------------------------------------------

**Rules for Allocating Remittances of Funds to Petitioners** --

-----------------------------------------------------------

| Petitioners | Maximum Remittance Value (in BRL Million) |
|---|---|
| OPISA and OPI | 38,0 |
| OE and OEB | 13,0 |
| OPP and OP Administrative Center | 16,9 |
| MECTRON, OSP and OFL | 5,6 |
| **Total** | **73,4** |

-----------------------------------------------------------

The residual amount of BRL 6,600,000.00 (six million and six hundred thousand Brazilian reais) may be freely allocated among Petitioners to fulfill the obligations contained in their respective court-supervised reorganization plans. -------------------------------------

-----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

**HAVING NOTHING FURTHER TO TRANSLATE FROM THIS DOCUMENT, I SIGN IT BY SETTING MY RIGHT HAND AND AFFIXING MY GOLDEN SEAL AND OFFICIAL STAMP. ----------------------------------**

**PAULO FERNANDO SANTOS DE LACERDA, Ph.D --------------------**

**SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER PERMIT #243 ------------------------------------------------------**

**April 30, 2020. ------------------------------------------**







**REPÚBLICA FEDERATIVA DO BRASIL**

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

200.133(001) Livro 749 Fl. 246-324

**I, SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER SIGNED BELOW, APPOINTED BY THE PRESIDENT OF THE TRADE BOARD OF THE STATE OF RIO DE JANEIRO (JUCERJA), LICENSED IN THE FOLLOWING LANGUAGES: ENGLISH, FRENCH, AND SPANISH UNDER PERMIT 243---------------------------------------------------------------------------- HEREBY CERTIFY IN GOOD FAITH------------------------------------------------------ THAT ON THIS DATE A DOCUMENT WAS PRESENTED TO ME WRITTEN IN PORTUGUESE, WHICH I NOW TRANSLATE INTO THE ENGLISH IDIOM WITH THE BEST OF MY KNOWLEDGE AND IN GOOD FAITH, AS COMMANDED BY MY OFFICIAL DUTY, AS FOLLOWS: ---------------------------**

-----------------------------------------------------------

**Annex 4.1.2** -----------------------------------------------

**Indenture: Payment Instruments - Private Debentures** -------

**PRIVATE INSTRUMENT OF INDENTURE OF SIMPLE UNSECURED DEBENTURES [--] NON-CONVERTIBLE INTO SHARES, WITH ADDITIONAL PERSONAL GUARANTEE, IN SINGLE SERIES, FOR PRIVATE PLACEMENT, OF [ISSUER]1** ----------------------------

-----------------------------------------------------------

1 To be adapted and adjusted according to the provisions of the Court-supervised reorganization Plan.

-----------------------------------------------------------

entered into between --------------------------------------

**[ISSUER]** ----------------------------------------------

*as Issuer* -----------------------------------------------

and -------------------------------------------------------

**[TRUSTEE]** ---------------------------------------------

*as Trustee, representing the communion of Debenture Holders* -------------------------------------------

**[GUARANTORS]** ------------------------------------------

*as intervening guarantors* -------------------------------

[date] ----------------------------------------------------



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

---------------------------------------------------------------

**PRIVATE INSTRUMENT OF INDENTURE OF SIMPLE UNSECURED DEBENTURES [--] WITH ADDITIONAL PERSONAL GUARANTEE, IN SINGLE SERIES, FOR PRIVATE PLACEMENT, OF [ISSUER]** ---------

By this private instrument, ------------------------------

**[ISSUER]**, *[identification]*, herein represented pursuant to its articles ("Issuer"); ---------------------------------

**Trustee**, [*[identification*], herein represented pursuant to its [articles of organization/association], as trustee of this issue ("Trustee"), representing the communion of the Unsecured Non-Financial Creditors who acquire the debentures of this issue ("Debenture Holders" and, individually, "Debenture Holder"); ------------------------

as intervening guarantors and main payers, ----------------

**[GUARANTOR 1]**, *[identification*], herein represented pursuant to its articles *("[Guarantor 1]");* ---------------

**[GUARANTOR 2]**, *[identification*], hereby represented pursuant to its articles *("[Guarantor 2]"* and, collectively with Guarantor 1, "Guarantors"); **[NOTE: NUMBER OF GUARANTORS AND THEIR RESPECTIVE IDENTIFICATION TO BE DEFINED IN DUE COURSE DEPENDING ON THE COMPANIES UNDER REORGANIZATION THAT ADHERE TO THE COURT-SUPERVISED REORGANIZATION PLAN]** ------------------------------------

**WHEREAS:** ---------------------------------------------

(A) Issuer and Guarantors are members of the Odebrecht Group, one of the largest business conglomerates in





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Brazil, a business conglomerate operating in the sectors of infrastructure, oil and gas, sugar and ethanol, real estate development, mobility and transportation, energy, defense and naval services, bringing together several companies under the joint control (directly or indirectly) of Kieppe Participações e Administração Ltda. – Under Court-supervised reorganization ("Odebrecht Group"); ------

(B) in the performance of their activities, Issuer and other companies members of the Odebrecht Group, including Guarantors (collectively referred to as "ODB Companies under Reorganization") have structured themselves to enable them to raise funds in the Brazilian and international financial and capital markets, by contracting bank loans, bank guarantees, insurance-guarantee and the issuance of debt instruments in the local market (debentures) and in the international market (*bonds*) (together, "Restructured Debts"); -----------------

(C) due to financial difficulties faced by the ODB Companies under Reorganization that culminated in default on a significant part of the Restructured Debts, on June 17, 2019, a joint court-supervised reorganization petition was filed under No. 1057756-77.2019.8.26.0100, which is in progress at the 1st Bankruptcy and Court-supervised Reorganization Court of the Central Civil Forum of the Judicial District of the Capital of São Paulo, to allow them to proceed with and preserve the activities of ODB





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Companies under Reorganization ("Court-supervised Reorganization Plan"); ------------------------------------

(D) in attention to the orders of pages 278/285 and 355/363, issued respectively within the scope of Interlocutory Appeal No. 2262371-21.2019.8.26.0000 and 22627773.2019.8.26.000, the Bankruptcy Creditors (as defined in the Court-supervised reorganization Plan) of the Companies under reorganization listed in Annex II to this Indenture, as amended from time to time to include any new Companies under reorganization ("Companies under Reorganization") resolved, at the general meeting of creditors, to substantially consolidate Odebrecht S.A. - under Court-supervised reorganization ("ODB") with the other Companies under reorganization, so that the Court-supervised reorganization Plan is comprised of the assets and liabilities held by all the Companies under reorganization ("Substantial Consolidation of the Companies under reorganization"); -------------------------

(E) under the Court-supervised Reorganization Plan, the possibility was granted to creditors of unsecured credits arising from transactions conducted within the National Financial System, with insurance companies, foreign financial institutions, investment or mutual funds, or involving foreign structures similar to investment or mutual funds, *private equity*, and/or issues of debt instruments in the domestic and foreign markets,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

including, without limitation, issues of debentures, *notes* or *bonds* ("Unsecured Financial Credits"), to have their credits restructured and paid in full through certain instruments, as duly elected, among which debentures to be issued with restricted placement efforts, pursuant to the terms of CVM Instruction No. 476, of January 16, 2009, as amended ("Public Debentures"); ----------------------------

(F) under the Court-supervised reorganization Plan, the possibility was also granted to creditors of unsecured credits other than Unsecured Financial Credits, as well as to creditors holding bankruptcy credits held by individual entrepreneur, EIRELI, limited business company and/or limited partnership, provided they are classified as small businesses and small companies, as defined by Supplementary Act No. 123, of December 14, 2006, and as provided in articles 41, item IV and 83, item IV, letter d, of Act No. 11101 of February 9, 2015 (collectively "Unsecured Non-Financial Credits"), to have their credits restructured and fully paid through certain instruments, as duly elected, among which private debentures ("Private Debentures"); ---------------------------------------------

(G) in order to enable the issue of Private Debentures so that creditors of Unsecured Non-Financial Credits with credits in an amount exceeding one hundred and fifty thousand reais (BRL150,000,000) ("Unsecured Non-Financial Creditors") have their credits satisfied, the substantial





Pg 377 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 251

terms and conditions of this Indenture (as defined below) were inserted as an attachment to the Court-supervised reorganization Plan; ------------------------------------

(H) the Court-supervised reorganization Plan was duly approved by the Bankruptcy Creditors and later ratified in court pursuant to article 58, paragraph 1 of Act No. 11101 of February 9, 2015, on [date]; and -----------------------

(I) the Unsecured Non-Financial Creditors that choose to have their Unsecured Non-Financial Credits paid through Private Debentures may subscribe to the Debentures under this Issue (as defined below) pursuant to the terms contained herein. ------------------------------------------

Issuer, Trustee and Guarantors are hereinafter collectively referred to as "Parties" and, individually and indistinctly, as "Party". -----------------------------

The Parties hereby resolve, in due accordance with the law, to execute this ------------------------------------

*"Private Instrument of Indenture [--] of Simple Unsecured Debentures, Non-Convertible into Shares, with Additional Personal Guarantee, in Single Series, for Private Placement, of [Issuer]"* ("Indenture"), according to the clauses and conditions below. -----------------------------

For purposes of this Indenture, "Business Day" is defined as any day of the week except Saturdays, Sundays, and declared national holidays. When the indication of the period counted per day in this Indenture is not

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 378 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 252

accompanied by the indication "Business Day", the period shall be understood to be counted in calendar days. -------

**CLAUSE I** --------------------------------------------------

**AUTHORIZATION** ---------------------------------------------

1.1 This Indenture is executed based on the authorization of the *Extraordinary General Meeting of shareholders of Issuer held on [date] ("Issuer's Extraordinary General Meeting")*, by means of which the issue of simple unsecured debentures, not convertible into shares, with additional personal guarantee, in single series, of Issuer ("Debentures" and "Issue", respectively), for private placement, pursuant to article 59 of Act No. 6404 of December 15, 1976, as amended ("Corporation Law"), and other applicable legal and regulatory provisions; and (ii) the authorization for the Officers Board of the Issuer to perform all acts necessary effectuate the resolutions embodied therein, including the execution of all documents necessary for the accomplishment of the Issue. **[NOTE: APPROVAL OF THE ISSUE VIA AGE AND/OR RCA TO BE CONFIRMED RELYING ON ISSUER]** ---------------------------------------

1.2. The Guarantee (as defined below) shall be based on the resolutions of the *[Extraordinary General Meeting of shareholders of Guarantor 1 held on [date] ("Guarantor 1 AGE_")J* and Guarantor *2 Extraordinary General Meeting of shareholders held on [date] ("Guarantor 2* AGE") and, together with the [Guarantor 1 AGE], "Corporate Acts of

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Guarantors"). **[NOTE: APPROVAL OF THE GUARANTEE VIA AGE AND/OR RCA TO BE CONFIRMED RELYING ON GUARANTORS]** ---------

**CLAUSE II** ---------------------------------------------------

**REQUIREMENTS** ------------------------------------------------

The Issue shall be conducted in compliance with the requirements below. ---------------------------------------

**2.1. Waiver of Registration with CVM and the Brazilian Association of Financial and Capital Market Entities ("ANBIMA")** ------------------------------------------------

2.1.1. The Issue was not and shall not be the subject of registration with CVM or ANBIMA, since the Debentures shall be the subject of private placement, without any effort of sale or intermediation by institutions integrating the distribution system for investors. --------

**2.2. Filing with the Trade Register and Publication of the Minutes of Issuer's AGE** -----------------------------------

2.2.1. The minutes of [Issuer's Extraordinary General Meeting] shall be duly filed with the Trade Register of the State of [--] ("Trade Register") and shall be published in the newspapers "Diário Oficial do Estado de [--] ("Official Gazette") and "[--]", pursuant to the Corporation Law. The corporate acts that may be performed after the filing of this Indenture shall also be filed with the Trade Register and published by Issuer in the Official Gazette and "[--]", according to the legislation in force ---------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**2.4. Archiving and Recording of this Indenture and its Amendments** ----------------------------------------------------

2.4.1. This Indenture and any amendments thereto shall be filed with the Trade Register, pursuant to article 62, II and paragraph 3 of the Corporation Law. Issuer shall send one (1) original counterpart of the Indenture and its eventual amendments duly registered with Trade Register to Trustee within five (5) Business Days as of the respective registration. Additionally, due to the Guarantee granted by the Guarantor, this Indenture and its eventual amendments shall also be registered with the competent Registers of Deeds and Documents in the cities of [--], in the State of [--] ("RDTs"), and this Indenture (and eventual amendments) must be registered with the RTDs within five (5) Business Days counted from the date of its execution and one (1) original counterpart sent by Issuer to Trustee within five (5) Business Days, counted from the respective registration. ----------------------------------

**2.5. Registration with B3** ----------------------------------

2.5.1. The Debentures, at the discretion of Issuer, may be registered in the name of the holders with B3 S.A. - Brazil, Stock Exchange, Counter Market – Cetip Segment UTVM ("B3"), the financial settlement of the events being carried out through B3, considering that the Debentures are registered in the name of the respective Debenture Holders at B3 on the date of each payment event by Issuer.





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**CLAUSE III** ------------------------------------------------------

**CHARACTERISTICS OF THE ISSUE** -------------------------------

**3.1 Corporate Purpose of Issuer** ---------------------------

3.1.1. Pursuant to the terms of Issuer's articles currently in force, Issuer's purpose comprises *[include description of Issuer's corporate purpose]*. ---------------

**3.2 Issue Number** ------------------------------------------

3.2.1. This Issue constitutes the [--] ([--]) issue of debentures by Issuer. ------------------------------------

**3.3 Total Value of the Issue** ------------------------------

3.3.1. The total amount of the Issue shall be BRL [--] ([--]), on the Date of Issue (as defined below), observing the possibility of partial distribution of the Debentures set forth in Clause 3.5.3, so that the Total Amount of the Issue shall be adjusted by means of amendment to this Indenture, after the expiry of the Subscription Period (as defined below) ("Total Amount of the Issue"). -------------

**3.4 Number of Series** --------------------------------------

3.4.1. The Issue shall be made in a single series. --------

**3.5 Placement of Debentures** -------------------------------

3.5.1. The Debentures shall be the subject of private placement intended only for Unsecured Non-Financial Creditors, without any effort of sale or intermediation by the institutions integrating the distribution system before investors, it being certain that the Debentures may be subscribed by the Unsecured Non-Financial Creditors





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

until a maximum term of 36 (thirty-six) months counted from *[date]* ("Subscription Period"). ----------------------

3.5.2. The placement of the Debentures for the Unsecured Non-Financial Creditors shall be made in accordance with the Court-supervised reorganization Plan, as applicable. --

3.5.3. Partial distribution of the Debentures shall be allowed, noting that the final amount of the Private Offering shall be defined after the end of the Subscription Period. -------------------------------------

3.5.3.1. At the end of the Subscription Period, the Debentures effectively issued and not distributed shall be cancelled by Issuer. -------------------------------------

3.5.3.2. Since the distribution may be partial, the Unsecured Non-Financial Creditor acquiring the Debentures shall expressly waive, upon acceptance of the Private Offering, the possibility of conditioning its adhesion to the total distribution or of a proportion or minimum quantity of the Debentures. -------------------------------

**3.6 Settling Bank and Bookkeeping Agent** -------------------

3.6.1. The institution providing the services of the Settling Bank of the Debentures is the *[Settling Bank]*, *[identification]* ("Settling Bank"). -----------------------

3.6.2. The institution providing bookkeeping services for the Debentures is the *[Bookkeeping Agent]*, *[identification]* ("Bookkeeping Agent"). -------------------





Pg 383 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 257

3.6.3. The Bookkeeping Agent shall be responsible for carrying out the bookkeeping of the Debentures, among other attributions described in B3 Policy Manual, in the case of Debentures registered in the name of the respective Debenture Holders in B3. -----------------------

**3.7 Allocation of Funds** ----------------------------------

3.7.1. The paid-up credits received by Issuer as a result of the subscription of the Debentures shall be used by Issuer for the capitalization of its subsidiaries and/or restructuring of its debts in compliance with the terms and conditions of the Court-supervised reorganization Plan. **[NOTE: ALLOCATION OF FUNDS TO BE ADAPTED AS DEFINED IN RJ PLAN]** -----------------------------------------------------

**3.8. Personal Guarantee** ----------------------------------

3.8.1. In guarantee of full payment of any and all amounts, principal or accessory, including Default Charges (as defined below), due by Issuer or by Guarantor, pursuant to the terms of this Indenture, as well as any and all indemnities, any and all costs or expenses proven and reasonably incurred by Trustee and/or by the Debenture Holders as a result of proceedings, procedures and/or other judicial or extrajudicial measures necessary to protect their rights and prerogatives arising from the Debentures, from this Indenture ("Secured Obligations"), Guarantors herein undertake, jointly and severally among themselves and with Issuer, irrevocably and irreversibly,

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

to the Debenture Holders, as guarantors, main payers of the Secured Obligations, expressly waiving the benefits of order, rights and powers of release of any nature provided in articles 333, sole paragraph, 364, 366, 368, 821, 824, 825, 827, 829, sole paragraph, 830, 834, 835, 836, 837, 838 and 839 of Act No. 10.406, of January 10, 2002, as amended ("Civil Code"), and articles 130 and 794 of Act No. 13.105, of March 16, 2015, as amended ("Code of Civil Procedure" and "Guarantee", respectively). ----------------

3.8.2. Trustee shall request the judicial or extrajudicial execution of the Guarantee, according to the function attributed to it in this Indenture, once any event of insufficiency of payment of the Secured Obligations is verified. The Guarantee may be foreclosed and required by Trustee as often as necessary, until full and effective liquidation of all the Secured Obligations, it being certain that failure to execute the Guarantee by Trustee shall not entail, in any case, loss of the right of execution of the Guarantee by the Debenture Holders. ------

3.8.3. Guarantors undertakes, jointly and severally with each other, regardless of any claim, action, dispute or complaint that Issuer may have or exercise in relation to its obligations, except as provided in Clause 3.8.6 below, to honor the Guarantee, regardless of notification by Trustee informing lack of payment by Issuer, within





Pg 385 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 259

[thirty (30)] days counted from the nonfulfillment of any of the Secured Obligations by Issuer, outside B3. ---------

3.8.4. The Guarantee mentioned herein is irrevocable and irreversible and shall come into force on the date of execution of this Indenture and shall remain valid until full payment of the Secured Obligations. ------------------

3.8.5. Guarantors herein agree and undertake, jointly and severally among themselves, to, (i) only after the full settlement of all values due to the Debenture Holders and to Trustee pursuant to the terms of this Indenture, require and/or demand Issuer with respect to any value it has honored under the Debentures and pursuant to the terms of this Indenture; and (ii) if Issuer is defaulting on the performance of the monetary obligations set forth in this Indenture and Guarantors are reimbursed by Issuer for any value it has honored under the Debentures, under the terms of this Indenture before the full settlement of all values due to the Debenture Holders and to Trustee pursuant to the terms of the Debentures, of this Indenture, pass on, within thirty (30) Days counted from the date of its receipt, such value to Trustee, for payment to the Debenture Holders. -------------------------

3.8.6. The Guarantee shall remain valid and fully effective in the event of amendments, alterations and any other modifications to this Indenture and the other documents of the Issue. ----------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**CLAUSE IV** ---------------------------------------------------

**GENERAL CHARACTERISTICS OF THE DEBENTURES** -----------------

**4.1. Date of Issue:** For all legal effects and purposes, the date of issue of the Debentures shall be the *[date]* ("Date of Issue"). ---------------------------------------

**4.2. Form, Type and Proof of Ownership:** The Debentures shall be issued in registered and book-entry form, without the issue of any warrants or certificates, and for all legal purposes, title to the Debentures shall be evidenced by a Debenture statement issued by the Bookkeeping Agent, and additionally, with respect to the Debentures registered in the name of the respective Debenture Holders with B3, a statement shall be issued for the Debenture(s) in the name of the Debenture Holder, which shall serve as evidence of title to such Debentures. ---------------------

**4.3. Convertibility:** The Debentures shall not be convertible into shares issued by Issuer. -----------------

**4.4. Type:** The Debentures shall be unsecured pursuant to article 58 of the Corporation Law and shall have an additional personal guarantee. ----------------------------

**4.5. Term and Expiration Date:** Without prejudice to the possibility of early settlement of the Debentures due to the assumptions of early maturity or of any Mandatory Early Redemption (as defined below), pursuant to the terms of this Indenture, the Debentures shall have a maturity





Pg 387 of 541

REPÚBLICA FEDERATIVA DO BRASIL
Paulo Fernando Santos de Lacerda
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 261

date of forty (40) years as of the Date of Issue; thus maturing on [date] ("Maturity Date"). ---------------------

**4.6. Unit Par Value:** The unit par value of the Debentures shall be BRL [--] ([--]), on the Date of Issue ("Unit Par Value"). -----------------------------------------------

**4.7. Number of Debentures Issued:** Up to [--] ([--]) Debentures shall be issued, subject to the possibility of partial distribution pursuant to the terms of Clause 3.5.3 above. ------------------------------------------------

**4.8. Form of Subscription and Payment:** The Debentures shall be subscribed and paid up, on one or more dates, in accordance with the settlement rules applicable [to B3/the Settling Bank], at their Adjusted Unit Par Value (as defined below). The Debentures shall be subscribed exclusively by Unsecured Non-Financial Creditors and paid exclusively with Unsecured Non-Financial Credits, in compliance with the provisions of the Court-Supervised Reorganization Plan, by means of a subscription bulletin, whose template is attached to this Indenture as Annex II. -

**4.9. Inflation adjustment:** The Unit Par Value or balance of the Unit Par Value, as applicable, of the Debentures shall be adjusted by the IPCA or TR (as defined below), as follows. -----------------------------------------------

4.9.1 *Inflation adjustment by the IPCA.* Subject to the provisions of Clause 4.9.2 and sub-clauses below, the Unit Par Value or the balance of the Unit Par Value, as

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

applicable, of the Debentures shall be monetarily restated by the accumulated positive variation of the National Extended Consumer Price Index ("IPCA"), calculated and disclosed on a monthly basis by the Brazilian Institute of Geography and Statistics ("IBGE"), from the Date of Issue (inclusive) to the TR Modifying Date (as defined below) (inclusive) or the Maturity Date (inclusive), as the case may be, ("IPCA Inflation adjustment"). The proceeds of the IPCA Inflation adjustment shall be automatically incorporated into the Unit Par Value of the Debentures or, if applicable, into the balance of the Unit Par Value of the Debentures, as applicable ("IPCA Adjusted Unit Par Value"), calculated on a *pro rata temporis* basis per Business Days according to the formula below: -------------

*VNa = VNe x C* ------------------------------------------------

Where: ---------------------------------------------------

VNa = IPCA adjusted unit par value calculated to eight (8) decimal places, without rounding; -------------------------

VNe = IPCA unit par value or balance of IPCA unit par value (par value remaining after amortization of the principal), as the case may be, calculated to eight (8) decimal places, without rounding. -------------------------

C = Cumulative factor of monthly changes to the index used, calculated to eight (8) decimal places, without rounding, calculated as follows: --------------------------

---------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

$$C = \prod_{k=1}^{n}\left[\left(\frac{NI_k}{NI_{k-1}}\right)^{dup/dut}\right]$$

$$C = \prod_{k=1}^{n}\left[\left(\frac{NI_k}{NI_{k-1}}\right)^{dup/dut}\right]$$

---------------------------------------------------------

Where: ---------------------------------------------------

n = total number of key figures used in the IPCA Inflation adjustment, "n" being an integer; -------------------------

dup = number of Business Days between the Date of Issue or the last IPCA Monthly Anniversary Date of the Debentures and the calculation date, limited to the total number of Business Days of the index used, "dup" being an integer; --

dut = number of Business Days between the last and the next IPCA Monthly Anniversary Date, "dut" being an integer; ---------------------------------------------------

NIk = index-number value of the month prior to the month of adjustment, if the adjustment is on an earlier date or the IPCA Monthly Anniversary date. After the Monthly IPCA Anniversary Date, value of the index number of the month of adjustment; and ---------------------------------------

NIk-1 - index number value of the month before month "k". -

The factor resulting from the expression described below is considered with 8 (eight) decimal places, without rounding: ------------------------------------------------

---------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

$$\left(\frac{NI_k}{NI_{k-1}}\right)^{\frac{dup}{dut}}$$

---------------------------------------------------------------

The final product is executed from the most recent factor, then, the most remote factor is added. The intermediate results are calculated with 16 (sixteen) decimal places, without rounding. ----------------------------------------

The application of the IPCA shall be in the shortest period allowed by the legislation in force, without need for adjustment to the Indenture or any other formality. ---

The IPCA should be used considering the same number of decimal places published by IBGE. -------------------------

The "Monthly IPCA Anniversary" is on every 15th day of each month, and if such date is not a Business Day, the first subsequent Business Day. ----------------------------

The monthly of adjustment is the monthly period comprised between two consecutive anniversary dates of the Debentures. ---------------------------------------------

If the NIk has not been disclosed by the Debentures' Monthly IPCA Anniversary Date, a projected index number calculated based on the last available projection disclosed by ANBIMA ("Projected Index Number" and "Projection", respectively) of the percentage variation of the IPCA shall be used instead of the NIk in the calculation of Factor "C": --------------------------------

*NIkP = Nlk-1* x (1 + *Projection)* ---------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Where: -------------------------------------------------------

Nlkp - Projected IPCA Index Number for the month of adjustment, calculated to 2 (two) decimal places, with rounding; ---------------------------------------------------

Projection - percentage variation projected by ANBIMA for the month of adjustment; ----------------------------------

The Projected Index Number shall be used, provisionally, as long as the index number corresponding to the month of adjustment has not been disclosed; however, no compensation shall be due between Issuer and the Debenture Holders at the time of the subsequent disclosure of the IPCA that would be applicable; and ------------------------

The index number of the IPCA, as well as the projections of its variation, should be used considering the identical number of decimal places disclosed by the body responsible for its calculation. --------------------------------------

4.9.1.1. Unless the IPCA is not available for less than five (5) Business Days counted from the expected date for its calculation and/or disclosure, the last index number disclosed, calculated *pro rata temporis* by Business Days, shall be used instead, but no financial compensation shall be applicable at the time of disclosure of the index number due. If the IPCA is not calculated and/or disclosed for a period equal to or greater than five (5) Business Days after the expected date of its disclosure, or in the event of its extinction or by legal imposition or judicial





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

determination, the IPCA shall be replaced by the simple average of the IPCA verified in the 12 (twelve) months prior to the date of ratification of the Court-supervised reorganization Plan, calculated *pro rata temporis* per Business Days. ---------------------------------------------

4.9.2 *Inflation adjustment by the TR.* From the 15th (fifteenth) year after the -------------------------------- Date of Issue, if the payment has been made in the last [--] ([--]) years, by Issuer to the Debenture Holders, in individual or aggregate amount, equal to or greater than five hundred thousand reais (BRL 500,000.00) as Mandatory Extraordinary Amortization (as defined below) ("Modifying Extraordinary Amortization"), as from the second Business Day subsequent to the next Annual Anniversary Date (as defined below) of the Debentures ("TR Modifying Date") the Unit Par Value or the balance of the Unit Par Value, as applicable, of the Debentures shall be monetarily restated by the reference rate established by Act No. 8,177, of March 1, 1991, as ascertained and disclosed by the Central Bank of Brazil ("TR" and "BACEN", respectively), from the TR Modifying Date (inclusive) to the IPCA Modifying Date (as defined below) (inclusive) or the Maturity Date (inclusive), as the case may be ("TR Inflation adjustment"), with the product of the TR Inflation adjustment automatically incorporated into the Unit Par Value of the Debentures or, if applicable, into the





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

balance of the Unit Par Value of the Debentures, as applicable ("TR Adjusted Unit Par Value" and, together with the IPCA Adjusted Unit Par Value, "Adjusted Par value"), calculated on a *pro rata temporis* basis per Business Days, according to the formula below: ------------

*VNa = VNe x FatorTR* ----------------------------------------

Where: ------------------------------------------------------

VNa - TR Adjusted Unit Par Value calculated with 8 (eight) decimal places, without rounding; -------------------------

VNe - TR Unit Par Value or balance of the TR Unit Par Value (par value remaining after amortization of principal), as the case may be, calculated to 8 (eight) decimal places, without rounding. -------------------------

FatorTR - Product of the Reference Rates disclosed by the Central Bank of Brazil between the date of issue, beginning of profitability, organization, amortization or payment of adjustment, whichever occurs last, and the date of adjustment, calculated to eight (8) decimal places, without rounding, as follows: -----------------------------

Where: ------------------------------------------------------

------------------------------------------------------------

$$RTF = \prod_{k=1}^{n}\left[\left(1+\frac{TR_k}{100}\right)^{dup_k/dut_k}\right]$$

------------------------------------------------------------

n = Total number of TR's considered between the Date of Issue, start of profitability, capitalization,

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

amortization or adjusted payment, whichever occurs last, and the update date; ------------------------------------

TRk = Reference Rate of the Base Dates disclosed by BACEN between the Date of Issue, beginning of profitability, organization, amortization or adjustment payment, whichever occurs last, and the adjustment date; -----------

dutk = Total number of Business Days for the period of TRk used; -----------------------------------------------------

dupk = Number of Business Days between the TRk date used and the calculation date, limited to the total number of Business Days in the TRk ----------------------------------

**Remarks:** ------------------------------------------------

1st) Base Date is the day on which the Debentures mature each month. --------------------------------------------

2nd) If the day of the Date of Issue does not coincide with the corresponding Base Date, the adjustment shall be made until the first Base Date after the Issue, based on the criterion *pro rata* Business Day, using the TR relating to the Date of Issue (Circular no. 2.456 of 07/28/1994 - article 2). --------------------------------------------

3rd) If the Debentures have indefinite maturity, the Base Date shall be the first day of each month. ----------------

4th) Each factor resulting from the expression ------------

$$\left(1+\frac{TR_k}{100}\right)^{dup_k/dut_k}$$ ------------------------------------------

is considered with 8 (eight) decimal places, without rounding. For each new factor included in the product, an





Pg 395 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 269

intermediate factor that shall be considered with 8 (eight) decimal places, without rounding, is generated. ---

4.9.2.1. In the absence of unavailability of the TR for a period of less than five (5) Business Days counted from the expected date for its determination and/or disclosure, the last index number disclosed, calculated *pro rata temporis* by Business Days, shall be used in its place, however, no financial compensation shall be applicable at the time of disclosure of the index number due. In the absence of ascertainment and/or disclosure of the index number of the CA for a term equal to or greater than five (5) Business Days after the expected date of its disclosure or, further, in the event of its extinction or by legal imposition or judicial determination, the CA shall be replaced by the simple average of the CA verified in the twelve (12) months prior to the date of ratification of the Court-supervised reorganization Plan, calculated *pro rata temporis* by Business Days. ------------

4.9.2.2. Annually, as of the TR Modifying Date ("Verification Periods"), Trustee shall verify if there was in that Verification Period the payment, by Issuer to the Debenture Holders, in value, individual or aggregate, equal to or greater than BRL 500,000.00 (five hundred thousand reais) as Mandatory Extraordinary Amortization ("Minimum Value"). ---------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

4.9.2.3. If the Extraordinary Amortization event(s) occur(s) in an amount equal to or greater than the Minimum Value in the respective Verification Periods, the Adjusted Unit Value of the Debentures shall continue to be monetarily adjusted by the TR until the Maturity Date. ----

4.9.2.4. If, at the end of a Verification Period, on a certain date of verification, by Trustee, of the amounts paid by Issuer to the Debenture Holders as Mandatory Extraordinary Amortization, it is verified that the Minimum Value was not reached, the Adjusted Par Value of the Debentures shall be monetarily adjusted again by the IPCA, pursuant to Clause 4.9.1 above, from the second Business Day subsequent to the next Annual Anniversary Date of the Debentures ("IPCA Modifying Date" and "IPCA Reversal Event", respectively). ---------------------------

4.9.2.5. In case of an IPCA Reversal Event, Trustee shall continue to perform the checks of the Minimum Value during the Verification Periods, it being certain that, if Issuer once again makes payments to the Debenture Holders, as Mandatory Extraordinary Amortization, in an amount equal to or greater than the Minimum Value in a certain Verification Period, again the Adjusted Par Value of the Debentures shall be monetarily adjusted by the IPCA, as of the second Business Day subsequent to the next TR Monthly Anniversary Date (as defined below) ("TR Reversal Event") -





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

4.9.2.6. The procedures for verification of the Minimum Value by Trustee and reversal of the inflation adjustment rate of the Debentures set forth above shall be made by the Maturity Date, it being understood that the Debentures may not be monetarily adjusted (i) by the IPCA, for a period of less than twelve (12) months, and (ii) by the TR, for a period of less than one (1) month, unless permitted by the applicable legal and accounting rules. ---

4.9.2.7. For the purposes of this Indenture, (i) "Annual Anniversary Date" means each day [--] [--] of each year, and if such date is not a Business Day, the first subsequent Business Day; and (ii) "Monthly Anniversary TR" means the last day of each month from the Modifying Date, and if such date is not a Business Day, the first subsequent Business Day ------------------------------------

**4.10. Remuneration Interest:** the Debentures shall not be entitled to receive remuneration interest. ----------------

**4.11. Amortization of the Adjusted Unit Par Value:** Except in cases of early maturity or making of any Mandatory Early Redemption (as defined below), Mandatory Extraordinary Amortization and Optional Acquisition (as defined below), the Adjusted Unit Par Value of the Debentures shall be amortized in a single installment on the Maturity Date of the Debentures. ----------------------

**4.12. Place of Payment:** The payments to which the Debentures are entitled shall be made by Issuer in the





Pg 398 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 272

respective maturity, using, as the case may be: (a) the procedures adopted by B3, for Debentures registered in the name of the respective Debenture Holders in B3; and/or (b) through the Settling Bank, in case the Debenture Holders do not have their Debentures registered in B3. ------------

**4.13. Extension of Deadlines:** The terms relating to the payment of any obligation set forth in this Indenture shall be deemed extended until the 1st (first) subsequent Business Day, if the due date coincides with the day on which there is no banking business in the city of [--], State of [--], except in cases where payments must be made through B3, in which case there shall only be an extension when the date of payment coincides with a national holiday, Saturday or Sunday, without any accruals due to the payments. -------------------------------------------

**4.14. Default charges:** Without prejudice to the other values due to the Debenture Holders pursuant to this Indenture, in the event Issuer and Guarantors do not make the payment of any amount due to the Debenture Holders timely, the values in arrears due and not paid by Issuer and/or Guarantors, shall, regardless of notice, notification or judicial or extrajudicial communication, increased by: (i) non-compensatory default fine of 2% (two percent); and (ii) default interest of 1% (one percent) per month calculated *pro rata temporis* from the default

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 399 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 273

date until the date of actual payment, both incident on the amount due and not paid ("Default Charges"). ----------

**4.15. Time Barring of the Rights to Accretions:** Without prejudice to the provisions in Clause 4.14 above, failure to attend by the Debenture Holder to receive the amount corresponding to any of the monetary obligations of Issuer, on the dates set forth in this Indenture, or in a communication published by Issuer in the newspaper indicated in Clause 4.17 below, shall not entitle it to receive the Default Charges in the period related to the delay in the receipt; however, the rights acquired until the date of the respective due date or payment are guaranteed. ---------------------------------------------------

**4.16. Scheduled repricing:** Except as provided in Clause 4.9 above, the Debentures shall not be subject to scheduled repricing. --------------------------------------

**4.17. Advertising:** All acts and decisions to be taken as a result of this Issue which may, in any way, involve Debenture Holders' interests, shall be mandatorily communicated in notices ("Notice to Debenture Holders") on the Issuer's website, as well as notices, in the Official Gazette and in the newspaper "[--]", as established in article 289 of the Corporation Law, observing the legal terms, and Issuer shall inform Trustee regarding any publication on the date they are made. Issuer may change the above newspaper by another widely circulated newspaper

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL



Pg 400 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 274

adopted for its corporate publications, by written communication to Trustee and publication, pursuant to notice, in the newspaper to be substituted. ---------------

**4.18. Tax Immunity:** If any Debenture Holder has immunity or tax exemption, it shall forward to the Settling Bank, at least ten (10) Business Days prior to the date set for receiving the Debentures amounts, documentation evidencing such immunity or tax exemption, under penalty of having deducted from its payments the amounts due under the tax legislation in force. ------------------------------------

4.18.1. The Debenture Holder that has presented documentation evidencing its condition of immunity or tax exemption, pursuant to the terms of Clause 4.18 above, and that has this condition altered by normative provision, or by no longer meeting the conditions and requirements that may be prescribed in the applicable legal provision, or, has this condition questioned by a competent judicial, tax or regulatory authority, shall communicate this fact, in detail and in writing, to the Settling Bank and to the Bookkeeping Agent, as well as provide any additional information in relation to the subject that is requested by the Settling Bank and/or by the Bookkeeping Agent and/or by Issuer. ----------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

**CLAUSE V** -----------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**OPTIONAL EARLY REDEMPTION, OPTIONAL EXTRAORDINARY REDEMPTION, MANDATORY EARLY REDEMPTION, MANDATORY EXTRAORDINARY AMORTIZATION AND OPTIONAL ACQUISITION** -------

**5.1. Optional Early Redemption and Optional Extraordinary Amortization:** ---------------------------------------------

The Debentures shall not be subject to optional early redemption, in whole or in part, and/or to optional extraordinary amortization. ------------------------------

**5.2. Mandatory Early Redemption:** Issuer undertakes to make the full mandatory early redemption of the Debentures, within thirty (30) days as of the date on which it is informed by Trustee in this regard, in the following events ("Early Mandatory Redemption"): --------------------

(I) after 25 (twenty-five) years from the Date of Issue; i.e., from *[date]* (inclusive), and if Issuer has not submitted within 6 (six) months from the 24th (twenty-fourth) year from the Date of Issue; that is, until [date] (inclusive), a report prepared by a specialized and renowned auditing firm, member of one of the big four auditing firms *(big four)* or a similar category at the time, demonstrating that the Companies under Reorganization are able to generate cash and/or assets subject to monetization of at least BRL 50,000,000.00 (fifty million reais) until the Debentures Maturity Date; or ---------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(II) after 3 (three) years from the Date of Issue, i.e. from [date] (inclusive) ("Start Date"), if Available Cash (as defined below) is verified on a given Amortization Date (as defined below), in an amount sufficient to redeem all the Debentures. ----------------------------------------

5.2.1. On the occasion of the Mandatory Early Redemption, the Debenture Holder shall be entitled to receive the Adjusted Unit Par Value, plus any default charges due by Issuer, the payment of any additional premium not being due. -----------------------------------------------------

5.2.2. The Mandatory Early Redemption shall be made (a) by sending an individual communication to the Debenture Holders, with copy to Trustee, or publication of Notice to the Debenture Holders, pursuant to Clause 4.17 above, ten (10) days in advance of the date on which the effective early redemption is intended to be made, and said communication shall contain: (i) the date of the Mandatory Early Redemption is effected; (ii) mention of the approximate value of the Mandatory Early Redemption; and (iii) other information necessary for operation of the Mandatory Early Redemption. --------------------------------

5.2.3. In relation to the Debentures registered in the name of the respective Debenture Holders in B3, the Mandatory Early Redemption shall follow the events liquidation procedures adopted by B3. If the Debentures are not registered in the name of the respective Debenture





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Holders with B3, the Mandatory Early Redemption shall be made by the Bookkeeping Agent. ----------------------------

5.2.4. Issuer shall inform B3, in the case of the Debentures registered in the name of the respective Debenture Holders in B3, about the date of the Mandatory Early Redemption at least three (3) Business Days in advance. ---------------------------------------------------

5.2.5. The Debentures subject to the Mandatory Early Redemption shall be mandatorily cancelled. ----------------

5.2.6. The date for the redemption of the Debentures that have been subject of the Mandatory Early Redemption must be a Business Day. ----------------------------------------

**5.3. Mandatory Extraordinary Amortization:** Issuer shall, on each Amortization Date, as defined in Clause 5.3.1.3 below, as of the Start Date, with funds from the Cash for Distribution, subject to the terms and conditions set forth below, regardless of its will, carry out the mandatory extraordinary amortization of the Debentures, equally, simultaneously and proportionally among all the Debenture Holders, limited to ninety-eight percent (98%) of the Adjusted Unit Par Value of the Debentures or balance of the Adjusted Unit Par Value of the Debentures, as applicable ("Mandatory Extraordinary Amortization"), subject to the terms and conditions set forth below. ------

5.3.1. For purposes of calculating the Compulsory Extraordinary Amortization obligation, "Cash for





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Distribution" means the sum of all amounts, immediate liquidity funds and free cash investments held by each of the Companies under Reorganization, including by virtue of the sale of assets, receipt of dividends, interest on shareholders' equity, capital reduction or any other form of shareholder remuneration due to equity interests held by the Companies under Reorganization in other companies, under the terms of the Court-supervised reorganization Plan, or by any other source of funds, exceeding the amount of BRL 300,000,000.00 (three hundred million reais), which amount shall be adjusted by the IPCA in each fiscal year, and there shall be deducted from this amount in the calculations of the Cash for Distribution that occur in the last two months of each fiscal year (that is, in the calculations made by the Monitoring Agent in the months of August, October and December, pursuant to Clause 5.3.2 below), the amounts resulting from financial transactions by the Companies under Reorganization, including, but not limited to the contribution of funds and the execution of loans for the benefit of any ODB Companies under Reorganization that did not adhere to the Substantial Consolidation of Companies under Reorganization, which shall be used exclusively for (a) compliance with the obligations contracted in the respective court-supervised reorganization plans of the ODB Companies under Reorganization that did not adhere to





Pg 405 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 279

the Substantial Consolidation of Companies under Reorganization and payment of general and administrative expenses, such as obligations and expenses for maintenance of activities, expenses with guarantors and advisors and tax expenses, provided that such transactions do not exceed the global amount of BRL 80,000,000.00 (eighty million reais) and observe the allocation described in Annex III to this Indenture, as verified by the Monitoring Agent; or (b) the payments set forth in Clause 5.3.1.2 below, only in their respective deadlines; ----------------

5.3.1.1. The following are not included in the concept of Cash for Distribution: -----------------------------------

(i) Funds for Payment of Ordinary Expenses (as defined below) (i.a) received by December 31, 2022 that have not been used and are available on the respective Amortization Date, or (i.b) the release of which has been contracted, but which have not yet been made available to the Companies under reorganization until the respective Amortization Date; -----------------------------------------

(ii) if applicable, until the Start Date or a longer period, as approved by the Debenture Holders in general meeting, the sale, tax and fiscal expenses arising from the disposal of assets of the Companies under Reorganization materialized by the ascertainment date, as well as those not materialized that can be estimated due to the obligations contracted until the ascertainment

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 406 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 280

date, which exceed the net funds received or to be received by the Companies under Reorganization arising from said sale of assets; and -----------------------------

(iii) as applicable and always in accordance with the terms of the Court-supervised reorganization Plan, (i) amounts due under the Court-supervised reorganization Plan to holders of Credits Eligible for Subscription of Payment Instruments (as defined in the Court-supervised Reorganization Plan) who have not subscribed to the Debentures subject of the Issue, (ii) payments due to holders of Option B Unsecured Financial Credits (as defined in the Court-supervised reorganization Plan), under the terms of Clause 3.3.1.2 of the Court-supervised Reorganization Plan, and (iii) amounts due to the Companies under Reorganization, in accordance with the rule of use of Cash for Distribution set forth in Clause 1.1.119, item (ii) of the Court-supervised Reorganization Plan. ----------------------------------------------------

5.3.1.2. For the avoidance of doubt, all funds related to the events described in item (ii) of Clause 5.3.1.1 above, including the net funds from said disposal of assets to be received by the Companies under Reorganization, shall be reserved until the materialization of the obligations described therein or until expiry of the period of 18 (eighteen) months counted from the Start Date, whichever occurs first, not integrating the Cash for Distribution

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 407 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 281

for purposes of Clause 5.3.1. If such obligations do not materialize, the full amounts withheld by the Companies under reorganization shall be used for the Mandatory Extraordinary Amortization of the Debentures and the Mandatory Extraordinary Amortization of the instruments entered into by the holders of Credits Eligible for the Subscription of Payment Instruments, pursuant to the terms set forth in this Indenture and in the Court-supervised reorganization Plan. ------------------------------------

5.3.1.3 For purposes of this Indenture, "Amortization Dates": shall be the dates on which the Mandatory Extraordinary Amortization of Debentures shall occur, which should always occur until the last Business Day of January, March, May, July, September and November. --------

5.3.1.4. For the purposes of this Indenture, "Funds for Payment of Ordinary Expenses": means any and all amounts received by the Companies under reorganization resulting from any personal guarantees and made available to the Companies under Reorganization and ODB Companies under reorganization that have not adhered to the Substantial Consolidation of the Companies under Reorganization by the respective creditors, as provided for in the Court-supervised Reorganization Plan, limited to the aggregate amount of BRL 1,000,000.00 (one billion reais), which shall be applied, as a priority, in the ordinary maintenance of the Companies under reorganization's

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 408 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 282

activities, in the payment of general and administrative expenses and in compliance with the payment obligations of labor credits, Unsecured Non-Financial Creditors - Cash and ME/EPP credits, as provided in the Court-supervised reorganization Plan. ----------------------------------------

5.3.2. The counting of the Cash for Distribution shall be made by the Monitoring Agent, from the Start Date, always on the [--] day of February, April, June, August, October and December (each of these dates a "Verification Date"), based on a monthly management report of accounting closing contemplating the consolidated cash balance of the Companies under Reorganization, to be sent by Issuer to the Monitoring Agent at the end of each month ("Management Report", respectively) or in a shorter period, whenever requested by the Monitoring Agent, by sending a communication to the Companies under Reorganization, which must be answered with the information requested within 10 (ten) Working Days from receipt by the Companies under Reorganization from said communication. The Monitoring Agent shall inform the Trustee, within [ten (10) Business Days] counted from the Verification Date, the Cash for Distribution which shall be allocated to the Mandatory Extraordinary Amortization of the Debentures, if any. In turn, within [5 (five)] Business Days from the date it is communicated by the Monitoring Agent, Trustee shall check

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the information provided it and apply the provisions of Clause 5.3.3 below. ----------------------------------------

5.3.3. If it is found that there is any Available Cash for Distribution, Issuer shall make the Mandatory Extraordinary Amortization of the Debentures on the next Amortization Date immediately after the Verification Date on which the Cash for Distribution was ascertained. -------

5.3.4. If it is found that there is Available Cash for Distribution, Issuer shall send, on the Business Day subsequent to the respective Verification Date, written notification to the Debenture Holders, with copy to Trustee, B3, if applicable, and the Settling Bank, informing that the Mandatory Extraordinary Amortization was made ("Mandatory Extraordinary Amortization Communication"). ------------------------------------------

5.3.5. The Mandatory Extraordinary Amortization Communication shall contain: (i) the Amortization Date and the procedure of Mandatory Extraordinary Amortization, pursuant to the relevant legislation, as well as the terms, conditions and deadlines established in this Indenture; (ii) the percentage of the Adjusted Par Value to be amortized by Debenture; and (iii) the other information considered relevant by Issuer for the Debenture Holders' knowledge regarding the Mandatory Extraordinary Amortization. -------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

5.3.6. On the occasion of the Mandatory Extraordinary Amortization, the Debenture Holders shall be entitled to the payment of the percentage of the Adjusted Unit Par Value to be amortized, plus any Default Charges due by Issuer. ----------------------------------------------------

5.3.7. Issuer shall inform to B3, if the Debentures registered in the name of the respective Debenture Holders in B3, the date of the Mandatory Extraordinary Amortization at least three (3) Business Days in advance. -

5.3.8. The date for the Mandatory Extraordinary Amortization of the Debentures must be a Business Day. ----

**5.4. Early Redemption Offer:** Issuer may not make an early redemption offer. -------------------------------------------

**5.5. Optional Acquisition:** Issuer may, at any time, acquire Debentures provided it complies with article 55, paragraph 3, of the Corporation Law, and such fact, if so required by the applicable legal and regulatory provisions, shall be included in the management report and in the financial statements of Issuer. The Debentures acquired by Issuer may, at the discretion of Issuer, be cancelled, remain in treasury or be placed again in the market. The Debentures acquired by Issuer to remain in treasury pursuant to the terms of this Clause 5.5, if and when returned to the market, shall be entitled to the same Remuneration applicable to the other Debentures. ----------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**5.6. Monitoring Agent:** In compliance with the provisions of the Court-supervised Reorganization Plan, the consolidated financial performance of the Companies under Reorganization shall be monitored by [- -], as the person in charge of monitoring the activities of the Companies under reorganization ("Monitoring Agent"), in accordance with the terms and conditions in the instrument of hiring the Monitoring Agent to be entered into between the Companies under reorganization and the Monitoring Agent, in compliance with the provisions of Clause 5.3.2 above. --

5.6.1. The following are obligations of the Monitoring Agent, without prejudice to others that may be contractually established: --------------------------------

(i) to disclose the information necessary to make up the amount of Cash for Distribution that shall be allocated to the Mandatory Extraordinary Amortization of the Debentures; -----------------------------------------------

(ii) check and ratify the Available Cash (as defined in the Court-supervised reorganization Plan), the Cash for Distribution and the Rules for Use of the Cash for Distribution, provided in the Court-supervised Reorganization Plan, based on the Management Report and other documents deemed necessary by the Monitoring Agent to be provided by the Companies under reorganization, such as bank statements; ---------------------------------------





Pg 412 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 286

(iii) monitor the payments and amortizations set forth in this Indenture; ------------------------------------------

(iv) monitor the materialization of credits eligible for subscription of Debentures after the Date of Issue of the Debentures; and ------------------------------------------

(v) disclose monthly reports consolidating the information regarding the attributions set forth in the previous items. ----------------------------------------------------

**CLAUSE VI** ----------------------------------------------------

**EARLY MATURITY** ----------------------------------------------

6.1. Subject to the provisions of Clauses 6.2 and 6.3 below, Trustee may consider in advance all obligations set forth in this Indenture and demand immediate payment, by Issuer and the Guarantors, as the case may be, of the Adjusted Unit Par Value, until the date of the effective payment, without prejudice to the payment of Default Charges, when applicable, and any other values eventually due by Issuer pursuant to the terms of this Indenture, regardless of notice, interpellation or notification, judicial or extrajudicial, aware of the occurrence of the following events (each, a "Event of Default"): ------------

(i) default, by Issuer and/or Guarantors, of any monetary obligation related to the Debentures and/or set forth in this Indenture, not remedied within 3 (three) Business Days counted from the respective date of payment set forth in this Indenture; ----------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 413 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 287

(ii) default, by Issuer, of any non-monetary obligation set forth in this Indenture and/or in the Court-supervised reorganization Plan, it being certain that (a) such default shall be subject to the applicable remediation term as set forth in this Indenture, or in the legislation or regulations in force; (b) if there is no specific remediation term in this Indenture, such default shall be subject to a remediation term of up to thirty (30) Business Days from the date on which it is notified of such default; -----------------------------------------------

(iii) declaration of invalidity, nullity or unenforceability of this Indenture by 2nd instance court decision, except in the case of obtaining suspensive effect for said decision, observing that all possible appeals that would have been intended for the Debenture Holders during the occurrence of this Event of Default but which were not by virtue of this Event of Default shall remain withheld until the effective remediation of this Event of Default for later distribution to the Debenture Holders; ----------------------------------------------------

(iv) assignment, promise of assignment or any form of transfer or promise of transfer to third parties, in whole or in part, by Issuer, any of its obligations pursuant to the terms of this Indenture, without the prior consent of the Debenture Holders; -------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 414 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 288

(v) (a) liquidation, dissolution or winding up of Issuer; (b) decree of bankruptcy of Issuer by a final unappealable court decision; or (c) petition for self-bankruptcy by Issuer, regardless of the petition being granted; ---------

(vi) transformation of the corporate type of Issuer from a joint stock company to a limited liability company, pursuant to articles 220 to 222 of the Corporation Law; ---

(vii) change of Issuer's corporate purpose, as provided in its articles in force on the Date of Issue, except if (a) previously authorized by Debenture Holders; or (b) it does not result in a substantial alteration of Issuer's activities; -----------------------------------------------

(viii) acquisition, merger or spin-off of Issuer without the prior consent of the Debenture Holders, except for the corporate reorganizations involving Issuer necessary for compliance with the determinations contained in the Court-supervised reorganization Plan; ---------------------------

(ix) evidence, attested in a court decision without suspensive effect, that any of the statements made by Issuer in this Indenture are false, provided that such falsehood causes a Material Adverse Effect (as defined below); ---------------------------------------------------

(x) without prejudice to the provisions of the immediately preceding item (ix), evidence, attested by a court decision without suspensive effect, that any declaration

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

made by Issuer in this Indenture concerning matters of corruption practice is false; ----------------------------

(xi) issuance of a convicting judicial sentence without suspensive effect, due to the practice, by Issuer, of acts involving use of child labor, labor analogous to slave labor and/or criminal profit from prostitution; -----------

(xii) default on any monetary obligation contained in any Payment Instruments (as defined in the Court-supervised reorganization Plan), subject to the respective remediation periods provided in such instruments; or ------

(xiii) decree of early maturity of any Payment Instruments. --------------------------------------------

6.2. Issuer may, at any time during the term of the Debentures, call a General Meeting of Debenture Holders for discussion and resolution of a previous *waiver* for the occurrence of any Event of Default, it being certain that such previous *waiver* shall only be granted in the case of approval of Debenture Holders holding at least fifty percent (50%) plus one (1) of the Outstanding Debentures, on first call, or simple majority of those present in the General Meeting of Debenture Holders, on second call. -----

6.3. Upon the occurrence of the Events of Default set forth in Clause 6.1 above, Trustee shall convene, within a maximum two (2) Business Days counted from the date in which it is aware of its occurrence, a General Meeting of





Pg 416 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 290

Debenture Holders, to be held in accordance with the terms established in Clause 9 below. ----------------------------

6.3.1. Issuer undertakes to notify Trustee within two (2) Business Days of the date it becomes aware of the occurrence of any Event of Default described in clause 6.1 above. ---------------------------------------------------

6.4. If, in the General Meeting of Debenture Holders mentioned in Clause 6.3 above, Debenture Holders representing at least fifty percent (50%) plus one (1) of the Outstanding Debentures, on first call, or simple majority of those present in the General Meeting of Debenture Holders, on second call, decide not to consider the early maturity of the obligations arising from the Debentures, Trustee shall not declare the early maturity of the obligations arising from the Debentures. In case of not convening, on second call, of the General Meeting of Debenture Holders, Trustee shall, immediately, declare the early maturity of the obligations arising from the Debentures. ----------------------------------------------

6.5. Upon the occurrence of early maturity of the obligations arising from the Debentures, Issuer undertakes to pay the Adjusted Unit Par Value, without prejudice to the payment of the Default Charges, when applicable, and any other values eventually due by Issuer pursuant to the terms of this Indenture, within three (3) Business Days as of the date of receipt of the communication sent by

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Trustee on early maturity, under penalty of payment of the Default Charges. ------------------------------------------

6.6. Once the Debentures have matured early, Trustee shall send notification to Issuer, the Settling Bank and B3, in the case of the Debentures registered in the name of the Debenture Holders in B3, immediately after the early maturity of the Debentures. -------------------------------

**CLAUSE VII** ---------------------------------------------

**ADDITIONAL OBLIGATIONS OF ISSUER** --------------------------

7.1. Without prejudice to the other obligations set forth in this Indenture and in the applicable laws and regulations, as long as the outstanding balance of the Debentures has not been fully paid, Issuer further undertakes to: -------------------------------------------

(i) provide to Trustee: -----------------------------------

(i.1) as well as to make available on its respective website (www.[--]), on the date on which the first occurs between the expiry of ninety (90) days from the date of the end of each fiscal year or the effective date of disclosure, a copy of Issuer's consolidated financial statements audited by an independent auditor registered with CVM, related to the respective fiscal year, prepared in accordance with the accounting principles determined by the legislation and regulations in force ("Audited Consolidated Financial Statements"); ----------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(i.2) annual statement signed by Issuer’s officers, pursuant to its articles, attesting: (1) that the provisions contained in the Indenture remain valid, (2) on the non-occurrence of any Event of Default and inexistence of noncompliance with Issuer's obligations to the Debenture Holders; (3) that no acts in disagreement with its articles were performed and (4) on compliance with all obligations of the Court-supervised reorganization Plan; --

(i.3) the Notices to the Debenture Holders within up to 5 (five) Business Days counted from the date they are published; ---------------------------------------------------

(i.4) within 5 (five) Business Days after its knowledge, (1) information regarding the occurrence of any Event of Default; or (2) the sending of a copy of any correspondence or notification, judicial or extrajudicial, received by Issuer, related to an Event of Default; or (3) information regarding the occurrence of any event or situation that may cause (3.1) any relevant adverse effect on the condition (financial or otherwise), business, assets, operating income and/or prospects of Issuer (including resulting from adverse impacts on reputation or image); and/or (3.2) any adverse effect on the Issuer’s capacity to comply with any of its obligations under this Indenture and/or on the financial condition, business, assets and operating income of Issuer (“Material Adverse Effect”); -----------------------------------------------------





Pg 419 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 293

(i.5) within 5 (five) Business Days from the date of receipt of the respective request, answer to any queries of Trustee on any information that may be reasonably requested; --------------------------------------------------

(i.6) original counterpart of this Indenture and any amendments, duly filed with the Trade Register and registered in the RTDs, within 5 (five) days from the date of the respective registration, pursuant to Clause 2.4.1 above; and --------------------------------------------------

(i.7) original counterpart filed with the Trade Register of the corporate acts and meetings of the Debenture Holders with respect to the Issue of the Debentures, within five (5) days counted from the date of the respective registration; ----------------------------------

(ii) maintain valid and regular the licenses, concessions and/or approvals necessary for its regular operation, as applicable, in form and period required by the applicable law and regulations, except those whose loss, revocation or cancellation does not result in a Material Adverse Effect; ----------------------------------------------------

(iii) comply, in all material respects, with the laws, rules, regulations, administrative rules and determinations of governmental bodies, government agencies or courts, applicable to the conduct of its business, in any jurisdiction in which it does business or has assets, except for those laws, rules, regulations, administrative

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 420 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 294

rules and determinations of governmental bodies, government agencies or tribunals that are being questioned in good faith by Issuer or whose noncompliance does not cause a Material Adverse Effect; --------------------------

(iv) hire and maintain, at its own expense, the service providers inherent to the obligations set forth in this Indenture, including Trustee, the Bank with Power of Attorney, the Bookkeeping Agent and the Debentures trading system in the secondary market; ---------------------------

(v) to call, under the terms of Clause 9.1 below, General Meetings of Debenture Holders to deliberate on any of the matters that directly or indirectly relate to this Issue, in case the Trustee should do it, under the terms of this Indenture, but does not do it; ----------------------------

(vi) not practice any acts in disagreement with its articles and with this Indenture, especially those that may, directly or indirectly, compromise punctual and full compliance with the obligations assumed by Issuer to the communion of Debenture Holders; ---------------------------

(vii) keep the Debentures registered for trading in the secondary market during the term of the Debentures, bearing the costs of such registration; -------------------

(viii) comply with the obligations assumed under the Court-supervised reorganization Plan; ---------------------

(ix) comply with all obligations set forth in this Indenture, including, without limitation, the obligation

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 421 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 295

to effect the Mandatory Redemption of the Debentures, pursuant to Clause 5.2 above; and ------------------------

(x) maintain at all times valid, effective, in perfect order and in full force, all the authorizations necessary for execution of this Indenture and for the fulfilment of all the obligations provided herein. ----------------------

(xi) hire and maintain the Monitoring Agent during the term of this Indenture, who shall perform his functions in accordance with the scope defined in the instrument that provides for his hiring, observing the provisions of the Court-supervised reorganization Plan and of this Indenture; and ------------------------------------------

(xii) in the event of the Monitoring Agent's removal and/or removal for any reason, hire a new service provider to perform the Monitoring Agent's assigned duties, within a maximum of 30 (thirty) days from the Monitoring Agent's removal and/or removal date. -----------------------------

**CLAUSE VIII** ---------------------------------------------

**TRUSTEE** -------------------------------------------------

**8.1. Appointment** ----------------------------------------

8.1.1. Issuer constitutes and appoints *[Trustee]*, identified in the preamble of this Indenture, as Trustee, representing the Debenture Holders, which, herein and in due accordance with the law, accepts the appointment to, pursuant to the terms of the law and of this Indenture,

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

represent before the Issuer the communion of the Debenture Holders. -----------------------------------------------------

**8.2. Representation** ---------------------------------------

8.2.1. Trustee herein represents under the penalties of the law: ------------------------------------------------------

(i) not to have any legal impediment, pursuant to article 66, paragraph 3 of the Corporation Law, to perform the function conferred upon it; ------------------------------

(ii) to accept the function conferred upon it, fully assuming the duties and attributions set forth in specific legislation and in this Indenture; ------------------------

(iii) to know and accept this Indenture, all its clauses and conditions in full; -----------------------------------

(iv) not to have any connection with Issuer that would prevent it from performing its duties; ---------------------

(v) to be aware of the applicable regulations issued by the Central Bank of Brazil and CVM, including Central Bank of Brazil Circular No. 1,832 of October 31, 1990; ---------

(vi) to be duly authorized to enter into this Indenture and to comply with its obligations set forth herein, having satisfied all legal and corporate requirements necessary for such purpose; ------------------------------

(vii) that it is not in any of the situations of conflict of interest; -----------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(viii) that is duly qualified to perform the activities of Trustee, in accordance with the applicable regulations in force; --------------------------------------------------------

(ix) that it is a financial institution, duly organized, constituted and existing according to Brazilian law; ------

(x) that this Indenture constitutes a valid, binding and effective legal obligation of Trustee, enforceable in accordance with its terms and conditions; -----------------

(xi) that the execution of this Indenture and the fulfillment of its obligations provided herein do not infringe any obligation previously assumed by Trustee; ----

(xii) that [it does not act, on this date, as a trustee in other issues of debentures of Issuer] {OR} [that acts, on the date of execution of this Indenture, as trustee in the following issues of securities of Issuer and of affiliated, controlled, controlling companies or members of its economic group: [--]; -----------------------------

(xiii) that it ensures and shall ensure fair treatment to all Debenture Holders, observing the guarantees, obligations and specific rights attributed to the respective Debenture Holders of each issue or series; -----

(xiv) that the person who represents it in the execution of this Indenture has sufficient powers to do so; and -----

(xv) that it verified the consistency of the other information contained in this Indenture, by means of the information and documents provided by Issuer, it being





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

certain that Trustee did not perform any independent or additional verification. ------------------------------------

8.2.2. Trustee shall perform its duties from the date of execution of this Indenture or any amendment related to its replacement, and shall continue to perform its duties until the Maturity Date or, if there are still obligations of Issuer pursuant to the terms of this Indenture defaulted on after the Maturity Date, until all obligations of Issuer pursuant to the terms of this Indenture are fully performed, or, until its effective replacement, pursuant to Clause 8.3 below. ----------------

8.2.3. Trustee shall not issue any opinion or make any judgment about guidance with respect to any fact of the Issue that is under the competence of definition by the Debenture Holders, undertaking only to act in accordance with the instructions that are transmitted by the Debenture Holders. To this effect, Trustee is not responsible for the result or legal effects resulting from strict compliance with the guidelines of the Debenture Holders transmitted to it as defined pursuant to this Indenture and reproduced to Issuer, regardless of any damages that may be caused as a result of this to the Debenture Holders and/or to the Issuer. Trustee's performance is limited to the scope of the applicable articles of the Corporation Law, and is released, under





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

any form or pretext, from any additional liability that has not resulted from the applicable legislation. ---------

8.2.4. Without prejudice to the duty of care of Trustee, it shall assume that the original documents or certified copies of documents forwarded by Issuer or by third parties at its request have not been subject to fraud or adulteration. Further, it shall not, under any circumstances, be responsible for the preparation of corporate documents of Issuer, which shall remain under the legal and regulatory obligation of Issuer to prepare, according to the applicable legislation. ------------------

8.2.5. The acts or pronouncements of Trustee, which create responsibility for the Debenture Holders and/or release third parties from obligations to them, as well as those related to due compliance with the obligations assumed herein, shall only be valid when previously resolved at a General Meeting of Debenture Holders (as defined below). --

**8.3. Substitution** -----------------------------------------

8.3.1. In the case of temporary impediments, resignation, intervention, judicial or extrajudicial liquidation, bankruptcy, or any other case of vacancy of Trustee, it shall be performed, within the maximum term of thirty (30) days counted from the event which determines it, General Meeting of Debenture Holders (as defined below) for the choice of a new Trustee, which may be called by Trustee to be substituted by Issuer or by Debenture Holders





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

representing at least ten percent (10%) of the Outstanding Debentures. If the call does not occur within fifteen (15) days before the end of the aforementioned term, Issuer shall make it, observing the term of fifteen (15) days for first call and eight (8) days for second call. ------------

8.3.2. If Trustee cannot continue to perform its duties due to circumstances supervening this Indenture, including in the case of item (iv) of Clause 8.4.1 below, Trustee shall immediately communicate the fact to the Debenture Holders and to Issuer, by calling a General Meeting of Debenture Holders, requesting its substitution. -----------

8.3.3. The Debenture Holders are allowed to substitute Trustee and to indicate its substitute, in market conditions, chosen by Issuer from the triple list presented by the General Meeting of Debenture Holders especially called for this purpose. -----------------------

8.3.4. Trustee shall be vested in its functions as of the date of execution of this Indenture or of any addition concerning its replacement, in the case of a substitute Trustee, and shall remain in the exercise of its functions until the effective substitution or fulfillment of all its obligations arising from this Indenture and from the legislation in force. -------------------------------------

8.3.5. Trustee, if substituted pursuant to this Clause 8.3, at no additional cost for Issuer or for the Debenture Holders, shall place at the disposal of the institution





Pg 427 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 301

that may substitute it, within ten (10) Business Days before its effective replacement, a copy of all records, reports, statements, databases and other information about the Issue and about Issuer that have been obtained, generated, prepared or developed by Trustee or by any of its agents involved, directly or indirectly, with the Issue or to which any of the aforementioned persons have had access by virtue of the performance of their functions, regardless of the means in which they are stored or available, so that the substituted institution fulfills, without any continuity solution, the duties and obligations of the substituted Trustee, pursuant to this Indenture. ---------------------------------------------------

8.3.6. In case of the effective substitution of Trustee, such substitute shall receive the same remuneration received by Trustee in all its terms and conditions, and the first annual installment due to the substitute shall be calculated *pro rata temporis*, as of the date of commencement of the exercise of its function as Trustee. This remuneration may be altered by mutual agreement between Issuer and the substitute trustee, provided that previously approved by the General Meeting of Debenture Holders (as defined below). -------------------------------

**8.4. Obligations** -----------------------------------------

8.4.1. In addition to others provided by law and this Indenture, the following are obligations of Trustee: ------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(i) to carry out its activities in good faith, transparently and loyally before the Debenture Holders; ---

(ii) to be fully responsible for the contracted services, in accordance with the current legislation; ---------------

(iii) to protect the rights and interests of the Debenture Holders, employing in the exercise of its function the care and diligence which every active and honest man employs in the administration of his own assets; ----------

(iv) to resign from the position, in the event of supervening conflicts of interest or any other mode of inaptitude and call the General Meeting of Debenture Holders immediately to resolve on its substitution; -------

(v) to keep in safe custody all the documentation relative to the performance of its duties; -------------------------

(vi) to verify, upon accepting the function, the truthfulness of the information relating to any guarantees and the consistency of the other information contained in this Indenture, taking care to remedy any omissions, failures or defects of which it is aware; -----------------

(vii) to endeavor with Issuer to have the Indenture and its amendments registered with the competent bodies, adopting, in case of Issuer's omission, the measures eventually provided by law; -------------------------------

(viii) diligence with Issuer so that the Indenture and its amendments, are registered with the competent bodies,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

adopting, in case of omission by Issuer, the measures eventually set forth by law; ------------------------------

(ix) to monitor the periodic information provided by Issuer and warn the Debenture Holders, in the annual report, about inconsistencies or omissions of which they are aware; ------------------------------------------------

(x) to give an opinion on the sufficiency of the information provided in the proposals to modify the terms of the Debentures; ---------------------------------------

(xi) to request, when deemed necessary for faithful performance of its functions or if so requested by the Debenture Holders, adjusted certificates of the civil distributors, of the Public Finance Courts, Protest Courts, Labor Courts, the Office of the Attorney-General of the Republic, of the place where the asset given in guarantee is located or the domicile or registered office of Issuer; ------------------------------------------------

(xii) to call, when necessary, the General Meeting of Debenture Holders, pursuant to Clause 9.1.2 below; --------

(xiii) to attend the General Meeting of Debenture Holders in order to provide the information requested; ------------

(xiv) to prepare the annual report intended for the Debenture Holders about observance of the periodicity in the provision of mandatory information, warning the Debenture Holders about eventual inconsistencies, omissions or untruths. For such, Issuer shall send the





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

organization chart, the corporate acts and all the necessary documents for the report to be requested by Trustee, which shall be duly forwarded by Issuer within a maximum term of thirty (30) days before the end of the term to make the report available, as well as Issuer's Audited Consolidated Financial Statements, which shall be duly forwarded by Issuer within a maximum of three (3) months from the end of the fiscal year. Said organization chart of Issuer's corporate group shall contain, including its parents, subsidiaries, joint ventures, affiliates and members of the control block, as applicable, at the end of each fiscal year; ------------------------------------------

(xv) to keep adjusted the list of the Debenture Holders and their addresses, whereas Issuer and the Debenture Holders (the latter from the respective date of subscription, payment in full or acquisition of the Debentures) herein authorize, the Settling Bank, the Bookkeeping Agent and B3 to comply with the requests of Trustee that are necessary to comply with this paragraph; -

(xvi) to supervise compliance with the provisions of this Indenture, including the affirmative and negative covenants, through documents and information provided by Issuer; ------------------------------------------------

(xvii) to monitor the occurrence of the Events of Default, as may be informed by Issuer, and act as established in this Indenture; ------------------------------------------





Pg 431 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 305

(xviii) to monitor the redemption of the Debentures in the cases provided in this Indenture; -------------------------

(xix) to follow the Debentures unit price calculated by Issuer, making it available to the Debenture Holders and to Issuer; ---------------------------------------------------

(xx) to communicate to the Debenture Holders any default, by Issuer, on financial obligations assumed in the Indenture, including the contractual clauses intended to protect the interests of the Debenture Holders and that establish conditions that should not be disregarded by Issuer, indicating the consequences for the Debenture Holders and the measures that it intends to take in relation to the matter, within seven (7) Business Days counted from the knowledge by Trustee of the respective default; ----------------------------------------------------

(xxi) to adopt the judicial or extrajudicial measures necessary to defend the Debenture Holders' interests; -----

(xxii) to keep available on its web page in the World Wide Web an adjusted list of the issues in which it acts as trustee; ----------------------------------------------------

(xxiii) to ensure equal treatment to the Debenture Holders and to all the holders of securities issued by Issuer or related companies, subsidiaries, parents or companies of the same group as Issuer, observing the guarantees, obligations and specific rights attributed to the respective holders of securities; -------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(xxiv) to maintain, for the minimum term of five (5) years, or for a longer term, as requested by the Debenture Holders, all documents and information related to the Issue; such documents may be kept in physical or electronic means, the substitution of documents by the respective scanned images being admitted. -----------------

8.4.2. In case of default on any conditions of the Issue, Trustee shall use any and all measures provided by law or in the Indenture to protect the rights or defend the interests of the Debenture Holders. -----------------------

8.4.3. Without prejudice to the duty of care of Trustee, Trustee shall assume that the original documents or certified copies of documents forwarded by Issuer or third parties at its request have not been subject to fraud or adulteration. Trustee shall not, under any circumstances, be responsible for the preparation of corporate documents of Issuer. -------------------------------------------------

8.4.4. Trustee shall not make any judgment about guidance on any fact of the Issue under the competence of definition by the Debenture Holders, undertaking to act only in accordance with the instructions resolved by the Debenture Holders. To this effect, Trustee does not have any responsibility over the result or over the legal effects resulting from strict compliance with the guidelines of the Debenture Holders transmitted to it as defined by the Debenture Holders and reproduced to Issuer,





Pg 433 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 307

regardless of eventual damage that may be caused as a result of this to the Debenture Holders or to Issuer. Trustee's performance is limited to the scope set forth in this Indenture and in the applicable articles of the Corporation Law, and Trustee is released, in any way or under any pretext, from any additional liability that has not arisen from the applicable legislation. ---------------

8.5 **Remuneration of Trustee** -------------------------------

8.5.1. The Issuer shall pay to Trustee or to the institution that may replace it, pursuant to the terms of Clause 8.3 above, fees for the performance of the duties and attributions incumbent upon it, pursuant to the terms of the legislation in force and of this Indenture, corresponding to remuneration *[periodicity]* of BRL [--] ([--]), the first installment being due by the [--]° ([--]) Business Day after execution of this Indenture and the other installments on the same day of the subsequent *[periodicity]* until the Maturity Date, calculated *pro rata die,* if necessary. The remuneration shall be due even after final maturity of the Debentures, if the Trustee is still performing activities inherent to its function in relation to the Issue, which shall be calculated *pro rata die.* The first installment shall be due even if the Debentures have not been paid up, as a way of structuring and implementing the Issue. -------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

8.5.2. The payment of the installments described in Clause 8.5.1 above shall be made to Trustee plus the amounts related to taxes and contributions levied on the invoice: (a) ISS (Tax on Services of Any Kind); (b) PIS (Contribution to the Social Integration Program); (c) COFINS (Contribution for the Financing of Social Security); (d) CSLL (Social Contribution on Net Profit); (e) IRRF (Withholding Income Tax); and (f) any other taxes that may be levied on the remuneration of the Trustee, Bookkeeping Agent or Settling Bank at the rates in effect on the dates of each payment so that the Trustee receives the remuneration as if such taxes were not levied; --------

8.5.3. The installments mentioned in Clause 8.5.1 above shall be adjusted by the accumulated positive variation of the IPCA/IBGE, or in the absence thereof, or in the impossibility of its use, by the index that replaces it, from the date of the first payment, until the following payment dates, calculated *pro rata die*, if necessary. -----

8.5.4. In the event of late payment of any amount due as a result of the remuneration proposed herein, the debts in arrears shall be subject to a contractual fine of two percent (2%) on the value of the debt, as well as default interest of one percent (1%) per month, with the value of the debt in arrears being subject to monetary restatement by the IPCA/IBGE, from the date of default until the date of actual payment, calculated *pro rata die*. ---------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

8.5.5. The payment of Trustee's remuneration shall be made by deposit in a checking account to be indicated by Trustee at the appropriate time, the deposit slip serving as proof of payment. --------------------------------------

**8.6 Expenses** ---------------------------------------------

8.6.1 Trustee's compensation does not include expenses deemed necessary for performance of the function of trustee during the implementation and validity of the service, to be covered by Issuer, upon payment of the respective charges accompanied by the respective receipts, issued directly in the name of Issuer or upon reimbursement, after, whenever possible, prior approval, namely: costs incurred with telephone contacts related to the Issue, notifications, extraction of certificates, notary fees, photocopies, scans, sending of documents, trips, meals and lodging, expenses with specialists, such as auditing and/or inspection, among others, or legal assistance to the debenture holders. ----------------------

8.6.2. In case of default by Issuer, all the necessary expenses which the Trustee may incur to protect the Debenture Holders' interests shall be previously approved and advanced by the Debenture Holders, and later, reimbursed by Issuer. Such expenses include expenses with attorneys' fees, including third parties' fees, deposits, indemnifications, court costs and l fees of actions filed by Trustee, provided they are related to the solution of





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the default, while representing the Debenture Holders. The eventual expenses, deposits and court costs resulting from defeat in lawsuits shall also be borne by the Debenture Holders, as well as the remuneration and reimbursable expenses of Trustee, in the event Issuer remains in default in relation to the payment of same for a period longer than fifteen (15) running days, by sending a report of the expenses and due evidence. -------------------------

8.6.3. In case of default, monetary or not, by Issuer, or of restructuring of the conditions of the operation, an additional remuneration equivalent to BRL [--] ([--]) per man-hour of work dedicated to the activities related to the Issue shall be due to Trustee. The same remuneration shall be due when participating in meetings, analyzing and executing amendments, conference calls and face-to-face meetings, which remuneration shall be paid within 10 (ten) days after checking and approval by Issuer of the respective “Time Sheet”. ----------------------------------

8.6.4 All expenses above BRL [--] ([--]) which Trustee may incur to protect the Debenture Holders' interests shall be previously approved and advanced by the Debenture Holders, and later, as provided by Law, reimbursed by Issuer. Such expenses include proven expenses with attorney's fees, including third parties' fees, deposits, costs and judicial fees of actions filed by Trustee, as representative of the Debenture Holders. Eventual





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

expenses, deposits and court costs resulting from defeat in lawsuits shall also be borne by the Debenture Holders, as well as the remuneration and reimbursable expenses of Trustee, in the event Issuer remains in default in relation to their payment for a period longer than thirty (30) days, and Trustee may request guarantee to the Debenture Holders to cover the risk of defeat. ------------

**CLAUSE IX** ---------------------------------------------

**DEBENTURE HOLDERS' GENERAL MEETING** ------------------------

9.1. The Debenture Holders may, at any time, meet in general meeting, in accordance with the provisions in Article 71 of the Corporation Law, in order to resolve on a matter of interest to the communion of Debenture Holders ("General Meeting of Debenture Holders"). -----------------

9.1.1. The provisions of Brazilian Corporation Law on general shareholders' meetings shall apply to the General Meeting of Debenture Holders, as the case may be. ---------

**9.2 Call and Convening** ------------------------------------

9.2.1. The General Meeting of Debenture Holders may be called by Trustee, by Issuer, by Debenture Holders representing at least ten percent (10%) of the Outstanding Debentures. ---------------------------------------------

9.2.2. The call of the General Meetings of Debenture Holders shall be made by an advertisement published pursuant to the terms of this Indenture, observing the provisions of Clause 4.17 above, observing other rules





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

related to the publication of a call advertisement of general meetings set forth in the Corporation Law, the applicable regulations and this Indenture. ----------------

9.2.3. The General Meetings of Debenture Holders shall be held within 8 (eight) days counted from the date of the first publication of the call. Any General Meeting of Debenture Holders on second call may only be held at least five (5) days after the date of publication of the new call notice. --------------------------------------------------

9.2.4. Regardless of the formalities set forth in the applicable law and in this Indenture, the General Meeting of Debenture Holders to which the holders of all Debentures in Circulation attend shall be considered regular. ------------------------------------------------------

9.2.5. The General Meetings of Debenture Holders shall be installed, on first call, with the presence of Debenture Holders representing at least two thirds (2/3) of the Outstanding Debentures and, on second call, with any quorum. -------------------------------------------------------

**9.3. Presiding Officers** ----------------------------------

9.3.1. The chairman and secretary of the Debenture Holders' General Meetings shall be the responsibility of the representative elected by the Debenture Holders and may be accompanied by the Monitoring Agent, if necessary. -

**9.4. Quorum of Resolution** --------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

9.4.1. In the resolutions of the Debenture Holders' General Meetings, each Outstanding Debenture shall have one vote, the constitution of an attorney-in-fact, holder of Debentures or not, is admitted. ------------------------

9.4.1.1 For purposes of the constitution of all convening and/or resolution quorums of any General Meeting of Debenture Holders set forth in this Indenture, the "Outstanding Debentures " are considered as all Debentures subscribed, paid-up and not redeemed, excluding those Debentures: (i) held in treasury by Issuer; or (ii) owned by: (a) companies controlled by Issuer (directly or indirectly), (b) parents (or control group) of Issuer; (c) joint ventures; ---------------------------------------------
and (d) managers of Issuer, including, but not limited to, persons directly or indirectly related to any of the aforementioned persons, including their spouses, partners or relatives to the 3rd (third) degree. -------------------

9.4.2. When there is no specific quorum determined in this Indenture, all resolutions to be taken in a General Meeting of Debenture Holders shall depend on the approval of Debenture Holders representing, at least, (i) fifty percent (50%) plus one (1) of the Outstanding Debentures, on first call and (ii) simple majority of those present in the General Meeting of Debenture Holders, on second call.

9.4.3. The presence of the Issuer's legal representatives in the Debenture Holders' General Meetings convened by





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Issuer shall be mandatory. In other cases, the presence of Issuer's legal representatives in the Debenture Holders' General Meetings shall be allowed, it being certain that the Debenture Holders may discuss and resolve without their presence, if they wish. ----------------------------

9.4.4. Trustee shall attend the General Meetings of Debenture Holders and provide the Debenture Holders with the information requested, as well as send the respective minutes of the General Meetings of Debenture Holders to the Monitoring Agent and, while the Plan of Court-supervised reorganization lasts, to the trustee appointed by Issuer. -----------------------------------------------

9.4.5. The resolutions taken by the Debenture Holders, in the General Meetings of Debenture Holders, within the scope of their legal competence, observing the quorums of this Indenture, shall bind Issuer and all the holders of Outstanding Debentures, regardless of their having attended the General Meeting of Debenture Holders or of the vote pronounced in the respective General Meetings of Debenture Holders. ----------------------------------------

**9.5. Meeting of Creditors under the Court-supervised reorganization Plan** ----------------------------------------

9.5.1. Issuer may, at any time, call a meeting of creditors of the Companies under Court Supervised Reorganization comprised of the holders of <u>Credits</u> Eligible for the Subscription of Payment Instruments,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

among which the Debenture Holders ("Meeting of Creditors"), for them to decide on: -----------------------

(i) prior *waiver* of the right to demand performance of any of the obligations set forth in the Payment Instruments, including this Indenture; --------------------

(ii) *waiver* of the right to declare the early maturity of the obligations under the Payment Instruments, including this Indenture; ------------------------------------------

(iii) extension of terms set forth in the Payment Instruments, among which this Indenture -------------------

(iv) carrying out corporate reorganization operations under Clause 6.1 of the Court-supervised reorganization Plan; ---------------------------------------------------

(v) substitution of the Monitoring Agent; and -------------

(vi) other relevant matters. ------------------------------

9.5.1.1. Pursuant to the terms of the Court-supervised reorganization Plan, the meeting to resolve on the matters indicated in items (iii), (iv) and (v) of Clause 9.5.2 above shall only be convened with the presence of holders of Credits Eligible for the Subscription of Payment Instruments representing at least two thirds (2/3) of the Credits Eligible for the Subscription of Payment Instruments, either on first or second call. --------------

9.5.1.2. Pursuant to the terms of the Court-Supervised Reorganization Plan, the matters indicated in items (iii), (iv) and (v) of Clause 9.1.2 above shall be subject to





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

approval by holders of Credits Eligible for the Subscription of Payment Instruments representing at least two-thirds (2/3) of the Credits Eligible for the Subscription of Payment Instruments, on first and second call. -----------------------------------------------------

9.5.2. In case of call for a certain Creditors Meeting, Trustee undertakes, within one (1) Business Day counted from receipt of the notice of call for the respective Creditors Meeting, to call a General Meeting of Debenture Holders, pursuant to and in the term established in Clause 9.2 above, which shall have as its agenda resolution on the matters contained in the notice of call to the Creditors Meeting. ----------------------------------------

9.5.3. Upon the occurrence of a General Meeting of Debenture Holders set forth in Clause 9.5.2 above, Trustee undertakes to attend the respective Meeting of Creditors and vote, as representative of the Debenture Holders, as instructed by them in the General Meeting of Debenture Holders. --------------------------------------------------

9.5.4. If the vote cast by the Debenture Holders is defeated in the corresponding Creditors' Meeting, the resolutions taken in the respective Creditors' Meeting shall prevail over those taken in the Debenture Holders' General Meeting, binding the Debenture Holders in all its terms. --------------------------------------------------

**CLAUSE X** --------------------------------------------------





Pg 443 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 317

**REPRESENTATIONS AND WARRANTIES OF ISSUER** ------------------

10.1. Issuer represents and warrants, on the date of execution of this Indenture, that: ------------------------

(i) it is a company duly organized and existing as a joint stock company, in accordance with Brazilian law; ----------

(ii) is duly authorized and has obtained all necessary licenses and permits, including corporate licenses, to execute this Indenture and any amendments thereto, to carry out the Issue and comply with its obligations hereunder, having met all legal and statutory requirements to do so; ----------------------------------------------------

(iii) no registration, consent, authorization, approval, license, order of, or identification before any governmental authority or regulatory body additional to those already granted, is required for compliance by Issuer with its obligations under this Indenture and the Debentures, or for the accomplishment of the Issue, except registration of [Issuer's AGE/Extraordinary General Meeting], of the Corporate Acts of the Guarantors, of the Indenture in the Trade Register, the registration of the Indenture in the RTDs and the approval of the Court-supervised reorganization Plan by the competent court; ----

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

(iv) the legal representatives of Issuer who sign this Indenture have statutory and/or delegated powers to assume, in its name, the obligations established herein and, as attorneys-in-fact, had the powers legitimately





Pg 444 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 318

granted, the respective powers of attorney being in full force; ----------------------------------------------------------

(v) this Indenture and the obligations provided herein constitute legal, valid, binding obligations of Issuer, enforceable in accordance with their terms and conditions, with the force of an extrajudicial enforcement instrument pursuant to the terms of article 784, clauses I and III, of the Code of Civil Procedure; ----------------------------

(vi) the execution, terms and conditions of this Indenture and the fulfillment of the obligations provided herein and the accomplishment of the Issuance do not infringe the articles of Issuer; ----------------------------------------

(vii) is in good standing with all obligations assumed under the Court-supervised reorganization Plan; -----------

(viii) the documents and information provided to Trustee and/or the Debenture Holders are true, consistent, correct and sufficient, are adjusted to the date they were provided and include the documents and information relevant to the investment decision making on the Debentures, information on the relevant operations of Issuer, as well as the relevant rights and obligations arising therefrom, having been made available; ------------

(ix) there is no connection between Issuer and Trustee that would prevent Trustee from fully performing its functions; and -------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

(x) is complying with the laws, regulations, administrative rules and determinations of governmental bodies, government agencies, courts or tribunals, applicable to the conduction of its business and which are relevant to the performance of Issuer's activities, except in relation to those laws and regulations that (a) are being contested in good faith by Issuer, (b) for which Issuer has a judicial or administrative provision in force determining their non-applicability or (c) the nonfulfillment of which does not cause a Material Adverse Effect. -----------------------------------------------------

10.2. Issuer undertakes to notify Trustee, within three (3) Business Days of the date on which it becomes aware, should any of the statements made under Clause 10.1 above be false and/or incorrect. --------------------------------

**CLAUSE XI** ---------------------------------------------------

**GENERAL PROVISIONS** ----------------------------------------

**11.1 Communications** ---------------------------------------

11.1.1. Communications to be sent by either Party pursuant to this Indenture shall be forwarded to the following addresses: ------------------------------------------------

**To Issuer:** ------------------------------------------------

***[ISSUER]*** ---------------------------------------------------

*[Full Address]* -------------------------------------------

Postal Code *[--]-[City/State]* -----------------------------

Attn.: Mr. [--] ---------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Phone: ([--]) [--] ----------------------------------------

Email: [--] --------------------------------------------

**To Guarantors** --------------------------------------

***GUARANTOR 1***] -----------------------------------------

*[Full Address*] ---------------------------------------

Postal Code [--] - *[City/State*] ----------------------------

Attn.: Mr. [--] -----------------------------------------

Phone: ([--]) [--] ----------------------------------------

Email: [--] --------------------------------------------

***GUARANTOR 2***] -----------------------------------------

*[Full Address*] ---------------------------------------

Postal Code [--] - *[City/State*] ----------------------------

Attn.: Mr. [--] -----------------------------------------

Phone: ([--]) [--] ----------------------------------------

Email: [--] --------------------------------------------

**To Trustee:** -------------------------------------------

***[TRUSTEE***] --------------------------------------------

*[Full Address*] ---------------------------------------

Postal Code [--]-[City/State] ------------------------------

Attn.: Mr. [--] -----------------------------------------

Phone: ([--]) [--] ----------------------------------------

Email: [--] --------------------------------------------

**To the Settling Bank** ---------------------------------

***[SETTLING BANK***] ---------------------------------------

*[Full Address*] ---------------------------------------

Postal Code [--]-[City/State] ------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Attn.: Mr. [--] ------------------------------------------

Phone: ([--]) [--] ---------------------------------------

Email: [--] ---------------------------------------------

**To the Bookkeeping Agent:** --------------------------------

***[BOOKEEPING AGENT]*** ---------------------------------------

*[Full Address]* -------------------------------------------

Postal Code [--]-[City/State] -----------------------------

Attn.: Mr. [--] ------------------------------------------

Phone: ([--]) [--] ---------------------------------------

Email: [--] ---------------------------------------------

**To B3:** ------------------------------------------------

**B3 S.A. - BRAZIL, STOCK EXCHANGE, COUNTER MARKET** ----------

**Cetip segment UTVM** -------------------------------------

Praça Antônio Prado, 48, 2° andar -------------------------

Postal Code 01010-901, São Paulo/SP -----------------------

Attn.: Superintendence of Corporate Bonds and Fund Offerings --------------------------------------------------

Telephone: (11) 2565-5061 ---------------------------------

Email: valores.mobiliarios@b3.com.br ----------------------

11.1.2. The communications shall be considered delivered when received with filing number or "acknowledgment of receipt" issued by the Brazilian Postal Service or by courier at the above addresses. Communications by email shall be deemed to have been received on the date of their sending, provided that their receipt is confirmed by means of an indication (receipt issued by the machine used by





Pg 448 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 322

sender). Any change of address shall be immediately communicated to the other Parties by the Party whose address has changed with a copy to the Monitoring Agent. Any losses arising from failure to notify a change of address shall be borne by the defaulting Party, unless provided otherwise in this Indenture. ---------------------

11.2. **Waiver:** No waiver of any of the rights deriving from this Indenture shall be assumed. Thus, any delay, omission or liberality in the exercise of any right, power or remedy that falls to Issuer, Trustee and/or the Debenture Holders due to any default shall not prejudice such rights, powers or remedies, or shall be construed as constituting a waiver of the same or agreement to such default, nor shall it constitute novation or modification of any other obligations assumed by the Parties in this Indenture or precedent with respect to any other default or delay. ---------------------------------------------------

11.2.1 The holding of a General Meeting to resolve on amendments resulting from the following is herein waived: (i) correction of material errors, be it a gross error, typo or arithmetic error, (ii) alterations to any documents of the Issue already expressly allowed pursuant to the terms of the relevant document(s) of the Issue, (iii) alterations to any documents of the Issue due to requirements formulated by B3, or (iv) adjustment of the Parties' registration data, such as alteration in the

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL



REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese



corporate name, address and telephone number, among others, provided that the alterations or corrections contemplated in items (i), (ii), (iii) and (iv) above, cannot cause any loss to the Debenture Holders or any alteration in the Debenture Holders' flow, and provided there is no additional cost or expense for the Debenture Holders. ---------------------------------------------------

11.3. **Expenses:** Any and all expenses incurred with the Issue or execution of values due pursuant to the terms of this Indenture, including publications, registrations, legalization, hiring of Trustee and service providers and any other costs related to the Debentures shall be the sole responsibility of Issuer, pursuant to the terms of this Indenture. ------------------------------------------

11.4. **Extrajudicial Executive Instrument and Specific Performance:** This Indenture and the Debentures constitute extrajudicial enforcement instruments pursuant to article 784, I and III of the Code of Civil Procedure, and the Parties herein acknowledge that, irrespective of any other applicable measures, the obligations assumed under this Indenture and in connection with the Debentures are subject to specific enforcement, subject to the provisions of articles 497, 806, 814 et seq. of the Code of Civil Procedure, without prejudice to the right to declare early maturity of the Debentures pursuant to this Indenture. ----





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

11.5. **Calculation of the deadline:** Except as specifically provided otherwise in this Indenture, the deadlines set forth in this Indenture shall be computed in accordance with the rule prescribed in article 132 of the Civil Code, the day of commencement being excluded and the day of expiry included. ------------------------------------------

11.5. **Amendments:** Any amendments to this Indenture shall be formalized in writing, with the signature of Issuer and Trustee, registered in the Trade Register and registered in the RTDs, pursuant to the terms of this Indenture. The Parties agree that this Indenture, as well as the other documents of the Issue, may be altered, without the need of any approval by the Debenture Holders, always and only: (i) when such alteration results exclusively from the need to comply with the requirements of adjustment to legal, regulatory rules or the rules of B3 or any public authority or regulatory agency, as the case may be; (ii) when a material error is verified, be it a gross error, typo or arithmetic error; (iii) alterations to any documents related to the Issue of the Debentures already expressly allowed under the terms of the respective documents; or (iv) due to updating of the Parties' registration data, such as change of corporate name, address and telephone number, among others, provided that there is no additional cost or expense to the Debenture Holders. ---------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**11.6. Other Provisions** ------------------------------------

11.6.1. This Indenture is executed irrevocably and irreversibly, binding the Parties and their successors, on any account. ---------------------------------------------

11.6.2. Terms beginning here in capital letters, whether in the singular or plural, shall have the meaning attributed to them in this Indenture, even if after their use. -----------------------------------------------------

11.6.3. The invalidation or nullity, in whole or in part, of any of the clauses of this Indenture shall not affect the other clauses, which shall remain valid and effective at all times until the Parties have fulfilled all their obligations hereunder. If any Clause of this Indenture is declared invalid or void, the Parties herein undertake to negotiate, within the shortest possible time, in lieu of the Clause declared invalid or void, the inclusion in this Indenture of valid terms and conditions reflecting the terms and conditions of the Clause invalidated or void, observing the intention and purpose of the Parties when negotiating the invalidated or void Clause and the context in which it is inserted. ----------------------------------

11.6.4. The Parties mutually and expressly represent that this Indenture was executed in accordance with the principles of honesty and good faith, by free, conscious and firm expression of the will of the Parties and in a perfect equitable relationship. ---------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

11.6.5. The terms established in this Indenture shall be computed in accordance with the provisions of article 132 of the Civil Code, with the starting day being excluded and the expiry day included. -------------------------------

11.7. **Applicable Law** ---------------------------------------

11.7.1. This Indenture is governed by the laws of the Federative Republic of Brazil. -----------------------------

11.8. **Venue** ---------------------------------------------

11.8.1. The Parties elect the venue of the Judicial District of [--], State of [--], expressly waiving any other, however privileged, as competent to settle any controversy arising from this Indenture. -------------------

IN WITNESS WHEREOF, the parties execute this Indenture in [--] ([--]) identical counterparts, together with the 2 (two) undersigned witnesses. ------------------------------

São Paulo, *[date*]. ----------------------------------------

*(Signatures on the following pages)* -----------------------

-----------------------------------------------------------

*(Signature Page of the Private Instrument of Indenture of [--] of Simple, Unsecured, Debentures, Non-Convertible into Shares, With Additional Personal Guarantee, in Single Series, for Private Placement, of [Issuer])* ---------------

**[ISSUER]** --------------------------------------------

Name: --------------------------------------------------

Title: -------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Name: ---------------------------------------------------

Title: --------------------------------------------------

----------------------------------------------------------

*(Signature Page of the Private Instrument of Indenture of [--] Simple, Unsecured, Debentures, Non-Convertible into Shares, With Additional Personal Guarantee, in Single Series, for Private Placement, of [Issuer])* ---------------

----------------------------------------------------------

**GUARANTOR 1]** -----------------------------------------

Name: ---------------------------------------------------

Title: --------------------------------------------------

----------------------------------------------------------

**GUARANTOR 2]** -----------------------------------------

Name: ---------------------------------------------------

Title: --------------------------------------------------

----------------------------------------------------------

*(Signature Page of the Private Instrument of Indenture of [--] Simple, Unsecured, Debentures, Non-Convertible into Shares, With Additional Personal Guarantee, in Single Series, for Private Placement, of [Issuer])* ---------------

----------------------------------------------------------

**[TRUSTEE]** --------------------------------------------

Name: ---------------------------------------------------

Title: --------------------------------------------------

----------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**WITNESSES** ---------------------------------------------------

Name: ----------------------------------------------------

ID RG: ---------------------------------------------------

CPF: -----------------------------------------------------

----------------------------------------------------------

Name: ----------------------------------------------------

ID RG: ---------------------------------------------------

CPF: -----------------------------------------------------

----------------------------------------------------------

**Annex I to the Private Instrument of Indenture of [--] Simple, Unsecured, Debentures, Non-Convertible into Shares, With Additional Personal Guarantee, in Single Series, for Private Placement, of [Issuer])** ---------------

----------------------------------------------------------

*[to be included]* ---------------------------------------

----------------------------------------------------------

**Annex II to the Private Instrument of Indenture of [--] Simple, Unsecured, Debentures, Non-Convertible into Shares, With Additional Personal Guarantee, in Single Series, for Private Placement, of [Issuer])** ---------------

----------------------------------------------------------

*[to be included]* ---------------------------------------

----------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

**HAVING NOTHING FURTHER TO TRANSLATE FROM THIS DOCUMENT, I SIGN IT BY SETTING MY RIGHT HAND AND AFFIXING MY GOLDEN SEAL AND OFFICIAL STAMP. ----------------------------------**
**PAULO FERNANDO SANTOS DE LACERDA, Ph.D --------------------**
**SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER PERMIT #243 -----------------------------------------------------------**
**April 17, 2020. -----------------------------------------**







REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

200.133(002) Livro 749 Fl. 362-447

**I, SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER SIGNED BELOW, APPOINTED BY THE PRESIDENT OF THE TRADE BOARD OF THE STATE OF RIO DE JANEIRO (JUCERJA), LICENSED IN THE FOLLOWING LANGUAGES: ENGLISH, FRENCH, AND SPANISH UNDER PERMIT 243------------------------------------------------------------------------------ HEREBY CERTIFY IN GOOD FAITH---------------------------------------------------- THAT ON THIS DATE A DOCUMENT WAS PRESENTED TO ME WRITTEN IN PORTUGUESE, WHICH I NOW TRANSLATE INTO THE ENGLISH IDIOM WITH THE BEST OF MY KNOWLEDGE AND IN GOOD FAITH, AS COMMANDED BY MY OFFICIAL DUTY, AS FOLLOWS: ---------------------------**

-------------------------------------------------------------

Annex 4.1.3 -----------------------------------------------

Indenture: Payment Instruments - Public Debentures --------

*(Anbima logo, trustee)* -------------------------------------

**PRIVATE INSTRUMENT INDENTURE OF *[(Blank)]* OF SIMPLE UNSECURED DEBENTURES NOT CONVERTIBLE INTO SHAREHOLDERS, WITH ADDITIONAL PERSONAL GUARANTEE, IN [SINGLE SERIES], FOR PUBLIC DISTRIBUTION, WITH RESTRICTED EFFORTS, BY [ISSUER]1** -----------------------------------------------

entered into between --------------------------------------

**[ISSUER]** ------------------------------------------------

*as Issuer* -------------------------------------------------

and ---------------------------------------------------------

**[TRUSTEE]** -----------------------------------------------

*as Trustee, representing the communion of the Debenture Holders* ----------------------------------------------------

**[GUARANTORS]** --------------------------------------------

*as intervening guarantors* ----------------------------------

*[(Blank)]* -------------------------------------------------

*[date]* ----------------------------------------------------

-------------------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

1 To be adapted and adjusted according to the provisions of the Court-Supervised Reorganization Plan ---------------
-----------------------------------------------------

**PRIVATE INSTRUMENT OF *[(Blank)]* ISSUE OF UNSECURED SIMPLE, DEBENTURES NOT CONVERTIBLE INTO SHARES, WITH ADDITIONAL PERSONAL GUARANTEE, IN [SINGLE SERIES], FOR PUBLIC DISTRIBUTION, WITH RESTRICTED EFFORTS, OF [ISSUER]** --------

By this private instrument, -------------------------------

**[ISSUER]**, *[identification]*, herein represented pursuant to its bylaws ("Issuer"); -------------------------------------

**Trustee**, *[qualification]*, herein represented in the form of its [contract/statute] social, in the capacity of trustee of this issue ("Trustee"), representing the communion of the holders of the debentures of this issue ("Debenture holders" and, individually, "Debenture holder"); -----------------------------------------------------

as intervening guarantors and main payers, ----------------

**[SUPPLIER 1]**, *[identification]*, herein represented pursuant to its bylaws ("*[Guarantor 1]*"); -----------------

**[ ]**, *[identification]*, herein represented pursuant to its bylaws ("[Guarantor 1]"); --------------------------------

[GUARANTOR 2], [identification], herein represented pursuant to its bylaws ("[Guarantor 2]" and, jointly with Guarantor 1, "Guarantors"); **[NOTE: NUMBER OF GUARANTORS AND THEIR RESPECTIVE IDENTIFICATION TO BE DEFINED IN DUE COURSE DEPENDING ON THE COMPANIES UNDER REORGANIZATION THAT ADHERE TO THE COURT-SUPERVISED REORGANIZATION PLAN]** --

**WHEREAS:** ----------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(A) Issuer and Guarantors are members of the Odebrecht Group, one of the largest business conglomerates in Brazil, with operations in the sectors of infrastructure, oil and gas, sugar and ethanol, real estate development, mobility and transportation, energy, defense and naval services, bringing together several companies under common control (direct or indirect) of Kieppe Participações e Administração Ltda. - In Court-supervised reorganization ("Odebrecht Group"); ------------------------------------

(B) in the exercise of its activities, Issuer and other companies members of the Odebrecht Group, including the Guarantors, (together called "ODB Companies under Reorganization") have structured themselves to make it possible to raise funds in the Brazilian and international financial and capital markets, by contracting of bank loans, bank guarantees, insurance-guarantee and the issuance of debt instruments in the local market (debentures) and in the international market (*bonds*) (together, "Restructured Debts"); -------------------------

(C) due to financial difficulties faced by the ODB Companies under Reorganization that culminated in default on a relevant part of the Restructured Debts, on June 17, 2019, a joint court-supervised reorganization petition was filed, assessed under No. 1057756-77.2019.8.26.0100, in progress at the 1st Bankruptcy and Court-supervised Reorganization Court of the Central Civil Venue of the City of São Paulo, to permit to proceed and preserve the





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

activities of the ODB Companies under Reorganization ("Court-supervised Reorganization Plan"); -----------------

(D) in attention to the orders of pages 278/285 and 355/363, pronounced respectively under the scope of Instrument No. 2262371-21.2019.8.26.0000 and 226277-73.2019.8.26.000, the Creditors in Bankruptcy (as defined in the Court-supervised Reorganization Plan) of the Companies under Reorganization listed in Annex II to this Indenture, as amended from time to time for the inclusion of any new Companies under Reorganization ("Companies under Reorganization") resolved, at the general meeting of creditors, to substantially consolidate Odebrecht S.A. - under Court-supervised reorganization ("ODB") with the other Companies under Reorganization, so that the Court-supervised Reorganization Plan is comprised of the assets and liabilities held by all the Companies under Reorganization ("Substantial Consolidation of the Companies under Reorganization"); -------------------------

(E) under the Court-supervised Reorganization Plan, the possibility was granted to the creditors of unsecured credits arising from operations carried out within the National Financial System, with insurance companies, foreign financial institutions, investment or participation funds, or involving foreign structures similar to investment or participation funds, *private equity*, and/or issues of debt instruments in the domestic and foreign markets, including, without limitation, issues of debentures, *notes* or *bonds* ("Unsecured Unsecured





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Financial Credits"), to have their credits restructured and fully paid through certain instruments, as duly elected, among which debentures to be issued with restricted placement efforts, under the terms of CVM Instruction No. 476, of January 16, 2009, as amended ("Public Debentures"); ------------------------------------

(F) to make possible the issue of the Public Debentures so that the creditors of the Unsecured Financial Credits with credit in an amount exceeding one hundred and fifty thousand reais (BRL 150,000.00) ("Unsecured Financial Creditors") have their credits satisfied, the substantial terms and conditions of this Indenture (as defined below) were inserted as an attachment to the Court-supervised Reorganization Plan; ----------------------------------------

(G) the Court-supervised Reorganization Plan was duly approved by the Creditors in Bankruptcy and subsequently ratified by the courts pursuant to article 58, § 1 of Act No. 11.101 of February 9, 2015, on *[date]*; and ------------

(H) the Unsecured Financial Creditors that choose to have their Unsecured Financial CreditsUnsecured Financial Credits arising from their respective Restructured Debts paid through Public Debentures may subscribe to the Debentures which are the subject of this Issue (as defined below) pursuant to the terms set forth herein. ------------

The Issuer, the Trustee and the Guarantors being jointly hereinafter referred to as "Parties" and, individually and indistinctly, as "Party"; ---------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

The Parties hereby resolve, in due accordance with the law, to enter into this "*Private Instrument of Indenture of the [(Nothing contained)]ª Issue Unsecured Simple Debentures, Not Convertible into Shares, with Additional Personal Guarantee, in [Single Series], for Public Distribution, with Restricted Efforts, of [Issuer]*" ("Indenture"), according to the clauses and conditions below. ---------------------------------------------------------

For purposes of this Indenture, "Business Day" is defined as any day of the week except Saturdays, Sundays, and declared national holidays. When the indication of the period counted per day in this Indenture is not accompanied by the indication "Business Day", the period shall be understood to be counted in calendar days. -------

**CLAUSE I** ---------------------------------------------------

**AUTHORIZATION** ----------------------------------------------

1.1 This Indenture is executed based on the authorization of the *[Extraordinary General Meeting of shareholders of Issuer held on [date] ("AGE of the Issuer")]*, by means of which the issuance of unsecured simple debentures, not convertible into shares, with additional personal guarantee, in [single series], of the Issuer ("Debentures" and "Issue", respectively), for public distribution, with restricted efforts, pursuant to the terms of CVM Instruction 476, pursuant to article 59 of Act No. 6404 of December 15, 1976, as amended ("Corporation Law"), and other applicable legal and regulatory provisions ("Offering"); and (ii) the authorization for the EOfficers





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Board of Issuer to practice all acts necessary to effectuate the resolutions embodied therein, including the execution of all documents necessary to materialize the Issue and the Offering. **[NOTE: APPROVAL OF THE ISSUE VIA AGE AND/OR RCA TO BE CONFIRMED DEPENDING ON ISSUER]** -----

1.2. The Guarantor (as defined below) shall be based on the resolutions of the *[Extraordinary General Meeting of Guarantor 1 Shareholders held on [date] ("Guarantor 1 AGE")] and the [Extraordinary General Meeting of Guarantor 2 Shareholders held on [date] ("Guarantor 2 AGE*") and, together with the [Guarantor 1 AGE], "Corporate Acts of the Guarantors"). -----------------------------------------

**[NOTE: APPROVAL OF GUARANTEE VIA AGE AND/OR RCA TO BE CONFIRMED DEPENDING ON THE GUARANTORS]** ---------------------

**CLAUSE II** ------------------------------------------------

**REQUIREMENTS** ---------------------------------------------

The Issue shall be carried out in compliance with the requirements below. ----------------------------------------

**2.1. Waiver of Registration with CVM** ----------------------

2.1.1. Pursuant to article 6 of CVM Instruction 476 and article 19, paragraph 5, I of Law 6,385, of December 7, 1976, as amended, the Offering is automatically exempted from registration with CVM, since it is a public offering of securities with restricted distribution efforts and is not subject to registration and filing with CVM, except for the sending of communication on the commencement of the Offering and the communication of its termination to CVM, pursuant to articles 7-A and 8, respectively, of CVM





Pg 463 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 369

Instruction 476 ("Notice of Commencement" and "Notice of Closing", respectively). ----------------------------------

**2.2. Registration with the Brazilian Association of Financial and Capital Market Entities ("ANBIMA")** ----------

2.2.1. Considering that the Offering shall be distributed with restricted placement efforts pursuant to CVM Instruction 476, it shall be registered with ANBIMA within a maximum period of 15 (fifteen) days from the date of the Offering's closing announcement pursuant to Article 16 and following of *ANBIMA*'s "*Code of Regulation and Best Practices for Public Offerings*" in force since June 3, 2019. ----------------------------------------------------

**2.3. Filing with the Trade Register and Publication of the Minutes of Issuer's AGE** ------------------------------------

2.3.1. The minutes of the [Issuer's AGE] shall be duly filed with the Trade Register of the State of *[(Blank)]* ("Trade Register") and shall be published in the newspapers "Diário Oficial do Estado de [(Blank)] ("Official Gazette") and "*[(Blank)]*", pursuant to the Corporation Law. The corporate acts that may eventually be performed after the filing of this Indenture shall also be filed with the Trade Register and published by Issuer in the Official Gazette and "*[(Blank)]*", according to the legislation in force. -------------------------------------

**2.4. Filing and Registration this Indenture and its Amendments** ----------------------------------------------

2.4.1. This Indenture and any amendments thereto shall be filed with the Trade Register, pursuant to article 62, II

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

and paragraph 3 of the Corporation Law. Issuer shall send one (1) original copy of the Indenture and its eventual amendments duly registered with the Trade Register to the Trustee within five (5) Business Days as of the respective registration. Additionally, due to the Guarantee granted by the Guarantor, this Indenture and its eventual amendments shall also be registered with the competent Registers of Deeds and Documents in the Cities of *[(Blank)]*, in the State of *[(Blank)]* ("RTDs"), and this Indenture (and eventual amendments) shall be taken for registration in the RTDs within five (5) Business Days from the date of their execution and one (1) original copy sent by Issuer to Trustee within five (5) Business Days from the respective registration. -------------------------

**2.5. Deposit for Distribution, Trading and Electronic Custody** ----------------------------------------------

2.5.1. The Debentures shall be deposited for: -------------

(i) distribution in the primary market, through the MDA - Asset Distribution Module ("MDA"), managed and operated by B3 S.A. - Brasil, Bolsa, Balcão [Brazil, Stock Exchange, Counter Market]- Segment Cetip UTVM ("B3"), with distribution being financially settled by B3; and ---------

(ii) trading in the secondary market, through CETIP21 - Securities ("CETIP21"), managed and operated by B3, the trading being financially settled and the Debentures held in custody electronically in B3. --------------------------

2.5.2. Notwithstanding the provisions of Clause 2.5.1 above, the Debentures may only be traded in the regulated





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

securities markets among Qualified Investors, as defined in article 9-B of CVM Instruction 539, of November 13, 2013, as amended ("CVM Instruction 539"), and after 90 (ninety) days have elapsed from the date of each subscription or acquisition by the Professional Investors, as set forth in articles 13 and 15 of CVM Instruction 476, and once the Issuer has ensured compliance with its obligations set forth in article 17 of CVM Instruction 476, also observing the provisions of item II of article 13 of CVM Instruction 476, and the Debentures must always be traded in compliance with the applicable legal and regulatory provisions. -----------------------------------

**CLAUSE III** ---------------------------------------------------

**CHARACTERISTICS OF THE ISSUE** ------------------------------

**3.1 Corporate Purpose of Issuer** ---------------------------

3.1.1. Pursuant to the terms of Issuer's bylaws currently in force, Issuer's corporate purpose comprises *[include description of the Issuer's corporate purpose]*. -----------

**3.2 Issue Number** -------------------------------------------

3.2.1. This Issue constitutes the *[(Blank)]* (*[(Blank)]*) issue of debentures of Issuer. ----------------------------

**3.3 Total Value of the Issue** ------------------------------

3.3.1. The total amount of the Issue shall be up to BRL *[(Blank)]*, on the Date of Issue (as defined below), observing the possibility of partial distribution of the Debentures set forth in Clause 3.5.8, so that the Total Amount of the Issue shall be adjusted by an amendment to





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

this Indenture, after the Term of Subscription (as defined below) ("Total Amount of the Issue") has elapsed. ---------

**3.4 Number of Series** --------------------------------------

3.4.1. The Issue shall be made in [single series]/*[(Blank)]* series. **[NOTE: THE ISSUE MAY OCCUR IN ONE OR MORE SERIES DEPENDING ON THE GUARANTEES TO BE PROVIDED]** --------------------------------------------------

**3.5 Distribution Procedure** --------------------------------

3.5.1. The Debentures shall be distributed publicly, with restricted efforts, in accordance with CVM Instruction 476, under the best efforts of placement for all Debentures, with the intermediation of financial institutions participating in the securities distribution system responsible for distributing the Debentures ("Coordinators", the leading intermediary institution being called "Lead Coordinator"), pursuant to the "*Private Instrument of Coordination and Public Distribution Agreement, With Restricted Placement Efforts, of Unsecured Simple Debentures, Not Convertible into Shares, With Additional Personal Guarantee, in [Single Series], of [(Blank)] Issuance* of [Issuer]", entered into between the Issuer and the Coordinators ("Distribution Agreement"), it being understood that the Debentures may be subscribed for by Unsecured Financial Creditors up to a maximum term of twenty-four (24) months, counted from the date of remittance of the Commencement Communication, pursuant to the terms of article 8 of CVM Instruction 476 ("Subscription Term") **[NOTE: IF THERE IS AN IN REM**





Pg 467 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 373

**GUARANTEE PROVIDED BY THIRD PARTIES, THE NAME OF THE DISTRIBUTION CONTRACT SHALL BE ADJUSTED TO SHOW THAT THE DEBENTURES SHALL BE OF THE KIND WITH ADDITIONAL IN REM GUARANTEE]** ------------------------------------------------

3.5.2. The distribution plan shall follow the procedure described in CVM Instruction 476, as provided in the Distribution Agreement. For such purpose, the Lead Coordinator may access a maximum of 75 (seventy-five) Professional Investors (as defined below), the subscription or acquisition by a maximum of 50 (fifty) Professional Investors, who must be mandatorily classified in the category of Unsecured Financial Creditors being possible. ------------------------------------------------

3.5.2.1. Pursuant to CVM Instruction 476, "Professional Investors" are those investors mentioned in article 9-A of CVM Instruction 539, with the proviso that investment funds and securities' portfolios managed whose investment decisions are taken by the same manager shall be considered as a single investor for purposes of the limits set forth in Clause 3.5.2 above. --------------------------

3.5.2.2. Upon subscription of the Debentures, the Professional Investors will sign a statement attesting that they have made their own analysis of the Issuer's payment capacity and attesting to their status as Professional Investors, as well as that they are aware, among other things: (a) that the Offering was not registered with CVM; (b) that the Debentures are subject to trading restrictions set forth in the applicable

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 468 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 374

regulations and in this Indenture; and (c) of all the terms and conditions of this Indenture, with which they fully agree. -----------------------------------------------

3.5.3. The Issuer undertakes to: (i) not contact or provide information on the Offering to any Professional Investor, except if previously agreed with the Lead Coordinator; and (ii) inform the Lead Coordinator, until the immediately subsequent Business Day, of the occurrence of any contact it receives from potential Professional Investors who may manifest their interest in the Offering, herein undertaking not to take any action in relation to said potential Professional Investors during this period. -

3.5.4. No type of discount shall be granted by the Coordinators to Professional Investors interested in acquiring Debentures within the scope of the Offering, as well as there will be no advance reserves, or the setting of minimum or maximum lots for the Offering, regardless of chronological order. ----------------------------------------

3.5.5. There will be no preemption for subscription of the Debentures by the current shareholders or direct or indirect controlling shareholders of the Issuer. ----------

3.5.6. No liquidity support fund or liquidity guarantee contract shall be established for the Debentures. No contract will be executed to stabilize the price of the Debentures on the secondary market. -----------------------

3.5.7. The Debentures shall be placed in accordance with B3 procedures, the distribution plan described in this

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 469 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 375

Clause 3.5 and the Court-supervised Reorganization Plan, as applicable. -----------------------------------------

3.5.8. Pursuant to articles 30 and 31 of CVM Instruction 400 of December 29, 2003 ("CVM Instruction 400") and article 5-A of CVM Instruction 476, partial distribution of the Debentures will be admitted, with the proviso that the final total amount of the Restricted Offering shall be defined after the end of the Subscription Term. -----------

3.5.8.1. At the end of the Subscription Term, the Debentures effectively issued and not distributed shall be cancelled by Issuer. ------------------------------------

3.5.9. In view of the fact that the distribution may be partial, pursuant to article 31 of CVM Instruction 400 and article 5-A of CVM Instruction 476, the Unsecured Financial Creditor who acquires the Debentures will expressly waive, upon acceptance of the Restricted Offering, the provisions set forth in article 31 of CVM Instruction 400 and article 5-A of CVM Instruction 476, so that such investor may not condition its adhesion to the total distribution of the Debentures. ---------------------

**3.6 Settling Bank and Bookkeeper** --------------------------

3.6.1. The institution providing the services of the Settling Bank of the Debentures is the *[*Settling Bank], *[identification*] ("Settling Bank"). -----------------------

3.6.2. The institution providing bookkeeping services for the Debentures is the *[Book*keeping Agent], *[identification*] ("Bookkeeper"). --------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

3.6.3. The Bookkeeping Agent shall be responsible for carrying out the debenture bookkeeping, among other duties described in B3 Policy Manual. ----------------------------

**3.7 Allocation of the Funds** -------------------------------

3.7.1. The paid-up credits received by Issuer as a result of the subscription of the Debentures shall be used by Issuer for the capitalization of its subsidiaries and/or restructuring of its debts in compliance with the terms and conditions of the Court-supervised Reorganization Plan. **[NOTE: ALLOCATION OF THE FUNDS TO BE ADAPTED AS DEFINED IN THE RJ PLAN]** ----------------------------------

**3.8. Guarantees** ----------------------------------------

Unsecured Guarantee **[NOTE: THE ISSUE (OR SERIES OF THIS ISSUE) MAY BE GUARANTEED BY A PERSONAL GUARANTEE OF A THIRD PARTY, WHICH SHALL BE DEFINED ACCORDING TO THE OPTIONS MADE BY THE CREDITORS IN THE COURT-SUPERVISED REORGANIZATION PLAN. IF SUCH A GUARANTEE EXISTS, THE CLAUSE BELOW SHALL BE USED]** -------------------------------

3.8.1.1 As guarantee of full payment of any and all amounts, principal or accessory, including Default Charges (as defined below), due by Issuer or by the Guarantor, pursuant to the terms of this Indenture, as well as eventual indemnities, any and all costs or expenses proven and reasonably incurred by Trustee and/or by the Debenture holders as a result of proceedings, procedures and/or other judicial or extrajudicial measures necessary to safeguard their rights and prerogatives arising from the Debentures, from this Indenture ("Secured Obligations"),





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the Guarantors, herein undertake, jointly and severally among themselves and with the Issuer, irrevocably and irreversibly, to the Debenture holders, as guarantors, principal payers of the Secured Obligations, expressly waiving the benefits of order, rights and powers of release of any nature set forth in articles 333, sole paragraph, 364, 366, 368, 821, 824, 825, 827, 829, sole paragraph, 830, 834, 835, 836, 837, 838 and 839 of Act n.° 10.406, of January 10, 2002, as amended ("Civil Code"), and articles 130 and 794 of Act n.° 13.105, of March 16, 2015, as amended ("Code of Civil Procedure" and "Guarantee", respectively).-------------------------------

3.8.1.2. It is up to Trustee to request judicial or extrajudicial performance of the Guarantee, according to the function attributed to it in this Indenture, once any event of insufficiency of payment of the Guaranteed Obligations is verified. The Guarantor may be excused and required by the Trustee as often as necessary, until full and effective liquidation of all the Guaranteed Obligations, it being certain that failure to execute the Guarantee by Trustee shall not entail, in any event, loss of the right of execution of the Guarantee by the Debenture holders.-----------------------------------------

3.8.1.3. The Guarantors undertake, jointly and severally, regardless of any claim, action, dispute or complaint that Issuer may have or exercise in relation to its obligations, except as provided in Clause 3.8.6 below, to honor the Guarantee, regardless of notification by Trustee





Pg 472 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 378

informing the lack of payment by Issuer, within a period of up to [thirty (30)] days counted from nonfulfillment of any of the Secured Obligations by Issuer, outside the scope of B3. ---------------------------------------------

3.8.1.4. The Guarantee mentioned herein is irrevocable and irreversible and shall come into force on the date of execution of this Indenture and shall remain valid until full payment of the Guaranteed Obligations. ---------------

3.8.1.5. The Guarantors herein agree and undertake, jointly among themselves, to, (i) only after the full liquidation of all values due to the Debenture Holders and to the Trustee pursuant to the terms of this Indenture, require and/or demand that Issuer as a result of any value it has honored under the Debentures and under the terms of this Indenture; and (ii) in case Issuer is in default in compliance with the monetary obligations set forth in this Indenture and the Guarantors are reimbursed by Issuer as a result of any value it has honored under the Debentures, under the terms of this Indenture before full liquidation of all values due to the Debenture Holders and to the Trustee under the terms of the Debentures, of this Indenture, to pass on, within thirty (30) days counted from the date of its receipt, such value to the Trustee, for payment to the Debenture Holders. ---------------------

3.8.1.6. The Guarantee shall remain valid and fully effective in the event of any amendments, alterations and any other modifications to this Indenture and the other documents of the Offering. -------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**3.8.2. In Rem Guarantee(s)** --------------------------------

**NOTE: THE ISSUE (OR SERIES OF THIS ISSUE) COULD BE GUARANTEED BY AN IN REM GUARANTEE, WHICH WILL BE DEFINED ACCORDING TO THE OPTIONS MADE BY THE CREDITORS IN THE COURT-SUPERVISED REORGANIZATION PLAN. IF SUCH GUARANTEE(S) EXIST(S), SPECIFIC CONTRACTS SHOULD BE SIGNED ACCORDING TO THE DEFINITION OF THE GUARANTEE(S) TO BE USED. MENTION OF SUCH GUARANTEE(S) SHALL BE INCLUDED IN THIS CLAUSE.]** ------

**CLAUSE IV** ---------------------------------------------

**GENERAL CHARACTERISTICS OF THE DEBENTURES** -----------------

**4.1. Date of Issue:** For all legal purposes and effects, the date of issue of the Debentures shall be the *[date]* ("Date of Issue"). ----------------------------------------

**4.2. Form, Type and Proof of Ownership:** Debentures shall be issued in nominative, book-entry form, without the issuance of any warrants or certificates, and for all legal purposes, title to the Debentures shall be evidenced by a Debenture Statement issued by the Bookkeeping Agent and, in addition, with respect to the Debentures that are held in custody electronically at B3, as the case may be, there shall be issued by the latter a Statement in the name of the Bookkeeping Agent, which will serve as evidence of title to such Debentures. ---------------------

**4.3. Convertibility:** The Debentures shall not be convertible into shares issued by issuer. -----------------

**4.4.** Type: The Debentures shall be unsecured pursuant to the terms of article 58 of the Corporation Law and have an additional personal guarantee. **[NOTE: IF THERE IS A IN REM**





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**GUARANTEE PROVIDED BY THIRD PARTIES, THIS CLAUSE SHALL BE ADJUSTED TO MAKE IT CLEAR THAT THE DEBENTURES SHALL BE OF A TYPE WITH ADDITIONAL IN REM GUARANTEE]** -------------------

**4.5. Term and Due Date:** Without prejudice to the possibility of early liquidation of the Debentures due to the assumptions of anticipated maturity or the making of any Mandatory Early Redemption (as defined below), under the terms of this Indenture, the Debentures shall fall due within forty (40) years as of the Date of Issue, thus falling due on *[date]* ("Due Date"). -----------------------

**4.6. Unit Par Value:** The unit par value of the Debentures shall be BRL *[(Blank)]*), on the Date of Issue ("Unit Par Value"). -------------------------------------------------

**4.7. Number of Debentures Issued:** Debentures will be issued until *[(*Blank)] (*[(Blank)]*) Debentures, subject to the possibility of partial distribution under Clause 3.5.8 above. ------------------------------------------------

**4.8. Form of Subscription and Payment:** The Debentures shall be subscribed and paid up in the primary market, during the Subscription Term, on one or more dates, in accordance with the settlement rules applicable to B3, at their Adjusted Unit Par Value (as defined below). The Debentures shall be subscribed exclusively by Professional Investors falling into the category of Unsecured Financial Creditors and paid exclusively with the Unsecured Financial Credits arising from the Restructured Debts, as described in Annex I to this Indenture. -------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**4.9. Inflation adjustment:** The Unit Par Value or balance of the Unit Par Value, as applicable, of the Debentures shall be adjusted by the IPCA or TR (as defined below), as follows. ---------------------------------------------

4.9.1 *Inflation adjustment by the IPCA.* Subject to the provisions of Clause 4.9.2 and sub-clauses below, the Unit Par Value or the balance of the Unit Par Value, as applicable, of the Debentures shall be monetarily restated by the accumulated positive variation of the National Extended Consumer Price Index ("IPCA"), calculated and disclosed on a monthly basis by the Brazilian Institute of Geography and Statistics ("IBGE"), from the Date of Issue (inclusive) to the TR Modifying Date (as defined below) (inclusive) or the Due Date (inclusive), as the case may be ("IPCA Inflation adjustment"), and the proceeds of the IPCA Inflation adjustment shall be automatically incorporated into the Unit Par Value of the Debentures or, as the case may be, into the balance of the Unit Par Value of the Debentures, as applicable ("IPCA Unit Par Value Adjustment"), calculated on a *pro rata temporis* basis per Business Days according to the formula below: -------------

Where: --------------------------------------------------------

--------------------------------------------------------

$$VNa = VNe \times C$$

--------------------------------------------------------

Where --------------------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

VNa = IPCA Adjusted Unit Par Value calculated to eight (8) decimal places, without rounding; -------------------------

VNe = IPCA Unit Par Value or balance of IPCA Unit Par Value (par value remaining after amortization of principal), as the case may be, calculated to eight (8) decimal places, without rounding. -------------------------

C = Cumulative factor of monthly changes in the index used, calculated to eight (8) decimal places, without rounding, calculated as follows: --------------------------

------------------------------------------------------

$$C = \prod_{k=1}^{n} \left[ \left( \frac{NI_k}{NI_{k-1}} \right)^{dup/dut} \right]$$

$$C = \prod_{k=1}^{n} \left[ \left( \frac{NI_k}{NI_{k-1}} \right)^{dup/dut} \right]$$

------------------------------------------------------

Where: ------------------------------------------------

n = total number of key figures used in the IPCA Inflation adjustment, "n" being an integer; -------------------------

dup = number of Business Days between the Date of Issue or the last IPCA Monthly Anniversary Date of the Debentures and the calculation date, limited to the total number of Business Days of the index used, being "dup" an integer; --

dut = number of Business Days between the last and the next IPCA Monthly Birthday Date, "dut" being an integer; --

NIk = index-number value of the month prior to the month of adjustment, if the adjustment is on an earlier date or the IPCA Monthly Anniversary itself. After the Monthly

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL



Pg 477 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 383

IPCA Anniversary Date, value of the index number of the month of adjustment; and ----------------------------------
NIk-1 = index-number value of the month before month "k". -
The factor resulting from the expression described below is considered with 8 (eight) decimal places, without rounding: ------------------------------------------------

$$\left(\frac{NI_k}{NI_{k-1}}\right)^{\frac{dup}{dut}}$$

-----------------------------------------------------------

The final production is executed from the most recent factor, then adding the most remote. The intermediate results are calculated with 16 (sixteen) decimal places, without rounding. ------------------------------------------
The application of the IPCA will be in the shortest period allowed by the legislation in force, without the need of adjustment to the Indenture or any other formality. -------
The IPCA should be used considering the same number of decimal places published by IBGE. -------------------------
It is considered "Monthly IPCA Anniversary" every 15th day of each month, and if such date is not Business Day, the first subsequent Business Day. -----------------------------
The monthly period between two consecutive Debenture anniversaries is considered a month of adjustment. --------
If the NIk has not been disclosed by the Debentures' Monthly IPCA Anniversary Date, a projected index number calculated based on the last available projection

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

disclosed by ANBIMA ("Projected Index Number" and "Projection", respectively) of the percentage variation of the IPCA shall be used instead of the NIk in the calculation of Factor "C": -----------------------------------------------------------------------------------------------

$$NI_{kp} = NI_{k-1} \times (1 + \text{Projection})$$

---------------------------------------------------------------

Where: ------------------------------------------------------

NIkp = Projected IPCA Index Number for the month of adjustment, calculated to two (2) decimal places, rounded off; ----------------------------------------------------------

Projection = percentage variation projected by ANBIMA regarding the month of adjustment; ------------------------

The Projected Index Number will be used, provisionally, as long as the index number corresponding to the month of adjustment has not been disclosed, however, no compensation will be due between the Issuer and the Debenture Holders at the time of the subsequent disclosure of the IPCA that would be applicable; and -----------------

The index number of the IPCA, as well as the projections of its variation, should be used considering the identical number of decimal places disclosed by the body responsible for its calculation/verification. ------------------------

4.9.1.1. In the absence of unavailability of the IPCA for less than five (5) Business Days counted from the expected date for its calculation and/or disclosure, the last index





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

number disclosed, calculated *pro rata temporis* by Business Days, will be used instead, but no financial compensation shall be applicable at the time of disclosure of the index number due. If the IPCA is not calculated and/or disclosed for a period equal to or greater than five (5) Business Days after the expected date of its disclosure, or in the event of its extinction or by legal imposition or judicial determination, the IPCA shall be replaced by the simple average of the IPCA verified in the twelve (12) months prior to the date of ratification of the Court-supervised Reorganization Plan, calculated *pro rata temporis* per Business Days. ---------------------------------------------

4.9.2 *Inflation adjustment by TR.* As from the fifteenth (15th) year as from the Date of Issue, if the payment, by the Issuer to the Debenture Holders has occurred in the last *[(Blank)]* (*[(Blank)]*), in individual or aggregate amount, equal or superior to five hundred thousand reais (BRL 500,000.00) as Extraordinary Compulsory Amortization (as defined below) ("Modifying Extraordinary Amortization"), from the second Business Day subsequent to the next Annual Anniversary Date (as defined below) of the Debentures ("TR Modifying Date ") the Unit Par Value or the balance of the Unit Par Value, as applicable, of the Debentures will be monetarily restated by the reference rate instituted by Act No. 8,177, of March 1, 1991, as ascertained and disclosed by the Central Bank of Brazil ("TR" and "BACEN"), respectively), as of the TR Modifying Date (inclusive) to the IPCA Modifying Date (as defined





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

below) (inclusive) or the Due Date (inclusive), as the case may be ("TR Inflation adjustment"), the product of the TR Inflation adjustment being automatically incorporated into the Unit Par Value of the Debentures or, if applicable, into the balance of the Unit Par Value of the Debentures, as applicable ("TR Adjusted Unit Par Value" and, together with the IPCA Adjusted Unit Par Value, "Adjusted Par Value"), calculated on a *pro rata temporis* basis per Business Days, according to the formula below: ---------------------------------------------------

Where: ---------------------------------------------------

---------------------------------------------------------

$$VNa = VNe \times \text{TR Factor}$$

---------------------------------------------------------

VNa = TR Adjusted Unit Par Value calculated with 8 (eight) decimal places, without rounding; -------------------------

VNe = TR Unit Par Value or balance of the TR Unit Par Value (nominal value remaining after amortization of principal), as the case may be, calculated to 8 (eight) decimal places, without rounding. -------------------------

FatorTR = Productivity of the Referential Rates disclosed by the Central Bank of Brazil between the date of issue, beginning of profitability, incorporation, amortization or payment of updating, whichever occurs last, and the date of updating, calculated to eight (8) decimal places, without rounding, calculated as follows: ------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

$$\textbf{TR Factor} = \prod_{k=1}^{n}\left[\left(1+\frac{TR_k}{100}\right)^{dupk/dutk}\right]$$

--------------------------------------------------------------

Where: -------------------------------------------------------

n = Total number of TR's considered between the Date of Issue, start of profitability, capitalization, amortization or adjusted payment, whichever occurs last, and the date of adjustment; ------------------------------

TRk = Reference Rate of the Base Dates disclosed by BACEN between the Date of Issue, beginning of profitability, incorporation, amortization or adjusted payment, whichever occurs last, and the date of adjustment; ------------------

dutk = Total number of Business Days for the period of TRk used; -----------------------------------------------------

dupk = Number of Business Days between the TRk date used and the calculation date, limited to the total number of Business Days in the TRk -----------------------------------

**Remarks:** -------------------------------------------------

1st) Base Date is the day on which the Debentures mature in each month. ---------------------------------------------

2nd) If the day of the Date of Issue does not coincide with the corresponding Base Date, the update will be made until the first Base Date occurred after the Issue, based on the criterion *pro rata* Business Day, using the TR relating to the Date of Issue (Circular n° 2.456 of 07/28/1994 - art. 2). -------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

3rd) If the Debentures have undetermined maturity, the Base Date will be the first day of each month. ------------

4th) Each factor resulting from the expression $\left(1+\frac{TR_k}{100}\right)^{dup_k/dut_k}$ is considered with 8 (eight) decimal places, without rounding. For each new factor included in the production, it generates an intermediate factor that will be considered with 8 (eight) decimal places, without rounding. ----------------------------------------------------

4.9.2.1. In the absence of unavailability of the TR for a period of less than five (5) Business Days counted from the expected date for its determination and/or disclosure, the last index number disclosed, calculated *pro rata temporis* by Business Days, will be used in its place, however, no financial compensation will be applicable at the time of disclosure of the index number due. In the absence of ascertainment and/or disclosure of the index number of the CA for a term equal to or greater than five (5) Business Days after the expected date of its disclosure or, further, in the event of its extinction or by legal imposition or judicial determination, the CA shall be replaced by the simple average of the CA verified in the twelve (12) months prior to the date of ratification of the Court-supervised Reorganization Plan, calculated *pro rata temporis* by Business Days. ------------

4.9.2.2. Annually, as from the TR Modifying Date ("Verification Periods"), the Trustee shall verify if there was in that Verification Period the payment, by the Issuer to the Debenture Holders, in value, individual or





Pg 483 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 389

aggregate, equal to or greater than five hundred thousand reais (BRL 500,000.00) as Mandatory Extraordinary Amortization ("Minimum Value"). ---------------------------

4.9.2.3. To the extent that the Extraordinary Amortization Event(s) occurs in an amount equal to or greater than the Minimum Amount in the respective Verification Periods, the Adjusted Unit Par Value of the Debentures will continue to be updated monetarily by the TR until the Due Date. -------

4.9.2.4. If, at the end of a Verification Period, on a certain date of verification, by the Trustee, of the amounts paid by the Issuer to the Debenture Holders as Extraordinary Mandatory Amortization, it is verified that the Minimum Amount was not reached, the Adjusted Par Value of the Debentures shall be monetarily adjusted again by the IPCA, pursuant to Clause 4.9.1 above, as from the second Business Day subsequent to the next Annual Anniversary Date of the Debentures ("IPCA Modifying Date" and "IPCA Reversal Event", respectively). -----------------

4.9.2.5. In case of an IPCA Reversal Event, the Trustee will continue performing the checks of the Minimum Amount during the Verification Periods, it being certain that, in case the Issuer makes again payments to the Debenture Holders, as Mandatory Extraordinary Amortization, in an amount equal to or greater than the Minimum Amount in a certain Verification Period, again the Adjusted Par Value of the Debentures will be monetarily adjusted by the IPCA, as from the second Business Day subsequent to the next TR

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

Monthly Anniversary Date (as defined below) ("TR Reversal Event"). ---------------------------------------------

4.9.2.6. The procedures for verification of the Minimum Amount by the Trustee and reversal of the inflation adjustment rate of the Debentures set forth above will be carried out by the Due Date, it being understood that the Debentures may not be monetarily restated (i) by the IPCA, for a period of less than twelve (12) months, and (ii) by the TR, for a period of less than one (1) month, unless permitted by the applicable legal and accounting rules. ---

4.9.2.7. Subject to the above, upon the occurrence of the Modifying Extraordinary Amortization, an IPCA Reversal Event or a TR Reversal Event, the Trustee shall communicate such fact to B3, in writing, within one (1) Business Day from the occurrence of the respective event, and such communication shall inform (i) the nature and date of the event, (ii) the monetary index/rate of the Debentures that will become effective and (iii) the date on which such monetary index/rate will become effective on the Debentures. ---------------------------------------------

4.9.2.8. For purposes of this Indenture, (i) "Annual Anniversary Date" means each day [*(Blank*)] of [*(Blank*)] each year, and if said date is not Business Day, the first subsequent Business Day; and (ii) "TR Monthly Anniversary Date " means the last day of each month from the Modifying Date, and if said date is not Business Day, the first subsequent Business Day. ---------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**4.10. Interest Remuneration:** the Debentures shall not be entitled to receive interest remuneration. ----------------

**4.11. Amortization of the Adjusted Unit Par Value:** Except in the case of early maturity or the realization of any Mandatory Early Redemption, Mandatory Extraordinary Amortization and Optional Acquisition (as defined below), the Adjusted Unit Par Value of the Debentures shall be amortized in a single installment on the Due Date of the Debentures. ---------------------------------------------

**4.12. Place of Payment:** Payments in respect of the Debentures will be made in accordance with B3's procedures for those Debentures which are in electronic custody at B3, or, if the Debentures are not in electronic custody at B3, at the Issuer's registered office, or in accordance with the procedures adopted by the Bookkeeping Agent, as applicable. --------------------------------------------

**4.13. Extension of Deadlines:** The deadlines for the payment of any obligation set forth in this Indenture shall be considered extended until the 1st (first) subsequent Business Day, if the due date coincides with the day on which there is no bank office in the city of *[(Blank*)], State of *[(Blank)]*, except in cases where payments must be made through B3, in which case there shall only be an extension when the date of payment coincides with a national holiday, Saturday or Sunday, without any additions due to the payments. ----------------

**4.14. Moratorium charges:** Without prejudice of the other values due to the Debenture holders pursuant to this





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

Indenture, in the event of unpunctuality in the payment by Issuer and by the Guarantors of any amount due to the Debenture holders, the values in arrears due and not paid by Issuer and/or by the Guarantors, shall, regardless of notice, notification or judicial or extrajudicial interpellation, plus: (i) non-compensatory default fine of 2% (two percent); and (ii) default interest of 1% (one percent) per month calculated *pro rata temporis* since the default date until the date of effective payment, both incident on the amount due and not paid ("Default Charges"). ---------------------------------------------

**4.15. Time Barring of Rights to Accretions:** Without prejudice to the provisions in Clause 4.14 above, failure to appear by the Debenture holder to receive the amount corresponding to any of the monetary obligations of Issuer, on the dates set forth in this Indenture, or in a communication published by Issuer in the newspaper indicated in Clause 4.17 below, shall not entitle him/her to the receipt of Default Charges in the period related to the delay in the receipt; however, it shall be assured the rights acquired until the date of the respective due date or payment. ---------------------------------------------

**4.16. Scheduled repricing:** Except as provided in Clause 4.9 above, the Debentures shall not be subject to scheduled repricing. ---------------------------------------

**4.17. Advertising:** All acts and decisions to be taken as a result of this Issue which may, in any way, involve the Debenture Holders' interests, shall be mandatorily





Pg 487 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 393

communicated in the form of notices ("Notice to Debenture Holders") on the Issuer's website, as well as communications, pursuant to the notice, in the Official Gazette and in the newspaper "*[(Blank)]*", as established in article 289 of the Corporation Law, observing the legal terms, and Issuer shall inform Trustee regarding of any publication on the date of its execution. Issuer may change the above newspaper by another widely circulated newspaper that is adopted for its corporate publications, by means of written communication to Trustee and publication, in the form of notice, in the substitute newspaper. ------------------------------------------------

4.17.1. Without prejudice to the provisions of Clause 4.17 above, the Notices to Debenture Holders shall observe the limitations imposed by CVM Instruction 476 in relation to advertising of the Offering and the legal deadlines, and Issuer shall inform Trustee and B3 regarding any publication on the date of its execution. -----------------

**4.18. Tax Immunity:** If any Debenture Holder has immunity or tax exemption, it/he shall forward to the Settling Bank, at least ten (10) Business Days prior to the date set for receiving the Debentures amounts, documentation evidencing such immunity or tax exemption, under penalty of having deducted from his payments the amounts due under the tax legislation in force. -----------------------------

4.18.1. The Debenture holder that has presented documentation evidencing its condition of immunity or tax exemption, pursuant to the terms of Clause 4.18 above, and

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

that has this condition altered by normative provision, or because it no longer meets the conditions and requirements that may be prescribed in the applicable legal provision, or yet, has this condition questioned by a competent judicial, fiscal or regulatory authority, shall inform this fact, in detail and in writing, to the Settling Bank and to the Bookkeeping Agent, as well as provide any additional information in relation to the subject that is requested by the Settling Bank and/or by the Bookkeeping Agent and/or by Issuer. ------------------------------------

**CLAUSE V** ---------------------------------------------------

**OPTIONAL EARLY REDEMPTION, OPTIONAL EXTRAORDINARY AMORTIZATION, MANDATORY EARLY REDEMPTION, MANDATORY EXTRAORDINARY AMORTIZATION AND OPTIONAL ACQUISITION** -------

**5.1. Optional Early Redemption and Optional Extraordinary Amortization:** The Debentures shall not be subject to optional early redemption, in whole or in part, and/or to optional extraordinary amortization. ----------------------

**5.2. Mandatory Early Redemption:** Issuer undertakes to perform the total early mandatory redemption of the Debentures, within thirty (30) days as of the date on which it is informed by the Trustee in such regard, in the following events ("Early Mandatory Redemption"): ----------

(I) after 25 (twenty-five) years have elapsed from the Date of Issue, that is, from *[date]* (inclusive) and if Issuer has not submitted within 6 (six) months from the 24th (twenty-fourth) year from the Date of Issue, that is, until *[date]* (inclusive), a report prepared by a





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

specialized and renowned audit firm, member of one of the four largest audit firms in the world *(big four*) or a similar category at the time, demonstrating that the Companies under Reorganization have the capacity to generate cash and/or assets capable of monetization of at least BRL 50,000,000.00 (fifty million reais) until the Debentures Due Date; or ----------------------------------

(II) after 3 (three) years from the Date of Issue, i.e. from and including *[date*] ("Start Date"), if Cash for Distribution is verified (as defined below) on a given Amortization Date (as defined below), in an amount sufficient to redeem all the Debentures. ------------------

5.2.1. On the occasion of the Mandatory Early Redemption, the Debenture holder shall be entitled to receive the Adjusted Unit Par Value, plus any late charges due by Issuer, the payment of any additional premium not being due. -----------------------------------------------------

5.2.2. The Mandatory Early Redemption shall be made (a) by sending an individual communication to the Debenture holders, with copy to Trustee, or publication of Notice to the Debenture holders, pursuant to Clause 4.17 above, ten (10) days in advance of the date in which the effective early redemption is intended to be made, and in such communication it shall be stated: (i) the date the Mandatory Early Redemption was made; (ii) mention of the approximate value of the Mandatory Early Redemption; and (iii) other information necessary to the operation of the Mandatory Early Redemption. -------------------------------





Pg 490 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 396

5.2.3. With respect to the Debentures that are held in custody electronically in B3, the Mandatory Early Redemption shall follow the procedures for settlement of events adopted by B3. If the Debentures are not held in custody electronically in B3, the Mandatory Early Redemption shall be made by the Bookkeeping Agent. --------

5.2.4. Issuer must inform B3 of the date of the Mandatory Early Redemption at least three (3) Business Days in advance. ------------------------------------------------------

5.2.5. The Debentures which are the purpose of the Mandatory Early Redemption shall be mandatorily cancelled.

5.2.6. The date for redemption of the Debentures that were the purpose of the Mandatory Early Redemption shall, mandatorily, be a Business Day. ---------------------------

**5.3. Mandatory Extraordinary Amortization:** Issuer shall, on each Amortization Date, as defined in Clause 5.3.1.3 below, as of the Commencement Date, with resources from the Cash for Distribution, observing the terms and conditions set forth below, regardless of its will, carry out the mandatory extraordinary amortization of the Debentures, equally, simultaneously and proportionally among all Debenture Holders, limited to ninety-eight percent (98%) of the Adjusted Updated Unit Par Value of the Debentures or balance of the Adjusted Unit Par Value of the Debentures, as applicable ("Mandatory Extraordinary Amortization"), observing the terms and conditions set forth below. -------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

5.3.1. For purposes of calculating the Extraordinary Mandatory Amortization obligation, "Cash for Distribution" means the sum of all amounts, immediate liquidity funds and free financial investments held in cash by each of the Companies Under Reorganization, including by virtue of the sale of assets, receipt of dividends, interest on shareholders' equity, reduction of capital or any other form of shareholder remuneration, due to corporate interests held by the Companies under Reorganization, pursuant to the terms of the Court-supervised Reorganization Plan, or by any other source of funds, exceeding the amount of BRL 300,000,000.00 (three hundred million reais), an amount which shall be adjusted by the IPCA in each fiscal year, and deducted from this amount, in the calculations of the Cash for Distribution that occurs in the last two months of each fiscal year (i.e., in the calculations made by the Monitoring Agent in the months of August, October and December, pursuant to Clause 5.3.2 below), the amounts resulting from financial turnover by the Companies under Reorganization, including, but not limited to, the contribution of funds and the contracting of loans for the benefit of any ODB Companies under Reorganization that have not adhered to the Substantial Consolidation of the Companies under Reorganization, which shall be used exclusively for (a) compliance with the obligations contracted in the respective plans of court-supervised reorganization of the ODB Companies under Reorganization that have not adhered





Pg 492 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 398

to the Substantial Consolidation of the Companies under Reorganization and the payment of general and administrative expenses, such as obligations and expenses for maintenance of activities, expenses with suppliers and advisers and tax expenses, provided that such transactions do not exceed the aggregate amount of BRL 80,000,000.00 (eighty million reais) and observe the allocation described in Annex III to this Indenture, as verified by the Monitoring Agent; or (b) the payments set forth in Clause 5.3.1.2. below, only in their relevant terms. ------

5.3.1.1. There are not included in the Cash for Distribution concept: --------------------------------------

(i) Funds for Payment of Ordinary Expenses (as defined below) (i.a) received up to December 31, 2022 that have not been used and are available on the respective Amortization Date, or (i.b) the release of which has been contracted, but which have not yet been made available to the Companies under Reorganization up to the respective Amortization Date; ----------------------------------------

(ii) if applicable, until the Commencement Date or a longer period, as approved by the Debenture holders in a general meeting, the sale, tax and fiscal expenses arising from the sale of assets of the Companies under Reorganization materialized up to the ascertainment date, as well as those not materialized that can be estimated due to the obligations contracted to the ascertainment date, which exceed the net funds received or to be

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 493 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 399

received by the Companies under Reorganization arising from said sale of assets; and -----------------------------

(iii) as applicable and always in accordance with the terms set forth in the Court-supervised Reorganization Plan, (i) the amounts due under the Court-supervised Reorganization Plan to holders of Credits Eligible for Payment Instruments (as defined in the Court-supervised Reorganization Plan) who did not subscribe to the Debentures subject of the Issue, (ii) the payments due to holders of Option B Unsecured Non-Financial Credits (as defined in the Court-supervised Reorganization Plan), under the terms of Clause 3.3.2.1.2 of the Court-supervised Reorganization Plan, up to the aggregate limit of BRL 150,000,000.00 (one hundred and fifty million reais) or up to December 31, 2025, whichever occurs first, and (iii) the amounts due to the Companies under Reorganization, in accordance with the rule for use of Cash for Distribution set forth in Clause 1.1.119, item (ii) of the Court-supervised Reorganization Plan. ---------

5.3.1.2. For avoidance of doubt, all funds related to the events described in item (ii) of Clause 5.3.1.1 above, including the net funds from said disposal of assets to be received by the Companies under Reorganization, shall be reserved until the materialization of the obligations described therein or until the end of the period of 18 (eighteen) months counted from the Commencement Date, whichever occurs first, not being part of the Cash for Distribution for purposes of Clause 5.3.1. If such

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 494 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 400

obligations do not materialize, the full amounts retained by the Companies under Reorganization shall be used for the Mandatory Extraordinary Amortization of the Debentures and the Mandatory Extraordinary Amortization of the instruments entered into by the holders of Eligible Credits for Subscription of Payment Instruments, pursuant to the terms set forth in this Indenture and in the Court-supervised Reorganization Plan. ---------------------------

5.3.1.3. For purposes of this Indenture, "Amortization Dates": shall be the dates on which the Extraordinary Mandatory Amortization of the Debentures shall occur, which should always occur until the last Business Day of January, March, May, July, September and November. --------

5.3.1.4. For purposes of this Indenture, “Funds for Payment of Ordinary Expenses": means any and all amounts received by the Companies under Reorganization resulting from any fiduciary guarantees and made available to the Companies under Reorganization and ODB Companies under Reorganization that have not adhered to the Substantial Consolidation of the Companies under Reorganization by the respective creditors, as provided for in the Court-supervised Reorganization Plan, limited to the global amount of BRL 1,000,000.00 (one billion reais), which shall be applied, as a priority, in the ordinary maintenance of the Companies under Reorganization' activities, in the payment of general and administrative expenses and in the compliance with the payment obligations of labor credits, Unsecured Financial

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

CreditorsUnsecured Non-Financial Creditors - Cash and ME/EPP credits, as provided in the Court-supervised Reorganization Plan. ---------------------------------------

5.3.2. Ascertainment of the Cash for Distribution shall be performed by the Monitoring Agent, from the Start Date, always on the day *[(Blank)]* of February, April, June, August, October and December (each of these dates an "Ascertainment Date"), based on a monthly management report of closing of accounts, contemplating the consolidated cash balance of the Companies under Reorganization, to be sent by Issuer to the Monitoring Agent at the end of each month ("Management Report", respectively) or in a shorter period, whenever requested by the Monitoring Agent, by sending a communication to the Companies under Reorganization, which shall be answered with the requested information within 10 (ten) Business Days as from the receipt by the Companies under Reorganization of said communication. The Monitoring Agent shall inform to Trustee, within [ten (10) Business Days] counted from the Ascertainment Date, the Cash for Distribution which will be allocated to the Mandatory Extraordinary Amortization of the Debentures, if any. In turn, Trustee shall, within [5 (five)] Business Days from the date it is communicated by the Monitoring Agent, verify the information provided to it and apply the provisions of Clause 5.3.3 below. -------------------------

5.3.3. If the existence of Cash for Distribution is ascertained, Issuer shall carry out the Mandatory





Pg 496 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 402

Extraordinary Amortization of the Debentures on the next Amortization Date immediately after the Ascertainment Date on which the Cash for Distribution was verified. ----------

5.3.4. If the existence of Cash for Distribution is ascertained, Issuer shall send, on the Business Day subsequent to the respective Ascertainment Date, written notification to the Debenture holders, with copy to the Trustee, B3 and the Settling Bank, communicating the performance of the Mandatory Extraordinary Amortization ("Mandatory Extraordinary Amortization Communication"). ---

5.3.5. The Communication of Mandatory Extraordinary Amortization shall contain: (i) the Amortization Date and the procedure of Mandatory Extraordinary Amortization, pursuant to the relevant legislation, as well as the terms, conditions and deadlines established in this Indenture; (ii) the percentage of the Adjusted Par Value to be amortized by Debenture; and (iii) the other information considered relevant by Issuer for the Debenture Holders' knowledge regarding the Mandatory Extraordinary Amortization. -------------------------------

5.3.6. On the occasion of the Extraordinary Mandatory Amortization, the Debenture holders shall be entitled to the payment of the percentage of the Adjusted Unit Par Value to be amortized, plus any Default Charges due by Issuer. ---------------------------------------------------

5.3.7. Issuer shall inform B3 of the date of the Mandatory Extraordinary Amortization at least three (3) Business Days in advance. -------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 497 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 403

5.3.8. The date for the Mandatory Extraordinary Amortization of the Debentures must be a Business Day. ----

**5.4. Early Redemption Offering:** The Issuer may not make an early redemption offering. --------------------------------

**5.5. Optional Acquisition:** Issuer may, at any time, acquire Debentures provided it complies with the provisions of article 55, paragraph 3, of the Corporation Law, articles 13 and 15 of CVM Instruction 476 and the applicable CVM regulations, and such fact, if so required by the applicable legal and regulatory provisions, shall be included in the management report and financial statements of Issuer. The Debentures acquired by the Issuer may, at the discretion of Issuer, be cancelled, remain in treasury or be placed again in the market. The Debentures acquired by Issuer to remain in treasury under the terms of this Clause 5.5, if and when returned to the market, shall be entitled to the same Remuneration applicable to the other Debentures. -----------------------

**5.6. Monitoring Agent:** In compliance with the provisions of the Court-supervised Reorganization Plan, the consolidated financial performance of the Companies under Reorganization shall be monitored by *[(Blank)]*, as the person responsible for monitoring the activities of the Companies under Reorganization ("Monitoring Agent"), in accordance with the terms and conditions set forth in the instrument of engagement of the Monitoring Agent to be entered into between the Companies under Reorganization

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL

MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

and the Monitoring Agent, in compliance with the provisions of Clause 5.3.2 above. -------------------------

5.6.1. These are obligations of the Monitoring Agent, without prejudice to others that may be contractually established: ------------------------------------------------

(i) disclose the information necessary to make up the amount of Cash for Distribution that will be allocated to the Mandatory Extraordinary Amortization of the Debentures; -------------------------------------------------

(ii) verify and ratify the Available Cash (as defined in the Court-supervised Reorganization Plan) the Cash for Distribution and the rules of use of the Cash for Distribution provided for in the Court-supervised Reorganization Plan, based on the Management Report and other documents deemed necessary by the Monitoring Agent to be provided by the Companies under Reorganization, such as bank statements; ---------------------------------------

(iii) monitor the payments and amortizations set forth in this Indenture; -----------------------------------------------

(iv) monitor the materialization of credits eligible for subscription of Debentures after the Debentures Date of Issue; and -------------------------------------------------

(v) disclose monthly reports consolidating the information regarding the attributions set forth in the previous items. ---------------------------------------------------

**CLAUSE VI** -----------------------------------------------

**EARLY MATURITY** ------------------------------------------





Pg 499 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 405

6.1. Subject to the provisions of Clauses 6.2 and 6.3 below, Trustee may consider in advance all obligations set forth in this Indenture and demand immediate payment, by Issuer and the Guarantors, as the case may be, of the Adjusted Unit Par Value, up to the date of effective payment, without prejudice to the payment of the Default Charges, when applicable, and any other values eventually due by Issuer pursuant to the terms of this Indenture, regardless of notice, interpellation or notification, judicial or extrajudicial, when aware of the occurrence of the following events (each, a "Default Event"): -----------

(i) default, by Issuer and/or the Guarantors, of any monetary obligation related to the Debentures and/or contemplated in this Indenture, not remedied within 3 (three) Business Days counted from the respective payment date contemplated in this Indenture; ----------------------

(ii) default, by Issuer, of any non-monetary obligation set forth in this Indenture and/or in the Court-supervised Reorganization Plan, it being certain that (a) such default shall be subject to the applicable remediation term as set forth in this Indenture, or in the legislation or regulation in force; (b) if there is no specific remediation term in this Indenture, such default shall be subject to a remediation term of up to thirty (30) Business Days as of the date on which it is notified of such default; ---------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

(iii) declaration of invalidity, nullity or unenforceability of this Indenture by judicial decision





REPÚBLICA FEDERATIVA DO BRASIL

*Paulo Fernando Santos de Lacerda*

**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**

MAT. JUCERJA Nº 243 - CPF 297.096.447-34

Inglês - Francês - Espanhol - Português

**SWORN PUBLIC TRANSLATOR**

English - French - Spanish – Portuguese

rendered in second instance, except in the case suspensive effect for said decision is obtained, observing that all possible appeals that would have been addressed to the Debenture holders during the occurrence of this Event of Default but that have not been obtained by virtue of this Event of Default shall remain withheld until the effective remediation of this Event of Default for later distribution to the Debenture holders; --------------------

(iv) assignment, promise of assignment or any form of transfer or promise of transfer to third parties, in whole or in part, by Issuer, of any of its obligations pursuant to the terms of this Indenture, without the prior consent of the Debenture holders; --------------------------------

(v) (a) liquidation, dissolution or winding up of Issuer; (b) decree of bankruptcy of Issuer by a final unappealable court decision; or (c) petition for self-bankruptcy made by Issuer, regardless of the petition being granted; ------

(vi) transformation of the corporate type of Issuer from a joint stock company to a limited liability company, pursuant to articles 220 to 222 of the Corporation Law; ---

(vii) alteration of the corporate purpose of Issuer, as provided in its bylaws in force on the Date of Issue, except if (a) previously authorized by Debenture holders; or ----------------------------------------------------

(b) not result in substantial alteration of Issuer's activities; ------------------------------------------------

(viii) acquisition, merger or spin-off of Issuer without the previous consent of the Debenture holders, except for





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

the corporate reorganizations involving Issuer necessary for compliance with the determinations contained in the Court-supervised Reorganization Plan; ---------------------

(ix) evidence, attested in a court decision without suspensive effect, that any of the statements made by Issuer in this Indenture is false, provided that such falsehood causes a Material Adverse Effect (as defined below); -----------------------------------------------------

(x) without prejudice to the provisions of item (ix) immediately preceding, evidence, attested in a judicial decision without suspensive effect, that any declaration made by Issuer in this Indenture concerning matters of the practice of corruption is false; --------------------------

(xi) issuance of a judicial convicting sentence without suspensive effect, due to the practice, by Issuer, of acts entailing the use of child labor, labor analogous to slavery and/or criminal profit from prostitution; ---------

(xii) default on any monetary obligation contained in any Payment Instruments (as defined in the Court-supervised Reorganization Plan), subject to the respective remediation periods provided in such instruments; or ------

(xiii) decree of early maturity of any Payment Instruments. -------------------------------------------

6.2. Issuer may, at any time during the term of the Debentures, call a General Meeting of Debenture holders for discussion and resolution of a previous *waiver* for the occurrence of any Event of Default, it being certain that such previous *waiver* shall only be granted in case of





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

approval of Debenture holders holding at least fifty percent (50%) plus one (1) of the Debentures in Circulation, on first call, or simple majority of those present in the General Meeting of Debenture holders, on second call. ---------------------------------------------

6.3. Upon the occurrence of the Events of Default set forth in Clause 6.1 above, Trustee shall call, within a maximum period of two (2) Business Days counted from the date in which it is aware of its occurrence, a General Meeting of Debenture holders, to be held in accordance with the terms established in Clause 9 below. -------------

6.3.1. Issuer undertakes to notify Trustee within two (2) Business Days of the date it becomes aware of the occurrence of any Default Event described in clause 6.1 above. ------------------------------------------------

6.4. If, in the General Meeting of Debenture holders mentioned in Clause 6.3 above, Debenture holders representing at least fifty percent (50%) plus one (1) of the Debentures in Circulation, on first call, or simple majority of those present in the General Meeting of Debenture holders, on second call, decide for not considering the early maturity of the obligations arising from the Debentures, Trustee shall not declare early maturity of the obligations arising from the Debentures. In case a meeting is not convened, on second call, of said General Meeting of Debenture holders, Trustee shall, immediately, declare the early maturity of the obligations arising from the Debentures. ------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

6.5. Upon the occurrence of the early maturity of the obligations arising from the Debentures, Issuer undertakes to pay the Adjusted Unit Par Value, without prejudice to the payment of Default Charges, when applicable, and any other values eventually due by Issuer under the terms of this Indenture, within three (3) Business Days as of the date of receipt of the communication sent by Trustee on early maturity, under penalty of payment of Default Charges. ----------------------------------------------------

6.6. Once the Debentures mature early, Trustee shall send notice to Issuer and B3 immediately after the early maturity of the Debentures. ------------------------------

**CLAUSE VII** ----------------------------------------------

**ADDITIONAL OBLIGATIONS OF ISSUER** --------------------------

7.1. Without prejudice to the other obligations set forth in this Indenture and in the applicable laws and regulations, while the outstanding balance of the Debentures is not fully paid, Issuer further undertakes to

(i) provide to Trustee: -----------------------------------

(i.1) as well as make available on its respective website (www. *[(Blank)]*), on the date on which the first occurs between the course of ninety (90) days counted from the end date of each fiscal year or the effective date of disclosure, a copy of Issuer's consolidated financial statements audited by an independent auditor registered with CVM, related to the respective fiscal year, prepared in accordance with the accounting principles determined by





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

the legislation and regulations in force ("Audited Consolidated Financial Statements"); ----------------------

(i.2) annual statement signed by the officers of Issuer, pursuant to its bylaws, attesting: (1) that the provisions contained in the Indenture remain valid, (2) the non-occurrence of any Event of Default and non-existence of non-compliance with Issuer's obligations to the Debenture Holders; (3) that no acts in disagreement with its bylaws were performed and (4) on compliance with all obligations of the Court-supervised Reorganization Plan; --------------

(i.3) the Notices to the Debenture holders within 5 (five) Business Days counted from the date they are published; ---

(i.4) within 5 (five) Business Days after awareness thereof, (1) information regarding the occurrence of any Event of Default; or (2) the sending of a copy of any correspondence or notification, judicial or extrajudicial, received by Issuer, related to an Event of Default; or (3) information regarding the occurrence of any event or situation that may cause (3.1) any relevant adverse effect on the situation (financial or otherwise), business, assets, operating results and/or prospects of Issuer (including resulting from negative impacts of a reputational or image nature); and/or (3.2) any adverse effect on the Issuer’s capacity to comply with any of its obligations under this Indenture and/or on the financial situation, business, assets and operating results of Issuer ("Material Adverse Effect"); -----------------------





Pg 505 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 411

(i.5) within 5 (five) Business Days from the date of receipt of the respective request, in response to any queries from Trustee about any information that may reasonably be requested; ----------------------------------

(i.6) original counterpart of this Indenture and any amendments, duly filed with the Trade Register and registered in the RTDs, within 5 (five) days from the date of the respective registration, pursuant to Clause 2.4.1 above; and ----------------------------------------------

(i.7) original counterpart filed with the Trade Register of the corporate acts and meetings of the Debenture holders with respect to the Issuance of the Debentures, within five (5) days counted from the date of the respective registration; ----------------------------------

(ii) maintain valid and regular the licenses, concessions and/or approvals necessary for its regular operation, as applicable, in the form and within the period required by the applicable law and regulations, except those whose loss, revocation or cancellation does not result in a Material Adverse Effect; ----------------------------------

(iii) comply, in all material respects, with the laws, rules, regulations, administrative rules and determinations of governmental bodies, government agencies or courts, applicable to the conduct of its business, in any jurisdiction in which it does business or has assets, except for those laws, rules, regulations, administrative rules and determinations of governmental bodies, government agencies or courts or tribunals that are being

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

questioned in good faith by Issuer or whose noncompliance does not cause a Material Adverse Effect; -----------------

(iv) hire and maintain, at its own expense, the service providers inherent to the obligations set forth in this Indenture, including Trustee, the Grantee Bank, the Bookkeeping Agent and the Debentures trading system in the secondary market; ------------------------------------------

(v) call, under the terms of Clause 9.1 below, General Meetings of Debenture holders to resolve on any of the matters that directly or indirectly relate to this Issue, in case Trustee should do it, under the terms of this Indenture, but does not do it; ----------------------------

(vi) without prejudice to the other obligations set forth above or other obligations expressly provided for in the regulations in force and in this Indenture, pursuant to article 17 of CVM Instruction 476, which are: (a) to prepare closing financial statements of the fiscal year and, if applicable, consolidated statements, in accordance with the Brazilian Corporation Law and CVM regulations; (b) submit the financial statements to audit, by an auditor registered with CVM; (c) disclose, by the day before the beginning of trading, the financial statements, accompanied by explanatory notes and the report of the independent auditors, relating to the last three (3) fiscal years closed, except when Issuer does not have them because it had not started its activities before said period; (d) disclose the subsequent financial statements, accompanied by explanatory notes and report of the





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

independent auditors, within three (3) months counted from closing of the fiscal year; (e) comply with the provisions of CVM Instruction No. 358, of January 03, 2002, as amended ("CVM Instruction 358"), with regard to the duty of nondisclosure and prohibitions to negotiation; (f) disclose the occurrence of material fact, as defined by article 2 of CVM Instruction 358; (g) provide the information requested by CVM; and (h) disclose on its web page the annual report and other communications sent by the long term Trustee and by the Trustee on the same date of its receipt, also observing the provisions in item (d) above; --------------------------------------------------------

(vii) not perform any acts in disagreement with its Bylaws and with this Indenture, especially those that may, directly or indirectly, compromise punctual and full compliance with the obligations assumed by Issuer before the communion of Debenture Holders; -----------------------

(viii) keep the Debentures registered for trading in the secondary market during the term of the Debentures, bearing the costs of such registration; -------------------

(ix) comply with all determinations issued by CVM and B3, with the sending of documents, also providing the information requested by CVM and/or B3; -------------------

(x) comply with the obligations assumed under the Court-supervised Reorganization Plan; ----------------------------

(xi) comply with all obligations set forth in this Indenture, including, without limitation, the obligation





Pg 508 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 414

to effect the Mandatory Redemption of the Debentures, pursuant to Clause 5.2 above; ----------------------------

(xii) maintain at all times valid, effective, in perfect order and in full force, all the authorizations necessary for the signing of this Indenture and for the fulfillment of all obligations provided herein; ----------------------

(xiii) hire and maintain the Monitoring Agent during the term of this Indenture, who shall perform his functions in accordance with the scope defined in the instrument that provides for his hiring, observing the provisions of the Court-supervised Reorganization Plan and this Indenture; and --------------------------------------------------

(xiv) in the event of resignation and/or removal of the Monitoring Agent for any reason, hire a new service provider to perform the functions assigned to the Monitoring Agent, within a maximum period of 30 (thirty) days from the date of resignation and/or removal of the Monitoring Agent. ----------------------------------------

**CLAUSE VIII** -------------------------------------------

**TRUSTEE** ---------------------------------------------

**8.1. Appointment** ---------------------------------------

8.1.1. Issuer constitutes and appoints **[*Trustee*]**, identified in the preamble of this Indenture, as Trustee, representing the Debenture holders, which herein and in due accordance with the law, accepts the appointment to, in due accordance with the law and pursuant to this Indenture, represent before the Issuer the communion of the Debenture holders. ------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

**8.2. Representation** ----------------------------------------

8.2.1. Trustee herein represents under penalty of the law:

(i) not to have any legal impediment, pursuant to article 66, paragraph 3 of the Corporation Law, and article 6 of CVM Instruction No. 583 of December 20, 2016 ("CVM Instruction 583"), to perform function conferred upon it; -

(ii) to accept the function conferred upon it, assuming in full the duties and attributions set forth in the specific legislation and in this Indenture; ------------------------

(iii) to know and accept in full this Indenture, all its clauses and conditions; -----------------------------------

(iv) not to have any connection with Issuer that would prevent it from performing its duties; --------------------

(v) to be aware of the applicable regulations issued by the Central Bank of Brazil and CVM, including the Central Bank of Brazil Circular No. 1,832 of October 31, 1990; ----

(vi) to be duly authorized to enter into this Indenture and to comply with its obligations set forth herein, having satisfied all legal and corporate requirements necessary for such purpose; -------------------------------

(vii) that it is not in any of the situations of conflict of interest provided in article 6 of CVM Instruction 583; -

(viii) to be duly qualified to perform the activities of Trustee, in accordance with the applicable regulations in force; -------------------------------------------------

(ix) that it is a financial institution, duly organized and existing according to Brazilian laws; -----------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(x) that this Indenture constitutes a valid, binding and effective legal obligation of Trustee, enforceable in accordance with its terms and conditions; -----------------

(xi) that the execution of this Indenture and the fulfillment of its obligations provided herein do not infringe any obligation previously assumed by Trustee; ----

(xii) that [it is acting, on this date, as trustee in other issues of debentures of the Issuer] {OU} [that it is acting, on the date of execution of this Indenture, as trustee in the following issues of securities of the Issuer and affiliated, controlled, controlling companies or members of its economic group: *[(Blank)]*; --------------

(xiii) that it assures now and in the future, pursuant to Paragraph 1 of article 6 of CVM Instruction 583, fair treatment to all Debenture holders, observing the guarantees, obligations and specific rights attributed to the respective Debenture holders of each issue or series; -

(xiv) that the person who represents it in executing this Indenture has sufficient powers to do so; and -------------

(xv) that it has verified the consistency of the other information contained in this Indenture, by means of the information and documents provided by Issuer, it being certain that Trustee did not perform any type of independent or additional verification. -------------------

8.2.2. The Trustee shall perform its duties from the date of execution of this Indenture or any amendment related to its replacement, and shall remain in the exercise of its duties until the Due Date or, in case there are still





Pg 511 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 417

obligations of Issuer under the terms of this Indenture defaulted on after the Due Date, until all obligations of Issuer under the terms of this Indenture are fully complied with, or, yet, until its effective replacement, pursuant to Clause 8.3 below. ----------------------------

8.2.3. Trustee shall not issue any opinion or make any judgment about guidance on any fact of the Issue that is the competence of definition by the Debenture holders, undertaking to act in accordance with the instructions transmitted by the Debenture holders. To this effect, Trustee has no responsibility over the result or over the legal effects resulting from strict compliance with the guidelines of the Debenture holders transmitted to it as defined pursuant to this Indenture and reproduced to the Issuer, regardless of any damage that may be caused as a result of this to the Debenture holders and/or to Issuer. Trustee's performance is limited to the scope of CVM Instruction 583 and the applicable articles of Brazilian Corporate Law, being exempt, on any account or under any pretext, from any additional liability that has not resulted from the applicable legislation. -----------------

8.2.4. Without prejudice to the duty of diligence of Trustee, he shall assume that the original documents or certified copies of documents forwarded by Issuer or by third parties at its request have not been subject to fraud or adulteration. It will not yet, under any circumstances, be responsible for the preparation of corporate documents of Issuer, which shall remain under

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

the legal and regulatory obligation of the Issuer to prepare, according to the applicable legislation. ---------

8.2.5. The acts or pronouncements by Trustee, which create liability for the Debenture holders and/or release third parties from obligations to them, as well as those related to due compliance with the obligations assumed herein shall only be valid when previously resolved at a General Meeting of Debenture holders (as defined below). ----------

**8.3. Substitution** ----------------------------------------

8.3.1. In case of temporary impediments, resignation, intervention, judicial or extrajudicial liquidation, bankruptcy, or any other case of vacancy of Trustee, it shall be performed, within thirty (30) days counted from the event to be determined, General Meeting of Debenture holders (as defined below) for the choice of the new Trustee, which may be called by Trustee to be substituted, by Issuer or by the Debenture holders representing at least ten percent (10%) of the Outstanding Debentures. In exceptional cases, CVM may convene a meeting to choose a new trustee or appoint a provisional substitute. If the call does not occur within fifteen (15) days before the end of the aforementioned term, it shall be incumbent upon Issuer to effect it, observing the term of fifteen (15) days for first call and eight (8) days for second call, it being certain that CVM may appoint a provisional substitute until the process of choosing the new trustee is consummated. -------------------------------------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

8.3.2. If Trustee cannot continue to perform its functions due to circumstances supervening this Indenture, including in the case of item (iv) of Clause 8.4.1 below, Trustee shall immediately communicate the fact to the Debenture holders and to Issuer, by means of a General Meeting of Debenture holders call, requesting its substitution. ------

8.3.3. It is allowed to the Debenture holders, at any time after the closing of the public distribution, to substitute Trustee and appoint its/his substitute, in market conditions, chosen by Issuer from the triple list presented by the General Meeting of Debenture holders specially called for this purpose. Permanent substitution of the Trustee shall be communicated to CVM within seven (7) Business Days counted from the registration of the amendment to the Indenture in the Trade Register, which shall occur within thirty (30) days from its execution. ---

8.3.4. Trustee shall start to perform its functions from the date of execution of this Indenture or any addition concerning its substitution, in the case of a substitute Trustee, and shall remain in the exercise of its functions until the effective replacement or until the fulfillment of all its obligations arising from this Indenture and from the legislation in force. ----------------------------

8.3.5. Trustee, if substituted pursuant to this Clause 8.3, at no additional cost to Issuer or the Debenture holders, shall place at the disposal of the institution that may replace it, within ten (10) Business Days before its effective replacement, a copy of all records, reports,





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

statements, databases and other information about the Issue and about the Issuer that have been obtained, generated, prepared or developed by Trustee or by any of its agents involved, directly or indirectly, with the Issue or that any of the aforementioned persons have had access to by virtue of the execution of their functions, regardless of the means in which they are stored or available, so that the substituted institution fulfills, without any continuity solution, the duties and obligations of the substituted Trustee, pursuant to this Indenture. -----------------------------------------------

8.3.6. In case of effective substitution of Trustee, such substitute shall receive the same remuneration received by the Trustee in all its terms and conditions, and the first annual installment due to the substitute shall be calculated *pro rata temporis*, as of the date of commencement of the exercise of its function as Trustee. This remuneration may be altered by common agreement between Issuer and the substitute trustee, provided that previously approved by the General Meeting of Debenture holders (as defined below). ------------------------------

8.3.7. In any event, the replacement of Trustee shall be communicated to CVM within seven (7) Business Days from registration of the amendment to this Indenture, pursuant to Clause 8.3.3 above, and the documents and other information required in the caput and paragraph 1 of article 5 of CVM Instruction 583 of December 20, 2016, as





Pg 515 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 421

amended ("CVM Instruction 583") to B3 within the same term. -----------------------------------------------------

8.3.8. The standards and precepts issued by CVM in this respect shall apply to the cases of substitution of the Trustee. --------------------------------------------------

**8.4. Obligations** ------------------------------------------

8.4.1. In addition to others provided for by law, in CVM's normative act and in this Indenture, the following constitute obligations of Trustee: ------------------------

(i) to carry out its activities with good faith, with transparency and loyalty to the Debenture Holders; --------

(ii) to be fully responsible for the contracted services, in accordance with the current legislation; ---------------

(iii) to protect the rights and interests of the Debenture holders, employing in the exercise of the function the care and diligence with which every active and probe man uses in the administration of its own assets; -------------

(iv) to resign from the function, in case of supervening conflicts of interest or any other type of inaptitude and carry out the immediate summoning of the General Meeting of Debenture holders contemplated in article 7 of CVM Instruction 583 to resolve on its replacement; ------------

(v) to keep in safe custody all documentation relating to the performance of his duties; ----------------------------

(vi) to verify, at the time of accepting the function, the truthfulness of the information relating to any guarantees and the consistency of the other information contained in

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR PÚBLICO E INTÉRPRETE COMERCIAL





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

this Indenture, taking care to remedy any omissions, failures or defects of which it is aware; -----------------

(vii) to endeavor with Issuer to have the Indenture and its amendments registered with the competent bodies, adopting, in case of the Issuer's omission, the measures eventually provided by law; -------------------------------

(viii) diligence with issuer so that the Indenture and its amendments are registered with the competent bodies, adopting, in case of omission by Issuer, the measures eventually contemplated by law; ---------------------------

(ix) to follow up on the periodic information provided by Issuer and warn the Debenture holders, in the annual report mentioned in article 15 of CVM Instruction 583, about inconsistencies or omissions of which it is aware; --

(x) to issue an opinion on the sufficiency of the information provided in the proposals to modify the terms of the Debentures; ---------------------------------------

(xi) to request, when deemed necessary for faithful performance of its functions or if so requested by the Debenture holders, up-to-date certificates of the civil distributors, of the Public Finance Courts, Protest Courts, Labor Courts, Public Finance Attorney's Office, of the place where the asset given in guarantee is located or the domicile or registered office of Issuer; --------------

(xii) to call, when necessary, the General Meeting of Debenture holders, pursuant to Clause 9.1.2 below; --------

(xiii) to attend the General Meeting of Debenture holders in order to provide the information requested; ------------





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(xiv) to prepare the annual report intended for the Debenture holders, pursuant to article 15 of CVM Instruction 583 about the observance of the periodicity in the provision of mandatory information, warning the Debenture holders about eventual inconsistencies, omissions or untruths, which shall contain, at least, the information described in Attachment 15 of CVM Instruction 583. For such, Issuer shall send the organization chart, the corporate acts and all the necessary documents for the report to be requested by Trustee, which shall be duly forwarded by Issuer within thirty (30) days before the end of the term for the report availability, as well as Issuer's Audited Consolidated Financial Statements, which shall be duly forwarded by Issuer within three (3) months from the end of the fiscal year. Said organization chart of Issuer's corporate group shall contain, including its controllers, subsidiaries, joint ventures, affiliates and members of a control block, as applicable, at the end of each fiscal year; -----------------------------------------

(xv) to keep an up-to-date list of the Debenture holders and their addresses, whereas Issuer and the Debenture holders (the latter as from the respective date of subscription, payment in full or acquisition of the Debentures) herein authorize the Settling Bank, the Bookkeeping Agent and ---------------------------------------
B3 to comply with the requests of Trustee that are necessary to comply with this paragraph; ------------------





Pg 518 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 424

(xvi) to inspect compliance with the provisions of this Indenture, including the affirmative and negative covenants, through documents and information provided by Issuer; ---------------------------------------------------

(xvii) to monitor the occurrence of the Events of Default, as may be informed by Issuer, and act as established in this Indenture; ------------------------------------------

(xviii) to disclose on its web page, within four (4) months after the end of Issuer's fiscal year, an annual report describing the material facts occurred during the fiscal year related to the Debentures, according to the minimum content established in Attachment 15 of CVM Instruction 583; ------------------------------------------

(xix) within the same period as item (xviii) above, the annual report shall be sent by Trustee to Issuer, for disclosure as provided in the specific regulation; --------

(xx) the annual report dealing with item (xix) above shall be kept available for public consultation on the website of Trustee on the World Wide Web at http://www. *[(Blank)]*, for a period of 3 (three) years; --------------------------

(xxi) to monitor redemption of the Debentures in the cases provided in this Indenture; ------------------------------

(xxii) to follow up on the unit price of the Debentures calculated by Issuer, making it available to the Debenture Holders and to Issuer on its *website*; ---------------------

(xxiii) to communicate to the Debenture holders any default, by Issuer, of financial obligations assumed in the Indenture, including the contractual clauses intended

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

to protect the interests of the Debenture holders and that establish conditions that should not be disregarded by Issuer, indicating the consequences for the Debenture holders and the measures that it intends to take with regard to the matter, observing the term set forth in article 16, II, of CVM Instruction 583; -------------------

(xxiv) to adopt the judicial or extrajudicial measures necessary to defend the Debenture Holders' interests; -----

(xxv) to keep available on its web page in the World Wide Web an up-to-date list of the issues in which it acts as trustee; ---------------------------------------------------

(xxvi) to ensure, pursuant to Paragraph 1 of Article 6 of CVM Instruction 583, fair treatment to the Debenture holders and to all the holders of securities issued by Issuer or of affiliated, controlled, controlling or companies which are members of the same group as Issuer, subject to the guarantees, obligations and specific rights attributed to the relevant holders of securities; ---------

(xxvii) to disclose in its web page the eventual information set forth in article 16 of CVM Instruction 583. Such information shall be kept available for public consultation on its web page on the World Wide Web for a minimum period of three (3) years; and --------------------

(xxviii) to maintain, for at least 5 (five) years, or for a longer period by express determination by CVM, all documents and information required by CVM Instruction 583, and such documents may be kept in physical or electronic





Pg 520 of 541

**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

p. 426

media; substitution of documents by the respective scanned images is admitted. ----------------------------------------

8.4.2. In case of default on any conditions of the Issue, Trustee shall use any and all measures provided in law or in the Indenture to protect the rights or defend the interests of the Debenture holders. -----------------------

8.4.3. Without prejudice to the duty of care of Trustee, Trustee shall assume that the original documents or certified copies of documents forwarded by Issuer or by third parties at its request have not been subject to fraud or adulteration. Trustee shall not, under any circumstances, be responsible for the preparation of corporate documents of Issuer. ----------------------------

8.4.4. Trustee shall not make any judgment about guidance on any fact of the Issue that is the competence of definition by the Debenture holders, only undertaking to act in accordance with the instructions that are resolved by the Debenture holders. To this effect, Trustee does not have any responsibility over the result or over the legal effects resulting from strict compliance with the guidelines of the Debenture holders transmitted to it as defined by the Debenture holders and reproduced to Issuer, regardless of eventual losses that may be caused as a result of this to the Debenture holders or Issuer. Trustee's activity is limited to the scope of CVM Instruction 583, and subsequent amendments, and applicable articles of the Brazilian Corporation Law, and Trustee is released, on any account and under any pretext, from any

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

additional liability that has not resulted from the applicable legislation. ------------------------------------

8.5 **Remuneration of Trustee** --------------------------------

8.5.1. Issuer shall pay to Trustee or to the institution that may replace it, pursuant to Clause 8.3 above, fees for the performance of the duties and attributions incumbent upon it, pursuant to the legislation in force and this Indenture, corresponding to the remuneration [*periodicity*] of BRL [*(*Blank)], the first installment being due by [*(*Blank)] ([(Blank)]) Business Days after execution of this Indenture and the other installments on the same day of the subsequent [*periodicity*] until the Due Date, calculated *pro rata die*, if necessary. The remuneration shall be due even after the final maturity of the Debentures, if Trustee is still performing activities inherent to its function in relation to the Issue, which remuneration shall be calculated *pro rata die*. The first installment shall be due even if the Debentures have not been paid up, on account of structuring and implementation of the Issue. ----------------------------------------------

8.5.2. The payment of the installments described in Clause 8.5.1 above shall be made to Trustee plus the amounts related to taxes and contributions levied on the billing: (a) ISS (Tax on Services of Any Kind); (b) PIS (Contribution to the Social Integration Program); (c) COFINS (Contribution for the Financing of Social Security); (d) CSLL (Social Contribution on Net Profit); (e) IRRF (Withholding Income Tax); and (f) any other taxes





Pg 522 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 428

that may be levied on the remuneration of Trustee, the Bookkeeping Agent or the Settling Bank at the rates in effect on the dates of each payment so that Trustee receives the remuneration as if such taxes were not incident; ---------------------------------------------------

8.5.3. The installments mentioned in Clause 8.5.1 above shall be adjusted by the accumulated positive variation of the IPCA/IBGE, or in the absence of this inflation index, or in the impossibility of its use, by the index that replaces it, from the date of the first payment, until the following payment dates, calculated *pro rata die*, if necessary. --------------------------------------------------

8.5.4. In the event of late payment of any amount due as a result of the remuneration proposed herein, the debts in arrears shall be subject to a contractual fine of two percent (2%) on the value of the debt, as well as default interest of one percent (1%) per month, with the value of the debt in arrears being subject to inflation adjustment by the IPCA/IBGE, from the date of default until the date of actual payment, calculated *pro rata die*. ---------------

8.5.5. The payment of the Trustee's remuneration shall be made by deposit in the checking account to be indicated by Trustee at the appropriate time, the deposit slip serving as proof of payment. ---------------------------------------

**8.6 Expenses** --------------------------------------------

8.6.1 Trustee's compensation does not include expenses deemed necessary for the exercise of the function of trustee during the implementation and validity of the

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





Pg 523 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 429

service, to be covered by the Issuer, upon payment of the respective charges accompanied by the respective receipts, issued directly on behalf of the Issuer or upon reimbursement, after, whenever possible, previous approval, which are: costs incurred in telephone contacts related to the Issue, notifications, extraction of certificates, notary fees, photocopies, scans, sending of documents, trips, meals and lodging, expenses with experts, such as auditing and/or inspection, among others, or legal assistance to the debenture holders. -------------

8.6.2. In case of default by Issuer, all the necessary expenses which Trustee may incur to safeguard the Debenture Holders' interests shall be previously approved and advanced by the Debenture Holders, and later, reimbursed by Issuer. Such expenses include expenses with attorneys' fees, including third parties' fees, deposits, indemnifications, costs and judicial fees of actions filed by Trustee, provided they are related to the solution of the default, while representing the Debenture Holders. The eventual expenses, deposits and court costs resulting from succession in lawsuits shall also be supported by the Debenture holders, as well as the remuneration and reimbursable expenses of Trustee, in the event Issuer remains in default in relation to the payment of these for a period longer than fifteen (15) running days, by means of sending a report of the expenses and statements due. ---

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL

8.6.3. In case of default, monetary or not, Issuer, or restructuring of the conditions of the operation, an





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

additional remuneration equivalent to BRL *[(Blank*)] *[(Blank*)] per man-hour of work dedicated to the activities related to the Issue shall be due to Trustee. The same remuneration shall be due when participating in meetings, analyzing and executing amendments, conference calls and face-to-face meetings, which remuneration shall be paid within 10 (ten) days after checking and approval by Issuer of the respective "Time Sheet". ---------------------------

8.6.4 All expenses above BRL *[(Blank)]* which Trustee shall incur to protect the Debenture Holders' interests shall be previously approved and advanced by the Debenture Holders, and later, as provided by Law, reimbursed by Issuer. Such expenses include proven expenses with attorneys' fees, including third parties' fees, deposits, costs and judicial fees of actions filed by Trustee, as representative of the Debenture Holders. Eventual expenses, deposits and court costs resulting from the defeated party’s fees in lawsuits shall also be borne by the Debenture holders, as well as the remuneration and reimbursable expenses of Trustee, in the event Issuer remains in default in relation to the payment of these for a period longer than thirty (30) days, and Trustee may request guarantee to the Debenture holders to cover the risk of defeat. ------------------------------------------

**CLAUSE IX** ---------------------------------------------

**GENERAL MEETING OF DEBENTURE HOLDERS** ----------------------

9.1. The Debenture holders may, at any time, meet in general meeting, in accordance with the provisions in





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

article 71 of the Corporation Law, in order to resolve on matter(s) of interest to the Debenture holders' communion ("General Meeting of Debenture Holders"). **[NOTE: IF THE ISSUE IS MADE IN MORE THAN ONE SERIES, THIS CLAUSE SHALL BE ADJUSTED TO DEFINE WHETHER THE GENERAL MEETINGS OF DEBENTURE HOLDERS OF EACH SERIES SHALL BE HELD TOGETHER OR SEPARATELY, AS WELL AS TO DEFINE THE CONVENING AND RESOLUTION QUORUMS OF POSSIBLE MATTERS APPLICABLE ONLY TO CERTAIN SERIES]** ------------------------------------------------

9.1.1. The provisions of the Brazilian Corporation Law on general shareholders' meetings shall apply to the General Meeting of Debenture holders, as the case may be. ---------

**9.2 Call and Convening** -----------------------------------

9.2.1. The General Meeting of Debenture holders may be called by Trustee, by Issuer, by Debenture holders representing at least ten percent (10%) of the Outstanding Debentures or by CVM. -------------------------------------

9.2.2. The call of General Meetings of Debenture holders shall be made by means of an advertisement disclosed under the terms of this Indenture, observing the provisions of Clause 4.17 above, respecting other rules related to the publication of an announcement of call of general meetings set forth in the Corporation Law, the applicable regulations and this Indenture. ---------------------------

9.2.3. The General Meetings of Debenture holders shall be held in a minimum period of 8 (eight) days counted from the date of the first publication of the call. Any General Meeting of Debenture holders on second call may only be





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

held at least five (5) days after the date of publication of the new call notice. -----------------------------------

9.2.4. Regardless of the formalities contemplated in the applicable legislation and in this Indenture, the General Meeting of Debenture holders to which the holders of all Outstanding Debentures who attend shall be considered regular. ---------------------------------------------------

9.2.5. The General Meetings of Debenture holders shall be convened, on first call, with the presence of Debenture holders representing at least two thirds (2/3) of the Outstanding Debentures and, on second call, with any quorum. ----------------------------------------------------

**9.3. Presiding Officers** -----------------------------------

9.3.1. The chairman and secretary of the Debenture Holders' General Meetings be those elected by the Debenture Holders or those designated by CVM and may be accompanied by the Monitoring Agent, if necessary. --------

**9.4. Quorum for Resolutions** -------------------------------

9.4.1. In the resolutions of the Debenture Holders' General Meetings, each Outstanding Debenture shall entitle to one vote, the constitution of attorneys-in-fact, whether holders of Debentures or not being admitted. ------

9.4.1.1 For purposes of the constitution of all convening quorums and/or resolution quorums of any General Meeting of Debenture holders set forth in this Indenture, "Outstanding Debentures " are considered as all the Debentures subscribed, paid-up and not redeemed, excluding those Debentures: (i) held in treasury by Issuer; or (ii)





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

owned by: (a) companies controlled by Issuer (direct or indirect), (b) controllers (or control group) of Issuer; (c) companies under common control; and (d) managers of Issuer, including, but not limited to, persons directly or indirectly related to any of the aforementioned persons, including their spouses, partners or relatives up to the 3rd (third) degree. ---------------------------------------

9.4.2. When there is no specific quorum determined in this Indenture, all the deliberations to be taken in a General Meeting of Debenture holders shall depend on the approval of Debenture holders representing, at least, (i) fifty percent (50%) plus one (1) of the Debentures in Circulation, on first call and (ii) a simple majority of those present in the General Meeting of Debenture holders, on second call. -----------------------------------------

9.4.3. The presence of Issuer's legal representatives in the Debenture Holders' General Meetings called by Issuer shall be mandatory. In other cases, the presence of Issuer's legal representatives in the Debenture Holders' General Meetings will be allowed, it being certain that the Debenture Holders may discuss and resolve without their presence, if they wish. ----------------------------

9.4.4. Trustee shall attend the General Meetings of Debenture holders and provide the Debenture holders with the information requested, as well as send the respective minutes of the General Meetings of Debenture holders to the Monitoring Agent and, while the Plan of Court-





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

supervised reorganization lasts, to the receiver appointed by Issuer. ------------------------------------------------

9.4.5. The resolutions taken by the Debenture holders, in the General Meetings of Debenture holders, within the scope of their legal competence, observing the quorums of this Indenture, shall bind Issuer and all the holders of Outstanding Debentures, regardless of them having attended the General Meeting of Debenture holders or of the vote pronounced in the respective General Meetings of Debenture holders. ------------------------------------------------

**9.5. Meeting of Creditors under the Court-Supervised Reorganization Plan** -------------------------------------

9.5.1. Issuer may, at any time, call a meeting of creditors of the Receivables comprised of the holders of Credits Eligible to the Subscription of Payment Instruments, among which the Debenture Holders ("Meeting of Creditors"), for them to decide on: --------------------

(i) prior *waiver* of the right to demand performance of any of the obligations set forth in the Payment Instruments, including this Indenture; --------------------

(ii) *waiver* of the right to declare early maturity of the obligations under the Payment Instruments, including this Indenture; ------------------------------------------------

(iii) extension of the deadlines contemplated in the Payment Instruments, among which this Indenture -----------

(iv) carrying out corporate reorganization operations under Clause 6.1 of the Court-supervised Reorganization Plan; ------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

(v) substitution of the Monitoring Agent; and -------------

(vi) other relevant matters. ------------------------------

9.5.1.1 Pursuant to the terms of the Court-supervised Reorganization Plan, the meeting to resolve on the matters indicated in items (iii), (iv) and (v) of Clause 9.5.2 above shall only be convened in the presence of holders of Eligible Credits to the Subscription of Payment Instruments representing at least two thirds (2/3) of the Credits Eligible to the Subscription of Payment Instruments, either on first or second call. --------------

9.5.1.2. Pursuant to the terms of the Reorganization Plan, the matters indicated in items (iii), (iv) and (v) of Clause 9.1.2 above shall be subject to approval by holders of Credits Eligible to the Subscription of Payment Instruments representing at least two-thirds (2/3) of the Credits Eligible to the Subscription of Payment Instruments, on first and second call. --------------------

9.5.2. In case of call for a certain Creditors Meeting, Trustee undertakes to, within one (1) Business Day counted from receipt of the notice of call for the respective Creditors Meeting, to call a General Meeting of Debenture holders, in the form of and with the deadline established in Clause 9.2 above, which shall have as its agenda resolution on the matters contained in the call notice to the Creditors Meeting. ------------------------------------

9.5.3. After the General Meeting of Debenture holders contemplated in Clause 9.5.2 above has been held, Trustee undertakes to attend the respective Creditors' Meeting and





Pg 530 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 436

vote, as representative of the Debenture holders, as instructed by them in the General Meeting of Debenture holders. ------------------------------------------------

9.5.4. If the vote cast by the Debenture holders is defeated in the corresponding Creditors' Meeting, the resolutions taken in the respective Creditors' Meeting shall prevail over those taken in the Debenture holders' General Meeting, binding the Debenture holders in all its terms. --------------------------------------------------

**CLAUSE X** ------------------------------------------------

**REPRESENTATIONS AND WARRANTIES OF ISSUER** ------------------

10.1. Issuer represents and warrants, on the date of execution of this Indenture, that: ------------------------

(i) it is a company duly organized and existing as a joint stock company, in accordance with Brazilian law; ----------

(ii) it is duly authorized and has obtained all necessary licenses and permits, including corporate licenses, to execute this Indenture and any amendments thereto, to carry out the Issue and to comply with its obligations hereunder, having met all legal and statutory requirements to do so; ------------------------------------------------

(iii) no registration, consent, authorization, approval, license, order, or qualification before any governmental authority or regulatory body additional to those already granted, is required for compliance by Issuer with its obligations under this Indenture and the Debentures, or for the accomplishment of the Issue, except the registration of the [Issuer's AGE], of the Corporate Acts

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

of the Guarantors, of the Indenture in the Trade Register, registration of the Indenture in the RTDs and filing of the Debentures in B3 and approval of the Court-supervised Reorganization Plan by the competent court; ---------------

(iv) the legal representatives of the Issuer who sign this Indenture have statutory and/or delegated powers to assume, on its behalf, the obligations now established and, being trustees, had the powers legitimately granted, the respective mandates being in full force; --------------

(v) this Indenture and the obligations provided herein constitute legal, valid, binding obligations of Issuer, enforceable in accordance with its terms and conditions, with the force of an extrajudicial enforcement instrument under the terms of Article 784, clauses I and III, of the Code of Civil Procedure; ----------------------------------

(vi) the execution, the terms and conditions of this Indenture and compliance with the obligations set forth herein and the execution of the Issue and the Offering do not infringe the Bylaws of Issuer; ------------------------

(vii) is in compliance with all obligations assumed under the Court-supervised Reorganization Plan; -----------------

(viii) the documents and information provided to Trustee and/or the Debenture holders are true, consistent, correct and sufficient, are up-to-date until when they were provided and include the documents and information relevant to the investment decision making on the Debentures, information on the relevant operations of





Pg 532 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 438

Issuer, as well as on the relevant rights and obligations arising therefrom, having been made available; ------------

(ix) there is no connection between Issuer and Trustee that would prevent Trustee from performing its functions in full; and ------------------------------------------------

(x) it is complying with the laws, regulations, administrative standards and determinations of governmental bodies, government agencies, courts or tribunals, applicable to the conduction of its business and that are relevant to the performance of the Issuer's activities, except in relation to those laws and regulations that (a) are being contested in good faith by Issuer, (b) for which Issuer has a judicial or administrative provision in force determining its non-applicability or (c) noncompliance with which does not cause a Material Adverse Effect. --------------------------

10.2. Issuer undertakes to notify Trustee, within three (3) Business Days of the date on which it becomes aware, should any of the representations made under Clause 10.1 above be false and/or incorrect. --------------------------

**CLAUSE XI** ----------------------------------------------------

**GENERAL PROVISIONS** ------------------------------------------

**11.1 Communications** -----------------------------------------

11.1.1. Communications to be sent by either Party pursuant to this Indenture shall be forwarded to the following addresses: ------------------------------------------------

**To Issuer:** ------------------------------------------------

**[ISSUER]** --------------------------------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

[Full Address] ---------------------------------------------

Postal Code *[(Blank)]* - [City/State] ----------------------

Attn..: Mr. *[(Blank)]* -------------------------------------

Phone: (*[(Blank)]*) *[(Blank)]* ------------------------------

Email: *[(Blank)]* -------------------------------------------

------------------------------------------------------------

**To the guarantors** ---------------------------------------

**GUARANTOR 1]** --------------------------------------------

[Full Address] ---------------------------------------------

Postal Code *[(Blank)]* - [City/State] ----------------------

Attn..: Mr. *[(Blank)]* -------------------------------------

Phone: (*[(Blank)]*) *[(Blank)]* ------------------------------

Email: *[(Blank)]* -------------------------------------------

------------------------------------------------------------

**GUARANTOR 2]** --------------------------------------------

[Full Address] ---------------------------------------------

Postal Code *[(Blank)]* - [City/State] ----------------------

Attn.: Mr. *[(Blank)]* --------------------------------------

Phone: (*[(Blank)]*) *[(Blank)]* ------------------------------

Email: *[(Blank)]* -------------------------------------------

------------------------------------------------------------

**To Trustee:** --------------------------------------------

[TRUSTEE] --------------------------------------------------

[Full Address] ---------------------------------------------

Postal Code *[(Blank)]* - [City/State] ----------------------

Attn..: Mr. *[(Blank)]* -------------------------------------

Phone: (*[(Blank)]*) *[(Blank)]* ------------------------------

Email: *[(Blank)]* -------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

-----------------------------------------------------------------

**To the Settling Bank** ------------------------------------

**[SETTLING BANK]** ------------------------------------------

[Full Address] ---------------------------------------------

Postal Code *[(Blank)]* - [City/State] ----------------------

Attn.: Mr. *[(Blank)]* --------------------------------------

Phone: (*[(Blank)]*) *[(Blank)]* ---------------------------

Email: *[(Blank)]* ------------------------------------------

-----------------------------------------------------------------

**To the Bookkeeping Agent:** ------------------------------

**[BOOKKEEPING AGENT]** -------------------------------------

[Full Address] ---------------------------------------------

Postal Code *[(Blank)]* - [City/State] ----------------------

Attn.: Mr. *[(Blank)]* --------------------------------------

Phone: (*[(Blank)]*) *[(Blank)]* ---------------------------

Email: *[(Blank)]* ------------------------------------------

**To B3**: --------------------------------------------------

**B3 S.A. – BRASIL, BOLSA, BALCÃO** -------------------------

-----------------------------------------------------------------

**Segmento Cetip UTVM** -------------------------------------

Praça Antônio Prado, 48, 2° andar -------------------------

Postal Code 01010-901, São Paulo/SP ------------------------

Attn.: Superintendence of Corporate Securities and Funds Offerings ------------------------------------------------

Telephone: (11) 2565-5061 ----------------------------------

Email: valores.mobiliarios@b3.com.br ----------------------

11.1.2. Communications shall be considered delivered when received under filing number or with "acknowledgment of





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

receipt" issued by the Brazilian Postal Service or courier at the above addresses. Communications made by email shall be deemed to have been received on the date they are sent, provided that their receipt is confirmed by means of receipt issued by the machine used by the sender. Any change of address shall be immediately communicated to the other Parties by the Party with its changed address, with a copy to the Monitoring Agent. Any losses arising from failure to notify a change of address shall be borne by the defaulting Party, unless provided otherwise in this Indenture. ----------------------------------------------------

11.2. **Waiver:** No waiver of any of the rights deriving from this Indenture shall be assumed. Thus, any delay, omission or liberality in the exercise of any right, faculty or remedy that falls to Issuer, Trustee and/or the Debenture holders due to any default shall not impair such rights, options or remedies, nor shall be construed as constituting waiver of the same or agreement to such default, or novation or modification of any other obligations assumed by the Parties in this Indenture or precedent with respect to any other default or delay. -----

11.2.1 Holding of General Meetings to resolve on amendments resulting from the following are herein waived: (i) correction of material errors, be it a gross error, typo or arithmetic error, (ii) changes to any documents of the Issue already expressly allowed under the terms of the respective document(s) of the Issue, (iii) changes to any documents of the Issue due to requirements formulated





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

by CVM, by B3, or (iv) updating of the Parties' registration data, such as change in the corporate name, address and telephone number, among others, provided that the changes or corrections mentioned in items (i), (ii), (iii) and (iv) above, cannot cause any loss to the Debenture holders or any change in the Debenture Holders' flow, and provided that there is no additional cost or expense to the Debenture holders. -------------------------

11.3. **Expenses:** Any and all expenses incurred with the Issue and the Offering or with the execution of amounts due pursuant to the terms hereof, including publications, registrations, legalization, hiring of the Trustee and service providers as well as any other costs related to the Debentures shall be Issuer’s sole liability, pursuant to the terms of this Indenture. ---------------------------

11.4. **Extrajudicial Enforcement Instrument and Specific Performance:** This Indenture and the Debentures constitute extrajudicial enforcement instruments pursuant to article 784, I and III of the Code of Civil Procedure, and the Parties herein acknowledge that, irrespective of any other applicable measures, the obligations assumed under this Indenture and in connection with the Debentures are subject to specific performance, subject to the provisions of articles 497, 806, 814 et seq. of the Code of Civil Procedure, without prejudice to the right to declare the early maturity of the Debentures pursuant to this Indenture. ---------------------------------------------------





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

11.5. **Calculation of term:** Unless specifically provided otherwise in this Indenture, the terms established in this Indenture shall be computed in accordance with the rule prescribed in article 132 of the Civil Code, with the day of commencement being excluded and that of expiration included. -----------------------------------------------------

11.5. **Amendments:** Any amendments to this Indenture shall be formalized in writing, with the signature of Issuer and Trustee, registered in the Trade Register and registered in the RTDs, pursuant to the terms of this Indenture. The Parties agree that this Indenture, as well as the other documents of the Issue, may be altered, without the need for any approval by the Debenture holders, always and only: (i) when such alteration results exclusively from the need to comply with the requirements of adjustment to legal or regulatory standards or requirements of CVM, ANBIMA, B3 or other regulatory agencies; (ii) when a material error is found, be it a gross error, typo or arithmetic error; (iii) alterations to any documents related to the Issue of the Debentures already expressly allowed pursuant to the terms of the relevant documents; or (iv) due to the updating of the Parties' registration data, such as alteration in the corporate name, address and telephone number, among others, provided that at no additional cost or expense to the Debenture holders. ------

**11.6. Other Provisions** -----------------------------------





Pg 538 of 541

REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

p. 444

11.6.1. This Indenture is executed irrevocably and irreversibly, binding the Parties and their successors on any account. ----------------------------------------------

11.6.2. Terms beginning here in capital letters, whether singular or plural, shall have the meaning attributed to them in this Indenture, even if subsequently to their use.

11.6.3. The invalidation or nullity, in whole or in part, of any of the provisions of this Indenture shall not affect the others, which shall remain valid and effective at all times until the Parties have fulfilled all their obligations provided hereunder. If any Clause in this Indenture is declared invalid or void, the Parties herein undertake to negotiate, within the shortest possible time, in lieu of the Clause declared invalid or void, the inclusion in this Indenture of valid terms and conditions reflecting the terms and conditions of the invalidated or void Clause, observing the intention and purpose of the Parties when negotiating the invalidated or void Clause and the context in which it is inserted. ------------------

11.6.4. The Parties mutually and expressly represent that this Indenture was executed in accordance with the principles of honesty and good faith, by the free, conscious and firm expression of the will of the Parties and in a perfectly fair relationship. ---------------------

11.6.5. The terms established in this Indenture shall be computed in accordance with the provisions of Article 132 of the Civil Code, with the starting day being excluded and the expiration day included. --------------------------

PAULO FERNANDO SANTOS DE LACERDA
TRADUTOR
PÚBLICO
E
INTÉRPRETE
COMERCIAL





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

11.7. **Applicable Law** ---------------------------------------

11.7.1. This Indenture is governed by the laws of the Federative Republic of Brazil. ----------------------------

11.8. **Venue** --------------------------------------------

11.8.1. The Parties elect the venue of Judicial District of *[(Blank*)], State of *[(Blank)]*, expressly waiving any other, however privileged, as competent to settle any dispute arising from this Indenture. ----------------------

IN WITNESS WHEREOF, the parties execute this Indenture in *[(Blank*)] (*[(Blank*)]) identical counterparts, together with the (2) two undersigned witnesses. --------------------

São Paulo, *[date*]. ----------------------------------------

*(Signatures follow on the following pages)* ----------------

*(Signature Page of the Private Instrument of Indenture of [(Blank)] Issue of Unsecured Simple Debentures, Not Convertible into Shares, With Additional Personal Guarantee, in [Single Series], for Public Distribution, with Restricted Efforts, by [Issuer])* ---------------------

**[ISSUER]** -----------------------------------------------

Name: *(Blank)* -------------------------------------------

Title: *(Blank)* ------------------------------------------

Name: *(Blank)* -------------------------------------------

Title: *(Blank)* ------------------------------------------

-----------------------------------------------------------

*(Signature Page of the Private Instrument of Indenture of [(Blank)] Issue of Unsecured Simple Debentures, Not Convertible into Shares, With Additional Personal*





REPÚBLICA FEDERATIVA DO BRASIL
*Paulo Fernando Santos de Lacerda*
TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
SWORN PUBLIC TRANSLATOR
English - French - Spanish – Portuguese

*Guarantee, in [Single Series], for Public Distribution, with Restricted Efforts, by [Issuer])* ---------------------

**GUARANTOR 1]** -----------------------------------------------

Name: *(Blank)* --------------------------------------------

Title: *(Blank)* -------------------------------------------

**GUARANTOR 2]** -----------------------------------------------

Name: *(Blank)* --------------------------------------------

Title: *(Blank)* -------------------------------------------

*(Signature Page of the Private Instrument of Indenture of [(Blank)] Issue of Unsecured Simple Debentures, Not Convertible into Shares, With Additional Personal Guarantee, in [Single Series], for Public Distribution, with Restricted Efforts, by [Issuer])* ---------------------

**[TRUSTEE]** -------------------------------------------------

Name: *(Blank)* --------------------------------------------

Title: *(Blank)* -------------------------------------------

-----------------------------------------------------------

**WITNESSES** -------------------------------------------------

Name: *(Blank)* --------------------------------------------

ID RG: *(Blank)* -------------------------------------------

CPF: *(Blank)* ---------------------------------------------

-----------------------------------------------------------

Name: *(Blank)* --------------------------------------------

ID RG: *(Blank)* -------------------------------------------

CPF: *(Blank)* ---------------------------------------------

**<u>Annex I</u> to the Private Instrument of Indenture of [(Blank)] Issue of Unsecured Simple Debentures, Not Convertible into Shares, With Additional Personal**





**REPÚBLICA FEDERATIVA DO BRASIL**
*Paulo Fernando Santos de Lacerda*
**TRADUTOR PÚBLICO JURAMENTADO E INTÉRPRETE COMERCIAL**
MAT. JUCERJA Nº 243 - CPF 297.096.447-34
Inglês - Francês - Espanhol - Português
**SWORN PUBLIC TRANSLATOR**
English - French - Spanish – Portuguese

**Guarantee, in [Single Series], for Public Distribution, with Restricted Efforts, by [Issuer]) ---------------------**

***[to be included*] ------------------------------------------**

**Annex II to the Private Instrument of Indenture of [(Blank)] Issue of Unsecured Simple Debentures, Not Convertible into Shares, With Additional Personal Guarantee, in [Single Series], for Public Distribution, with Restricted Efforts, by [Issuer] ----------------------**

***[to be included*] ------------------------------------------**

**-----------------------------------------------------------**

**HAVING NOTHING FURTHER TO TRANSLATE FROM THIS DOCUMENT, I SIGN IT BY SETTING MY RIGHT HAND AND AFFIXING MY GOLDEN SEAL AND OFFICIAL STAMP. ---------------------------------**

**PAULO FERNANDO SANTOS DE LACERDA, Ph.D --------------------**

**SWORN PUBLIC TRANSLATOR AND COMMERCIAL INTERPRETER PERMIT #243 --------------------------------------------------**

**April 17, 2020. ------------------------------------------**



